## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANICE C. AMARA, individually and on behalf of others similarly situated, | : : : : | 3:01 CV 2361 (DJS) |
| Plaintiff, | : : | |
| v. | : : | |
| CIGNA CORP. AND CIGNA PENSION PLAN, | : : : | |
| Defendants. | : | APRIL 6, 2004 |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS FOR LEAVE TO SUPPLEMENT THEIR ANSWER TO ASSERT ADDITIONAL DEFENSES

Defendants CIGNA Corp. and CIGNA Pension Plan (the "Plan") (collectively, the "Defendants") submit this Memorandum of Law in support of their Motion for Leave to Supplement their Answer to Assert Additional Defenses.

### I.    INTRODUCTION

Plaintiff Janice Amara's claims are brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 et seq. Specifically, Plaintiff alleges in Counts I and III of the First Amended Complaint (the "Complaint") that the terms of the Plan, as drafted, violate various provisions of ERISA. In Count II, Plaintiff alleges that the summary plan description ("SPD") for the Plan was misleading and inaccurate.

On September 22, 2003, almost two years after first filing her original complaint, Plaintiff volunteered to be laid of by CIGNA and signed an Agreement and Release ("Release") in which she agreed "that [she] will not file (or ask or let anyone file for [her]) any charge, complaint, claim or lawsuit of any kind in connection with any claim

released by this Agreement. . . ." (Release, ¶ 5(a), attached as Exhibit 1). Plaintiff

further agreed to "release and discharge" any "Claims," defined in the Release as "any

and all claims, demands and causes of action of whatever kind, including any claims for

attorney's fees, that you now have, or at any time had, against any Released Persons, but

only to the extent they arise out of or relate in any way to your employment or

termination of employment with the Company and its affiliates." (Release, ¶ 5(e)).[1]

Plaintiff also agreed in the Release to "arbitrate anything: (1) related in any way to the

validity of this Agreement or how it is interpreted or implemented (including the validity

of [her] ADEA Waiver)." (Release, ¶ 9(a)).

Despite the requirements of Fed. R. Civ. P. 26(a)(1)(C), Plaintiff failed to provide

a computation of damages in her original Initial Disclosures. Defendants brought this

deficiency to Plaintiff's attention and served Plaintiff with interrogatories seeking

information on her damages claims. On March 8, 2004, Plaintiff supplemented her Initial

Disclosures and answered Defendants' damages interrogatories. Specifically, Plaintiff

indicated that she seeks retrospective relief, not just injunctive relief going forward, and

that she seeks benefits beyond those to which she is entitled under the terms of the Plan.

(Plaintiff's Answers To Second Set of Interrogatories and Document Requests, also

designated as Plaintiff's Supplement to Initial Disclosures, attached as Exhibit 2). For

example, Plaintiff seeks on Count III the "rate of benefit accrual available to a younger

---

[1]    The Release contains an exception for, among other things, "claims for benefits
under any retirement, savings, or other employee benefit programs." (Release,
¶5(f)). As explained herein, Plaintiff's claims in this lawsuit are not "claims for
benefits under" the Plan. Rather, Plaintiff asserts in this lawsuit that the Plan is
unlawful and that she is entitled to monies in addition to the benefits provided
under the Plan.

employee. . ." (Plaintiff's Answers To Second Set of Interrogatories and Document

Requests, Interrogatory No. 9; emphasis added). Similarly on Count II, Plaintiff seeks

benefits under CIGNA's prior, more traditional, benefit formula – not the formula under

the Plan in which she is a participant. (Id., Interrogatory No. 6 --"To illustrate with

Janice Amara, her benefit accruals for the years 1998 through 2003 are required to

continue under the prior Tier 1/2% of final average pay formula." (emphasis added). See

also Interrogatory Nos. 2-3 (regarding Count I).).

In light of the Release executed by Plaintiff and her recent disclosures,

Defendants seek leave pursuant to Fed. R. Civ. P. 15(d) to supplement their Answer to

assert the affirmative defenses of release and/or waiver. In addition, as Plaintiff has now

made clear that she seeks broad retroactive relief, Defendants also seek leave to clarify

that their original defense related to the unavailability of certain types of relief under

ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), is intended to encompass Plaintiff's

claim for retroactive relief.

## II.    ARGUMENT

Fed. R. Civ. P. 15(d) provides in relevant part that:

> Upon motion of a party, the court may, upon reasonable notice and upon
> such terms as are just, permit the party to serve a supplemental pleading
> setting forth transactions or occurrences or events which have happened
> since the date of the pleading sought to be supplemented.

Fed. R. Civ. P. 15(d). The Second Circuit has held that "leave to file a supplemental

pleading should be freely permitted when the supplemental pleading connects it to the

original pleading." Quarantino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir. 1995). As one

court recently explained in allowing a party to supplement its answer to assert a new

affirmative defense:

3

> Here, defendants in fact seek merely to supplement their answer, in the
> sense that the additions they wish to make to their pleading are based on
> events that have occurred since the date of their initial answer. . . . The
> newly interposed affirmative defense, in turn, is argued in their papers on
> the basis of judicial opinions that were not available when the original
> answer was filed.

Clark v. UFI, Inc., 98 F. Supp. 2d 320, 328 (E.D.N.Y. 2000).

The standard governing supplemental pleadings is similar to that governing

"amendments" to pleadings under Fed. R. Civ. P. 15(a): "Absent undue delay, bad faith,

dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or

futility, the motion should be freely granted." Quarantino, 71 F.3d at 66 (regarding Rule

15(d)), citing Foman v. Davis, 371 U.S. 178 (1962). As this Court, per Judge Eginton,

recently held:

> It is rare that leave to amend should be denied. Just as a court should not
> dismiss a complaint for failure to state a claim unless it appears beyond
> doubt that the plaintiff can prove no set of facts in support of his claim
> which would entitle him to relief, it should not deny leave to file a
> proposed amended [pleading] unless that same rigorous standard is met.

Wells v. Harris, 185 F.R.D. 128, 131 (D. Conn. 1999) (internal citations and quotations

omitted).

In this case, allowing Defendants to supplement their Answer to assert additional

defenses will not unduly prejudice Plaintiff, nor has there been any bad faith or dilatory

tactics. Discovery is ongoing. See Order of August 18, 2003. The facts upon which

Defendants' proposed Supplemental Answer is based had not even occurred when

Defendants first answered Plaintiff's Amended Complaint on August 9, 2002. Indeed,

the release was not even executed by Plaintiff until over one year after Defendants

answered the First Amended Complaint. Moreover, it was only through Plaintiff's recent

supplement to her Initial Disclosures and responses to Defendants' damages

4

interrogatories (served on March 8, 2004) that Defendants were able to clearly determine

that Plaintiff's claims were barred by the Release. See, e.g., Wells, 185 F.R.D. at 131 (D.

Conn. 1999) (allowing amended pleading filed four years and seven months into

litigation, where motion to amend and supplement was filed "a scant seven months" after

special counsel was appointed).

Similarly, as to Defendants' "defense"[2] based on the unavailability of a

retroactive remedy, Plaintiff's March 8, 2004 supplement to her Initial Disclosures and

responses to Defendants' damages interrogatories made clear that Plaintiff seeks broad

retroactive relief, not just injunctive relief going forward. Furthermore, Defendants'

original Answer to the First Amended Complaint asserted a defense that "Plaintiff is not

entitled to relief beyond that which is authorized by ERISA Section 502(a)(3)." See

Answer and Affirmative Defenses to Plaintiff's First Amended Complaint, Fourth

Defense. Under a "notice pleading" standard, that defense is sufficient to include the

unavailability of a retroactive remedy under ERISA Section 502(a)(3). Nonetheless,

Defendants simply seek to clarify that their original defense related to the unavailability

of certain types of relief under Section 502(a)(3) is intended to encompass Plaintiff's

claim for a retroactive remedy.

Moreover, asserting these defenses would not be futile. As an initial matter, if

Plaintiff challenges the applicability of the Release to her claims in this litigation, it is for

---

[2]   Defendants submit that the availability – or unavailability – of retroactive relief is
not an "affirmative defense" on which they bear the burden of proof. Rather, the
availability of "appropriate equitable relief," including retroactive relief, is a
critical prerequisite to Plaintiff's ability to recover on her claims. See 29 U.S.C. §
1132(a)(3). Nonetheless, Defendants are asserting this "defense" to clarify that

an arbitrator to decide whether the Release applies. Plaintiff has now made clear, moreover, that she does not seek benefits under CIGNA's Pension Plan; rather, she seeks benefits above and beyond those provided under the Plan. These claims are barred by the Release and, therefore, Defendants' release defense is not futile. See, e.g., Wells, 185 F.R.D. at 133 ("If a cause of action is colorable, leave should be given to amend.") (emphasis added).

Similarly, Defendants' "defense" based on the unavailability of retroactive relief is not futile. In a trilogy of cases, the Supreme Court has declared that it is neither "appropriate" nor "equitable" to impose retroactive liability in an ERISA case where, (i) the law was unclear, (ii) a retroactive remedy is not required to ensure future compliance with the statutory provision implicated and (iii) a retroactive remedy would significantly burden a pension plan or the plans of other employers. See City of Los Angeles, Dep't of Water & Power v. Manhart, 435 U.S. 702, 721 (1978); Ariz. Governing Comm. for Tax Deferred Annuity & Deferred Comp. v. Norris, 463 U.S. 1073, 1105 (1983); Florida v. Long, 487 U.S. 223, 235 (1988). In this case, all of these conditions likely would be met if Plaintiff's theory of liability is accepted. As Defendants' retroactive remedy defense is "colorable," it is not futile and leave to supplement should be granted.

### III.  CONCLUSION

For each and all of the foregoing reasons, Defendants respectfully submit that their Motion for Leave to Supplement their Answer to Assert Additional Defenses should be granted.

---

Defendants intend to litigate this issue should this case proceed to a remedy phase if liability is found.

RESPECTFULLY SUBMITTED,
DEFENDANTS
CIGNA CORPORATION & CIGNA
PENSION PLAN

James A. Wade (ct00086)
jwade@rc.com
Erin O'Brien Choquette (ct 18585)
echoquette@rc.com
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT  06103-3597
Tel. No.: (860) 275-8200
Fax No.: (869) 275-8299

Christopher A. Parlo (CT-04700)
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York  10178
(212) 309-6062
(212) 309-6273 (fax)

Joseph J. Costello
Jeremy P. Blumenfeld
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, Pennsylvania  19103-2921
(215) 963-5295/5258

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 6th

day of April, 2004, via facsimile and first class mail, postage prepaid, upon the following:

        Thomas G. Moukawsher
        Moukawsher & Walsh, LLC
        328 Mitchell Street
        Groton, CT  06340

        and upon:

        Stephen R. Bruce
        805 15th Street, NW
        Suite 210
        Washington, DC 20005

                Erin O'Brien Choquette

# EXHIBIT 1

## AGREEMENT AND RELEASE

This Agreement and Release ("Agreement") is dated September 19, 2003 ("Today"). It is between Janice Amara, 39 Town Beach Road, Old Saybrook, CT 06475, ("you") and Connecticut General Life Insurance Company, a Connecticut corporation ("the Company").

You and the Company intend to be legally bound by the Agreement, and are entering into it in reliance on the promises made to each other in the Agreement. Under the Agreement, your employment will end, and you and the Company agree to settle all issues concerning your employment and termination of employment. The Company is eliminating your job and will pay you certain benefits under the CIGNA Severance Pay Plan ("the Plan"). The Plan is described in the Severance Pay Summary Plan Description and can be found on the CIGNA Central Intranet site.

Under this Agreement, your employment will end and you and the Company agree to settle all issues concerning your employment and termination of employment. You intend to be legally bound by this Agreement and acknowledge that your release of claims against the Company is entered into voluntarily and without coercion.

1.  **Your Termination Date.**  The Company gave you written notice that your job is being eliminated, and your employment will end on October 17, 2003 ("Termination Date"), unless you find or otherwise receive another job with a CIGNA[1] company before your Termination Date. If you file a claim for unemployment compensation benefits because you do not yet have another job as of your Termination Date, the Company agrees that your unemployment will be because the Company did not have any work for you.

2.  **Pay and Benefits until Termination Date.**

    a.  From Today until your Termination Date, the Company will pay you your current regular salary and you may continue to participate in the Company's employee benefits programs.

    b.  Within 30 days after your Termination Date, the Company will pay you (less applicable withholding) for all the regular vacation days and personal holidays you earned, but have not used. That amount will be reduced by the value of any vacation days and personal holidays you take after Today. If you have taken more vacation and personal holidays than you have earned, you agree that these days can be deducted from your severance pay described in paragraph 3a. You agree that you have no right to any more vacation days or personal holidays.

---

[1] The terms "CIGNA", "CIGNA Company" and "CIGNA Companies" as used throughout this Agreement and Release means CIGNA Corporation and/or its subsidiaries. CIGNA Corporation owns the subsidiaries for which most employees work. The term "the Company" means the particular CIGNA Company that employs you.

c. If you bought or sold vacation days under the Signature Benefits Program, the regular provisions of that program will determine whether you receive an additional payment, or have an amount deducted from your pay, to make up any difference between the days you bought or sold and the days you actually used.

d. If you die before the Termination Date in paragraph 1, the date you die will automatically become your new Termination Date, and no salary payments will be made beyond your new Termination Date. However, if you die before receiving all other payments due to you under the Agreement, the remaining amounts will be paid in a lump sum within ninety (90) days after your death to your surviving spouse. If you have no surviving spouse, the payment will be made to your estate.

**3.**  **Your Severance Benefits.**   In exchange for (i) voluntarily signing and returning this Agreement to the Company within the required timeframe after you receive it and (ii) satisfying all of the eligibility criteria listed in the Plan, the Company will provide you with severance benefits and other benefits as described in this Agreement, subject to all applicable withholding and other deductions. Severance benefits will be paid by the Company or an affiliate.

a. You are eligible for severance benefits under Schedule I of the Plan. Your Basic Severance Pay will total $100,400.00 (less applicable withholding). Unless you make the lump sum election below:

- Basic Severance Pay will be paid to you in bi-weekly installments over a total period of fifty-two (52) weeks beginning with the first regular payday after your Termination Date. (The period you receive these bi-weekly payment is your "Severance Period".)
- Your Signature Benefits Basic Life Insurance coverage will continue at the Company's expense during the Severance Period.
- Under the provisions of federal law (COBRA), you may elect to continue your Company group health care coverage after your Termination Date. If you elect COBRA coverage, the Company will subsidize the COBRA rates you pay during the Severance Period (that is, you will pay the same rates as if you continued to be employed) and will not subsidize the rates after the Severance Period. You will be billed monthly.

**Lump Sum Election:**

*Initial for lump sum*

If you want your Basic Severance Pay paid in a lump sum within 30 days after your Termination Date, you must sign your initials on the line to the left. If you elect a lump sum payment:

- Your Signature Benefits Basic Life Insurance coverage will expire at the end of the month in which your Termination Date occurs.

- If you elect COBRA coverage, the Company will not subsidize the COBRA rates you pay. You will be billed monthly.

b.   You may convert certain group benefits coverages to individual coverages under the terms of the Signature Benefits program. You will not be eligible for any Signature Benefits credits after your Termination Date.

c.   The Company agrees to pay you, within 30 calendar days after your Termination Date, a lump sum of $13,566.35 (less applicable withholding) which represents a Bonus Severance Payment as described in the Plan.

d.   Within 30 calendar days after your Termination Date, the Company will make a lump sum Stock Plan Severance Payment to you. This payment, before applicable withholding, will be equal to the number of restricted shares of CIGNA Corporation stock which you now hold, but forfeit on your Termination Date, multiplied by the Fair Market Value (as defined under the applicable CIGNA Corporation stock plan) of a share of CIGNA Corporation stock as of your Termination Date.

e.   Your stock options are subject to the terms of the applicable CIGNA Corporation stock plan and your option grant letter and Attachment.

f.   If you desire, outplacement assistance will be provided. Further details will be provided by your Human Resources Representative, upon your request. Your eligibility for benefits under the Severance Pay Plan will not be affected if you decline outplacement assistance.

g.   Should you be offered and refuse a Suitable Position (as defined in the Plan), or refuse to interview for one, your eligibility under the Plan will cease immediately.

h.   Any benefits you may have earned under the CIGNA Pension and 401(k) Plans will be payable to you under the provisions of those Plans.

i.   If you find or otherwise receive another job with a CIGNA Company before your Termination Date, or if the Plan Administrator determines that you are not eligible to receive any severance pay under the terms of the Plan, then this Agreement shall no longer be in effect.

j.   If you find or otherwise receive another job with a CIGNA Company after your Termination Date, then the amount of severance pay which you are entitled to receive or keep will be determined by the terms of the Plan.

k.   The Company will pay you no other money except as described in this Agreement.

3

4.    **Your Promises to the Company**

   a.    Before your Termination Date, you will return to the Company all CIGNA Company property that you now have (for example: identification card, access card, keys, company car, computer, company manuals, office equipment, records and files).

   b.    You will hold all of the trade secrets, confidential information and proprietary materials belonging to the CIGNA Companies in the strictest confidence.  You will not use, disclose or reveal them to anyone.

   c.    For the 12-month period starting on your Termination Date, you will not solicit, try to hire, hire, refer for hire, or assist in hiring any CIGNA Company employee who is employed Today, if you have had any contact or involvement with that person during the 12-month period ending Today.

   d.    For the 12-month period starting on your Termination Date, you will not do business with any existing CIGNA Company customer in any way that would compete with the Company, if you have had any business contact or involvement with that customer during the 12-month period ending Today.

5.    **Your Release of Claims**

   a.    You agree that you will not file (or ask or let anyone file for you) any charge, complaint, claim or lawsuit of any kind in connection with any claim released by this Agreement against any Released Person.  However, the preceding sentence does not apply to any claim you might file alleging that your waiver of claims under the Age Discrimination in Employment Act of 1967 ("ADEA") was not knowing and voluntary.

   b.    You acknowledge full and complete satisfaction of, and release and discharge all Released Persons from, any Claims.

   c.    You are giving this release for yourself as well as for your executors, administrators, heirs and assigns.

   d.    "Released Persons" are the Company, its predecessors, successors, parents, subsidiaries and affiliates, and all of their directors, officers, agents and employees.

   e.    "Claims" are any and all claims, demands and causes of action of whatever kind, including any claims for attorney's fees, that you now have, or at any time had, against any Released Persons, but only to the extent they arise out of or relate in any way to your employment or termination of employment with the Company and its affiliates.  "Claims" includes things you may not even know about or suspect as well as any claims you may have under ADEA.

4

    f.     "Claims" does not include (and you are not releasing):

         (1)    any claims against the Company for promises it is making to you in this Agreement;

         (2)    any claims for benefits under any retirement, savings, or other employee benefit programs (but your Release does cover any claims you may make for severance benefits beyond those described or referred to in this Agreement);

         (3)    any claims covered by workers compensation laws; and

         (4)    any claims that you did not knowingly and voluntarily waive your Claims under ADEA.

6.    **Confidentiality.**    The terms of this agreement are confidential. You agree not to disclose in any way this Agreement or any of its terms to any person other than your spouse, lawyer or accountant.

7.    **No Admission of Wrongdoing.**    Just because the Company is entering into this Agreement and paying you money, the Company is not admitting that it (or any other Released Person) has done anything wrong or violated any law, rule, order, policy, procedure, or contract, express or implied, or otherwise incurred any other liability.

8.    **Applicable Law.**    This Agreement is being made in the state in which you work. It will be interpreted, enforced and governed under the laws of that state.

9.    **Arbitration.**    Without in any way affecting the release in paragraph 5, any and all disagreements, disputes or claims listed below will be resolved exclusively by arbitration in the city where you work Today, or if there is no American Arbitration Association ("AAA") office in the city where you work, in the nearest city with an AAA office. Arbitration will be conducted under the Employment Dispute Resolution Rules of the American Arbitration Association, as modified by the Company. Copies of the Arbitration Policy and Rules and Procedures can be obtained from your Human Resources Representative. A legal judgment based upon the Arbitrator's award may be entered in any court having jurisdiction over the matter. You and the Company agree to arbitrate anything:

    a.    related in any way to the validity of this Agreement or how it is interpreted or implemented (including the validity of your ADEA Waiver); and

    b.    that involves any dispute about your candidacy for employment, employment or termination of employment, including any disputes arising under local, state or federal statutory or common law (if for any reason your release and waiver under paragraph 5 is found to be unenforceable or inapplicable).

10.    **Final and Entire Agreement.**    This Agreement is intended to be the complete, final and entire Agreement between you and the Company. It fully replaces all earlier agreements or understandings. However, it does not replace the terms of any:

    a.    CIGNA stock or option grant you might have received or the terms of any employee benefit plan; or

    b.    other agreement you might have entered into with the Company that requires you to pay back money to the Company, or that authorizes the Company to deduct money from your pay, when your employment terminates or at any other time.

Neither you nor the Company has relied upon any other statement, agreement or contract, written or oral, in deciding to enter into this Agreement. Any amendment to this Agreement must be in writing and signed by both you and the Company.

11.    **Your Understanding.**    By signing this Agreement, you admit and agree that:

    a.    you have read the Agreement;

    b.    you understand it is legally binding, and you were advised to review it with a lawyer of your choice;

    c.    you have had (or have had the opportunity to take) forty-five (45) calendar days to discuss it with a lawyer of your choice before signing it and, if you sign before the end of that period, you do so of your own free will and with the full knowledge that you could have taken the full period;

    d.    you realize and understand that the release covers all claims, demands, and causes of action against the Company and any Released Persons (but does not apply to claims described in paragraph 5f), including claims under the Age Discrimination in Employment Act of 1967, whether or not you know or suspect them to exist at the present time; and

    e.    you understand the terms of the Agreement, you are signing voluntarily and with the full understanding of its consequences, and you have not been forced or coerced in any way.

12.    **Revoking the Agreement.**    You have seven days from the date you sign the Agreement to revoke and cancel it. To do that, a clear, written cancellation letter, signed by you must be received by Kate Sanderson, 280 Trumbull Street, H19A, Hartford, CT 06103, before the close of business on the seventh (7th) calendar day following the date you sign this Agreement. The company will make no payments other than those required by law until the end of the seventh day.

13.    **If Legal Action Is Started.**    You understand and agree that the Company's main reason for entering into this Agreement is to avoid lawsuits and other litigation. Therefore,

if any legal action covered by paragraph 5 or 9 (except claims related to the validity of this Agreement or how it is interpreted or implemented, or claims related to whether your release of ADEA claims was knowing and voluntary) is started by you (or by someone else on your behalf) against any Released Person, you agree to pay back to the Company within thirty (30) days of the start of that legal action all the money you receive under paragraphs 2 and 3 above, as well as any other thing of value you receive under this Agreement.  You also agree to pay the Company any costs and attorneys' fees it incurs in that action at the conclusion of the action.  However, if you claim that your release of ADEA claims was not knowing and voluntary, the Company reserves its right to recover from you its attorneys' fees and/or costs in defending that claim, at the conclusion of that action.

If, in any legal action or arbitration, the release in paragraph 5 is found to be unenforceable for any reason, then this Agreement (except for paragraph 9) shall be null and void from Today on, and any money paid by the Company to you after Today under paragraphs 2 and 3 and not yet returned to the Company (including the value of any Company-subsidy for group health care and life insurance coverages provided under paragraphs 2 and 3), will be treated as an overpayment by the Company, and you will have to repay it to the Company with interest, compounded annually at the rate of 6%.  However, the repayment provision in this paragraph does not apply to legal actions in which you claim that your release of ADEA claims was not knowing and voluntary.

This paragraph does not apply to any thing of value given to you for which you actually performed services and which by law you are entitled to receive.

This Agreement will not be effective or binding on either you or the Company until both have signed it.  This Agreement was signed on the dates indicated:

9-22-2003
_____
Date

_Janice Amara_
_____
Janice Amara

9-24-03
_____
Date

_Helen K. Frye_
_____
Helen K. Frye

On Behalf of Connecticut General Life
Insurance Company

# EXHIBIT 2



**"Stephen R. Bruce"**
**<stephen.bruce@prodi**
**gy.net>**

03/08/04 12:54 PM
Please respond to
stephen.bruce

To: jblumenfeld@morganlewis.com, jcostello@morganlewis.com,
    cparlo@morganlewis.com
cc: "Thomas G. Moukawsher" <tmoukawsher@mwlawgroup.com>
Subject: Amara v. Cigna: Relief responses

Attached are the responses to the Second Set of Interrogatories and
Document Requests that were transmitted with Jeremy Blumenfeld's
February 5, 2004 letter. As Tom Moukawsher noted earlier, and Jeremy
acknowledged, the February 24th date originally set in the letter for
responses was not in conformity with the Federal Rules. These will also
serve as supplementary Rule 26(a)(1) disclosures under Rule 26(e) to the
extent Rule 26(a)(1)(C) covers requests for equitable relief.

relief responses.pc

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JANICE C. AMARA, individually       :
and on behalf of all others similarly   :
situated,                            :
                                     :
          Plaintiff,                 :
                                     :
     v.                              :      3:01 CV 2361 (DJS)
                                     :
CIGNA CORP. AND CIGNA                :      March 8, 2004
PENSION PLAN,                        :
                                     :
          Defendants.                :

## PLAINTIFF'S ANSWERS TO SECOND SET OF INTERROGATORIES AND DOCUMENT REQUESTS FROM DEFENDANT CIGNA

**General Objections:**

Many Federal court decisions hold that "damages" are not recoverable as such

under ERISA. See, e.g., *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993). To the extent

Cigna's second set of interrogatories and requests ask for information about "damages,"

the requests are misplaced. A party's obligation to answer interrogatories asking for

quantification of the liabilities the opposing parties may incur from equitable relief sought

in a class action is also necessarily limited because: (1) there is no obligation to quantify

the liabilities resulting from equitable relief for the opposing parties, (2) most of the

information and custom software needed to quantify the aggregate liabilities resides with

the opposing parties (Cigna and the Cigna Pension Plan), (3) the relief stage of the action

has not been reached, and (4) the work papers and other material prepared to date that

relate to remedial relief are work-product. In addition, when the relief stage of the action

is reached, a complete plan of relief may require additional discovery and actuarial and

administrative analysis, particularly where the opposing parties have, to that juncture,

held most of the individual data and other information. Subject to these objections, the

following answers are made based on information currently available to the class counsel.

Counsel's right to modify or supplement the ultimate requests for relief is not limited by

these responses.


**Interrogatories**

1. Describe in detail the alleged damages and/or remedy sought based on the

allegations in Count 1 of the Amended Complaint.


Answer: The relief for Count 1 is:

> (1) A declaration that benefit accruals under the "Part B" cash balance
> formula for the Cigna Pension Plan, i.e., the annual benefit accruals for
> each year beginning with 1998, must be unconditionally payable without
> regard to whether a participant elects to receive his or her previously-earned
> benefits in the protected annuity form or as a converted cash balance
> amount,

> (2) An injunction prohibiting Cigna's application of conditions on the
> payability of the annual benefit accruals earned under the Part B formula
> beyond those permitted for nonforfeitable benefits, including relief for
> conditions imposed on individuals who separated from service before the
> date of the Court order,

> (3) Appropriate equitable and remedial relief to ensure that the relief is
> implemented on a class wide basis, and

2

(4) Such other equitable and remedial relief as the Court deems appropriate.

2. Describe in detail whether and how the damages and/or remedy sought for each member of the class based on the allegations in Count 1 of the Amended Complaint exceeds the benefits to which that class member was entitled under the terms of the Plan.

Answer: The benefits to which each member of the class is entitled are determined under the terms of the Plan, except that the unlawful conditions or contingencies on payment are eliminated. The relief for each class member is to eliminate, prospectively and retrospectively (if a class member has already separated from service), the unlawful conditions or contingencies on the payment of their new cash balance benefit accruals in conjunction with their previously-earned benefits. For class members who have separated from service, the difference in value between any option they should have been able to elect and the option they chose will be paid.

3. Describe in detail the method by which the damages and/or remedy sought based on the allegations in Count 1 of the Amended Complaint were computed.

Objection: Work product protection.

Answer: The actuarial report of Claude Poulin, F.S.A., demonstrates in Paragraphs

3

24-35 how compliance with ERISA's benefit accrual and nonforfeitability rules requires Cigna to give participants at least A + B, where A = the previously-earned annuity benefit for years of service through 1997, and B = each year's cash balance accruals beginning with 1998. Mr. Poulin's report shows how Cigna has instead given participants only the options of receiving A (the protected minimum annuity benefit alone, with no additional accruals) or A* (i.e., "A" <u>discounted</u> and converted to an initial cash balance, in some instances, as low as ½ of A, without protection of the benefit in annuity form) + B.

The class has not received the data necessary to compute the relief for each class member on an individual basis. But if a class member has retired and been given the options of only receiving A alone or A* + B, the remedy is to ensure that each class member receives the difference in value between A + B and the option chosen. To illustrate, Janice Amara will have to be paid her cash balance accruals for the years 1998 - 2003, in addition to the $1,833.65 she had already earned for her service through 1997. When she retired in 2003, she was only offered the latter amount. Mrs. Amara's pay credits and interest for the years 1998 - 2003 were over $46,000.

4. Describe in detail the alleged damages and/or remedy sought based on the allegations in Count 2 of the Amended Complaint.

4

Answer: The relief for Count 2 is declaratory and injunctive relief to prohibit Cigna's application of conditions on payment of benefit accruals earned under the Part B formula without the statutorily-required disclosures to participants. The relief includes appropriate equitable and remedial relief to remedy past violations and ensure that the relief is implemented on a class-wide basis, and such other equitable and remedial relief as the Court deems appropriate.

David Durham's deposition and documents produced in discovery reveal that Cigna's conversion to cash balance reduced future rates of benefit accrual compared to the plan's prior benefit formulas. Reports prepared by the William Mercer consulting company and Cigna's own Excel spreadsheets show the reductions. Paragraphs 20-35 of Mr. Poulin's expert report also analyzes the ways in which benefits are reduced going forward and in setting up initial account balances (with undisclosed discounts and without protection of the benefits in annuity form). Professor Stratman's expert report describes how the SPD and other written materials failed to give participants understandable notice of those reductions.  Because ERISA Sections 102 and 204(h) require notice, the class seeks declaratory and injunctive relief requiring that notice of the reductions be given, with appropriate equitable and remedial relief to remedy more than five years of violations.

5

The documentary evidence and Mr. Poulin's and Professor Stratman's expert reports further show that Cigna has offered benefit options to participants who separate from service without disclosing the amount of their protected annuity option (also described as their "minimum benefits") or the higher value that option can have compared to the cash balance options. Cigna also failed to disclose that the "Free 30%" survivor annuity was no longer offered under cash balance. The class seeks a declaration and injunctive relief requiring that such notice be given and appropriate equitable and remedial relief to remedy the losses that resulted from benefit elections made without adequate information.

5. Describe in detail whether and how the damages and/or remedy sought for each member of the class based on the allegations in Count 2 of the Amended Complaint exceeds the benefits to which that class member was entitled under the terms of the Plan.

Answer: The remedies sought for each member of the class conform with the Plan's terms, except to eliminate unlawful conditions on the payment of benefits and offer appropriate remedies for undisclosed reductions and undisclosed benefit options.

6. Describe in detail the method by which the damages and/or remedy sought based on the allegations in Count 2 of the Amended Complaint were computed.

6

Objection: Work product protection.

Answer: Mr. Poulin's actuarial report shows, in Paragraphs 24-35, that the failure to disclose conditions or contingencies on payment can be avoided, prospectively and retrospectively, by ensuring that each participant receives at least A + B, where A = the previously-earned annuity benefit for years of service through 1997, and B = each year's cash balance accruals beginning with 1998. The class has not received the data necessary to compute the individual relief for each class member. But the illustration for Janice Amara in response to Interrogatory No. 3 applies here as well.

Violations of the disclosure rules for SPDs are remedied by refusing to enforce undisclosed reductions or restrictions on benefits. Likewise, Section 204(h) and the case law provide that the remedy for failure to disclose reductions in future rates of benefit accrual is to provide the benefits to which participants would have been entitled if the prior formulas continued without reduction. Because Cigna did not give the statutorily-required notice of the reductions, the reductions are ineffective and the prior formulas are required to be continued until notice is given. To illustrate with Janice Amara, her benefit accruals for the years 1998 through 2003 are required to continue under the prior "Tier 1"/ 2% of final average pay formula. This will increase her benefits from $1,833 per month at age 55 (earned as of the end of 1995) to approximately $3,750 per month. The increase is due to five additional years of credited service, salary increases, and the final

7

average pay feature of the prior benefit formula. If a participant's prior benefit formula was the "Tier 2"/ 1.67% of final pay formula, this formula will be required to continue until notice of the reductions is given as required. To the extent that Cigna is already required to pay cash balance accruals for those years to remedy other violations, the relief under the SPD rules and Section 204(h) is the difference between those accruals and the accruals under the prior formula.

The remedy for failure to disclose the amounts and relative values of benefit options is to offer such notice prospectively and provide participants who have already made elections any difference in value that they gave up without notice. To illustrate, when Janice Amara's job was eliminated at the end of 2003, Cigna mailed her a benefit commencement package dated December 10, 2003 that omits any mention of her previously-earned $1,833 per month "minimum benefits." If she had elected the $915.65 per month annuity option offered in that package, or the $164,610.18 cash balance lump sum, she would have given up over 50% of the value of her benefits. She only received the higher amount because she already knew about her minimum benefits from this litigation and insisted that Cigna revise the benefit commencement package.

7. Describe in detail the alleged damages and/or remedy sought based on the allegations in Count 3 of the Amended Complaint.

8

Answer: The relief for Count 3 is declaratory and injunctive relief prohibiting Cigna's reductions in the rate of benefit accruals under the "Part B" formula of the Cigna Pension Plan based on age. The relief includes appropriate equitable and remedial relief to remedy past violations and ensure that the relief is implemented on a class-wide basis, and such other equitable and remedial relief as the Court deems appropriate.

8. Describe in detail whether and how the damages and/or remedy sought for each member of the class based on the allegations in Count 3 of the Amended Complaint exceeds the benefits to which that class member was entitled under the terms of the Plan.

Answer: Mr. Poulin's expert report demonstrates in Paragraphs 13-23 and Exhibits D - F how the rates of benefit accrual for older employees under the cash balance formula are lower than those applicable to younger employees. Cigna's Excel spreadsheets show the same reductions. To eliminate the violations, the rates for older employees must be raised to the rates offered to younger employees. To the extent that the benefit accrual rates for older employees are already required to be raised to that level, or above, because of other violations, the relief would not be duplicated.

9. Describe in detail the method by which the damages and/or remedy sought based on the allegations in Count 3 of the Amended Complaint were computed.

9

Objection: Work product protection.

Answer: The class has not received the data needed to compute the individual relief for each class member. But Mr. Poulin's actuarial report shows the differences in benefit accrual rates between younger and older employees. To illustrate with the named Plaintiff, the rate of benefit accrual available to a younger employee with the same salary will be computed and extended to Ms. Amara's years of service under the cash balance formula. Mr. Poulin's tables show that the rate of benefit accrual for an age 30 employee with 9 years of service and a salary of $40,000 is 1.79% of pay. Exh. F-1. Changing the salary to $100,000 to be consistent with Mrs. Amara's salary, the rate of accrual for the younger employee is 2.12%. By comparison, Exhibit D to Mr. Poulin's report shows that Janice Amara's rates of benefit accrual decrease with age from 1.59% at age 48 down to 1.27% at age 53, and are subject to a condition on payment. Her accrual rates for each of those years will have to be raised to at least 2.12%. To the extent her benefit accrual rates are already required to be raised to that level, or above, to remedy other violations, the relief will not be duplicated.

**Document Requests**

1. Any and all documents identified by you in your answers to Defendant CIGNA Corporation's Second Set of Interrogatories.

10

Response: The documents identified in the answers have already been provided or are being provided.

2. All documents that relate or refer to the damages and/or remedy sought in Count 1 of the Amended Complaint, including the method by which such damages were calculated.

Objection: Work product protection.

Response: Plaintiffs are producing additional individual benefit records and estimates and related materials.

3. All documents that relate or refer to the damages and/or remedy sought in Count 2 of the Amended Complaint, including the method by which such damages were calculated.

Objection: Work product protection.

Response: Plaintiffs are producing additional individual benefit records and estimates and related materials.

4. All documents that relate or refer to the damages and/or remedy sought in Count

11

2 of the Amended Complaint, including the method by which such damages were
calculated.

Objection: Work product protection.

Response: Plaintiffs are producing additional individual benefit records and
estimates and related materials.

DATED: March 8, 2004

s/ Thomas G. Moukawsher
Thomas G. Moukawsher Ct08940
Moukawsher & Walsh, LLC
328 Mitchell St.
Groton, CT 06430

s/Stephen R. Bruce
Stephen R. Bruce
805 15th St., NW, Suite 210
Washington, DC 20005

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing PLAINTIFF'S ANSWERS TO SECOND

SET OF INTERROGATORIES AND DOCUMENT REQUESTS FROM DEFENDANT

CIGNA was served by e-mail with PDF attachments and first-class mail on March 8,

2004, addressed to:

Christopher A. Parlo
Morgan, Lewis & Bockius
101 Park Avenue
New York, NY 10178
(cparlo@morganlewis.com)

Joseph J. Costello
Jeremy P. Blumenfeld
Morgan, Lewis & Bockius
1701 Market St.
Philadelphia, PA 19103
(jcostello@morganlewis.com
jblumenfeld@morganlewis.com)

s/ Stephen Bruce
Stephen Bruce

# EXHIBIT 3

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANICE C. AMARA, individually and on behalf of others similarly situated, | : : : | 3:01 CV 2361 (DJS) |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| CIGNA CORP. AND CIGNA PENSION PLAN, | : : | |
| Defendants. | : | APRIL 6, 2004 |

### SUPPLEMENTAL ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANTS CIGNA CORPORATION AND CIGNA PENSION PLAN TO FIRST AMENDED COMPLAINT

Defendants CIGNA Corporation ("CIGNA") and CIGNA Pension Plan ("the Plan") (collectively "Defendants"), by and through their attorneys, hereby respond to the numbered paragraphs of Plaintiff Janice Amara's ("Plaintiff") First Amended Complaint as follows:

### Nature of the Complaint

1. Defendants admit that the First Amended Complaint purports to be about retirement benefits Plaintiff alleges she and similarly situated employees are entitled to receive under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). Defendants deny the remaining allegations of paragraph 1.

### Jurisdiction Venue and Service of Process

2. Paragraph 2 states conclusions of law to which no responsive pleading is required.

3.   Paragraph 3 states conclusions of law to which no responsive pleading is required.

4.   Paragraph 4 states conclusions of law to which no responsive pleading is required.

### The Parties

5.   Upon information and belief, Defendants admit the allegation contained in Paragraph 5.

6.   Defendants admit that Plaintiff was employed by Connecticut General Life Insurance Company ("CGLIC"), a subsidiary of CIGNA.  Defendants further admit that Plaintiff has worked for CGLIC for at least 26 years. Defendants deny the remaining allegations of paragraph 6.

7.   Defendants admit that Plaintiff is a participant in the Plan.  The remaining allegations of Paragraph 7 state conclusions of law to which no responsive pleading is required.

8.   Defendants admit that some employees of CIGNA or its subsidiaries earn and receive benefits under the Plan in Connecticut.  The remaining allegations of Paragraph 8 state conclusions of law to which no responsive pleading is required.

9.   Defendants admit that CIGNA is a corporation organized under the laws of the State of Delaware, and that it is qualified to do business and does business in the State of Connecticut.  Defendants deny the remaining allegations of paragraph 9.

10. Defendants admit that CIGNA functions as plan sponsor for the Plan and that the CIGNA Corporation Corporate Benefit Plan Committee is the named fiduciary for the

Plan. Defendants deny that CIGNA is the plan administrator or the named fiduciary for the Plan. The remaining allegations of Paragraph 10 state conclusions of law to which no responsive pleading is required.

## Class Action Allegations

11. Paragraph 11 states conclusions of law to which no responsive pleading is required.

12. Paragraph 12 states conclusions of law to which no responsive pleading is required.

13. Paragraph 13 states conclusions of law to which no responsive pleading is required.

14. Paragraph 14 states conclusions of law to which no responsive pleading is required.

15. Paragraph 15 states conclusions of law to which no responsive pleading is required.

16. Paragraph 16 states conclusions of law to which no responsive pleading is required.

## Statement of Facts

17. Defendants are without knowledge or information sufficient to form a belief as to the truth of whether Plaintiff was born on April 3, 1950. Defendants admit that Plaintiff has worked for CGLIC from July 17, 1972 to August 10, 1995 and from September, 1998 to September, 2003. Defendants deny the remaining allegations of paragraph 17.

18. Defendants admit the allegations in the first and second sentences of paragraph 18. Defendants further admit that Plaintiff is an NASD principal for the client services organization of CIGNA's Retirement and Investment Services, as well as a client executive in charge of accounts. Defendants deny the remaining allegations of paragraph 18.

19. Defendants admit that effective January 1, 1998, CIGNA adopted a cash balance pension plan, referred to herein as "Part B." Defendants deny the remaining allegations of paragraph 19.

20. Defendants admit that effective January 1, 1998, certain categories of employees, including some who met age and service requirements, remained in the part of the Plan referred to herein as "Part A." Defendants deny the remaining allegations of paragraph 20.

21. Defendants admit that Plaintiff has participated in Part B since September, 1998. Defendants deny the remaining allegations of paragraph 21.

22. Defendants deny the allegations of paragraph 22; such allegations purport to characterize the contents of the Part A and Part B Plan documents, which documents speak for themselves.

23. Defendants admit that CIGNA sent Plaintiff a letter on or about December 14, 1995, a copy of which is attached to the First Amended Complaint as Exhibit 1. Defendants deny the remaining allegations of paragraph 23; such allegations purport to characterize the contents of Exhibit 1 to the First Amended Complaint, which document

4

speaks for itself. Furthermore, Defendants deny that CIGNA notified Plaintiff on December 14, 1995 about her "accrued benefits."

24. Defendants admit that CIGNA sent Plaintiff a letter on or about February 23, 2001, a copy of which is attached to the First Amended Complaint as Exhibit 2. Defendants deny the remaining allegations of paragraph 24; such allegations purport to characterize the contents of Exhibit 2 to the First Amended Complaint, which document speaks for itself. Furthermore, Defendants deny that CIGNA decreased Plaintiff's benefits under the Plan.

25. Defendants admit that Plaintiff questioned the amount of her retirement benefits and that Andrew Hodges, an actuary for CIGNA Retirement & Investment Services, sent an email dated April 20, 2001, a copy of which is attached to the First Amended Complaint as Exhibit 3. Whether ERISA Section 204(g), 29 U.S.C. § 1054(g), prohibits decreases in accrued benefits as a result of plan amendments is a conclusion of law to which no responsive pleading is required. Defendants deny the remaining allegations of paragraph 25; such allegations purport to characterize the contents of Exhibit 3 to the First Amended Complaint, which document speaks for itself.

26. Defendants admit that a plan specialist of CIGNA Retirement & Investment Services sent Plaintiff a letter on or about July 6, 2001, a copy of which is attached to the First Amended Complaint as Exhibit 4. Defendants deny the remaining allegations of the first sentence of paragraph 26; such allegations purport to characterize the contents of Exhibit 4 to the First Amended Complaint, which document speaks for itself. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 26.

27. Denied.

28. Defendants deny the allegations of the first and third sentences of paragraph 28; such allegations purport to characterize the contents of the Part B Plan document, which document speaks for itself. Defendants deny the allegations of the second sentence of paragraph 28.

29. Defendants deny the allegations of paragraph 29; such allegations purport to characterize the contents of the Part B Plan document, which document speaks for itself.

**Claim One: Offering Benefit Accruals That Are Conditional
Does Not Satisfy ERISA's Nonforfeitability Standard.**

30. Defendants admit that CIGNA's CEO, Wilson H. Taylor, approved Part B in 1997 and signed a copy of the Part B plan documents on or about December 21, 1998. Defendants deny the remaining allegations of paragraph 30; such allegations purport to characterize the contents of the Part B Plan document, which document speaks for itself.

31. Defendants deny the allegations of paragraph 31; such allegations purport to characterize the contents of the Part B Plan document, which document speaks for itself.

32. Defendants deny the allegations of paragraph 32; such allegations purport to characterize the contents of the Part B Plan document, which document speaks for itself.

33. To the extent that paragraph 33 states conclusions of law, no responsive pleading is required. Defendants deny the remaining allegations of paragraph 33.

34. To the extent that paragraph 34 states conclusions of law, no responsive pleading is required. Defendants deny the remaining allegations paragraph 34.

35. Defendants deny the allegations of the first sentence of paragraph 35; such allegations purport to characterize the contents of the Part B Plan document, which document speaks for itself. To the extent that the second sentence of paragraph 35 states conclusions of law, no responsive pleading is required. Defendants deny the remaining allegations of paragraph 35.

36. Paragraph 36 states conclusions of law to which no responsive pleading is required.

37. Paragraph 37 states conclusions of law to which no responsive pleading is required.

38. Denied.

### Count Two: Failure to Disclose Conditions on New Accruals In the Statutorily-Required Summary Plan Description.

39. Paragraph 39 states conclusions of law to which no responsive pleading is required.

40. Defendants admit that CIGNA distributed a summary plan description ("SPD") to participants in the Plan in October, 1998 and again in September, 1999. Defendants deny the remaining allegations of paragraph 40; such allegations purport to characterize the contents of the SPDs, which documents speaks for itself.

41. To the extent Paragraph 41 states conclusions of law, no responsive pleading is required. Defendants deny the remaining allegations of Paragraph 41.

**Count Three:  Reductions in the Rate of Benefit Accruals Because of Age.**

42. To the extent Paragraph 42 states conclusions of law, no responsive pleading is required. Defendants deny the remaining allegations of Paragraph 42.

43. To the extent that the first and second sentences of paragraph 43 purport to describe every cash balance plan, Defendants lack knowledge or information, after reasonable investigation, sufficient to form a belief as to the truth of the allegations in the first and second sentences of paragraph 43. To the extent that the first and second sentences of paragraph 43 purport to characterize the terms of the Part A and Part B Plan documents, Defendants deny the allegations, as such documents speak for themselves. To the extent that the third sentence of Paragraph 43 states conclusions of law, no responsive pleading is required. Defendants deny the remaining allegations of Paragraph 43.

44. Defendants deny the allegations of paragraph 44; such allegations purport to characterize the contents of the Part B Plan document, which document speaks for itself.

45. Defendants deny the allegations of paragraph 45; such allegations purport to characterize the contents of the Part B Plan document, which document speaks for itself.

46. Defendants deny the allegations of paragraph 46; such allegations purport to characterize the contents of the Part B Plan document, which document speaks for itself

47. To the extent Paragraph 47 states conclusions of law, no responsive pleading is required.  Defendants deny the remaining allegations of Paragraph 47.

**Prayer For Relief**

48. Defendants deny that Plaintiff is entitled to any relief or damages, including the relief described in paragraph 48.

WHEREFORE, Defendants respectfully request that the First Amended Complaint be dismissed with prejudice, that judgment be entered in their favor, and that Defendants be awarded the costs of this action, attorneys' fees and such other relief as this Court deems appropriate.

## FIRST DEFENSE

The First Amended Complaint fails to state any claim upon which relief can be granted.

## SECOND DEFENSE

Plaintiff's claims are barred in whole or in part by the applicable statute of limitations.

## THIRD DEFENSE

Plaintiff has failed to exhaust administrative remedies.

## FOURTH DEFENSE

Plaintiff is not entitled to relief beyond that which is authorized by ERISA Section 502(a)(3).

## FIFTH DEFENSE

Plaintiff is not entitled to a jury trial on any of her claims.

## SIXTH DEFENSE

Plaintiff's claims are barred by the defenses of release and/or waiver pursuant to the Agreement and Release she executed. Further, Plaintiff agreed to arbitrate anything

"related in any way to the validity of [the Agreement and Release] or how it is interpreted

or implemented."

## SEVENTH DEFENSE

Retroactive relief is not available on the claims asserted in this action.

RESPECTFULLY SUBMITTED,
DEFENDANTS
CIGNA CORPORATION & CIGNA
PENSION PLAN

James A. Wade (ct00086)
jwade@rc.com
Erin O'Brien Choquette (ct 18585)
echoquette@rc.com
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (869) 275-8299

Christopher A. Parlo (CT-04700)
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178
(212) 309-6062
(212) 309-6273 (fax)

Joseph J. Costello
Jeremy P. Blumenfeld
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, Pennsylvania 19103-
2921
(215) 963-5295/5258

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 6th day of

April, 2004, via facsimile and first class mail, postage prepaid, upon the following:

Thomas G. Moukawsher
Moukawsher & Walsh, LLC
328 Mitchell Street
Groton, CT  06340

and upon:

Stephen R. Bruce
805 15th Street, NW
Suite 210
Washington, DC 20005

Erin O'Brien Choquette