UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANICE C. AMARA, individually and on behalf of others similarly situated, | : : : : | |
| Plaintiff, | : : | 3:01 CV 2361 (DJS) |
| v. | : : | |
| CIGNA CORP. AND CIGNA PENSION PLAN, | : : : | |
| Defendants. | : | JULY 26, 2004 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
DEFENDANTS TO DECERTIFY THE CLASS**

### I.   INTRODUCTION

Plaintiff Janice Amara ("Plaintiff" or "Amara") argues in her Opposition Brief that the class should not be decertified because the release she voluntarily executed when she requested a layoff does not cover the claims she has asserted in this litigation and because the release does not create unique issues to her that render her claims atypical of those of the class. Both of these arguments are without merit. As will be explained in detail herein, the Court should not evaluate the merits of Defendants' release defense when it considers the appropriateness of class certification. Moreover, a review of the actual terms of the release Amara signed – and the law governing such releases – confirms that the release is binding as to the claims asserted in this case because they are statutory ERISA claims, not claims for benefits under the Plan, which is a critical distinction under Second Circuit law. Lastly, it is beyond dispute that the release Amara executed, the circumstances of her execution of that release, and the impact of that release will be a focus of this litigation because they so dramatically impact Amara's claims. Regardless of whether the validity of the release is determined by a court or in

arbitration (another issue uniquely affecting Amara that will have to be litigated by the parties), "there is a danger that absent class members will suffer if [Amara] is preoccupied with" the release and its impact on her own claims. Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990); Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 59-60 (2d Cir. 2000) (same). The class should be decertified.

## II.     ARGUMENT

### A.     Consideration Of The Merits Is Not Appropriate At Class Certification.

Amara's argument that the release she executed does not bar her claims is a merits inquiry inappropriate at class certification. The Second Circuit has made clear that "a motion for class certification is not an occasion for examination of the merits of the case." Baffa, 222 F.3d at 58, quoting Caridad v. Metro-North Commuter Railroad, 191 F.3d 283, 291 (2d Cir. 1999). Indeed, notwithstanding her current position, even Amara herself recognized in her motion for class certification that "[t]he Supreme Court has found that 'nothing in either the language or history of Rule 23 gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.'" See Plaintiff's Motion for Class Certification at 5, quoting Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974).

Consistent with Baffa and Caridad (and Amara's own class motion) this Court, per Judge Covello, recently refused to consider the merits of a release defense at class certification. In Walker v. Asea Brown Boveri, Inc., 214 F.R.D. 58 (D. Conn. Feb. 25, 2003), the plaintiffs sought to certify a class of participants in a cash balance pension plan. In opposing the class, the defendants raised a unique defense to the plaintiffs' claims based on the releases they executed. In response, the plaintiffs – like Amara here

2

— argued that the terms of the releases did not cover the claims alleged. See Walker, 214 F.R.D. at 65 ("In addition, the plaintiffs argue that the terms of the agreement preclude any argument that the release language bars the employee from enforcing his right to pension benefits under the Plan.").[1] The court rejected the plaintiffs' merits-related argument, holding:

> The court perceives the plaintiffs' argument as an invitation to proceed into the merits of the general release issue. This is an inquiry that the court is unwilling to approach at this juncture.

Walker, 214 F.R.D. at 65. Instead, because of the unique defense based on the release, and regardless of the ultimate merits of that defense, the court denied the plaintiffs' motion for class certification. See id. at 66.

As in Walker, the merits of Defendants' defense based on the release should not be considered at class certification. Here, moreover, Amara agreed to arbitrate anything "related in any way to the validity of this Agreement or how it is interpreted or implemented." See Release, ¶ 9(a). Thus, the merits of Defendants' defense based on the release is not for the Court to decide, but instead should be considered by an

---

[1] Amara's attempt to distinguish Walker as a case in which the plaintiffs "claim[ed] that they were threatened into signing facially-encompassing releases" (Opposition Brief at 11) is simply false. The "threat" in Walker to which Amara refers was a statement in the cover letter to the release which stated that X dollars would be paid if the release was signed and fewer dollars would be paid if the release was not signed. See Walker, 214 F.R.D. at 65. The cover letter to Amara's release is similar: Amara is only entitled to any severance benefits if she signs the release. See Opposition Brief at Ex. A p. P1137. Furthermore, contrary to Amara's argument, there was a dispute in Walker about whether the terms of the release barred the plaintiffs' claims. See id. (reciting plaintiffs' argument that the "release language" does not bar their claims). Walker is directly on point.

arbitrator.[2] As such, the Court need not, and pursuant to Supreme Court and Second Circuit precedent, should not, consider the merits of Defendants' release defense at this stage of the proceedings.

**B.   Even Were The Court To Inquire Into The Merits Of Defendants' Release Defense, Amara's Claims Are Plainly Barred By The Release.**

Even were the Court to consider the merits of Defendants' release defense, as Amara urges, none of Amara's arguments seeking to avoid the release have merit. There is simply no factual or legal basis for Amara's position in that regard.

For example, Amara argues that the release does not cover the claims in this litigation because the Plan is not a released party. (Opposition Brief at 3). This is wrong. In Yablon v. Strook & Strook & Lavan Retirement Plan & Trust, No. 01 CIV 452, 2002 WL 1300256 (S.D.N.Y. June 11, 2002), the court held a release which covered a plan fiduciary also effectively released claims against the underlying ERISA plan even where the plan was not named as a released party. See id. at *7. On appeal, the Second Circuit affirmed, holding:

> We also agree with the district court that the Separation Agreement effectively released all of the defendants from liability for the plaintiff's claims. See Meagher v. Bd. of Trustees of the Pension Plan of the Cement & Concrete Workers Dist. Council Pension Fund, 79 F. 3d 256, 258 (2d Cir. 1996) (per curium), aff'g 921 F. Supp. 161 (S.D.N.Y. 1995) **(holding that an ERISA plan and its trustees are identical parties for purposes of *res judicata*)**.

Yablon v. Stroock and Stroock & Lavan Retirement Plan and Trust, No. 02-7820, 2004 WL 1147075, **1 (2d Cir. May 21, 2004) (UNPUBLISHED) (emphasis added).

---

[2]   As explained infra, that Amara apparently contests her obligation to arbitrate any dispute about the interpretation or implementation of the release creates yet another issue uniquely affecting Plaintiff.

Likewise here, Amara alleges that CIGNA is the plan administrator for the Plan (Amended Complaint, ¶ 10). CIGNA, however, is also a released party, as are CIGNA's officers, directors, agents, and employees. See Release, ¶ 5(d). Thus, pursuant to Yablon, the release does bar claims against the Plan.

Amara's reliance on Finz v. Schlesinger, 957 F.2d 78 (2d Cir. 1992), is similarly misplaced. Contrary to Amara's suggestion, the Second Circuit did not hold in Finz that a release limited by its terms to a "claim to benefits under the pension plan" nonetheless included all ERISA statutory claims. As the district court opinion makes clear, the release in Finz expressly covered "all actions [or] causes of action." See Finz v. Schlesinger, No. 90 CIV. 2685, p. 5 n.3 (S.D.N.Y. June 6, 1991) (brackets in original) (copy attached as Exhibit "A"). Of course, such a release barred both claims for benefits and statutory ERISA claims. Neither the district court nor the Second Circuit in Finz even addressed whether the language of the release barred the plaintiff's claims because that was not at issue in the case. The only issue in Finz was whether the release was knowing and voluntary; both the district court and the Second Circuit held that it was. Finz is inapposite.

Lastly, Amara's attempt to avoid the release based on the exclusion for "any claims for benefits under any retirement, savings, or other employee benefit programs" also fails. See Release, ¶ 5(f). By its terms, this exclusion only applies to claims for benefits under the Plan, not claims alleging statutory ERISA violations. In her Complaint, however, Amara alleges that the terms of the Plan violate ERISA and that the summary plan description was misleading, in violation of ERISA's disclosure obligations. These are statutory claims that courts in the Second Circuit consistently

5

distinguish from claims for benefits under the terms of a plan.[3] For example, in Campanella v. Mason Tenders Dist. Council Pension Plan, 299 F. Supp. 2d 274 (S.D.N.Y. 2004), the plaintiffs, like Amara here, alleged "that the Plan itself violated ERISA" – specifically, ERISA's accrual rules. Id. at 280, 281. The court ruled these were statutory claims, not claims for benefits under the plan, and that therefore the plaintiffs were not required to exhaust their administrative remedies. The court held:

> The Second Circuit requires that a plaintiff bringing an ERISA claim for denial of specific benefits under an employee benefits plan exhaust his or her administrative remedies before pursuing the claim in court. But the Second Circuit has not yet addressed whether it requires exhaustion of claims generally alleging statutory ERISA violations. . . . [T]he Third, Fourth, Fifth, Sixth, Ninth, and Tenth Circuits have expressly stated that exhaustion is not a prerequisite to actions asserting statute-based ERISA claims. Furthermore, several district courts in the Second Circuit have declined to require exhaustion of statute-based ERISA claims.

Id. at 281 (internal citations omitted). See also De Pace v. Matsushita Elec. Corp. of America, 257 F. Supp. 2d 543, 558 (E.D.N.Y. 2003) ("District courts in the Second Circuit have routinely dispensed with the exhaustion prerequisite where plaintiffs allege a

---

[3] The only two cases Amara cites to support her argument that her claims are ones for benefits under the Plan are inapposite as they involve the interpretation of the damages provisions of an insurance liability policy. In Sokolowski v. Aetna Life & Casualty Co., No. 84-4801, 1986 WL 9232 (S.D.N.Y. Aug. 11, 1986), the court addressed an insurance policy that excluded from the definition of the word "damages" any payments made from a pension plan. Not surprisingly, the court simply held that any monies paid from the pension plan were not "damages" and were therefore not insured. In May Dep't Stores Co. v. Federal Insurance Co., 305 F.3d 597 (7th Cir. 2002), the court likewise addressed whether insurance coverage was available to reimburse a defendant for monies it agreed to pay out of a pension plan as part of a settlement agreement. The court held that such damages were excluded from coverage by the insurance policy because they were to be paid from the plan. In short, both Sokolowski and May Dep't Stores addressed the damages that were recoverable under the terms of an insurance policy; neither case held that a statutory ERISA claims was really a claim for benefits.

6

statutory ERISA violation."); Gray v. Briggs, No. 97-6252, 1998 WL 386177, *7 (S.D.N.Y. July 7, 1998) ("This Court is persuaded by Judge Leisure's decision . . . finding that there is no exhaustion requirement in ERISA suits alleging statutory violations rather than a denial of benefits.") (internal citations omitted).

The claims asserted by Amara here are undisputedly statutory ERISA claims – not claims for benefits under the terms of the Plan. The exclusion in the release therefore does not apply. As such, Amara's claims are barred by the release.[4]

### C. Amara's Claims Are Not Typical Of The Claims Of The Class, Nor Is Amara An Adequate Class Representative, Because Of The "Unique Defense" Applicable To Her Based On The Release She Executed.

Amara's final argument is that even if the release might be enforceable, the unique defense based on the release does not preclude her from representing the class. This, however, is a short sighted and selfish view.

It is well-settled that "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Baffa, 222 F.3d at 59 (2d Cir. 2000) (internal citation and quotations omitted); Stevelman v. Alias Research, Inc., No. 5:91-CV-682, 2000 WL 888385, at *3 (D. Conn. June 22, 2000) ("Proposed plaintiffs may not be named to represent the interests of absent class members where their claims are subject to unique defenses."). The reason for this rule – as articulated by the Second Circuit – demonstrates its applicability here:

---

[4] Amara also suggests that the release only prohibits her from bringing an action in the future and does not apply to her pending lawsuit. (Opposition Brief at 3). She ignores, however, that the release also "release[s] and discharge[s] all Released Persons, from any Claims." See Release, ¶ 5(b).

7

> Regardless of whether the issue is framed in terms of the typicality of the representative's claim, or the adequacy of its representation, <u>there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.</u>

Gary Plastic Packaging Corp., 903 F.2d at 180 (emphasis added). See also Baffa, 222 F.3d at 60 (same).

Under the Second Circuit law quoted above, the defense need not cause a conflict of interest between a plaintiff and the class, nor must it be one that goes to the heart of the underlying case, as Amara claims in her brief. (Opposition Brief at 8-10). Instead, where a unique defense threatens to take up the time, energy, and focus of a plaintiff, that plaintiff is not an appropriate class representative regardless of the nature of the defense.

Here, Amara's Opposition Brief makes clear that the parties will have to litigate whether Defendants' defense based on the release is arbitrable. Once that issue is resolved, the parties will then have to litigate either in arbitration or in court whether Amara's claims are barred by the release she executed. This will involve interpretation of the terms of the release, and testimony from Amara and others, including people who discussed the release with Amara. Each of the "knowing and voluntary" factors articulated by the Second Circuit will have to be considered:

> (1) the plaintiff's education and business experience, (2) the amount of time the plaintiff had possession of or access to the agreement before signing it, (3) the role of plaintiff in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether the plaintiff was represented by or consulted with an attorney, [as well as whether an employer encouraged the employee to consult an attorney and whether the employee had a fair opportunity to do so] and (6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

Finz, 957 F.2d at 82 (internal citation omitted). See also Sharkey v. Ultramar Energy Ltd., 70 F.3d 226, 230-231 (2d Cir. 1995) ("knowing and voluntary" standard applies to

8

release of claims for benefits under plans that were adopted after the release was signed). This is a fact intensive inquiry that uniquely affects Amara. See Walker, 214 F.R.D. at 66 (denying class certification where named plaintiffs executed a release because "the court concludes that determining whether either of the named plaintiffs knowingly and voluntarily waived his right to being a claim for pension benefits will necessarily require a fact-specific inquiry").

In short, pursuant to Gary Plastics and Baffa, this Court need not and should not wait until the class' interests actually are compromised before finding Amara to be an inappropriate class representative. Indeed, if the class is not decertified, the Court may never even know if the class' interests actually were harmed because such harm may not be apparent. Rule 23, and due process for the absent class members, however, require that even the chance of harm be avoided. There is a risk, i.e., a "danger" as the Second Circuit put it in Baffa and Gary Plastics, that Amara's time and attention will be focused on the her own personal dispute surrounding her release (and the dispute about the arbitrability of that release-dispute) and that "absent class members will suffer" as a result. Gary Plastic Packaging Corp., 903 F.2d at 180; Baffa, 222 F.3d at 60. The class should be decertified.

### III.  CONCLUSION

For each and all of the foregoing reasons, Defendants respectfully submit that their Motion to Decertify the Class should be granted and that this case should proceed on behalf of Plaintiff individually.[5]

---

[5]  If other members of the putative class wish to intervene as a class representative, they can make the appropriate motion. If those individuals satisfy the elements of Rule 23, the class can then be re-certified with an appropriate representative.

DEFENDANTS
CIGNA CORPORATION & CIGNA
PENSION PLAN

*/s/ Erin B. Choquette*
James A. Wade (ct00086)
jwade@rc.com
Erin O'Brien Choquette (ct 18585)
echoquette@rc.com
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (869) 275-8299

Christopher A. Parlo (CT-04700)
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178
Tel. No.: (212) 309-6062
Fax No.: (212) 309-6273

Joseph J. Costello
Jeremy P. Blumenfeld
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel. No.: (215) 963-5295
Fax. No.: (215) 963-5001

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 26th day of July, 2004, via facsimile and first class U.S. mail, prepaid, upon the following:

> Thomas G. Moukawsher
> Moukawsher & Walsh, LLC
> 328 Mitchell Street
> Groton, CT 06340

> and upon:

> Stephen R. Bruce
> 805 15th Street, NW
> Suite 210
> Washington, DC 20005

Erin O'Brien Choquette

# EXHIBIT A

MEMORANDUM ENDORSEMENT



*Finz v. Schlesinger, et al.*, 90 Civ. 2685 (RCM)

JUN 7 1991

Defendants move for reconsideration of this Court's order dated December 10, 1990, arguing that the Court failed to consider their contention that plaintiff Leonard L. Finz, by his own admissions, did not rely on defendants' alleged fraudulent concealment of his entitlement to benefits under the Julien & Schlesinger Employee Retirement Fund. In the May 4, 1984 agreement Finz signed, settling his claims with the defendants, Finz stated, in pertinent part:

> [Plaintiff] states that to his knowledge and during or prior to the period of his employment with [defendants], he was neither issued, nor did he receive any stock interest in the "JULIEN & SCHLESINGER EMPLOYEE RETIREMENT FUND DATED JUNE 11, 1974" or any other pension or profit sharing plan which may have existed or any parties claim to have existed with regard to the firms of [defendants], which [plaintiff] claims was in existence during the period of his employment with [defendants] and as such is or was entitled to the benefits thereunder provided as a covered employee.

Agreement, dated May 4, 1984 (attached as Exhibit B to Affidavit of Stuart A. Schlesinger, sworn to on June 11, 1990 ("Schlesinger Aff.")). Thus, defendants assert, even if defendants concealed any payment to Wolin or attempted to conceal Finz's entitlement to benefits, the settlement agreement leaves no doubt that Finz did not believe defendants' assertions that Finz was not entitled to ERISA benefits.

Defendants' motion for reconsideration is granted, and upon reconsideration, we agree with the defendants. Finz contends that defendants defrauded him by denying his eligibility for ERISA benefits, but Finz, however, did not believe the defendants. As he admitted in the Agreement, he believed, despite defendants' alleged misrepresentations, that he was entitled to benefits under defendants' retirement plan. Notwithstanding that belief, Finz, like any settling claimant, voluntarily wavied his claim as part of the settlement agreement. Because Finz cannot establish reliance upon defendants' alleged fraud, defendants are entitled to summary judgment on Finz's fraud claim. *See, e.g., Rosen v. Spanierman*, 894 F.2d 28, 33-34 (2d Cir. 1990); *Apex Oil Co. v. Belcher Co. of New York*, 855 F.2d 997, 1008-09 (2d Cir. 1988).

In addition to his argument that he was fraudulently induced into settling his claims against the defendants, Finz argues that the agreement and releases are void and unenforceable because defendants breached their fiduciary duty, as ERISA trustees, to negotiate settlements and releases in good faith. Finz relies primarily on *Gaynor v. Ephrata Community Hospital*, 690 F. Supp. 373 (E.D. Pa. 1988), in which the court assumed, for purposes of

deciding the motion before it, that a release of past pension benefits could be valid only if it met certain "strict standards" and if "the fact of the employee's participation [was] disputed in good faith by the employer." Id. at 381. The court imposed these special requirements on releases or waivers by an employee of his or her rights under ERISA because of (1) the duty of a fiduciary of a pension to act in the interests of beneficiaries of the plan (see 29 U.S.C. § 1104 ("a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries")), and (2) the nonforfeiture provisions of Section 1053 (see 29 U.S.C. § 1053(a) ("[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age")). These provisions, the court observed, "evidence a congressional intent to protect employees from improvidently bargaining away participation rights." Id. at 381-82.

Although the Gaynor court's reliance on Section 1053(a), is perhaps misplaced,[1] Gaynor simply applies to ERISA settlements the principle that where a fiduciary relationship exists between the parties, transactions between them must be carefully scrutinized. See, e.g., Benson v. RMJ Securities Corp., 683 F. Supp. 359, 375 (S.D.N.Y. 1988); Gordon v. Bialystoker Center and Bikur Cholim, Inc., 45 N.Y.2d 692, 698-99, 412 N.Y.S.2d 593, 596-97 (1978). It is therefore useful to consider the factors set forth in Gaynor for evaluating the enforceability of the releases: (i) whether the release is in writing; (ii) whether the release is clear and specific; (iii) whether there was a full and accurate disclosure of the rights being released; (iv) whether the employee was represented by counsel; (v) whether there was a real opportunity for negotiation; and (vi) the adequacy of the consideration given for the release. Gaynor, 690 F.2d at 382.

These factors parallel the factors which the Second Circuit has enumerated for determining whether, under the totality of the circumstances, a waiver or release of a claim under the Age Discrimination in Employment Act ("ADEA") is knowing and voluntary, see Bormann v. AT & T Communications, Inc., 875 F.2d 399, 403 (2d Cir. 1989), and which other courts have applied in evaluating the

---

[1] At least one court, distinguishing involuntary forfeitures under Section 1053 from voluntary settlements of ERISA claims which involve a waiver of known benefits, has refused to apply Section 1053 to releases of rights under ERISA. In District 29, United Mine Workers v. New River Co., 842 F.2d 734 (4th Cir. 1988), the court recognized that "ERISA prohibits the forfeiture of vested retirement benefits except as expressly provided." Id. at 737. Nevertheless, the court found "that provision . . . inapplicable" to situations in which "[t]he releases executed by [plaintiff] are not involuntary forfeitures but rather the employees' voluntary waivers of their known benefits." Id. (citation omitted).



validity of waivers or releases of ERISA claims. See, e.g., Laniok v. Advisory Committee of the Brainerd Mfg. Co. Pension Plan, 753 F. Supp. 1115, 1121 (W.D.N.Y. 1990) (factors to consider include (1) clarity of waiver agreement, (2) sophistication of employee, (3) amount of time employee had possession or access to waiver agreement before signing it, and (4) whether employee had opportunity to consult with attorney); Joseph v. Chase Manhattan Bank, N.A., 751 F. Supp. 31, 33-34 (E.D.N.Y. 1990).

The factors set forth in Gaynor are considerations which "would normally be taken into account" in determining whether "the entirety of the facts and circumstances surrounding [the] execution" of a release supports its validity. Gaynor, 690 F. Supp. at 382. Thus, the list of factors is not exhaustive or exclusive. See also Laniok, 753 F. Supp. at 1121 ("While each of these factors is relevant in assessing the validity of a given waiver, no one factor need predominate nor must each be considered."); cf. Bormann, 875 F.2d at 403 (factors comprise only some of those which can be considered in a totality of the circumstances test).

Turning to the six factors in Gaynor, we find that the releases Finz signed are in writing and are clear and specific. As a practicing attorney who spent twelve years as a state court judge, Finz was adequately aware of his legal rights. Even if he was unfamiliar with ERISA, there is no indication that he was denied the opportunity to consult with counsel. Although Finz contends that the releases were not negotiated, there was clearly the opportunity for negotiation, at least from the time Finz left defendants' firm in the beginning of April to the signing of the releases in early May. Thus, the only factors about which there is any question are whether there was a full and accurate disclosure and whether the consideration given for the release was adequate.

As to whether defendants' disclosure was full and accurate, Finz argues that the defendants violated their fiduciary duty to disclose to him the terms of the pension plan, despite his demands before and after signing the releases for copies of summary descriptions of the plan. Finz also alleges that defendants failed to file with the Department of Labor a summary description of the plan, further thwarting his efforts to obtain information about the plan. These arguments essentially restate Finz's ERISA claims and his claim that defendants fraudulently induced him into settling his ERISA claims. We find that, to the extent Finz was not adequately informed of the details of the ERISA plan, he waived his right to be so informed when entering into the settlement agreement.

As indicated by the language of the settlement agreement and Finz's own testimony in Brown v. Metropolitan Transportation Authority (Schlesinger Aff. Exhibit D) (Finz left defendants' firm "[w]hen the pension that [he] was entitled to was taken away from

3

[him]"), Finz was aware of his claim against the plan. More importantly, Finz had demanded a summary description of the plan *before* entering into the settlement agreement. Complaint ¶ 69. Thus, one of the rights Finz released in settling with defendants was the right to be better informed. Instead of pressing his right to more information, Finz settled his claims against the defendants. Finz's claim that defendants falsely denied his participation in the plan is essentially an attempt to relitigate the merits of the dispute he settled with the defendants, without insisting on full and accurate disclosure, in 1984.

Finz's argument that he did not receive adequate consideration for signing the releases is without merit. According to the settlement agreement, which also resolved, in addition to the parties' dispute over Finz's ERISA benefits, the parties' dispute about Finz's asserted ownership of a stock or equity interest in defendants' firm, Finz received $75,000 at the time of the execution of the agreement and the signing of the releases. Agreement ¶ 11. Finz avers that this $75,000 represents "the balance of the bonus *promised* to [him] in December 1983 [by defendants] and *not* . . . underlying consideration for anything in the May 4, 1984 agreement." Finz Aff. at 4 (emphasis in original). Furthermore, Finz states, "the correctness of this statement can be verified during discovery by reference to defendant's accounting records." Pltf. Mem. at 12.

Finz's efforts to avoid the plain and unambiguous meaning of the settlement agreement by resorting to extrinsic evidence is unavailing. In interpreting a contract, "the court is required to discern the intent of the parties to the extent their intent is evidenced by their written agreement. . . . Where the parties' intent is 'clearly and unambiguously set forth, effect must be given to the intent as indicated by the language used.'" *International Klafter Co. v. Continental Casualty Co.*, 869 F.2d 96, 99 (2d Cir. 1989) (quoting *Slatt v. Slatt*, 64 N.Y.2d 966, 967, 488 N.Y.S.2d 645, 646 (1985)). No parol evidence or extrinsic evidence is admissible. *Id.* at 100. The agreement clearly contemplates that, as part of the settlement of the disputes between the parties, Finz would receive $75,000. There is no mention in the settlement agreement of Finz's claim to a bonus assertedly promised to him. We conclude that Finz received $75,000 as consideration for releasing his ERISA claims and his stock or equity interest claims against the defendants.[2]

Defendants argue that Finz also received, as a result of the agreement, the "[c]ases which [Finz] claims [he] brought into

---

[2]  Finz does not contend that the $75,000 was not adequate consideration for settling his disputes with the defendants. He contends only that the $75,000 was not consideration at all. As we have indicated, we reject that contention.

4

[Julien & Schlesinger]" (see Agreement ¶ 12), and assumed the lease of, with an option to purchase, a Mercedes automobile (id. ¶ 19). Finz attempts to devalue these parts of the agreement. He states that the reference to his caseload simply involved cases which defendants would be "duty bound to turn over" once valid stipulations of substitution of attorneys were executed. Finz Aff. at 6. He further states that he took over the lease of the Mercedes, on which $27,000 in monthly payments remained, essentially as a favor to Schlesinger. Id. at 5. Again, this extrinsic information is not set forth in the settlement agreement, the language of which suggests that the Mercedes lease and the caseload were part and parcel of the consideration Finz received for signing the releases. In any event, the $75,000 referred to above represents valuable consideration.

We conclude, from the totality of the circumstances, that the settlement and releases entered into by Finz are valid and enforceable, and that they bar Finz's claims against the defendants.[3] Defendants' motion for summary judgment is granted, and the Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

KENNETH CONBOY, U.S.D.J.

Dated: New York, New York
       June 6, 1991

---

[3] The agreement and releases extinguish all of Finz's ERISA claims against the defendants. The general releases declare that Finz agreed to release the defendants from "all actions [or] causes of action." Schlesinger Aff. Exhibit C. The settlement executed by the parties unambiguously reflects the same understanding: it specifically refers to Finz's claim that he "is or was entitled to the benefits [under the pension plan] as a covered employee" but that "[a]s a consequence of the dispute" Finz would execute the general releases in favor of the defendants. The language of the agreement and releases thus indicates that Finz had made ERISA claims for, inter alia, pension benefits, that his claims were disputed by the defendants, and that the parties decided to settle their differences by entering into a settlement agreement.