UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANICE C. AMARA, individually and on behalf of others similarly situated, | : | |
| | : | 3:01 CV 2361 (MRK) |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| CIGNA CORP. AND CIGNA PENSION PLAN, | : | |
| | : | |
| Defendants. | : | APRIL 13, 2005 |

**DEFENDANTS' MEMORANDUM OF LAW IN ADVANCE OF THE APRIL 20, 2005
CONFERENCE REGARDING THE PARTIES' DISCOVERY DISPUTE**

I.   **INTRODUCTION**

This memorandum sets forth the legal principles that, Defendants respectfully submit, should govern the dispute between Plaintiffs and Defendants regarding certain documents listed on Defendants' privilege logs, and addresses (1) Plaintiff's claim that Defendants waived any privilege applicable to the documents on Defendants' third privilege log, (2) whether the documents on Defendants' log are protected from disclosure by the attorney-client privilege or work product doctrine, and (3) whether the documents are subject to the "fiduciary exception" to the attorney-client privilege.[1]

---

[1] The "fiduciary exception" does not apply to documents protected from disclosure as work product. See infra at 8-10.

II. **ARGUMENT**

    A. **Defendants Did Not Waive The Protections From Disclosure Afforded By The Attorney-Client Privilege Or Work Product Doctrine With Respect To The Documents On Defendants' Supplemental Privilege Log.**[2]

        1. **The Court Has Already Ruled That There Has Been No Waiver Of The Attorney-Client Privilege Or Work Product Protection And There Is No Basis For Reconsidering That Decision.**

In its June 18, 2003 Motion to Enforce, Plaintiff argued that Defendants had waived the attorney-client privilege by not timely producing a privilege log. (Pl. Br. at 5, § 3a). In their Opposition Brief, Defendants denied that they had waived the privilege and also explained to the Court that, consistent with Defendants' obligation under the Federal Rules of Civil Procedure 26(e) to supplement their discovery responses, Defendants would be producing a third privilege log within seven days describing additional recently discovered documents responsive to Plaintiff's discovery requests that were either privileged or constituted work product.[3] (Def. Opposition to Motion to Enforce at 27, § D).

After briefing on the Motion to Enforce was complete, and Defendants had produced their third privilege log to Plaintiff as promised, this Court, per Judge Squatrito, granted limited aspects of Plaintiff's Motion to Enforce. However, the Court made no finding that Defendants had waived the attorney-client privilege or work product protection. To the contrary, the Court denied the Motion to Enforce "in all other respects." (Order dated Aug. 27, 2003). Defendants respectfully submit that Judge Squatrito's August 27, 2003 Order therefore already rejected Plaintiff's waiver argument and ruled that there had been no waiver as to all documents –

---

[2]     The parties March 4, 2005 Joint Status Report makes clear that Plaintiff argues only that Defendants waived the privilege as to those documents on Defendants' third privilege log. (¶ (A)(4)).

[3]     As explained infra, that privilege log also contained a list of other documents duplicative of a privilege log previously produced to counsel for Plaintiff in the Depenbrock v. CIGNA case.

including those on Defendants' third privilege log. There is no reason to reconsider that decision.

### 2. There Is No Basis For Finding A Waiver Of The Attorney-Client Privilege Or Work Product Protection Because Waiver Is An Extreme Sanction Not Warranted On The Facts Of This Case.

Even were this Court to review Plaintiffs' argument anew, there has been no waiver. The only documents that are the subject of Plaintiff's waiver argument are those on Defendants' third privilege log. (Joint Status Report at ¶ (A)(4)). This log describes two categories of documents: (1) documents on a privilege log previously produced to Plaintiff's counsel in connection with the Depenbrock v. CIGNA case; and (2) documents discovered only recently before Defendants' provided their supplemental log to Plaintiff's counsel.

As to the first set of documents – Depenbrock v. CIGNA documents – it is undisputed that Defendants previously provided Plaintiff's counsel a privilege log describing all of these documents. (Opposition to Motion to Enforce at 16). Nothing in the Federal Rules of Civil Procedure required Defendants to provide a second copy of the same privilege log to Plaintiff's counsel with a new caption from this case in order to preserve the privilege. The salient point is that Plaintiff's counsel was given adequate notice of Defendants' assertion of privilege in a manner that plainly enabled Plaintiff's counsel "to assess the applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5). Given these circumstances, Plaintiff's waiver argument should be rejected.

As to the second set of documents, as Defendants' counsel explained to Judge Squatrito, these documents were discovered only a short time before Defendants supplemented their privilege log to identify the documents. (Opposition to Motion to Enforce at 23). This supplementation does not constitute a waiver of the attorney-client privilege or the work product

3

doctrine. To the contrary, the Federal Rules of Civil Procedure specifically contemplate and, indeed, authorize, parties to supplement their discovery responses when additional responsive information is discovered. Fed. R. Civ. P. 26(e).

Plaintiff's waiver argument also is grounded on a misreading of the law. The Federal Rules of Civil Procedure do not require that a party produce a privilege log at the time it first asserts its attorney-client privilege and work product objections. See Jackson v. County of Sacramento, 175 F.R.D. 653, 656 (E.D. Cal. 1997) ("Rule 26(b)(5) also requires the party asserting the [attorney-client] privilege to describe the nature of the documents withheld in a manner that enables the requesting party to assess the claim, but the rule does not specify **when** the required description must be provided.") (underline added; emphasis in bold in original); Boca Investerings Partnership v. United States, No. 97-602, 1998 WL 426567, *2 (D.D.C. Jan. 20, 1998) (holding that there was no waiver of the privilege because no federal rule requires that a privilege log be produced when the responding party makes its objections or provides that the privilege is waived if not produced at that time). Nor do the District of Connecticut Local Rules require that a privilege log be submitted at the time initial objections to discovery responses are raised, or provide that a privilege log not served with the initial objections constitutes a waiver of the privilege. Local Rule 9(d)(1) governs only the substance of privilege logs, not the timing of them.[4]

Because of the importance of the attorney-client privilege, courts have routinely rejected claims of waiver based on a belated production of a privilege log. In RMED Intl. v. Sloan's

---

[4] See First Aviation Svcs. v. Gulf Ins. Co., 205 F.R.D. 65, 67-68 (D. Conn. 2001) (noting that Local Rule 9(d)(1) governs the content of privilege logs and ordering the plaintiff to produce a privilege log that complies with the Local Rule). Notably, the First Aviation court did not hold that the privilege was waived by not timely producing a privilege log that complied with the Local Rules.

Supermarkets, Inc., No. 94 Civ. 5587, 2003 WL 41996, *3 (S.D.N.Y. Jan. 26, 2003), for example, the court applied the Local Rules for the Southern District of New York, which, unlike this Court's Rules, require that a privilege log be supplied "within the time provided by the Federal Rules" for objections and responses to discovery requests. See id. at *3 (quotation and citation omitted). Nonetheless, the court held that because of the importance of the attorney-client privilege, the court would base its determination of a waiver on the "nature of the violation, its willfulness or cavalier disregard for the rule's requirements, and the harm which results to other parties." Id. at *3 (internal quotation and citation omitted) (finding no waiver).[5]

Waiver is particularly inappropriate where, as here, a party has supplemented its earlier privilege log in accordance with Fed. R. Civ. 26(e). See Woodland v. Nalco Chem. Co., Civ. No. 01-3337, 2003 WL 22928808, * 4 (E.D. La. Dec. 8, 2003) (holding that there was no waiver of privilege in connection with supplemental response because "the draconian remedy of waiver is not warranted.").

Defendants have acted in good faith to comply with the Federal Rules of Civil Procedure, Local Rules and this Court's Orders. Plaintiff has suffered no prejudice by Defendants' supplementation of their privilege log and has had the opportunity to challenge Defendants' privilege assertions on their merits. Accordingly, the Court should find that there has been no waiver of the attorney-client privilege or work product protection with respect to the disputed documents.

---

[5] See also Carlson v. Freightline, LLC, 226 F.R.D. 343, 363 (D. Neb. 2004) (holding that there was no waiver where defendants failed to promptly raise privilege objections); Heavin v. Owens-Corning Fiberglass, No. 02-2572, 2004 WL 316072, *2 (D. Kan. Feb. 3, 2004) (same); Tyne v. Time Warner Entertainment Co., L.P., 212 F.R.D. 596, 600 (M.D. Fla. 2002) (same); EEOC v. Safeway Store, Inc., No. C-00-3155, 2002 WL 31947153, *2 (N.D. Cal. Sept. 16, 2002) (same).

### B. Plaintiff's Challenges To Defendants' Attorney-Client Privilege And Work Product Objections Are Not Well-Founded.

Plaintiff raises two primary challenges to Defendants' attorney-client privilege and work product objections. First, Plaintiff disputes Defendants' assertion of privilege with regard to documents relating to the drafting and design of the plan, both before and after the date the original cash balance plan document was executed on December 21, 1998.[6] Second, Plaintiff challenges Defendant's work product objections with respect to documents relating to Plaintiff's threatened litigation against them. Neither of these challenges are well-founded.

#### 1. Communications With Counsel Related To The Drafting Or Design Of The Plan Both Prior To December 21, 1998 and After December 21, 1998 Are Privileged Because They Reflect Legal Advice To CIGNA In Its Capacity As Plan Sponsor.

CIGNA's communications with counsel related to the drafting or design of the plan document – both before and after December 21, 1998 – are privileged because they reflect legal advice sought or received by CIGNA in its capacity as plan sponsor. It is well-settled that when an employer adopts, amends, modifies or terminates a benefit plan, it is acting in a settlor capacity as plan sponsor, not as a fiduciary. See Lockheed v. Spink, 517 U.S. 882, 890 (1996). The Third Circuit provided the following guidance with respect to the fiduciary/non-fiduciary dichotomy:

> The jurisprudence in this area is marked by a sharp distinction between 1) the sponsors of a plan acting as an administrator (which is discretionary and therefore fiduciary) and 2) the sponsors of a plan amending, altering, terminating, or otherwise redesigning the plan itself (functions considered to be not discretionary and therefore not fiduciary). "Discretion" for the purpose of determining the applicability of the fiduciary obligations **means solely that the plan administrator is making a choice reserved to it by the plan document in administering the plan, not tinkering with the plan document itself.**

---

[6] Documents in this category dated after December 21, 1998 relate to legal advice sought in connection with proposed amendments to the December 21, 1998 plan document.

6

Walling v. Brady, 125 F.3d 114, 119-120 (3d Cir. 1997) (footnote omitted) (emphasis added). Thus, plan design, and even "tinkering" with the language in a plan document, are settlor functions because they determine what the terms of the plan are -- not what those terms might mean or how they should be interpreted.

Moreover, although Defendants do not dispute that the fiduciary exception to the attorney-client privilege applies when a lawyer advises a <u>fiduciary</u> with respect to the <u>administration</u> of a benefit plan, where an employer is not acting in a fiduciary capacity, the fiduciary exception does not apply. Critically, an employer may perform both fiduciary and non-fiduciary functions under ERISA. See Varity Corp. v. Howe, 516 U.S. 489, 498 (1996). By doing so, an employer does not subject all of its otherwise privileged communications to the fiduciary exception. Instead, only those communications related to plan administration are subject to the exception. See In re Long Island Lighting Co., 129 F.3d 268, 273 (2d Cir. 1997) (holding that the fiduciary exception does not defeat defendant's "invocation of the attorney-client privilege with respect to communications with its attorneys on non-fiduciary matters"). Relying on this fiduciary/non-fiduciary distinction, Judge Arterton rejected a challenge similar to that made by Plaintiff here regarding documents prepared "for the purpose of rendering legal advice regarding <u>many aspects of potential plan amendments</u> or enhancements, including their disclosure." Hudson v. General Dynamics, 73 F. Supp. 2d 201, 203 (D. Conn. 1999). In concluding that the documents were properly withheld, Judge Arterton reasoned:

> By agreeing to serve as a fiduciary, an ERISA trustee is not completely debilitated from enjoying a confidential attorney-client relationship. The employer's ability to invoke the attorney-client privilege to resist disclosure sought by plan beneficiaries turns on whether or not the communication concerned a matter as to which the employer owed a fiduciary obligation to the beneficiaries.

7

Judge Arterton specifically "reject[ed] an expansive interpretation of the fiduciary exception," holding instead that "where the attorney-client privilege is concerned, hard cases should be resolved in favor of the privilege." Id. at 203 (quotations and citations omitted) (emphasis added).[7]

Here, documents regarding legal advice sought in connection with plan design and drafting the actual written terms of the plan, including drafts of the plan document, are privileged, regardless of whether the documents relate to the original cash balance plan document, executed on December 21, 1998, or proposed amendments to that document considered after that date.

> **2.    Communications With Counsel Regarding Plaintiff's Challenge To The Design Of The CIGNA Plan Constitute Protected Work Product To Which The Fiduciary Exception Does Not Apply.**

Although the fiduciary exception may require disclosure of legal advice sought in connection with ordinary plan administration activities, it does not apply to legal advice given to fiduciaries seeking to protect their own personal interests and defend themselves in litigation. Thus, the fiduciary exception does not require the disclosure of documents that constitute work

---

[7]    This same reasoning applies to drafts of the plan document that reflect the legal advice provided to the plan sponsor in connection with the drafting process. See e.g., Lasalle Bank National Assoc. v. Lehman Bros. Holdings, 209 F.R.D. 112, 120 (D. Md. 2002) (upholding attorney-client privilege as to draft of document where final document was sent to third parties because "these drafts contain notes and suggested amendments to the drafts. They accordingly disclose the thought processes of counsel in connection with plaintiff's claim against [defendant.] These drafts are clearly protected by the attorney-client privilege and the work product doctrine."); Voice-Tel Enterprises v. Joba, Inc., 258 F. Supp. 2d 1353, 1370 (N.D. Ga. 2003) ("Document [X] is protected by the attorney-client privilege. The fact that it is a draft of a document that might later be distributed to third parties does not strip the documents of its protection. . ."); Alexander v. FBI, 186 F.R.D. 154, 162 (D. D.C. 1999) (draft public affairs statement submitted to counsel for review is privileged); McCook Metals v. Alcoa, Inc., 192 F.R.D. 242, 252 (N.D. Ill. 2000) (attorney-client privilege applies to draft patent application; holding "[a] draft necessarily reflects the communications between a client and his attorney as the attorney attempts to put forth the invention in the best light possible to protect a client's legal right. A patent draft implicitly contains the legal opinion and advice of the attorney regarding the wording. . . .").

product. See Koch v. Exide Corp., No. 88-4755, 1989 WL 49515, at *2 (E.D. Pa. May 10, 1989); Donovan v. Fitzsimmons, 90 F.R.D. 583, 587 (N.D. Ill. 1981); see also Wildbur v. Arco Chem. Co., 974 F.2d 631, 646 (5th Cir. 1992) (observing that the work product doctrine "may be successfully invoked against a pension plan beneficiary even though the attorney-client privilege is unavailable") (citations omitted). As explained by the Ninth Circuit:

> When an ERISA trustee seeks legal advice for his own protection, the legal fiction of "trustee as representative of the beneficiaries" is dispelled, notwithstanding the fact that the legal advice may relate to the trustee's administration of the trust. Similarly, where a fiduciary seeks legal advice for her own protection, the core purposes of the attorney-client privilege are seriously implicated and should trump the beneficiaries' general right to inspect documents relating to plan administration.

United States v. Mett, 178 F.3d 1058, 1064 (9th Cir. 1999) (internal citations and quotations omitted; emphasis added). Judge Arterton similarly held in Hudson that:

> The content of these documents reveal that the advice was not rendered for the benefit of the plan, its beneficiaries, or as a matter of plan administration involving the defendant's role as the beneficiaries' fiduciary, but rather for the benefit of the defendant seeking to protect itself from potential liability in connection with its consideration of future plan amendments or enhancements, which constitute non-fiduciary matters. Under these circumstances, the defendant enjoys a confidential attorney-client relationship.

Hudson, 73 F. Supp. 2d at 203 (emphasis added).

In this case, Plaintiff's counsel sent a letter claiming that the design of the Plan violated various provisions of ERISA. Notably, Plaintiff did not claim that the Plan was not being administered in accordance with its terms. Critically, in that letter, Plaintiff expressed her clear intent to file suit by requesting a tolling agreement to suspend the running of the statute of limitations on her claims. Specifically, Plaintiff's counsel requested that:

> While the fiduciaries are taking this action, please have authorized persons sign the enclosing tolling agreement. This document represents the fiduciaries' and CIGNA's agreement that any

> statutes of limitations related to these claims are tolled until the
> fiduciaries' consideration is complete.

See Opposition to Motion to Enforce, Ex. 9 at 3.

This is the proverbial shot-across-the-bow. After the proposed tolling agreement was received, it would be unreasonable <u>not</u> to anticipate litigation and seek legal advice <u>for Defendants' own protection</u>. See <u>Chemcentral/GrandRapids Corp. v. EPA</u>, No. 91 C 4380, 1992 WL 724965, *10 (N.D. Ill. Aug. 20, 1992) (holding that the documents at issue constituted work product because after the EPA executed the tolling agreement, it "reasonably anticipated litigation"). Thus, communications with counsel regarding legal advice for responding to Plaintiff's letter constitute work product and should be protected from disclosure. See <u>Hudson</u>, 73 F. Supp. 2d at 203; <u>Mett</u>, 178 F.3d at 1064.

CIGNA CORPORATION & CIGNA
PENSION PLAN

*/s/ Erin O'Brien Choquette*

James A. Wade (ct00086)
jwade@rc.com
Erin O'Brien Choquette (ct 18585)
echoquette@rc.com
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (869) 275-8299

Christopher A. Parlo (CT-04700)
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178

Joseph J. Costello
Jeremy P. Blumenfeld
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 13th day of April, 2005, via facsimile and first class U.S. mail, postage prepaid, upon the following:

>Thomas G. Moukawsher
>Moukawsher & Walsh, LLC
>328 Mitchell Street
>Groton, CT  06340
>
>Stephen Bruce
>805 15th Street NW
>Suite 210
>Washington D.C. 20005

_____
Erin O'Brien Choquette