UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANICE C. AMARA, individually and on behalf of others similarly situated, | : : : : | |
| Plaintiff, | : | 3:01 CV 2361 (MRK) |
| v. | : : | |
| CIGNA CORP. and CIGNA PENSION PLAN, | : : | |
| Defendants. | : | APRIL 13, 2005 |

PLAINTIFF'S MEMORANDUM ON
PRIVILEGE AND WAIVER ISSUES

# TABLE OF CONTENTS

Introduction ............................................................. 1

I.   Cigna Produced Its July 29, 2003 Privilege Log <u>Four Months</u> After the Deadline
     for Complying with the Court's Order Granting Plaintiff's Motion to Compel .. 2

II.  Cigna Asserts Privilege for Documents that Are <u>Not</u> Privileged under Standard
     Tests for Attorney-Client Privilege ................................... 5

III. The "Fiduciary Exception" to Attorney-Client Privilege Requires Defendants to
     Produce Documents Related to Compliance with the "Statutory Regime" ...... 8

IV.  Additional Factors Further Show that the Documents in Categories "a" through
     "e" Relate to Plan Administration ................................... 11

V.   The Case Law Is Inconsistent with Cigna's Assertion of Work-Product Protection
     for the Claim-Related Documents in Categories "f" and "g"; Cigna Has Not
     Shown Any "Threat of Litigation" to Defeat This Rule ................... 13

Conclusion ............................................................ 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Burlington Northern v. U.S. District Court*, __ F.3d __ 2005 WL 730193
    (9th Cir. March 31, 2005) .................................................................. 3

*Chase Manhattan Bank v. Turner & Newall, PLC*, 964 F.2d 159 (2d Cir. 1992) .. 4

*Coffman v. Metropolitan Life Insurance*, 204 F.R.D. 296 (S.D.W.Va. 2001) ..... 14

*Colton v. United States*, 306 F.2d 633 (2d Cir. 1962) ............................................ 5

*Curtiss-Wright v. Schoonejongen*, 514 U.S. 73 (1995) ................................ 6, 9, 13

*In re DG Acquisition Corp.*, 151 F.3d 75 (2d Cir. 1998) ........................................ 4

*Depenbrock v. CIGNA*, 389 F.3d 78 (3d Cir. 2004) ................................................ 5

*Everett v. USAir Group*, 165 F.R.D. 1 (D.D.C. 1995) ...................................... 7, 12

*Fischel v. Equitable Life Assurance*, 191 F.R.D. 606 (N.D. Cal. 2000) .............. 10

*Geissal v. Moore Medical*, 192 F.R.D. 620 (E.D. Mos. 2000) ............................. 14

*Get-a-Grip v. Hornell Brewing Co.*, 2000 U.S. Dist. LEXIS 11961 (E.D. Pa.
    2000) ..................................................................................................... 4

*Hardy v. New York News, Inc.*, 114 F.R.D. 633 (S.D.N.Y. 1987) .......................... 7

*Helt v. Metropolitan District Commission*, 113 F.R.D. 7 (D.Conn. 1986) ...... 8, 15

*Henry v. Champlain Enterprises*, 212 F.R.D. 73 (S.D.N.Y. 2003) ........................ 8

*Hudson v. General Dynamics*, 73 F.S.2d 201 and 186 FRD 271
    (D.Conn.1999) .................................................................................. 8, 10

*Lewis v. UNUM Corp. Severance Plan*, 203 F.R.D. 615 (D. Kan. 2001) .. 6, 12, 14

*In re Long Island Lighting Co.*, 129 F.3d 268 (2d Cir. 1997) ............................ 8-9

*Petz v. Ethan Allen, Inc.*, 113 F.R.D. 494 (D.Conn. 1985) .................................... 8

*SCM Corp. v. Xerox*, 70 F.R.D. 508 (D.Conn.), *appeal dismissed*, 534 F.2d 1031 (2d Cir. 1976) .................................................................................. 5

*U.S. v. Horvath*, 731 F.2d 557 (8th Cir. 1984) ....................................................... 8

*United States v. IBM*, 66 F.R.D. 206 (S.D. N.Y. 1974) ........................................... 5

*United States v. Mett*, 178 F.3d 1058 (9th Cir. 1999) ............................................. 8

*Valence v. Pepsico*, 68 F.R.D. 361 (D.Del. 1975) ................................................... 8

*Varity Corp. v. Howe*, 516 U.S. 489 (1996) ........................................................ 8-9

*In re WorldCom, Inc. ERISA Litigation*, 263 F. Supp. 2d 745 (S.D.N.Y. 2003) ... 6

## FEDERAL STATUTES

ERISA § 204(h), 29 U.S.C. §1104(h) ..................................................................... 9

ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D) ................................................. 9

ERISA § 503, 29 U.S.C. §1133 ............................................................................. 13

29 C.F.R. 2560.503-1(h)(2) and (m)(8) ................................................................ 14

## MISCELLANEOUS

Edna S. Epstein, *The Attorney-Client Privilege and the Work Product Doctrine* (ABA 4th ed.) ................................................................................................. 5-7

**Introduction**

Local Rule 9(d) reinforces Federal Rules 26(a)(5) and 34 by requiring a party asserting privilege to provide a privilege log for all documents withheld on such grounds. Plaintiff has to date served only twenty-five document requests, all of which were dated May 14, 2002. Defendants' original responses to those document requests, dated June 17, 2002, took the position that practically nothing was "relevant" to this lawsuit other than a copy of the "Plan" document. No privilege log accompanied the responses. Because Defendants' production was insufficient, Plaintiff filed a motion to compel on August 15, 2002. Thereafter, a privilege log listing only 16 documents connected to Janice Amara's individual claim for benefits was supplied on August 22, 2002.

On February 19, 2003, Judge Squatrito rejected Cigna's irrelevancy and overbreadth objections and entered an Order compelling Cigna to produce documents responsive to Plaintiff's document requests by March 21, 2003, with certain limitations not relevant here. Dkt. #67. On March 21, 2003, Cigna amended its written responses, indicating that documents would be produced at a "mutually convenient time and location." Ex. 1. Cigna produced four boxes of documents on the same date, but a cover letter stated that "still other" documents would be produced at later dates. *Id*. Cigna did not seek permission from the Court for any extension. Cigna produced additional documents on April 15, 2003 and May 7, 2003. On May 27, 2003, Cigna produced a "supplemental" privilege log listing 165 documents.

On June 18, 2003, Plaintiff filed another motion to enforce the Court's February

19, 2003 Order and sanction Defendants for non-compliance. In a July 21, 2003 response, Defendants opposed that motion, but agreed to produce additional documents. On July 29, 2003 Cigna produced additional documents accompanied by a "second supplemental" privilege log. The "second supplemental" log listed 267 additional "privileged" documents – 118 documents previously logged in the *Depenbrock v. CIGNA* litigation in the Eastern District of Pennsylvania (D1 - D118), plus 149 others. Defendants did not file the second supplemental privilege log with the Court.

Based on Plaintiff's Motion to Enforce and Defendants' July 21, 2003 Opposition, Judge Squatrito issued an August 27, 2003 Order directing, in part, that "Defendant shall produce to the court all documents listed in its privilege log for an <u>in camera</u> review on or before October 3, 2003." Dkt. #75. In response to that Order, Cigna submitted not only the documents listed in the August 22, 2002 and May 27, 2003 privilege logs, but also the 267 documents on the log which the Court had never seen. Defendants asserted privilege for 448 documents altogether.[1]

I. **Cigna Produced Its July 29, 2003 Privilege Log <u>Four Months</u> After the Deadline for Complying with the Court's Order Granting Plaintiff's Motion to Compel**

As indicated above, even Cigna's initial privilege log was untimely. The first supplemental privilege log dated May 27, 2003 was more than two months after the date

---

[1] In response to your Honor's request that the parties narrow the number of documents before the Court, Plaintiff withdrew her motion to compel for 63 of these documents. Defendants declined to produce any of the remaining 385 documents.

2

Cigna was to comply with the Court's order compelling production. The second supplemental privilege log dated July 29, 2003 was more than four months after the date on which Cigna was ordered to comply.

Plaintiff initially challenged the first "supplemental" privilege log on the ground of waiver, but will limit the challenge here to the second log because it was not prepared until both: (1) four months after the date for compliance with Judge Squatrito's February 23, 2003 Order, and (2) after all the briefing on the motion to enforce that Order was complete. In the second supplemental log, CIGNA submits close to <u>one and one-half times</u> as many documents in its original privilege log and First Supplemental Privilege Log combined. Plaintiff was prejudiced by the filing of the second supplemental privilege log. Because Defendants only filed it <u>after</u> the briefing on the motion to enforce was complete, Judge Squatrito and Magistrate Judge Martinez lacked any briefing from the Plaintiffs on the disposition of those 267 documents.

While privilege logs are often allowed to be produced within a "reasonable time" after the Rule 34 time limit for responding to a request for production of documents, a party cannot simply ignore a Court order and produce a log at any subsequent time. See *Burlington Northern v. U.S. District Court*, __ F.3d __, 2005 WL 730193 at *5 (9th Cir. March 31, 2005) (district court did not err in ruling that privileges were waived by failing to produce privilege log where defendant was "sophisticated corporate litigant" for whom production was not "overly burdensome" and privilege log was not produced until "five

months" after Rule 34's time limit); *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998) (privilege may be waived if log is not produced within a "reasonable time"; an extension can be sought if more time is needed); *Chase Manhattan Bank v. Turner & Newall, PLC*, 964 F.2d 159, 166 (2d Cir. 1992) (failure to comply with local rule can result in a finding that privilege has been waived). Ignoring a Court order compelling production of documents by a certain date is <u>not</u> a situation in which courts have been forgiving. *Get-a-Grip v. Hornell Brewing Co.*, 2000 U.S. Dist. LEXIS 11961 (E.D. Pa. 2000) (privilege waived as "untimely asserted" when neither documents nor privilege log was produced within 10 days of Court's order).

The untimely claim of privilege for all of the documents in the D1 - D118 series is particularly egregious because these documents were long known to Cigna. Cigna prepared all of the *Depenbrock* logs before October 2002. See *Burlington Northern*, supra (because "many of the same documents were the subject of discovery in an earlier action," documents could obviously have been logged earlier). In an October 3, 2003 letter to Judge Squatrito, Defendants attempted to indirectly excuse their non-compliance by relying on an Order from Judge Robert F. Kelly in the *Depenbrock* litigation about the privileged status of those documents. Ex. 2. This argument falls short for three reasons. First, it has nothing to do with waiver. Second, Judge Kelly only ruled on less than half of those documents, as Plaintiff pointed out in an October 10, 2003 letter to Judge Squatrito. Ex. 3. And third, the Third Circuit reversed Judge Kelly's grant of summary judgment to

Cigna on November 10, 2004 and expressly did not "reach ... the correctness of the District Court's finding of attorney-client privilege." 389 F.3d at 86. The Third Circuit pointedly observed that Judge Kelly had "invited CIGNA to submit an ex parte memorandum in support of its [privilege] claims" and "denied Depenbrock's motion to compel without offering any explanation for its finding." 389 F.3d 80-81.

## II. Cigna Asserts Privilege for Documents that Are <u>Not</u> Privileged under Standard Tests for Attorney-Client Privilege

Cigna asserts privilege for a number of documents that are <u>not</u> privileged under the standard tests for attorney-client privilege. The attorney-client privilege protects confidential communications with an attorney for the purpose of obtaining legal advice. The privilege is not designed to protect non-confidential communications or legal advice as such. Edna S. Epstein, *The Attorney-Client Privilege and the Work Product Doctrine* (ABA 4th ed.), at 52-62 (although lawyer's advice is frequently protected if it will reveal the client's underlying communication); *Colton v. United States*, 306 F.2d 633, 637 (2d Cir. 1962); *SCM Corp. v. Xerox*, 70 F.R.D. 508, 522 (D.Conn.), *appeal dismissed*, 534 F.2d 1031 (2d Cir. 1976); *United States v. IBM*, 66 F.R.D. 206, 211-12 (S.D. N.Y. 1974).

If communications about proposed pension amendments do not represent "confidential" communications under the standard rules, there is no basis for asserting attorney-client privilege. Here, Cigna logs many documents where a lawyer did not either author or receive the document or where a lawyer was only one of many recipients of the communication. A lawyer's presence on a list of recipients is not enough to make a

5

communication privileged. See, e.g., Edna S. Epstein, supra, at 162 (citing cases). Defendant also claims privilege for documents which "transmit" other documents which were not prepared for the purpose of seeking legal advice. For example, a number of documents transmit other documents prepared for compliance purposes by the plan's actuary, Arthur Assantes. See, e.g., # 30, 137, 186, and 292.

Cigna's assertions of privilege fall short on another standard ground: Even if communications were originally prepared to obtain legal advice about a non-fiduciary function, the communications were shared with persons with fiduciary responsibilities. Indeed, the persons listed on Cigna's log are almost all persons with administrative rather than senior executive responsibilities. For example, John Arko, Stewart Beltz, and Gerry Meyn, have all been described by CIGNA as "plan administrators" a role which is unquestionably fiduciary. See Ex. 8 and *Curtiss-Wright v. Schoonejongen*, 514 U.S. 73, 82 (1995). Individuals who wear two hats – that of a corporate insider and that of an ERISA fiduciary – cannot make a schizoid claim to have known information only in a corporate capacity: "When a corporate insider puts on his ERISA hat, he is not assumed to have forgotten adverse information he may have acquired while acting in his corporate capacity." *In re WorldCom, Inc. ERISA Litig.*, 263 F.Supp.2d 745, 765 (S.D.N.Y. 2003).

As with disclosure to third-parties, disclosure to persons with non-confidential responsibilities waives the privilege. In *Lewis v. UNUM Corp. Severance Plan*, 203 FRD 615, 620-21 (D. Kan. 2001), the court found that even if a category of documents was

prepared for the company in a non-fiduciary capacity, all of the documents indicated disclosure to the plan administrator. The plan administrator had fiduciary responsibilities to the beneficiaries. Disclosure of the communications to the plan administrator functioned as disclosure to a third party. The court applied the "well-established principle" that the "privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party." And see generally Edna S. Epstein, supra, at 78-81; *Hardy v. New York News, Inc.*, 114 F.R.D. 633, 644 (S.D.N.Y. 1987) (privilege lost where documents commingled with the general files of the corporation). Because the party asserting privileged bears the burden of establishing all elements, the *Lewis* court held that UNUM also had the burden of disproving disclosure to the plan administrator. 203 FRD at 621; accord *Everett v. USAir Group,* 165 FRD 1, 4 (D.D.C. 1995) (party asserting privilege must show that documents "are wholly unrelated to plan administration and have not been used in connection with defendants' role as plan administrator").

Cigna's privilege log also repeatedly asserts attorney-client privilege for scrivener's efforts in drafting and redrafting plan documents. As with the drafting of written contracts, drafting or redrafting plan documents can be done by a lawyer or a non-lawyer. Here, the responsibility for accumulating comments on the draft plan documents was that of a non-lawyer and comments were solicited from both non-lawyers and lawyers. See Ex. 4 (at 75-76). As with the drafting of contracts, the drafting, editing and

7

wordsmithing of a plan document does not inherently entail legal advice. Hence, a party does <u>not</u> answer the question of whether a document is privileged by logging it as a "draft" of a plan amendment. See *U.S. v. Horvath*, 731 F.2d 557, 561 (8th Cir. 1984); *Engers v. AT&T*, CA 98-3660 (D.N.J. 10/3/2001 and 11/30/2001) (attached as Ex. 5) (assertion of privilege denied for "scrivener" drafts in Cat. "D"; reconsideration denied).

### III. The "Fiduciary Exception" to Attorney-Client Privilege Requires Defendants to Produce Documents Related to Compliance with the "Statutory Regime"

The "fiduciary exception" to attorney-client privilege applies when a lawyer advises an individual with fiduciary responsibilities about matters related to the administration of the trust. The principle is that information about plan administration, including compliance with the "statutory regime," involves the exercise of fiduciary responsibilities. *Varity Corp. v. Howe*, 516 U.S. 489, 504 (1996). In these circumstances, the attorney's ultimate client is <u>not</u> the fiduciary personally, but the trust beneficiaries. *In re Long Island Lighting Co.*, 129 F.3d 268, 271-73 (2d Cir. 1997); *Henry v. Champlain Enterprises*, 212 FRD 73, 85-86 (S.D.N.Y. 2003); *Hudson v. General Dynamics*, 73 F.S.2d 201, 202-3, and 186 FRD 271, 273-4 (D.Conn. 1999); *Helt v. Metropolitan Dist. Comm'n*, 113 FRD 7, 9 (D.Conn. 1986); *Petz v. Ethan Allen, Inc.*, 113 FRD 494, 497 (D.Conn. 1985). The advice the fiduciary receives is not privileged because "a fiduciary owes the obligation to his beneficiaries to go about his duties without obscuring his reasons from the legitimate inquiries of the beneficiaries." *Valence v. Pepsico*, 68 FRD 361, 370 (D.Del. 1975).

Because the trust beneficiaries are the "real clients," *United States v. Mett*, 178 F.3d 1058, 1063 (9th Cir. 1999), an "ERISA fiduciary must make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan." *In re Long Island Lighting, supra*, 129 F.3d at 272. Here, Cigna's privilege log and its opposition brief assert that any document which it labels as related to "plan design" or "plan amendment" cannot be subject to the fiduciary exception because those are functions for which Cigna has no fiduciary responsibilities. As already indicated above, however, even accepting the accuracy of Cigna's labeling, one of the most distinctive characteristics of company-sponsored pension plans is that the same individuals have "multiple responsibilities" in plan design and plan administration. Because ERISA imposes many statutory requirements, legal advice usually relates to both plan design and administration. For example, ERISA § 204(h), 29 U.S.C. §1104(h), requires the "plan administrator" to give participants advance notice <u>before</u> the effective date of an amendment that will reduce future accruals.

The Supreme Court has held that compliance with ERISA's statutory requirements is a plan administrator/fiduciary's "responsibility." *Curtiss-Wright v. Schoonejongen*, 514 U.S. 73, 82 (1995) (citing ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D)); accord *Varity Corp. v. Howe*, 516 U.S. 489, 504 (1996) (plan administration involves "complying with the specific duties imposed by the plan documents or statutory regime" plus "activities that are the 'ordinary and natural means' of achieving the 'objective' of

the plan"). To remove any doubt, moreover, Cigna's Plan document expressly defines the responsibilities of the "Plan administrator" to include:

> "such actions as are necessary to establish and maintain the Plan as a retirement program which is at all times in <u>full and timely compliance with any law or regulation having pertinence to this Plan</u>."

Ex. 6. In *Fischel v. Equitable Life Assurance*, 191 FRD 606, 610 (N.D. Cal. 2000), the district court granted Plaintiff's motion to compel the production of "internal documents in which inside counsel reviewed and commented on the structure and design of the plan, including the plan's compliance with its statutory obligations under the Internal Revenue Code."

Although the fiduciary exception is well-established, Judge Arterton did not apply it "expansively" in *Hudson v. General Dynamics*, 73 F.S.2d 201, 202-3 (D. Conn. 1999). Instead, she examined, in camera, both the "context and the content" of three documents that defendant's general counsel or its outside counsel had prepared for senior management about an early retirement incentive offer. Based on that in camera review, Judge Arterton concluded that the "purpose" of this particular advice was <u>not</u> to assist in plan administration involving the defendant's role as a fiduciary, but was instead for a defendant "seeking to protect itself from potential liability its consideration of future plan amendments."[2] The plaintiff class submits that this Court's in camera review will show

---

[2] In another part of *Fischel*, the court likewise denied the Plaintiffs' motion to compel with respect to other documents that "comprise legal advice to management concerning the legal implications and potential liability for the sponsor and the trustees' in amending and designing the ERISA plan." This decision was based on the Court's in camera review of the "content and context of these documents." The Court found it "apparent that [1] litigation is anticipated and

10

that Judge Arterton's decision is inapplicable here because the advice in *Hudson* did not concern compliance with statutory requirements which are the plan fiduciaries' responsibility. Here, moreover, no independent source of legal advice exists for the fiduciaries to comply with their statutory responsibilities and the responsibilities given them in the Plan document.

Accordingly, even for the communications in Category "a" that occurred <u>before</u> the cash balance amendments became effective on January 1, 1998 and would otherwise be privileged under the standard tests, the legal advice inevitably served as the advice on which fiduciaries relied in administering the plan and determining whether it complied with ERISA. No Chinese wall was maintained to keep the pre-1998 advice from the fiduciaries. Cigna does not assert that the individuals who carry out the plan administration functions for Cigna (John Arko, Gerald Meyn, Stewart Beltz, etc.), were either separated by a Chinese wall or that they relied on any independent advice in fulfilling their functions.

### IV. Additional Factors Further Show that the Documents in Categories "a" through "e" Relate to Plan Administration

Although Plaintiff's counsel have not seen the documents, we can illustrate the relation of many of them to plan administration. The documents in Category "e" are ones that Cigna's own descriptions show to be compliance-related. For example, #137 and 186

---

[2] the advice relates to the <u>potential exposure of the trustees in their personal capacity</u>." 191 F.R.D. at 610 (emph. added).

transmit information from the plan's actuary on the results of testing the plan's benefit accruals for compliance with the IRS's "non-discrimination" tests.

In other instances, the relation to plan administration may not be apparent from the information in the log but can be shown by other documents. For example, under Category "b," exemplars #38, 241, and 296[3] relate to a 1/8/98 fax identified in other sources as "Jean's chart." Even assuming *arguendo* that this document was prepared initially for a non-fiduciary purpose, four sources show its use in plan administration. See Ex. 7, Tab A at 5108 and 5124, Tab B at 4088-89, Tab C at page 4, and Tab D. "Jean's chart" illustrates the importance of requiring the party asserting privilege to show that documents have <u>not</u> been used in plan administration, rather than simply applying labels that serve the party's interest in withholding documents. See *Lewis v. UNUM*, supra, 203 FRD at 621; *Everett v. USAir*, supra, 165 FRD at 4.

For documents in Categories "b", "c" and "d", there are two additional indicators that the documents for which Cigna asserts privilege have been used in plan administration. First, these documents were by definition prepared <u>after</u> Cigna's cash balance amendment became effective on January 1, 1998. Documents prepared after the effective date of a plan amendment are necessarily related to the administration of the amendment. After the effective date, the immediate legal issue is whether and how the provision can be implemented consistent with ERISA's requirements. Even when a

---

[3] In the list of exemplars for Category "b," the Joint Status Report erroneously refers to #298. This was a typo. The reference should be #296. Defendants were informed of the typo by e-mail on March 10, 2005.

proposal is made to amend the plan again, the communication often reflects issues in the current administration of the plan.

In Categories "c" and "d," Cigna also asserts privilege for many documents related to the <u>drafting</u> of the plan document. Even if this Court were to determine that those documents are not "scrivener's" product, the legal sufficiency of plan amendments is a fiduciary responsibility. The Supreme Court's *Curtiss-Wright v. Schoonejongen* decision establishes that the "plan administrator" has the "statutory responsibility" for "sorting out" the legal sufficiency or insufficiency of plan amendments. 514 U.S. at 82 (Plan administrator has responsibility to "run the plan" in compliance with "the provisions of the statute, which would include the amendment procedure"). Here, Cigna's Vice-President for Global Benefits testified that preparation of plan documents was the responsibility of John Arko, a non-lawyer within the Office of the Plan Administrator. See Ex. 4 (at 75-76) and Ex. 8. As indicated above, Cigna's Plan document also expressly gives the "plan administrator" the responsibility to ensure "full and timely compliance with any law or regulation having pertinence to this Plan." Ex. 6.

V.   **The Case Law Is Inconsistent with Cigna's Assertion of Work-Product Protection for the Claim-Related Documents in Categories "f" and "g"; Cigna Has Not Shown Any "Threat of Litigation" to Defeat This Rule**

The documents in Categories "f" and "g" relate to Cigna's review of Amara's and other participants' claims for benefits. ERISA § 503, 29 U.S.C. §1133, mandates that claims for benefits be reviewed by a "named fiduciary." As a result, documents related to

the fiduciaries' review of participants' claims necessarily fall under the fiduciary exception. Nor can such documents be withheld as work-product. Three cases hold that work product protection does <u>not</u> extend to legal advice rendered in connection with the internal review by ERISA fiduciaries of a participant's claim. *Lewis v. UNUM,* supra, 203 FRD at 619-20 and 623 ("fact that litigation later resulted does not change the ordinary" nature of advice); *Geissal v. Moore Medical,* 192 FRD 620, 625 (E.D. Mos. 2000) (advice given before fiduciary's final decision cannot be in anticipation of litigation); *Coffman v. Metropolitan Life Ins.*, 204 FRD 296, 299 (S.D.W.Va. 2001) (attorney "consulted in the context of the claims review process itself"). The Department of Labor's ERISA regulations on claims procedures are in accord. The regulations define "relevant" documents, which must be made available on request, to include all documents "submitted, considered or generated in the course of making the benefit determination." 29 C.F.R. 2560.503-1(h)(2) and (m)(8). No exception is made for work-product.

CIGNA does not actively dispute that attorney-client is inapplicable, but contends that work-product could still be applicable because there was a "threat of litigation." In Mrs. Amara's claim, counsel simply asked for a "tolling agreement" on any statutes of limitations in the event her claim was not resolved favorably. Ex. 8. There was no "threat" but only the prospect of post-decisional litigation, as there is with any claim that may be denied. The cases cited above stand for the principle that the "prospect of post-decisional litigation against the plan is an insufficient basis for gainsaying the

fiduciary exception." *Lewis*, *supra*, 203 FRD at 620. While the interests of the fiduciary and the beneficiaries may diverge <u>once</u> the lawsuit is filed, they cannot diverge while the fiduciary is still operating under a statutory responsibility to the beneficiary. Id. at 623. See also *Helt v. Metropolitan Dist. Comm'n*, 113 FRD 7, 11-12 (D.Conn. 1986) (defendant failed to meet initial burden of establishing that documents were "prepared in anticipation of litigation").

**Conclusion**

For the foregoing reasons, Plaintiff requests that the Court order Cigna to produce the documents in the "second supplemental" privilege log and the exemplars in Categories "a" through "g."

Dated: April 13, 2005

                                                                Respectfully submitted,

                                                                <u>By: /s/ Thomas G. Moukawsher</u>
Thomas G. Moukawsher ct08940
Ian O. Smith ct24135
Moukawsher & Walsh, LLC
21 Oak Street
Hartford, CT 06106
(860) 278-7000
tmoukawsher@mwlawgroup.com

Stephen R. Bruce ct23534 (pro hac vice)
Suite 210
805 15th St., NW
Washington, DC 20005
(202) 371-8013
stephen.bruce@prodigy.net

## CERTIFICATION

I certify that a copy of the foregoing Plaintiff's Memorandum on Privilege and Waiver Issues, with Exhibits 1 - 8, has been mailed on this date by FedEx next day delivery to the Defendants at:

>Joseph J. Costello
>Jeremy P. Blumenfeld
>Morgan, Lewis & Bockius
>1701 Market St.
>Philadelphia, PA 19103-2921
>
>Christopher A. Parlo
>Morgan Lewis & Bockius
>101 Park Ave.
>New York, NY 10178

Dated this 13th day of April, 2005.

/s/ Thomas G. Moukawsher
Thomas G. Moukawsher