Exhibit 4



**Page 1**

```
 1         IN THE UNITED STATES DISTRICT COURT
 2           FOR THE DISTRICT OF COLUMBIA
 3                    - - -
 4   JANCIE C. AMARA, et al.,   :
         Plaintiffs,             : CIVIL ACTION NO.
 5       V.                      : 3:01-2361 (DJS)
     CIGNA CORPORATION           :
 6   CIGNA PENSION PLAN,         :
         Defendant.              :
 7
                    - - -
 8            December 3, 2002
                    - - -
 9
10        Oral deposition of DAVID DURHAM, held
11   in the offices of ZANARAS REPORTING & VIDEO, 1616
12   Walnut Street, Suite 300, Philadelphia,
13   Pennsylvania 19103, commencing at 10:00 a.m., on
14   the above date, before Jennifer J. Catania, a
15   Registered Professional Reporter, CSR and Notary
16   Public.
17                  - - -
18
19        ZANARAS REPORTING & VIDEO
          REGISTERED PROFESSIONAL REPORTERS
20        1616 Walnut Street, Suite 300
          Philadelphia, Pennsylvania 19103
21             2112 Bay Avenue
          Ocean City, New Jersey 08226
22        (215) 790-7857  1-877-GO-DEPOS
23
24
```

**Page 2**

```
 1   A P P E A R A N C E S :
 2      STEPHEN R. BRUCE, ESQUIRE
        805 15th Street
 3      Suite 210
        Washington, D.C. 20005
 4      (202) 371-8013
        Attorneys for the Plaintiff
 5
     MORGAN LEWIS
 6   BY: JOSEPH J. COSTELLO, ESQUIRE
        1701 Market Street
 7      Philadelphia, Pennsylvania 19103-2921
        (215) 963-5295
 8      Attorneys for the Defendant
```

**Page 3**

```
                  I N D E X
     WITNESS                              PAGE NO.
     DAVID DURHAM
         By Mr. Bruce                        5

                  E X H I B I T S
     NO.        DESCRIPTION               PAGE NO.
      1    Affadavit                         16
      2    Document                          41
      3    Cigna Pension Plan                47
           Summary Plan Description
           Document
      4    Document                          50
      5    Document                          76
      6    12/10/96 Memo                     80
      7    Outline and Memo                  83
      8    Document entitled Cigna           93
           Pension Plan Volume 2 of 2
      9    Privelege Log                     96
     10    7/15/97 Letter                    97
     11    Overview of Features             101
           of New Plan
     12    E-mail to Onya Czaklosz          106
     13    Document                         125
     14    E-mail to Sand Lau,              138
           John Arco & William West
     15    7/16/97 Memo                     140
     16    Document                         143
     17    Answers to William H.            155
           Taylor Questions on 1998
           Benefit Changes
     (Exhibits retained by counsel.)
```

**Page 4**

```
              LITIGATION SUPPORT INDEX
     Direction to Witness Not to Answer
     Page    Line        Page    Line
      89      13

     Request for Production of Documents
     Page    Line        Page    Line
              (NONE)

     Stipulations
     Page    Line        Page    Line
       5      2
```

Page 5

1
2      (It is hereby stipulated and agreed
3   by and between counsel that sealing, filing
4   and certification are waived; and that all
5   objections, except as to the form of
6   questions, be reserved until the time of
7   trial.)
8         - - -
9       DAVID DURHAM, after having been
10  duly sworn, was examined and testified as
11  follows:
12        - - -
13         EXAMINATION
14        - - -
15  BY MR. BRUCE:
16      Q.   Would you state your name, please?
17      A.   David Durham.
18      Q.   Where do you live?
19      A.   I live in Philadelphia.
20      Q.   You work for Cigna Corporation?
21      A.   Yes, I do.
22      Q.   What is your job title?
23      A.   I'm the assistant vice president of
24  global benefits.

Page 6

1       Q.   Who do you report to?
2       A.   I report to Gerald Meyn.
3       Q.   How long have you held that position?
4       A.   For the last eight years.
5       Q.   So, that means in 1994?
6       A.   Actually, end of 1994, early 1995.
7       Q.   What was your job title before that?
8       A.   Assistant vice president of benefits.
9       Q.   Who did you report to then?
10      A.   I also reported to Gerald Meyn for a
11  portion of the time.
12      Q.   Who else did you report to?
13      A.   Before that, I reported to Robert
14  Gackenbach.
15      Q.   Did you hold the same position as
16  Gerald Meyn?
17      A.   It's a slightly different position.
18      Q.   What was Robert Gackenbach, what was
19  his job?
20      A.   His position, he headed up the
21  benefits department. When Mr. Meyn was employed by
22  Cigna, he also acquired the health and welfare area
23  of the company as well.
24      So, health programs, wellness

Page 7

1   programs, and whatnot. So, it was just a slightly
2   more expanded role than Mr. Gackenbach's.
3       Q.   Oh, I see.
4       Let me circle back a little bit.
5       Have you ever been deposed before?
6       A.   No, I haven't.
7       Q.   Have you ever testified in a court
8   case?
9       A.   Yes, I have.
10      Q.   What court case was that?
11      A.   It was a -- an issue dealing -- it was
12  a labor issue in Seattle, an employment related
13  issue with Cigna.
14      Q.   Okay. What did you testify about?
15      A.   I was actually responding specifically
16  as an expert witness.
17      Q.   What were you an expert witness about?
18      A.   Issues dealing with pension.
19      Q.   So, this was about quantifying the
20  pension losses of this individual?
21      A.   Yes.
22      Q.   And have you ever served on a jury?
23      A.   No, I haven't.
24      Q.   Is there any other court cases that

Page 8

1   you've testified in?
2       A.   No.
3       Q.   Have you ever been a plaintiff or a
4   defendant in a court case?
5       A.   No, I haven't.
6       Q.   Were you deposed as an expert witness?
7       A.   No.
8       Q.   You just testified in court?
9       A.   I testified in court.
10      Q.   Was there a jury?
11      A.   No, there wasn't.
12      Q.   Can you describe your educational
13  background?
14      A.   I have -- you want degrees?
15      Q.   Sure.
16      A.   I have a Bachelor's degree, an MBA in
17  finance, I have several designations in
18  specifically certified life underwriters, CLU;
19  chartered financial consultant, CHFC; and chartered
20  financial planner.
21      Q.   Where did you receive your MBA in
22  finance?
23      A.   Temple University.
24      Q.   Where did you get your Bachelor's

Page 73

1    Q.   The GATT rates are above 4.5 percent?
2    A.   Yes.
3    Q.   So, you're saying to date Hilton --
4 sorry. Different case.
5         That to date Cigna has been projecting
6 with interest rates of 4.5 percent and then
7 discounting back with greater interest rates?
8         MR. COSTELLO: Do you understand that
9    question?
10        THE WITNESS: No.
11        MR. COSTELLO: Make sure you understand
12   it before you answer it.
13 BY MR. BRUCE:
14   Q.   That to date the projection interest
15 rates have always been lower than the GATT rates
16 which are used to discount the benefit back?
17   A.   I can't answer that question.
18   Q.   Who could answer that question?
19   A.   Plan actuary.
20   Q.   Are you aware that benefit estimates
21 are produced with using a 6.8 percent rate of
22 interest for projecting benefits?
23   A.   Yes, I am.
24   Q.   Why is that so much higher than 4.5

Page 74

1 percent?
2    A.   4.5 percent is the minimum interest
3 rate that's guaranteed on the benefit accounts.
4 The 6.8 percent was established at the time that
5 the plan was established purely to provide
6 long-term estimates for employees of what their
7 benefit might be at some future date with continued
8 service.
9    Q.   So, implicitly using a 6.8 rate of
10 interest for the projections assumes that in the
11 long-term that the 4.5 percent rates of interest
12 are not going to continue, that rates of interest
13 are going to go back up?
14   A.   That's correct.
15   Q.   Okay. And if they don't go back up,
16 then those benefit estimates would tend to be for
17 more money than the employees will actually
18 receive?
19   A.   That's right.
20   Q.   And the recommendation that it's
21 appropriate to continue to use 6.8 rates of
22 interest would come from the actuaries?
23   A.   It would come -- the decision would
24 come from the plan administrator.

Page 75

1    Q.   So, who is actually responsible for
2 preparing benefit estimates? Is that prepared in
3 the group that you referred to earlier that Denise
4 Belanger heads up?
5    A.   That's correct.
6    Q.   And Stew Beltz, though, the plan
7 administrator is here in Philadelphia. So, how
8 does he exercise supervisory responsibility over
9 that unit in Hartford?
10   A.   The supervision of the unit in
11 Hartford is handled through Denise Belanger or her
12 superior.
13   Q.   Okay. So, they would look to Stuart
14 Beltz for direction, certain directions?
15   A.   They would look to Stewart Beltz to
16 set policy and then they would then take the policy
17 and set the procedures in place.
18   Q.   Are you familiar with the Cigna
19 pension plan document for Part B?
20   A.   I'm familiar with it, yes.
21   Q.   What is your role in the drafting
22 process of that document?
23   A.   I was asked to review the document.
24   Q.   Before it became final?

Page 76

1    A.   Yes.
2    Q.   Did you comment on the document?
3    A.   Yes, did.
4    Q.   What form did your comments take?
5    A.   Handwritten notes on document.
6    Q.   That project would be the
7 responsibility of Paul Gontarek, that your comments
8 went to Paul Gontarek?
9         MR. COSTELLO: If you know.
10        THE WITNESS: My comments actually went
11   to John Arco and John would have accumulated
12   comments from a number of resources within
13   the organization and those consolidated
14   comments would have gone to Paul Gontarek.
15        (Brief recess.)
16        (At which time Exhibit No. 5 was
17   marked for identification.)
18 BY MR. BRUCE:
19   Q.   Do you recognize Exhibit 5?
20   A.   Yes, I do.
21   Q.   Based on your earlier testimony, you
22 think that you commented on some earlier draft of
23 Exhibit 5?
24   A.   That's correct.