Exhibit 8

STEPHEN R. BRUCE LAW OFFICES
805 FIFTEENTH ST., NW, SUITE 210
WASHINGTON, D.C. 20005
202-371-8013
FAX: 202-371-0121

September 17, 2001

**BY FACSIMILE AND FEDEX**

Stewart M. Beltz, Plan Administrator
Office of the Plan Administrator
CIGNA
1601 Chestnut Street, TL17B
Philadelphia, PA 19192

RE:   Janice C. Amara's Retirement Benefits under Cigna's "Cash Balance Pension" Plan

Dear Mr. Beltz:

This letter is on behalf of Janice C. Amara, who until recently resided in Middletown, Connecticut and now resides in Old Saybrook. It concerns the retirement benefits that Ms. Amara and other Cigna employees are due under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §1001, et seq. As you know, Ms. Amara is knowledgeable about ERISA because she worked in Cigna's pension compliance area for many years and managed it from 1992 to 1995. She returned to CIGNA in 1998 as a director of national accounts for Cigna's Retirement & Investment Services division. She is currently the NASD principal for the client services organization of Cigna's Retirement & Investment Services, as well as a client executive in charge of accounts.

Ms. Amara has participated in Cigna's "Part B" pension plan since September 1998. Cigna's Part B plan is a "cash balance pension" plan. Cigna adopted the cash balance pension plan to replace Cigna's traditional defined benefit pension plan. The traditional defined benefit plan was grandfathered for certain participants and is now called "Part A." The Part B plan document contains the cash balance features and transition rules related to benefits earned under the prior plan.

On December 14, 1995, when the Part A pension plan was still in effect for all salaried employees, Cigna notified Ms. Amara that her accrued benefits were $2,010.41 per month in the form of an annuity lasting from age 55 to 65, with payments reduced to $1,565.48 per month after age 65. Exhibit 1. Over 5 years later, on February 23, 2001, Cigna notified Ms. Amara that her accrued benefits under Part B were now $1,340.28 per month in the form of an age 55 annuity. Exhibit 2. Instead of increasing her benefits,

Stewart M. Beltz 2 September 17, 2001

Cigna had *decreased* her retirement benefits by $670.13 per month between age 55 and 65 and by $225.20 per month after age 65.

Decreases in accrued benefits as a result of plan amendments violate ERISA Section 204(g), 29.U.S.C. §1054(g). This statutory section requires that fiduciaries protect accrued benefits against reduction by plan amendment. The 1984 Retirement Equity Act added Section 204(g)(2), which extended this protection to early retirement benefits. See also 26 C.F.R. 1.411(d)-4. Ms. Amara complained that a decrease in her retirement benefits did not comply with these rules.

In an e-mail dated April 20, 2001, Andrew Hodges, a consulting actuary for Cigna, stated that there had been a "flaw" in the "conversion record." Exhibit 3. On July 6, 2001, a benefits specialist for Cigna mailed Ms. Amara another Benefit Summary Sheet this time showing a benefit at age 55 of $1,833.65 per month. Exhibit 4. Although there has been no official notice from Cigna, it is Ms. Amara's understanding that this monthly amount is to represent the actuarial equivalent of the benefit which Ms. Amara was already entitled to receive in December 1995 of $2,010 per month from age 55 to 65 and $1,565 per month thereafter. However, if this were to constitute her total current benefits, Ms. Amara's employment with Cigna from 1998 to 2001 would not have added even $1.00 to the retirement benefits she already possessed at the end of 1995.

Cigna's "Part B" Plan document provides for annual pay credits and interest that should be adding to Ms. Amara's current benefit total. Beginning at the end of 1998, Ms. Amara was to be credited with annual pay credits of 5% of her salary up to one-half of the social security wage base plus 6.5% of her salary above that level. Interest is to accumulate on these annual pay credits at rates of 4.5% and up. Even without interest, Cigna should have allocated over $18,500 in pay credits to Ms. Amara's account from the end of 1998 to the end of 2001. After the termination of her employment, Ms. Amara should receive the annual pay credits with interest in annuity or lump sum form. Based on her years of service, ERISA requires that these benefits must be "nonforfeitable." A nonforfeitable right to a benefit is a right that is "unconditional." ERISA Section 3(19), 29 U.S.C. §1002(19).

Cigna's Part B Plan document appears to be offering the annual pay credits and interest, but conditioning their actual receipt in violation of ERISA. Article VII of the Part B Plan document provides that Ms. Amara can receive the annual accrued benefits she has earned since 1998 if and only if she does *not* receive the $1,833 per month in early retirement benefits that she previously earned under the Part A Plan. To receive the annual accruals since 1998, she must accept a valuation of her Part A benefits specified in Section 1.28 of the Plan document ("Initial Retirement Account"). This valuation excludes the value of her "protected" early retirement rights under Part A. Section 7.3 of

Stewart M. Beltz                              3                    September 17, 2001

the Cigna Plan document makes it impossible for her to receive her protected early retirement benefits under Part B and her annual accruals since 1998 under Part A.

Conditioning receipt of additional annual pension accruals on foregoing previously earned benefits, or taking a retirement distribution only in a certain form, violates the nonforfeitability rules in ERISA Section 203(a), 29 U.S.C. §1053(a). "A right which, at a particular time, is conditioned under the plan upon . . . subsequent forbearance which will cause loss of such right is a forfeitable right at that time." 26 C.F.R. 1.411(a)-4. IRS Notice 96-8, 1996-1 C.B. 359, explains:

> "If benefits . . . have accrued [but] those benefits are disregarded when benefits commence before normal retirement age, the plan has effectively conditioned entitlement to the benefits . . . on the employee not taking a distribution prior to retirement age."

Accord *Esden v. Bank of Boston*, 229 F.3d 154, 168 (2d Cir. 2000) ("by making part of [Lynn Esden's] benefit conditional on the form of payment chosen, the Plan made that benefit forfeitable, in violation of ERISA").

Pursuant to ERISA Section 404(a)(1), 29 U.S.C. §1104(a)(1), the Cigna plan fiduciaries have a duty to administer the pension plan consistent with ERISA's standards. Please have the appropriate fiduciaries report on their consideration of these issues and consider these issues fully if they have not considered them before.

While the fiduciaries are taking this action, please have authorized persons sign the enclosed tolling agreement. This document represents the fiduciaries' and Cigna's agreement that any statutes of limitations related to these claims are tolled until the fiduciaries' consideration is complete.

Thank you in advance for your cooperation.

Sincerely,

Stephen Bruce

Enclosures

cc:   Janice Amara
      Congresswoman Nancy Johnson
      Senator Christopher Dodd
      Senator Joseph Lieberman

## TOLLING AGREEMENT

In light of the Cigna Pension Plan fiduciaries' review of the ERISA claims raised in the letter dated September 17, 2001 from counsel on behalf of Janice Amara and others similarly situated, the fiduciaries for the Cigna Pension Plan and Cigna Corporation agree that any statutes of limitations applicable to related causes of action ceased to run on September 17, 2001.

This tolling agreement will terminate on ten (10) business days notice. The effect of such notice will be that any applicable statutes of limitations will begin to run again on the expiration of that ten days' notice.

Executed this _____ day of September, 2001, in Philadelphia, Pennsylvania.

By:_____
              For CIGNA Corporation

By:_____
              For CIGNA Pension Plan fiduciaries

John G. Arko
Director, Retirement Benefits
Office of the Plan Administrator




CIGNA

December 4, 2001

Routing TL17B
1601 Chestnut Street
Philadelphia PA 19192
Telephone 215.761.2562
Facsimile 215.761.5510
John.Arko@CIGNA.com

Stephen R. Bruce, Esq.
805 Fifteenth Street, N.W., Suite 210
Washington, D.C. 20005

Dear Mr. Bruce:

This is a response to your September 17, 2001 letter on behalf of Janice C. Amara regarding her benefits under the CIGNA Pension Plan. I am responding on behalf of CIGNA's Office of the Plan Administrator, and we are treating your letter as a claim by Ms. Amara under ERISA.

You claim that Ms. Amara has suffered reductions in her accrued benefit and is not being offered her distribution options properly, thus, potentially forfeiting her accrued benefits in violation of ERISA requirements. These claims come as a direct result of her termination from CIGNA employment and subsequent rehire into Part B of the CIGNA Pension Plan.

During Ms. Amara's first period of employment with CIGNA, she participated in what is now Part A (also called the "old plan") of the Pension Plan, which provides pension benefits based on final average earnings. Part B provides benefits based on what CIGNA now calls an account balance formula. This type of formula is more commonly known as a cash balance formula. CIGNA adopted the cash balance formula effective January 1, 1998.

Allow me to first comment on the Pension Plan calculations that were provided Ms. Amara and referred to as the Exhibits in your September 17, 2001 letter.

1. <u>December 14, 1995 letter from Theresa Kane of CIGNA</u>. Pension calculation based on Ms. Amara's initial period of employment with CIGNA through her termination date of August 8, 1995.
    - It showed a benefit available at her normal retirement age of 65 to be $2,099.92 per month for life.
    - The letter also stated that Ms. Amara could receive a benefit as early as her attainment of age 55. That benefit would be $2,010.51 per month reducing to $1,565.48 per month following her 65th birthday.

2. <u>February 23, 2001 letter from Janet VanDeusen of CIGNA Retirement & Investment Services</u>. This was a pension estimate (completed following her return to CIGNA), which assumed Ms. Amara continues her CIGNA employment through April 30, 2005 and her annual earnings of $94,400.00 increase 4.0% per year.
   - It showed a benefit commencing at age 55 of $1,340.28 per month for life. Unfortunately this amount was wrong. The correct amount should have been $1,833.65 per month for life.
   - It also shows a lump sum option at age 55 of $193,371.43.

3. <u>July 6, 2001 letter from Kevin Kenny of CIGNA Retirement & Investment Services.</u> This was another estimate projecting what benefits might be in the future for Ms. Amara. It assumed she continued her CIGNA employment only through June 30, 2001 and used current annual earnings of $97,500.00.
   - It showed a benefit commencing at age 55 of $1,833.65 per month for life.
   - It also showed a lump sum option at age 55 of $162,986.51.

I apologize for the inaccurate February 23, 2001 calculation. As you mention in your letter, Andy Hodges did explain this flaw to Ms. Amara both verbally and apparently in the email included with your letter. Essentially the calculation inadvertently did not fully take into consideration Ms. Amara's first period of employment with CIGNA.

I will now turn to your specific concerns as regards the appropriateness of the provisions of the CIGNA Pension Plan and how they specifically relate to Ms. Amara's benefit.

1. <u>No Reduction in Ms. Amara's Accrued Benefit Has Occurred</u>. You are, of course, correct in stating that section 204(g)(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), provides that a participant's "accrued benefit" may not be decreased by an amendment. In accordance with ERISA §204(g), §§1.1(c), 1.32 and 7.3 of Part B of the CIGNA Pension Plan ("Part B") protect Ms. Amara's "accrued benefit" under Part A of the CIGNA Pension Plan ("Part A") as of the date she ceased accruing benefits under Part A.

   a. <u>Normal Retirement Benefit</u>. Under §§1.1(c) and 1.32 of Part B, a participant's Part B normal retirement benefit will always equal or exceed the normal retirement benefit the participant accrued under Part A. Thus, there is no violation of ERISA §204(g) when the benefit is paid at normal retirement date.

   b. <u>Early Retirement Subsidy</u>. Under ERISA §204(g)(2), if a participant has or will satisfy the age and/or service requirements for an early retirement subsidy, an amendment may not eliminate or reduce the subsidy "with respect to benefits attributable to service before the amendment." Section 7.3(b) of Part B preserves the Part A early retirement subsidy as required. Section 7.3(b) provides that Ms. Amara's Part B benefit will always be equal to or greater than the benefit she accrued under Part A prior to 1998, using the Part A early commencement reduction factors if the benefit is paid at a time and in a form to which the factors would have applied under Part A.

P 1017

ERISA does not require that the early retirement subsidy be included in the Part B opening account balance. Note, however, that under §1.28(a) of Part B, CIGNA voluntarily included the Part A early retirement subsidy in an employee's opening account balance if the sum of the employee's age and service on December 31, 1997 was 55 or greater. Ms. Amara did not receive this enrichment because she was not employed by CIGNA on January 1, 1998.

The preservation of the early commencement reduction factors with respect to the Part A accrued benefit does not, however, fully answer the question. As the chart below shows, Ms. Amara's minimum Part B benefit as of June 30, 2001 commencing at May 1, 2005 in the form of a single life annuity is $176.86 less than the age 55 through age 65 Part A benefit as of August 8, 1995 (commencing at the same time and in the same form).

|  | Part A Benefit as of August 8, 1995 | Part B Minimum Benefit as of June 30, 2001 |
|---|---|---|
| Payable from age 55-65 | $2,010.51 | $1,833.65 |
| Payable on and after age 65 | $1,565.48 | $1,833.65 |

Note, however, that once Ms. Amara attains age 65, the minimum Part B benefit is $268.17 *more* than the Part A benefit. The lesser benefit from age 55 through age 65, and the larger benefit at age 65, are attributable to the Social Security supplement.

    c.    <u>The Social Security Supplement</u>. Under Part A, an eligible participant may elect to commence receipt of his or her benefit prior to age 65. Once the participant attains age 65, the benefit is reduced by ½ of the participant's primary old age insurance benefit under the Social Security Act. This is often referred to as a Social Security offset, because of the offset at age 65; it also is a Social Security supplement because it supplements the participant's retirement benefit prior to age 65.

This Social Security supplement is not a protected benefit under ERISA §204(g) because it is not part of the "accrued benefit." Treas. Reg. §1.411(d)-4 Q&A 1(d) provides that "social security supplements described in section 411(a)(9), except qualified social security supplements as defined in §1.401(a)(4)-12" are <u>not</u> protected benefits under §411(d)(6) of the Internal Revenue Code of 1986, as amended (the "Code"). The Part A Social Security supplement is described in Code §411(a)(9) and it is not a "QSUPP" as defined in Treas. Reg §1.401(a)(4)-12. Accordingly, the age 55 to 65 Part A benefit could have been reduced to $1,565.48 per month without violating ERISA §204(g).

Despite the fact that the Part A Social Security supplement is not protected by ERISA §204(g) (or its counterpart, Code §411(d)), Part B does include the Social Security supplement in the minimum protected benefit, if the benefit is paid at a time and in a form to which the supplement would have applied under Part A. Rather than providing the Social Security supplement as an amount which is only payable prior to age 65, §7.3(b) of Part B provides that the equivalent actuarial value of the Social Security supplement will be added to the

Stephen R. Bruce, Esq.
December 4, 2001
Page 4

benefit which would have been payable under Part A, to determine the minimum amount of the benefit payable under Part B. That is why Ms. Amara's Part B minimum benefit of $1,833.65 is payable before age 65 as well as after, unlike the Part A accrued benefit as of August 8, 1995 which decreased to $1,565.48 as of the first of the month following Ms. Amara's attainment of age 65.

Thus, §7.3(b) of Part B preserves the minimum benefit required under ERISA §204(g) (the pre-1998 Part A accrued benefit determined using the Part A early commencement factors) and more (the actuarial equivalent of the Social Security supplement).

2.  No Forfeiture of Ms. Amara's "Accrued Benefit" Has Occurred. Should Ms. Amara elect to receive her benefit in the form of an annuity (e.g., a single life annuity) prior to her normal retirement date but after her attaining age 55, §§1.1, 7.2(a)(2) and 7.3 of Part B provide that her benefit will equal the greater of (a) or (b), as follows:

   (a)   The benefit accrued under Part B through June 30, 2001, which is determined as follows:

      i.   The opening account balance = $91,124.77.

      ii.  Added to the opening account balance are the Benefit Credits through June 30, 2001 ($20,254.96) plus Interest Credits through May 1, 2005 (projected to be $51,556.78). The total balance is projected to be $162,936.51, which is as of Ms. Amara's attainment of age 55.

      iii. The amount determined in step (ii) would then be converted to a single life annuity, which is projected to be $1,129.33 per month, if the benefit commencement date is May 1, 2005.

   (b)   The protected benefit under §§1.1(c) and 7.3 of Part B, which is equal to Ms. Amara's pre-1998 Part A accrued benefit, payable at age 65 ($2,099.92), adjusted to take into account early commencement in accordance with Part A and the actuarial equivalent of the Social Security supplement ($1,833.65 per month if the benefit commencement date is May 1, 2005).

Ms. Amara's right to the greater of (a) or (b) is nonforfeitable, as required by ERISA §203. Ms. Amara's right to the greater of (a) or (b) is unconditional under all circumstances required by ERISA and the Code. Part B provides that the greater of (a) or (b) will be paid to Ms. Amara, to protect Ms. Amara's "accrued benefit" as required by ERISA §204(g).

You state that "Cigna's Part B Plan document appears to be offering the annual pay credits and interest, but conditioning their actual receipt in violation of ERISA." You misread Part B. Part B provides the benefit credits and interest credits as amounts in addition to the opening account balance, determined in accordance with §1.28 of Part B. There has been no forfeiture of this amount. As required by ERISA, however, this amount is payable only if it exceeds the amount required to be protected by ERISA, plus the equivalent actuarial value of

P 1019

the Social Security supplement. This method of preserving protected benefits does not result in a forfeiture. (See, e.g., Treas. Reg. §1.401(a)(4)-13(c)(4)(ii) formula with wear away.)

3.  Conclusion. Your claim appears to be either (a) that the early retirement factors and Social Security supplement should have been included in the opening account balance or (b) that the method used to preserve the Part A protected benefit is not permissible. We are not aware of any guidance that supports either claim. You cite IRS Notice 96-8 and *Esden v. Bank of Boston*, 229 F.3d 154 (2d Cir. 2000), cert. dismissed, 121 S. Ct. 674 (2001). Neither Notice 96-8 nor *Esden* addresses the establishment of an opening account balance or preserving ERISA §204(g) protected benefits with respect to benefits accrued prior to the cash balance plan conversion. Both address the method of crediting future interest credits and whether a lump sum distribution may be based on the current retirement account, or projection to normal retirement age is required.

Unlike the plan in *Esden*, Part B was designed to and does comply with IRS Notice 96-8. Unlike the plan in *Esden*, Part B does not guarantee an interest rate which is higher than the rate used to project the account value to normal retirement age. Thus the *Esden* forfeiture and conditional benefit issues do not arise under Part B of the CIGNA Pension Plan.

As regards to the Tolling Agreement you asked us to sign, we choose not to sign the agreement as drafted. If you are interested in a version that we would find acceptable, please let me know.

If you still believe your client has not received the benefits due to her under the CIGNA Pension Plan you may appeal to the Plan Administrator by writing to:

Stewart M. Beltz
Plan Administrator
CIGNA
1601 Chestnut Street, TL17B
Philadelphia, PA 19192

The Plan Administrator has the final authority to make determinations under the CIGNA Pension Plan. Should you have further questions about this letter, please contact me.

Sincerely,

*[signature]*

cc:   Ms. Janice Amara