UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------------------------X
                                           :
JANICE C. AMARA, individually,             :
and on behalf of others similarly          :
situated,                                  :
                                           :
                           Plaintiff,      :    3:01 CV 2361 (MRK)
                                           :
            v.                             :    May 6, 2005
                                           :
CIGNA CORP. AND CIGNA                      :
PENSION PLAN,                              :
                                           :
                           Defendants.     :
                                           :
------------------------------------------------------X
```

**DEFENDANTS' MEMORANDUM OF LAW REGARDING THE IMPACT OF THE DEPENBROCK V. CIGNA DECISION ON THESE PROCEEDINGS**

Pursuant to the parties' stipulation and this Court's Scheduling Order, Defendants CIGNA Corporation and CIGNA Pension Plan respectfully submit this Memorandum of Law regarding the impact of the Third Circuit's recent decision in Depenbrock v. CIGNA, 389 F.3d 78 (3d Cir. 2004), on these proceedings.

**A.   Background**

The Amara v. CIGNA et al. case currently pending before this Court is a class action challenging the design of the CIGNA cash balance pension plan, known as the CIGNA Pension Plan "Part B." Amara alleges that the fundamental design of cash balance plans discriminates against older workers (Count III) and that the "wearaway" and minimum benefit provisions of

Part B,[1] which state that a participant's pension benefit will never be less than the benefit to which he or she was entitled under the pension plan as of December 31, 1997, violate ERISA (Count I).[2]

The aspects of the CIGNA cash balance plan at issue in this case are not unique to the design of CIGNA's cash balance plan. To date, four courts have rejected claims similar to those made by Amara here. See Eaton v. Onan Corp., 117 F. Supp. 2d 812 (S.D. Ind. 2000) (rejecting age discrimination challenge to cash balance plan); Engers v. AT&T Corp., No. 98-3660, (June 11, 2001) (attached hereto as Exhibit A) (same); Tootle v. ARINC, Inc., 222 F.R.D. 88 (D. Md. 2004) (same); Campbell v. Bankboston, N.A., 327 F.3d 1 (1st Cir. 2003) (wearaway and minimum benefit provisions of cash balance plan do not violate ERISA). To Defendants' knowledge, only one court has found that cash balance plans *do* discriminate against older workers and no court has found that the wearaway and minimum benefit provisions violate ERISA. See Cooper v. IBM Personal Pension Plan, 274 F.Supp.2d 1010 (S.D. Ill. 2003) (cash balance plans discriminate against older workers).

**B.     Depenbrock v. CIGNA**

Prior to January 1, 1998, most CIGNA employees participated in a traditional defined benefit plan;[3] there was no cash balance plan. In November, 1997, in anticipation of the

---

[1] For a more detailed discussion of how the CIGNA cash balance plan operates, see Defendants' Motion to Dismiss Plaintiffs' Complaint, filed February 15, 2002.

[2] Amara also alleges that the summary plan description ("SPD") for Part B was deficient (Count II).

[3] A traditional defined benefit plan pays a monthly pension benefit based on a percentage of an employee's final average pay, e.g., 2% of the employee's final average pay.

2

adoption of the cash balance plan, CIGNA's CEO executed a formal plan amendment ceasing all future benefit accruals in the traditional defined benefit plan for most employees, effective December 31, 1997. On December 21, 1998 a formal plan amendment was signed by CIGNA's CEO which contained the terms of "Part B," CIGNA's cash balance pension plan, to be effective January 1, 1998. Pursuant to the amendment, many employees were moved from CIGNA's traditional defined benefit plan into the cash balance plan. Certain longer service employees, however, remained in the traditional pension plan, Part A. Part B also contained a "rehire rule" which provided that all employees who were rehired by CIGNA after January 1, 1998 would participate in Part B regardless their prior years of service.

John Depenbrock is a former employee of CIGNA and a participant in the CIGNA Pension Plan. He resigned his employment with CIGNA on January 2, 1998, but was rehired on November 30, 1998. Upon rehire, Depenbrock was placed into the cash balance plan – Part B – pursuant to the Plan's "rehire rule." Depenbrock sued, claiming that he should never have been placed into Part B because he returned to CIGNA before the formal amendment adopting the rehire rule was signed on December 21, 1998.[4] The district court granted summary judgment on favor of CIGNA and the CIGNA Pension Plan, but the United States Court of Appeals for the Third Circuit reversed. See Depenbrock, 389 F.3d at 83, 86. Because Depenbrock was rehired *before* the formal amendment was signed on December 21, 1998, the Court held that when Depenbrock was rehired, he should have been placed into CIGNA's traditional defined benefit

---

[4] Depenbrock was not a class action, nor did it challenge the design of the cash balance plan, as Amara does in this case.

3

plan, Part A – not the cash balance plan, Part B. See id. ("Depenbrock's participation in the Old Plan [Part A] should have resumed immediately upon his return to work on November 30, 1998.").

C.   **The Impact Of The Depenbrock Decision On This Case**

Although the Depenbrock case was not a class action, it has potential implications for other CIGNA employees. In fact, there are approximately 178 other employees of CIGNA or affiliates companies – *including Plaintiff Amara* – similarly situated to Depenbrock, i.e., employees who (1) were rehired between January 1, 1998 and December 21, 1998; and (2) had sufficient years of service to remain in Part A were it not for the rehire rule. Each of these employees was placed into Part B because of the rehire rule – the same rehire rule at issue in Depenbrock. Under Depenbrock, however, each of these individuals' "participation in the Old Plan [Part A] *should have resumed immediately* upon his [or her] return to work" at CIGNA. Depenbrock, 389 F.3d at 86 (emphasis added). In other words, under Depenbrock, these 178 employees should never have been placed into Part B to begin with, but should have remained in Part A upon their rehire.

CIGNA is continuing to wrestle with the impact of the Depenbrock decision on these 178 individuals. These circumstances are complicated by the fact that some rehires have already passed away or received a lump sum pension benefit under Part B – a benefit that is not available under Part A. In addition, some of these 178 individuals may prefer to remain in the cash

4

balance plan.[5] Accordingly, the Plan Administrator is still in the process of determining the actual impact of the Depenbrock decision on each of these 178 individuals.

As explained earlier, however, all of the claims in Plaintiff's Complaint challenge various provisions of Part B, the cash balance pension plan; the Complaint does not challenge any aspect of CIGNA's traditional defined benefit plan. Even the class definition is limited to those people who "have participated in Part B. . ." (Order of December 20, 2002 at 9-10). Accordingly, to the extent any of these 178 individuals is placed into Part A because he or she never should have been in Part B to begin with, i.e., because participation in Part A "should have resumed immediately upon" rehire, Depenbrock, 389 F.3d at 86, these individuals should not be part of the class and cannot assert claims premised on their participation in the Part B.

Counsel for Defendants understands that Plaintiff Amara is one of the first people in this group of 178 to reach early retirement age (age 55) and request a pension benefit after the Depenbrock decision. Amara requested, and was granted, the right to participate in Part A and to obtain a pension benefit calculated based on her participation in Part A *from the moment she was rehired in 1998*. In other words, and pursuant to Depenbrock, Amara effectively never participated in the cash balance plan, Part B, and therefore should not be a member of the class or a class representative. Likewise, the cash balance plan provisions being challenged in this lawsuit had absolutely no impact on Amara's pension benefit and she has no standing to challenge those provisions. Her claims challenging the cash balance plan are moot. See Whitehead v. Oklahoma Gas & Elec.

---

[5]   CIGNA is considering possible amendments to its pension plan to address these issues.

Co., 187 F.3d 1184, 1189 (10th Cir. 1999) (holding that employee's ERISA claim for benefits under pension plan was moot because employee's death prevented employee from becoming eligible for benefits under the pension plan at issue).

Dated: May 6, 2005								Respectfully submitted,

								**MORGAN, LEWIS & BOCKIUS LLP**

								By:_____/s/_____
								    Christopher A. Parlo (CT-04700)

								101 Park Avenue
								New York, New York  10178
								(212) 309-6062
								(212) 309-6273 (fax)

								Joseph J. Costello
								Jeremy P. Blumenfeld
								1701 Market Street
								Philadelphia, Pennsylvania  19103-2921
								(215) 963-5295/5258

								**ROBINSON & COLE**

								James A. Wade (CT # 00086)
								Elizabeth A. Fowler (CT # 23584)
								280 Trumbull Street
								Hartford, Connecticut  06103
								(860) 275-8270
								(860) 275-8299

								Attorneys for Defendants
								CIGNA Corporation and CIGNA Pension Plan

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 6th day of May, 2004 via regular mail upon the following:

> Thomas G. Moukawsher, Esq.
> Moukawsher & Walsh, LLC
> 328 Mitchell Street
> Groton, CT  06340

and upon:

> Stephen R. Bruce, Esq.
> 805 15th Street, NW
> Suite 210
> Washington, DC  20005

_____/s/_____
Elizabeth A. Fowler
