UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| Janice C. Amara, 39 Town Beach Rd., Old Saybrook, CT 06475, Gisela R. Broderick, 143 Old Post Road, Tolland, CT 06084, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Cigna Corp. and Cigna Pension Plan,<br><br>Defendants. | Civil No. 3:01-CV-2361 (MRK)<br><br>May 6, 2005 |

**SECOND AMENDED CLASS ACTION COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER ERISA**

**Nature of the Complaint**

1.      This Complaint is about the retirement benefits that Ms. Amara, Gisela Broderick, and similarly-situated Cigna employees are required to receive under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §1001, et seq. Effective January 1, 1998, Defendants reduced future rates of retirement benefit accruals and impermissibly conditioned receipt of those accruals so that actual benefit receipt may be illusory for as many as 10 years. This violates ERISA's disclosure requirements and its requirement that the payment of vested retirement benefits must be unconditional. Employees also lost benefits earned before 1998 that are to be statutorily-protected and have been subject to still lower rates of benefit as they grow older.

**Jurisdiction, Venue, and Service of Process**

2. Plaintiffs invoke the jurisdiction of this Court pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001, et seq.

3. Venue in this Court is proper under ERISA Section 502(e)(2), 29 U.S.C. §1132(e)(2), in that Defendants Cigna Corp. and Cigna Pension Plan may be found in this District and the breach took place in this District.

4. Service of process is authorized in any other district where a defendant resides or may be found. ERISA Section 502(e)(2), 29 U.S.C. §1132(e)(2).

**The Parties**

5. Plaintiff Janice C. Amara resides at 39 Town Beach Rd., Old Saybrook, CT 06475. She worked for Cigna for 28 years until October 2003. Ms. Amara is a participant in the Cigna Pension Plan as the term participant is defined in ERISA Section 3(7), 29 U.S.C. §1002(7).

6. Plaintiff Gisela R. Broderick resides at 143 Old Post Road, Tolland, CT 06084. She worked for Cigna for 21 years until March 2004. Ms. Broderick is a participant in the Cigna Pension Plan, too.

7. Defendant Cigna Pension Plan is an employee benefit plan as defined in Section 3(3) of ERISA, 29 U.S.C. §1002(3), and an "employee pension benefit plan" as defined in Section 3(2)(A), 29 U.S.C. §1002(2)(A). The Cigna Pension Plan can be found in Connecticut because Cigna employees earn and receive benefits in Connecticut.

8. Defendant Cigna Corp. is a business corporation organized and existing under the laws of the State of Delaware, and operating in all 50 states, including Connecticut. Cigna is qualified to do business and does business in Connecticut.

9. Defendant Cigna Corp. functions as the "plan sponsor" and "plan administrator" for the Cigna Pension Plan within the meaning of ERISA. Through a Corporate Benefit Plan Committee, Defendant Cigna Corp. also functions as a "named fiduciary" for the Cigna Pension Plan within the meaning of ERISA.

**Class Action Allegations**

10. Plaintiffs bring this action as a class action in accordance with Federal Rule of Civil Procedure 23 to resolve disputes under the Employee Retirement Income Security Act of 1974. Judicial economy dictates that the issues be resolved in a single action.

11. The class is defined as any and all persons who:

(a) Are former or current Cigna employees,

(b) Participated in the Cigna Pension Plan before January 1, 1998, and

(c) Have participated in the "Part B" Cigna Pension Plan at any time since January 1, 1998.

12. The class covers all participants in the Cigna Pension Plan whose benefit accruals have been reduced and whose receipt of benefit accruals under the pre-1998 Part B plan has been unlawfully conditioned in violation of ERISA Section 203(a), 29 U.S.C. §1053(a).

13. On information and belief the class covers over 24,000 individuals. The

class is so numerous that joinder of all members is impracticable.

14. There are common questions of law and fact affecting the rights of the members of the class. The claims of the named class representatives are typical of the claims of the class. The named representatives will fairly and adequately protect the interests of the class.

15. This action is maintainable as a class action under Rule 23(b)(2) because Defendant has acted and/or refused to act on grounds generally applicable to the class, thereby making appropriate injunctive and other equitable relief in favor of the class.

**Statement of Facts**

16. Janice Amara was born on April 3, 1950. She worked for Cigna from July 17, 1972 to August 10, 1995 and from September 8, 1998 to October 17, 2003. Ms. Amara managed Cigna's pension compliance area from 1992 to 1995. She returned to CIGNA in 1998 as a director of national accounts for Cigna's Retirement & Investment Services division. At her separation she was the NASD principal for the client services organization of Cigna's Retirement & Investment Services, as well as a client executive in charge of accounts.

17. Gisela Broderick was born on March 12, 1944; She worked for Cigna from August 4, 1980 to December 31, 1997 and from June 26, 2000 to March 12, 2004. Ms. Broderick was a project manager in the Information Technologies Deparment of Cigna Systems.

18. Effective January 1, 1998, Cigna converted to a "cash balance" pension plan (which Cigna calls "Part B"). Cigna adopted the cash balance pension plan to replace Cigna's traditional defined benefit pension plan.

19. Employees who were hired before 1989 and had a specified combination of age and service in excess of 45 points were grand-fathered under the prior, more generous pension plan formula (now called "Part A").

20. Since Ms. Amara returned to Cigna in September 1998, Cigna has placed her under its "Part B" cash balance formula. Ms. Broderick was also placed in Cigna's Part B plan after she returned to Cigna in June 2000. Although both were hired before 1989 and had a combination of age and service in excess of 45 points (thereby qualifying them to be "grand-fathered"), Cigna moved them to the Part B cash balance formula under an amended "rehire" rule that Cigna's CEO adopted on December 21, 1998.

21. Under the previous benefit formula, pension benefits were 2% of a highest average of salary times years of service. Under the Part B cash balance pension formula, benefits accrue at a lower rate and have been subjected to additional conditions that did not apply under the previous formula.

22. Discovery shows that Cigna knew that the rate of benefit accruals under the prior formula was "much higher" than under the cash balance plan. Because the cash balance formula is based on each year's pay whereas the prior formula is based on a highest average of pay, benefits are significantly reduced from that change alone. A

spreadsheet prepared by a Cigna actuary further shows that the cash balance accrual rates decline from 1.73% of each year's pay at age 43 down to .66% by age 65. Comparisons performed by the William Mercer Company indicated that most employees' benefits would be reduced by 20% or more.

23. On December 14, 1995, Cigna notified Ms. Amara that her accrued benefits were $2,010.41 per month in the form of an annuity lasting from age 55 to 65, with payments reduced to $1,565.48 per month after age 65.

24. Over 5 years later, on February 23, 2001, Cigna notified Ms. Amara that her accrued benefits under Part B were $1,340.28 per month in the form of an age 55 annuity. Instead of increasing the retirement benefits, Cigna had *decreased* her benefits by $670.13 per month between age 55 and 65 and by $225.20 per month after age 65.

25. Ms. Amara complained that a decrease in her retirement benefits did not comply with ERISA Section 204(g), 29.U.S.C. §1054(g), which prohibits decreases in accrued benefits as a result of plan amendments. See also 26 C.F.R. 1.411(d)-4. In an e-mail dated April 20, 2001, Andrew Hodges, a consulting actuary for Cigna, stated that there had been a "flaw" in the "conversion record."

26. Discovery revealed that the "flaw" in Ms. Amara's record was actually a systemwide hole. Cigna's administrative systems were not set up to notify participants under the age of 55 that they retained rights to protected annuity benefits under Part A, including to early retirement subsidies and a "free 30%" joint and survivor benefit.

27. Discovery further revealed that the opening cash balance accounts did not include either the valuable early retirement subsidies or the free 30% joint and survivor benefit, both of which were provided under the prior benefit formula and are protected under ERISA Section 204(g) against elimination by plan amendment. The free 30% joint and survivor benefit was also not included with the "minimum benefits" that Cigna protected.

28. Certain reductions that Cigna applied in establishing the opening account balances under cash balance were neither disclosed nor contained in the Plan document at the time when they were applied. The "pre-retirement mortality discount" that Cigna applied in computing opening cash balance accounts was not described in the SPD or in the Plan document in effect at the time. Likewise, the elimination of the "free 30%" survivor's annuity is not described in the October 1998 SPD or in the Plan document.

29. Because Ms. Amara complained about the benefits estimate showing decreased benefits, a benefits specialist for Cigna mailed her another Benefit Summary Sheet on July 6, 2001, this time showing a benefit at age 55 of $1,833.65 per month. It is Ms. Amara's understanding that this monthly amount is to represent the actuarial equivalent of the benefit which Ms. Amara was already entitled to receive in December 1995 of $2,010 per month from age 55 to 65 and $1,565 per month thereafter.

30. If this were to constitute her total current benefits, Ms. Amara's employment with Cigna from September 1998 to October 2003 would not have added

even $1.00 to the retirement benefits she already possessed at the end of 1995.

31. Cigna's "Part B" Plan document provides annual pay credits and interest that should be *adding* to Ms. Amara's current benefit total. Beginning at the end of 1998, Ms. Amara was credited with annual pay credits of 7% of her salary up to one-half of the social security wage base plus 8.5% of her salary above that level. Interest is to accumulate on these annual pay credits at rates of 4.5% and above.

32. Cigna should have allocated over $7,500 annually in pay credits to Ms. Amara's account from 1998 to the end of 2003. After the termination of her employment, Ms. Amara should receive the annual pay credits, with interest in annuity or lump sum form. However, when Ms. Amara requested a benefits estimate after her separation from service at the end of 2003, those sums were not included. She was instead offered even lower benefits than the first time of $915.65 per month. After she complained again, she was offered the $1,833 per month annuity that she had already earned before 1998, with no addition whatever to reflect the over $30,000 in pay credits that Cigna was to have allocated to her cash balance "account" between 1998 and the end of 2003.

33. Ms. Broderick likewise should have been allocated over $30,000 in pay credits for her employment from June 2000 to March 2004. However, when she commenced benefits in December 2004, those sums were not included. Her benefits had not increased from their pre-1998 level. And Cigna had dropped the free 30% joint and survivor annuity that was to be protected under ERISA Section 204(g).

**Claim One: Conditioning Receipt of Benefit Accruals which Are Necessary to Satisfy ERISA's Anti-Backloading Rules Violates the Anti-Backloading Rules and the Nonforfeitability Standard.**

34. Cigna's CEO, Wilson H. Taylor, approved the text of the Part B Plan document with detailed rules on cash balance benefit accruals and payment of accrued benefits on December 21, 1998.

35. Cigna's Part B Plan document offers the annual pay credits and interest described above, but it conditions actual receipt of those amounts. Article VII of the Part B Plan document provides that Ms. Amara can receive the annual accrued benefits she has earned since 1998 *if and only if* she does not receive the $1,833 per month in early retirement benefits that she previously earned under the Part A Plan. The same applies to Ms. Broderick and others.

36. Section 7.3 of the Cigna Plan document makes it impossible for Ms. Broderick or Ms. Amara to receive their protected early retirement benefits under Part A (i.e., the benefits that they earned before 1998) plus their annual accruals since 1998 under Part B. To receive their annual accruals since 1998, they must accept a valuation of their Part A benefits specified in Section 1.28 of the Plan document ("Initial Retirement Account"). The valuation specified in Section 1.28 excludes the value of "protected" early retirement rights under Part A and the value of the free 30% joint and survivor benefits. Cigna has furthermore interpreted Section 1.28 to permit a pre-retirement mortality discount to be assessed in that valuation which was never used before.

9

37.     To satisfy the "anti-backloading" rules in ERISA Section 204(b)(1)(B), 29 U.S.C. §1054(b)(1)(B), Cigna must offer participants annual rates of benefit accrual for each plan year. See also 26 C.F.R. 1.411(b)-2(i)(B); *Esden v. Bank of Boston*, 229 F.3d 154, 167 (2d Cir. 2000) (the "only test that the [Bank of Boston's cash balance] plan might satisfy is the so-called 133 1/3 percent test under ERISA section 204(b)(1)(B)"; "that test requires that the value of the benefit accrued in any year . . . not exceed the value of a benefit accrued in any previous year by more than 33%").

38.     If the accrued benefits for 1998, 1999, etc. are to count for compliance with ERISA Section 204(b)(1)(B), they must be benefits that will become nonforfeitable under ERISA's vesting rules. ERISA Section 203(a), 29 U.S.C. §1053(a), provides that benefit accruals must be "nonforfeitable" once a participant has the years of service required to be vested. A nonforfeitable right is a right that is "unconditional." ERISA Section 3(19), 29 U.S.C. §1002(19).

39.     However, Sections 1.28 and 7.3 of Cigna's plan document place conditions on actual receipt of annual benefit accruals after January 1, 1998. Cigna has made receipt of Ms. Amara's and Ms. Broderick's annual pension accruals conditional on giving up part of their previously-earned benefits or taking a retirement distribution only at the plan's normal retirement age. For example, a nonforfeitable right to a benefit cannot be one that has a value of $7,500 under one condition and $0 under other conditions.

40.     "A right which, at a particular time, is conditioned under the plan upon a

10

subsequent event, subsequent performance, or subsequent forbearance which will cause loss of such right is a forfeitable right at that time." 26 C.F.R. 1.411(a)-4.

41.   IRS Notice 96-8, 1996-1 C.B. 359, explains:

> If benefits . . . have accrued [but] those benefits are disregarded when benefits commence before normal retirement age, the plan has effectively conditioned entitlement to the benefits . . . on the employee not taking a distribution prior to retirement age.

Accord *Esden v. Bank of Boston*, 229 F.3d 154, 168 (2d Cir. 2000) ("by making part of [Lynn Esden's] benefit conditional on the form of payment chosen, the Plan made that benefit forfeitable, in violation of ERISA").

42.   Cigna has made receipt of annual pension accruals after January 1, 1998 conditional on participants foregoing part of their previously earned benefits or taking a retirement distribution only at the plan's normal retirement age. This violates the nonforfeitability rules in ERISA Section 203(a), 29 U.S.C. §1053(a).

**Claim Two: ERISA Requires that Benefit Reductions, Conditions on Receipt of Additional Accruals, and Other Disadvantages Be Disclosed in the Summary Plan Description.**

43.   Under ERISA, Summary Plan Descriptions (SPDs) must be distributed to participants which disclose the circumstances that may result in reductions, disqualification, denial, loss, or forfeiture of any benefits that a participant might otherwise reasonably expect to receive on the basis of the description of the benefits offered by the plan. 29 C.F.R. 2520.102-3(l). The disclosure must be written in a manner calculated to be understood by the average plan participant. 29 C.F.R. 2520.102-2(a).

Reductions, restrictions and other disadvantages must be described no less prominently or understandably than the advantages of the plan. 29 C.F.R. 2520.102-2(b).

44.     The SPDs that Cigna distributed to participants in October 1998 and September 1999 do not describe any benefit reductions, conditions on receipt or other disadvantages of the new cash balance pension accruals. For example, the SPD's description of the annual pay credits does not describe any conditions on their receipt. It states:

> Each dollar's worth of credit is a dollar of retirement benefits payable to you after you are vested. Under the plan, your benefit will grow steadily throughout your career as credits are added to your account.

The same description was offered in a revised SPD dated September 1999. The benefit reductions and the conditional payment rule which Cigna's CEO approved on December 21, 1998 were <u>not</u> disclosed to participants in the SPD dated October 1998, the revised SPD dated September 1999, or any SPD distributed after that date.

45.     In the absence of the statutorily-required disclosure, a rule that causes benefits to be lost or forfeited may not be enforced. *Heidgerd v. Olin Corp.*, 906 F.2d 903 (2d Cir. 1990); *Burke v. Kodak Ret. Inc. Plan*, 336 F.3d 103, 111 (2d Cir. 2003).

**Claim Three: The Rate of Benefit Accruals After 1998 Is Reduced Because of Age.**

46.     ERISA Section 204(b)(1)(H)(i), 29 U.S.C. §1054(b)(1)(H)(i), prohibits an employer from establishing or maintaining plan rules that reduce "the rate of an employee's benefit accrual . . . because of the attainment of any age." Under a defined

benefit plan, an employee's benefit accrual is expressed in the form of an annuity at retirement.

47. Benefit accruals under a cash balance pension plan are a function of two components: Pay credits and interest credits. Due to the effect of compound interest until retirement, interest credits under a cash balance plan are more substantial for younger participants. Unless pay credits progressively counter-balance the interest credits, the rate of an employee's benefit accrual will be reduced because of age.

48. Cigna's cash balance formula increases its pay credits by 1% at 10-point age and service intervals until the participant accumulates 65 points, e.g., age 45 with 20 years of service or age 50 with 15 years of service. After that point, the pay credit is fixed at a flat percentage of pay.

49. As a result, once a participant has more than 65 points, the rate of benefit accrual drops based on age. In addition to suffering from the conditions on actual receipt described in the First Claim, Janice Amara's rate of cash balance benefit accrual decreases from almost 1.6% of pay at age 48 (her age when she was rehired) to 1.3% at age 53. Ms. Broderick's rate of cash balance accrual dropped from 1.1% of pay when she was rehired at age 56 to .9% of pay when she left Cigna in March 2004 at age 60. By comparison, the rate of accrual for a younger, age 35 employee making the same salary as Ms. Broderick or Ms. Amara would be over 2% of pay.

50. As codified by Section 204(b)(1)(H)(i), ERISA's policy is that an

employee's rate of benefit accrual should not be reduced because of age but should remain as great as the rate for a younger employee with the same salary.

**Claim Four: Cigna Did Not Give Participants Timely or Adequate Advance Notice of Benefit Reductions as Required by ERISA Section 204(h).**

51.  Cigna has never notified Plan participants of significant reductions in the rate of future accruals under the Part B cash balance formula. A November 1997 newsletter with an inset by the CEO counter-factually states that the changes "significantly enhance" the retirement program.

52.  In a Rule 30(b)(6) deposition, Cigna identified an article in this newsletter as Cigna's ERISA Section 204(h) notice, but the Rule 30(b)(6) witness admitted that the article does <u>not</u> disclose any reductions in the rate of accruals under the Part B formula. The October 1998 SPD and the September 1999 revision of the SPD likewise contain no description of reductions in the rate of accruals.

53.  By converting to a cash balance pension formula with reduced benefits without providing notice to participants of a significant reduction in the future rate of accruals at least 15 days before the amendments' effective date, Cigna violated ERISA Section 204(h), 29 U.S.C. § 1054(h), which requires that adoption of the amendments precede notice and that notice of the reduction precede implementation by at least 15 days.

54.  As indicated in ¶ 20, Cigna's CEO also amended a "rehire" rule on December 21, 1998 to require rehired employees like Ms. Broderick and Ms. Amara to

14

participate in the Part B plan instead of resuming participation under the "much higher" Part A formula. However, Cigna did not notify the rehired employees of the amended rule before they accepted offers of re-employment. Nor did Cigna notify them that participation in the Part B plan would result in significant reductions in their rates of future benefit accruals.

55. By implementing the amended rehire rule without notice of the resulting significant reduction in the future rate of accruals, Cigna violated ERISA Section 204(h), 29 U.S.C. § 1054(h).

**Claim Five: Cigna Has Reduced Previously-Earned Benefits in Violation of ERISA Section 204(g)'s Anti-Cutback Rule**

56. Cigna has violated ERISA Section 204(g)'s anti-cutback rule in at least three ways. First, it offers cash balance options without notifying participants of their rights to "minimum benefits" earned before 1998 with greater value. Second, Cigna has categorically denied the payment of certain protected benefits, including the free 30% survivor's benefit. For example, Ms. Broderick was denied the free 30% survivor's benefit, which should add over $70 per month to her present retirement income. Third, Cigna has offered participants who separate from service before age 55 lump sum distributions that are not based on the value of the "minimum benefits" that ERISA requires to be protected–even if that value is higher.

57. Cigna has also violated the disclosure rules that apply when benefit options have unequal values. Under 26 C.F.R. 1.401(a)-20, Q&A 36, which implements ERISA

Section 205(g), 29 U.S.C. §1055(g), Cigna is required to offer "sufficient" information "to explain the relative value of the optional forms of benefit available under the plan (e.g., the extent to which optional forms are subsidized relative to the normal form of benefit...)." Treasury regulations provide that "no consent is valid" unless this explanation has been provided. 26 C.F.R. 1.417(e)-1(b)(2)(i). Neither Cigna's SPD nor its benefit election materials disclose that the lump sum payment of a participant's cash balance account can be less valuable than the annuity benefits that participants earned before 1998.

**Prayer for Relief**

WHEREAS, the Plaintiff prays that this Court:

A. Declare that Janice Amara's and Gisela Broderick's benefit accruals under the "Part B" formula of the Cigna Pension Plan must not be reduced because of age or in comparison to the prior formula without advance notice and declare that their previously-earned benefits must be protected in conformity with ERISA and that their future benefit accruals must not be conditional on giving up part of those previously-earned benefits.

B. Enjoin the application of Cigna's reductions in the rate of benefit accruals, its reductions in previously-earned benefits and its conditions on receipt of future benefit accruals because of the ERISA minimum standard and disclosure violations.

C. Order appropriate equitable and remedial relief to ensure that this relief is implemented on a class-wide basis.

D.    Order such other equitable and remedial relief as the Court deems appropriate and award attorneys' fees and expenses.

> Respectfully submitted,
>
> By: /s/ Thomas Moukawsher
> Thomas Moukawsher Ct 08940
> Ian O. Smith Ct24135
> Moukawsher & Walsh, LLC
> 328 Mitchell St.
> Groton, CT 06430
> (860) 445-1809
> tmoukawsher@mwlawgroup.com
>
> Stephen R. Bruce Ct 23534
> Suite 210
> 805 15th St., NW
> Washington, DC 20005
> (202) 371-8013
> stephen.bruce@prodigy.net
>
> Attorneys for Plaintiffs