UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Janice C. Amara,<br>individually and on behalf of<br>all others similarly situated, | : <br> : <br> : <br> : | |
| Plaintiff, | : <br> : | |
| vs. | : <br> : | Civil. No. 3:01-CV-2361 (MRK) |
| CIGNA Corp. and<br>CIGNA Pension Plan, | : <br> : <br> : <br> : | May 6, 2005 |
| Defendants. | : | |

**PLAINTIFF CLASS' MEMORANDUM OF LAW ON IMPACT OF THIRD CIRCUIT DECISION IN *DEPENBROCK V. CIGNA* ON THIS LITIGATION**

Stephen R. Bruce Ct 23534
Suite 210
805 15th St., NW
Washington, DC 20005
(202) 371-8013

Thomas Moukawsher Ct 08940
Moukawsher & Walsh, LLC
21 Oak Street
Hartford, CT 06106
(860) 287-7000

Attorneys for the Plaintiff Class

### Plaintiffs' Memorandum of Law on Impact of Depenbrock v. CIGNA

This Court's March 21, 2005 Scheduling Order directs the parties to "file a stipulation, or if a stipulation cannot be reached, memoranda of law regarding the impact of the Third Circuit's recent decision in *Depenbrock v. CIGNA*, 389 F.3d 78 (3d Cir. 2004)," *reh. en banc denied* (December 8, 2004).

The parties have conferred and were unable to reach a stipulation. Plaintiff's counsel submits the following memorandum, which essentially restates the stipulation that was offered to the Defendants in writing on April 28, 2005. Defendants did not make a written proposal or counter-proposal.

1.  In *Depenbrock v. CIGNA*, supra, the Third Circuit held that CIGNA's amendment to the rehire rule contained in Section 2.4 of the CIGNA Pension Plan document was not effective until December 21, 1998, because CIGNA did not adopt the amendment in accordance with the procedures in the Plan document until that date. 389 F.3d at 86.

2.  The rehire rule in Section 2.4 of the CIGNA Pension Plan document in effect before December 21, 1998 provided that a rehired employee will be placed back under the benefit formula that applied when he or she terminated employment. CIGNA's amended rehire rule provided that a rehired employee will <u>not</u> be placed back under the Part A benefit formula – even if he or she was otherwise qualified to be grand-fathered under the Part A formula– but instead will be moved to the cash balance formula. Until

1

the date of the *Depenbrock* decision, CIGNA applied the amended rule retroactively to individuals who were rehired between January 1, 1998 and December 21, 1998.

3.  Finding that CIGNA's retroactive application of amendments violates the requirements of 29 U.S.C. §1102(a), 389 F.3d 81-83, the Third Circuit ruled that "Depenbrock's participation in the Old Plan should have resumed immediately upon his return to work on November 30, 1998. And his participation should have continued until either his employment ended or the terms of participation in the Old Plan were altered by a prospective amendment executed in accordance with CIGNA's specified procedures." 389 F.3d at 86. The Third Circuit rejected CIGNA's arguments that it should have been able to apply the amendment retroactively under the doctrine of ratification because retroactive application of the ratification doctrine would interfere with "intervening rights." 389 F.3d 83.

4.  Because CIGNA designed the cash balance formula with much lower benefit rates and a "wear-away" of early retirement rights, Mr. Depenbrock's pension benefits did not increase at all under the cash balance formula in the nearly five and one-half years between November 30, 1998, when CIGNA rehired him, and March 31, 2004, when his employment terminated with CIGNA as a result of CIGNA's sale of his division to The Prudential Insurance Company.

5.  The only direct individual impact of the Third Circuit's decision was to require CIGNA to place Mr. Depenbrock back under the Part A formula along with the

other employees who had already been grand-fathered under that formula. CIGNA prepared a recalculation of his retirement benefits from the CIGNA Pension Plan which shows that Mr. Depenbrock's benefits <u>nearly double</u> from $2,769.89 per month at age 55 to $5,266.67 per month between the ages of 55 and 65 and $4,737.81 per month after age 65.[1]

6.   Although CIGNA rehired 178 other older, longer service employees like Mr. Depenbrock between January 1, 1998 to December 21, 1998, including Janice Amara, the named Plaintiff in this class action, CIGNA declined to place them back under the Part A benefit formula as a result of the Third Circuit's ruling on the basis that the *Depenbrock* case was not certified as a class action.  Judge Robert F. Kelly, Jr. of the Eastern District of Pennsylvania declined to issue an order enjoining CIGNA to place all other similarly situated employees under Part A formula, but did issue a declaratory judgment that the "effective date" of the amendment to Section 2.4 is December 21, 1998.

7.   CIGNA subsequently decided to offer the other rehires an "option" to be placed back under Part A. On February 4, 2005, CIGNA mailed a letter, which is attached as Exhibit 1, to the 178 rehires, all of whom are members of this class.[2] Janice Amara is

---

[1] Mr. Depenbrock is due additional benefits under a non-qualified plan.

[2] The Amara class is defined as any and all persons who:

(1)   Are former and current CIGNA employees;
(2)   Participated in the CIGNA Pension Plan before January 1, 1998; and
(3)   Have participated in the "Part B" CIGNA Pension Plan at any time since January 1, 1998.

3

one of the individuals who received this letter.

8. The February 4, 2005 letter promises that CIGNA will distribute benefit recalculations. Other than Mr. Depenbrock, Janice Amara is evidently the only one of the 178 rehires who has received a recalculation from CIGNA up to the May 6, 2005 date of this submission. Like Mr. Depenbrock's recalculation, the recalculation for Ms. Amara shows that her benefits under the Part A formula are <u>nearly double</u> her benefits under the cash balance formula. The recalculation for Ms. Amara shows her benefits increasing from $1,833.65 per month beginning at age 55 to $4,302.55 per month between the ages 55 and 65 and $3,556.00 after age 65. Exhibit 2.

9. A class member's claim is moot if interim relief or events have "completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979), such that the court cannot grant "any effectual relief whatever." *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (per curiam). Because Ms. Amara's benefits under Part A are nearly double the benefits under the cash balance formula, Class counsel offered to stipulate that the injunctive relief sought in this case will not increase her benefits further on an individual basis.

10. Ms. Amara is entitled, however, to other equitable relief. For example, on June 7, 2004 CIGNA moved to decertify this class on the ground that Janice Amara had allegedly "released" any and all of her claims to additional retirement benefits as a part of a severance agreement that she executed in September 2003. After Judge Squatrito denied

4

the motion to decertify on October 13, 2004 (dkt. # 92), CIGNA served a "demand for arbitration" on December 23, 2004, seeking to pursue this issue in a different forum. To ensure that CIGNA's offer of relief is both "complete and <u>irrevocable</u>," CIGNA must declare that its offer of benefits to Ms. Amara is irrevocable and that its demand for arbitration on the ground that she has released any and all of her claims to additional retirement benefits is without merit and will not be re-instituted.

11.     Where the defendant might be "free to return to his old ways," "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of that practice." *Friends of the Earth, Inc. v. Laidlaw,* 528 U.S. 167 (2000). Instead, "subsequent events" must make it "<u>absolutely clear</u> that the allegedly wrongful behavior could not reasonably be expected to recur." Id. See also *R.C. Bigelow, Inc. v. Unilever,* 867 F.2d 102, 106-7 (2d Cir. 1989) ("a disclaimer of intention to revive allegedly unlawful conduct does not suffice by itself...[w]hen abandonment of challenged conduct seems timed to head off an adverse determination on the merits–particularly when supported by narrowly drawn affidavits containing disclaimers only of present intention to resume allegedly unlawful activity–it cannot be said that the possibility of repetition of such activity is merely abstractly conceivable"); *Adams v. Bowater,* 313 F.3d 611, 614-15 (1st Cir. 2002) (observing that employer was "persistently unwilling either to admit that its amendment was unlawful or to say that it will not be reintroduced"; "where a defendant is unwilling to give any assurance that the

conduct will not be repeated, a natural suspicion is provoked that recurrence may well be a realistic possibility").

12.  Ms. Amara also incurred attorneys' fees and expenses to protect her rights against CIGNA's assertion (as recently as December 23, 2004) that she had released any and all such rights. See, e.g., *Adams v. Bowater*, supra, 313 F.3d at 613 (noting that "[a] claim to attorney's fees, which ERISA permits, would also be strengthened by [a] decree" that the unlawful amendment would not be reinstated by defendant, "although this is not a basis for litigating a case that is otherwise moot"); *Colbert v. Dymacol*, 344 F.3d 334 (3d Cir. 2003) (en banc) (reversing prior holding that defendant's offer of individual relief mooted named plaintiff's claim because plaintiff did not "receive[] all relief requested in his complaint").

13.  CIGNA has not only been unwilling to agree to pay Ms. Amara's fees and expenses in order to completely and irrevocably moot her claims, it has remarkably insisted that it (CIGNA) wants to reserve the right to recover attorneys' fees from Ms. Amara individually for having instituted this class action. A voice mail message left by Defendants' counsel on May 3, 2005 states:

> "We are not willing to essentially drop any claim that we might have to Ms. Amara's attorneys' fees, which I think based on our previous conversation means that we're not going to reach a stipulation as to the impact of Depenbrock on her or anyone else."

How CIGNA believes that Ms. Amara's claim could be moot with this reservation is difficult to fathom.

14. In class actions seeking equitable relief, it is not unusual for the claims for equitable relief of named representatives to become moot in the course of the litigation because of interim events or relief, e.g., a student who challenges a discriminatory practice graduates from school. However, a case "does not inexorably become moot by the intervening resolution of the controversy as to the named plaintiffs." *Sosna v. Iowa*, 419 U.S. 393, 401-2 (1975). If individual claims become moot in all or only certain respects, the named representative unquestionably remains a witness, even if he or she is not entitled to certain types of individual equitable relief. See *United States Parole Commission v. Geraghty*, 445 U.S. 388, 397 (1980) ("where the named plaintiff does have a personal stake at the outset of the lawsuit, and where the claim may arise again with respect to that plaintiff...the litigation then may continue notwithstanding the named plaintiff's current lack of a personal stake").

15. To ensure that at least one class representative has "personal stake" in the claims for additional retirement benefits in every respect on an individual basis, the Class has taken action to add Gisela R. Broderick, who is a member of the class, as a named representative. As the Court requested at the April 20, 2005 hearing, Plaintiff's counsel provided Defendants with Ms. Broderick's name over a week in advance of this memorandum.

16. Class counsel expect that because the benefits under Part A are "much higher" than the cash balance formula, placing the other 177 rehired employees back in

7

Part A will generally result in substantial benefit increases for each such class member, comparable in many or most cases to those of Mr. Depenbrock and Ms. Amara. As part of this stipulation, Plaintiff requested that CIGNA produce the recalculations for the other rehires who elect Part A and the recalculations for any who do not elect Part A. Absent a stipulation, Plaintiff will serve discovery requests for those recalculations. If any rehired class members whose benefits are increased under Part A are not returned to the Part A formula, Class counsel reserve the right to enforce the *Depenbrock* decision and related ERISA rules about explaining any benefit choices that have unequal values.

Dated: May 6, 2005

Respectfully submitted,

By: /s/ Thomas G. Moukawsher
Thomas G. Moukawsher ct08940
Ian O. Smith ct24135
Moukawsher & Walsh, LLC
21 Oak Street
Hartford, CT 06106
(860) 278-7000
tmoukawsher@mwlawgroup.com

Stephen R. Bruce ct23534 (pro hac vice)
Suite 210
805 15th St., NW
Washington, DC 20005
(202) 371-8013
stephen.bruce@prodigy.net

## CERTIFICATION OF SERVICE

I certify that a copy of the foregoing Plaintiff Class' Memorandum of Law on Impact of Third Circuit Decision in *Depenbrock v. CIGNA* on this Litigation has been mailed on this date by FedEx next day delivery to counsel for the Defendants at:

>Joseph J. Costello
>Jeremy P. Blumenfeld
>Morgan, Lewis & Bockius
>1701 Market St.
>Philadelphia, PA 19103-2921
>(215) 963-5295
>
>Elizabeth A. Fowler
>Erin O'Brien Choquette
>Robinson & Cole, LLP
>280 Trumbull Street
>Hartford, CT 06103-3597
>(860) 275-8200

Dated this 6th day of May, 2005.

>/s/ Thomas G. Moukawsher
>Thomas G. Moukawsher