UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| Janice C. Amara, | : | |
| individually and on behalf of | : | |
| all others similarly situated, | : | |
|  | : | |
| Plaintiff, | : | |
|  | : | |
| vs. | : | Civil. No. 3:01-CV-2361 (MRK) |
|  | : | |
| CIGNA Corp. and | : | May 6, 2005 |
| CIGNA Pension Plan, | : | |
|  | : | |
| Defendants. | : | |

## PLAINTIFF CLASS' MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE ON DIRECT TESTIMONY RELEVANT TO "LIKELY PREJUDICE" STANDARD IN *BURKE V. KODAK*

Stephen R. Bruce Ct 23534
Suite 210
805 15th St., NW
Washington, DC 20005
(202) 371-8013

Thomas Moukawsher Ct 08940
Moukawsher & Walsh, LLC
21 Oak Street
Hartford, CT 06106
(860) 287-7000

Attorneys for the Plaintiff Class

## ORAL ARGUMENT REQUESTED

# Table of Contents

Introduction ............................................................ 1

I.      ERISA Establishes Stringent Disclosure Requirements for Summary Plan
        Descriptions (SPDs) ............................................... 1

II.     *Burke* Rejects Either a "Detrimental Reliance" Standard or an "Amorphous"
        Prejudice Standard and Instead Establishes "Likely Prejudice" as the Basis for
        Obtaining Relief for a Deficient SPD; the Employer Has the Opportunity to Rebut
        by Proving that the Inadequate Disclosures Were "Harmless" .............. 4

III.    The Disclosure Rules Are Not Applied Any Differently for Cash Balance
        Conversions ..................................................... 10

IV.     How the Plaintiff Class Intends to Demonstrate "Likely Prejudice" .......... 11

V.      CIGNA's Limited Defense to the Disclosure Violations to Date ............. 15

VI.     The Class' Proposed In Limine Rulings ............................... 16

Conclusion ............................................................ 23

i

# Table of Authorities

## Federal Cases

*Alexander v. Primerica Holdings*, 967 F.2d 90 (3d Cir. 1992) ............................ 14

*Amorgianos v. AMTRAK*, 303 F.3d 256 (2d Cir. 2002) ........................................ 19

*Becker v. Kodak*, 120 F.3d 5 (2d Cir. 1997) ............................................................. 3

*Broga v. Northeast Utilities*, 315 F. Supp. 2d 212 (D.Conn. 2004) ....................... 4

*Burke v. Kodak Ret. Income Plan*, 336 F.3d 103 (2d Cir. 2003), *cert.
denied*, 540 U.S. 1105 (2004) .................................................................... *passim*

*Burstein v. Allegheny*, 334 F.3d 365 (3d Cir. 2003) ..................................... 8, 9, 11

*Burstein v. Allegheny*, 2004 WL 2612162 (E.D.Pa. Oct. 21, 2004).......................... 9

*Carter-Wallace v. Otte*, 474 F.2d 529 (2d Cir. 1972) ........................................... 16

*Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032
(2d Cir. 1985), *cert. denied*, 475 U.S. 1012 (1986) ........................................... 1

*Chiles v. Ceridian*, 95 F.3d 1505 (10th Cir. 1996) ................................................ 14

*EEOC v. Beauty Enterprises, Inc.*, __ F. Supp. 2d __, 2005 U.S. Dist.
LEXIS 4547 (D.Conn. March 23, 2005) .................................................... 17, 19

*Esden v. Bank of Boston*, 229 F.3d 154 (2d Cir. 2000) ......................................... 11

*Feinman v. Dean Witter Reynolds*, 84 F.3d 539 (2d Cir. 1996) ........................... 10

*Frommert v. Conkright*, 328 F. Supp. 2d 420 (W.D.N.Y. 2004) ........................... 7

*Gediman v. Anheuser-Busch*, 299 F.2d 537 (2d Cir. 1962) .................................... 3

*Hamilton v. Air Jamaica*, 945 F.2d 74 (3d Cir. 1991) .......................................... 22

*Harte v. Bethlehem Steel*, 214 F.3d 446 (3d Cir. 2000), *cert. denied*,
531 U.S. 1037 (2000) ........................................................................... 10, 16, 21

ii

*Heidgerd v. Olin Corp.*, 906 F.2d 903 (2d Cir. 1990) ........................................ 2, 3

*Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186 (3d Cir. 1990) ................... 10

*In re IPO Securities Litigation*, 174 F. Supp. 2d 61 (S.D.N.Y. 2001) ................. 16

*Jordan v. Federal Express*, 116 F.3d 1005 (3d Cir. 1997) ..................................... 9

*Joseph v. Wiles*, 223 F.3d 1155 (10th Cir. 2000) .................................................. 10

*Lappe v. American Honda Motor Co.*, 857 F. Supp. 222 (N.D.N.Y. 1994),
    *aff'd*, 101 F.3d 682 (2d Cir. 1996) .................................................................... 18

*Layaou v. Xerox*, 238 F.3d 205 (2d Cir. 2001) .................................................... 2, 3

*Layaou v. Xerox*, 330 F. Supp. 2d 297 (W.D.N.Y. 2004) ...................................... 7

*Leyda v. AlliedSignal*, 322 F.3d 199 (2d Cir. 2003) ............................................... 4

*McCarthy v. Dun & Bradstreet Career Transition Plan*, 2004 WL 2743569,
    2004 U.S. Dist. LEXIS 23996 (D.Conn. Nov. 30, 2004) ................................. 4

*McCullock v. Fuller Co.*, 61 F.3d 1038 (2d Cir. 1995) ........................................ 18

*Medeika v. SNET*, 3:97-CV-1123 (D.Conn. April 5, 1999) (unreported)..............11

*Moriarity v. United Technologies*, 947 F. Supp. 43 (D.Conn. 1996) ..................... 5

*Newton v. Merrill Lynch*, 259 F.3d 154 (3d Cir. 2001) ........................................ 10

*Ortiz v. Stanley-Bostich, Inc.*, 2000 WL 640645 (S.D.N.Y. 2000) .......................17

*Parry v. SBC*, __ F. Supp. 2d __, 2005 WL 742680 (D.Conn. March 31,
    2005) ........................................................................................................... 4, 7

*Ruotolo v. Sherwin-Williams Co.*, 622 F. Supp. 546 (D.Conn. 1985) ................... 3

*Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996) ........................................... 18

*Savino v. Computer Credit, Inc.*, 164 F.3d 81 (2d Cir. 1998) .............................. 18

iii

*Schering Corp. v. Pfizer, Inc.*, 189 F.3d 218 (2d Cir. 1999) ................................. 19

*Sheehan v. MetLife*, 2005 WL 627636 (S.D.N.Y. March 17, 2005) ...................... 8

*Simon DeBartolo Group v. Richard E. Jacobs Group*, 186 F.3d 157 (2d Cir. 1999) ........................................................................................................ 10

*Teamsters v. Daniel*, 439 U.S. 551 (1979) ............................................................ 10

*Thomforde v. IBM*, __ F.3d __, 2005 WL 1017958 (8th Cir. May 3, 2005) ........ 18

*Travelers Property & Casualty Corp. v. GE Co.*, 150 F. Supp. 2d 360 (D.Conn. 2001) ............................................................................................... 18

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) .................................... 17

*United States v. Duncan*, 42 F.3d 97 (2d Cir. 1994) ............................................ 17

*Weinreb v. Hospital for Joint Diseases*, __ F.3d __, 2005 WL 803303 (2d Cir. April 8, 2005) ......................................................................................... 8

*Wilson v. Southwestern Bell Telegraph*, 55 F.3d 399 (8th Cir. 1995) .................. 20

## Federal Statutes & Regulations

ERISA § 102, 29 U.S.C. §1022 ........................................................................ 2, 19

ERISA § 204(h), 29 U.S.C. §1054(h) ..................................................................... 1

ERISA § 205(g), 29 U.S.C. §1055(g) ..................................................................... 1

65 Fed. Reg. 70227 .............................................................................................. 11

26 C.F.R. 1.417(e)-1(b)(2)(i) ................................................................................. 1

29 C.F.R. § 2520.102-2 ......................................................................................... 2

29 C.F.R. § 2520.102-3 ..................................................................................... 2, 19

29 C.F.R. § 2520.104b ..................................................................................... 2, 3, 19

iv

**Introduction**

The Plaintiff Class submits this motion in limine for a ruling about the relevance of direct testimony to establishing "likely prejudice" under *Burke v. Kodak Retirement Income Plan*, 336 F.3d 103 (2d Cir. 2003), cert. denied, 540 U.S. 1105 (2004), from inadequate disclosures in a Summary Plan Description ("SPD").[1]

**I.    ERISA Establishes Stringent Disclosure Requirements for Summary Plan Descriptions (SPDs)**

Under ERISA, the Summary Plan Description (SPD) is the primary document for communicating information about benefits to participants. ERISA prohibits an SPD that omits, "obscures" or tends to "minimize" one or more material limitations on benefits. *Burke v. Kodak*, supra, 336 F.3d at 110. Of particular relevance here, an SPD must explain the "full import of the interaction" between existing plan provisions and an amendment altering the computation of benefits. *Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032, 1040 (2d Cir. 1985), cert. denied, 475 U.S. 1012 (1986).

---

[1] Plaintiffs do not believe that "likely prejudice" is required to obtain relief for violations of the ERISA Section 204(h) notice requirements (29 U.S.C. §1054(h)) or the Section 205(g) disclosure requirements related to benefit options (29 U.S.C. §1055(g)), which are pled in the amended Complaint. Relief for these violations is "built into" the statute and regulations. Under ERISA Section 204(h), a pension plan "may not be amended" unless the required advance notice of reductions in future rates of accruals is given. Under 26 C.F.R. 1.417(e)-1(b)(2)(i), which implements Section 205(g), "no consent is valid" unless sufficient information about the relative values of benefit options is given. If, contrary to Plaintiffs' position, "likely prejudice" is required to obtain relief under these Sections, the Class' showing of "likely prejudice" for purposes of the SPD requirements will satisfy these requirements, too.

1

In *Layaou v. Xerox*, 238 F.3d 205, 209-10 (2d Cir. 2001), the Second Circuit

explained the role of the SPD under ERISA's statutory scheme:

> The SPD must be "written in a manner calculated to be understood by the
> average plan participant" and must "be sufficiently accurate and
> comprehensive to apprise such participants and beneficiaries of their rights
> and obligations under the plan." [29 U.S.C. § 1022(a).] ERISA
> "contemplates that the summary [plan description] will be an employee's
> primary source of information regarding employment benefits, and
> employees are entitled to rely on the descriptions contained in the
> summary." *Heidgerd v. Olin Corp.*, 906 F.2d 903, 907-08 (2d Cir. 1990).
>
> Generally, for a SPD to meet the disclosure requirements of 29 U.S.C. §
> 1022, "the limitation or elimination of technical jargon and of long,
> complex sentences [and] the use of clarifying examples" is required. 29
> C.F.R. § 2520.102-2(a). The SPD must include, among other things, a
> description of the "circumstances which may result in disqualification,
> ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b); *see also* 29
> C.F.R. § 2520.102-3(l) (an SPD must contain "a statement *clearly*
> *identifying* circumstances which may result in disqualification, ineligibility,
> or denial, loss, forfeiture or suspension of any benefits that a participant or
> beneficiary might otherwise reasonably expect the plan to provide on the
> basis of the description of benefits") (emphasis added). Regulations
> promulgated under ERISA prescribe the format of a SPD. The format of the
> summary plan description must not have the effect [of] misleading,
> misinforming or failing to inform participants and beneficiaries. Any
> description of exceptions, limitations, reductions, [or] restrictions of plan
> benefits shall not be minimized, rendered obscure or otherwise made to
> appear unimportant . . . [and] shall be described or summarized in a manner
> not less prominent than the style, captions, printing type, and prominence
> used to describe or summarize plan benefits. 29 C.F.R. § 2520.102-2(b).

Under ERISA, the preparation and distribution of the SPD is the responsibility of

the "plan administrator" who has a fiduciary duty to tell participants the truth about

benefit reductions and other disadvantages. See 29 C.F.R. 2520.102-2(a); 2520.104b-2(a)

and 2520.104b-3(a); *Mullins v. Pfizer*, 23 F.3d 663, 669 (2d Cir. 1994) (plan

2

administrator "must speak truthfully"); *Becker v. Kodak.*, 120 F.3d 5, 10 (2d Cir. 1997) (fiduciaries have duty to disclose "complete and accurate information").

In *Layaou*, the participant claimed that the "SPD did not provide him notice that his future benefits would be offset by an appreciated amount of his prior distributions." 238 F.3d at 210. The Second Circuit found that the SPD did not give notice of the offset of an appreciated amount because the SPD did not describe that concept, did not indicate that the benefit computation involved an offset of an appreciated value of prior lump sum distributions, and did not provide an example of how to calculate benefits with the offset. Id. The Second Circuit concluded that because "the explanations provided in the SPD . . . did not provide the critical information needed by employees in [plaintiff's] circumstances . . . the SPD lacked the clarity and completeness required by § 1022." Id.; accord *Heidgerd v. Olin Corp.*, 906 F.2d 903, 907-08 (2d Cir. 1990) (SPD failed to adequately disclose that severance payments would not be made if employee accepted a job with the company that purchased the facility where he or she worked).[2]

Following the Second Circuit's precedents, other judges in this District have refused to enforce benefit reductions and limitations that are inadequately disclosed in an SPD. *Ruotolo v. Sherwin-Williams Co.*, 622 F.Supp. 546, 549 (D.Conn. 1985) (Cabranes)

---

[2] The Second Circuit's concern with inadequate disclosures of pension information antedates ERISA. In *Gediman v. Anheuser-Busch*, 299 F.2d 537, 545 (2d Cir. 1962), Judge Friendly wrote that an explanation that a benefit "would not be as much as" another does "not convey to the ordinarily unlearned pensioner that on this account it would be only 42% as much."

(SPD failed to disclose that disability benefits would be reduced by 70% of earnings from paid employment); *Leyda v. AlliedSignal*, 322 F.3d 199 (2d Cir. 2003), affirming unreported trial decision by Judge Hall in 3:99-CV-00076, dated November 9, 2001; *Broga v. Northeast Utils.*, 315 F.Supp.2d 212, 242 and 255 (D.Conn. 2004) (Squatrito) (fiduciary must convey "correct and complete material information"); *Parry v. SBC*, __ F.Supp.2d __, 2005 WL 742680 (D.Conn. March 31, 2005) (Arterton). Compare *McCarthy v. Dun & Bradstreet Career Transition Plan*, 2004 WL 2743569, * 4-5, 2004 U.S. Dist. LEXIS 23996, *13-14 (D.Conn. Nov. 30, 2004) (Underhill) (where SPD explicitly states that benefits "*will be* reduced...resulting in a lower Plan benefit," it was not required "to include the specific methodology used to calculate a benefit") (emph. in orig.).

**II.**    ***Burke* Rejects Either a "Detrimental Reliance" Standard or an "Amorphous" Prejudice Standard and Instead Establishes "Likely Prejudice" as the Basis for Obtaining Relief for a Deficient SPD; the Employer Has the Opportunity to Rebut by Proving that the Inadequate Disclosures Were "Harmless"**

The *Burke v. Kodak* decision resolves the longstanding open issue in the Second Circuit about the showing that a plaintiff/participant must make to obtain relief for a faulty SPD. This issue had already arisen in the instant *Amara v. CIGNA* litigation. In opposing class certification, CIGNA argued that the class should not be certified for the count about whether the "SPD was misleading" because each plaintiff in the over 24,000 member class would have to "make an individualized showing of detrimental reliance

4

upon the misleading SPD provision" in order to obtain relief. Slip Op. at 7 n.4

(summarizing CIGNA's argument). In CIGNA's words:

> "if this case were certified as a class action, every one of the estimated (by
> Plaintiff) 25,000 class members would be called upon to present evidence,
> as to, inter alia, the extent, if any, of his or her detrimental reliance on the
> SPD."

Opp. Br. filed June 10, 2002 at 12 (dkt. #30). In ruling in favor of class certification,

Judge Squatrito held that the "threshold inquiry" is "whether the SPD is misleading,"

which "is a legal question common to each class member." Judge Squatrito observed that

the Second Circuit "ha[d] not yet decided" the issue of detrimental reliance. Slip Op. at 7

n.4.

*Burke* resolves this question by holding that plan participants can prevail in cases

challenging flawed SPDs without proving individual reliance on inadequate disclosures in

an SPD. Id. at 112-14. The Second Circuit found that the circuits, and the district courts

within this circuit, were divided over whether to use detrimental reliance or prejudice as

the standard.[3] The Second Circuit rejected a detrimental reliance standard because it

imposes an "insurmountable hardship on many plaintiffs." The Second Circuit also found

that the prejudice standard had been applied with "varying degrees of stringency."

Consequently, instead of an "amorphous" prejudice standard, the Second Circuit

established an objective one, requiring an "initial" showing of "likely prejudice," meaning

---

[3] The Second Circuit cited Judge Dorsey's decision in *Moriarity v. United Technologies*, 947 F.Supp. 43, 52 (D.Conn. 1996), as an example of a case where application of a "detrimental reliance" standard denied relief. 336 F.3d at 112.

5

that the participant "was *likely* to have been harmed as a result of a deficient SPD." 336 F.3d at 112-13 (emph. in orig.). The employer can rebut by offering evidence showing that the inadequate description was "in effect a harmless error." Id. at 113. The "likely prejudice" standard "avoids the use of harsh common law principles to defeat employees' claims based on a federal law designed for their protection." Id.

Applying this standard, *Burke* decided that ERISA prohibited enforcement of an affidavit requirement for domestic partners that was contained in Kodak's Plan document but was not adequately disclosed in the SPD. Although the affidavit requirement was set out in the Plan document, and was even described in certain sections of the SPD, it was omitted from the section of the SPD describing preretirement survivor's benefits, which also failed to cross-reference the reader to other sections of the SPD where the requirement was described. 336 F.3d at 110-11. Providing the missing information, the Court observed, would have required minimal diligence and effort from the plan administrator and would have eliminated guesswork by participants. Id.

In *Burke*, the Second Circuit found likely prejudice because "[t]he conspicuous absence of the domestic partnership affidavit requirement in the self-contained [preretirement Survivor Income Benefits] section [of the SPD] likely led the Burkes to believe that an affidavit was unnecessary for SIB benefits." 336 F.3d at 114. The Court rejected the employer's rebuttal because it was based on "the same evidence used by the district court to find a lack of detrimental reliance," namely, the Burkes' conscious

6

decision not to apply for Kodak's health benefits because of unrelated concerns about whether expenses from a pre-existing stroke would be covered. Id. at 114.

In *Layaou v. Xerox*, 330 F.Supp.2d 297, 303 (W.D.N.Y. 2004), on remand from 238 F.3d 205 (2001), the district court found that the SPD contained "no reference whatsoever" to the offset of a "phantom account," either expressly or by description of its application and effect." A participant "would not know" from the SPD "how or to what extent the benefit would be reduced." The court determined that:

> "the conspicuous absence of any reference to or explanation of the phantom offset, coupled with the annual benefit statements that had been provided to Layaou, would clearly have misled him into believing that his monthly benefit would be considerably higher than it turned out to be. That mistaken belief would likely have affected plaintiff's financial planning for his upcoming retirement, and defendants have not presented any evidence to show that plaintiff was in fact aware of the phantom account offset prior to his retirement."

330 F.S.2d at 304. The Court concluded that "plaintiff has established "likely prejudice" as a result of the faulty SPD, and that defendants have not rebutted that showing." Id.[4]

Most recently, in *Parry v. SBC Communications*, supra, 2005 WL 742680, *22, Judge Arterton applied *Burke* and held that plaintiffs' showing of prejudice was "clear" where differences in benefits were "so significant" and participants were aware of conflicting benefit "estimates." She held that the employer "has not rebutted this showing."

---

[4] Judge Larimer distinguished his earlier decision in *Frommert v. Conkright*, 328 F.Supp.2d 420 (W.D.N.Y. 2004), on the basis that Frommert's claims were not based on a faulty SPD. 330 F.S.2d at 303 n.6.

7

The Second Circuit's recent decision in *Weinreb v. Hospital for Joint Diseases*, __

F.3d __, 2005 WL 803303 (2d Cir. April 8, 2005), illustrates a successful rebuttal by an

employer under the *Burke* standard. Although the employee's surviving spouse proved

that the employer never distributed an SPD for a life insurance plan, the employer

rebutted any harm from the faulty SPD by showing that the employee had actual

knowledge that he needed to complete a life insurance enrollment form and was sent the

necessary enrollment form "two, if not three times." Id. at *3-4.

Likewise, in *Sheehan v. MetLife*, 2005 WL 627636, *30-31 (S.D.N.Y. March 17,

2005), a participant was found to be disabled but the insurance certificate contained

restrictions if a mental or nervous condition "contribute[d] to" the disability. The SPD's

description of this restriction was narrower than the certificate; it indicated that the

disability had to be the "result of" the mental or nervous condition. Applying *Burke*, the

district court found "nothing in the evidence to suggest that, had [the plaintiff] known" of

"the restrictions" on eligibility for disability benefits, he "would have acted in such a way

as to avoid the effect of the restrictions." Id. at *31. Accordingly, the plaintiff did not

satisfy the "likely prejudice" standard. The court contrasted *Layaou* as a case where the

plaintiff "was able to show that if the SPD had not been deficient he could and probably

would have taken action to improve or protect his interests." *31 n.22.

As the Second Circuit did in *Burke*, the Third Circuit has also rejected a standard

that requires individual proof of detrimental reliance to obtain relief for a faulty SPD. In

*Burstein v. Allegheny*, 334 F.3d 365 (3d Cir. 2003), the Third Circuit not only rejected

8

detrimental reliance, but went further than the Second Circuit in holding that a

straightforward "contractual" standard applies:

> "[J]ust as a court's enforcement of a contract generally does not require proof that
> the parties to the contract actually read, and therefore relied upon, the particular
> terms of the contract, we are persuaded that enforcement of an SPD's terms under
> a claim for plan benefits does not require a showing of reliance.... Based upon our
> view of Congress's intent, an SPD furnishes the plan's terms to the extent that it
> conflicts with (and thus supersedes) the language of a formal plan document. We
> thus hold that, in enforcing an SPD's terms, a participant does not need to plead
> reliance or prejudice, since the claim for plan benefits under ERISA § 502(a)(1)(B)
> is contractual."

334 F.3d at 381-82. In *Burstein*, which also involved a cash balance conversion, the Plan

document conflicted with the SPD because the SPD "conveys the impression" that the

employer made actual contributions to the accounts each year and each participant had a

funded account which he or she had "earned." The Plan document actually contained

significant restrictions on those rights. On remand, the district court found that the use of

the term "earned" in the SPD in essence "created a contractual right to the hypothetical

bookeeping entries." 2004 WL 2612162 at *1 (E.D. Pa. Oct. 21, 2004) (this was,

however, a "pyrrhic victory" because the plan had been terminated with insufficient assets

and the PBGC, as the Federal guaranty agency, had no responsibility to insure the

benefits).

Analogous to the Second Circuit's "likely prejudice" standard, the Third Circuit

holds that the test for equitable relief for a breach of fiduciary duty in any communication

other than the SPD is "materiality." *Jordan v. Federal Express*, 116 F.3d 1005, 1016 (3d

Cir. 1997). Materiality is defined by the "likelihood" that the lack of information will

9

affect the participant's ability to make "well-informed employment and retirement decisions." *Harte v. Bethlehem Steel*, 214 F.3d 446, 451 (3d Cir.), cert. denied, 531 U.S. 1037 (2000).

Consistent with the "likely harm" standard in *Burke*, both the Second and Third Circuits presume reliance in instances of "material" non-disclosures involving securities investments. "[W]here the claim rests on an omissions, ... reliance may be presumed upon a showing that the omitted information was material." *Simon DeBartolo Group v. Richard E. Jacobs Group*, 186 F.3d 157, 173 (2d Cir. 1999); accord *Feinman v. Dean Witter Reynolds*, 84 F.3d 539, 541 (2d Cir. 1996); *Newton v. Merrill Lynch*, 259 F.3d 154, 176-77 (3d Cir. 2001) (presuming reliance class-wide is proper when the material non-disclosure is part of a common course of action"); *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 202-3 (3d Cir. 1990).[5] In *Teamsters v. Daniel*, 439 U.S. 551, 570 (1979), the Supreme Court held that "[w]hatever benefits employees might derive from the effect of the Securities Acts are now provided in more definite form through ERISA."

## III. The Disclosure Rules Are Not Applied Any Differently for Cash Balance Conversions

The disclosure rules are not applied any differently for cash balance conversions. The Department of Labor states that the SPD regulations "require a reasonably comprehensive and clear description of the provisions of a cash balance plan and how a

---

[5] The basis for this presumption is the difficulty of proving a negative: i.e., that a plaintiff "relied on a practice which defendants did not affirmatively disclose." *Newton*, supra; *Joseph v. Wiles*, 223 F.3d 1155, 1162-63 (10th Cir. 2000).

prior conversion may have affected benefits that classes of participants may have reasonably expected the plan to provide." 65 Fed. Reg. 70227 (Nov. 21, 2000). The DOL has "encourage[d] sponsors of cash balance plans to review their SPDs to ensure compliance with current disclosure requirements." Id.

As mentioned, the Third Circuit's *Burstein* decision reviews the adequacy of disclosures about hypothetical accounts after a cash balance conversion. 334 F.3d at 375-76 and 379-80. Judge Arterton's decision in *Parry v. SBC* also involves disclosures about cash balance amendments, as does an unreported decision by Judge Squatrito in *Medeika v. SNET*, 3:97-CV-1123 (April 5, 1999). The Second Circuit's decision in *Esden v. Bank of Boston*, 229 F.3d 154, 157 (2d Cir. 2000), also concerns a cash balance plan. Although *Esden* does not focus on disclosures, the Second Circuit's groundbreaking analysis of cash balance pension formulas finds that they are no different than other defined benefit plans for purposes of ERISA compliance.

**IV.    How the Plaintiff Class Intends to Demonstrate "Likely Prejudice"**

The Plaintiff class intends to demonstrate "likely prejudice" through the SPD and Plan documents themselves and primarily through the expert reports and testimony of Claude Poulin, a Fellow in the Society of Actuaries, and Professor James F. Stratman, an Associate Professor at the University of Colorado at Denver and Director of its Technical Communications Program.

Mr. Poulin has been a Fellow in the Society of Actuaries for over 35 years and has testified in many cases. Among his other responsibilities, he is the Actuarial Trustee for

the Connecticut State Employees Retirement Commission. Mr. Poulin has prepared an expert report for the Plaintiff Class which identifies the features of Cigna's cash balance conversion that cause losses of benefits that participants might reasonably expect to receive. Ex. 1 at 4-13.

The Plaintiff Class will present CIGNA's own documents and testimony from adverse witnesses to show that CIGNA was aware of these reductions and did not disclose them. To illustrate, two internal CIGNA documents admit that benefits under the prior formula were "much higher" and that "opening balances [under cash balance] were established below actual value." Ex. 2 and Ex. 3.

The Class intends to introduce additional exhibits showing that surveys, feedback from managers, and individual participants asked CIGNA to provide comparisons of the old benefits with the new. For example, managers who were asked to review the cash balance proposal in August 1997 urged CIGNA to "publish negative" "case studies" and be ready "to support the employees who will be negatively impacted ASAP." Ex. 4. The Class will show that CIGNA decided "NOT" to provide any comparative information: "We continue to focus on NOT providing employees before and after samples of the Pension Plan changes." Ex. 5.

In the communications leading up to the SPD, CIGNA offered only overviews of the cash balance plan's operation, and, when it said more, it described the changes as "enhancements" for employees. In a November 1997 "Special Edition" of CIGNA's Benefits Newsletter, a "Message from CEO Bill Taylor" declares: "I am pleased to

12

announce that on January 1, 1998, CIGNA will significantly enhance its retirement program." Ex. 6.

CIGNA distributed its SPD about the conversion in October 1998. Like the preceding newsletter, the SPD contains no description of reductions, conditions on the receipt of benefits, or other disadvantages. Instead, the SPD promises that "Each dollar's worth of [cash balance] credits is a dollar of retirement benefits payable to you after you are vested." Ex. 7 at 3. Any disclosure of benefit reductions or wear-aways in rates of benefit accruals was conspicuously absent. A 1999 revision contains the same language and offers no more disclosures of reductions than the original version. Ex. 8.

The Class will show that, consistent with the messages in the SPDs and earlier newsletter, CIGNA has distributed "total compensation" statements each year since the cash balance conversion telling employees about the dollars that "CIGNA pays" for their pension benefits. For example, a compensation statement distributed to Gisela Broderick states that "CIGNA pays" $7,617 for her retirement benefits in a year in which her retirement benefits did not increase by even $1. Ex. 9.

To analyze CIGNA's SPD and other disclosures, the Plaintiff Class will rely on the expert report and testimony of Professor Stratman. Professor Stratman is an expert in the understandability of written communications in the legal, business and technical fields. He has written a law review article about his research on ERISA SPD's on which both the

Third and the Tenth Circuits have relied.[6] Professor Stratman examined CIGNA's SPD in light of the reductions that Actuary Poulin identified and ERISA's standards on "understandability" contained in ERISA. Id. at 2. He applied what he learned in his research on SPDs and as an expert on the understandability of written communications.

Professor Stratman's expert report finds that CIGNA's SPD fails to disclose that the wear-away provision under which employees might not immediately begin earning benefits after conversion but instead will have new benefits delayed for a number of years. The SPD also does not disclose that the reductions in the employees' future benefit accruals compared to the old plan. Ex. 10 at 12. Professor Stratman will testify that offering the missing information would have required minimal effort and would have eliminated the participants' lack of information.

Professor Stratman's testimony will be supported by the testimony of former and current CIGNA employees that they did not know about the reductions. For example, the named Plaintiff, Janice Amara, has already filed a declaration about how she only learned about the "wear-away" when she attended a going-away party in September 2000 for two colleagues and CIGNA's chief actuary told her that "you would be sick if you knew the wear-away you are under." Ex. 11. Ms. Amara, Ms. Broderick and other employees will also testify about the factors related to "likely prejudice" discussed in Section VI below.

_____

[6] Stratman, J. (1988). Contract Disclaimers in ERISA Summary Plans: A Deceptive Practice? *Industrial Relations Law Journal*, Vo. 10, No. 3, 350 - 380. Cited in *Alexander v. Primerica Holdings*, 967 F.2d 90, 93 (3d Cir. 1992), and *Chiles v. Ceridian*, 95 F.3d 1505, 1518-19 (10th Cir. 1996).

14

The Plaintiff Class will present testimony from witnesses associated with the adverse party confirming Professor Stratman's findings and the testimony of the individual employees. John Arko, who was CIGNA's Rule 30(b)(6) witness on disclosures and is designated by CIGNA as its Plan administrator, testified at his deposition that the SPD does not describe any of the reductions or other disadvantages that the Class' actuarial expert identified. Ex. 12.

The Class will also offer evidence showing that when information about some of the benefit losses leaked out to individuals who were considering returning to work with CIGNA, "problems with rehiring those who would lose substantial amounts" caused CIGNA to change the "wear-away" rule in 2001 to allow rehired persons to "keep their already earned old plan benefit." Ex. 13.

## V.    CIGNA's Limited Defense to the Disclosure Violations to Date

Beyond denials in its Answer to the Complaint and its early argument to Judge Squatrito about "detrimental reliance," CIGNA has not offered a defense to the disclosure violations. As indicated, John Arko, who was designated as CIGNA's Rule 30(b)(6) witness on disclosures and also serves as the Plan administrator, agreed during his deposition that the SPD does not disclose any of the reductions identified by the Plaintiffs' actuarial expert.

CIGNA produced no expert witnesses to support its compliance with the SPD requirements. At his deposition, CIGNA's actuarial expert, Lawrence Sher, testified that he asked Defendants' counsel whether he should address the disclosure issues set out in

15

the Poulin report and was told that defense counsel "didn't want me to address them." Ex.
14.

## VI.    The Class' Proposed In Limine Rulings

The Class proposes the following evidentiary rulings:

1.      Under *Burke*, "likely prejudice" is based on whether the participants were
"*likely* to have been harmed as a result of the deficient SPD." 336 F.3d at 112 (emph. in
orig.). Like materiality, "likely harm" is defined by the "likelihood" that the lack of
information will affect the participants' ability to make "well-informed employment and
retirement decisions." *Harte v. Bethlehem Steel*, supra, 214 F.3d at 451.

2.      "Likely harm" ultimately is a determination for the Court based on the SPD,
the Plan document and ERISA's requirements. Expert and lay testimony and documentary
evidence may assist the Court. Judge Squatrito's class certification decision states
"whether the SPD is misleading" "is a legal question common to each class member."
Slip Op. at 7 n.4. While there is a common legal question, the issue of "likely prejudice"
is a mixed question of law and fact.

3.      The Court may rely on expert and lay testimony and documentary evidence
for the factual elements of mixed questions. See *Carter-Wallace v. Otte*, 474 F.2d 529,
547 (2d Cir. 1972) (adequacy of patent application disclosure presents mixed question of
law and fact; "There can be no doubt that expert testimony will often aid in understanding
the underlying factual content"); *In re IPO Securities Litigation*, 174 F.Supp. 2d 61, 65
(S.D.N.Y. 2001) ("Experts may also give limited testimony on mixed questions of law

16

and fact, but the testimony must remain focused on helping the jury or judge understand particular facts in issue").

4.    Every ERISA disclosure claim will not require a written communications expert like Professor Stratman. But when the factual issues are complex and expert testimony may assist the Court, it should be admitted. See *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("Expert witnesses are often uniquely qualified in guiding the trier of fact through a complicated morass of obscure terms and concepts"); *U.S. v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("in complex cases...expert testimony may help a jury understand unfamiliar terms and concepts").

5.    The analysis of a qualified expert on the understandability of written communications is preferable to the Court relying on the lawyers for the adverse parties to act as "tour guides" through ERISA disclosures. See, e.g., *EEOC v. Beauty Enterprises, Inc.*, __ F.Supp. 2d __, 2005 U.S. Dist. LEXIS 4547, *13 (D.Conn. March 23, 2005) (admitting linguist's testimony regarding use of English language at job site and effect of "English-only" workplace rule; "testimony would be helpful to the trier of fact's understanding of the evidence...A district court is not compelled to exclude relevant expert testimony that may in some way overlap with matters within the jury's experience"); *U.S. v. Bilzerian*, 926 F.2d 1285, 1294-95 (2d Cir. 1991) (admitting expert testimony on disclosure requirements from securities law professor); *Ortiz v. Stanley-Bostich, Inc.*, 2000 WL 640645, *3 (S.D.N.Y. 2000) (expert testimony regarding inadequacy of product warning label admissible).

17

6. In decisions under the Fair Debt Collection Practices Act, the Second
Circuit has recognized that a lawyer's understanding of a communication is not
necessarily that of an "average" person. *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85
(2d Cir. 1998) (debt collection notice is "overshadowing or contradictory if it fails to
convey the validation information clearly and effectively and thereby makes the least
sophisticated consumer uncertain as to her rights"); *Russell v. Equifax A.R.S.*, 74 F.3d 30,
34 (2d Cir. 1996) (objective standard focuses on "how the least sophisticated
consumer–one not having the astuteness of a Philadelphia lawyer or even the
sophistication of the average, everyday, common consumer–understands the notice he or
she receives"). Similarly, the issue of the understandability of waiver agreements under
the ADEA has been recognized to be separate from a lawyer's eye view of such
agreements. See *Thomforde v. IBM*, __ F.3d __, 2005 WL 1017958, *4 n.1 (8th Cir. May
3, 2005) ("It seems axiomatic that if an agreement needs clarification" from a consulting
attorney, "it is not written in a manner calculated to be understood").

7. "[T]he proposed expert should not be required to satisfy an overly narrow
test of his own qualifications." "Liberality and flexibility in evaluating qualifications
should be the rule." *Lappe v. American Honda Motor Co.*, 857 F.Supp. 222, 227
(N.D.N.Y 1994), *aff'd*, 101 F.3d 682 (2d Cir. 1996); accord *McCullock v. Fuller Co.*, 61
F.3d 1038, 1044 (2d Cir. 1995) (disputes over credentials, methodology, or textual
authority "go to the weight, not admissibility" of expert's testimony); *Travelers Property
& Casualty Corp. v. GE Co.*, 150 F.Supp. 2d 360, 364 (D.Conn. 2001) ("review of the

18

case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the ule"); *Amorgianos v. AMTRAK.*, 303 F.3d 256, 267 (2d Cir. 2002) ("minor flaw" in expert's reasoning does not "render opinion per se inadmissible;" expert must lack "good grounds" for her conclusions).

8.     In some cases, a statistical survey of employees' perceptions may be useful, but a statistical survey is not necessary. *Schering Corp. v. Pfizer, Inc.*, 189 F.3d 218, 225 (2d Cir. 1999) (admitting surveys that polled physicians' memories and impressions of communications made by defendants' sales representatives to determine whether misrepresentations were in violation of the Lanham Act and a settlement agreement between the parties; "general trend has been toward the admission of surveys of various kinds," especially in "trademark and false advertising cases to show actual confusion ... or secondary meaning ... in the public mind"); *EEOC v. Beauty Enterprises*, supra, at *22 ("Because experience may give an expert specialized knowledge based on sufficient practical or work experience possessed in the field about which the expert is testifying, such testimony need not be based on testing or experiments").

9.     Nondisclosures or confusing disclosures about information that ERISA requires to be in an SPD will necessarily be "material" because ERISA requires "material" modifications and changes in benefits that participants might otherwise reasonable expect to be disclosed. 29 U.S.C. §§1022(a) and (b) and 29 C.F.R. 2520.102-3(l) and 2520.104b-3(a). When an SPD is inadequate because of material non-disclosures,

the Court may apply a presumption of "likely harm" parallel to the presumption in the securities investment cases.

10.     An inference may also be drawn from CIGNA's decision "NOT" to offer comparisons of benefits that participants were likely to be harmed. If proven, CIGNA's decision not to offer employees comparisons of benefits suggests that CIGNA considered comparative disclosures to be adverse to its business interests. The Court may infer that the non-disclosure of that information was conversely harmful to the economic interests of the employees.

11.     Under F.R.E. 201 and 902(6), the Court may also take judicial notice of newspaper articles on instances involving IBM, Deloitte & Touche, Chase-Manhattan Bank and Verizon, among others, in which complaints from employees have caused cash balance conversions to be partially or wholly rescinded. Ex. 15.

12.     It is permissible, and may assist the Court, to support the documentary evidence and expert testimony on "likely prejudice" with lay testimony from employees. Some cases suggest that testimony from actual employees should not be considered under an objective test like "likely prejudice": *Wilson v. Southwestern Bell Tel.*, 55 F.3d 399, 407 (8th Cir. 1995) (whether disclosure is understandable by the average plan participant "appears to be an objective standard rather than [one] requiring an inquiry into the subjective perception of the individual participants"). The better rule is that such evidence can play a supporting role in validating the Court's and the experts' analysis of likely harm.

13.     Accordingly, the Plaintiff Class may offer testimony from between five and
ten employees who are reasonably representative of older and younger employees and
current and former employees. The Court reserves the right to stop the testimony if it is
cumulative. Direct testimony should not take the form of survey, e.g., the Court will not
base a determination of "likely harm" on whether 1/4, 1/2, or 3/4 of the employees testify
to what the Court considers to be actual harm. The Second Circuit's likely prejudice
standard contemplates that if one written communication is at issue, there will be one
determination. The determination of "likely" prejudice also cannot take a form that
indirectly requires "detrimental reliance" because this is what the Second Circuit rejects.

14.     The Court will consider testimony from individual employees on the
following areas:

a.      The extent to which employees were aware of the magnitude of the benefit
reductions from CIGNA's cash balance conversion. See *Harte v. Bethlehem Steel*, supra,
214 F.3d at 451 (ERISA "ensure[s] that employees receive sufficient information ... to
make well-informed employment and retirement decisions").

b.      The ability of the employees to use the information provided in the SPD to
do an apples-to-apples comparisons to figure out how much they lost.

c.      The information about benefit reductions that CIGNA supplied to
employees through other means, e.g., in annual "total compensation" reports or when
employees asked CIGNA for benefit estimates.

d.      The importance of retirement benefits to younger and older workers in both accepting and continuing employment with CIGNA.

e.      The extent to which employees could and probably would have complained or "bargained further" if there had been full disclosure of the retirement benefit reductions. See *Hamilton v. Air Jamaica*, 945 F.2d 74, 78 (3d Cir. 1991) ("full disclosure" "permits employees to bargain further or seek other employment if they are dissatisfied with their benefits").

f.      The extent to which employees could and probably would have sought other employment if they were still "dissatisfied with their benefits." *Hamilton v. Air Jamaica*, supra.

g.      The extent to which disclosures of reductions could and probably would have affected employees' financial planning for upcoming retirements and the extent to which employees and their spouses could and probably would have taken other actions, such as increasing 401(k) or IRA contributions, reducing expenses, working longer or more, if there had been full disclosure of the retirement benefit reductions from the cash balance conversion.

h.      The extent to which rehires might not have returned to work for CIGNA at all if they had known they would effectively not be earning any additional retirement benefits.

i.      The extent to which employees may have chosen less valuable benefit options, e.g., a lump sum instead of deferred annuity, as a result of inadequate disclosures

22

about "minimum benefits" that were actually more valuable than lump sum payouts of

cash balance accounts.

## Conclusion

For the foregoing reasons, the Plaintiff Class requests that the Court rule that

"likely prejudice" can be established as described above.

Dated: May 6, 2005

Respectfully submitted,

By: /s/ Thomas G. Moukawsher
Thomas G. Moukawsher ct08940
Ian O. Smith ct24135
Moukawsher & Walsh, LLC
21 Oak Street
Hartford, CT 06106
(860) 278-7000
tmoukawsher@mwlawgroup.com

Stephen R. Bruce ct23534 (pro hac vice)
Suite 210
805 15th St., NW
Washington, DC 20005
(202) 371-8013
stephen.bruce@prodigy.net

## CERTIFICATION OF SERVICE

I certify that a copy of the Plaintiff Class' Motion in Limine on Direct Testimony

Relevant to "Likely Prejudice" Standard in *Burke v. Kodak* and the Memorandum in

Support thereof have been mailed on this date by FedEx next day delivery to counsel for

the Defendants at:

> Joseph J. Costello
> Jeremy P. Blumenfeld
> Morgan, Lewis & Bockius
> 1701 Market St.
> Philadelphia, PA 19103-2921
> (215) 963-5295
>
> Elizabeth A. Fowler
> Erin O'Brien Choquette
> Robinson & Cole, LLP
> 280 Trumbull Street
> Hartford, CT 06103-3597
> (860) 275-8200

Dated this 6th day of May, 2005.

> /s/ Thomas G. Moukawsher
> Thomas G. Moukawsher