UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANICE C. AMARA, individually and on behalf of others similarly situated, | : : : : | |
| Plaintiff, | : | 3:01 CV 2361 (MRK) |
| v. | : : | May 31, 2005 |
| CIGNA CORP. AND CIGNA PENSION PLAN, | : : | |
| Defendants. | : | |

MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO AMEND THE COMPLAINT TO
ADD NEW CLAIMS AND SUBSTITUTE NEW CLASS REPRESENTATIVE

Defendants CIGNA Corp. and CIGNA Pension Plan (collectively "Defendants") submit this Memorandum of Law in Opposition to Plaintiff's Motion for Leave to Amend The Complaint to assert new claims and substitute Gisela Broderick as a class representative.

I. INTRODUCTION

Plaintiff Janice Amara's claims in this case are brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 et seq. Specifically, Plaintiff alleges in her current operative complaint, the First Amended Complaint (the "Complaint"), that:

• the minimum benefit provisions of CIGNA's cash balance plan, Part B of the CIGNA Pension Plan ("Part B" or "the Plan"), create a "wearaway" which, Plaintiff argues, violates ERISA's nonforfeitability and antibackloading rules (Count I);

• the summary plan description ("SPD") for Part B is deficient and Plaintiff is therefore entitled to benefits based on the terms of the SPD (Count II);

- the Plan's benefit credit and interest credit formulas violate ERISA's prohibition against age discrimination, 29 U.S.C. § 1054(b)(1)(H) (Count III).

Now, after litigating this case for 3½ years, and just a few months before pretrial submissions are due, Plaintiff seeks to amend her Complaint again to assert new claims based on facts that have been known to her for at least two years, if not longer. These are not simply "alternative legal theories" as Plaintiff suggests. (Ptf's Motion for Leave To Amend at 4). They are new claims that Plaintiff did not raise in her original or First Amended Complaint and that are based on facts that were not at issue in either of those prior Complaints. In particular, Plaintiff's Proposed Amended Complaint challenges (1) the Plan's treatment of a "free 30" enhancement to the joint and survivor annuity benefit available to certain married plan participants (Proposed Count V),[1] (2) whether CIGNA made sufficient disclosures to participants about the relative value of optional forms of benefits (e.g., lump sum, annuity) to which they were entitled (also Proposed Count V), and (3) the sufficiency of a notice Defendants sent notice to participants about plan changes in late 1997 under ERISA Section 204(h), 29 U.S.C. §

---

[1] By way of background, a single life annuity is an annual benefit (typically paid in monthly installments) payable for the remaining life of a participant, e.g., $1,000 per month until the participant dies. A joint and survivor annuity is a single life annuity for the participant and a survivor annuity for his or her spouse (only if the participant predecease the spouse). A 50% joint and survivor annuity, for example, pays (1) 100% of the monthly benefit for the life of the participant and (2) 50% of the participant's benefit amount to the spouse for life, if the participant predeceases the spouse. To provide for a survivor annuity, there is typically an actuarial reduction in the amount of participant's monthly benefit. The "free 30" survivor annuity is an enhanced benefit whereby a participant receives an unreduced single life annuity and his or her surviving spouse receives a lifetime monthly benefit equal to 30% of the participant's monthly benefit. In other words, the participant's spouse receives a 30% survivor benefit at no additional cost to the participant, i.e., for free.

1054(h) (Propose Count IV). Plaintiff offers no excuse, let alone a justification, for her delay in asserting these new claims. Moreover, Plaintiff apparently seeks to assert these new claims on behalf of the class, without even attempting to satisfy her burden of proving the elements of Fed. R. Civ. P. 23 *with respect to these new claims*. See Fed. R. Civ. P. Rule 23(c)(1)(B) (requiring that any order certifying a class "define the class *and the class claims*, issues or defenses. . .") (emphasis added).[2] Defendants would be substantially prejudiced if Plaintiff is permitted to amend at this late date. Accordingly, Plaintiff's Motion for Leave To Amend The Complaint to assert new claims should be denied.

In addition, Plaintiff apparently seeks through her Motion to Amend to add Gisela Broderick not just as a plaintiff, but *as a new proposed class representative*. Yet Plaintiff has not even tried to demonstrate that Ms. Broderick is an adequate class representative, see Fed. R. Civ. P. 23(a)(4), let alone that her claims – including the proposed new claims for which a class has never been certified – are typical of those of the class. See Fed. R. Civ. P. 23(a)(3). For this additional reason, Plaintiff's Motion for Leave To Amend should be denied.

## II.    ARGUMENT

As this Court is well-aware, leave to amend a complaint should be denied "when there is undue delay, bad faith or dilatory motive on the part of the moving party, and undue prejudice to the opposing party. . . ." Evans v. Syracuse City School Dist., 704 F.2d 44, 46 (2d Cir. 1983),

---

[2]     Rule 23 was amended effective December 1, 2003. The Supreme Court has ordered that the amended Rule should govern all pending cases "insofar as just and practicable." Order of the Supreme Court, dated Mar. 27, 2003.

quoting Foman v. Davis, 371 U.S. 178, 182 (1962) (internal quotations omitted). The Second Circuit explained in Evans that:

> The burden of the parties, in requesting or resisting the amendment of pleadings, was noted in Advocat v. Nexus Industries, Inc., 497 F.Supp. 328, 331 (D. Del. 1980), in which the Court observed that:
>
>> As a practical matter, however, any delay . . . for a significant period of time will almost invariably result in some "prejudice" to the nonmoving party. . . . [T]he proper standard is one that balances the length of the delay against the resulting prejudice. . . . ***[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.***

Evans, 704 F.2d at 46-47 (ellipsis and brackets in original) (emphasis added). See also Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990) ("The court plainly has discretion [] to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant.").

In Evans, for example, the defendant sought to assert an additional defense two years and nine months after the defense became available. See Evans, 704 F.2d at 47. The Second Circuit held that "[u]nder these circumstances, in order to justify the amendment, defendant had the burden of showing a *compelling reason* for the delay." Id. (emphasis added). Because the defendant in Evans articulated no such "compelling reason," the Second Circuit found that leave to amend should not have been granted. Id.

Here, Plaintiff unreasonably delayed asserting these new claims for 2-3½ years. She offers no justification for her delay and, to permit the proposed amendments at this late date would cause substantial prejudice. Accordingly, Plaintiff's request for leave to amend should be denied.

4

### A. Plaintiff's Delay In Seeking To Amend Her Complaint Is Unreasonable And Plaintiff Offers No Excuse Or Justification For The Delay.

The standard for determining whether a party has unduly delayed seeking leave to amend was set forth by this Court in <u>Trilegiant Corp. v. BP Products North America</u>, No. 02-2237, 2004 U.S. Dist. LEXIS 6236 (D. Conn. Apr. 6, 2004) (Kravitz, J.):

> But the date on which Defendant's counsel realized that his client had claims against Plaintiff is not determinative. *Rather, the question is whether through the exercise of reasonable diligence, Defendant could have discovered and asserted its claims earlier in this litigation.*

<u>Id.</u> at *5 (emphasis added).

Here, through the exercise of reasonable diligence, Plaintiff could have asserted these new claims from the outset of this litigation, over 3 ½ years ago: Proposed Count IV relates to notice obligations the Plan Administrator allegedly had in 1997. Proposed Count V relates (at least in part) to terms of the Plan that have not changed since the inception of this litigation. In addition, Plaintiff had *actual knowledge* of the facts supporting these claims for at least two years. Plaintiff's expert report, upon which Plaintiff relies in her Motion to support some of her new claims, was finalized in April, 2003. (Ptf's Motion for Leave To Amend at 7; Ptf's Memorandum of Law in Support of Motion in Limine On Direct Testimony Relevant To Likely Prejudice Standard in <u>Burke v. Kodak</u> at Ex. 1). Similarly, the deposition cited by Plaintiff in support of her claims was taken in July 2003. (Ptf's Motion for Leave To Amend at Ex. 3). Yet Plaintiff did not even seek leave to amend at that time. As in <u>Evans</u>, Plaintiff's delay in asserting these new claims was unreasonable and extreme.

Moreover, Plaintiff offers no justification, let alone a "compelling reason," for waiting until May 2005 to seek to amend her Complaint. In fact, Plaintiff's only excuse is that she was

waiting until the close of discovery. (Ptf's Motion for Leave To Amend at 2). This, however, is not a justification that would excuse Plaintiff's delay. To the contrary, this proves that Plaintiff *intentionally* delayed seeking leave to amend for over two years even after she knew all of the facts relevant to her proposed new claims.[3] As in Evans, Cresswell, and Trilegiant, Plaintiff's delay here should not be tolerated.[4] See also DC Comics v. Kryptonite Corp., No. 00-5562, 2002 WL 1303110, *5 (S.D.N.Y. June 13, 2002) ("The liberality with which a court grants leave to amend does not impart to litigants the privilege of re-shaping their legal theories endlessly.") (internal quotations and citations omitted).

### B. Defendants Will Be Prejudiced If Plaintiff Is Granted Leave To Amend Her Complaint At This Late Date.

In the face of Plaintiff's inordinate and intentional delay, leave to amend should be denied even if the proposed amendment would cause only minor prejudice to Defendants. See Evans, 704 F.2d at 46-47 ("[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice."). Here, the prejudice would be substantial if Plaintiff were allowed to amend. The Proposed Amended Complaint

---

[3] A party may be permitted to amend a complaint at the close of discovery where the party could have not reasonably learned about the claim earlier in the litigation; in such a circumstance, there is no "undue delay," because the claim is being asserted with reasonable diligence.

[4] Indeed, the circumstances of this case strongly suggest that Plaintiff here was intentionally dilatory. Plaintiffs indicated in a submission to this Court on April 28, *2004* (over one year ago) that she intended to amend her Complaint, but failed to provide any details about the proposed amendments. (Plaintiffs' Response to Defendants' Motion to Supplement Their Answer, filed Apr. 28, 2004). Although Plaintiff claimed at the time that she needed to complete discovery before filing her proposed amended complaint, she did not take any discovery during that entire time. Instead, to support her Motion, Plaintiff relies on her own expert report from 2003 and a deposition she took in 2003.

asserts claims challenging different aspects of the Plan and the sufficiency of communications to participants that were not at issue previously.[5]  Substantial fact and expert discovery would be required to address these new claims.

> **1.    Plaintiff's New Claim Under ERISA Section 204(h) Would Require Substantial Additional Fact and Expert Discovery.**

ERISA Section 204(h) generally provides that when a plan is amended, the plan administrator must notify participants who are likely to have "significant reduction" in the rate of future benefit accrual because of the amendment.  See 29 U.S.C. § 1054(h); 26 C.F.R. § 1.411(d)-6T.  The regulations in effect during the relevant time state, however, that a participant who, at the time of the amendment, is *not* expected to have a "significant reduction" is not required to be provided the notice:

> Q-9:  If section 204(h) notice is required with respect to an amendment, must such notice be provided to participants or alternate payees whose rate of future benefit accrual is not reduced by the amendment?
>
> A-9:  (a) In general.  *A plan administrator need not provide section 204(h) notice to any participant whose rate of future benefit accrual is reasonably expected not to be reduced by the amendment*, nor to any alternate payee under an applicable qualified domestic relations order whose rate of future benefit accrual is reasonably expected not to be reduced by the amendment.  A plan administrator need not provide section 204(h) notice to an employee organization unless the employee organization represents a participant to whom section 204(h) notice is required to be provided.
>
> (b) Facts and circumstances test.  Whether a participant or alternate payee is described in paragraph (a) of this Q&A-9 is determined *based on all relevant facts and circumstances at the time the amendment is adopted*.

26 C.F.R. § 1.411(d)-6T (emphasis added).

---

[5]   Although Plaintiff's Complaint challenged the sufficiency of the SPD, she did assert any claims based on deficiencies in any other communications regarding the Plan.

The regulations also make clear that whether a particular participant is expected to have a significant reduction in future benefits is "determined based on all relevant facts and circumstances at the time the amendment is adopted." Id. Thus, to investigate and defend against Plaintiff's proposed amended Count IV, Defendants must analyze all of the "facts and circumstances" applicable to each participant to determine whether that participant is someone who, at the time of the amendment, was likely to have a "significant" reduction. This is a fact intensive inquiry that can and will differ from participant to participant.[6]

For example, the cash balance plan amendment Plaintiff challenges here affected (1) new hires; (2) shorter service employees; and (3) employees rehired after the amendment was adopted. Longer service employees and employees who had terminated before the amendment would not be affected by the amendment unless they were subsequently rehired *after* the amendment. Neither Plaintiff nor Ms. Broderick was employed on January 1, 1998, the date the amendment became effective. In addition, both Plaintiff and Ms. Broderick had sufficient years of service such that they would not have been moved into the cash balance plan even had they remained employed. Accordingly, at the time the plan was amended, the amendment was not likely to impact either Plaintiff's or Ms. Broderick's benefits, let alone cause a "significant reduction" in those benefits.[7] The regulations specifically address these circumstances and provide that no Section 204(h) notice is required:[8]

---

[6]  That is particularly true here, where Plaintiff's challenge relates to the adoption of a new pension design, not just a small change in a benefit formula that uniformly affected all participants.

[7]  Because Plaintiff was rehired before the plan amendment was actually signed, and in light of the Third Circuit's decision in Depenbrock v. CIGNA, 389 F.3d 78 (3d Cir.

8

(c) Examples. The following examples illustrate the rules in this Q&A-9:

Example 1. Plan A is amended to reduce significantly the rate of future benefit accrual of all current employees who are participants in the plan. *It is reasonable to expect based on the facts and circumstances that the amendment will not reduce the rate of future benefit accrual of former employees who are currently receiving benefits or that of former employees who are entitled to vested benefits. Accordingly, the plan administrator is not required to provide section 204(h) notice to such former employees.*

26 C.F.R. § 1.411(d)-6T (emphasis added). Nor does the fact that Plaintiff and Ms. Broderick might be affected by the amendment in the future if they happened to be rehired by CIGNA require that a Section 204(h) notice be provided:

Example 3. Plan B covers hourly employees and salaried employees. Plan B provides the same rate of benefit accrual for both groups. The employer amends Plan B to reduce significantly the rate of future benefit accrual of the salaried employees only. *At that time, it is reasonable to expect that only a small percentage of hourly employees will become salaried in the future. Accordingly, the plan administrator is not required to provide section 204(h) notice to the participants who are currently hourly employees.*

26 C.F.R. § 1.411(d)-6T (emphasis added).[9]

---

    2004), Plaintiff's benefits were <u>not</u> affected by the plan amendment. Ms. Broderick, however, alleges that she was rehired on January 26, 2000, after the plan amendment was signed on December 21, 1998. Accordingly, she was placed into the cash balance plan upon her rehire.

[8]    Defendants are not opposing Plaintiff's Motion on futility grounds. Instead, these regulations demonstrate the importance of the discovery that will be required if leave to amend is granted. As explained <u>infra</u>, however, should leave to amend be granted, Defendants may seek dismissal of some or all of the claims in the Proposed Amended Complaint under Fed. R. Civ. P. 12(b)(6).

[9]    Importantly, if a plan administrator is not required to provide a Section 204(h) notice to a particular participant at the time of the amendment, there is no obligation to provide that participant a Section 204(h) notice at any later date. Section 204(h) notice obligations are triggered based on the facts and circumstances *"at the time the amendment is adopted."* 26 C.F.R. § 1.411(d)-6T (Q-9).

9

If Plaintiff were permitted to amend to assert a Section 204(h) claim, discovery would be required to confirm the facts and circumstances applicable to Plaintiff and Ms. Broderick and otherwise determine whether as of January 1, 1998, Plaintiff or Ms. Broderick were likely to suffer a "substantial reduction" in future benefits. Discovery also would be required into what communications Plaintiff or Ms. Broderick received from Defendants and what information they had about the amendments.[10] Were this claim certified for treatment on a class-wide basis, which, Defendants submit, is impossible here, a similar investigation would be required into the facts and circumstances applicable to each member of the class. Furthermore, Defendants would seek to retain one or more experts and obtain expert reports to respond to this new claim, including an analysis of the impact of the amendment on particular participant's benefits.[11]

   2.   **Plaintiff's New Claim Regarding The Plan's Treatment Of The "Free 30" Benefit, And The Sufficiency Of Disclosures Made To Individual Participants, Will Require Additional Fact And Expert Discovery.**

Plaintiff's proposed new claim challenging the Plan's treatment of the "free 30" benefit, and the sufficiency of disclosures made about the relative value of benefit options, also will require additional fact and expert discovery. Indeed, to date, the Plan's treatment of the "free 30" benefit has not been at issue in this litigation at all. Accordingly, fact discovery would be

---

[10]   Defendants certainly were not focused on these issues when they deposed Plaintiff and would seek to re-depose her with respect to these new allegations.

[11]   As explained *infra*, Defendants asked their expert to address only those issues that were raised in Plaintiff's operative Complaint. Defendants' expert was not asked to respond to every opinion expressed by Plaintiff's expert that did not relate to the claims that were actually alleged by in the Complaint.

required as to (1) whether Ms. Broderick[12] was entitled to a "free 30" enhancement under the prior plan, including consideration of her marital status at the time; (2) whether Ms. Broderick is entitled to a "free 30" enhancement under any provisions of the cash balance plan, including consideration of her marital status now; (3) whether Ms. Broderick filed a claim for benefits under the Plan seeking a "free 30" enhancement and whether she exhausted her administrative remedies under the Plan before pursuing this matter in Court; and (4) whether Ms. Broderick should be excused from exhaustion on futility or some other grounds.[13] In addition, Defendants

---

[12] In light of the Depenbrock decision, Plaintiff is now in CIGNA's traditional defined benefit plan. Accordingly, the cash balance plan had no impact on her right to the "free 30" benefit. It is unclear whether the Proposed Amended Complaint even purports to assert this claim on Plaintiff's behalf.

[13] Typically, a participant is required to exhaust administrative remedies before asserting a claim for benefits. See Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 511 (2d Cir. 2002) ("We require exhaustion of benefit claims brought under ERISA"). Moreover, the Second Circuit has held that this requirement is jurisdictional, as it goes to the ripeness of the claims asserted. See Peterson v. Continental Cas. Co., 282 F.3d 112, 118 (2d Cir. 2002) ("ERISA empowers federal courts to review the decisions of plan administrators, but provides no authority for a court to render a de novo determination of an employee's eligibility for benefits. Therefore, absent a determination by the plan administrator, federal courts are without jurisdiction to adjudicate whether an employee is eligible for benefits under an ERISA plan."). Here, Plaintiff alleges a statutory claim that depends on how the plan is interpreted and applied. Accordingly, exhaustion should be required to determine what the terms of the plan mean and how they are applied. See, e.g., Suozzo v. Bergreen, No. 00-9649, 2003 WL 22387083, *7-8 (S.D.N.Y. Oct. 20, 2003) (statutory claim requires exhaustion where "[w]hile these questions ultimately go to the Plan's regulatory compliance, they do not involve a 'purely legal claim' nor are they strictly a matter of statutory interpretation, and [the] issues could have been addressed by the Plan Administrative Committee if raised during the appeal process").

would seek submit expert reports as to the application of the "free 30" enhancement to Ms. Broderick and other members of the class (assuming this is asserted as a class-wide claim).

The allegation that Defendants made insufficient disclosures to participants about the relative value of their benefit options also will require detailed fact discovery.  For example, for each participant, including Ms. Broderick, Defendants will seek discovery as to (1) what was disclosed to the participant, both in writing and orally; (2) what optional forms of benefits were available to that participant (which may differ depending on the age and years of service of the participant); (3) what harm, if any was suffered by the participant as a result of the allegedly inadequate disclosure.  See, e.g., Adams v. Tetley USA, Inc., 363 F.Supp.2d 94, 108 (D. Conn. 2005) ("To establish a claim for breach of fiduciary duty based on alleged misrepresentations concerning coverage under an employee benefit plan, a plaintiff must show: (1) that the defendant was acting in a fiduciary capacity when it made the challenged representations; (2) that these constituted material misrepresentations; and (3) that the plaintiff relied on those misrepresentations to [his or her] detriment.") (internal citation and quotations omitted).

Once again, moreover, Defendants will seek to obtain an expert opinion as to the allegations raised in the proposed claim, e.g., about the relative value of benefit options for individual participants, including Ms. Broderick.

In short, the Proposed Amended Complaint opens up a pandora's box of additional fact and expert discovery that Defendants would have been able to conduct years ago had Plaintiff timely amended.  Defendants would be substantially prejudiced if Plaintiff were permitted to amend now.  See, e.g., Trilegiant Corp, 2004 U.S. Dist. LEXIS 6236, * 6-7 (additional delay and discovery needed to address proposed amendment constitute sufficient prejudice to deny leave to

amend); Ashjari v. NYNEX Corp., 98-9411, 1999 U.S. App. LEXIS 13968, *2 (2d Cir. June 22, 1999) ("[W]e agree with the district court that defendant would be prejudiced by the addition of the new claim because discovery for a mental anguish claim would be broader in scope than was permitted for the intentional infliction of emotional distress claim.").

       **3.**     **Plaintiff's Suggestion That There Is No Prejudice Because Defendants Knew About These Claims For A "Couple Of Years" Is Disingenuous.**

In an attempt to minimize the impact of her delay, Plaintiff claims in her brief that Defendants have known about these claims for a "couple of years." (Ptf's Motion for Leave To Amend at 7). This is false. Although Plaintiff has repeatedly claimed for a "couple of years" that she intends to amend her Complaint, she never notified Defendants about what claims she sought to allege, or the bases for them, *until now*. During the February 8, 2005 conference call between the parties and the Court referenced in Plaintiff's Brief (p. 7), Defendants made clear that they did not know the substance of Plaintiff's Proposed Amended Complaint. Even during the Court's April 20, 2005 hearing on Defendants' privilege assertions, Defendants advised the Court that they did not know if they were going to oppose Plaintiff's Motion for Leave To Amend because they did not know what the proposed amendments were or the bases for them.

Moreover, the mere fact that Plaintiff submitted an expert report that touched on issues related to Plaintiff's proposed amended Section 204(h) notice claim (but not the other proposed amended claims) does not mean that Defendants should have conducted discovery on this issue or prepared a defense. Defendants are entitled to rely on the allegations in the Complaint to prepare their defense. Indeed, "[t]he purpose of a complaint is to give the defendant fair notice of the claim against him." Griffin v. Griffin, 327 U.S. 220, 250 (1946). See also Christopher v. Harbury, 536 U.S. 403, 419 n.17 (2002) ("Whatever latitude is allowed by federal notice

pleading, no one says [plaintiff] should be allowed to construe 'adequate legal redress' to mean causes of action that were not even mentioned in her complaint."). Plaintiff obviously knew of this claim when her expert prepared his report, and she should therefore have sought leave to amend *at that time*. Defendants should not be expected to cull through every expert report and every question and answer in a deposition and prepare a defense to every statement or opinion therein, where the statements or opinions are irrelevant to the claims actually alleged in the Complaint.[14]

### 4.   If Plaintiff Were Permitted To Amend Now, The Schedule Of This Matter Would Grind To A Halt.

In addition to the fact and expert discovery that would be required if Plaintiff were permitted to amend now, the Proposed Amended Complaint also would cause these proceedings to grind to a halt. Defendants have the right to answer the Proposed Amended Complaint and/or seek dismissal of some of those claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Defendants also have the right to assert affirmative defenses to the claims in the Proposed Amended Complaint and to take discovery regarding those defenses.[15] All of these issues would further delay the trial of this matter and weigh against allowing Plaintiff to amend.

---

[14]   To the contrary, statements or opinions in an expert report that do not bear on the claims actually asserted in the case are irrelevant and inadmissible. It would be nonsensical to force Defendants to respond to such statements or opinions.

[15]   For example, Defendants intend to assert an affirmative defense based on a release of claims executed by Ms. Broderick. No doubt, discovery from Ms. Broderick may reveal additional affirmative defenses for which Defendants will need additional discovery. Defendants have requested to take Ms. Broderick's deposition and are waiting for Plaintiff's counsel to identify dates when she is available to be deposed.

C.  **Plaintiff Cannot Assert Her Proposed Claims As Class Claims And Substitute Ms. Broderick As A Class Representative Without Satisfying The Requirements Of Fed. R. Civ. Rule 23.**

Not only should Plaintiff not be allowed to amend the Complaint because of the delay she caused and the resulting prejudice to Defendants, but Plaintiff cannot use Rule 15 standards to circumvent the requirements of Rule 23. Due process requires that this Court engage in a "rigorous analysis" before permitting the proposed new claims to proceed as class claims (binding on absent members of the class) or permitting Ms. Broderick to represent the class. See Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982) (class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied") (emphasis added).[16]

Accordingly, to bring these proposed new claims as class claims – and substitute Ms. Broderick as a class representative – Plaintiff must prove that the requirements of Rule 23 are satisfied. Yet Plaintiff has not even tried to demonstrate that Ms. Broderick's claims are typical of those of the class, or that Ms. Broderick is an appropriate class representative. See, e.g., Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 58-60 (2d Cir. 2000) (separately analyzing whether each proposed class representative satisfies the requirements of Rule 23); Connor v. Automated Accounts, Inc., 99-0270, 2002 WL 31528477, *1 (E.D. Wash. Nov. 1, 2002) (noting that whether new plaintiff may be substituted as a class representative depends on

---

[16]  The Supreme Court explained in Falcon that because the class action "exception" binds non-participants to the results of litigation purportedly brought in their interests, courts must remain aware of the concern for "potential unfairness to the class members brought by the judgment if the framing of the class is overbroad . . . and the error of the tacit assumption underlying the across-the-board rule that all will be well [for class members]

15

whether the new plaintiff satisfies the requirements of Rule 23). Nor has Plaintiff even tried to meet her burden of proving that the two new claims are appropriate for class treatment. See Fed. R. Civ. P. Rule 23(c)(1)(B) (requiring that any order certifying a class "define the class *and the class claims*, issues or defenses. . .") (emphasis added).[17]

Because Plaintiff has made no attempt to demonstrate how her proposed Amended Complaint is appropriate for class treatment or why Ms. Broderick is an appropriate class representative, Defendants will not address each element of Rule 23 at length herein. Nonetheless, it bears note that whether a particular participant should have received a Section 204(h) notice is an *individualized inquiry* that depends on the participant's own facts and circumstances. Indeed, it appears that Ms. Broderick is not an appropriate representative, and that her claims are not typical, because at the time of the Plan amendment, it was unlikely that the Plan amendment would have any impact on her benefits. Accordingly, no Section 204(h) notice was required as to her. Likewise, whether a participant received adequate disclosure of the optional forms of benefits available *to that participant* depends on what benefits forms were available to that participant (which varies depending on the participant's age and service), what disclosures were made to that participant, and whether the participant was harmed by any alleged

---

for surely the plaintiff will win and manna will fall on all members of the class." Id. at 161 (internal citation and quotation omitted).

[17] Rule 23 was amended effective December 1, 2003. The Supreme Court has ordered that the amended Rule should govern all pending cases "insofar as just and practicable." Order of the Supreme Court, dated Mar. 27, 2003. See also In re Terazosin Hydrochloride Antitrust Litig., 220 F.R.D. 672, 701 (S.D. Fla. 2004) (applying amended Rule 23 to pending putative class action). There is no reason that the amended Rule 23 should not apply to the new claims, and new class representative, advanced by Plaintiff

...

inadequate disclosures.  See, e.g., In re Unisys Corp. Retiree Medical Benefits Litigation, MDL No. 969, 2003 WL 252106, *5-7 (E.D. Pa. Feb. 4, 2003) (decertifying ERISA class action based on allegations of inadequate disclosure).[18]

In short, the new claims are highly individualized and Ms. Broderick does not appear to be an appropriate class representative.  At a minimum, additional discovery would be required before these claims could proceed on a class-wide basis, thus further prejudicing Defendants and delaying the resolution of this matter.  For this additional reason, Plaintiff's Motion to Amend to assert the proposed new claims as class claims, and to substitute Ms. Broderick as a class representative, should be denied.

---

    here.  In any event, moreover, Plaintiff has not even tried to satisfy the requirements of the prior Rule 23.

[18]    In re Managed Care Litig., 209 F.R.D. 678, 691 (S.D. Fla. 2002)("Plaintiffs are asking this court to presume that the only relevant information to each Plaintiff's health care decision was the written, uniform documents.  However, the non-uniform oral representations may have had an impact on each Plaintiff's decision."); Shivangi v. Dean Witter Reynolds, Inc., 825 F.2d 885, 890 (5th Cir. 1987) (affirming denial of class certification where there was evidence at least some putative class members were told relevant information and plaintiff "did not establish that [defendant] uniformly failed to disclose. . ."); Devine v. Combustion Eng'g, Inc., 760 F. Supp. 989, 995 (D. Conn. 1991) (Class certification inappropriate in ERISA action where "plaintiffs have failed to show that the same promise was made to every member of the purported class.  Under the circumstances, certification of the putative class is inappropriate for failure to satisfy the 'commonality' requirement of Rule 23(a)(2).")

### III.   CONCLUSION

For each and all of the foregoing reasons, Defendants respectfully submit that Plaintiff's Motion for Leave To Amend Her Complaint To Assert New Claims And Add A New Proposed Class Representative should be denied.

Dated:  May 31, 2005                             Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**


By:_____
Christopher A. Parlo (CT-04700)
101 Park Avenue
New York, New York  10178
(212) 309-6062
(212) 309-6273 (fax)

Joseph J. Costello
Jeremy P. Blumenfeld
1701 Market Street
Philadelphia, Pennsylvania  19103-2921
(215) 963-5295/5258

**ROBINSON & COLE**

James A. Wade (CT # 00086)
Elizabeth A. Fowler (CT #23584)
280 Trumbull Street
Hartford, Connecticut  06103
(860) 275-8270
(860) 275-8299

Attorneys for Defendants
CIGNA Corporation and CIGNA Pension Plan

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 31st day of May, 2005, via telecopy and first class mail upon the following:

>Thomas G. Moukawsher
>Moukawsher & Walsh, LLC
>328 Mitchell Street
>Groton, CT  06340

>and upon:

>Stephen R. Bruce
>805 15th Street, NW
>Suite 210
>Washington, DC 20005

_____
Elizabeth A. Fowler