UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JANICE C. AMARA, individually and on behalf of others similarly situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil No. 3:01-CV-2361 (MRK) |
| | : | |
| CIGNA Corp. and CIGNA Pension Plan, | : | June 14, 2005 |
| | : | |
| Defendants. | : | |

## PLAINTIFF CLASS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT

Stephen R. Bruce Ct 23534
Suite 210
805 15th St., NW
Washington, DC 20005
(202) 371-8013

Thomas G. Moukawsher Ct 08940
Moukawsher & Walsh, LLC
328 Mitchell St.
Groton, CT 06430
(860) 445-1809

Attorneys for Plaintiffs

## Table of Contents

Introduction ................................................................. 1

I.      CIGNA Has Had Fair Notice of the Proposed Claims for Years .................... 3

II.     The Alternative Claims in the Proposed Complaint Were Obviously
        Objects of Discovery and Are Based on the Core of Facts Already Pled ............. 5

III.    Defense Counsel's Protests That They Should Not Be Expected to Anticipate
        Anything Are Contrary to Law and Not Grounds for Denying Leave to Amend ....... 7

IV.     CIGNA Does Not Identify Any "Facts" That It Does Not Already Possess ........... 8

V.      CIGNA Does Not Explain Why It Suddenly Will Need So Many Experts When It
        Designated Only One Before ................................................ 10

VI.     As Defendants Concede, the Class' Section 204(h) Claim Is Not "Futile" .......... 12

VII.    Like Ms. Amara, Ms. Broderick Is an Adequate Representative of the Class ........ 14

Conclusion ................................................................. 16

i

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Adams v. Gould*, 739 F.2d 858 (3d Cir. 1984), *cert. denied*, 469 U.S. 1122 (1985)  ........ 1

*Amara v. CIGNA Corp.*, 2002 WL 31993224 (D.Conn. 2002) ........................................ 15

*Baffa v. Donaldson*, 222 F.3d 52 (2d Cir. 2000) .............................................................. 15

*Block v. First Blood*, 988 F.2d 344 (2d Cir. 1993) ........................................................... 2

*Coventry v. United States Steel*, 856 F.2d 514 (3d Cir. 1988) ........................................... 9

*Dole v. Arco Chemical Co.*, 921 F.2d 484 (3d Cir. 1990) ................................................. 6

*Donahue v. Unisys Corp.*, 1991 WL 537530 (D.Conn. 1991) .......................................... 12

*Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir. 1982) ........................................................ 13

*Evans v. Syracuse School District*, 704 F.2d 44 (2d Cir. 1983) ........................................ 2

*Flynn v. Goldman, Sachs & Co.*, 1991 WL 238186 (S.D.N.Y. 1991) ................................ 7

*Heyl & Patterson International v. F.D. Rich Housing*, 663 F.2d 419 (3d Cir. 1981)  .... 10

*MacKay v. Rayonier, Inc.*, 25 F. Supp. 2d 47 (D.Conn. 1998) ........................................ 15

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ...................................................... 15

*Martsolf v. JBC Legal Group, P.C.*, 2005 WL 331544 (M.D.Pa. Feb. 7, 2005) ............. 16

*McCarthy v. Dun & Bradstreet*, 2005 WL 1353608 (D.Conn. June 6, 2005) ................... 2

*Monahan v. New York City Department of Corrections*, 214 F.3d 275 (2d Cir. 2000) .... 2

*Oppenheimer Fund v. Sanders*, 437 U.S. 340 (1978) ....................................................... 7

*PCB Piezotronics, Inc. v. Kistler Instrument Corp.*, 1999 WL 1067569
(W.D.N.Y. 1999) ...................................................................................................... 12

*Retepromaca Representataciones Tecnicas Proyectos y Sistemas v.*
*Ensign-Bickford Co.*, 2004 WL 722231 (D. Conn. 2004) ........................................... 7

*S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28 (2d Cir. 1979) ............ 9, 12

*State Teachers Retirement Board v. Fluor*, 654 F.2d 843 (2d Cir. 1981) ........................ 2

*United States v. Continental Ill. National Bank & Trust*, 889 F.2d 1248
(2d Cir. 1989) ............................................................................................................. 3, 8

*United States v. Hudson*, 152 F.R.D. 6 (D.Conn. 1993) .................................................. 9

*Wells v. Harris*, 185 F.R.D. 129 (D. Conn. 1999) .................................................... 1, 6, 7

*W. Va. University Hospitals. v. Casey*, 499 U.S. 83 (1991) .............................................. 14

*Zagurski v. American Tobacco*, 44 F.R.D. 440 (D. Conn. 1967) ...................................... 7

## FEDERAL STATUTES & REGULATIONS

29 U.S.C. §1022(a) ............................................................................................................. 6

26 C.F.R. 1.411(d)-6 .......................................................................................... 6, 12, 13

29 C.F.R. 2520.102-2 ......................................................................................................... 6

65 F.R. 70226 ...................................................................................................................... 6

## MISCELLANEOUS

Wright & Miller, *Federal Practice & Procedure* .............................................................. 1

**Introduction**

Even though this Court informed CIGNA that it should not oppose leave to amend if the

Plaintiff class is advancing alternate legal theories or "tinkering" with the factual allegations

based on discovery, CIGNA appears to challenge every proposed change to the pleadings.[1]  To

support its opposition, CIGNA relies heavily on hyperbole, e.g., Plaintiff "inordinate[ly]" delayed

the motion for leave, Defs. Opp. at 6; "Plaintiff offers no excuse, let alone a justification" Opp. at

3; "She offers no justification for her delay" Opp. at 4; "Plaintiff's delay in asserting these new

claims was unreasonable and extreme" Opp. at 5; "the circumstances of this case strongly

suggest that Plaintiff here was intentionally dilatory" Opp. at 6 n.4.

This kind of rhetoric won't wash. Changes in a complaint to present alternative legal

theories or add allegations in line with those already in the complaint are not unusual at the

summary judgment stage or before the pretrial conference. See, e.g., *Wells v. Harris*, 185 F.R.D.

129, 132 (D. Conn. 1999) ("Amplification of previously alleged claims is one of the clearest

cases for leave to amend"); *Adams v. Gould*, 739 F.2d 858, 868-69 (3d Cir. 1984), *cert. denied*,

469 U.S. 1122 (1985); Wright & Miller, *Federal Practice & Procedure*, § 1488 ("need to amend

may not appear until after discovery has been completed").

Here, Plaintiff's counsel offered the same reason for the time to amend in April 2004 as

in February 2005. We were waiting until rulings on CIGNA's assertions of "privilege" and the

close of discovery so leave to amend would not have to be sought two or more times. If we had

---

[1] It is unclear if CIGNA opposes everything in the proposed pleading. CIGNA does not mention the allegations that it violated ERISA Section 204(g) by not notifying participants of their rights to "minimum benefits" earned before 1998 and by failing to offer lump sums based on those benefits before age 55. Proposed ¶56.

1

amended in April 2004 or before, the amendments would not have been as comprehensive as those proposed and it would have had to be done a second time. In the February 8, 2005 conference call, Defendants' lead counsel, Joseph Costello, represented to the Court that CIGNA had known about the new claims "for a couple of years." Your Honor stated that Plaintiff Class should not wait until the close of discovery but should go ahead and seek leave to amend–which is what we are doing.

Although Plaintiffs have offered substantial authority in support of their motion, Defendants fail to distinguish any of those cases. For example, Defendants do not distinguish or even cite the Second Circuit's 1981 decision in *State Teachers Ret. Bd. v. Fluor*, 654 F.2d 843, 856, in which leave to amend was granted because "the amended claim was obviously one of the objects of discovery and related closely to the original claim." Defendants' rote counting of years since the Complaint was filed also ignores the case law. In *Block v. First Blood*, 988 F.2d 344, 350-51 (1993), the Second Circuit permitted an affirmative defense to be asserted four years after the Complaint was filed because the plaintiffs had knowledge of the facts giving rise to the new defense. Defendants cite *Evans v. Syracuse School Dist.,* 704 F.2d 44 (2d Cir. 1983), as if it stands for a different rule. See Defs. Opp. at 4. However, like the *Nevels* decision on which it builds, *Evans* stands for the proposition that amendments should be tendered no later than the date of pretrial.  704 F.2d at 47.[2]

Defendants also fail to apply the factors from *Monahan v. New York City Dep't of*

---

[2] In *McCarthy v. Dun & Bradstreet*, 2005 WL 1353608 * 5-6 (D.Conn. June 6, 2005), Judge Underhill denied leave to amend in an ERISA ruling issued after Defendants served their opposition. *McCarthy* does not announce new legal principles but focuses on the fact that "plaintiffs did not seek the proposed amendment until after the close of merits discovery and filing of a summary judgment motion."

2

*Corrections*, 214 F.3d 275, 284 (2d Cir. 2000), and this Court's *Trilegiant decision,* including

whether the new claims "unfairly surprise" the non-movant, whether they require significant

additional discovery that the non-movant could not have taken earlier, and the prejudice to the

moving party if the motion to amend is denied. See also *United States v. Continental Ill. Nat'l

Bank*, 889 F.2d 1248, 1255 (2d Cir. 1989) ("burden of undertaking discovery, standing alone,

does not suffice to warrant denial of a motion to amend a pleading"). Here, there is no unfair

surprise, Defendants offer only unspecific assertions about a need for discovery, and if leave to

amend is not granted, Plaintiffs will have to file a second class action, which Defendants

undoubtedly would challenge again on procedural grounds, producing no judicial economies.

## I.    CIGNA Has Had Fair Notice of the Proposed Claims for Years

In practically any civil litigation, discovery uncovers additional facts. The amended

Complaint supplements the factual allegations that were already contained in the Complaint

about how "pension benefits accrue at a lower rate" under the cash balance formula and how

CIGNA failed to fully protect already-accrued benefits. See ¶¶ 20-25.

Following up on the allegations in the existing Complaint about reductions in future rates

of benefit accrual, Plaintiff's first set of document requests asked for "all spreadsheets, analyses,

or other documents related to rates of benefit accrual under the Cigna Pension Plan, Part B."

After the deposition of CIGNA's Assistant Vice-President for Global Benefits indicated that

CIGNA had made across-the-board reductions (not just reductions for older employees),

Plaintiffs noticed and took a seven-hour Rule 30(b)(6) deposition largely on ERISA Section

204(h). Exs. 2 and 3. CIGNA now concedes that the report of Plaintiff's actuarial expert

"touched" on Section 204(h). Defs. Opp. at 13. In reality, it did considerably more than that. The

3

Class' actuary computes comparative accrual rates for not only Ms. Amara, but also for three different profiles of employees that CIGNA itself used to analyze the changes. The actuarial expert found that the future rates of benefit accrual are "significantly lower compared to the accrual rates under Part A." Ex. 1 (to Plf.'s Motion in Limine on *Burke v. Kodak*) at 6-8.

Following up on the allegations in the Complaint, Plaintiffs also took discovery about CIGNA's protection of previously-earned benefits (which CIGNA calls "minimum benefits"). In opposing leave, Defendants assert that the Class' expert reports do not touch on these "other proposed amended claims." Defs. Opp. at 13; see also id. at 10 (asserting that "to date, the Plan's treatment of the "free 30" benefit has not been at issue in this litigation at all"). Despite this denial, the actuary's expert report indisputably contains an entire section entitled "**CIGNA Does Not Explain the Relative Value of Benefit Options**" which discusses both the failure to disclose the "relative values" of benefit options and the elimination of the "Free 30%" joint and survivor's annuity under cash balance. Ex. 1 (to Plfs. Mot. In Limine) at 13-14. The Rule 30(b)(6) deposition that Plaintiff took also specifically covered disclosures about the "relative value" of benefit options and about the elimination of the free 30% joint and survivor's annuity. Ex. 2 and Ex. 5 (attached) at 107-28, 153-55, 256-58, 309-10.[3]

Finally, Defendants seems to disown their lead counsel's representation that CIGNA has had notice of these claims for a couple of years. Defs. Opp. at 13. CIGNA asserts that when

---

[3] Defendants express surprise that the protection of the "Free 30%" survivor annuity under ERISA §204(g) has not been more of an issue earlier. Defs. Opp. at 10. As shown, it has already been an issue. Defendants also neglect to mention that they just produced documents pursuant to this Court's April 20, 2005 rulings which ask "IS 'FREE-30' A PART OF MINIMUM BENEFIT?" and talk about the "lost survivor subsidies" when long-service employees are rehired. Ex. 6. Plaintiff requested these documents on May 14, 2002–three years before CIGNA ultimately produced them.

4

Plaintiff's counsel told Judge Squatrito on April 28, 2004 that the Class "intended to amend her Complaint" at the summary judgment stage, the Plaintiff "failed to provide any details about the proposed amendments." Defs. Opp. at 6. In making this assertion, Defendants appear to not only walk away from their lead counsel's representation but also to fail to review Plaintiff's submission. It states that "Defendants have already been placed on notice" of "respects in which the Complaint needs to be clarified" "[1] through the reports of Plaintiff's actuarial and communications experts, [2] through the matters identified in Plaintiff's Rule 30(b)(6) deposition notice, and [3] through Plaintiff's answers to Defendants' interrogatories." Dkt. #79 at 1. As mentioned, the reports of Plaintiff's actuarial and communications experts discuss both the reductions in future rates of benefit accruals and the absence of relative value disclosures. Exs. 1 and 10 (to Plf. Mot. in Limine). Plaintiff's Rule 30(b)(6) deposition notice specifically identifies compliance with "ERISA section 204(h)" in two of its three designated matters and includes disclosures of the "relative value of optional forms of benefit" as the third. Ex. 2 (to this Motion). Lastly, Defendants seem to forget about the written interrogatories which they served on February 5, 2004 asking about the "damages and/or remedy sought" by the Plaintiff class under each Count in the Complaint. The Class' March 8, 2004 answers specifically covered remedies for the ERISA Section 204(h) violations, the failure to disclose the "relative values" of benefit options, including the undisclosed elimination of the "Free 30%" survivor annuity. Ex. 7 (Answers to Int. 4 and 6).

## II.   The Alternative Claims in the Proposed Complaint Were Obviously Objects of Discovery and Are Based on the Core of Facts Already Pled

The proposed amended Complaint sets out each alternative claim separately. As a matter

of drafting, they could also have been set out under the existing claims because each builds on the same core of facts as the existing claims. To illustrate, a Summary Plan Description ("SPD") is like the ERISA Section 204(h) notice required to disclose "reductions" in future rates of accruals. See 29 C.F.R. 2520.102-2(b) and 65 F.R. 70226-7, 70229 (Nov. 21, 2000) (clarifying that disclosure requirements apply to "reductions" and cautioning that cash balance conversions should be reviewed for compliance). The SPD and the Section 204(h) notice both operate under the same legal standard, requiring disclosures of "reductions" in language that is understandable to the "average participant." Compare 29 U.S.C. §1022(a) and 29 CFR 2520.102-2(a) with 26 C.F.R. 1.411(d)-6, Q&A-10. Thus, a failure to disclose benefit reductions will violate both the SPD requirements and the 204(h) notice rule. Similarly, the failure to offer notice of the "relative value" of benefit options violates both the SPD requirements and the Treasury regulations on providing "sufficient information" to participants about options with unequal financial values.

Defendants' assertion that the new claims are "challenging different aspects of the Plan and the sufficiency of communications to participants that were not at issue previously" is just sophistry. Opp. at 7. These are alternative legal theories that grow out of the "same core of facts as presented in the prior pleading."[4] See *Wells v. Harris*, supra, 185 F.R.D. at 131; *Fluor*, supra, 654 F.2d at 856 (proposed claim "related closely to the original claim" and was "obviously one of the objects of discovery"); *Dole v. Arco Chem Co.*, 921 F.2d 484, 488 (3d Cir. 1990) (amended complaint was "based on facts and circumstances which do not differ significantly

---

[4] As indicated, Plaintiff's communications expert analyzed not only CIGNA's SPD but also the "precursor" communications, including the newsletter which CIGNA's 30(b)(6) witness identified as the ERISA § 204(h) notice. Ex. 10 (to Plf. Mot. in Limine) at 4 and 10. The actuarial expert analyzed the disclosures in CIGNA's benefit commencement package about the relative value of benefit options. Ex. 1 (to Plf. Mot. in Limine) at 13-14.

6

from those underlying the...original allegations").

## III.    Defense Counsel's Protests That They Should Not Be Expected to Anticipate Anything Are Contrary to Law and Not Grounds for Denying Leave to Amend

Discovery provides both parties with an opportunity to obtain information relevant to the claims in the case. Relevance is not restricted to an opposing party's theories. *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978) (Rule 26(b)(1) must be construed broadly "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"); *Flynn v. Goldman, Sachs*, 1991 WL 238186, *5 (S.D.N.Y. 1991) ("defendant's attempt to limit the scope of plaintiff's discovery to what defendant has unilaterally determined to be necessary...is without foundation in law or fact").

If one party conducts discovery that adds additional information to the core of facts already pled, the opposing party has the responsibility to conduct any discovery necessary to shore up its defenses. "It is not unreasonable to require a defendant to anticipate all theories of recovery and prepare its defense accordingly. The question is whether the defendant ought to have known from the original complaint the facts which the plaintiff is now adding." *Wells v. Harris*, supra, 185 FRD at 132 (quoting *Zagurski v. American Tobacco*, 44 FRD 440, 442-43 (D. Conn. 1967), and finding that the defendant could have anticipated the amplified allegations based on the facts in the original complaint); accord *Retepromaca Representataciones Tecnicas Proyectos y Sistemas v. Ensign-Bickford Co.*, 2004 WL 722231, *7 (D. Conn. 2004) (two statements in complaint were sufficient to give defendant notice that it was being sued for breaching representation agreement).

Rather than accept this responsibility, Defendants' counsel beg to be excused:

7

(1) "Defendants' expert was not asked to respond to every opinion expressed by Plaintiff's expert that did not relate to the claims that were actually alleged by in [sic] the Complaint." Defs. Opp. at 10.

(2) "the mere fact that Plaintiff submitted an expert report that touched on issues related to Plaintiff's proposed amended Section 204(h) notice claim ... does not mean that Defendants should have conducted discovery on this issue or prepared a defense." Defs. Opp. at 13.

(3) "Defendants should not be expected to cull through every expert report and every question and answer in a deposition and prepare a defense to every statement or opinion therein, where the statements or opinions are irrelevant to the claims actually alleged in the Complaint." Defs. Opp. at 14.

Defendants' argument not only shadows a low level of responsibility, it fails under its own premises: The actuarial expert's statements about reductions in rates of future accrual and the failure to disclose the relative values of benefit options were certainly "[]relevant to the claims actually alleged in the Complaint."

CIGNA is a Fortune 500 company represented by one of the largest law firms in the country. Surely, CIGNA or its counsel should have anticipated that the pleadings combined with the expert reports and discovery on the failure to disclose benefit reductions and "relative values" of options were going to lead to amendments to the Complaint. And they particularly should have been able to anticipate this when Plaintiff's counsel expressly told them and the Court that such amendments were in store in April 2004. This responsibility is reinforced by counsel's February 8, 2005 representation that CIGNA has had notice of these changes for a couple of years.

## IV.    CIGNA Does Not Identify Any "Facts" That It Does Not Already Possess

CIGNA pleads that leave to amend should be denied because it would have to take additional discovery. This plea ignores the case law that additional discovery by itself is not a sufficient basis for denying leave to amend. *Continental Ill. Nat'l Bank & Trust Co.*, supra, 889

8

F.2d at 1255; *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 42 (2d Cir. 1979) *United States v. Hudson*, 152 F.R.D. 6, 8 (D.Conn. 1993); *Coventry v. United States Steel,* 856 F.2d 514, 519 (3d Cir. 1988) (additional discovery "would not have been unduly burdensome since it would have concerned the same subject matter as an issue already in the case").

CIGNA's plea also presumes that CIGNA actually still needs discovery that it has been unable to take since April 2004 or within the nearly four-month schedule to which the parties jointly agreed on March 4, 2005. As the Plan administrator, CIGNA should already have the information related to compliance with the disclosure requirements. Under ERISA and CIGNA's own Plan document, the Plan administrator has the duty to ensure "full and timely compliance" with ERISA's requirements. Ex. 8 at Sec. 13.2(g).

CIGNA acts nevertheless as if some third-party exists from whom it needs to obtain information to figure out what the Plan administrator disclosed. For example, CIGNA asserts: "Defendants will seek discovery as to what was disclosed to the participant" and "Discovery would also be required into what communications Plaintiff or Ms. Broderick received from Defendants." Defs. Opp. at 10 and 12. As its only other example of the kind of fact discovery that CIGNA needs, CIGNA points to Ms. Broderick's "marital status," asking about her "marital status at the time" she was under the prior plan and "her marital status now." Defs. Opp. at 11.

This is all information that CIGNA, as the Plan administrator with the responsibility for ensuring "full and timely compliance" with ERISA, should already have (unless there has been some catastrophic loss of records). Moreover, to the extent the named Plaintiffs also possess such information, CIGNA's first set of document requests asked for any and all communications that Ms. Amara had about the amendments in at least four different ways. In response, Ms. Amara

9

produced close to 175 pages of documents.

As the Court suggested, Plaintiffs' counsel provided Defendants' counsel with Ms. Broderick's name on April 28, 2005. Counsel heard nothing until May 25, 2005, two days before CIGNA's opposition was due, at which time Defendants' counsel asked for future dates to depose her and that documents be produced at her deposition without a formal request. CIGNA obviously did not intend to depose Ms. Broderick before opposing the motion for leave to amend. Plaintiffs' counsel have over 100 pages of responsive papers from Ms. Broderick which Defendants have not formally or informally requested. Ignorance evidently was preferable when CIGNA wanted to sustain a position that more discovery is needed.[5] At bottom, this case is like *Heyl & Patterson Int'l v. F.D. Rich Housing*, 663 F.2d 419, 426 (3d Cir. 1981), where defendant cited a need for discovery but "[e]ven to this hour...has not indicated what evidence it would have presented in view of the...alleged change in theory." A party cannot deliberately fail to take discovery and later complain that it must be allowed to conduct additional unspecified discovery.

## V.    CIGNA Does Not Explain Why It Suddenly Will Need So Many Experts When It Designated Only One Before

CIGNA had ample opportunity to designate expert witnesses. Judge Squatrito's February 19, 2003 Memorandum Decision and Order established a schedule for expert reports: Reports from Plaintiff's experts were due April 25, 2003, with depositions to be completed within the next month. Defendants' reports were due one month thereafter with depositions the next month. Thus, Defendants had the reports from Plaintiff's experts and deposed both of them before Defendants were required to designate any experts or serve any reports.

_____

[5] For example, the "questions" about Ms. Broderick's marital status are easy to answer: She has been married to John P. Broderick, Jr. since April 10, 1971.

10

Defendants prepared only one expert report by actuary Lawrence Sher, whose deposition

was taken on July 24, 2003. At his deposition, Mr. Sher testified that he was instructed not to

address the paragraphs in the Plaintiff's actuarial report that related to ERISA Section 204(h) or

the disclosure of "relative values" of benefit options. Ex. 14 (to Mot. in Limine) at 106-108.

Defendants decided not to designate a communications expert to respond to the Plaintiff's

communications report. Instead, at the deposition of the Plaintiff's expert, Defendants' counsel

repeatedly compared his work with something that his "nine-year-old" could have done. Ex. 9 at

147-51 and 156-59. Defendants' counsel took the position that if the reductions and

disadvantages of the cash balance conversion were as postulated, it was clear that the SPD and

precursor communications from CIGNA did not disclose those features, with or without a

communications expert. Id.

After disclaiming the need for their actuarial expert to fully respond to Plaintiff's

actuarial expert or the need to designate any communications expert, CIGNA now sees a need for

expert reports for every defense. CIGNA does not explain what changed. Is CIGNA now seeking

a communications expert, additional actuarial expertise, or thinly-veiled legal expertise? The

only thing that is clear is that CIGNA wants a lot more experts:

> (1) CIGNA "would seek to retain one or more experts and obtain expert reports to
> respond to this new claim" on Section 204(h) notice. Defs. Opp. at 10.
>
> (2) CIGNA "will seek to obtain an expert opinion as to the allegations raised ... about the
> relative value of benefit options." Defs. Opp. at 12.
>
> (3) CIGNA "would seek submit [sic] expert reports as to the application of the "free 30"
> enhancement to Ms. Broderick" Defs. Opp. at 12.

Transparently, CIGNA is using the prospect of "a pandora's box of additional fact and expert

discovery" as a means to ward off leave to amend. Defs. Opp. at 12. The case law says this cannot be done. See *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 42 (2d Cir. 1979) ("even if [defendant's] estimate that it would need several months to analyze all the discovery material is correct, this by itself is insufficient prejudice to deny leave to amend"); *PCB Piezotronics, Inc. v. Kistler Instrument Corp.,* 1999 WL 1067569, *1 (W.D.N.Y. 1999) (defendants' complaints of "having to start discovery all over again on the damages claims" and "having to retain experts on the new claims" insufficient to deny amendment); *Donahue v. Unisys Corp.*, 1991 WL 537530, *9 (D.Conn. 1991) (defendant's claimed need for additional discovery on new count "does not amount to undue prejudice").

## VI.    As Defendants Concede, the Class' Section 204(h) Claim Is Not "Futile"

Although Defendants disclaim a challenge to the amendments on "futility" grounds, Defs. Opp. at 9 n.8, Defendants nonetheless offer merits arguments against the Section 204(h) claim. Short of a futility argument, this is no logical reason to expound on defenses if leave to amend be granted (and here it seems inconsistent with the position that Defendants need "one or more experts" to defend the Section 204(h) claim). Plaintiffs will nevertheless briefly address Defendants' arguments.

The general rule under Section 204(h) is that the Plan administrator must give advance notice of a significant reduction in future benefit accruals to all plan participants. 29 U.S.C. §1054(h) and 26 C.F.R. 1.411(d)-6, Q&A-1. Here, no serious question exists that CIGNA's cash balance conversion produced a very significant reduction in future accruals. The benefit recalculations recently performed by CIGNA for Mr. Depenbrock and Ms. Amara show that their retirement benefits nearly doubled with a continuation of the prior formula. Plf. Memo on Impact

of Depenbrock at 3-4. The Complaint alleges that benefits were reduced by the cash balance

formula and the report of Plaintiff's actuarial expert shows how much they were reduced.

Corroborating this, the William Mercer Company performed comparisons for CIGNA showing

20% or more reductions in most cases. Ex.1 (to Plf. Mot. in Limine) at 8.[6] The change in the

rehire rule combined with CIGNA's "wear-away" transition rule furthermore meant that rehired

participants like Ms. Amara and Ms. Broderick would not earn even one dollar in additional

pension benefits for the rest of their careers.[7] At the Rule 30(b)(6) deposition on ERISA Section

204(h), CIGNA's designated witness, John Arko, identified a November 1997 "article" as

constituting CIGNA's Section 204(h) notice. However, Mr. Arko later conceded that the article

contains no notice of benefit reductions. Ex. 3 at 49-53 and 81-85.

Although the general rule is that all participants must be given notice of such reductions,

CIGNA now focuses on Q&A-9 in the regulations, which allows the Plan administrator to carve

out certain groups of participants from the required notice. Defs. Opp. at 7. Any such exclusion

must, however, be made before the fact, i.e., it must be "determined ... at the time the amendment

is adopted." 26 C.F.R. 1.411(d)-6, Q&A 9. The Plan administrator who makes the determinations

about notice has a fiduciary duty to protect the interests of participants–which is the "highest"

duty "known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272, n.8 (2d Cir. 1982)).

---

[6] Changing from a benefit formula based on highest pay to one based on year-by-year pay nearly always produces reductions. The Treasury regulations specifically recognize that changes in "the method of determining average compensation for benefit accruals" or the "definition" of "compensation taken into account in determining an employee's benefit accrual" can cause a significant reduction. 26 C.F.R. 1.411(d)-6, Q&A-6.

[7] The Treasury regulations specifically provide that the "cessation" of benefit accruals or the "exclusion of current participants from future participation" can cause a significant reduction in future benefit accruals. 26 C.F.R. 1.411(d)-6, Q&A-6 and 16.

13

Instead of complying with the law's requirements, Defendants would like to re-construe the regulations to allow CIGNA, in a self-interested, non-fiduciary capacity, to retrospectively carve out as many participants as possible from any notice requirements. It should be obvious that a Plan administrator cannot breach its statutory responsibility to give notice of reductions to participants and then attempt to pick off any individuals who file suit, on a nunc pro tunc basis, as persons whose rate of future benefit accrual is "reasonably expected not to be reduced by the amendment." Such an approach would convert statutory compliance into a contrived game when the Plan administrator did not actually offer any participants the statutorily-required notice. As judicial officers, "it is our role to make sense rather than nonsense of the corpus juri." *W. Va. Univ. Hospitals. v. Casey,* 499 U.S. 83, 101 (1991).

CIGNA also tries a sleight of hand about dates of employment. It states that "Neither Plaintiff nor Ms. Broderick was employed on January 1, 1998, the date the amendment became effective." Defs. Opp. at 8. CIGNA neglects to mention that Ms. Broderick was employed until December 31, 1997, Prop. Compl. ¶17, and that she was one of the employees who received the newsletter which CIGNA's Rule 30(b)(6) witness testified contained the Section 204(h) notice.

## VII.   Like Ms. Amara, Ms. Broderick Is an Adequate Representative of the Class

CIGNA's opposition repeatedly acts as if this is a putative class action: "Plaintiff apparently seeks to add Gisela Broderick not just as a plaintiff, but as a new proposed class representative." Defs. Opp. at 3. Because a Plaintiff class of over 24,000 current and former employees has already been certified of which Ms. Broderick is already a member, Ms. Broderick clearly did not have to be added as a plaintiff.

Although CIGNA apparently lacked the time to depose Ms. Broderick, it nonetheless sees

14

fit to question her adequacy as a class representative. Defs. Opp. at 3, 15 and 17. As the Memorandum and proposed Complaint show, Ms. Broderick's career with CIGNA and her claims to retirement benefits are parallel to Ms. Amara's, except that Ms. Broderick was rehired in 2000 whereas Ms. Amara was rehired in 1998. See Pl. Mem. at 13-14 and proposed Complaint at ¶¶6, 14, 17, 20, 33, 49, 54, 56. Any search of CIGNA's own correspondence files would also reveal that Ms. Broderick is, like Ms. Amara, an active and articulate advocate of her rights. If Ms. Amara is a typical and adequate representative of the class, as Judge Squatrito found, Ms. Broderick is, too.

CIGNA further questions whether Ms. Broderick exhausted its internal claims procedures. Defs. Opp. at 11 n.13. Although exhaustion is not required for statutory issues, see *MacKay v. Rayonier, Inc.*, 25 F.Supp.2d 47, 50 (D.Conn. 1998), and Ms. Amara exhausted on the class' behalf, Ms. Broderick also exhausted CIGNA's procedures: In fact, she exhausted those procedures three times--as due diligence by CIGNA should have shown. Ex.10.

Plaintiff's counsel could offer still more information about Ms. Broderick, but class representatives are generally found to be adequate based on the typicality of their claims, the absence of conflicts with class, and the adequacy of their counsel. See *Baffa v. Donaldson*, 222 F.3d 52, 60 (2d Cir. 2000); *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997); *Amara v. CIGNA Corp.*, 2002 WL 31993224, \*2-3 (D.Conn. 2002). Like Ms. Amara, Ms. Broderick satisfies those criteria. In addition, Plaintiff's counsel understood from Defendants' lead counsel that CIGNA did not intend to oppose the addition of Ms. Broderick.

Defendants finally complain that Judge Squatrito's class certification order does not specify the "class claims, issues or defenses" that were certified. Defs. Opp. at 3 n.2 and 16 n.7.

15

This requirement did not become effective until December 1, 2003 and did not apply to previously-certified classes. Thus, the change did not require Judge Squatrito to amend his December 20, 2002 class certification order. CIGNA also did not raise this issue when it moved to decertify the class in June 2004 (dkt #82-83).[8] If this Court deems that an amendment to the class certification order would be useful, the Court has the authority to amend the class definition *sua sponte* under Rule 23(c)(1)(C) and (d) to conform with the proposed Complaint,[9] or Plaintiffs can submit an additional motion or briefing.

**Conclusion**

For the foregoing reasons and the reasons stated in Plaintiff's opening memorandum, Plaintiff's motion for leave to amend should be granted.

Dated:  June 14, 2005

Respectfully submitted,

By: /s/ Thomas G. Moukawsher
Thomas G. Moukawsher ct08940
Ian O. Smith ct24135
Moukawsher & Walsh, LLC
21 Oak Street
Hartford, CT 06106
(860) 278-7000
tmoukawsher@mwlawgroup.com

Stephen R. Bruce ct23534 (pro hac vice)
Allison C. Caalim
805 15th St., NW, Suite 210
Washington, DC 20005
(202) 371-8013
stephen.bruce@prodigy.net

---

[8] On October 13, 2004, Judge Squatrito denied CIGNA's motion to decertify the class.

[9] See *Martsolf v. JBC Legal Group, P.C.*, 2005 U.S. Dist. LEXIS 1802 *2 (M.D. Pa. Feb. 7, 2005) ("class claims ... DEFINED as those claims presented in the complaint").

16

## CERTIFICATION

I certify that a copy of the foregoing PLAINTIFF CLASS' REPLY MEMORANDUM IN

SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT has been mailed on this date

by FedEx next-day delivery to counsel for the Defendants at:

> Joseph J. Costello
> Jeremy P. Blumenfeld
> Morgan, Lewis & Bockius
> 1701 Market St.
> Philadelphia, PA 19103-2921
>
> Elizabeth A. Fowler
> Erin O'Brien Choquette
> Robinson & Cole, LLP
> 280 Trumbull Street
> Hartford, CT 06103-3597
> (860) 275-8200

Dated this 14th day of June, 2005.

> /s/ Thomas G. Moukawsher
> Thomas G. Moukawsher