# EXHIBIT 5

Page 1

```
 1        UNITED STATES DISTRICT COURT
 2      FOR THE DISTRICT OF CONNECTICUT
 3                  - - -
 4   JANICE C. AMARA, Individually and on:
 5   behalf of others similarly situated :
 6               -vs-                    :
 7   CIGNA CORP. and CIGNA PENSION PLAN  :
 8                  - - -
 9          No. 3:01-CV-2361 (DIS)
10       Oral Deposition of JOHN ARKO, was taken
11   pursuant to notice, held at ZANARAS REPORTING AND
12   VIDEO, 1616 Walnut Street, Philadelphia,
13   Pennsylvania, at 10:05 a.m., on July 3, 2003, before
14   Kristen Augello, Court Reporter and Notary Public,
15   there being present:
16
17
18                  - - -
19         ZANARAS REPORTING AND VIDEO
20              1616 Walnut Street
21        Philadelphia, Pennsylvania 19103
22      2112 Bay Avenue, Ocean City, New Jersey 08226
23         1-215-790-7857   1-877-GO-DEPOS
24
```

Page 2

```
 1  A P P E A R A N C E S:
 2
 3  BY: STEPHEN R. BRUCE, ESQUIRE
 4  805 15th Street, NW, Suite 210
 5  Washington, DC 20005
 6  202-371-8013
 7  Attorney for the Plaintiff
 8
 9
10  MORGAN, LEWIS & BOCKIUS
11  BY: JEREMY P. BLUMENFELD ESQUIRE
12  1701 Market Street
13  Philadelphia, Pennsylvania 19103
14  215-963-5258
15  Attorney for the Defendants
16
17
18
19
20  Also Present: Thomas G. Moukawsher, Esquire
21
22
23
24
```

Page 3

```
 1   I N D E X
 2   NAME OF WITNESS:   EXAMINATION    PAGE NO.
 3   John Arko
 4                      Mr. Bruce        5
 5
 6
 7
 8            E X H I B I T   I N D E X
 9   NO.                          PAGE
10   Exhibit-52 through 59          5
11   Exhibit-60                    13
12   Exhibit-61                    43
13   Exhibit-62                    71
14   Exhibit-63                    76
15   Exhibit-64                   179
16   Exhibit-65                   184
17   Exhibit-66                   235
18   Exhibit-67                   250
19   Exhibit-68                   252
20   Exhibit-69                   273
21   Exhibit-70                   278
22
23
24
```

Page 4

```
 1          LITIGATION SUPPORT INDEX
 2
 3       DIRECTION TO WITNESS NOT TO ANSWER
 4
 5   PAGE LINE        PAGE LINE        PAGE LINE
 6    16    4         29    1          37   15
 7    61    9        171    5         194   12
 8   203   11        298   19         311    9
 9   314   22        316    1
10       REQUEST FOR PRODUCTION OF DOCUMENTS
11
12   PAGE LINE        PAGE LINE        PAGE LINE
13
14                    (NONE)
15
16                   STIPULATION
17
18   PAGE                     LINE
19    5                        1
20
21              QUESTIONS MARKED
22   PAGE                     LINE
23
24
```

Page 5

1.     - - -
2.     (It is agreed by and between
3.  counsel that the reading, signing,
4.  sealing, filing and certification are
5.  hereby waived; and all objections,
6.  except as to form of the question, are
7.  reserved until the time of trial.)
8.     - - -
9.     JOHN ARKO, after having been
10. first duly sworn, was examined and
11. testified as follows:
12.    - - -
13.    - - -
14.    (Whereupon, the court reporter
15. marked Exhibits-52 through 59 for
16. purposes of identification.)
17.    - - -
18. BY MR. BRUCE:
19.    Q.    Would you please state your name?
20.    A.    John Arko.
21.    Q.    And what's your address?
22.    A.    401 Dudley Avenue, Narberth,
23. Pennsylvania.
24.    Q.    How do you spell Narberth?

Page 6

1.    A.    N-a-r-b-e-r-t-h.
2.    Q.    And Mr. Arko, I have met you before,
3.  because I deposed you in Mr. Depenbrock's case.
4.    A.    Yes.
5.    Q.    What's your job title now?
6.    A.    Director of retirement benefits.
7.    Q.    And you're here in response to a Rule
8.  30 (b)(6) notice of deposition. Do you understand
9.  what that is?
10.   A.    Yes. I have been informed.
11.   Q.    Can you explain what your
12. understanding of that is?
13.   A.    That in general this is a -- you have
14. some questions to pose of either Cigna Corporation or
15. the Cigna pension plan, and you needed somebody who
16. could speak on their behalf, since they are unable
17. to.
18.   Q.    So this is a corporation?
19.   A.    Yes.
20.   Q.    And what are the subjects on which
21. you're to speak?
22.       MR. BLUMENFELD:  Objection.
23. BY MR. BRUCE:
24.   Q.    What's your understanding of what the

Page 7

1.  subjects are on which you're to speak for the
2.  corporation?
3.       MR. BLUMENFELD:  Same objection.
4.  He is here pursuant to your notice of
5.  deposition under 30 (b)(6) to speak to
6.  the subjects you will identify.
7.       MR. BRUCE:  I can ask him what
8.  his understanding is of the subjects.
9.  BY MR. BRUCE:
10.   Q.    Go ahead.
11.   A.    I believe in general you wanted to
12. cover a couple of points. You see, I had to recall
13. now just from memory. One was something a little bit
14. about 204(h) notices around the plan, and we see the
15. accruals of the benefit. The second was how we look
16. at how the plan was designed, or around age
17. discrimination issues, and there was a third. It's
18. escaping me at the moment.
19.       MR. BLUMENFELD:  Are you finished
20. with your answer?
21.       THE WITNESS:  Yes, I am.
22.       MR. BLUMENFELD:  I'd just like to
23. note for the record, he is here
24. pursuant to the 30 (b)(6) notice of

Page 8

1.  deposition to answer questions on
2.  subjects identified in that notice and
3.  for purposes of the 30 (b)(6) with
4.  regard to him speaking on behalf of
5.  Cigna Corporation and Cigna pension
6.  plan. He is authorized to speak on
7.  regarding subjects that you identified
8.  in the notice.
9.       MR. BRUCE:  Okay.
10. BY MR. BRUCE:
11.   Q.    And what did you do to prior to
12. speaking on Cigna's behalf on these subjects?
13.   A.    Had a few meetings with Jeremy
14. Blumenfeld and with Paul Gontarek.
15.   Q.    Anyone else?
16.   A.    No.
17.   Q.    How about Mr. Meyn?
18.   A.    No.
19.   Q.    Did you speak with Mr. Meyn about what
20. you were going to do?
21.   A.    I let him know that I was scheduled to
22. be at this deposition today.
23.   Q.    And what was your conversation with
24. him?

Page 105

1  the reporter read it back.
2         (The previous question is read
3  back.)
4         MR. BLUMENFELD: Can we step
5  outside for a second?
6         MR. BRUCE: No, it's in the
7  middle of a question.
8         MR. BLUMENFELD: It's related to
9  a privileged answer.
10        THE WITNESS: No --.
11        MR. BLUMENFELD: You should
12 answer.
13        THE WITNESS: The answer has to
14 be, I don't know.
15 BY MR. BRUCE:
16   Q.   Is there someone else who would know
17 the answer?
18        MR. BLUMENFELD: Objection.
19        THE WITNESS: If you could
20 describe the question again, perhaps
21 in different terms or more
22 specifically, I would probably answer.
23        MR. BRUCE: She read it back. It
24 was obviously a pretty specific

Page 106

1  question, Mr. Arko.
2         MR. BLUMENFELD: Objection.
3         MR. BRUCE: If you want me to
4  make it even more specific, it's going
5  to be even longer. Can you try and
6  answer it?
7         MR. BLUMENFELD: Objection.
8  BY MR. BRUCE:
9    Q.   In terms of the A plus B concept, I am
10 saying, isn't what the plan is providing the greater
11 of A, which is the benefit that was accrued as of
12 December 31st of 1997, or, and the second item would
13 be or, the opening account balance plus the benefits
14 accrued after January 1, 1998? Isn't that the plan,
15 what the plan is offering?
16   A.   That is one portion of the benefit.
17 That is one option that is available to people at the
18 time they commence benefits, again depending on even
19 specific circumstances.
20   Q.   And you think that is a less
21 complicated formula than A plus B?
22   A.   In any opinion?
23   Q.   Yes.
24   A.   Yes, I do.

Page 107

1    Q.   And how is that less complicated?
2    A.   In terms of our plan, again it depends
3  on each person's circumstances and information and
4  what terms of the plan apply to them, but for many
5  people that are converted, that ends up being their
6  opening account balance at the end of 1998, growing
7  into the future with benefit credits and interest
8  credits, and that total account balance is one of the
9  options available to them as a very simply stated
10 number at the time they are ready to commence
11 benefits.
12   Q.   They still have to be offered the A
13 portion, the greater of the two; don't they still
14 have to be offered the benefits that they had accrued
15 up to December 31, 1997?
16        MR. BLUMENFELD: Objection.
17        THE WITNESS: My understanding is
18 yes, they do.
19 BY MR. BRUCE:
20   Q.   And don't they have to be told whether
21 that is the more valuable option than the opening
22 account balance plus additional accruals?
23        MR. BLUMENFELD: Objection.
24        THE WITNESS: At the point they

Page 108

1         commence benefits, we tell people
2         precisely what options they have
3         available, and how -- exactly what
4         those dollar amounts are.
5  BY MR. BRUCE:
6    Q.   And if someone commences benefits,
7  say, before age 55, do you tell them what the age 55
8  benefit for them is under the prior plan?
9    A.   If they are under 55?
10   Q.   Yes.
11   A.   I can't think of any situations in the
12 plan except under the cash balance portion where they
13 would be able to receive a benefit, and that benefit
14 would be the account balance that they have at the
15 time they commence benefits. That's what they are
16 given.
17   Q.   And isn't it possible that they can
18 have a benefit commencing at age 55 which is, in
19 fact, a more valuable option?
20        MR. BLUMENFELD: Objection.
21        THE WITNESS: They are not 55,
22        you just described somebody that is
23        commencing their benefits prior to age
24        55.

Page 109

1  BY MR. BRUCE:
2     Q.   So if someone commences their benefits
3  at age 54 and they would, in fact, have a more
4  valuable benefit if they waited one year to age 55,
5  Cigna does not tell them that -- does not give them
6  any indication that they might consider waiting one
7  year to retire?
8            MR. BLUMENFELD: Objection.
9            THE WITNESS: The information
10           that is provided to people through our
11           standard distribution package wouldn't
12           describe such a benefit if it isn't
13           available, no.
14 BY MR. BRUCE:
15    Q.   You're familiar that there are
16 regulations put out by the Treasury Department about
17 disclosing the relative value of benefit options?
18           MR. BLUMENFELD: Objection.
19           THE WITNESS: There are
20           regulations available?
21           MR. BRUCE: Yes.
22           THE WITNESS: I would have to say
23           I don't know.
24 BY MR. BRUCE:

Page 110

1     Q.   That was one of the items in the
2  notice of deposition. It was -- the third item was
3  plan administrator's compliance with the rules on
4  disclosing the relative value of the optional forms
5  of benefit available under the plan; e.g. the extent
6  to which optional forms are subsidized relative to
7  the normal form of benefit. Do you recall reviewing
8  that in the notice of deposition?
9     A.   Yes, I do.
10    Q.   And did you familiarize yourself with
11 the plan administrator's compliance with that
12 regulation in order to testify here today?
13    A.   Only in terms of the preparation that
14 I described earlier.
15    Q.   So you are familiar with that
16 regulation?
17           MR. BLUMENFELD: Objection.
18 BY MR. BRUCE:
19    Q.   Are you familiar with that regulation?
20    A.   Only to the -- yes.
21    Q.   Are you prepared to testify about the
22 plan administrator's compliance with it?
23    A.   I am prepared to testify about what
24 the plan and the administrative team of retirement

Page 111

1  investment services provides to our participants,
2  yes.
3     Q.   So what testimony do you want to offer
4  on the plan administrator's compliance with the rule
5  about disclosing the relative value of optional forms
6  of benefit, including any subsidized options?
7            MR. BLUMENFELD: Objection,
8            that's not a question.
9            MR. BRUCE: Go ahead.
10           THE WITNESS: Could you ask me a
11           specific question?
12 BY MR. BRUCE:
13    Q.   Go ahead, what's your testimony about
14 the plan administrator's compliance? Are they
15 complying?
16           MR. BLUMENFELD: Objection.
17 BY MR. BRUCE:
18    Q.   Is the plan administrator complying
19 with that rule?
20    A.   So that's your question?
21    Q.   Yes.
22    A.   I'm not quite clear on exactly what
23 rules you're talking about, but I think we comply
24 with all the appropriate rules that exist.

Page 112

1     Q.   And do you comply with the rule about
2  disclosing the relative value of benefit options?
3            MR. BLUMENFELD: Objection.
4            THE WITNESS: I think the
5            distributions package that we provide
6            to our employees, the information we
7            give them in all of the materials,
8            satisfies all requirements under the
9            provisions you stated, and others.
10 BY MR. BRUCE:
11    Q.   Does it have a space on those forms
12 for disclosing the annuity available from the prior
13 plan?
14           MR. BLUMENFELD: Objection.
15           THE WITNESS: It has a --
16           MR. BRUCE: You have objected.
17           Let him answer.
18           THE WITNESS: It has a space for
19           every option available to that person
20           at the time they commence, and lists a
21           number that is available to them to
22           receive as a benefit.
23 BY MR. BRUCE:
24    Q.   And did you answer any question? Does

Page 113

1  it have a place where the participant's annuity under
2  the prior plan is disclosed?
3              MR. BLUMENFELD: Objection. What
4              document are you talking about?
5              MR. BRUCE: He knows what
6              document I am talking about. He has
7              just testified about it. Go ahead.
8              You're talking about the benefit
9              commencement package.
10             THE WITNESS: Yes, I am.
11 BY MR. BRUCE:
12     Q.    Does it have a space for disclosing to
13 the participants the annuity that they had earned
14 under the prior plan?
15             MR. BLUMENFELD: Objection. The
16             document speaks for itself.
17             THE WITNESS: Again, the document
18             provides the exact number of every
19             option available to the participant at
20             the commencement date, and each of
21             those numbers is created per the terms
22             of the plan document.
23 BY MR. BRUCE:
24     Q.    Can you answer my question?

Page 114

1              MR. BLUMENFELD: Objection.
2              THE WITNESS: And to the extent
3              that that calculation requires moving
4              from the Part B of the document into
5              Part A of the document, it would look
6              to Part A of the document.
7  BY MR. BRUCE:
8      Q.    And if one of the options was taken
9  from Part A of the document, would it disclose that
10 that option might have a greater value than other
11 options?
12             MR. BLUMENFELD: Objection. The
13             document speaks for itself.
14             THE WITNESS: The distributions
15             package simply states what it states.
16             It gives numbers, and I don't know
17             who -- now you are asking me the
18             value. I presume you are coming now
19             from the participant's viewpoint, if
20             they see the precise numbers and then
21             we make available to them a call
22             center or they have any other
23             questions they are certainly able to
24             ask, and they're provided the summary

Page 115

1              plan description or any other
2              information we make available.
3              MR. BLUMENFELD: Can we take
4              another quick break, Steve?
5              MR. BRUCE: Sure.
6      (Recess taken.)
7  BY MR. BRUCE:
8      Q.    I am just going to show you what's
9  been marked as Exhibit-26 at Bob Steele's deposition,
10 and this is what -- you can verify, but this looks
11 like a benefits commencement package for an Audrey
12 McCash who separated from service at the end of
13 2002. Does that seem right?
14     A.    Yes, it does.
15     Q.    And there's a page, even though the
16 pages aren't really numbered, but there's a page, the
17 sixth page in is entitled, Cigna pension plan
18 distribution form, page one of two, and it has a
19 number of different options for Ms. McCash; there's a
20 lump sum, a single life annuity, a single life
21 annuity with a lump sum refund, a 50 percent joint
22 survivor annuity, a 100 percent joint survivor
23 annuity and a deferred benefit; is that right?
24     A.    Yes.

Page 116

1      Q.    Does that seem familiar in terms of
2  the options that people are given?
3              MR. BLUMENFELD: Objection.
4              THE WITNESS: Under the terms of
5              the Cigna pension plan and
6              participants from the Cigna plan, this
7              looks pretty typical.
8  BY MR. BRUCE:
9      Q.    And down at the bottom it has a space
10 for deferred benefit, but it doesn't provide an
11 amount. Do you see that?
12     A.    Yes.
13     Q.    Does that seem typical?
14     A.    Typical for people that have an option
15 to defer their benefits from our plan, yes.
16     Q.    If you look down two pages further
17 there's what is called a participant benefits summary
18 sheet for Ms. McCash. Do you see that?
19     A.    Yes.
20     Q.    Are you familiar with those sheets?
21     A.    Yes, they look familiar.
22     Q.    And this indicates that at the time
23 when she is terminating, that she is about age 53.
24 In fact, it has the age years and months computed up

Page 117

1  there, of age 53 and three months, correct?
2      A.    Correct.
3      Q.    And does this information show her the
4  annuity that would be available to her at age 55?
5      A.    No, it shows her benefits at --
6  receiving them at 1/1/02, which looks to be her age,
7  53.
8      Q.    And so if she was entitled to a
9  benefit under the prior plan, which I assume she was,
10 because she was under -- she started work in 1990,
11 that she would not be available -- she would not be
12 able to draw those benefits from the prior plan until
13 age 55, right?
14              MR. BLUMENFELD:  Objection.
15              THE WITNESS:  Here are the
16           benefits that are available to her at
17           1/1/02 given the terms of the plan
18           that is in effect at the time, at the
19           time she terminated employment.
20 BY MR. BRUCE:
21     Q.    The benefits that she earned under the
22 prior plan up until the end of 1997 would not be
23 available to her until she reached age 55, right?
24              MR. BLUMENFELD:  Objection.

Page 118

1  BY MR. BRUCE:
2      Q.    Is that right?
3      A.    The benefits that were offered to
4  Ms. McCash per this sheet here that I am looking at,
5  at her age, 53, would incorporate the benefits that
6  are for her for entire time she was a participant in
7  the Cigna pension plan.
8      Q.    They would incorporate -- the benefits
9  derived from the opening account balance that Cigna
10 established for her benefits before 1998, right, they
11 would incorporate --
12              MR. BLUMENFELD:  Objection.
13 BY MR. BRUCE:
14     Q.    -- the annuity benefit that she earned
15 before 1998, wouldn't it?
16     A.    The benefits that are available to Ms.
17 McCash are those that she earned over the course of
18 her entire career with Cigna under the terms of the
19 plan, and followed whatever the plan document was in
20 effect back in 2002 when she terminated, I believe it
21 was, and to the extent those are the terms of the
22 plan, the formulas used started under Part B and
23 referred back to Part A.  Those would be incorporated
24 in these numbers.

Page 119

1      Q.    Under the Part A plan, were
2  participants able to draw annuities before age 55?
3      A.    Under the Part A plan, it depends on
4  the circumstances.  In general I would say no, they
5  couldn't.
6      Q.    Can you think of some circumstance
7  where an individual could draw an annuity before age
8  55 under the Part A plan?
9      A.    I can't think of any where they would
10 have been able to draw an annuity.  They would have
11 -- the plan has a provision for small benefit
12 cash-out.
13     Q.    But what's not as an annuity, is it?
14     A.    Correct.
15     Q.    So your answer is no, as far as you
16 can recall there was no provision for drawing an
17 annuity before age 55?
18              MR. BLUMENFELD:  Objection.
19              THE WITNESS:  Not typically that
20           I can recall.  There was a lot of
21           formulas that make up the pension plan
22           prior to 1998, but I think you're
23           correct in general, yes.
24 BY MR. BRUCE:

Page 120

1      Q.    And so would these sheets show
2  Ms. McCash the annuity benefit that she could draw at
3  age 55 if she waited until age 55 to draw her
4  benefits?
5              MR. BLUMENFELD:  Objection.
6              THE WITNESS:  She chose her
7           benefits that are available to her at
8           12/1/02, which from reading here is
9           the time she was 53 and three months.
10 BY MR. BRUCE:
11     Q.    So is the answer no, that the sheets
12 do not show the annuity benefit available to her at
13 age 55?
14              MR. BLUMENFELD:  Objection.  The
15           documents speak for themselves.
16              THE WITNESS:  No, I don't see
17           that anywhere in this document.
18 BY MR. BRUCE:
19     Q.    And the same thing with respect to the
20 sheet two pages forward that is entitled Cigna
21 pension plan distributions form, that does not tell
22 Ms. McCash the annuity benefit that she can draw
23 beginning at age 55, right?
24              MR. BLUMENFELD:  Objection.

Page 121

1      THE WITNESS: It tells her the
2      benefits available at 12/1/02.
3  BY MR. BRUCE:
4      Q.   And does it tell her if any of these
5  options contain subsidized values?
6      MR. BLUMENFELD: Objection.
7      THE WITNESS: I would have to
8      read through the document.
9  BY MR. BRUCE:
10     Q.   Okay. Go ahead.
11     A.   Can I do that?
12     Q.   Yes.
13     A.   I am going to ask that you read the
14  question one more time.
15     MR. BRUCE: Can you read him the
16     question again?
17     (The previous question is read
18     back.)
19     MR. BLUMENFELD: Objection.
20     THE WITNESS: I am not quite
21     clear what you mean by subsidized
22     values, but I don't see any language
23     stating subsidies.
24  BY MR. BRUCE:

Page 122

1      Q.   And is it possible that one or more of
2  these options does contain some subsidized value from
3  the prior pension plan?
4      MR. BLUMENFELD: Objection.
5      THE WITNESS: You would have to
6      provide for me all of the inputs into
7      these calculations; you know, looking
8      at her age and her employment history
9      and given the terms of the plan, but
10     to the best of my knowledge, if she
11     is, as this states, under 55, I don't
12     know. I would say it doesn't.
13  BY MR. BRUCE:
14     Q.   You would say then in her particular
15  situation there would not be any subsidized values in
16  any of the options, except perhaps the deferred
17  benefit option down at the bottom?
18     MR. BLUMENFELD: Objection.
19     THE WITNESS: Again, the numbers
20     are specific to the benefit that is
21     available to Audrey McCash given her
22     employment history at 12/1/02 under
23     the terms of the plan.
24  BY MR. BRUCE:

Page 123

1      Q.   Can you try and answer my question?
2  Can you read him back the question? Listen to my
3  questions and try and answer them, and then you can
4  go on to add something else, but I don't think you
5  tried to answer it.
6      (The previous question is read
7      back.)
8      MR. BLUMENFELD: Objection.
9      THE WITNESS: To the extent Ms.
10     McCash interprets these numbers, that
11     some of them might be subsidized, I
12     can't speak to that. I don't know
13     what her -- how she feels about these
14     numbers, so I guess I don't know.
15  BY MR. BRUCE:
16     Q.   There were some subsidized options
17  under the prior pension plan, right? The early
18  retirement benefit was subsidized; is that correct?
19     MR. BLUMENFELD: Objection.
20     THE WITNESS: I can try to
21     clarify your question and answer it
22     then. To the extent there were
23     certain options available under the
24     Part A plan, and by subsidy, is this

Page 124

1      what you mean, that that provided for
2      a benefit at commencement, and on a
3      certain form, that that could be
4      construed to be worth more than some
5      sort of equivalent comparator
6      benefits.
7  BY MR. BRUCE:
8      Q.   Um-hum, okay, using that definition,
9  were there some options under the Part A plan that
10 were subsidized, such as the early retirement option
11 and the pre 30 percent survivors annuity?
12     A.   I would say yes.
13     Q.   So when those benefits are protected
14 and offered as the greater of A, the prior benefits
15 or the opening account balance plus future accruals,
16 when those subsidized options are protected, and they
17 appear on one of these sheets as an option for the
18 participant to select, does the participant have any
19 way of identifying which of those options are
20 subsidized?
21     MR. BLUMENFELD: Objection.
22 BY MR. BRUCE:
23     Q.   Other than hiring an actuary?
24     A.   The benefits that are listed here that

Page 125

1  a participant sees are those per the terms of the
2  pension plan, and to the extent that the person, and
3  I am not looking at Ms. McCash here anymore, but in
4  general, you asked, that those benefits are such that
5  the person's employment history leads the calculation
6  to flow from Part B of the plan back into Part A of
7  the plan, those numbers are calculated very
8  precisely, and the actual dollar amount is labeled
9  there, and that's what is available to them. To the
10 extent the participant has more information available
11 to them, they have summary plan description and
12 access to an 800 number, and I'm sure they are even
13 invited to call with questions.
14      Q.    Isn't there a possibility that, for
15 example, taking the first two options, that the lump
16 sum option would be based entirely on the cash
17 balance benefit, but the single life annuity could be
18 based on the Part A benefit the person had?
19            MR. BLUMENFELD:  Objection.
20 BY MR. BRUCE:
21      Q.    In general, not taking Ms. McCash.
22      A.    In general the terms of the plan are
23 such that an opening account balance growing with
24 benefit credit and interest credit is what's

Page 126

1  available as a lump sum, given you're a person that
2  fits into that criteria, and if you meet the other
3  criteria that placed you at your benefit commencement
4  date at a point in time where you might have been
5  eligible for some other of these subsidized benefits
6  that you described in Part A of the plan, those would
7  be taken into account, and that calculation would be
8  placed under whatever optional form is being --
9  you're looking at here, yes.
10     Q.    But in terms of the individual making
11 a decision, is there any disclosure to the individual
12 that there's a possibility that the single life
13 annuity might be more valuable because of a
14 carry-over of some subsidies than the lump sum
15 option?
16           MR. BLUMENFELD:  Objection.
17 BY MR. BRUCE:
18     Q.    Or is that left to the individual to
19 ascertain?
20     A.    It's left to the individual to
21 determine what is valuable to them.
22     Q.    And so how do you say that the plan
23 administrator complies with this regulation about
24 disclosing the relative value of optional forms of

Page 127

1  benefit, including the extent to which any optional
2  forms are subsidized?
3            MR. BLUMENFELD:  Objection.
4            Whether the Cigna pension plan and the
5            plan administrator comply with a
6            particular Treasury regulation, part
7            of which is quoted in your notice of
8            deposition, which you haven't marked
9            as an exhibit or put in front of the
10           witness, is a conclusion of law.
11 BY MR. BRUCE:
12      Q.   You can answer the question, your
13 understanding of how, if this is left up to the
14 individuals to ascertain which is more valuable, then
15 how does Cigna comply with this regulation which
16 seems to be placing a duty on Cigna to tell people
17 something about the relative values of the options?
18           MR. BLUMENFELD:  Objection.
19           THE WITNESS:  The information in
20           the distribution package is calculated
21           specific to that individual, provides
22           them precisely the dollar amount and a
23           description of those options available
24           at their commencement date, provides

Page 128

1            them summary plan description,
2            provides them access to an 800 number,
3            and this package is similar to
4            packages that we rely on our records
5            keeper, Cigna Retirement Investment
6            Services, to produce for all
7            participants.
8  BY MR. BRUCE:
9       Q.   But at least in terms of this package,
10 can you identify any disclosures which would indicate
11 that there's a possibility that some of the annuity
12 options may contain subsidized values, whereas some
13 of the other options may not contain those subsidies?
14           MR. BLUMENFELD:  Objection.
15           THE WITNESS:  I see nothing in
16           this specific package besides the
17           actual specific number of the benefit
18           that is available to this person.
19           MR. BRUCE:  Maybe that's a good
20           point for us to take a break for
21           lunch.
22      (Recess taken.)
23 BY MR. BRUCE:
24      Q.   Let's look at Exhibit-52. This is one

Page 153

```
 1              payment method available to
 2              participants at the time they commence
 3              the benefit.
 4   BY MR. BRUCE:
 5      Q.    We talked earlier about the relative
 6   value of benefit options, and I think you agreed that
 7   Exhibit-26 did not specifically disclose that some
 8   benefit options might have greater benefit values
 9   than others. Is that the right exhibit number, 26?
10              MR. BLUMENFELD: Objection.
11              THE WITNESS: And I am sorry, now
12              you are going to have to repeat that
13              question.
14   BY MR. BRUCE:
15      Q.    Is that a fair description of the
16   previous testimony on Exhibit-26?
17              MR. BLUMENFELD: Objection, asked
18              and answered.
19   BY MR. BRUCE:
20      Q.    Do you recall that?
21      A.    I am not recollecting the question
22   that's on the table now. What do you want to know
23   about Exhibit-26?
24      Q.    That we talked earlier about the
```

Page 154

```
 1   benefits options under Exhibit-26, that the
 2   description of those options does not indicate
 3   whether one option or another might have subsidized
 4   values, correct?
 5              MR. BLUMENFELD: Objection. The
 6              document speaks for itself, and
 7              already asked and answered.
 8   BY MR. BRUCE:
 9      Q.    We discussed this before lunch?
10      A.    Yes, we discussed it.
11      Q.    You remember that?
12      A.    Yes, I do.
13      Q.    Okay. Does the summary plan
14   description disclose to participants that when they
15   go to retire, there may be some options that have a
16   greater relative value than other options?
17              MR. BLUMENFELD: Objection.
18              THE WITNESS: The summary plan
19              description describes the benefits
20              that are available to people at the
21              time they commence retirement.
22   BY MR. BRUCE:
23      Q.    In Exhibit-3 on Page 625 it has a
24   heading entitled, optional payment method. Does that
```

Page 155

```
 1   description indicate to participants that some of
 2   those benefit payment options may contain subsidized
 3   values, whereas other ones may not contain subsidized
 4   values?
 5              MR. BLUMENFELD: Objection.
 6              THE WITNESS: The optional
 7              payment methods described here are
 8              those that are available under the
 9              Part B plan, provided the participant
10              otherwise meets the criteria of this
11              plan. These are the options available
12              to them at the time they decide to
13              commence retirement.
14   BY MR. BRUCE:
15      Q.    You need to try and answer my
16   question, and then qualify it how you want, but to
17   try and answer my question, as I have asked you this
18   one twice, again, so can you read him back the
19   question? Try and answer the question first, and
20   then you're free to digress and add stuff.
21              MR. BLUMENFELD: Objection.
22              (The previous question is read
23              back.)
24              THE WITNESS: I see no specific
```

Page 156

```
 1              words that mirror those that you just
 2              asked about, but it does clearly
 3              describe the specific payment method
 4              and forms of payment available to a
 5              participant that meets the terms of
 6              the Part B plan at the time they
 7              decide to commence benefits.
 8   BY MR. BRUCE:
 9      Q.    And you mentioned earlier that besides
10   the information in Exhibit-26, the benefit
11   commencement package that would be given to
12   participants, and besides the information in the
13   summary plan description, that a participant could
14   call an 800 number and ask questions at the 800
15   number.
16      A.    Yes.
17      Q.    And that 800 number connects
18   participants up with where, a unit in Hartford?
19      A.    I don't know that it's in Hartford.
20   They might be connected elsewhere, but it's with
21   Cigna Retirement Investment Services.
22      Q.    And is there a question-and-answer
23   script that the operators use there to answer
24   questions?
```

Page 253

1 marked Exhibit-68 for purposes of
2 identification.)
3           - - -
4 BY MR. BRUCE:
5   Q.   Exhibit-68 is an e-mail from David
6 Durham to Denise Hill and Jerry Meyn with a copy to
7 you, and he is attaching some notes from his
8 discussions with groups of managers grades 52 to 55
9 about pension changes. How high up are managers with
10 grades 52 to 55?
11   A.   That's above a mid-level manager, but
12 not --
13   Q.   But not senior?
14   A.   But not senior managers.
15   Q.   And on the page that is stamped as
16 11936 there is a heading entitled, bad news.
17   A.   Um-hum.
18   Q.   It says, published case studies
19 positive and negative, and expect to be able to
20 support employees who will be negatively impacted
21 ASAP. Do you see that?
22   A.   Yes.
23   Q.   Do you recall any case studies that
24 were negative, publishing any negative case studies?

Page 254

1   A.   I don't recall, no.
2   Q.   Doesn't this indicate that the
3 managers were picking up that there might be some
4 cases where these changes would not be positive?
5        MR. BLUMENFELD: Objection.
6 BY MR. BRUCE:
7   Q.   And the case studies should be
8 published on both sides of the equation?
9   A.   I can only read these notes which look
10 to be, I guess David Durham's notes of these meetings
11 with managers. I can't read into them any more than
12 that.
13   Q.   They have a number of notes from
14 yourself where you have marked up -- you have marked
15 this up?
16   A.   Yes, it looks like I did back in 1997,
17 but I still do not remember it at all.
18   Q.   And do you know of any negative case
19 studies that are in the summary plan description?
20        MR. BLUMENFELD: Objection.
21        THE WITNESS: I don't know of any
22        negative case studies. If you mean by
23        case studies, examples or something, I
24        believe there are examples in there,

Page 255

1        but they are just that examples of the
2        benefits that are provided under the
3        terms of the pension plan.
4 BY MR. BRUCE:
5   Q.   So going back to the summary plan
6 description to Exhibit-3, is there anything in there
7 that you would consider to be disclosure of any
8 negative features about the cash balance plan?
9        MR. BLUMENFELD: Objection. The
10        document speaks for itself.
11        THE WITNESS: I don't know what
12        you mean by negative features. Whose
13        perception --
14 BY MR. BRUCE:
15   Q.   In your understanding, did you think
16 there was any negative features about the cash
17 balance plan?
18   A.   I guess I don't understand --
19        MR. BLUMENFELD: Objection.
20        THE WITNESS: -- the context of
21        the question, to whom would there be
22        negative features? Participants?
23 BY MR. BRUCE:
24   Q.   Were there any disadvantages of the

Page 256

1 cash balance plan compared to the prior pension plan?
2   A.   The features are different.
3        MR. BLUMENFELD: Objection.
4        THE WITNESS: However they are
5        interpreted by participants, I can't
6        speak to their views.
7 BY MR. BRUCE:
8   Q.   Well, you are in this field. Were
9 there any provisions under the cash balance plan that
10 you felt or thought might be disadvantageous compared
11 to what people had under the prior plan?
12   A.   In any --
13   Q.   You testified before there were early
14 retirement subsidies under the retirement plan that
15 weren't under the cash balance plan.
16   A.   Under certain conditions and
17 situations, yes, there were, under the old plan.
18   Q.   And there was a free 30 percent
19 survivor annuity that was under the old plan that
20 wasn't offered under the new plan, right?
21        MR. BLUMENFELD: Objection.
22        THE WITNESS: If you met the
23        criteria under the terms of that,
24        quote, 33 percent benefit, yes, you

Page 257

1          could get that.
2  BY MR. BRUCE:
3      Q.    And that wasn't -- the loss of that
4  feature is not described in the summary plan
5  description, right?
6              MR. BLUMENFELD: Objection.
7              THE WITNESS: Again, the summary
8          plan description for the 1/1/98 Part B
9          the plan doesn't talk about the
10         benefits that people can't get, if
11         that's what you mean.
12 BY MR. BRUCE:
13     Q.    And we looked at Mr. Upton's
14 calculations where his benefits would be reduced by 5
15 percent or more. Would you consider that to be a
16 disadvantage, comparing the old plan with the new
17 plan?
18             MR. BLUMENFELD: Objection.
19             THE WITNESS: Again, I didn't
20         look closely at what those
21         calculations were done or how they
22         were completed, but --
23 BY MR. BRUCE:
24     Q.    You did them?

Page 258

1      A.    A long time ago. I don't again recall
2  what assumptions were used and how future benefits
3  that you could or could not get under the plan were
4  completed specifically.
5      Q.    So is the possibility of reductions
6  like the ones that Mr. Upton was shown by you, is
7  that possibility disclosed in the summary plan
8  description?
9              MR. BLUMENFELD: Objection. The
10         document speaks for itself.
11             THE WITNESS: The document, we
12         don't show -- summary plan description
13         does not show benefits that people
14         could not get. It only describes the
15         terms of the plan and what is
16         available to somebody upon their
17         commencement of benefits.
18 BY MR. BRUCE:
19     Q.    Do you recall indications to
20 participants that benefits under the cash balance
21 plan would be comparable to the benefits under the
22 old plan?
23     A.    Calculations?
24             MR. BLUMENFELD: Objection.

Page 259

1  BY MR. BRUCE:
2      Q.    Comparable.
3      A.    I don't recall specifically, no.
4      Q.    Take a look at Exhibit-16. That was
5  described as the information kit, and I will
6  represent to you that this is the kit that was given
7  to employees who were being transferred to the cash
8  balance plan.
9      A.    Okay.
10     Q.    Look on the page that is numbered
11 Amara 452.
12     A.    Yes.
13     Q.    It says, question, will my benefits be
14 better under the new retirement plan? Do you see
15 that?
16     A.    Yes.
17     Q.    And it says, generally speaking, the
18 new retirement plan in comparison with the current
19 pension plan tends to provide larger benefits for
20 shorter service employees, and comparable benefits
21 for longer service employees. Do you see that?
22     A.    Yes.
23     Q.    And do you believe that to be an
24 accurate statement?

Page 260

1      A.    Given this was created in 1997, yes, I
2  do.
3      Q.    Given that it was in 1997, do you know
4  now that that is not always accurate?
5      A.    No, I know in '97 this was created and
6  reviewed by some experts that understood these plans,
7  including Mercer Consulting.
8      Q.    And who else reviewed it?
9      A.    The benefits communications team would
10 know better exactly who reviewed it, but certainly
11 their lawyer and our legal counsel as well, Paul
12 Gontarek.
13     Q.    Doesn't the reference to larger
14 benefits for shorter service employees really mean
15 larger benefits for younger employees --
16             MR. BLUMENFELD: Objection.
17 BY MR. BRUCE:
18     Q.    -- and comparable benefits for older
19 employees?
20             MR. BLUMENFELD: Objection.
21             THE WITNESS: It doesn't say
22         that.
23 BY MR. BRUCE:
24     Q.    You don't know how this plan works,

Page 309

1  produced quite a number of documents.
2      Q.    Have you seen any other documents
3  concerning the plan's compliance with the summary
4  plan description rules that you haven't produced?
5      A.    Over the course of my career at
6  Cigna?
7      Q.    Yes.
8      A.    About this summary plan description in
9  particular?
10     Q.    This and there was a preceding version
11 of the same summary plan description.
12     A.    I can't recall anything else.
13     Q.    Did you ever see any legal advice
14 concerning the compliance of the summary plan
15 description with ERISA requirements?
16     A.    Besides what we have already talked
17 about previously, I can't think of anything.
18     Q.    What have we previously talked about
19 besides the Drinker, Biddle?
20           MR. BLUMENFELD:  Objection.
21           THE WITNESS:  Paul Gontarek and
22              Drinker, Biddle's review of the
23              summary plan description.
24 BY MR. BRUCE:

Page 310

1      Q.    And have you ever seen any other
2  documents concerning the plan's compliance with the
3  requirement that relative values of benefit options
4  be disclosed?
5            MR. BLUMENFELD:  Objection.
6            THE WITNESS:  Nothing that I can
7               remember, no.
8  BY MR. BRUCE:
9      Q.    Do you have any other testimony to
10 offer concerning the plan's compliance with Internal
11 Revenue code regulations on disclosing relative
12 values of benefit options?
13           MR. BLUMENFELD:  Objection.
14           THE WITNESS:  I tried to answer
15              your questions, and I can't think of
16              anything else.
17 BY MR. BRUCE:
18     Q.    Have you seen -- has the plan
19 administrator, to your knowledge, ever requested any
20 legal advice on compliance with the 133 and a third
21 percent rule?
22     A.    Again, similar to my responses before,
23 I can't recall in particular requests, but the entire
24 design of the plan and the amendments would have been

Page 311

1  asked -- we asked Drinker, Biddle and Reath to review
2  them, be sure they are in compliance with any and all
3  regulations.
4      Q.    Do you recall any legal advice on
5  compliance with age discrimination ruling on rates of
6  accrual?
7      A.    No, I can't recall any more.
8      Q.    Can you recall any --
9            MR. BLUMENFELD:  Objection to the
10              extent that he's asking you about plan
11              design features before the plan was
12              finalized, and the legal advice
13              concerns the design of the plan, and
14              Cigna as the plan sponsor.  I am going
15              to instruct you not to answer that
16              question.  To the extent it actually
17              concerns something related to the
18              subject matter in the notice which is
19              compliant with 204(b)(1)(H) after
20              December 31, 1997.
21           MR. BRUCE:  You're instructing
22              him not to answer on the basis of
23              privilege?
24           MR. BLUMENFELD:  Privilege, and

Page 312

1            let me finish my statement.  To the
2            extent he is asking you about
3            compliance after December 31, 1997
4            with 204(b)(1)(H) in the capacity as
5            plan administrator, if advice was
6            given to the plan administrator in
7            connection with that prior to the
8            litigation involving Janice Amara, you
9            can answer that question.
10           THE WITNESS:  I apologize, you're
11              going to have to read that back, the
12              original question.
13           (The previous question is read
14              back.)
15           MR. BRUCE:  Legal advice on age
16              discrimination and rates of accrual.
17           MR. BLUMENFELD:  Do you remember
18              my instruction and objection?
19 BY MR. BRUCE:
20     Q.    Jeremy's instruction is you can reveal
21 legal advice in the administrative phase, but don't
22 reveal legal advice before the plan was adopted or
23 designed.
24     A.    Right.  And really it was only,