UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FILED
2005 JUL -5 P 3: 43
U.S. DISTRICT COURT
NEW HAVEN, CT

JANICE C. AMARA,
individually and on behalf of
all others similarly situated,

          Plaintiff,

vs.

CIGNA CORP. and
CIGNA PENSION PLAN,

          Defendants.

Civil. No. 3:01-CV-2361 (MRK)

July 1, 2005

**PLAINTIFF CLASS' REPLY MEMORANDUM IN SUPPORT OF
MOTION IN LIMINE ON DIRECT TESTIMONY RELEVANT TO THE
"LIKELY PREJUDICE" STANDARD IN <u>BURKE V. KODAK</u>**

Stephen R. Bruce
Suite 210
805 15th St., NW
Washington, DC 20005
(202) 371-8013

Thomas Moukawsher Ct08940
Moukawsher & Walsh, LLC
21 Oak St.
Hartford, CT 06106
(860) 278-7000

Attorneys for Plaintiff Class

## Table of Contents

Introduction .................................................................. 1

I.   ERISA is at odds with CIGNA's conclusion that it has no duty to disclose reductions ................................................................ 3

II.  CIGNA would improperly restrict *Burke v. Kodak* in three ways .................... 4

III. CIGNA misreads *Weinreb v. Hospital for Joint Diseases* ......................... 8

IV.  *Burke* and *Weinreb* both afford defendants the opportunity to rebut the presumption established by the initial showing of likely prejudice ............................ 9

V.   CIGNA's responses to the proposed in limine rulings are missing or insufficient ..... 10

    A.  The communications expert's report is relevant to likely harm from the SPD .. 10

    B.  The inference from the news articles about cash balance conversions is reasonable ........................................................... 11

    C.  *Burke*, *Burstein*, and *Teamsters v. Daniel* support the inference analogous to securities disclosure law ................................................ 12

    D.  The proffered areas of testimony from individual employees are essentially unchallenged .......................................................... 13

VI.  Even if CIGNA was correct about the need for individual testimony, such issues may be resolved separately in split proceedings (also known as Teamsters hearings) ......... 15

Conclusion ................................................................... 16

**Introduction**

This Court encourages motions for in limine rulings. *District of Connecticut Chambers Practices Manual* (2004) at 78. In limine rulings are not set in stone but are interlocutory orders to give the parties a basis for moving forward. See *United States v. Marino*, 200 F.3d 6, 11 (1st Cir. 1999), *cert. denied*, 529 U.S. 1137 (2000) (in limine rulings "normally are considered provisional, in the sense that the trial court may revisit its pretrial evidentiary rulings").

Before the Second Circuit's July 17, 2003 decision in *Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, CIGNA's position was that:

> "If this case were certified as a class action, every one of the estimated ... 25,000 class members would be called upon to present evidence, as to, inter alia, the extent, if any, of his or her detrimental reliance on the SPD."

Opp. Br. filed June 10, 2002, at 12.[1] In *Burke,* the Second Circuit held that a plaintiff's initial showing of "likely prejudice" from the deficient SPD creates a "presumption" which the Defendant can rebut by showing no actual prejudice. Even though the Second Circuit specifically rejected "detrimental reliance" in favor of likely prejudice, CIGNA's position remains the same as espoused three years ago. CIGNA still maintains that there must be individualized "testimony from every participant" as part of the Plaintiff's case-in-chief in order to establish prejudice from its deficient SPD. CIGNA asks the Court to order each member of the class to prove individual detrimental reliance rather than follow the presumption and rebuttal approach that *Burke* adopted.

While CIGNA requests "testimony from every participant," CIGNA's brief indicates that

---

[1] Judge Squatrito recognized that the Second Circuit had "not yet decided" whether an "individualized showing of detrimental reliance" was required to recover for a deficient SPD and stated that the Court could revisit class certification on this issue should the Second Circuit accept "defendant's interpretation of the law on this issue." Dec. 20, 2002 Slip Op. at 7 n.4.

1

this is to put Plaintiffs to their proofs because CIGNA simultaneously maintains that there is nothing to which those witnesses can testify to win a remedy for the deficient SPD. Even when an employee testifies that he or she "would not have returned" to CIGNA or "would have left CIGNA" had the benefit reductions and conditions on additional benefits been disclosed, CIGNA asks the Court to rule that such proof is "irrelevant." Defs. Opp. at 14-15. In the same vein, CIGNA argues that there is "nothing here that Plaintiff or any other participant could do to get a higher benefit" Defs. Opp. at 8; id. at 14 ("a participant could not choose to be in the prior plan even if he wanted to"). CIGNA would further restrict *Burke* to instances in which a Plaintiff refrains from taking some step such as "submitting an affidavit" that leads directly to a higher benefit. Defs. Opp. at 13.

On remand in *Layaou v. Xerox Corp.*, 330 F.Supp. 2d 297 (W.D.N.Y. 2004), the district court addressed CIGNA's arguments that there is nothing Plaintiffs can do to get a "higher benefit" even with disclosures and that *Burke* is limited to situations in which employees can take certain "steps" to automatically qualify for a higher benefit. *Layaou* says:

> "Defendants...contend that Layaou cannot show any prejudice because, even if the SPD had adequately explained the 'phantom account' offset, there is nothing that he could have done differently that would have resulted in his receiving a higher retirement benefit. Since the Plan itself provided for the application of the offset, according to defendants, plaintiff got exactly the benefit to which he was entitled. To adopt defendants' analysis, though, would effectively be to require plaintiff to show 'detrimental' reliance on the faulty SPD, a standard that the *Burke* court rejected. Defendants argue that 'Layaou did not fail to take any steps that were necessary to obtain more retirement benefits' because 'there were no such steps to take.' Essentially, then, defendants' argument is that the faulty SPD did not cause plaintiff to refrain from doing some act, which in turn caused his benefits to be adversely affected: in other words, that plaintiff did not detrimentally rely on the SPD concerning his benefits at Xerox. As stated, *Burke* flatly rejected such a standard...To hold that plaintiff cannot recover because the Plan provides for the offset would run counter to the *Burke* court's admonition that the consequences of an inaccurate SPD must be placed on the employer and instead

2

> "ERISA does not require that an SPD ... compare benefits under a current plan versus benefits under a prior plan that no longer applies." Defs. Opp. at 7 n.7; id. at 14 ("ERISA's SPD requirements do not require that an SPD provide information ... comparing a current plan versus a prior plan, in which the participants no longer participate (and cannot participate)").

Although this has a logical veneer, the veneer cracks when one asks how a "Plan administrator" with a fiduciary duty to participants understandably discloses modifications to a pension plan without comparing the old and new provisions, directly or indirectly. CIGNA's argument also neglects to mention that the ERISA regulations on SPDs expressly require disclosure of benefit "reductions" and other "disadvantages." See 29 C.F.R. 2520.102-2(b) and 2520.102-3(l).

## II.   CIGNA would improperly restrict *Burke v. Kodak* in three ways

CIGNA next attempts to improperly restrict *Burke*'s holding in three ways:

1.   CIGNA argues that likely prejudice "does not turn on whether a <u>reasonable participant</u> likely was prejudiced by the inadequate disclosures in the SPD." Defs. Opp. at 13 (emph. added) (adding that the "Second Circuit could have articulated a reasonable person standard for determining prejudice but it did not do so"). CIGNA ignores the indisputable point that ERISA's regulation of SPD's adopts a reasonable person standard, i.e., the SPD must be written in a manner calculated to be understood by the "average plan participant," 29 U.S.C. §1022(a). *Burke* builds on this statutory scheme by requiring a showing of "likely harm" from an SPD's inadequate disclosure to the average plan participant. The "initial showing" establishes a "presumption" that the defendant can rebut if there was no actual harm. 336 F.3d at 113-14. The Second Circuit rejected a detrimental reliance standard precisely because it "imposes an insurmountable hardship on many plaintiffs" and "hardly advances the Congressional purpose" of "insuring that employees are fully and accurately apprised of their rights." 336 F.3d at 112.

4

Using the dictionary definition, "likely" means "of such a nature or so circumstanced as to make something probable." See *Webster's Third New Int'l Dictionary*. "Likely" does not mean clear beyond a reasonable doubt or even more likely than not. *Layaou v. Xerox Corp*, supra, 330 F.Supp. 2d at 303, also finds likely prejudice based on the average participant's understanding of Xerox's SPD, noting that "[a]ll that a Plan participant would understand from the SPD" was a reduced benefit, not the extent to which it would be reduced.

2.  CIGNA further asserts that "*Burke* and *Weinreb* require each participant to prove that he personally was likely harmed as a result of the deficient SPD" Defs. Opp. at 13; see also id. at 7 (this proof "must be based on the participant's own facts and circumstances"); id. at 4 (each participant must rely on his or her "own individual life circumstances"). "Individual life circumstances" resounds in the jargon of self-improvement; in a legal context, the phrase is only found in a handful of criminal sentencing cases. It is not found anywhere in *Burke* or *Weinreb*. CIGNA's formulation is apparently intended to preclude likely prejudice unless and until each class member offers an individual testimonial that he or she would, for example, actually have saved more in a 401(k) or other savings plan if the reductions in their retirement benefits had been more adequately disclosed. Ms. Burke did not testify to whether her late husband would have actually completed a domestic partner affidavit.[3]

In *Klay v. Humana*, 382 F.3d 1241 (11th Cir. 2004), *cert. denied*, 125 S.Ct. 877 (Jan. 10, 2005), the Eleventh Circuit rejected the kind of argument that CIGNA is making. Even though

---

[3] The district court in *Burke* found "no evidence that plaintiff or her husband detrimentally relied on the plan. In fact, plaintiff testified that she never reviewed the SPD, and that her husband's decision not to list her as a domestic partner was an affirmative decision so as not to jeopardize health insurance coverage." 217 F.Supp. 2d 384, 390 (W.D.N.Y. 2002).

5

*Klay* involved the more stringent standard of "reliance," the Eleventh Circuit rejected the idea that each of 600,000 plaintiff doctors had to testify about their reliance on the defendant HMO's representations concerning reimbursement practices and held that "the circumstantial evidence that can be used to show reliance is common to the whole class. That is, the same considerations could lead a reasonable factfinder to conclude beyond a preponderance of the evidence that each individual plaintiff relied on the defendants' misrepresentations.... Consequently, while each plaintiff must prove reliance, he or she may do so through common evidence (that is, through legitimate inferences based on the nature of the alleged misrepresentations at issue)." 382 F.3d at 1259; accord *First Federal Sav. Bank v. Charter Appraisal*, 247 Conn. 597, 614, 724 A.2d 497, 506 (Conn. 1999) (direct evidence of reliance is not "crucial" when "it readily may be established by circumstantial evidence"). In *Desert Palace v. Costa*, 539 U.S. 90, 99-100 (2003), the Supreme Court affirmed that the "conventional rule" of civil litigation requires the plaintiff to prove the case by a preponderance of the evidence "using direct or circumstantial evidence." "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." Accord *Cablevision of Connecticut, L.P. v. Robert Noferi*, __F.Supp.2d __, 2005 WL 1377918, *2 (D. Conn. Apr. 25, 2005). "[A]bsent some affirmative directive in a statute," a plaintiff cannot be "restricted" in the presentation of evidence to non-circumstantial evidence. *Desert Palace*, supra, 539 U.S. at 100.

This action is certified, moreover, under Rule 23(b)(2), which covers cases where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief <u>with respect to the class as a whole</u>." Judge Squatrito found that the Plaintiff's claims "fall squarely within the

purview of this provision because they seek injunctive relief ... generally applicable to the entire class." Dec. 20, 2002 Slip Op. at 9. Rule 23(b)(2) classes are certified to <u>avoid</u> the inconsistent standards or inconsistent redress that could result if the claims are handled individually. CIGNA contends that before the class can obtain relief for a deficient SPD, plaintiffs' counsel must bring them all before the court to testify as part of the case-in-chief. However, the "impracticability" of doing this is precisely why Rule 23 class actions were established. Rule 23 allows for certification for a "class so numerous as to make it impracticable to bring them all before the court." Fed.R.Civ.P.23(a) Advisory Committee Notes (1937). See also R. 23(a) (prerequisite of class action is that "class is so numerous that joinder of all members is impracticable").

The disingenuousness of Defendants' position is revealed by recent responses to document requests. When Plaintiff asked for information from the Defendants about the 24,000 class members, Defendants refused to cooperate. In contrast to CIGNA's opposition to this motion, in responses to document requests which were served <u>only two days later</u>, CIGNA refused to produce documents on the ground that the information requested is "irrelevant to the extent Plaintiff seeks information about every member of the class." Ex. 16, Resp. to Request No. 4 and 6.[4] Without irony, CIGNA explained:

> "The purpose of a class action is to enable the Court to decide the relevant issues without having to consider the facts and circumstances of each individual participant." Id.

3.   Finally, CIGNA tries to limit the initial demonstrations of likely prejudice to situations where a participant must take certain steps like "submitting an affidavit [or] filing a

---

[4] CIGNA also objected to producing a class list, contending that it should be able to limit its production to "information regarding exemplar participants." Ex. 16, Response to Req. No. 4.

7

lawsuit." Defs. Opp. at 8. The Second Circuit did not restrict proof in this manner. If it had, a second standard of proof would be necessary for all other SPD cases. Nor has any court interpreted *Burke* in this way. See, e.g., *Layaou*, supra, 330 F.Supp.2d at 304 (finding likely harm where "conspicuous absence of any reference to or explanation of the phantom account offset" "would likely have affected plaintiff's financial planning for his upcoming retirement").

### III.   CIGNA misreads *Weinreb v. Hospital for Joint Diseases*

CIGNA's position rests on a pivotal misreading of the Second Circuit's 2005 decision in *Weinreb v. Hospital for Joint Diseases*, 404 F.3d 167. CIGNA contends that the Second Circuit "<u>never reached the issue of actual prejudice</u>" but instead held that "individualized oral and written disclosures ... precluded the participant from proving" likely prejudice. Defs. Opp. at 5-6 (emph. added). Proceeding with that premise, CIGNA argues that the Plaintiff class has the burden of both addressing the issues of likely prejudice and actual prejudice, rather than leaving actual prejudice as the Defendants' burden on rebuttal.

CIGNA's supporting citation says "see 404 F.3d at 172." Defs. Opp. at 6. However, this page shows that the Second Circuit recognized that the defendant in *Weinreb* could rebut by showing that "any error" from its failure to distribute the SPD was "necessarily harmless." 404 F.3d at 172. The Second Circuit cited *Burke* for the proposition that the defendant can "rebut the presumption of likely prejudice by showing that plaintiff was aware of the requirement." The Second Circuit reviewed the evidence and concluded that "we agree with the district court that the several attempts that the Hospital made to secure Dr. Weinreb's completion of the enrollment form provided <u>actual notice</u>..." Id. By moving the Hospital's rebuttal of no actual prejudice into the Plaintiff's initial showing, Defendants would transform the likely prejudice "presumption"

8

into a test under which Plaintiff has the burden of showing both likely and actual prejudice. CIGNA's reading would leave no place for the rebuttal that *Burke* and *Weinreb* specifically contemplate. Under CIGNA's scheme, Kenneth Burke's domestic partner, Sally Burke, would have to prove not just "likely" prejudice, but also that Mr. Burke actually would have completed the affidavit. Kodak would be left with nothing to prove because the Plaintiff's initial showing would have been expanded to include disproof of potential rebuttals.

## IV. *Burke* and *Weinreb* both afford Defendants the opportunity to rebut the presumption established by the initial showing of likely prejudice

Defendants indicate that they are generally aware of the type of evidence they need to present to rebut the presumption resulting from the initial showing of likely prejudice. For example, they first attempt to rebut across-the-board, by arguing that "there is nothing here that Plaintiff or any other participant could do." Defs. Opp. at 8 and 14. Defendants also try to rebut on an individual basis, asserting that "under these circumstances [the chief actuary's statement to Janice Amara that she'd be sick if she knew the wear-away she was under], Plaintiff could not have suffered any prejudice and, as to her, the Plan's terms should control." Defs. Opp. at 13 n.13. Defendants are, however, undoubtedly aware that (1) this kind of individual "rebuttal" is unavailable for 99% of the class members, and (2) this is actually not a rebuttal of the prejudice to Ms. Amara, but confirmation of it.[5]

Presuming the Court does not direct the Plaintiff class to include 24,000 witnesses in the Class' case-in-chief, does CIGNA plan to offer individual testimony to rebut the evidence of

---

[5] CIGNA indirectly concedes likely prejudice at the critical time in September 1998 when Ms. Amara decided to return to CIGNA. Ms. Amara's claim of likely prejudice did not end when Mark Lynch told her in September 2000 that she'd "be sick if she knew" because she still did not have the benefits or the required disclosures. Ms. Amara contacted her attorney in March 2001.

9

likely prejudice that Plaintiff proffers in the motion in limine? CIGNA's failure to take any discovery along this line suggests that CIGNA is _not_ preparing to move forward on this basis. If Defendants' rebuttal is based on individual circumstances, Defendants clearly have the burden of presenting those circumstances. If Defendants do not intend to do this at the bench trial but ultimately intend to ask the Court to bifurcate, a motion should already have been filed.

### V. CIGNA's responses to the proposed in limine rulings are missing or insufficient

The Plaintiff Class's memorandum specifically states that it "proposes the following evidentiary rulings" and then enumerates the points that the Court is asked to adopt. Plf. Mem. at 16. CIGNA does not respond to most of the points that Plaintiff proposes. CIGNA fails to dispute Plaintiff's proposed rulings on the need to disclose "material" modifications in benefits. With respect to the "likely harm" when employees are unable to make "well-informed employment and retirement decisions," CIGNA offers nothing to contest the proposed rulings. CIGNA also does not dispute that an inference may be drawn from its deliberate decision "NOT" to offer comparisons of benefits.

While CIGNA does address the proposed ruling on surveys, it misunderstands Plaintiff's point: Plaintiff's proposed ruling indicates that "a statistical survey is _not_ necessary." Mem. at 19. CIGNA's response that Plaintiff's brief does not "identif[y] any particular survey that he intends to introduce into evidence," Defs. Opp. at 12, is a non sequitur.

#### A. The communications expert's report is relevant to likely harm from the SPD

After attempting to defer a response to the deficiency of the SPD (while concurrently defending its failure to disclose), CIGNA states that it later "intend[s] to move to preclude Professor Stratman from testifying." Defs. Opp. at 10 n.11. No indication is given of "when"

10

CIGNA will so move (or why it did not move now). This Court's *Chambers Practices*, supra at 78, state that challenges to experts are to be handled with any dispositive motions. Accordingly, any challenge to Plaintiff's experts should have been listed as a preliminary motion in the Joint Scheduling Order; it cannot simply be made later.

Plaintiff has already shown that the deficiencies in the SPD present a mixed question of law and fact to which Professor Stratman's expertise in the field of communications may be helpful to the Court. Plf. Mem. at 16. Professor Stratman's report offers the analysis of a communications expert and does not attempt to intrude on the Court's legal determinations. See Ex. 10 to Plf. Mem. CIGNA fails to rebut the precedents on the use of expert testimony to address complex issues. More specifically, CIGNA does not address the cases that use expert testimony on the understandability of written communications. Plf. Mem. at 17-18. Accordingly, Professor Stratman's report should not be susceptible to a later exclusionary challenge. Of course, the weight the Court gives to his findings remains to be determined at trial.

**B.    The inference from the news articles about cash balance conversions is reasonable**

CIGNA attempts to dispose of the proffered ruling on the newspaper articles about the effects of employee complaints on cash balance conversions by arguing that because the articles do not specifically deal with CIGNA, they have "no relevance" at all. Defs. Opp. at 15. There is, of course, no such evidentiary requirement. Relevance is the "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Here, the articles show that employee complaints have had a significant effect on cash balance conversions. CIGNA can rebut this by

showing that it is not true or that CIGNA is uniquely impervious to employee complaints.

When the Court examines the evidence, it will see that CIGNA adopted the "grandfather" provisions which "protected" older, longer-service employees from transfer to the cash balance plan because it was "cognizant of negative publicity directed at some firms," Ex. 17, and that CIGNA made subsequent changes because of "problems with rehiring" employees who "lose substantial amounts" from the cash balance conversion. Ex. 13 (to Plf. Mem.). Plaintiff will offer extensive documentary evidence on CIGNA's sensitivity to the bad press on other cash balance conversions and its concern that such articles would produce "significant rumblings at CIGNA." Ex. 18 at D14160; id. at D14920 ("Our goal is to take all necessary steps to stay out of the paper").[6] An inference that employee complaints might have an effect is quite reasonable.

### C. *Burke, Burstein* and *Teamsters v. Daniel* support the inference analogous to securities disclosure law

Defendants mischaracterize Plaintiff's argument about the presumptions used in cases involving disclosures about securities. CIGNA asserts that "Plaintiff argues, in reliance on securities case law, that she is automatically entitled to a presumption of likely harm in this case." Defs. Opp. at 6 (citing Pl. Mem. at 19-20). The Plaintiff Class did not argue that securities cases dictate a presumption, but rather that *Burke* is consistent with the cases on securities disclosures when material non-disclosures affect the employees' ability to make "well-informed employment and retirement decisions." See Plf. Mem. at 10 and 19-20.

CIGNA tries to shore up its argument by stating that "courts have universally rejected application of any presumption of prejudice (or reliance) under ERISA." Defs. Opp. at 6. *Burke*

---

[6] Indeed, D14916-21 in Ex. 18 all concern the first news article in Plf. Ex. 15, which CIGNA now tells this Court has "no relevance" to this case at all. Defs. Opp. at 15.

is, however, precisely such a case. Because detrimental reliance was effectively blocking relief for deficient SPDs, *Burke* established a "presumption" based on an initial showing of likely harm. 336 F.3d at 113-14. It is improper for CIGNA to rely on district court decisions from the Eastern and Middle Districts of Pennsylvania after *Burke* and the Third Circuit's decision in *Burstein v. Allegheny*. Like *Burke*, *Burstein* adopts a presumption parallel to the securities disclosure cases. See 334 F.3d 365, 381-82 (2003).[7] *Burstein* clearly supersedes the decisions on which Defendants rely–neither of which concerned inadequate disclosures in an SPD in the first place.[8] CIGNA also offers no response to the Supreme Court's conclusion in *Teamsters v. Daniel* that "whatever benefits employees might derive from the effect of the Securities Acts are now provided in more definite form through ERISA." 439 U.S. 551, 570 (1979).

### D. The proffered areas of testimony from individual employees are essentially unchallenged

With respect to testimony from individual employees, Plaintiff offers nine factors that this Court may consider. Defendants' reply to these factors is extremely limited. In response to "the extent to which employees were aware of the magnitude of the benefit reductions," Mem. at 21, Defendants simply state that the "mere fact that a participant may have misunderstood the way his benefits were calculated ... is, without more, insufficient to prove likely prejudice" Defs.' Opp. at 14. see also id. at 3 ("mere fact that an SPD describes a better benefit than exists in the plan–or a benefit without certain conditions required by the plan–is not sufficient to state a claim based on an SPD. "Otherwise," Defendants contend, the likely prejudice test would be

---

[7] CIGNA is based in the Third Circuit and its Pension Plan is administered from there.

[8] CIGNA also cites *Hudson v. Delta Air Lines,* 90 F.3d 451 (11th Cir. 1996), which does not mention a presumption of reliance and does not involve a deficient SPD.

"superfluous"). In essence, Defendants concede that this is a factor, but argue that it is insufficient standing alone.[9]

Defendants are silent on the relevance of most of Plaintiffs' other proffered testimony on likely prejudice, including the extent to which employees could have complained or bargained further with full disclosure and the extent to which disclosure of the reductions affected decisions about financial planning, such as decisions about 401(k) contributions and time of retirement. See *Layaou*, supra, 330 F.Supp. 2d at 304 ("mistaken belief" that benefits were higher than they were "would likely have affected plaintiff's financial planning for his upcoming retirement"). Indeed, CIGNA's opposition offers no response to the impact of its inadequate disclosures on the employees' ability to make "well-informed employment and retirement decisions."

CIGNA argues that the proposed evidence on leaving CIGNA or not returning is "irrelevant" because then "they would not have been entitled to any benefits." Defs. Opp. at 15. This is not only nonsensical logically, but it is wrong because *Burke* does not restrict likely harm in this manner. CIGNA acts as if the only harm a deficient disclosure can produce is a failure to submit a domestic partner affidavit parallel to that in *Burke*. Obviously, harm is broader than that; it can include complaints to HR, decisions about returning to or leaving the company, saving more for retirement, reducing expenses, working longer, etc.

While attempting to limit prejudice to the precise facts at issue in *Burke*, CIGNA completely fails to address the situations in which employees could have selected benefit options

---

[9] CIGNA contends that "Plaintiff offers no explanation as to how such testimony [on not being able to compare benefits] might be relevant under the likely prejudice standard." Defs. Opp. at 14. Actually Plaintiff both explained and illustrated how the inability to compare benefits inhibits well-informed decision-making about employment and retirement, e.g., in financial planning and savings decisions. Plf. Mem. at 21-22.

with higher values with adequate disclosures. In *Burke*, all a domestic partner had to do was file an affidavit. Here, with adequate disclosures about the relative value of benefit options, participants could in many instances have selected more valuable options.

VI. **Even if CIGNA was correct about the need for individual testimony, such issues can be resolved separately in split proceedings (also known as Teamsters hearings)**

As indicated above, CIGNA is trying again (as it did in opposing leave to amend) to "grind" this proceeding "to a halt" by insisting that each class member must testify individually to obtain relief for a deficient SPD. While it is not unusual for the "spectre of unmanageability" to be raised in an effort to defeat classwide resolution, this does not mean a defendant can wield the impracticability of joinder as a club against relief. See *In re Memorex Sec. Litig.*, 61 FRD 88, 103 (N.D. Cal. 1993) (to do so "would encourage corporations to commit grand acts of fraud instead of small ones with the thought of raising the spectre of unmanageability to defeat the class action"); *Forbush v. J.C. Penney Pension Plan*, 994 F.2d 1101, 1106 (5th Cir. 1993) ("necessity for even somewhat complex individual calculations does not supply a basis for concluding that Forbush has not met the commonality requirement").

If the Court were to accept CIGNA's position that each class member must testify to establish likely prejudice, there is a long history of "split proceedings," especially in Rule 23(b)(3) class actions where there are common legal issues, but also individual claims for damages or individual defenses. *Newberg on Class Actions* (Third ed.), §§9.53-.55, 9.58-.59, 9.62-.64, 9.67, 9.70. For example, after a finding of a pattern or practice of discrimination, "Teamsters hearings" can be conducted to find actual victims of discriminatory policies. See, e.g., *Teamsters v. United States*, 431 U.S. 324, 372 (1977); *Hartman v. Duffey*, 678 F.Supp. 312,

332-35 (D.D.C. 1988). The *Manual for Complex Litigation* (Fourth ed.) discusses how individual damages claims may be resolved in a second phase of trial, after common issues are decided. Sections 21.5 and 32.45.

*In re Visa Check/Mastermoney Antitrust Litig. v. Visa*, 280 F.3d 124, 140 (2d Cir. 2001), rejected Defendants' argument that the "calculation of individualized damages makes this case unmanageable as a class action." The Second Circuit held that "There are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action," including "bifurcating liability and damage trials," "appointing a magistrate judge or special master to preside over individual damages proceedings" or "decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages." Id. at 141; accord *Klay v. Humana*, supra, 382 F.3d at 1260 and 1269-73 (individualized inquiries can be handled through use of the HMO's records; "it is ridiculous to expect 600,000 doctors across the nation to repeatedly prove" the same facts).

**Conclusion**

The Plaintiff class respectfully asks for an in limine ruling that "likely prejudice" from CIGNA's deficient SPD can be established as outlined in Plaintiff's memo.

Dated: July 1, 2005

Respectfully submitted,

By: _____
Thomas G. Moukawsher ct08940
Ian O. Smith ct24135
Moukawsher & Walsh, LLC
21 Oak Street
Hartford, CT 06106
(860) 278-7000

16

tmoukawsher@mwlawgroup.com

Stephen R. Bruce ct23534 (pro hac vice)
Allison C. Caalim
Suite 210
805 15th St., NW
Washington, DC 20005
(202) 371-8013
stephen.bruce@prodigy.net

## CERTIFICATION

I certify that a copy of the foregoing PLAINTIFF CLASS' REPLY MEMORANDUM IN SUPPORT OF MOTION IN LIMINE ON DIRECT TESTIMONY RELEVANT TO THE "LIKELY PREJUDICE" STANDARD IN BURKE V. KODAK has been mailed on this date by FedEx next day delivery to counsel for the Defendants at:

Joseph J. Costello
Jeremy P. Blumenfeld
Morgan, Lewis & Bockius
1701 Market St.
Philadelphia, PA 19103-2921

Elizabeth A. Fowler
Erin O'Brien Choquette
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103-3597
(860) 275-8200

Dated this 1st day of July, 2005.

_____
Thomas G. Moukawsher