### AGREEMENT AND RELEASE

This Agreement and Release ("Agreement") is dated April 22, 2004 ("Today"). It is between Annette S. Glanz, 36 Ashford Road, Ashford, CT 06278 ("you") and Connecticut General Life Insurance Company, a Connecticut corporation ("the Company").

You and the Company intend to be legally bound by the Agreement, and are entering into it in reliance on the promises made to each other in the Agreement. Under the Agreement, your employment will end, and you and the Company agree to settle all issues concerning your employment and termination of employment. The Company is eliminating your job and will pay you certain benefits under the CIGNA Severance Pay Plan ("the Plan"). The Plan is described in the Severance Pay Summary Plan Description and can be found on the CIGNA Central Intranet site. A copy of the Severance Pay Summary Plan Description is attached.

1.  **Your Termination Date.** The Company gave you written notice that your job is being eliminated, and your employment will end on June 18, 2004 ("Termination Date"), unless you find or otherwise receive another job with a CIGNA[1] company before your Termination Date. If you file a claim for unemployment compensation benefits because you do not yet have another job as of your Termination Date, the Company agrees that your unemployment will be because the Company did not have any work for you.

2.  **Pay and Benefits until Termination Date.**

    a.  From Today until your Termination Date, the Company will pay you your current regular salary and you may continue to participate in the Company's employee benefits programs.

    b.  Within 30 days after your Termination Date, the Company will pay you (less applicable withholding) for all the regular vacation days and personal holidays you earned, but have not used. That amount will be reduced by the value of any vacation days and personal holidays you take after Today. If you have taken more vacation and personal holidays than you have earned, you agree that these days can be deducted from your severance pay described in paragraph 3a. You agree that you have no right to any more vacation days or personal holidays.

    c.  If you bought or sold vacation days under the Signature Benefits Program, the regular provisions of that program will determine whether you receive an additional payment, or have an amount deducted from your pay, to make up any difference between the days you bought or sold and the days you actually used.

---

[1] The terms "CIGNA", "CIGNA Company" and "CIGNA Companies" as used throughout this Agreement and Release means CIGNA Corporation and/or its subsidiaries. CIGNA Corporation owns the subsidiaries for which most employees work. The term "the Company" means the particular CIGNA Company that employs you.

1

    d.    If you die before the Termination Date in paragraph 1, the date you die will automatically become your new Termination Date, and no salary payments will be made beyond your new Termination Date. However, if you die before receiving all other payments due to you under the Agreement, the remaining amounts will be paid in a lump sum within ninety (90) days after your death to your surviving spouse. If you have no surviving spouse, the payment will be made to your estate.

3.    **Your Severance Benefits.**    In exchange for (i) voluntarily signing and returning this Agreement to the Company within the required timeframe after you receive it and (ii) satisfying all of the eligibility criteria listed in the Plan, the Company will provide you with severance benefits and other benefits as described in this Agreement, subject to all applicable withholding and other deductions. Severance benefits will be paid by the Company or an affiliate.

    a.    You are eligible for severance benefits under Schedule I of the Plan. Your Basic Severance Pay will total $46,009.62 (less applicable withholding). Unless you make the lump sum election below:

- Basic Severance Pay will be paid to you in bi-weekly installments over a total period of 30 weeks beginning with the first regular payday after your Termination Date. (The period you receive these bi-weekly payment is your "Severance Period".)
- Your Signature Benefits Basic Life Insurance coverage will continue at the Company's expense during the Severance Period.
- Under the provisions of federal law (COBRA), you may elect to continue your Company group health care coverage after your Termination Date. If you elect COBRA coverage, the Company will subsidize the COBRA rates you pay during the Severance Period (that is, you will pay the same rates as if you continued to be employed) and will not subsidize the rates after the Severance Period. You will be billed monthly.

**Lump Sum Election:**

_____
Initial for
lump sum

If you want your Basic Severance Pay paid in a lump sum within 30 days after your Termination Date, you must sign your initials on the line to the left. If you elect a lump sum payment:

- Your Signature Benefits Basic Life Insurance coverage will expire at the end of the month in which your Termination Date occurs.
- If you elect COBRA coverage, the Company will not subsidize the COBRA rates you pay. You will be billed monthly.

    b.    You may convert certain group benefits coverages to individual coverages under the terms of the Signature Benefits program. You will not be eligible for any Signature Benefits credits after your Termination Date.

2

c. The Company agrees to pay you, within 30 calendar days after your Termination Date, a lump sum of $375.00 (less applicable withholding) which represents a Bonus Severance Payment as described in the Plan.

d. If you desire, outplacement assistance will be provided. Further details will be provided by your Human Resources Representative, upon your request. Your eligibility for benefits under the Severance Pay Plan will not be affected if you decline outplacement assistance.

e. Should you be offered and refuse a Suitable Position (as defined in the Plan), or refuse to interview for one, your eligibility under the Plan will cease immediately.

f. Any benefits you may have earned under the CIGNA Pension and 401(k) Plans will be payable to you under the provisions of those Plans.

g. If you find or otherwise receive another job with a CIGNA Company before your Termination Date, or if the Plan Administrator determines that you are not eligible to receive any severance pay under the terms of the Plan, then this Agreement shall no longer be in effect.

h. If you find or otherwise receive another job with a CIGNA Company after your Termination Date, then the amount of severance pay which you are entitled to receive or keep will be determined by the terms of the Plan.

i. The Company will pay you no other money except as described in this Agreement.

4. **Your Promises to the Company**

a. You represent to the Company that, except as you have disclosed to the Company in writing, you have not previously received any severance payments under the Plan.

You understand and agree that, not withstanding anything else in this Agreement, (a) Plan provisions determine the amount of severance pay you are eligible to receive and (b) the Company has the right to recover from you any amounts paid to you in excess of what you are entitled to receive under the Plan.

b. Before your Termination Date, you will return to the Company all CIGNA Company property that you now have (for example: identification card, access card, keys, company car, computer, company manuals, office equipment, records and files).

3

c. You will hold all of the trade secrets, confidential information and proprietary materials belonging to the CIGNA Companies in the strictest confidence. You will not use, disclose or reveal them to anyone.

d. For the 12-month period starting on your Termination Date, you will not solicit, try to hire, hire, refer for hire, or assist in hiring any CIGNA Company employee who is employed Today, if you have had any contact or involvement with that person during the 12-month period ending Today.

e. For the 12-month period starting on your Termination Date, you will not do business with any existing CIGNA Company customer in any way that would compete with the Company, if you have had any business contact or involvement with that customer during the 12-month period ending Today.

5. **Your Release of Claims**

a. You agree that you will not file (or ask or allow anyone to file on your behalf), any charge, complaint, claim or lawsuit of any kind in connection with any claim released by this Agreement. This provision shall not apply, however, to any non-waivable charges or claims brought before any governmental agency. With respect to any such non-waivable claims, you agree to waive your right (if any) to any monetary or other recovery should any governmental agency or other third party pursue any claims on your behalf, either individually, or as part of any collective action. Nothing herein shall preclude any claim you may file alleging that your waiver of claims under the Age Discrimination in Employment Act of 1967 ("ADEA") was not knowing or voluntary.

b. You acknowledge full and complete satisfaction of, and release and discharge all Released Persons from, any Claims.

c. You are giving this release for yourself as well as for your executors, administrators, heirs and assigns.

d. "Released Persons" are the Company, its predecessors, successors, parents, subsidiaries and affiliates, and all of their directors, officers, agents and employees.

e. "Claims" are any and all claims, demands and causes of action of whatever kind, including any claims for attorney's fees, that you now have, or at any time had, against any Released Persons, but only to the extent they arise out of or relate in any way to your employment or termination of employment with the Company and its affiliates. "Claims" includes things you may not even know about or suspect as well as any claims you may have under ADEA.

4

f.   "Claims" does not include (and you are not releasing):

(1)   any claims against the Company for promises it is making to you in this Agreement;

(2)   any claims for benefits under any retirement, savings, or other employee benefit programs (but your Release does cover any claims you may make for severance benefits beyond those described or referred to in this Agreement);

(3)   any claims covered by workers compensation laws; and

(4)   any claims that you did not knowingly and voluntarily waive your Claims under ADEA.

6. **Confidentiality.** The terms of this agreement are confidential. You agree not to disclose in any way this Agreement or any of its terms to any person other than your spouse, lawyer or accountant.

7. **No Admission of Wrongdoing.** Just because the Company is entering into this Agreement and paying you money, the Company is not admitting that it (or any other Released Person) has done anything wrong or violated any law, rule, order, policy, procedure, or contract, express or implied, or otherwise incurred any other liability.

8. **Applicable Law.** This Agreement is being made in the state in which you work. It will be interpreted, enforced and governed under the laws of that state.

9. **Arbitration.** Without in any way affecting the release in paragraph 5, any and all disagreements, disputes or claims listed below will be resolved exclusively by arbitration in the city where you work Today, or if there is no American Arbitration Association ("AAA") office in the city where you work, in the nearest city with an AAA office. Arbitration will be conducted under the Employment Dispute Resolution Rules of the American Arbitration Association, as modified by the Company. Copies of the Arbitration Policy and Rules and Procedures can be obtained from your Human Resources Representative. A legal judgment based upon the Arbitrator's award may be entered in any court having jurisdiction over the matter. You and the Company agree to arbitrate anything:

a.   related in any way to the validity of this Agreement or how it is interpreted or implemented (including the validity of your ADEA Waiver); and

b.   that involves any dispute about your candidacy for employment, employment or termination of employment, including any disputes arising under local, state or federal statutory or common law (if for any reason your release and waiver under paragraph 5 is found to be unenforceable or inapplicable).

10. **Final and Entire Agreement.** This Agreement is intended to be the complete, final and entire Agreement between you and the Company. It fully replaces all earlier agreements or understandings. However, it does not replace the terms of any:

    a. CIGNA stock or option grant you might have received or the terms of any employee benefit plan; or

    b. other agreement you might have entered into with the Company that requires you to pay back money to the Company, or that authorizes the Company to deduct money from your pay, when your employment terminates or at any other time.

Neither you nor the Company has relied upon any other statement, agreement or contract, written or oral, in deciding to enter into this Agreement. Any amendment to this Agreement must be in writing and signed by both you and the Company.

11. **Your Understanding.** By signing this Agreement, you admit and agree that:

    a. you have read the Agreement;

    b. you understand it is legally binding, and you were advised to review it with a lawyer of your choice;

    c. you have had (or have had the opportunity to take) ten (10) calendar days to discuss it with a lawyer of your choice before signing it and, if you sign before the end of that period, you do so of your own free will and with the full knowledge that you could have taken the full period;

    d. you realize and understand that the release covers all claims, demands, and causes of action against the Company and any Released Persons (but does not apply to claims described in paragraph 5f), including claims under the Age Discrimination in Employment Act of 1967, whether or not you know or suspect them to exist at the present time; and

    e. you understand the terms of the Agreement, you are signing voluntarily and with the full understanding of its consequences, and you have not been forced or coerced in any way.

12. **If Legal Action Is Started.** You understand and agree that the Company's main reason for entering into this Agreement is to avoid lawsuits and other litigation. Therefore, if any legal action covered by paragraph 5 or 9 (except claims related to the validity of this Agreement or how it is interpreted or implemented, or claims related to whether your release of ADEA claims was knowing and voluntary) is started by you (or by someone else on your behalf) against any Released Person, you agree to pay back to the Company within thirty (30) days of the start of that legal action all the money you receive under paragraphs 2 and 3 above, as well as any other thing of value you receive under this Agreement. You also agree

6

to pay the Company any costs and attorneys' fees it incurs in that action at the conclusion of the action. However, if you claim that your release of ADEA claims was not knowing and voluntary, the Company reserves its right to recover from you its attorneys' fees and/or costs in defending that claim, at the conclusion of that action.

If, in any legal action or arbitration, the release in paragraph 5 is found to be unenforceable for any reason, then this Agreement (except for paragraph 9) shall be null and void from Today on, and any money paid by the Company to you after Today under paragraphs 2 and 3 and not yet returned to the Company (including the value of any Company-subsidy for group health care and life insurance coverages provided under paragraphs 2 and 3), will be treated as an overpayment by the Company, and you will have to repay it to the Company with interest, compounded annually at the rate of 6%. However, the repayment provision in this paragraph does not apply to legal actions in which you claim that your release of ADEA claims was not knowing and voluntary.

This paragraph does not apply to any thing of value given to you for which you actually performed services and which by law you are entitled to receive.

This Agreement will not be effective or binding on either you or the Company until both have signed it. This Agreement was signed on the dates indicated:

6/8/04
Date

*Annette S. Glanz*

6/9/04
Date

George McNamara
*Vice President, Systems Financial*

On Behalf of
Connecticut General Life Insurance Company

7