UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

Janice C. Amara, Gisela R. Broderick,⠀⠀⠀:
individually and on behalf of⠀⠀⠀⠀⠀⠀⠀:
all others similarly situated,⠀⠀⠀⠀⠀⠀⠀:
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:
⠀⠀⠀⠀⠀⠀⠀Plaintiffs,⠀⠀⠀:
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:
⠀⠀⠀vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀:⠀⠀⠀Civil. No. 3:01-CV-2361 (MRK)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:
CIGNA Corp. and⠀⠀⠀⠀⠀⠀⠀⠀:⠀⠀⠀⠀⠀February 2, 2006
CIGNA Pension Plan,⠀⠀⠀⠀⠀⠀:
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:
⠀⠀⠀⠀⠀⠀⠀Defendants.⠀⠀:

**PLAINTIFF CLASS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO COMPEL RESPONSES TO DISCOVERY AND FOR SANCTIONS**

Stephen R. Bruce Ct 23534
Suite 210
805 15th St., NW
Washington, DC 20005
(202) 371-8013

Thomas Moukawsher Ct 08940
Moukawsher & Walsh, LLC
21 Oak Street
Hartford, CT 06106
(860) 287-7000

Attorneys for the Plaintiff Class

**Table of Contents**

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    Discovery under Rule 26(b) Is "Very Broad"; Objections and Responses Must
      Be "Specific" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.   Defendants Cannot Refuse to Produce Documents on the Basis of "Generic,
      Non-Specific Objections" of Irrelevance, Overbreadth or Burdensomeness . . . . . . . . . . 4

III.  Defendants' Responses to Plaintiffs' Interrogatories Do Not Satisfy the Requirement
      for Answers "In Good Faith and With Sufficient Detail" . . . . . . . . . . . . . . . . . . . . . . . 13

IV.   CIGNA's Privilege Objections Cannot Be Sustained . . . . . . . . . . . . . . . . . . . . . . . . . . 16

V.    Sanctions Should Be Ordered Under Rule 37 and 28 U.S.C. §1927 . . . . . . . . . . . . . . . 18

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

i

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Ahern v. Trans Union LLC*, 2002 WL 32114492 (D. Conn. Oct. 23, 2002) ................... 16

*Apex Oil Co. v. Belcher Co.*, 855 F.2d 1009 (2d Cir. 1988) ..................................... 18, 20

*Coudert v. Janney Montgomery Scott*, 2004 WL 2381552 (D.Conn. Oct. 7, 2004) ......... 5

*Dollar v. Long Manufacturing*, 561 F.2d 613 (5th Cir. 1977), *cert. denied*, 435 U.S.
    996 (1978) ................................................................................................ 13

*Flynn v. Goldman, Sachs & Co.*, 1991 WL 238186 (S.D.N.Y. 1991) ............................ 10

*Goldwater v. Alston and Bird*, 116 F.R.D. 342 (S.D.Ill. 1987) ...................................... 12

*Grossman v. Schwarz*, 125 F.R.D. 376 (S.D.N.Y. 1989) ................................................ 17

*Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682 (2d Cir. 1989) ........................................... 19

*J-Square Marketing Inc. v. Sipex Corp.*, 1999 WL 977742 (D.Conn. Oct. 20, 1999) ..... 20

*King-Hardy v. Bloomfield Board of Education*, 2002 U.S. Dist. LEXIS 27384
    (D. Conn. Jan. 21, 2002) ........................................................................... 3

*Kramer v. Arms*, 1997 WL 85830 (2d Cir. 1997) .......................................................... 19

*Lamoureux v. Genesis Pharm. Services*, 226 F.R.D. 154 (D. Conn. Jan. 28, 2004) ....... 13

*Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106 (2d Cir. 1992) ... 3

*Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 179 F.R.D. 77
    (D.Conn. 1998) ......................................................................................... 19

*In re Master Key Antitrust Litigation*, 53 F.R.D. 87 (D.Conn. 1971) ............................ 14

*New Colt Holding Corp. v. RJG Holdings of Florida*, 2003 WL 22327167
    (D.Conn. June 16, 2003) ..................................................................... 10, 14, 17

*Obiajulu v. City of Rochester*, 166 F.R.D. 293 (W.D.N.Y. 1996) ................................... 3

*Omega Engineering, Inc. v. Omega*, 2001 WL 173765 (D.Conn. Feb. 6, 2001) ......... 3, 17

*Oppenhiemer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) .......................................... 3, 12

*In re PCH Associates*, 949 F.2d 585 (2d Cir. 1991) ........................................................ 2

*In re PE Corp Securities Litigation*, 221 F.R.D. 20 (D.Conn. 2003) ............................. 10

*In re Priceline.Com Inc. Securities Litigation*, 2005 WL 1366450 (D.Conn.
    June 7, 2005) ................................................................................ 3, 11, 16

*Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253 (2d Cir. 1999) .............................. 19

*Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002) .. 19

*Reyes v. Carnival Corp.*, 2005 U.S. Dist. LEXIS 11948 (S.D. Fl. May 25, 2005) .......... 13

*Ruran v. Beth El Temple*, 226 F.R.D. 165 (D.Conn. Feb. 23, 2005) ................................ 4

*Strougo v. BEA Associates*, 199 F.R.D. 515 (S.D.N.Y. 2001) ........................................ 20

*Wahad v. FBI*, 813 F.Supp. 224 (S.D.N.Y. 1993) ......................................................... 20

*Weiss v. Chrysler Motors Corp.*, 515 F.2d 449 (2d Cir. 1975) ....................................... 14

*Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003) ................................ 12

## FEDERAL RULES AND STATUTES

28 U.S.C. § 1927 .............................................................................................................. 20

Fed. R. Civ. P. 26 ......................................................................................................... 3-4, 17

Fed. R. Civ. P. 33 ............................................................................................................. 16

Fed. R. Civ. P. 37 ............................................................................................................. 18

## MISCELLANEOUS

*Manual for Complex Litigation* (Fourth) ........................................................................ 12

Wright & Miller, *Federal Practice and Procedure* .............................................. 5, 13, 16

**Introduction**

Plaintiffs move to compel responses by CIGNA to certain of Plaintiffs' Second and Third

Requests for Production of Documents and First Set of Interrogatories.[1] Under the standard 30-

day time period, responses to these discovery requests were due June 16, 2005 and June 30,

2005, respectively. CIGNA initially responded to the Second Requests for Production on June

16, 2002, limiting practically all of the responses to the "First Amended Complaint," and further

caveating the responses by relying on irrelevance, overbreadth and burdensomeness objections

and then offering no documents at all, or only incomplete production, subject to those objections.

After this Court granted Plaintiff leave to amend the Complaint on June 21, 2005 (dkt#123),

CIGNA served supplemental responses to the Second Requests along with responses to the Third

Request for Production and First Set of Interrogatories on July 8, 2005. CIGNA's supplemental

responses dropped the "First Amended Complaint" objection, but contained the same non-

specific objections, with the promise that some documents would be produced at a later date in

response to approximately one-third of the requests. This Court's August 11, 2005 Scheduling

Order ordered CIGNA to produce "any documents responsive" to the Second and Third Requests

by "no later than" September 15, 2005–which gave CIGNA four months from the time of the

requests to actually produce documents. The production on that date followed the limitations in

CIGNA's written responses and, in fact, produced less than the written responses indicate.

Plaintiffs' counsel have conferred with Defendants' counsel several times in an effort to

avoid filing this motion, even going so far as to transmit a draft of this motion to Defendants'

---

[1] The responses to the Second and Third Document Requests and the First Set of
Interrogatories are attached as Exs. A, B and C.

counsel and holding three telephone conference calls about Defendants' responses.[2]

As your Honor noted at the April 20, 2005 hearing, Plaintiffs should not "have to file motions to compel or motions for sanctions to get that which our local rules and the Federal Rules give you an absolute right to." 4/20/2005 Hearing Tr. at 17 (attached as Ex. E). Unfortunately, Defendants' refusal to cooperate is nothing new. When Plaintiff served her First Document Requests on May 14, 2002, CIGNA produced only the Plan documents and Summary Plan Description (SPD). CIGNA made the same objections of irrelevance, overbreadth, and burdensomeness. On February 19, 2003, Judge Squatrito rejected CIGNA's objections and granted Plaintiff's motion to compel, finding that the document requests were related to "the adoption and administration of the cash balance plan at issue." Mem. Opinion and Order (dkt. # 67) at 3. Judge Squatrito found that CIGNA's objections fail to "[offer] a satisfactory explanation of why the materials requested by plaintiff are not discoverable." *Id.* at 4. Even after Judge Squatrito ruled, Plaintiff was forced to file a second motion to enforce the Order and obtain the documents. See dkt # 69 (defendants produced additional documents with their opposition).

Instead of responding to Plaintiffs' discovery requests consistent with this Court's directions at the April 20, 2005 hearing and Judge Squatrito's ruling, Defendants repeat the same conduct. The "law of the case" doctrine dictates that "any decision made on an issue of law made at one stage of a case becomes a binding precedent to be followed in subsequent stages of the same case." *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991). This Court has recognized that

---

[2] As a result of these conferences, Defendants produced documents responsive to Request Nos. 23-26 and formally supplemented their answers to Interrogatory Nos. 4 and 14 by letter dated November 23, 2005. Ex. D. Defendants' counsel also supplied some additional information through an email dated December 5, 2005. Ex. I.

objections on grounds of irrelevance and overbreadth and delay in producing the privilege log are dilatory tactics designed to stretch out litigation. Ex. E, 4/20/2005 Tr. at 15-16. See also *Omega Engineering, Inc. v. Omega*, 2001 WL 173765, *4 (D.Conn. February 6, 2001) ("the Federal Rules Advisory Committee has expressly disapproved of employing such gamesmanship in discovery requests").

## I.    Discovery under Rule 26(b) Is "Very Broad"; Objections and Responses Must Be "Specific"

CIGNA's resistance to Plaintiffs' discovery requests is at odds with well-established rules. Rule 26(b) provides, in pertinent part: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party..." Fed. R. Civ. P. 26(b). The Second Circuit recognizes that "the scope of discovery under Fed. R. Civ. P. 26(b) is very broad, encompassing any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (relevancy is "construed broadly"). Thus, while a party who resists discovery may object to a request:

> pat, generic, non-specific objections, intoning the same boilerplate language, are inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure. An objection to a document request must clearly set forth the specifics of the objection and how that objection relates to the documents being demanded.

*In re Priceline.Com Inc. Sec. Litig.,* 2005 WL 1366450, *2 (D.Conn. June 7, 2005) (quoting *Obiajulu v. City of Rochester*, 166 F.R.D. 293, 295 (W.D.N.Y. 1996)); *King-Hardy v. Bloomfield Bd. of Educ.*, 2002 US Dist LEXIS 27384, *12 (D. Conn. Jan. 1, 2002) ("response must clearly articulate the specifics of the objection and how the objection relates to documents requested").

3

## II.     Defendants Cannot Refuse to Produce Documents on the Basis of "Generic, Non-Specific Objections" of Irrelevance, Overbreadth or Burdensomeness

Defendants' objections and responses to Plaintiffs' Second Set of Requests for Production vary little from the objections that CIGNA served in June 2002. CIGNA offered to make additional documents available in response to the Second Set of Requests for <u>only ten of thirty</u> requests. See Ex. A, Responses to Request Nos. 1, 3-5, 7, 11-13, 18, 30. CIGNA did not deny that responsive documents exist for the twenty other requests. Instead, CIGNA relied on the "pat, generic, non-specific objections" that it used before, asserting that the document requests are "neither relevant to the claims or defenses of the parties," have "no bearing on the issues in this case" or are "overbroad" or "unduly burdensome." CIGNA offers no specifics to support these objections. See, e.g., Responses to Request Nos. 2-3, 6-11, 13-29. The responses to Request Nos. 20-29 are identically worded, moreover, suggesting a lack of effort to explain objections on grounds specific to the requests. Ex. A, at pp. 12-17.[3]

Under Rule 26, the test for relevance is whether a request "appears reasonably calculated to lead to the discovery of admissible evidence." The "defendant, as the non-party, bears the burden of demonstrating, inter alia, that the request is not relevant." *Ruran v. Beth El Temple*, 226 F.R.D. 165, 169 (D.Conn. 2005). The burden cannot be shifted back by invoking non-specific objections of "irrelevance." In this instance, Plaintiffs seek documents that are clearly within the scope of discovery as defined by Rule 26(b). Like the requests which Judge Squatrito reviewed in 2002, the pending requests relate to "the adoption and administration of the cash

---

[3] After several conferences, Defendants indicated that there were no responsive documents to Req. No. 16 and produced additional documents in response to Request Nos. 23-26. Ex. D. As discussed below, the documents were actually responsive only to Request No. 23.

4

balance plan at issue." 2/19/03 Mem. Op. at 3. Plaintiffs are not requesting any information with "no conceivable bearing on the case." *Coudert v. Janney Montgomery Scott*, 2004 WL 2381552, * 2 (D.Conn. Oct. 7, 2004) (quoting Wright & Miller, *Federal Practice and Procedure*, § 2008).

The Requests in response to which Defendants offer <u>no</u> additional documents–Request Nos. 2, 6, 8-10, 14-15, 17, 19-22, and 27-29–seek evidence about claims that already existed, or are included in Plaintiffs' Second Amended Complaint, namely: CIGNA's conditioning of actual payment of the new cash balance accruals based on "wear-aways" of previously-earned benefits (Claim I), the misleading and inadequate disclosures to plan participants about the wear-aways and other disadvantages of the cash balance conversion (Claim II), the reduction in future benefit accruals based on age (Claim III),  the absence of statutorily-required notices of the significant reductions in the rates of future benefit accruals (Claim IV), and the failure to fully protect "minimum benefits" (i.e., the benefits that participants earned under the old plan's provisions) and the failure to disclose the relative value of benefit options (Claim V). To illustrate, Request Nos. 21-22 seek information that supports Defendants' written disclosures that the cash balance amendments were "expected to be a plus" for the employees and that the Plan's rules were "not changing" "to cut costs." The documents sought by Request Nos. 27 and 29 should show CIGNA's projected cost savings based on adoption of the cash balance plan. In telephone conferences on these requests, one of Defendants' counsel has taken the outrageous position that the "truth or falsity" of Defendants' written disclosures is "irrelevant."

Even for the requests to which CIGNA indicated it would respond, the actual production is limited further than the responses indicate. Plaintiffs' counsel eventually noticed that hardly any documents have been produced that postdate the institution of this lawsuit in December

2001. For example, Defendants produced some documents in which Patricia Flannery complained in July 2001 about her benefits. It was only after contacting Ms. Flannery that Plaintiffs' counsel learned that she had continued to complain and, with the assistance of counsel, eventually found that CIGNA "understated" what she had earned under the old plan, which relates to Plaintiffs' Fifth Claim for Relief about CIGNA's failure to protect "minimum benefits," i.e., the benefits earned under the old Plan formula up to December 31, 1997.

A document that Defendants produced in discovery in 2003 indicates that CIGNA also received numerous inquiries and complaints about benefits after Judge Squatrito certified this case as a class action in December 2002 and an article appeared in the *Hartford Courant*. Participants asked CIGNA "to move them back into the old plan now" and asked for "details" about the lawsuit. But CIGNA representatives were instructed to "provide no more info than the dot-points." Ex. F. CIGNA did not produce the "dot-points," and only belatedly listed this document in a privilege log dated December 9, 2005.[4]  In addition, there were more inquiries and complaints after articles appeared in the *Wall Street Journal* and the *Hartford Courant* about the Third Circuit's *Depenbrock* decision in November 2004. Ex. G. On February 4, 2005, CIGNA mailed letters to 178 participants, who are all members of this class, advising them that their retirement benefits would be recalculated as a result of that decision. Ex. H. Twelve months later, CIGNA has still not performed those recalculations, except for three members of the class. Plaintiffs' counsel are aware that CIGNA has received multiple complaints as a result of these articles and the February 2005 letter. Yet, Defendants have not produced <u>any</u> of those complaints

---

[4] Ex. S. As discussed below, Plaintiffs' counsel already have this document and it is not privileged. It is a list of "HR Talking Points" prepared by Gerry T. Meyn, who was formerly the Plan administrator and is not a lawyer. See Ex. T.

in response to Plaintiffs' requests for complaints from current or former employees about their benefits. Ex. A, Request 1.

CIGNA has likewise declined to update administrative and systems manuals to reflect materials developed after 2001. It is implausible that CIGNA's administrative and systems manuals for the Pension Plan have remained frozen in place for a period of five years. Issues and problems such as those related to Ms. Flannery's benefits are always arising that need to be addressed.

Similarly, Request Nos. 23-26 asked for documents related to a "retirement plan communications survey" conducted before the conversion (No. 23), to an employee survey "following implementation" (No. 24), to "focus groups" conducted in the middle of 1997 (No. 25), and to "discussions with groups of managers" and "focus groups with managers" (No. 26). After refusing to produce any documents in response to these requests, see Ex. A, Defendants supplemented their production on November 23, 2005, representing that they were producing responsive documents to all of them. Ex. D. The referenced documents, however, actually responded to only the first of the four requests and contained hundreds of pages of unrelated documents.

In addition, nothing has also been produced in response to three of the ten requests for which CIGNA originally said it was producing documents–Request Nos. 3, 13 and 18. For example, CIGNA produced no documents from the files of Michael Bell, Frank Lamay or Mordecai Schwartz in response to Request No. 3 and it produced no documents notifying participants about "old Plan benefits" or explaining the "relative value" of benefit options in response to Request Nos. 13 and 18, even though CIGNA committed to "produce exemplars" of

7

such documents sent to particular participants. Ex. A. A December 5, 2005 email from one of

CIGNA's counsel identified three notices as "exemplars," but those notices contain nothing

approaching such disclosures. See Ex. I.

　　　CIGNA's production for several other requests to which it committed to produce

documents has been minimal. For example, while CIGNA produced more readable originals of

particular benefit comparisons performed by the William Mercer consulting company in response

to Request No. 11, it produced no "letters, memoranda or other communications related to those

comparisons." Mercer's comparisons reveal benefit reductions of as much as 30%, even for

participants who were previously under CIGNA's lower, so-called "Tier 2 formula" and even

when a separate benefit from a defined contribution plan was included in the comparison. Ex. J.

　　　Request No. 12 seeks recalculations and documents related to 178 class members

potentially affected by the Third Circuit's *Depenbrock v. CIGNA* decision (about which both

parties submitted memoranda on May 6, 2005). CIGNA produced copies of the letters distributed

to these class members, but recalculations for only three employees. No other papers have been

produced, despite CIGNA's representation to this Court in May 2005 that it was "continuing to

wrestle with the impact of the *Depenbrock* decision on these 178 individuals." Defs. 5/6/2005

Mem. Regarding Impact of *Depenbrock v. CIGNA* at 4 (dkt #111). A July 24, 2005 email from

the Plan administrator, John Arko, to one of the individuals affected by the *Depenbrock* decision

refers to "questions" raised by Prudential about these recalculations. Ex. K (e-mail to John Arko

to Jack Lamb). But no documents related to Prudential's questions have been produced. In the

words of Jack Lamb, a retired class member who repeatedly has asked CIGNA to restore his

benefits: "It has been nearly a year since the Court's decision was made in this issue and as yet,

all I have received is empty promises and delay after delay." Ex. L.

CIGNA's response to the Second Set of Document Requests also indicates that documents were previously made available to Plaintiffs which never were. In response to Request No. 14, CIGNA stated that it "made available a copy of the software used to calculate employees' benefits." See also Responses to Request Nos. 4, 6. But CIGNA has not actually made any software available to Plaintiffs and, in fact, told Judge Squatrito that "the software is proprietary and cannot be easily copied and installed onto other machines." See Ex. M, Defs. 7/21/03 Mem. in Opp. to Pls. Mot. to Enforce Order Compelling Production at 7 n.4 (dkt.#72).[5] When CIGNA finally scheduled a systems inspection after four months of requests, it produced an individual who was unequipped to answer basic questions about systems documentation or the feasibility of copying the computer systems, such as which of the databases are based on Microsoft Windows. Plaintiffs' systems expert had to prepare an extensive list of follow-up questions, which remain unanswered to this date. See Ex. O. CIGNA's counsel have declined to produce not only systems documentation and the customized software and databases used in plan administration, but even an easily-copied Microsoft Access database and Microsoft Excel spreadsheets that CIGNA uses in various aspects of plan administration, including to calculate old plan benefits and new benefit accruals under the cash balance plan. *Id.* at 2.

CIGNA's objections seek to compress the boundaries of relevance based on CIGNA's adversarial interest, rather than a good faith determination of the "very broad" scope of

---

[5] In an email dated October 12, 2005, CIGNA's counsel agreed that no copy was actually available, explaining that when CIGNA responded that it had "made available a copy of the software," "we did not mean that we would be able to send you a copy, which is not possible." Ex. N.

information that may be relevant to the Plaintiff class' claims. Even when Defendants offer to produce documents, they are seeking to narrow the document requests to what Defendants consider to be "sufficient" or relevant. See, e.g., Ex. A, Responses to Request Nos. 4, 7, 12-13, 30. Trial courts uniformly reject approaches in which the fox guards the hen house. In *In re PE Corp Securities Litigation*, 221 F.R.D. 20, 24 (D.Conn. 2003), Magistrate Judge Smith rebuffed objections to the relevance of the plaintiffs' document requests based on defendants' narrow reading of claims in the complaint. The court "decline[d] to view the plaintiffs' claim in such narrow and specific terms." *Id.*; see also *New Colt Holding Corp. v. RJG Holdings of Florida*, 2003 WL 22327167, *2 (D.Conn. June 16, 2003) ("It is for this Court, not the individual parties, to decide when a request falls outside the bounds of permissible discovery"); *Flynn v. Goldman, Sachs & Co.*, 1991 WL 238186, *2 (S.D.N.Y. November 1, 1991) (overruling defendant's objections where documents were withheld "solely on the basis of defendants' unilateral and self-serving determinations of relevance").

In addition to generic challenges to "relevance," Defendants object to Plaintiffs' requests on the grounds that they are "overbroad" or "unduly burdensome." See, e.g., Ex. A, Responses to Request Nos. 2-6, 8-9, 11-15, 17-22, and 27-30. As with the relevance objections, CIGNA has not supported these objections with explanations, evidence, or affidavits about how the requests are either overbroad or unduly burdensome. "The ritual use of language such as 'overly broad and burdensome' in boilerplate 'general objections' to document requests raises no meaningful issue, and affords no legally sufficient basis for refusing to produce documents." *Flynn*, *supra*, 1991 WL 238186, *3. The party resisting discovery bears the burden of showing "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each

10

[request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *In re Priceline.Com, supra*, 2005 WL 1366450, *2 (quoting *Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984)). As your Honor stated at the April 20, 2005 hearing, this Court "[does not] want defendants basically coming up with an answer that merely says...beyond the scope of discovery; object, overbroad; go pound sand, and then forcing [plaintiffs] to move to compel." 4/20/05 Tr. at 16-17 (attached as Ex. E).

The one area where CIGNA made more of an effort, Plaintiffs' request for a class list with specified benefits data (Req. No. 4), is one of the most critical, but CIGNA's response continues to be woefully incomplete. CIGNA's initial response suggested that class issues should be decided without considering "the facts and circumstances of each individual participant." Ex. A, at 4. In a July 12, 2005 Surreply to Plaintiff's Motion in Limine, CIGNA next contended that this information was "unrelated to the likely prejudice issue" in *Burke v. Kodak* and complained that Plaintiffs had not sufficiently explained why a class list is necessary. *Id.* (dkt. #132) at 4-5. On September 15, 2005, the Court's deadline for producing any responsive documents, CIGNA transmitted a letter representing that "a complete class list" would be provided "as soon as such information is available." Ex. P. No list was provided until October 11, 2005 (and only after two additional requests from Plaintiffs' counsel). That list did not contain anywhere close to the information requested: It contained only last names, dates of birth, age at the cash balance conversion, and credited service at the conversion. After several conferences and communications, CIGNA finally produced a more complete list on January 9, 2006 (and a

11

revision of that list on January 17, 2006). But these lists continue to omit, without explanation, final average earnings for each participant before the conversion, the account balance at the pension commencement date, the forms of benefit offered, and the benefit amount elected.

Plaintiffs' counsel notified Defendants of the omissions on January 11, 2006 and January 23, 2006, but have not received any response. Exs. O and Q. The systems inspection in Hartford on January 17, 2006, revealed that CIGNA has all the requested information in one or more of its databases. Ex. O at 1. In addition, the systems inspection revealed that the class lists produced in January are missing key data for 9,412 of the 27,159 class members which was supposed to already be included, namely, the annuity benefit earned under the old plan prior to 1998 and the opening account balance under the cash balance plan. *Id.* The missing data relates to the issues of whether all participants were consistently converted to the cash balance plan and whether the "minimum benefits" earned under the old plan were protected.

Class counsel are clearly entitled to relevant information about the benefits of class members, such as the fields identified in Request No. 4. While Defendants sometimes have been compensated for the time spent in preparing such lists, objections to production on grounds of overbreadth or burdensomeness are unsustainable. See, e.g., *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 352-54 (1978) (class list may be obtained under discovery rules where information is relevant to issues of case; district court may order defendant to perform the task and allocate the cost under Rule 23(d)); *Manual for Complex Litigation* (Fourth), §11.433 (where "producing party is better able to search for and produce the data efficiently and economically than the discovering party," producing party may be ordered to do so "subject to appropriate reimbursement for costs"); *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318, 324 (S.D.N.Y.

12

2003) ("[I]n the world of electronic data, ... any data that is retained in a machine readable format is typically accessible" so that the responding party bears the expense of producing the data; "A court should consider cost-shifting *only* when electronic data is relatively inaccessible, such as in backup tapes") (emph. original). Accord *Reyes v. Carnival Corp.*, 2005 U.S. Dist. LEXIS 11948, *27 (S.D.Fl. May 25, 2005) (granting plaintiffs' motion to compel production of class list); *Goldwater v. Alston & Bird*, 116 F.R.D. 342, 357 (S.D.Ill. 1987) (certifying class and ordering defendants to provide class list).

III.     **Defendants' Responses to Plaintiffs' Interrogatories Do Not Satisfy the Requirement for Answers "In Good Faith and With Sufficient Detail"**

Defendants likewise have a "duty" to respond to Plaintiffs' interrogatories "in good faith and with sufficient detail." *Lamoureux v. Genesis Pharm. Servs.*, 226 F.R.D. 154, 161 (D. Conn. 2004). Answers to interrogatories should reflect "a conscientious endeavor to understand the questions and to answer fully those questions as are proper." Wright & Miller, *Federal Practice and Procedure*, § 2177; see also *Dollar v. Long Mfg.*, 561 F.2d 613, 616-17 (5th Cir. 1977), cert. denied, 435 U.S. 996 (1978) ("Discovery by interrogatory requires candor in responding...A partial answer by a party reserving an undisclosed objection to answering fully is not candid. It is evasive"). Even if a party cannot give a complete answer, it should "furnish any relevant information that is available." Wright & Miller, § 2177. The 1980 Advisory Committee Notes to Rule 33(c) establish that there is a duty to specify "the records from which answers to interrogatories can be derived" when a party offers to make records available in lieu of answering the interrogatory.

CIGNA's answers fall short of these requirements. In response to six of twenty

interrogatories, CIGNA refers to documents that it previously produced or will produce later, without answering the interrogatories or identifying the documents. See Ex. C, Responses to Int. Nos. 1, 3, 7, 9, 12-13. These are clearly insufficient answers.[6] "It is no objection to interrogatories ... that the information sought is within the knowledge of the interrogating party." *Weiss v. Chrysler Motors Corp.*, 515 F.2d 449, 456 (2d Cir. 1975)); see also *New Colt Holding Corp.*, *supra*, 2003 WL 22327167 at *2 (granting motion to compel where Defendants stated they provided the information in documents already produced: "Rule 33 does not sanction a response that the requesting party has in its possession all necessary information to answer the request, as Fed. R. Civ. P. 26 requires a response in the absence of a sustained objection to the particular request"); *In re Master Key Antitrust Litig.*, 53 F.R.D. 87, 90 (D.Conn. 1971) ("Since a respondent is required to answer proper interrogatories, it is not plausible to assume that a response that an answer may be found in its records...is sufficient. This is little more than an offer to play the discredited game of blindman's bluff at the threshold level of discovery").

CIGNA compounds the gamesmanship by offering documents that it neglects to produce. For example, the Answer to Interrogatory No. 13 commits to the production of documents about the "relative value" of rollover options offered to CIGNA Retirement & Investment Services division employees after the sale of their division to Prudential. But no such documents were produced. See also Answer to Interrogatory No. 3 (promising spreadsheets and other comparisons related to the cash balance formula that were not produced).

In addition to asking Plaintiffs to look for answers in unidentified documents, CIGNA

---

[6] Plaintiffs' Third Set of Requests for Production was a catch-all request for all documents related to Defendants' Answers to the Interrogatories. Ex. B. Defendants responded that they would produce those documents, *id.*, but no such documents were produced.

14

relies on other evasive responses. For example, Interrogatory No. 4 asks whether the plan

administrator applied a pre-retirement mortality discount in converting participants' benefits to

opening cash balance accounts. Ex. C at 4. CIGNA responded that a Plan provision provides that

the opening account "shall be calculated using the Applicable Mortality Table" without

answering the question. *Id.*[7] Interrogatory No. 5 asks Defendants to describe why different

conversion factors were used for Intracorp employees. CIGNA responds circularly, stating that

different conversion factors were used because a Plan amendment said to do that. *Id.* at 5.

Interrogatory No. 19 asks Defendants to "describe in detail the issues or circumstances related to

recalculating and paying benefits" to the class members affected by the *Depenbrock* decision. In

response, CIGNA states that it is "still in the process" of determining the impact of that decision

and offers nothing about the issues or questions related to those recalculations. *Id.* at 11-12.

Still other answers object with no effort to answer subject to the objection. For example,

CIGNA's responses to Interrogatory Nos. 16, 17 and 18 repeat the same four objections.[8] CIGNA

refuses to answer on the ground that the information sought "is neither relevant to the claims or

defenses of the parties" or has "no bearing" on the case. See also Responses to Interrogatory Nos.

2-3, 5, 15.[9] Again, these objections are insufficient: Interrogatories "may relate to any matters

---

[7] Defendants' Supplemental Responses dated November 23, 2005, denied the application of a "specific 'pre-retirement mortality' discount," but simultaneously stated that the opening accounts were "calculated using the 'Applicable Mortality Table.'" Ex. D. Because the "Applicable Mortality Table" includes rates of pre-retirement mortality, this is still an evasive answer.

[8] Interrogatory Nos. 16-18 relate to the cost savings that CIGNA recognized as a result of the conversion to cash balance.

[9] Interrogatory No. 2 asks for information about compliance with certain ERISA rules that the Complaint specifically identifies. Interrogatory No. 3 asks for information about how the cash

which can be inquired into under Rule 26(b)(1)." Fed. R. Civ. P. 33(c); see also *Ahern v. Trans Union LLC*, 2002 WL 32114492, *2 (D. Conn. 2002) (the "objecting party may not leave it to the court to sift each interrogatory to determine the usefulness of the answer sought...the claims in the complaint define the liberal guidelines for determining the relevance of the discovery requests").

As with the responses to the document requests, Defendants object to the Interrogatories on the grounds of overbreadth, without explaining the basis for the objection. See Ex. C, Responses to Interrogatory Nos. 2, 3, 5-7, 9-11, 15-19. Rule 33(b)(4) expressly dictates that "[a]ll grounds for an objection to an interrogatory shall be stated with specificity." See also Wright & Miller, § 2173 ("objections should be specific and be supported by a detailed explanation of why an interrogatory...is objectionable"). The objecting party must "show specifically ... how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *In re Priceline.Com, supra*, 2005 WL 1366450, *2.

## IV.    CIGNA's Privilege Objections Cannot Be Sustained

CIGNA also lodged privilege objections to the document production and related interrogatories. See Ex. A, General Objection 1 and Response Nos. 2, 3 and 5 and Ex. C, Ans. to Int. Nos. 2 and 19. To illustrate, Interrogatory No. 2 and Document Request No. 2 asked CIGNA to identify all legal advice on which the Plan administrator or other fiduciaries relied in considering whether implementation of the cash balance changes complied with ERISA and to produce any such advice. Ex. A and C. In response, CIGNA objects on grounds of privilege, but

---

balance formula compares with the old Plan's formulas.

16

then fails to produce a privilege log.[10]

Under Rule 26(b)(5), a party can object to a discovery request where the information sought is subject to attorney-client privilege or the work-product doctrine. However, a resisting party bears the burden of establishing that privilege: "blanket assertions of privilege [are] insufficient." *Omega Engineering, supra,* 2001 WL 173765 at *3. The party claiming privilege must submit a privilege log as required by FRCP 26(b)(5) and Local Rule 37(a)(1).

Here, a September 29, 2005 e-mail from CIGNA's counsel states that "Defendants' production does not have a privilege log." Ex. R. Defendants subsequently produced a privilege log on December 9, 2005, but the log only lists one document, which Plaintiffs' counsel already have and which is clearly not privileged. See Exs. S and T.

Because Defendants lodged a privilege objection in response to three document requests and two interrogatories and as a General Objection asserted in response to each document request and each interrogatory, it is implausible that Defendants interposed these objections to withhold only one document. Objections on grounds of privilege plainly cannot be sustained where no privilege log has been produced (or where the only document identified is one that is clearly not privileged). The failure to produce a privilege log is "presumptive evidence that the claim of privilege is without factual or legal foundation." *Grossman v. Schwarz*, 125 F.R.D. 376, 386-87 (S.D.N.Y. 1989).

---

[10] As an alternative, CIGNA contends that it already "produced documents responsive to this Request" to conform with this Court's rulings at the April 20, 2005 hearing. Ex. A, Resp. to Req. No. 2 and Ex. C, Ans. to Int. No. 2. But CIGNA does not identify which documents are responsive to the document request or the parallel interrogatory, nor does it state that those are all of the responsive documents. This is clearly an insufficient response. See, e.g., *New Colt Holding Corp.*, *supra*, 2003 WL 22327167 at *2.

17

This Court has recognized that privilege logs are "absolutely essential to the proper assertion of the privilege." Ex. E, 4/20/2005 Tr. at 17. Indeed, in response to Defendants' long-delayed production of the privilege log in conjunction with Plaintiff's First Requests for Documents, your Honor invited Plaintiff's counsel to file a motion for monetary sanctions, stating "I will entertain a motion for monetary sanctions for the efforts that had to be incurred just to get that which our local rules say you have an absolute right to...nobody should have to file motions in order to extract a privilege log and the privilege logs that come ought to be as complete as possible from the get-go." Ex. E, 4/20/2005 Tr. at 17-18.[11]

## V.     Sanctions Should Be Ordered Under Rule 37 and 28 U.S.C. §1927

CIGNA's long-running refusal to cooperate in discovery needlessly and vexatiously prolongs this litigation. CIGNA's responses to Plaintiffs' discovery requests repeat the "pat, generic, non-specific" objections and unsupported claims of privilege that both your Honor and Judge Squatrito warned Defendants against. CIGNA has made little effort to respond to the document requests and interrogatories as the Federal Rules mandate. This Court's Scheduling Order directed Defendants to produce "any documents" responsive to Plaintiffs' discovery requests "no later than September 15, 2005." Yet, Defendants offered only incomplete responses, forcing Plaintiffs to once again "make a motion."

Plaintiffs request CIGNA be sanctioned under Fed. R.Civ. P. 37(a), (b) and (d) for the "practice" of consistently and purposefully refusing to comply with Plaintiffs' discovery requests and Court Orders until Plaintiffs "make a motion." *Apex Oil Co. v. Belcher Co.*, 855 F.2d 1009,

---

[11] Your Honor further suggested that if "it takes a year or more or something like that just to get a complete privilege log out in a case, ... I'm prepared to find waiver as well as imposing monetary sanctions." Ex. E, 4/20/2005 Tr. at 17.

1020 (2d Cir. 1988) (defendants' counsel engaged in "practice" of requiring plaintiff to "make a motion" to compel discovery before providing requested information); *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 113 (2d Cir. 2002) ("District courts should not countenance 'purposeful sluggishness' in discovery on the part of parties or attorneys and should be prepared to impose sanctions when they encounter it").

"Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding Corp., supra,* 306 F.3d at 107; *Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) ("Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses"). "[D]iscovery sanctions, including an adverse inference instruction, may be imposed on a party that has breached a discovery obligation not only through bad faith or gross negligence, but also through ordinary negligence." *Residential Funding Corp., supra*, 306 F.3d at 113.

Plaintiffs request that CIGNA be sanctioned by ordering CIGNA to answer the interrogatories and produce the requested documents, including by producing a complete class list and the electronic databases and software, without withholding any documents or information on grounds of privilege and by ordering CIGNA to pay the fees associated with this motion. See *Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682, 688 (2d Cir. 1989) (party "failed to cooperate with legitimate discovery requests necessitating ... several motions to compel discovery" and "subsequently disobeyed two court orders"); *Kramer v. Arms*, 1997 WL 85830, *1 (2d Cir. February 27, 1997) (counsel failed to comply with numerous court orders to produce documents and respond to discovery requests); *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*,

19

179 F.R.D. 77, 81 (D.Conn. 1998) (defendant's failure to produce documents "clearly hindered

the plaintiff's pursuit of this case"); *Strougo v. BEA Associates*, 199 F.R.D. 515, 521 (S.D.N.Y.

2001) (failure to provide timely privilege log may be held to waive privilege claims); *Wahad v.

FBI*, 813 F.Supp. 224, 227 (S.D.N.Y. 1993) ("Parties must not be permitted to better their

position because they have failed to comply with discovery orders").

       In addition, Plaintiffs request that Defendants' attorneys be sanctioned under 28 U.S.C. §

1927 for unreasonably and vexatiously multiplying the proceedings by causing the Plaintiffs to

have to file this third motion to compel or enforce in order to obtain answers and documents that

are clearly required under the Federal Rules. See *Apex Oil Co. v. Belcher, supra*; *J-Square

Marketing Inc. v. Sipex Corp.*, 1999 WL 977742, *3 (D.Conn. 1999).

**Conclusion**

       For the foregoing reasons, Plaintiffs respectfully request that their motion to compel be

granted, that CIGNA be ordered to produce all responsive documents and offer complete answers

to the interrogatories, and that the above-requested sanctions be ordered.

Dated: February 2, 2006

                                          Respectfully submitted,

                                          By: /s/ Thomas G. Moukawsher
                                          Thomas G. Moukawsher ct08940
                                          Ian O. Smith ct24135
                                          Moukawsher & Walsh, LLC
                                          21 Oak Street
                                          Hartford, CT 06106
                                          (860) 278-7000
                                          (860) 446-8161 (fax)
                                          tmoukawsher@mwlawgroup.com

                                          Stephen R. Bruce ct23534 (pro hac vice)

Allison C. Caalim
Suite 210
805 15th St., NW
Washington, DC 20005
(202) 371-8013
(202) 371-0121 (fax)
stephen.bruce@prodigy.net

Attorneys for the Plaintiff Class

**Exhibits to February 2, 2006 Motion to Compel:**

Exhibit A:    Defs. Suppl. Responses to Second Requests for Documents.

Exhibit B:    Defs. Responses to Third Requests for Documents.

Exhibit C:    Defs. Responses to First Set of Interrogatories.

Exhibit D:    Letter dated 11/23/2005 with Defs. Suppl. Responses to Interrog. Nos. 4 and 14.

Exhibit E:    Excerpts from 4/20/2005 Hearing Transcript.

Exhibit F:    Email produced in discovery on inquiries with January 3, 2003 *Hartford Courant* article and statement that "Representatives provide no more info than the dot-points."

Exhibit G:    *Wall Street Journal* and *Hartford Courant* articles on *Depenbrock* decision.

Exhibit H:    February 4, 2005 letter to 178 participants affected by *Depenbrock* decision.

Exhibit I:    12/5/2005 email on "exemplars" that CIGNA contends are responsive to Request Nos. 13 and 18, with printouts of those exemplars.

Exhibit J:    William Mercer's benefit comparisons, with defined contribution ("SIP") benefit included in comparison.

Exhibit K:    11/30/2005 email from John Arko to Jack Lamb about "questions" from Prudential about benefit calculations for rehires affected by the *Depenbrock* decision.

Exhibit L:    1/29/2006 email from Jack Lamb to John Arko about "delay after delay" in his benefits being increased.

Exhibit M:    Defs' 7/21/03 Opp. to Motion to Enforce Order Compelling Production.

Exhibit N:    10/12/05 email from CIGNA's counsel indicating that making "available a copy of the software" does not actually mean a copy of the software.

Exhibit O:    1/23/2006 email with follow-up requests after systems inspection in Hartford.

Exhibit P:    9/15/05 letter from CIGNA's counsel stating that "complete class list" will be produced.

Exhibit Q:    1/11/2006 email about questions on the class list.

Exhibit R:    9/29/2005 email that Defendants' production "does not have a privilege log."

Exhibit S:    12/9/2005 privilege log with one item.

Exhibit T:    "HR Talking Points" (aka dot-points) document from G.T. Meyn dated 1/03/2003.