EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| Janice C. Amara, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>vs.<br><br>CIGNA Corp. and CIGNA Pension Plan,<br><br>          Defendants. | Civil No. 3:01-CV-2361 (MRK) |

## DEFENDANTS' OBJECTIONS AND RESPONSES
## TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendants CIGNA Corporation ("CIGNA") and CIGNA Pension Plan (the "Plan") (collectively "Defendants"), by and through their counsel, hereby make the following objections and responses to Plaintiff's First Set of Interrogatories.

### GENERAL OBJECTIONS

1. Defendants object to the Interrogatories to the extent they call for documents or information which is subject to one or more privileges, including, but not limited to, the attorney-client privilege, or any information which constitutes or reflects the work product of Defendants' attorneys.

2. Defendants object to the Instructions in the Interrogatories to the extent that they seek to impose any obligation on Defendants that is inconsistent with, or in addition to, obligations imposed by the Federal Rules of Civil

    Procedure or other Rule or Order of the Court.

3. Defendants object generally to producing documents or providing information which is confidential, proprietary or sensitive in nature to Defendants or the employees or customers of Defendants without execution of an appropriate Stipulation of Confidentiality and Protective Order.

4. Defendants object to Plaintiff's Interrogatories to the extent they are not limited to the operation of Part B of the Plan and its impact on participants.

5. Defendants incorporate these objections into each of their responses below.

## SPECIFIC OBJECTIONS AND RESPONSES

1. Describe in detail how a participant in the Part B CIGNA Pension Plan can compute his or her future annuity benefit after the 1998 cash balance amendments, including but not limited to identifying any documents that describe the steps that a participant who has not reached age 65 can take to compute the annuity benefit that his or her cash balance account will support beginning at age 65.

**Response:** Pursuant to Fed. R. Civ. P. 33(d), Defendants state that a participant's benefit under the Plan can be computed by following the terms of the Plan, a copy of which has been produced and which is made available to participants upon request. In addition, a number of other documents describe how a participant's benefit is computed, including the SPDs for the Plan, the Retirement Information Kits, other documents which describe the Plan and were provided to participants, the benefit procedures binder, and the software used to calculate a participant's benefits. All of these documents have been produced or made available. The Plan also provides written benefit estimates to participants upon request, makes available benefit consultants to answer questions and

2

assist participants in requesting a benefit estimate, and makes available a web based system for requesting benefit estimates. A participant also can file a claim with the Plan Administrator seeking information about his or her benefits.

  2. Identify any legal advice, analyses, memos or other documents that the Plan administrator for the CIGNA Pension Plan or any other fiduciary of such Plan considered, relied upon, or otherwise used related to whether implementation of the changes to the Pension Plan that were made effective in 1997 and 1998 complied with ERISA, including but not limited to compliance with ERISA Sections 102, 204(b)(1)(B), 204(b)(1)(H), 204(g), 204(h), and 205(g), and 402.

  **Objection and Response:** Defendants object to this Interrogatory on the grounds that it seeks information that is neither relevant to the claims or defenses of the parties, nor likely to lead to the discovery of admissible evidence. Defendants further object to this Interrogatory on the grounds that it is overbroad. Plaintiff's claims in this lawsuit are limited to only certain provisions of ERISA and, accordingly, to the extent Plaintiff seeks information related to provisions of ERISA other than those at issue in this case, Plaintiff's request is overbroad. Moreover, the legal advice the Plan Administrator (or other fiduciary) received regarding implementation of the Plan is irrelevant to whether the Plan's provisions comply with ERISA. Defendants further object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege or work product doctrine. Subject to these objections and without waiver thereof, Defendants have produced pursuant to Fed. R. Civ. P. 33(d) documents responsive to this Interrogatory that the Court ordered Defendants to produce during the Court's ruling on Defendants' attorney-client and work product privilege objections.

  3. Identify all spreadsheets or other comparisons prepared by the William Mercer company comparing the new cash balance formula as presented to the Board of

3

Directors in July 1997 with the old Tier 1 and Tier 2 pension formulas, and identify all communications related to those comparisons between the William Mercer company and CIGNA.

**Objection and Response:** Defendants object to this Interrogatory on the grounds that it seeks information that is neither relevant to the claims or defenses of the parties, nor likely to lead to the discovery of admissible evidence. Defendants further object to this Interrogatory on the grounds that it is overbroad. To the extent this Interrogatory seeks information about any cash balance benefit formula other than the one actually adopted by CIGNA, the information sought has no bearing on the issues in this case. Subject to these objections and without waiver thereof, and pursuant to Fed. R. Civ. P. 33(d), Defendants will produce the documents Plaintiffs has asked Defendants to identify in this Interrogatory that relate to spreadsheets or other comparisons reflecting the Plan terms ultimately adopted by CIGNA.

4.  Did the CIGNA Pension Plan administrator apply a pre-retirement mortality discount to convert participants' previously-earned annuity benefits to opening cash balance accounts? If not, please describe the basis for your answer in detail. If so, please identify documents related to the CIGNA Pension Plan administrator's authority to apply a pre-retirement mortality discount in that conversion.

**Objection and Response:** Defendants object to this Interrogatory to the extent it does not define a "pre-retirement mortality discount" as it is not clear whether Defendant's understanding of this term is the same as that intended by Plaintiff. Subject to these objections and without waiver thereof, the Plan provides in Section 1.28 that a participant's Initial Retirement Account shall be calculated using the "Applicable Mortality Table," a defined term in the Plan. The Plan provides the authority for the Plan Administrator to use the Applicable Mortality Table in calculating an employee's Initial Retirement Account.

4

5.  Describe why different conversion factors were used for International Rehabilitation Associates ("Intracorp") employees, as described in an April 3, 2000 letter from Stewart Beltz to Intracorp employees (Bates numbered as D028621-23), including but not limited to identifying any Plan amendment which supports those factors.

**Objection and Response**: Defendants object to this Interrogatory on the grounds that it seeks information that is neither relevant to the claims or defenses of the parties, nor likely to lead to the discovery of admissible evidence. Subject to this objection and without waiver thereof, different "conversion factors" were used for International Rehabilitation Associates employees than were used for those employees who were part of the initial adoption of the cash balance plan because a Plan amendment provided that different conversion factors be used for International Rehabilitation Associates employees.

6.  Describe in detail what the CIGNA Pension Plan's old and new rates of benefit accrual were in 1997-98 for purposes of performing the ERISA Section 204(h) test for a "significant reduction in the rate of future benefit accrual" and identify any related documents.

**Objection and Response**: Defendants object to this Interrogatory on the grounds that it is vague and ambiguous. The rates of benefit accrual both before and after the adoption of the cash balance plan varied depending on each participant's circumstances. Thus, there was no rate of benefit accrual in 1997-1998 that applied universally to all participants. Furthermore, many participants in CIGNA's Pension Plan did not have any change in their rate of benefit accrual in 1997-1998 because they were reasonably expected to remain in the old plan, were receiving benefits under the old Plan, or were terminated vested employees. Defendants further object to the Interrogatory on the grounds that the request to identify "any related documents" is overbroad and that

5

production would be unduly burdensome. Subject to these objections and without waiver thereof, Defendants state that the freezing of the benefit under Part A for certain participants, which was accomplished by Amendment No. 4 to the CIGNA Pension Plan (effective December 31, 1997), constituted a reduction in the rate of future benefit accruals for those participants. The subsequent adoption of Part B, which was accomplished by a Plan amendment executed on December 21, 1998, did not effect such a reduction. Both Amendment No. 4 and Part B have already been produced.

7.   Does CIGNA dispute that the change from a final average pay formula to a year-by-year cash balance formula caused a significant reduction in the rate of future benefit accrual? Please explain the basis for CIGNA's position in detail and identify any related documents.

**Objection and Response:** Defendants object to this Interrogatory on the grounds that it is vague and ambiguous in that it does not define the terms "significant" or "rate of future benefit accrual" and there are a number of ways for those terms to be interpreted. In addition, rates of benefit accrual both before and after the adoption of the cash balance plan varied depending on a participant's circumstances. Defendants further object to the Interrogatory on the grounds that the request to identify "any related documents" is overbroad and that production would be unduly burdensome. Subject to these objections and without waiver thereof, Defendants state that the freezing of the benefit under Part A for certain participants, which was accomplished by Amendment No. 4 to the CIGNA Pension Plan (effective December 31, 1997), constituted a reduction in the rate of future benefit accruals for those participants. The subsequent adoption of Part B, which was accomplished by a plan amendment executed on December 21, 1998, did not effect such a reduction. Both Amendment No. 4 and Part B have already been produced. By way of

further response, Defendants direct Plaintiff to the expert report prepared by Lawrence Sher. Moreover, to the extent Plaintiff contends that another Section 204(h) notice was required vis-à-vis the amendment adopting the cash balance plan, the Retirement Information Kits, CIGNA newsletter articles, and the 1998 SPD for the Plan satisfied that requirement.

8. Does CIGNA admit that Section 7.3 of the Part B Pension Plan contains a "wear-away" provision as that term is used in the article entitled "Survey of Cash Balance Conversions" written by CIGNA's actuarial expert and identified as Plaintiff's Deposition Exhibit 90 (at page 25)? Please describe in detail the basis for CIGNA's position.

**Objection and Response:** Defendants object to this Interrogatory on the grounds that it is vague and ambiguous in that the Survey of Cash Balance Conversions does not define the term "'wear-away' provision." Subject to these objections and without waiver thereof, Defendants state that certain participants in Part B can have a "wear-away period" as that term is used in the Survey of Cash Balance Conversions. Specifically, under Part B, a participant is entitled to the greater of a benefit under the cash balance formula or his Minimum Benefit. During the wear-away period, a participant continues to accrue additional benefits under the cash balance formula, but because the benefits under the cash balance formula are less than the participant's "Minimum Benefit" (a defined term under Part B), the participant is entitled to the (greater) Minimum Benefit. Whether a participant has a wear-away period, and the length of that period, depends on a number of factors, including work history and interest rates, both at the time of retirement and the time an Initial Retirement Account is calculated. The terms of Part B, including the minimum benefit provisions and the Initial Retirement Account provisions, provide the basis for CIGNA's position.

7

9. Identify any other computations of "wear-away" that CIGNA has performed in any way similar to D028629 ("Example of 'wear-away' due to subsidized early retirement benefits").

**Objection and Response:** Defendants object to this Interrogatory on the grounds that the phrase "in any way similar to" is vague, ambiguous, and overbroad. Subject to these objections and without waiver thereof, Defendants will produce pursuant to Fed. R. Civ. P. 33(d) computations of wear-away that Defendants determine are similar to the "Example of wear-away due to subsidized early retirement benefits."

10. Describe in detail and identify any documents related to how the length of a participant's "wear-away period" can be computed due to any of the following: (1) the exclusion of subsidized early retirement benefits and the free 30% joint & survivor's annuity from the opening account, (2) the application of a pre-retirement mortality discount in converting to the opening account, or (3) decreases in interest rates that occur between the conversion date and the date the participant terminates employment.

**Objection and Response:** Defendants object to the Interrogatory on the grounds that the request to identify "any related documents" is overbroad and that production would be unduly burdensome. Subject to these objections and without waiver thereof, the length of a participant's "wear-away period" (as that term is used in the Survey of Cash Balance Conversions) depends on a participant's individual facts and circumstances and cannot be computed in advance, because it can vary depending on future changes in interest rates and changes in an employee's salary. A participant seeking an estimate of their future pension benefit under the cash balance plan based on certain assumptions about their salary and interest rates can utilize any of the procedures described in Interrogatory No. 1 to calculate and/or estimate that benefit (and hence their wear-away period).

8

11. When the CIGNA Pension Plan administrator has offered lump sum distributions to Part B participants who separated from service after January 1, 1998, has the Plan administrator computed the lump sum distributions on the basis of the present value of the participant's pre-1998 Tier 1 or Tier 2 accrued benefit when that benefit has a higher value than the cash balance account? Please explain your answer in detail, including but not limited to identifying any Part B participants who separated from service before age 55 and received lump sum distributions based on the present value of their pre-1998 accrued benefit.

**Objection and Response:** Defendants object to the Interrogatory on the grounds that the request to identify any Part B participants who separated from service before age 55 and received lump sum distributions based on the present value of the pre-1998 "accrued benefit" is overbroad, unduly burdensome, and seeks information that is neither relevant to the claims and defenses of the parties nor likely to lead to the discovery of admissible evidence. Defendants further object to the use of the term "accrued benefit" in this Interrogatory without any definition of the term. Subject to these objections and without waiver thereof, Defendants state that the Plan Administrator for the Plan followed the terms of the Plan in calculating participants' benefits. Defendants further direct Plaintiff to Sections 1.1, 1.32, 7.2(a), and 7.3 of Part B, which are the principal provisions of the Plan that answer this Interrogatory.

12. Identify any documents provided to Part B participants that have explained the "relative values" of their benefit options as required by Treas. Reg. 1.401(a)-20, Q&A 36 (as published in 1988) or Treas. Reg. 1.417(a)(3)-1(b)(2) and (f)(2).

**Response:** Defendants have produced or will make available for inspection and copying pursuant to Fed. R. Civ. P. 33(d) documents responsive to this Interrogatory.

13. Describe whether the Retirement & Investment Services Division ("CRIS") employees who were offered "rollover" options after the 2004 sale of CRIS to Prudential were informed of the relative values of cash balance versus annuity options,

9

including but not limited to whether any "rehired" CRIS employees were informed of the relative values of cash balance versus annuity options.

**Response:** Defendants have produced or will make available for inspection and copying pursuant to Fed. R. Civ. P. 33(d) documents responsive to this Interrogatory.

14.     Identify all disclosures and other materials related to retirement benefits that were distributed within the fourth quarter of 1997 to employees who were transferred from CIGNA employment to employment with Lincoln National at the end of 1997. Do Defendants contend that the burgundy "Information Kits" about the CIGNA cash balance plan were distributed to these employees? If so, please explain the basis for that position, including but not limited to describing which versions of those Information Kits were distributed to which employees.

**Objection:** Defendants object to this Interrogatory on the grounds that it seeks information that is neither relevant to the claims or defenses of the parties, nor likely to lead to the discovery of admissible evidence. The Lincoln National employees did not participate in Part B and are not members of the class.

15.     What is the Exhibit I "story" as referenced in the March 5, 2002 e-mail which is Bates numbered as D023886? Describe in detail the computations that produced the additional benefit amounts listed in Exhibit I to the Part A Plan document for 283 individual participants and in Exhibit I to the Part B Plan document for 421 individual participants and identify any documents related to those computations.

**Objection:** Defendants object to this Interrogatory on the grounds that it seeks information that is neither relevant to the claims or defenses of the parties, nor likely to lead to the discovery of admissible evidence. This information relates to a plan provision that did not become effective and is unrelated to any of the claims in this case.

10

16. Describe in detail how the amounts set forth in the CIGNA Total Compensation reports that "CIGNA pays" for an individual employee's pension benefits are computed and identify any documents related to those computations.

**Objection:** Defendants object to this Interrogatory on the grounds that it seeks information that is neither relevant to the claims or defenses of the parties, nor likely to lead to the discovery of admissible evidence. Defendants further object to this Interrogatory on the grounds that it is overbroad. This case involves allegations that the terms of Part B violate certain provisions of ERISA and that the Plan Administrator did not satisfy the SPD disclosure requirements, Section 204(h) notice requirements, and certain regulations regarding the relative value of benefit options available under Part B. The information sought has no bearing on these issues.

17. Describe in detail any accounting gains in 1997 or 1998 that CIGNA recognized as a result of the conversion of the pension plan to a cash balance arrangement and identify any documents related to that accounting.

**Objection:** Defendants object to this Interrogatory on the grounds that it seeks information that is neither relevant to the claims or defenses of the parties, nor likely to lead to the discovery of admissible evidence. Defendants further object to this Interrogatory on the grounds that it is overbroad. This case involves allegations that the terms of Part B violate certain provisions of ERISA and that the Plan Administrator did not satisfy the SPD disclosure requirements, Section 204(h) notice requirements, and certain regulations regarding the relative value of benefit options available under Part B. Information regarding any accounting gains or losses that CIGNA recognized have no bearing on these issues.

11

18. On a year-by-year basis, describe the matching contributions that CIGNA has made since 1997 under the variable SIP match which is described, inter alia, in the November 1997 Special Edition of the Signature Benefits Newsletter.

**Objection:** Defendants object to this Interrogatory on the grounds that it seeks information that is neither relevant to the claims or defenses of the parties, nor likely to lead to the discovery of admissible evidence. Defendants further object to this Interrogatory on the grounds that it is overbroad. This case involves allegations that the terms of Part B violate certain provisions of ERISA and that the Plan Administrator did not satisfy the SPD disclosure requirements, Section 204(h) notice requirements, and certain regulations regarding the relative value of benefit options available under Part B. Information regarding matching contributions under the variable SIP – a different plan than the CIGNA Pension Plan – has no bearing on these issues.

19. Describe in detail the issues or circumstances related to recalculating and paying benefits to the 178 class members potentially affected by the Depenbrock v. CIGNA decision with which CIGNA "is continuing to wrestle" as described in CIGNA's May 6, 2005 Memorandum for the Court and identify any related documents.

**Objection and Response:** Defendants object to this Interrogatory on the grounds that it seeks information that is protected from disclosure by the attorney client privilege and constitutes work product. Defendants further object to the Interrogatory on the grounds that the request to identify "any related documents" is overbroad and that production would be unduly burdensome. Subject to these objections and without waiver thereof, Defendants are still in the process of determining the impact of the Depenbrock decision on the 178 class members similarly situated to Mr. Depenbrock and determining whether and how to amend the Plan to reflect the Depenbrock decision and its implications to participants in different factual circumstances, e.g., already in pay status.

20. Is it Defendants' position that CIGNA's cash balance conversion is like hundreds of others? If so, please identify the ways in which CIGNA's conversion is like or unlike other cash balance conversions and identify the sources for your information.

**Response:** Defendants state that numerous cash balance plan conversions result in a wear-away period for reasons similar to the potential causes of wear-away periods in Part B. Moreover, the fundamental design of cash balance plans would violate ERISA's age discrimination provision under Plaintiff's interpretation of that provision. Defendants further direct Plaintiff to (1) the Expert Report of Lawrence Sher and the deposition of Lawrence Sher (and exhibits to both), (2) other published and unpublished court decisions addressing other cash balance plans; (3) proposed Treasury Regulations discussing cash balance plans and comments on those regulations in the Federal Register, (4) proposed legislation regarding cash balance plans and comments on that legislation by members of Congress; (5) Plaintiff's expert's deposition, all of which are sources of the information requested in this Interrogatory.

Dated: July 8, 2005

MORGAN, LEWIS & BOCKIUS LLP

By: _____
Christopher A. Parlo (CT-04700)

101 Park Avenue
New York, New York 10178
(212) 309-6062
(212) 309-6273 (fax)

Joseph J. Costello
Jeremy P. Blumenfeld
1701 Market Street
Philadelphia, Pennsylvania 19103-2921
(215) 963-5295/5258

13

**ROBINSON & COLE**

James A. Wade (CT # 00086)
280 Trumbull Street
Hartford, Connecticut 06103
(860) 275-8270
(860) 275-8299

Attorneys for Defendants
CIGNA Corporation and CIGNA Pension Plan

14

## VERIFICATION

I, John Arko, hereby state as follows:

1. I am an employee of CIGNA and the Plan Administrator of the Plan and, as such, I am authorized to make this Verification on their behalf.

2. Pursuant to 28 U.S.C. ∋ 1746, I verify under penalty of perjury that the facts set forth in Defendants' Responses to Plaintiffs First Set of Interrogatories are true and correct to the best of my knowledge, information and belief.

Dated: July 8, 2005                    *[signature]*

15

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 8th day of July, 2004, via telecopy and first class mail upon the following:

> Thomas G. Moukawsher
> Moukawsher & Walsh, LLC
> 328 Mitchell Street
> Groton, CT  06340

and upon:

> Stephen R. Bruce
> 805 15th Street, NW
> Suite 210
> Washington, DC 20005

*[signature]*