# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

-------------------------------------------------------X
:
JANICE C. AMARA, GISELA : 3:01 CV 2361 (MRK)
R. BRODERICK, ANNETTE S. GLANZ :
individually, and on behalf of others : Trial Date: 09/11/06
similarly situated, :
:
                            Plaintiffs, :
        v. :
:
CIGNA CORP. AND CIGNA :
PENSION PLAN, :
:
                            Defendants. :
:
-------------------------------------------------------X

## DEFENDANTS' TRIAL MEMORANDUM

Dated: June 27, 2006     **MORGAN, LEWIS & BOCKIUS LLP**
By: /s/ Joseph J. Costello_____
Joseph J. Costello
Jeremy P. Blumenfeld
Jamie M. Kohen
*Admitted pro hac vice*
1701 Market Street
Philadelphia, Pennsylvania 19103-2921
(215) 963-5295/5258/5472
(215) 963-5001 (fax)

**ROBINSON & COLE**
James A. Wade (CT # 00086)
280 Trumbull Street
Hartford, Connecticut 06103
(860) 275-8270
(860) 275-8299 (fax)

*Attorneys for Defendants*
*CIGNA Corporation and CIGNA Pension Plan*

## I. TRIAL COUNSEL

| Plaintiffs: | Stephen R. Bruce (CT #23534)<br>stephen.bruce@prodigy.net<br>Suite 210<br>805 15th Street, NW<br>Washington, DC  20005<br>(202) 371-8013<br>(202) 371-0121 (fax) | Thomas G. Moukawsher (CT #08940)<br>tmoukawsher@mwlawgroup.com<br>Moukawsher & Walsh, LLC<br>21 Oak Street<br>Hartford, CT  06106<br>(860) 278-7000<br>(860) 275-8299 (fax) |
|---|---|---|
| Defendants: | Joseph J. Costello<br>jcostello@morganlewis.com<br>Jeremy P. Blumenfeld<br>jblumenfeld@morganlewis.com<br>Jamie M. Kohen<br>jkohen@morganlewis.com<br>*Admitted pro hac vice*<br>Morgan, Lewis & Bockius LLP<br>1701 Market Street<br>Philadelphia, PA  19103-2921<br>(215) 963-5295/5258/5472<br>(215) 963-5001 (fax) | James A. Wade (ct00086)<br>jwade@rc.com<br>Robinson and Cole LLP<br>280 Trumbull Street<br>Hartford, CT  06103-3597<br>(860) 275-8270<br>(860) 275-8299 (fax) |

## II. JURISDICTION

Defendants stipulate that this Court has subject matter jurisdiction pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et. seq. ("ERISA").

## III. LENGTH OF TRIAL

The parties estimate that the bench trial will require approximately five (5) days.

## IV. FURTHER PROCEEDINGS

Defendants are filing contemporaneously herewith a Motion in Limine to Exclude the Testimony and Expert Report of Professor James Stratman.  Defendants do not believe that any Daubert hearing is necessary for the Court to rule on the Motion.

1

Accordingly, Defendants do not believe that any further evidentiary proceedings are necessary prior to trial.

## V. NATURE OF THE CASE: DEFENDANTS' CONTENTIONS

### A. Factual Background

Prior to 1998, CIGNA was the Plan Sponsor for a traditional defined benefit pension plan. In November 1997, CIGNA's CEO signed an amendment to the CIGNA Pension Plan freezing benefit accruals for many employees. On December 21, 1998, CIGNA's CEO signed a second plan amendment adopting a cash balance plan design for these employees, to be retroactively effective January 1, 1998.

Under the cash balance plan, known as "Part B,"[1] participants earn "benefit credits" based on a percentage of their pay each year. The percentage is age- and service-favored, i.e., an older employee will receive the same or a higher percentage of pay as a similarly situated younger employee, and a longer-service employee will receive the same or a higher percentage of pay as a similarly situated shorter-service employee. The table below reflects the benefit credit rate under the Plan.

| Age Plus Service | Rate Applied to Pay Up to Integration Level[2] | Rate Applied to Pay Over Integration Level |
|---|---|---|
| Under 35 | 3% | 4.5% |
| 35 – 44 | 4% | 5.5% |
| 45 – 54 | 5% | 6.5% |
| 55 – 64 | 6% | 7.5% |
| 65 or over | 7% | 8.5% |

The benefit credits earned each year are credited to the participant's cash balance

---

[1] The traditional defined benefit plan that continued to apply to a select group of older, longer service employees who were grandfathered and were not converted to the cash balance plan is referred to as "Part A."

[2] The CIGNA Pension Plan provides that the "Integration Level" is one-half of the Social Security taxable wage limit in each year (e.g., $34,200 in 1998 and $43,500 in 2003).

2

account.

In addition, all participants in Part B earn interest on their account balances. The interest rate is the same for all participants: the interest rate on five-year Treasury Constant Maturities plus ¼%, subject to a 4½% minimum and a 9% maximum.

At retirement, or termination of employment, a participant is entitled to his or her account balance if he or she elects to receive benefits in the form of a lump sum. Alternatively, a participant can elect to receive his or her benefit in one of several other benefit forms available, including a single life annuity (stream of monthly payments payable for life) or a joint and survivor annuity (stream of monthly payments for life, with additional payments payable to the participant's spouse for the life of the spouse).

Part B also contains certain special protections for participants who were converted to Part B effective January 1, 1998, and some rehired employees who became participants in Part B upon their rehire. First, these participants were given opening account balances based on the lump-sum value of their benefits under the prior plan as of December 31, 1997.[3] Second, Part B provided that if a participant had earned a particular benefit in a particular form under the old plan, e.g., a subsidized early retirement annuity benefit, that benefit would be protected.

In 1997, before the cash balance plan was implemented, the Plan Administrator for the Plan published newsletters and Retirement Information Kits advising participants

---

[3] With regard to the calculation of the lump sum value of a participant's benefits under the prior plan as of December 31, 1997, different benefit forms (e.g., normal retirement benefits, subsidized early retirement benefits) had different present values, depending on the employee's age and the interest rate used. For most employees, the opening account balance was based on the lump-sum value of their age-65 benefit; for certain older employees, the opening balance was based on the lump-sum value of their more valuable age-62 subsidized early retirement benefit. In addition, these older employees also had their benefit converted into an opening account balance using a lower (and hence more favorable) interest rate.

of the conversion and how the cash balance plan would work.  The Plan Administrator also published a summary plan description ("SPD") that was provided to employees and later distributed to new hires.  CIGNA sends personalized annual statements to each participant indicating the amount of his or her account balance every year (as well as certain other information).  Separately, CIGNA provided employees with annual Total Compensation Reports indicating their account balance, the approximate annuity benefit to which the employee was entitled, and other details to assist in retirement planning.  In more recent years, CIGNA has published the Plan's SPD on its Intranet and developed an electronic system for participants to view their account balance and obtain benefit estimates online.

### B.    Nature of Claims and Defenses

Plaintiffs Janice C. Amara, Gisela R. Broderick, and Annette S. Glanz ("Plaintiffs") have brought this action against Defendants CIGNA Corporation ("CIGNA") and the CIGNA Pension Plan (the "Plan") (together "Defendants") alleging violations of the ERISA.  Plaintiffs' Third Amended Complaint (the "Complaint") challenges certain aspects of, and communications about, CIGNA's cash balance pension plan, known as "Part B," which became effective January 1, 1998.  The Third Amended Complaint contains five claims:[4]

- Count 1 alleges that the formula used to calculate "opening account balances" for the cash balance plan violated ERISA's non-

---

[4]    This Court, per Judge Squatrito, certified a plaintiff class by Order of December 20, 2002. Plaintiffs added Counts 4 and 5 of their Complaint after the class was certified. See Motion to File Second Amended Complaint (dkt # 112-1); Third Amended Complaint (dkt # 165).  Accordingly, the appropriateness of these claims for class treatment has not been considered in this case. See Fed. R. Civ. P. 23(c)(1)(B) ("An order certifying a class action must define the class and the class claims, issues, or defenses . . . .")

4

> forfeitability and accrual rules, ERISA Sections 203(a) and 204(b)(1)(B), 29 U.S.C. §§ 1053(a) and 1054(b)(1)(B).

- Count 2 alleges that the summary plan description ("SPD") for Part B did not satisfy applicable statutory disclosure requirements under ERISA Section 102, 29 U.S.C. § 1022.

- Count 3 alleges that Part B (and by definition all cash balance plans) is inherently age discriminatory and therefore violates ERISA Section 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i).

- Count 4 challenges whether Defendants satisfied any disclosure obligations under ERISA Section 204(h), 29 U.S.C. § 1054(h), as that provision existed in 1997-1998.

- Count 5 alleges that Part B violated the anti-cutback rule under ERISA Section 204(g), 29 U.S.C. § 1054(g).

See Third Amended Complaint (dkt # 165).

Counts 1, 3, and 5 depend exclusively on the written terms of Part B and the interpretation of applicable law. In that regard, every court to have considered the question presented in Count 1 has rejected Plaintiffs' argument that similar formulas for setting opening account balances for cash balance plans violate ERISA. Campbell v. BankBoston, 327 F.3d 1 (1st Cir. 2003) (cash balance formula for setting opening account balances does not violate ERISA); Richards v. FleetBoston Financial Corp., 427 F. Supp. 2d 150 (D. Conn. 2006) (same); Register v. PNC Fin. Servs. Group, No. 04-6097, 2005 WL 3120268 (E.D. Pa. Nov. 21, 2005) (same). These courts all reached the right result and, for the reasons explained in detail in Defendants' Trial Brief, Defendants respectfully submit that this Court too should reject Plaintiffs' claim in Count 1.

As for Count 3, there is a split of legal authority as to whether cash balance plans are inherently age discriminatory. Several courts have found that the relevant statutory provision, ERISA Section 204(b)(1)(H)(i), is ambiguous, i.e., allows for of more than one reasonable interpretation. Based on the legislative history, the Treasury Department's

5

view that cash balance plans are legal, and fundamental economic principles, these courts have rejected challenges to the design of cash balance plans.  <u>Register</u>, 2005 WL 3120268 (rejecting claim that cash balance plan design is age discriminatory); <u>Eaton v. Onan Corp.</u>, 117 F. Supp. 2d 812 (S.D. Ind. 2000) (same); <u>Tootle v. ARINC, Inc.</u>, 222 F.R.D. 88 (D. Md. 2004) (same); <u>Engers v. AT&T Corp.</u>, No. 98-3660, 2001 U.S. Dist. LEXIS 25889 (D.N.J. June 6, 2001) (same);  <u>Hurlic v. S. Cal. Gas Co.</u>, No. 05-5027 (C.D. Cal. Mar. 24, 2006) (same) (attached to Defs' Trial Brief as Exhibit A).  Two other courts have found that the relevant statutory provision is unambiguous and have essentially held that all cash balance plans are per se age discriminatory and illegal.  See <u>Cooper v. IBM Pers. Pension Plan</u>, 274 F. Supp. 2d 1010 (S.D. Ill. 2003) (cash balance plan is age discriminatory based on the unambiguous language in the statute);[5] <u>FleetBoston</u>, 427 F. Supp. 2d 150 (same).  Respectfully, the <u>IBM</u> and <u>FleetBoston</u> courts reached their conclusions based on meaningless mathematical comparisons (e.g., comparing the benefit payable to a 60-year-old <u>in 2011</u> against the benefit payable to a 30-year-old <u>in 2041</u> without reducing the benefits to present value), notwithstanding that from an economic or financial standpoint, it is undisputed that older participants in a cash balance plan are treated the same as, or better than, similarly situated younger participants.  For the reasons explained in Defendants' Trial Brief, and consistent with <u>Eaton</u>, <u>Tootle</u>, <u>Engers</u>, <u>Register</u>, and <u>Hurlic</u>, Defendants respectfully submit that this Court should find that Part B is not age discriminatory and reject Plaintiffs' claim in

---

[5]     <u>Cooper</u> is on appeal to the United States Court of Appeals for the Seventh Circuit, Case No. 05-3588.  The American Benefits Council, the ERISA Industry Committee, and several large employers submitted an amicus brief to the Seventh Circuit in <u>Cooper</u> urging reversal of the district court decision because of its implications for the pension plan community as a whole.  Oral argument in the case was held on February 16, 2006.

Count 3.[6]

Plaintiffs' claim in Count 5 alleges a violation of the anti-cutback rule under ERISA Section 204(g), which prohibits a plan amendment that reduces a participant's previously accrued benefit. This claim fails because the written terms of Part B unequivocally provide that all benefits previously accrued under the prior plan formula ("Part A") are protected and that an employee can never receive less than his or her previously earned benefit. See, e.g., King v. Pension Trust Fund of the Pension, Hospitalization and Benefit Plan of the Elec. Ind., No. 01-CV-2604, 2003 WL 22071612, at *10 (E.D.N.Y. Sept. 5, 2003) ("[T]he proper inquiry under ERISA § 204(g)(1) is whether plaintiff's monthly benefit was in fact reduced by a plan amendment.") (internal citations and quotations omitted); Langman v. Laub, No. 97 Civ. 6063 (MGC), 2002 WL 472033, at *2 (S.D.N.Y. Mar. 28, 2002) (same), aff'd, 328 F.3d 68 (2d Cir. 2003).

Counts 2 and 4 challenge particular communications about the Plan, i.e., the SPD and Section 204(h) Notice, and therefore turn on the content of those communications and the precise statutory provisions at issue. See 29 U.S.C. § 1022; 29 U.S.C. § 1054(h). See also Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 102 (2d Cir. 2005) ("[A fiduciary] has no duty to disclose to plan participants information additional to that required by ERISA."). In this case, the SPD and 204(h) Notice satisfied the specific legal requirements applicable to them. Moreover, even if these communications were deficient – which they were not – these claims would fail because Plaintiffs were not likely, or actually, harmed by any such deficiencies. See Burke v. Kodak Ret. Income Plan, 336

---

[6] Congress presently is considering legislation to clarify that cash balance plans are legal and do not discriminate against older employees. See, e.g., H.R. 2830 (2005).

7

F.3d 103, 113 (2d Cir. 2003) (to prevail based on a deficient SPD, a plaintiff must prove that he or she "was likely to be have been harmed as a result of a deficient SPD. Where a participant makes this initial showing, however, the employer may rebut it through evidence that the deficient SPD was in effect a harmless error."); Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst., 404 F.3d 167, 170-72 (2d Cir. 2005) (same). The evidence at trial will demonstrate that Plaintiffs and the testifying class members were provided details regarding how the cash balance plans operated and annual statements reflecting their account balance and how much it had increased from the prior year—more than enough information to allow them to make informed employment, retirement and financial decisions. Moreover, Plaintiffs' claims in Counts 2 and 4 lie only against the Plan Administrator, who has the exclusive responsibility for publishing SPDs and 204(h) Notices and who is not a defendant in this case. Plaintiffs' Section 204(h) notice claim also is time barred.

For the reasons set forth in Defendants' Trial Brief, and as further supported by Defendants' Proposed Findings of Fact and Conclusions of Law, there simply is no factual or legal basis for Plaintiffs' claims. At the conclusion of trial, judgment should therefore be entered in favor of Defendants on all counts of the Complaint.

## VI.     STIPULATIONS AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendants' Proposed Findings of Fact and Defendants' Proposed Conclusions of Law are each being filed simultaneously with this Memorandum. Defendants also have identified Plaintiffs' Proposed Findings of Fact to which they stipulate.

## VII.    TRIAL BRIEF

Defendants' Trial Brief is being filed simultaneously with this Memorandum.

## VIII. WITNESSES

### Defendants' Anticipated Witnesses

| Name and Address | Subject of Testimony | Expected Duration of Testimony |
|---|---|---|
| Lawrence J. Sher<br>Director of Research<br>Buck Consultants<br>One Pennsylvania Plaza<br>New York, NY 10119 | Expert actuarial analysis of CIGNA's prior benefit formulas (Part A) and its cash balance design (Part B) | Three-fourths of one day |
| John Arko<br>CIGNA Corporation<br>Two Liberty Place<br>1601 Market Street<br>Mailstop TL17B<br>Philadelphia, PA 19192 | Design and operation of the cash balance plan, communications regarding the Plan, and administration of the Plan | One-half day |
| Denise Hill<br>1861 Woodland Terrace<br>Bridgewater, NJ 08807 | Communications about the conversion to Part B and the operation of Part B | Two hours |
| Andy Hodges<br>61 Kathryn Lane<br>Plantsville, CT 06479 | Design, operation, and administration of Part B | Two hours |
| Lorraine Morris<br>280 Trumbull Street<br>Hartford, CT 06103 | Prudential's recordkeeper function for the CIGNA Pension Plan | One hour |
| Donna LeClair<br>280 Trumbull Street<br>Hartford, CT 06103 | Prudential's recordkeeper function for the CIGNA Pension Plan | One hour |
| Donna Cherry<br>280 Trumbull Street<br>Hartford, CT 06103 | Prudential's recordkeeper function for the CIGNA Pension Plan | One hour |
| Gregg Laboda<br>280 Trumbull Street<br>Hartford, CT 06103 | Prudential's recordkeeper function for the CIGNA Pension Plan | One hour |

In addition to the above witnesses, Defendants reserve the right to call any of the

witnesses on Plaintiffs' list, to the extent Plaintiffs should not call the witness at trial, or any Prudential 30(b)(6) deponent who has not been deposed. Finally, Defendants reserve the right to call any and all witnesses in rebuttal to evidence produced during Plaintiffs' case in chief.

### Defendants' Expert Witness - Lawrence Sher

#### Expertise

Lawrence Sher is a Principal and the Director of Retirement Policy at Buck Consultants, Inc., an actuarial and employee benefits consulting firm owned by Affiliated Computer Services. He is a Fellow of the Society of Actuaries and has practiced as an actuary since 1973. He practices primarily in the area of pension benefits.

Mr. Sher has extensive experience designing and consulting with respect to defined benefit pension plans, including cash balance plans. In the past sixteen years, he has devoted a significant portion of his time to issues relating to cash balance plans, including providing technical assistance and advice to his firm's consultants and clients and to government officials, initiating and supervising research activities, speaking at professional conferences, publishing articles, and responding to questions from the media.

A copy of his curriculum vitae is attached to his Expert Report. See Stipulated Trial Exhibit 10.

#### Opinion to be Expressed

Mr. Sher will provide analysis with regard to Counts 1, 3, 4 and 5, as expressed in his Expert Report and Supplemental Expert Report. See Stipulated Trial Exhibits 10 and 11. In summary, Mr. Sher will opine about how Part B works and the economic impact of Part B on Plaintiffs and other Part B participants. Mr. Sher will testify that CIGNA's

Part B formula treats older employees the same as, or better than, similarly situated younger employees. He also will demonstrate that benefits under Part B continue to accrue in the same manner before and after normal retirement age, and indeed, in a manner that becomes more favorable as age progresses. Mr. Sher also will opine and demonstrate that Plaintiffs' expert witness Claude Poulin's methodology for determining the rate of an employee's benefit accrual with respect to cash balance benefits under Part B is inconsistent with the way benefits are earned under Part B and inconsistent with the way that actuaries measure rates of accrual, because it does not account for the economic realities associated with the benefits being examined (e.g., time value of money, years to payout of the benefit) and the purpose for which the analysis is being conducted. Mr. Sher also will opine that if Mr. Poulin's methodology for measuring rates of benefit accrual were applied to other well-known, common, and traditional plan formulas, these plan formulas would all reflect that benefit accrual rates decline with age for benefits earned after normal retirement age.

Moreover, Mr. Sher also will opine on the conversion from CIGNA's prior plan formula to Part B, the impact of that conversion on employees' benefits, and protections in Part B that benefit employees and protect previously earned benefits. In particular, Mr. Sher will testify that CIGNA converted to its cash balance formula using well-recognized and typical transition methods and protections for previously earned benefits.

**Summary of Basis for Opinion**

The basis for Mr. Sher's opinions are set forth in his Expert Report and Supplemental Expert Report. In summary, Mr. Sher's opinion was based on his review of the terms of Part B and calculations performed regarding the benefit formula under

11

Part B, as well his years of experience as an actuary, in the pension consulting field, and working with cash balance plans.

### Materials on Which Witness Intends to Rely

1. Expert Report of Lawrence Sher, dated June 24, 2003, and documents referenced therein, Trial Ex. 10

2. Supplemental Expert Report of Lawrence Sher, dated October 28, 2005, and documents referenced therein, Trial Ex. 11

## IX.    TRIAL EXHIBITS

A List of Defendants' Proposed Trial Exhibits 501 to 570, with a brief description of their contents, is attached to this Memorandum at Exhibit A.  Defendants reserve the right to designate additional proposed exhibits upon the completion of the depositions of Patricia Flannery, Lillian Jones, Denise Hill and any Prudential Rule 30(b)(6) witnesses, or upon a supplemental production of documents in this matter.

## X.    DEPOSITION TESTIMONY

Defendants reserve the right to read the deposition testimony of any of the Plaintiffs or testifying class members into evidence.

In their Trial Memorandum, Plaintiffs only designated deposition testimony to be relied upon in the case that certain witnesses are not called at trial.  Of those witnesses, Defendants intend to call Lawrence Sher, John Arko, Andy Hodges, Lorraine Morris, and Gregg Laboda.  To the extent that these witnesses are not called at trial and Plaintiffs are permitted to introduce their deposition testimony, Defendants reserve the right to designate other portions of their deposition testimony and counter-designate to Plaintiffs' proposed designations.  Because Defendants do not intend to call David Durham at trial, Defendants hereby designate the following deposition testimony:

| **Deponent and deposition date** | **Page references to be read into evidence** |
|---|---|
| David Durham, December 3, 2002 | 80, 154-55 |

## XI. ANTICIPATED EVIDENTIARY PROBLEMS

Defendants have attached hereto Exhibit B, a list of Defendants' responses, including objections, to Plaintiffs' proposed exhibits, and Exhibit C, an explanatory Memorandum Regarding Defendants' Responses to Plaintiffs' Proposed Trial Exhibits. Defendants do not anticipate any other evidentiary problems in advance of trial. Defendants reserve the right to make appropriate objections to the presentation of evidence at trial.

Dated:  June 27, 2006                    Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

By: /s/ Joseph J. Costello_____
Joseph J. Costello
Jeremy P. Blumenfeld
Jamie M. Kohen
*Admitted pro hac vice*
1701 Market Street
Philadelphia, Pennsylvania  19103-2921
(215) 963-5295/5258/5472
(215) 963-5001 (fax)

**ROBINSON & COLE**
James A. Wade (CT # 00086)
280 Trumbull Street
Hartford, Connecticut  06103
(860) 275-8270
(860) 275-8299 (fax)

*Attorneys for Defendants*
CIGNA Corporation and CIGNA Pension Plan