UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Janice C. Amara, Gisela R. Broderick, Annette S. Glanz, individually and on behalf of all others similarly situated, | : : : : | |
| Plaintiffs, | : : | |
| vs. | : : | Civil. No. 3:01-CV-2361 (MRK) |
| CIGNA Corp. and CIGNA Pension Plan, | : : : | July 18, 2006 |
| Defendants. | : : | |

**PLAINTIFF CLASS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EXPERT
TESTIMONY OF PROFESSOR JAMES F. STRATMAN**

Stephen R. Bruce Ct 23534
Suite 210
805 15th St., NW
Washington, DC 20005
(202) 371-8013

Thomas Moukawsher Ct 08940
Moukawsher & Walsh, LLC
21 Oak Street
Hartford, CT 06106
(860) 287-7000

Attorneys for the Plaintiff Class

**Table of Contents**

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      The Standard for Admitting Expert Testimony under the Federal Rules of
        Evidence Is "Liberal"; FRE 704 Provides that Expert Testimony Is Not
        Objectionable Simply Because It Embraces an Ultimate Issue  . . . . . . . . . . . . . . . 2

II.     Another District Court Has Held that Professor Stratman's Testimony on the
        Understandability of Disclosures About a Cash Balance Conversion Is
        Admissible Because It May "Assist the Trier of Fact" by "Help[ing] to Illustrate
        How an Unsophisticated Reader Would Understand" the Communications. . . . . . 5

III.    Whether a SPD, SMM, or Section 204(h) Notice is "Written in a Manner
        Calculated to be Understood by an Average Plan Participant" Presents a Mixed
        Question of Law and Fact; Professor Stratman's Report Examines the Language
        of CIGNA's Communications and Analyzes How These Statements Would Be
        Understood by a Lay Reader. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Alexander v. Primerica Holdings*, 967 F.2d 90 (3d Cir. 1992) . . . . . . . . . . . . . . . . 1

*Allen v. West Point-Pepperell*, 1995 U.S. Dist. LEXIS 11025 (S.D.N.Y. 1995)   11

*Aventis Int'l Science v. Scotts Co.*, 383 F. Supp. 2d 488 (S.D.N.Y. 2005) . . . . . . 4

*Bixler v. Central Pa. Teamsters Health and Wel. Fund*, 12 F.3d 1292
   (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Breezy Point Cooperative v. CIGNA Property and Casualty Co.*, 868 F.
   Supp. 33 (E.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Carter-Wallace v. Otte*, 474 F.2d 529 (2d Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . 9

*Cary Oil Co. v. MG Refining & Marketing*, 2003 WL 1878246 (S.D.N.Y. 2003) . 4

*Chiles v. Ceridian*, 95 F.3d 1505 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 1

*Daubert v. Merrill Dow Pharmaceutical, Inc.*, 509 U.S. 579 (1993) . . . . . . . . . . 3

*Densberger v. United Techs. Corp.*, 297 F.3d 66 (2d Cir. 2002) . . . . . . . . . . . . . 4

*EEOC v. Beauty Enterprises, Inc.*, 361 F. Supp. 2d 11 (D.Conn. 2005) . . . . . . 7, 9

*Engers v. AT&T*, 2005 WL 2338862 (D.N.J. Aug. 10, 2005), *aff'd*, 2006 WL
   1210507 (April 17, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5-6

*Fiataruolo v. United States*, 8 F.3d 930 (2d Cir. 1993) . . . . . . . . . . . . . . 3-5, 12-13

*Glaziers v. Newbridge Sec.*, 93 F.3d 1171 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . 9

*Haberern v. Kaupp Vascular Surgeons Ltd.*, 812 F. Supp. 1376 (E.D.Pa.1992)   12

*Hygh v. Jacobs*, 961 F.2d 359 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Indecor v. Fox-Wells and Co.*, 1986 WL 991 (S.D.N.Y. 1986) . . . . . . . . . . . . . . 5

*In re IPO Securities Litigation*, 174 F. Supp. 2d 61 (S.D.N.Y. 2001) . . . . . . . . . 4

*Lappe v. American Honda Motor Co.*, 857 F. Supp. 222 (N.D.N.Y 1994), *aff'd*,
    101 F.3d 682 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Layaou v. Xerox Corp.*, 238 F.3d 205 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . 11

*McCullock v. Fuller Co.*, 61 F.3d 1038 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . 3

*Meinhart v. Unisys*, 74 F.3d 420 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mullins v. Pfizer,* 23 F.3d 663, 669 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . 9

*Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . 3

*Ortiz v. Stanley-Bostich, Inc.*, 2000 WL 640645 (S.D.N.Y. 2000) . . . . . . . . . . . . 9

*Pavlik v. Lane Ltd.*, 135 F.3d 876 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Register v. PNC Financial Services Group*, 2005 WL 3120268 (E.D. Pa. 2005)  11

*Rhorer v. Raytheon Engineers and Constructors, Inc.*, 181 F.3d 634
    (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . 8

*Savino v. Computer Credit, Inc.*, 164 F.3d 81 (2d Cir. 1998) . . . . . . . . . . . . . . . . 8

*Travelers Property & Casualty v. GE*, 150 F. Supp. 2d 360 (D.Conn. 2001) . . . . 3

*U.S. v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Articles of Banned Hazardous Substances*, 34 F.3d 91
    (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Boissoneault*, 926 F.2d 230 (2d Cir. 1991) . . . . . . . . . . . . . . . . 4

*United States v. Duncan*, 42 F.3d 97 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. McDade*, 1995 WL 476230 (E.D.Pa. 1995) . . . . . . . . . . . . . 4, 13

*Wilkins v. Mason Tenders District Council Pension Fund*, 445 F.3d 572
    (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

### FEDERAL STATUTES, RULES, AND REGULATIONS

ERISA § 102(a), 29 U.S.C. § 1022(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

26 C.F.R. 1.411(d)-6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

29 C.F.R. 2520.102-2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

29 C.F.R. 2520.104b-3(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Federal Rule of Evidence 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

Federal Rule of Evidence 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

**Introduction**

Defendants ask this Court to exclude the testimony and report of Plaintiffs' communications expert, Professor James F. Stratman. Professor Stratman is a recognized expert in the understandability of written communications in the legal, business and technical fields. He has published extensively and authored one of the few scholarly articles on ERISA disclosures, on which both the Third and Tenth Circuits have relied.[1]

Defendants do not challenge Professor Stratman's methodology or qualifications, nor have Defendants produced any factual evidence or expert testimony to counter Professor Stratman's report on CIGNA's November 1997 Newsletter, December 1997 Information Kit, and October 1998 and September 1999 Summary Plan Descriptions. Instead, Defendants' only argument is that Professor Stratman's expert report and testimony address "purely legal issues" and are therefore inadmissible. Any review of his report belies this contention. See Ex. 8 in Binder I of the Plaintiff Class' Exhibits and Pls. Prop. Findings at ¶¶179-189.

In a similar cash balance case, the United States District Court for the District of New Jersey rebuffed AT&T's attempt to exclude Professor Stratman's expert report on the same basis. See *Engers v. AT&T*, 2005 WL 2338862, *4 (D.N.J. Aug. 10, 2005),

---

[1] Stratman, J. (1988). Contract Disclaimers in ERISA Summary Plans: A Deceptive Practice? *Industrial Relations Law Journal*, Vo. 10, No. 3, 350 - 380. Cited in *Alexander v. Primerica Holdings*, 967 F.2d 90, 93 (3d Cir. 1992), and *Chiles v. Ceridian*, 95 F.3d 1505, 1518-19 (10th Cir. 1996).

aff'd, 2006 WL 1210507 (April 17, 2006). The nature of Professor Stratman's expert report and testimony is no different here: He examines CIGNA's communications to determine whether they were calculated to offer understandable disclosures to participants that the cash balance conversion produced substantially lower benefits than what they enjoyed before and contained other disadvantageous features, such as "wear-aways" under which they would earn no additional benefits for a period of years.

Whether an SPD or Section 204(h) notice is "written in a manner calculated to be understood by the average plan participant" is ultimately, of course, a question of law. But the determination depends on factual elements upon which an expert may opine to assist the Court. The fact that Professor Stratman's analysis touches on elements of the ultimate determination is not grounds for exclusion. Federal Rule of Evidence 704 expressly provides that expert testimony is not to be excluded simply because it embraces an ultimate issue to be decided by the trier of fact. The Court may consider and give the appropriate weight to Professor Stratman's testimony and report.

I.  **The Standard for Admitting Expert Testimony under the Federal Rules of Evidence Is "Liberal"; FRE 704 Provides that Expert Testimony Is Not Objectionable Simply Because It Embraces an Ultimate Issue.**

Federal Rule of Evidence 702 provides that a witness qualified as an expert by knowledge, skill or experience, may offer his or her opinions in order to assist the trier of fact to understand the evidence or determine a fact in issue, "if (1) the testimony is based upon sufficient facts or data, (2) testimony is the product of reliable principles and

2

methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

In essence, "[t]he Federal Rules of Evidence allow the trial court to admit expert testimony when it thinks that testimony will assist the triers of fact in understanding the case." *Fiataruolo v. United States,* 8 F.3d 930, 941 (2d Cir. 1993). The Second Circuit recognizes the "well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005); accord, *Travelers Property & Casualty v. GE*, 150 F.Supp. 2d 360, 364 (D.Conn. 2001) ("review of the case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule"); *Lappe v. American Honda Motor Co.*, 857 F.Supp. 222, 227 (N.D.N.Y 1994), *aff'd*, 101 F.3d 682 (2d Cir. 1996) ("Liberality and flexibility in evaluating qualifications should be the rule").

Rather than excluding the testimony of qualified experts, "the traditional and appropriate means of attacking" expert testimony are "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert v. Merrill Dow Pharmaceutical, Inc.*, 509 U.S. 579, 596 (1993); accord *McCullock v. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995) (disputes over credentials, methodology, or textual authority "go to the weight, not admissibility" of expert's testimony).

As indicated, Federal Rule of Evidence 704(a) provides that expert testimony "is

3

not objectionable because it embraces an ultimate issue to be decided by the trier of fact." In *United States v. Boissoneault*, 926 F.2d 230, 232 (2d Cir. 1991), the Second Circuit explained that "a qualified expert may generally suggest inferences that should be drawn from the facts," "including inferences embracing the ultimate issue in the case." See also *Densberger v. United Techs. Corp.*, 297 F.3d 66 (2d Cir. 2002) (although it was improper for trial court to admit expert testimony containing legal opinion, reversal was unnecessary because court properly advised the jury to follow the law instead of witness' testimony); *United States v. McDade*, 1995 WL 476230, *3 (E.D.Pa. 1995) ("Although unadorned legal conclusions are impermissible, an expert may draw certain legal conclusions so long as he sets forth explicitly the facts upon which he relied to reach his conclusion in order to enable the jury to evaluate independently his conclusion," citing *Fiataruolo*, supra); *Aventis Int'l Science v. Scotts Co.*, 383 F.Supp. 2d 488, 516 (S.D.N.Y. 2005) (permitting experts to testify but cautioning that testimony would be limited so as not to "usurp" jury's role as fact-finder); *Cary Oil Co. v. MG Refining & Marketing*, 2003 WL 1878246, * 5 (S.D.N.Y. 2003) (experts may "testify about issues that would help the jury understand concepts it needed to know to render a verdict despite the fact that the opinions may encroach on matters of law"*)*; *In re IPO Securities Litig.*, 174 F.Supp. 2d 61, 65 (S.D.N.Y. 2001) ("Experts may also give limited testimony on mixed questions of law and fact, but the testimony must remain focused on helping the jury or judge understand particular facts in issue").

Thus, while Rule 704 "was not intended to allow experts to offer opinions embodying legal conclusions," experts may testify "on questions of fact as well as mixed questions of fact and law." *Fiataruolo,* supra, 8 F.3d at 941-42. "This sort of testimony is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact." *Id*. In a bench trial, the Court is obviously capable of properly weighing the expert testimony without a cautionary instruction. See *Indecor v. Fox-Wells and Co.*, 1986 WL 991, *4 (S.D.N.Y. 1986) (testimony can "embrace ultimate facts for determination by the Court"; challenges go "to the weight that should be accorded [the expert's] testimony than to whether he should be allowed to testify at all").

**II.     Another District Court Has Held that Professor Stratman's Testimony on the Understandability of Disclosures About a Cash Balance Conversion Is Admissible Because It May "Assist the Trier of Fact" by "Help[ing] to Illustrate How an Unsophisticated Reader Would Understand" the Communications.**

In *Engers v. AT&T*, 2005 WL 2338862, *4 (D.N.J. Aug. 10, 2005), a similar cash balance case to this one, the United States District Court for the District of New Jersey turned back AT&T's efforts to exclude Professor Stratman's testimony.[2] There, AT&T challenged Professor Stratman's qualifications and also argued that his testimony

---

[2] As summarized by the Court, Professor "Stratman prepared a report based on information defendant gave their employees regarding the plan amendments. He compares the "understandability" of the plan amendments as given to employees with Poulin's report to determine if the information that was communicated is consistent with the changes. Stratman also assesses the language in defendant's ERISA disclosure to ascertain its understandability." 2005 WL 2338862 at *1.

5

improperly opined on a question of law. Magistrate Judge Ronald J. Hedges held that, in light of Professor Stratman's Ph.D. in Rhetorical Theory and fifteen years of research and teaching experience, his analysis of disclosures in an SPD was "within his expertise as it is focused on the understandability on the wording and phrasing" and he used a "generally accepted method based upon word patterns, grammar, ordering, and other factors." 2005 WL 2338862 at *4. Judge Hedges concluded that Professor Stratman's "analysis on understandability could assist the trier of fact" by "help[ing] to illustrate how an unsophisticated reader would understand AT&T's communications about the cash balance plan." Id. On appeal under Rule 72, the district court affirmed. The district court held that if it found any "impermissible legal analysis" in Professsor Stratman's report, it could "disregard that analysis," "rather than make piecemeal determinations regarding the admissibility of discrete portions" of the report. 2006 WL 1210507, *4-5 (D.N.J. April 17, 2006).

### III. Whether a SPD, SMM, or Section 204(h) Notice is "Written in a Manner Calculated to be Understood by an Average Plan Participant" Presents a Mixed Question of Law and Fact; Professor Stratman's Report Examines the Language of CIGNA's Communications and Analyzes How These Statements Would Be Understood by a Lay Reader.

Professor Stratman is a recognized expert in written communications and rhetorical theory, with a career-long emphasis on the understandability of communications dealing with legal subjects, e.g., ballot initiatives and jury instructions, as well as ERISA communications. Significantly, in their trial brief and in this motion,

6

Defendants have not challenged a single factual conclusion that Professor Stratman has drawn concerning CIGNA's disclosures. Instead, Defendants contend in the motion to exclude that whether the SPD "adequately described provisions of Part B" "is a legal conclusion based on the relevant statutes" and that the communications are "written documents whose terms speak for themselves." Defs. Br. at 5.

ERISA and the Department of Labor's regulations require that the "circumstances" that can result in "ineligibility," "reductions" or "loss of benefits" must be identified and described "in a manner that is <u>calculated to be understood</u> by the average plan participant." ERISA § 102(a), 29 U.S.C. § 1022(a), 29 C.F.R. 2520.102-2(a) (emph. added).[3] Because ERISA requires understandable disclosures of circumstances that can cause reductions, disadvantages, and losses, a communications expert like Professor Stratman can evaluate the language and opine on what was reasonably calculated to be disclosed by applying concepts from rhetorical theory and communications research. In many cases, his analysis "may in some way overlap with matters within the [trier of facts'] experience" but that is not grounds for excluding "relevant expert testimony." *EEOC v. Beauty Enterprises, Inc.*, 361 F.Supp.2d 11, 16 (D.Conn. 2005) (admitting linguist's testimony regarding use of English language at job site and effect of "English-only" workplace rule).

---

[3] The same standard applies in the regulations on ERISA § 204(h) notices, 26 C.F.R. 1.411(d)-6, Q&A 10, and in the regulations on Summaries of Material Modifications (SMM's), 29 C.F.R. 2520.104b-3(a).

As *Engers* holds, this type of testimony can assist the trier of fact by illustrating how an "unsophisticated" reader would understand CIGNA's communications about the cash balance conversion. The analysis of a qualified expert on the understandability of the written communications is preferable to the Court relying on lawyers for adverse parties to act as the analysts of the disclosures. "Expert witnesses are often uniquely qualified in guiding the trier of fact through a complicated morass of obscure terms and concepts." *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994).

In addition to *Engers*, courts have recognized that the disclosure requirements in a number of analogous statutes present mixed questions of fact and law. Under the Fair Debt Collection Practices Act, the Second Circuit has held that a debt collection notice is "overshadowing or contradictory if it fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights." In making this determination, the Second Circuit has recognized that a lawyer's understanding of a communication is not necessarily that of an "average" person. *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998); accord *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996) (the standard focuses on "how the least sophisticated consumer–one not having the astuteness of a Philadelphia lawyer or even the sophistication of the average, everyday, common consumer–understands the notice he or she receives").

In a similar vein, courts have also found that the adequacy of warning labels and

patent application disclosures involves issue of fact for which expert testimony may assist the court. *Carter-Wallace v. Otte*, 474 F.2d 529, 547 (2d Cir. 1972) (adequacy of patent application disclosure presented mixed question of law and fact: "There can be no doubt that expert testimony will often aid in understanding the underlying factual content"); *Pavlik v. Lane Ltd.*, 135 F.3d 876, 887 (3d Cir. 1998) (testimony of a warnings expert raised a genuine issue of material fact about the adequacy of a warning label); *Ortiz v. Stanley-Bostich, Inc.*, 2000 WL 640645, *3 (S.D.N.Y. 2000) (expert testimony regarding inadequacy of warning label was admissible).[4]

The proposition that ERISA disclosure claims involve "purely" legal issues is simply not supported by the case law. See, e.g., *Mullins v. Pfizer,* 23 F.3d 663, 669 (2d Cir. 1994) ("If an affirmative misrepresentation is found, whether it is "material" is "a mixed question of law and fact" based on whether "there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about if and when to retire"); *Bixler v. Central Pa. Teamsters Health and Wel. Fund*, 12 F.3d 1292, 1302 (3d Cir. 1993) (remanding for a "finding of fact" on whether nondisclosures were material); *Glaziers v. Newbridge Sec.*, 93 F.3d 1171, 1185-86 (3d Cir. 1996) (same); *Meinhart v. Unisys*, 74 F.3d 420, 442-43 (3d Cir. 1996) (finding

---

[4] Accord *U.S. v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (admitting expert testimony on disclosure requirements from securities law professor because "in complex cases...expert testimony may help a jury understand unfamiliar terms and concepts"); *EEOC v. Beauty Enterprises, Inc.*, supra.

9

"issues of fact" regarding duty to convey complete and accurate information regarding plan benefits).

Moreover, while CIGNA's memorandum in support of the motion to exclude repeatedly represents to the Court that its determinations on the disclosure claims will be "purely legal," CIGNA's Proposed Findings and Trial Brief, submitted on the same day as the motion to exclude, establish the exact opposite. They show that the Court will have to make factual determinations on the disclosure claims–even were it to rule in CIGNA's favor. In the Proposed Findings of Fact (dkt. #181), CIGNA dedicates approximately <u>twenty pages</u> to proposed factual findings related to what its communications did or did not disclose. Paragraphs 160 to 169 set forth what the November 1997 Newsletter purportedly "introduced," "informed" and "described" to participants. Paragraphs 170 to 191 address CIGNA's Information Kit, which purportedly "notified each participant" about their Part A benefits, "described" the "change from Part A to Part B,"and "offered examples to help participants understand how their accounts would grow." Paragraphs 198 to 205 go through the information in CIGNA's 1998 Summary Plan Description, stating that the SPD "sought to concisely and accurately reflect the key Plan provisions" and that "Nowhere does the SPD represent that an employee will receive the Minimum Benefit plus his or her benefit and interest credits."

In its Trial Brief, CIGNA likewise asserts that "The Part B SPD met these disclosure requirements. Specifically, the SPD contained information concerning the

10

following topic areas." Dfs. Trial Br. at 51 (dkt. # 182) (listing thirteen "topic areas"). CIGNA further contends that "each [participant] was provided details regarding how the cash balance plans operated and annual statements reflecting their account balance and how much it had increased form the prior year–more than enough information to permit them to make informed employment, retirement and financial decisions." Trial Br. at 4. Clearly, CIGNA understands that whether its communications were calculated to provide understandable disclosures involves factual determinations.

Defendants cite several cases to support the contention that disclosure questions are purely questions of law. However, those cases concern an analytically separate question of the applicable standard of review and do not address expert testimony. See *Wilkins v. Mason Tenders District Council Pension Fund*, 445 F.3d 572, 581 (2d Cir. 2006); *Rhorer v. Raytheon Engineers and Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999).[5]

The other cases that CIGNA cites involve challenges to testimony where the expert had nothing to offer except an opinion of law and did not offer an opinion on factual elements. See *United States v. Articles of Banned Hazardous Substances*, 34 F.3d 91, 96 (2d Cir. 1994) (excluding expert testimony on whether regulations applied to "sprays" and not "foams"); *Allen v. West Point-Pepperell*, 1995 U.S. Dist. LEXIS 11025, *37 n.25

---

[5] *Layaou v. Xerox Corp.*, 238 F.3d 205, 210 (2d Cir. 2001), and *Register v. PNC Fin. Servs. Group.*, 2005 WL 3120268, *9 (E.D. Pa. 2005), likewise do not address expert testimony.

(S.D.N.Y. 1995) (excluding actuaries' opinion on committee's authority under Revenue Ruling 79-90 to change discount rate); *Breezy Point Cooperative v. CIGNA Property and Casualty Co.*, 868 F.Supp. 33, 36 (E.D.N.Y. 1994) ("legal opinion[] as to the meaning of the contract terms at issue" was impermissible); *Haberern v. Kaupp Vascular Surgeons Ltd.*, 812 F.Supp. 1376, 1378 (E.D.Pa. 1992) (expert testimony from a lawyer was "in essence, a legal opinion that the release Defendants requested Plaintiff to sign did not violate ERISA").

While *Hygh v. Jacobs*, 961 F.2d 359, 364-65 (2d Cir. 1992), cited several times in Defendants' motion, does hold that testimony "regarding the ultimate legal conclusion" should have been excluded at trial, it also ruled that reversal was <u>not</u> warranted because the testimony was "expressed within a larger body of otherwise unobjectionable testimony" and the trial judge appropriately instructed the jury. In *Fiataruolo*, supra, 8 F.3d at 942, the Second Circuit found that "when viewed in isolation," expert testimony regarding whether a defendant was "responsible" for the payment of taxes under the Internal Revenue Code was on the "border" of inadmissibility. However, "when examined in the proper context," the testimony "[did] not cross the line" because the expert provided a detailed explanation of accounting procedures and then "offered his opinion based on those procedures."

In this instance, Professor Stratman offers a detailed examination of the language in CIGNA's documents and explains how an average reader could comprehend these communications. Based on his evaluation, Mr. Stratman finds that the communications

12

are not reasonably calculated to disclose to employees that the cash balance formula will potentially result in reductions of their benefits and that they, in fact, led employees in the opposite direction by repeatedly assuring them of "full value," "steadier" growth, "enhancements" and "comparable" or "larger" benefits. Pls. Ex. 8 at 5-12. His opinions are clearly "not a simple bald assertion of the law." *Fiataruolo,* 8 F.3d at 942. Instead, he "sets forth explicitly the facts upon which he relied to reach his conclusion." *United States v. McDade*, supra, 1995 WL 476230 at *3. Professor Stratman's analysis, which draws on the expertise he has acquired through years of research and study, is far more helpful and insightful than if the Court were simply to rely on opposing counsel to analyze the understandability of CIGNA's disclosures.

**Conclusion**

For the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion in Limine to Exclude the Expert Testimony of Professor Stratman be denied.

Dated: July 18, 2006

Respectfully submitted,

Stephen R. Bruce ct23534 (pro hac vice)
Allison C. Caalim
805 15th St., NW, Suite 210
Washington, DC 20005
(202) 371-8013
(202) 371-0121 (fax)
stephen.bruce@prodigy.net

/s/ Thomas G. Moukawsher
Thomas G. Moukawsher ct08940
Moukawsher & Walsh, LLC

21 Oak Street
Hartford, CT 06106
(860) 278-7000
(860) 446-8161 (fax)
tmoukawsher@mwlawgroup.com

Attorneys for the Plaintiff Class

**CERTIFICATE OF SERVICE**

I certify that copies of the foregoing Plaintiff Class' Memorandum of Law in Opposition to Defendants' Motion in Limine to Exclude Expert Testimony of Professor James F. Stratman was filed electronically through the CM/ECF system on July 18, 2006. Notice of this filing will be sent by e-mail to all parties listed below by operation of the Court's electronic filing system. The parties may access this filing through the Court's CM/ECF system.

>Joseph J. Costello
>Jeremy P. Blumenfeld
>Jamie M. Kohen
>Morgan, Lewis & Bockius
>1701 Market St.
>Philadelphia, PA 19103-2921
>
>James A. Wade
>Brett J. Boskiewicz
>Robinson & Cole, LLP
>280 Trumbull Street
>Hartford, CT 06103-3597
>
>Christopher A. Parlo
>Morgan Lewis & Bockius
>101 Park Avenue
>New York, NY 10178-0600

/s/ Thomas G. Moukawsher
Thomas G. Moukawsher  ct08940
21 Oak Street
Hartford, CT 06106
(860) 278-7000
(860) 446-8161 (fax)
tmoukawsher@mwlawgroup.com

Attorney for the Plaintiffs