# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

Janice C. Amara, Gisela R. Broderick,  :
Annette S. Glanz, individually and  :
on behalf of all others similarly situated,  :
  :
               Plaintiffs,  :
  :
     vs.  :   Civil. No. 3:01-CV-2361 (MRK)
  :
CIGNA Corp. and  :   July 25, 2006
CIGNA Pension Plan,  :
  :
             Defendants.  :

**PLAINTIFF CLASS' MEMORANDUM IN RESPONSE TO DEFENDANTS'
MEMORANDUM REGARDING DEFENDANTS' RESPONSES TO
PLAINTIFFS' PROPOSED TRIAL EXHIBITS**

Stephen R. Bruce Ct 23534
Suite 210
805 15th St., NW
Washington, DC 20005
(202) 371-8013

Thomas Moukawsher Ct 08940
Moukawsher & Walsh, LLC
21 Oak Street
Hartford, CT 06106
(860) 287-7000

Attorneys for the Plaintiff Class

# Table of Contents

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    CIGNA's Hearsay Objections and the Rules and Exceptions Related Thereto . . . 1

      A.    Not Offered to Prove the Truth of the Matter Asserted . . . . . . . . . . . . . . 1
      B.    Party Admissions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      C.    Prior Statements by a Witness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      D.    Records of Regularly-Conducted activity (Business Records) . . . . . . . . . 3
      E.    Then-Existing State of Mind . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      F.    Recorded Recollections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      G.    Public Records and Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      H.    Market Reports and Commercial Publications . . . . . . . . . . . . . . . . . . . 7
      I.    Former Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      J.    Residual Exception . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      K.    Judicial Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      L.    Summaries of Writings or Recordings, Including Electronic Data . . . . . . 11

II.   Plaintiffs' Responses to CIGNA's Hearsay Objections to Particular Exhibits . . 12

      A.    "News or Journal Articles, Benefits Surveys or Seminar Materials" . . . . 12
      B.    "Documents Prepared by William M. Mercer, Incorporated" . . . . . . . . . 17
      C.    "Documents Prepared by PriceWaterhouse Coopers ... or Towers Perrin" 19
      D.    "Emails Prepared by Class Members and Addressed to CIGNA's
            Signature Benefits Services Department" . . . . . . . . . . . . . . . . . . . . . . 20
      E.    "Witness Statements of Plaintiffs and Testifying Class Members" . . . . . 20
      F.    "Deposition Extracts" of Defendants' Witnesses . . . . . . . . . . . . . . . . . 21
      G.    "Transcript Excerpt" from Conference of Consulting Actuaries' Meeting
            in November 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
      H.    "Handwritten Notes" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
      I.    Exhibits "Prepared by Plaintiffs' Counsel" . . . . . . . . . . . . . . . . . . . . . 23

III.  CIGNA's Relevance Objections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

**Introduction**

CIGNA has made hearsay and relevance objections to close to 50% (99 out of 199) of the Plaintiffs' Exhibits which are inconsistent with the Federal Rules of Evidence. In this Memorandum, the Plaintiff Class addresses the Defendants' objections using the order and categories in which Defendants presented them. Before addressing the admissibility of the particular Exhibits, Plaintiffs summarize the rules regarding hearsay and relevance to which citation is later made.

I.    **CIGNA's Hearsay Objections and the Rules and Exceptions Related Thereto**

The hearsay rule contains a number of exceptions, including ground rules that several types of statements are not hearsay at all. Plaintiffs summarize 12 of those rules which Defendants fail to apply:

A.    **Not Offered to Prove the Truth of the Matter Asserted.**

If a statement is not "offered ... to prove the truth of the matter asserted" but is offered to prove notice or what an opposing party was told, it is not hearsay. FRE 801(c). As <u>McCormick</u> explains, a statement is not hearsay when "its purpose is to establish the state of mind thereby induced in X, such as receiving notice or having knowledge or motive, or to show the information which X had as bearing on the reasonableness, good faith, or voluntariness of subsequent conduct...." <u>McCormick on Evidence</u> Vol. II (6th ed), §249. Thus, it is not hearsay if evidence of what a third-party consultant told the party opponent is not presented for the truth of the matter but for the fact of

1

communication, notice and state of mind. Under this rule, employee complaints are also admissible to demonstrate notice and state of mind.[1] News articles may also be admissible to show notice and state of mind.[2]

### B.   Party Admissions.

Party admissions are not hearsay. FRE 801(d)(2). Party admissions include "a statement by a party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Whether the declarant is an agent of the adverse party can be shown by the "testimony of the asserted agent, by anyone who knows, or by circumstantial evidence." McCormick, supra, §259.

If a third-party is hired to perform an "independent assessment," the third-party's statements will generally not be party admissions.[3] But documents related to a third-party

---

[1] See, e.g., Abdus-Sabur v. Port Authority of New York and New Jersey, 2001 WL 111984, *2 (S.D.N.Y. 2001) (complaints of discrimination admissible to show "notice and knowledge that complaints had been filed"); Guild v. GM Corp., 53 F.Supp.2d 363, 368 (W.D.N.Y. 1999) (consumer complaints about product failure admissible).

[2] Krause v. Buffalo & Erie County Workforce Dev. Consortium, 426 F.Supp. 2d 68, 93 (W.D.N.Y. 2005) (court "may consider such statements as newspaper articles so long as they are not submitted for the truth of the matter asserted therein"); Woods v. Empire Blue Cross and Blue Shield, 2002 U.S. Dist. LEXIS 15251, *4 n.1 (S.D.N.Y. 2002) (videotape and articles admissible to show awareness of charges of fraud); Blue Cross v. SmithKline Beecham Clinical Lab, Inc., 108 F.Supp.2d 116, 123 n.5 (D.Conn. 2000) (newspaper articles and reports admissible to "show that the plaintiffs-insurers were on inquiry notice of the matters reported therein").

[3] Condus v. Howard Savings Bank, 986 F.Supp. 914, 916 (D.N.J. 1997) (Speer was brought in to provide "an independent assessment" of Howard's credit administration process; Speer was a "non-agent independent contractor" because it was "an outside company that was brought in to perform this one service for Howard Savings" and

who performs a function that the opposing party has the responsibility to perform itself are admissible as the statements of an agent or servant.[4] Documents made or produced by the third-party and forwarded to the adverse party may also be admissible as adoptive admissions.[5]

### C.    Prior Statements by a Witness.

Prior statements by a witness are not hearsay. FRE 801(d)(1). This includes articles written by a witness and surveys prepared by a witness. Rule 801(d)(1)(A) admits a witness' prior inconsistent statements as substantive evidence.

### D.    Records of Regularly-Conducted Activity (Business Records).

Business records are not excluded by the hearsay rule. FRE 803(6). Business records can include memoranda prepared by consultants if they are kept in the regular

---

Howard did not control the method in which Speer conducted its assessment).

[4] See Farr Man Coffee v. Chester, 1993 U.S. Dist. LEXIS 8992, *49 n.30 (S.D.N.Y. 1993) (Intertel's investigative report was an admission; report "was prepared at the Underwriters' request, creating an agency relationship between Intertel and the Underwriters. The resulting report is the product of the agency relationship, and thus, naturally concerns a matter within the scope of the agency made during the relationship").

[5] Tracinda Corp. v. DaimlerChrysler, 362 F.Supp.2d 487, 501 (D.Del. 2005) (Documents produced by a third-party public relations firm were passed on to DaimlerChrysler's communications department, which in turn created a "Proposed Action Program" incorporating the "ideas and issues" outlined in the third-party's documents. "An adoptive admission can be found in the circumstances where a party forwards a document to another in response to a request for information contained in the document"); see also Penguin Books U.S.A. Inc. v. New Christian Church of Full Endeavor, 262 F.Supp. 2d 251, 259 (S.D.N.Y. 2003) ("use of a document supplied by another in fact represents the party's intended assertion of the truth therein").

course of business.[6] Similarly, complaints, claims and other material received from employees or other individuals are business records. "The principal precondition to admission of documents as business records pursuant to Fed. R. Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable." Potamkin Cadillac Corp. v. B.R.I. Coverage Corp., 38 F.3d 627, 633 (2d Cir. 1994).

"Business records may be admitted notwithstanding the availability of the record's author, so long as a custodian or other qualified witness testifies that the document was kept in the course of a regularly conducted business activity and also that it was the regular practice of that business activity to make the record." Parker v. Reda, 327 F.3d 211 (2d Cir. 2003). If documents are produced in response to a subpoena, the custodian is effectively representing that the documents were kept in the regular course of business. United States v. Brown, 688 F.2d 1112, 1116 (7th Cir. 1982) (act of producing documents in response to subpoena represents them "to be the documents described in the subpoena...Once [Brown] voluntarily produced the documents and implicitly represented them to be [the business's] records, he cannot be heard to contend that they are not [the business's] records"); John Paul Mitchell Systems v. Quality King Distributors, 106 F.Supp. 2d 462, 472 (S.D.N.Y. 2000).

As this suggests, the business records exception applies to a third-party's business

---

[6] Many cases approve records prepared by one business and then integrated into the records of another. Mueller and Kirkpatrick, Evidence (2d ed.) §8.44.

4

records. In <u>Condus v. Howard Savings Bank</u>, supra, 986 F.Supp. at 918-19, Speer &

Associates issued reports after making an "independent assessment" of Howard Savings'

credit administration process and loan loss reserves which Plaintiffs sought to introduce

at trial.  The court found that the requirements for the business record exception were

fulfilled and that Speer kept those records because "its entire business was to create these

reports."  The "Speer Reports indicate trustworthiness because these reports had business

significance apart from their use in this litigation and they are the type of reports upon

which independent business decisions are routinely made."[7]

_____

[7] See also <u>United States v. Sokolow</u>, 91 F.3d 396, 403-4 (3d Cir. 1996), cert.
denied, 117 S. Ct. 960 (1997) (third party administrator, Inservco, was hired to adjust
NIBA's unpaid claims; a compilation and summary of the claims prepared by Inservco
was held admissible under the business records exception because there was a clear chain
of custody and foundation for the data since the claims were collected in the regular
course of business of NIBA's original administrators and records were turned over to
Inservco; the records were also kept in Inservco's regular course of business); <u>United
States v. Frazier</u>, 53 F.3d 1105, 1110 (10th Cir. 1995) (independent contractor, Sorenson,
hired by DOL to audit defendant's company to ensure compliance with regulations; audit
report was "made in the course of Sorenson's regular business activity and it was the
regular practice of Sorenson to create such a report;" report was trustworthy because
"Sorenson was bound by contract to prepare the report and was interested in insuring the
report was accurate," "Sorenson had ten years experience in preparing regulatory
compliance reports," and "Sorenson was a neutral third party with nothing to gain from
any possible litigation against Defendant"); <u>United States v. Sanders</u>, 749 F.2d 195, 198-
99 (5th Cir. 1984) (claim forms processed by third party, Southwestern, admissible under
business records exception; "Since Southwestern employees were authorized agents of
Sanders acting in the ordinary course of business when transcribing his claims onto the
magnetic tape," "this extra link in the chain does not alter the status of the computer
printouts as business records"); <u>Weeks v. Western Auto Supply</u>, 2003 U.S. Dist. LEXIS
10977, *12 n.2 (W.D. Va. 2003) (Advance had "ordinary and routine business practice"
of sending list of employees eligible for continued coverage to third-party claims
administrator, who notified the employees and kept records of each notice. "Advance's

### E.    Then-Existing State of Mind.

Evidence of then-existing state of mind, e.g., to show intent or plan, motive or design, is not excluded as hearsay. FRE 803(3); McCormick, supra, §249. In United States v. Best, 219 F.3d 192, 198 (2d Cir. 2000), a statement as to a declarant's "intent to perform a certain act in the future" can be "introduced to prove that the declarant thereafter acted in accordance with the stated intent." [8]

### F.    Recorded Recollections.

Recorded recollections are not excluded as hearsay if the witness once had knowledge of a matter but presently has insufficient recollection to testify fully and accurately. FRE 803(5). Under this rule, a statement is admissible if: (1) the witness had "firsthand knowledge" of the event, (2) the statement must be "an original memorandum made at or near the time of the event while the witness had a clear and accurate memory of it," (3) the witness lacks a "present recollection of the event," and (4) the witness "must vouch for the accuracy" of the memorandum or other recording.  McCormick, supra,  §281.

---

records, although created and maintained by a third party, are admissible under the business records exception to the hearsay rule").

[8] See also Metropolitan Enterprise Corp. v. United Technologies Int'l, 2006 WL 798870, *1 (D.Conn. Feb. 28, 2006) (The statement "must be contemporaneous with the mental state; it must be timely such that the declarant had not time to fabricate; it must be relevant to an issue in the case; and it must relate to the declarant's own state of mind"); Cary Oil Co.v. MG Ref. and Marketing, 257 F.Supp.2d 751, 762 (S.D.N.Y. 2003) (Consent Order admissible "to explain why MG took the actions and positions that it did in negotiating and entering into" the order).

### G.    Public Records and Reports.

Public records and reports, including statements by government officials, are not excluded as hearsay. FRE 803(8).  To fall within this exception, "the evidence must (1) contain factual findings, and (2) be based upon an investigation made pursuant to legal authority."  Bridgeway Corp. v. Citibank, 201 F.3d 134, 143 (2d Cir. 2000).  The Supreme Court has rejected a narrow interpretation of "factual findings" and held that "factually-based opinions and conclusions" are admissible under this exception.  Beech Aircraft v. Rainey, 488 U.S. 153, 162 (1988) (emphasizing that "trustworthiness" inquiry is the primary safeguard against admission of unreliable evidence under this rule).[9]

 Once these minimum requirements are satisfied, admissibility is "presumed," and "the burden to show a lack of trustworthiness then shifts to the party opposing admission."  Bridgeway Corp., supra, 201 F.3d at 143.  The exception "has extraordinary breadth" and "embraces records in almost any form."  Mueller and Kirkpatrick, §8.49.

### H.    Market Reports and Commercial Publications.

Market reports and commercial publications, including tabulations generally used and relied upon by persons in particular occupations, are not excluded. FRE 803(17). The evidence must be "published in written form and circulated for use by others," "relied upon by the general public or by persons in a particular occupation," and it must "pertain

---

[9] See McCormick, §296 (noting that under Beech, "a wide range of agency findings are admissible" and collecting cases).

7

to relatively straightforward objective facts." <u>McCormick</u>, supra, §321.  The

"justification for this exception is that the motivation for accuracy is high, and public

acceptance depends upon reliability."

### I.     Former Testimony.

Former testimony in a deposition is admissible if the witness is unavailable

(unavailability includes a lack of memory on the subject, unavailability because of

sickness, or the inability to procure the witness' attendance by process or other reasonable

means). FRE 804(b)(1).

### J.     Residual Exception.

Evidence may be admitted under the residual exception to the hearsay rule, FRE

807, if:

(1)     the statement is offered as evidence of a material fact,

(2)     the statement is more probative on the point for which it is offered than any
other evidence which the proponent can procure through reasonable efforts,
and

(3)     the general purposes of the FRE and the interests of justice will best be
served by admission of the statement.

The statement in question and the proponent's intent to offer it must be made known to

the adverse party sufficiently in advance of trial to provide the adverse party with an

opportunity to meet it, including providing the particulars of it, such as the name and

address of the declarant. Id.

To be admissible under the residual exception, the evidence must "fulfill five

requirements: trustworthiness, materiality, probative importance, the interests of justice, and notice." Schering Corp. v. Pfizer Inc., 189 F.3d 218, 231 (2d Cir. 1999). "These five indicia of reliability are to be examined to see whether the four classes of risk peculiar to hearsay evidence, which are insincerity, faulty perception, faulty memory and faulty narration, are minimized." Steinberg v. Obstetrics-Gynecological and Infertility Group, 260 F.Supp.2d 492, 496-497 (S.D.N.Y. 2003) (citing Schering, supra).[10]

The "most important issue" is whether the statement offers "equivalent circumstantial guarantees of trustworthiness" to those found in other hearsay exceptions. See McCormick, supra, §324.

### K.    Judicial Notice.

Judicial may be taken of adjudicative facts when the fact is not subject to reasonable dispute in that it is either (1) generally known within the jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned. FRE 201.  See Oneida Indian Nation v. State of New York, 691 F.2d 1070, 1086 (2d Cir. 1982) ("When there is no dispute as to the

---

[10] In Steinberg, the court applied the residual exception to a letter from plaintiff's former attorney, now deceased, describing her interactions with the plan administrator and her belief in the futility of proceeding further.  The court held that the letter was material to the dispute, was trustworthy, and constituted the most probative evidence to the plaintiff regarding her futility argument. Accord, Pace v. National Railroad Passenger Corp., 291 F.Supp.2d 93, 103 n.4 (D.Conn. 2003) (IME report also admissible under catchall exception because the report was evidence of a material fact, was more probative of any other evidence available since the doctor was not called as a witness, and the report came from the defendants' own witness, preventing undue prejudice or surprise).

authenticity of" "materials and judicial notice is limited to law, legislative facts, or factual matters that are incontrovertible, such notice is admissible").

Though facts of "common knowledge" are "generally known throughout the country," "it is sufficient as a basis for judicial notice that they be known in the local community where the trial court sits." McCormick, supra, §329.  A judge may also take notice of verifiable facts, including scientific principles, historical facts, and geographical facts,  taking into account "any sources that he thinks are reliable."  A scientific principle need not be commonly known to be judicially noticed; "it suffices if the principle is accepted as a valid one in the appropriate scientific community."  Id.

Under this rule, the court may take judicial notice of "public documents."  In re Methyl Tertiary Butyl Ether Products Liability Litig., 402 F.Supp.2d 434, 438 n.15 (S.D.N.Y. 2005); Yale-New Haven Hospital v. Thompson, 198 F.Supp.2d 183, 186 (D.Conn. 2002).

Courts faced with the task of interpreting statutes may also take judicial notice of legislative facts. See McCormick, §328; 1972 Advisory Committee Notes to F.R.E. 201(a).  Legislative facts may include, *inter alia*, empirical research, medical literature, social conditions, aspects of human nature, and language and word usage.  See Snell v. Suffolk County, 782 F.2d 1094, 1105-6 (2d Cir. 1986) (approving judicial notice of

10

"literature exploring the social consequences of ethnic humor").[11]

**L.    Summaries of Writings or Recordings, Including Electronic Data.**

Summaries of voluminous writings or recordings, including electronic data, which cannot be conveniently examined in court are admissible if the originals have been made available to the opposing party. FRE 1006 (and see FRE 1001 for the definition of "writings or recordings").  See, e.g., United States v. King, 93 Fed. Appx. 490, 492 (3d Cir. 2004) (charts and exhibits summarizing electronic communications); United States v. Weaver, 281 F.3d 228, 231 (D.C. Cir. 2002) (summary testimony based on "routine computations and culling through of documents"); United States v. Loney, 959 F.2d 1332, 1340-41 (5th Cir. 1992) (compilation of records based on computer search).[12]

Summary testimony can help the court "organize and evaluate evidence which is factually complex and fragmentally revealed. United States v. Blackwell, 954 F.Supp. 944, 973 (D.N.J. 1997). While summaries should not contain "controversial inferences" or "pronounced judgments," United States v. Lemire, 720 F.2d 1327, 1350 (D.C.Cir.

_____

[11]  See also Ctr. for Biological Diversity v. Morgenweck, 351 F. Supp. 2d 1137, 1144 (D.Colo. 2004) (taking judicial notice of newspaper and academic articles describing decline of trout population as "legislative facts" for "limited purpose" of demonstrating that view of U.S. Fish and Wildlife Service not "shared by scientific and environmental communities"); United States v. Dorfman, 542 F.Supp. 345, 370 n.23 (N.D. Ill. 1982) (meaning of term "organized crime" noticed as legislative fact).

[12]  See also BD v. Debuono, 193 F.R.D. 117, 129-130 (S.D.N.Y. 2000) (spread-sheets containing data from case files created by defendants in response to interrogatories admissible where the underlying documents were admissible; any inaccuracies in summary go "to the weight, rather than the admissibility, of the evidence").

11

1983), it is not objectionable that the elements of selected summarization are consistent with the elements of the proponent's case. <u>United States v. Jennings</u>, 724 F.2d 436, 442 (5th Cir. 1984) ("Although certain of the conclusions in the summary chart are undoubtedly the product of assumptions made by the government, these assumptions are not admissible per se").

There is also no requirement that the summary be prepared by a person independent of the party offering the evidence.  See <u>Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.</u>, 772 F.2d 505, 515 (9th Cir. 1985); <u>Coates v. Johnson & Johnson</u>, 756 F.2d 524, 550 (7th Cir. 1985) (summary prepared by counsel's paralegal was properly admitted).

## II.   Plaintiffs' Responses to CIGNA's Hearsay Objections to Particular Exhibits

With no hint of hyperbole, CIGNA maintains that "each of the PPE's listed ... clearly constitutes hearsay as defined by the Rule" and that "none of [the] exceptions [to the hearsay rule] even arguably applies to these PPEs." Dfs. Mem. at 3.

Defendants' hearsay objections with respect to particular Exhibits are discussed below. The headings and groupings track the language and order that Defendants used in their Memorandum, but letters and subdivisions have been added for ease of reference.

### A.   "News or Journal Articles, Benefits Surveys or Seminar Materials."

(1)   Exs. 12, 14, 17, 66, 68 and 100 are articles or surveys prepared by Defendants' actuarial expert, Lawrence Sher, or quoting Mr. Sher. CIGNA's Proposed

Findings cite Mr. Sher's "articles" as part of his qualifications.  Defendants further admit that Exs. 14, 66 and 68 were prepared in whole or in part (Ex. 66) by Mr. Sher and may be used on cross-examination. Defs. Mem. at 4 n.3. Exs. 12 and 17 are, respectively: the 2000 PriceWaterhouse Coopers survey on cash balance plans and the 2004 Mellon survey on the same subject. Both of those surveys were prepared by Mr. Sher directly or under his supervision in his capacity as the Director of Research for those companies.  See Ex. 14. Ex. 100 is a <u>Plan Sponsor</u> article which quotes Mr. Sher. CIGNA's Proposed Findings cite "responding to questions from the media" as part of Mr. Sher's qualifications to testify as an expert witness.

**<u>Basis for admission</u>: Prior statements of witness; recorded recollections; market reports and commercial publications; residual exception; judicial notice**.

(2)     Exs. 15, 16 and 22 are three periodicals or other publications containing background information about cash balance plans. Exs. 15 and 16 (the article about "first generation" cash balance designs and the <u>Benefits Canada</u> article about "second generation" designs) are introduced to show the usage of those terms. Ex. 22 is a seminar paper by the Morgan Lewis & Bockius law firm on cash balance plans which shows that it is common knowledge that employers have not been advertising cash balance plans as lesser replacements. Defendants and Defendants' expert offer similar statements, not based on personal knowledge about "mainstream practices" and "main attributes" of cash balance plans and about terminology. Defendants also assert similar background facts in

their Trial Brief with no citation, e.g., about "all" cash balance plans being illegal if Plaintiffs prevail. Plaintiffs are entitled to show that Defendants' generalizations are inaccurate.

**Basis for admission**: **Market reports and commercial publications; residual exception; judicial notice**.

(3)    Ex. 20 is an "issue brief" by the Employee Benefits Research Institute ("EBRI") analyzing the costs of final average pay plans and cash balance plans and the lost benefit accruals if final average pay plans or cash balance plans are frozen. CIGNA is a "sustaining member" of EBRI, meaning that it contributes $28,000 per year (as does CIGNA's consultant, Mercer, and Buck Consulting, the firm that employs CIGNA's actuarial expert). See http://www.ebri.org/about/members/index.cfm?fa=sustainMembr. In exchange for those contributions, EBRI provides research reports, including issue briefs. CIGNA has refused to provide documents on its costs in discovery even though it told its employees that the changes would result in no "cost savings." ¶¶160, 162, 170.[13]

**Basis for admission**: **Business records; market reports and commercial publications; residual exception; judicial notice.**  The business record exception applies because CIGNA was provided this document as a sustaining member of EBRI.

_____

[13] While declaring information on its cost savings to be irrelevant, CIGNA at the same time proposes that this Court find that a ruling against it would be "enormously expensive." Dfs. Prop. Findings ¶127.

The issue brief is also admissible under the residual exception because plaintiffs have made reasonable efforts to procure documents from CIGNA related to costs but CIGNA has not produced anything to date.

(4)    Ex. 35 is a Joint Tax Committee report which discusses how "A + B" benefit formulas are more favorable to plan participants than a wear-away approach. Defendants present a similar public record or report as Dfs. Ex. 532, the testimony of the IRS's Chief Counsel Stuart Brown.

**Basis for admission**: **Public records and reports; residual exception; judicial notice.**

(5)    Ex. 58 is a document containing "commentary" by CIGNA's Vice President for Employee Benefits on a 9/1997 <u>Wall Street Journal</u> ("WSJ") article about employee complaints concerning Deloitte & Touche's cash balance conversion. The "commentary" was directed to CIGNA's Executive Vice-President in charge of Human Resources. In it, the Vice-President characterizes how Deloitte "stupidly promised 'no harm' or 'big improvement,'" states that "CIGNA's communications will not make unequivocal statements about 'will not harm' or 'big improvement,'" and attaches a packet of material for "possible media questions" about CIGNA's cash balance conversion. At the time of this "commentary," CIGNA's cash balance communications were still being prepared.

**Basis for admission**: **Party admission.** The WSJ article to which the

15

"commentary" is directed is also not hearsay because it is an integral part of the communication and is not presented for truth of the matters asserted but for notice and fact of communication.

(6)     Ex. 67 is a <u>WSJ</u> article quoting consultants from the Mercer company about how cash balance plans "mask" benefit reductions and how employees only learn about how little they have when they retire. In August 1997, CIGNA retained Mercer to prepare CIGNA's written communications to its employees, a function which is CIGNA's statutory responsibility.

CIGNA was clearly aware of the WSJ articles about cash balance plans.  This article was published on 5/5/99.  Ex. 58 contains commentary on a 9/1997 WSJ article. Ex. 48 contains commentary on a "further expose" article by the WSJ in 12/1998. CIGNA now asserts that it would have been "confusing" to tell its employees about the benefit reductions from the cash balance conversion.

**<u>Basis for admission</u>: Not offered for truth of matters asserted but for state of mind and notice; party admission (servant or agent), then-existing state of mind; residual exception; judicial notice.**

(7)     Ex. 75 is an article written by CIGNA's Senior Vice President for Plan Sponsor Solutions about cash balance plans.

**<u>Basis for admission</u>: Party admission; market reports and commercial**

16

**publications.**

(8)     Exs. 130-131 are <u>Wall Street Journal</u> articles about employee complaints

about cash balance conversions and employee complaints about benefit reductions. The

9/1997 <u>WSJ</u> article, which is one of the articles in Ex. 130 was the subject of the CIGNA

"commentary" contained in Ex. 58. The 12/1998 <u>WSJ</u> article is the subject of the memo

in Ex. 48.

**Basis for admission: Not for truth of matter asserted but for notice; then-**

**existing state of mind; market reports and commercial publications; residual**

**exception; judicial notice.**

**B.     "Documents Prepared by William M. Mercer, Incorporated."**

(1)     Exs. 13, 50-51, 81, 90, 93-94, 116 are memoranda, presentations, and other

documents by William Mercer about CIGNA's cash balance plan. Mercer provided

consulting advice to CIGNA on design and legal issues associated with a cash balance

conversion (even though Mercer was not qualified to practice law). Mercer also entered

into a contract with CIGNA to prepare CIGNA's Newsletter, SMM and a large part of the

SPD. The evidence shows that Mercer's role in preparing those communications was not

to act independently, but to follow CIGNA's instructions as its agent or servant.

Because Mercer acted as CIGNA's agent or servant concerning a matter that was

CIGNA's statutory responsibility (preparing the ERISA disclosures), the statements of

17

CIGNA's agent, Mercer, e.g., about how cash balance conversions can "mask" benefit reductions, are admissible.

**Basis for admission**: **Party admission (servant or agent); business records; then-existing state of mind; residual exception; judicial notice**.

(2)    Ex. 80 is a memorandum by Mercer outlining the tasks which CIGNA instructed "should be completed in order to implement a cash balance plan within CIGNA," including a "comparability analysis to gauge the amount of additional or reduced benefit value relative to the current benefit formulas."

**Basis for admission**: **Party admission (agent or servant); business records; residual exception.**

(3)    Exs. 19 and 115 are documents prepared by Mercer for its clients which were produced by the El Paso Corp. in mandatory Rule 26 disclosures. Ex. 19 outlines legal issues for cash balance plans, including the definition of accrued benefit. Ex. 115 discusses cash balance plan design and reasons why these plans are popular with employers. CIGNA does not deny receiving these documents, but stated that there is "no evidence" that it did. Dfs. Responses to Pls. Prop. Findings ¶¶10, 233.

**Basis for admission**: **Party admission (servant or agent); business records; then-existing state of mind; market reports and commercial publication; residual exception; judicial notice.**

18

(4)    Ex. 117 is a presentation by Mercer to CIGNA reciting an instruction by CIGNA for Mercer "not to compare the old to the new plans" in preparing the written communications to employees from CIGNA. CIGNA has attempted to explain post hoc the reasons why it instructed Mercer in this manner in Answer No. 1 to Interrogatories. See Pls. Ex. 29.

**Basis for admission: Party admission; business records; then-existing state of mind; residual exception**.

**C.    "Documents Prepared by PriceWaterhouse Coopers ... or Towers Perrin."**

(1)    Exs. 56 and 76 are an outline and memorandum prepared by PriceWaterhouse and TowersPerrin discussing cash balance implementation issues and comparing cash balance plans to traditional defined benefit plans. These reports were prepared for CIGNA and were produced by CIGNA in discovery.

**Basis for admission: Not for truth of matters asserted, but for notice and fact of communication; business records; residual exception.**

(2)    Ex. 65 is a PriceWaterhouse Coopers sales brochure touting that "[h]ands down, we're the experts" on cash balance conversions. Defendants admitted to the contents of this document in response to Pls. Proposed Finding ¶107.

**Basis for admission: Not for truth of matters asserted; prior statement of witness (Sher); business records;residual exception.**

19

D.    **"Emails Prepared by Class Members and Addressed to CIGNA's Signature Benefits Services Department."**

Exs. 74, 108-114. Defendants have offered an exhibit consisting of an email about employee complaints (Dfs. Ex. 517).

**Basis for admission**: **Not for truth of matter but for notice and fact of communication; business records; residual exception**.

E.    **"Witness Statements of Plaintiffs and Testifying Class Members."**

(1)    Exs. 181 and 191 are the Declarations of Janice Amara and Lillian Jones. Ms. Amara was deposed concerning this Declaration in November 2002 and Ms. Jones is scheduled to be deposed in August. Defendants' exhibits include the deposition transcripts of Amara, Jones and the other class members scheduled to testify. Dfs. Exs. 550-558. Ms. Amara identified and responded to questions about her Declaration in her deposition.

**Basis for admission: Prior statements of witnesses; former testimony; judicial notice; residual exception.**

(2)    Exs. 182-190 are witness statements included as Exhibits for the Court's convenience, so the Court can review the anticipated direct testimony. The witness statements were taken from the witnesses' answers to Defendants' interrogatories. Following the Court's Instructions, the witness statements were not sworn or notarized. All of these witnesses have been deposed by Defendants with the exception of Patricia

20

Flannery, who has been ill for a number of months and is scheduled to be deposed. The witness statements are not intended to deny Defendants "the opportunity to cross examine" (see Dfs. Mem. at 4), but may allow the direct testimony to be abbreviated.

**Basis for admission: Prior statements of witnesses; judicial notice.**

### F.     "Deposition Extracts" of Defendants' Witnesses.

Exs. 196, 198 and 1999 are deposition extracts designated by the Plaintiffs from the depositions of Andy Hodges, Lorraine Morris and Gregg Loboda, who are defense witnesses. Defendants have offered depositions as Exhibits, see Dfs. Exs. 550-58, and have waived objection to the testimony of David Durham, CIGNA's former Assistant Vice President of Global Benefits.

**Basis for admission: Party admissions; prior statements of witnesses; former testimony; residual exception.**

### G.     "Transcript Excerpt" from Conference of Consulting Actuaries' Meeting in November 2003.

Ex. 52 is a transcript of an audiotape prepared by the Conference of Consulting Actuaries ("CCA"), which shows CIGNA's actuarial expert, Mr. Sher, asking questions of a panel of two IRS officials about the application of the benefit accrual regulations only three months after he was deposed. In his report and deposition, Mr. Sher stated that the 133⅓% test could be performed without regard to any offset of benefits earned under a prior formula. The CCA transcript shows him asking questions about this subject

and being told the aggregation regulation applies, creating an issue on the 133⅓% rule. The transcript was prepared by a qualified Court reporter as shown at the bottom of each page (the audiotape is also available).

The transcript also shows that CIGNA's expert was on notice that the position that he put forward in his report and deposition is questionable. Defendants admit Mr. Sher may be cross-examined on the accuracy of the transcript, Dfs. Mem. at 5, including to authenticate voices, see FRE 901(b)(5), although they attempt to limit that "to his statements alone." Mr. Sher's report stated that "in my experience, any wearaway effect on normal retirement benefits that is attributable to a prior benefit formula is disregarded when applying the 133⅓% rule."  Pls. Ex. 10 at 35. Obviously, he can be asked on cross, whether he was told otherwise by two IRS officials and the tape can be played if he says no or that he does not remember. Defendants complain of "double hearsay" but hearsay within hearsay is not objectionable per se. FRE 805.

**Basis for admission: Not for truth but for notice and fact of communication; prior statement of witness; recorded recollection; residual exception; judicial notice.**

H.     **"Handwritten Notes."**

(1)     Ex. 42 contains CIGNA's notes regarding Michele Bergman, a rehired employee who did not earn any additional benefits (i.e., was under a "wear-away") after she was moved to the cash balance plan. Plaintiffs are not required to identify the handwriting in Defendants' business records. See FRE 901(b). Plaintiffs are not

22

precluding defendants from "examining any witness with regard to their content," Dfs.

Mem. at 5, because the handwritten notes are from Defendants' own business records and

Defendants could examine any such witness themselves.

**Basis for admission**: **Party admission**.

(2)     Ex. 43 is a letter from CIGNA to Jack Lamb, with some handwritten

comments by Mr. Lamb. Plaintiffs are not introducing it for the purpose of any

handwritten comments contained in the letter by Mr. Lamb, but for what CIGNA states in

writing in the letter.

**Basis for admission**: **Party admission.**

(3)     Ex. 92 is a spreadsheet that CIGNA prepared for Susanne Thistle. The

handwritten notes are in the handwriting of Mr. Arko who will testify for the Defendants.

**Basis for admission**: **Party admission; prior statement of witness.**

(4)     Ex. 161 is a memo from CIGNA's Robert Flanders with a handwritten note

about "relative values" of benefit options.  CIGNA admits to the accuracy of the quote

from the handwritten note. Dfs. Response to Pls. Prop. Finding ¶331.

**Basis for admission**: **Party admission; business records; residual exception.**

I.     **Exhibits "Prepared by Plaintiffs' Counsel."**

(1)     Ex. 9 is a Declaration by Allison Caalim, an associate with the law firm of

23

Plaintiffs' lead counsel, which summarizes the contents of certain electronic records produced by CIGNA in discovery. Based on a class list of 27,159 individuals, Ms. Caalim's Declaration tabulates missing minimum benefit fields, lump sum benefit elections, and class members potentially eligible for the free 30% survivor benefit and summarizes the computational steps in an electronic spreadsheet that CIGNA's actuaries prepared on "accrual rates."

**Basis for admission: Summary testimony admissible under FRE 1006; residual exception; judicial notice.**

(2)     Ex. 21 is a Rule 30(b)(6) Deposition Notice to obtain testimony concerning CIGNA's compliance with ERISA Section 204(h), Section 102 (the disclosure rules applicable to SPDs and SMMs) and Treas. Reg. 1.401(a)-20, Q&A 36 (the rule on disclosing relative values of optional forms of benefit).  The Notice establishes the subjects of deposition and that CIGNA was on notice that these subjects were objects of discovery. CIGNA produced John Arko to testify at that deposition and he identified the Deposition Notice during his deposition.

**Basis for admission: Not hearsay; prior statements by witness; former testimony; judicial notice.**

## III.     CIGNA's Relevance Objections

Under FRE 401, relevance is defined broadly: "evidence is relevant if it has the

24

slightest bit of probative worth; only evidence that has no value as proof of a consequential fact is irrelevant." Wright and Graham, <u>Federal Practice and Procedure</u>, §5165; <u>Huddleston v. United States,</u> 485 U.S. 681, 687 (1988) ("Rules 401 and 403 establish the broad principle that relevant evidence - evidence that makes the existence of any fact at issue more or less probable - is admissible unless the Rules provide otherwise"); <u>Stagl v. Delta Air Lines</u>, 117 F.3d 76, 80 (2d Cir. 1997) (exclusion of testimony on grounds of irrelevance was "manifestly incorrect, since the testimony would have tended to prove material issues in dispute").

Irrelevance cannot be established by conclusory or pro forma objections.  See, e.g., <u>In re Priceline.Com Sec. Litig.</u>, 2005 WL 1366450, *2 (D.Conn. 2005) (rejecting "pat, generic, non-specific" objections to discovery requests; objections "must clearly set forth the specifics of the objection and how that objection relates to the documents being demanded"); <u>King-Hardy v. Bloomfield Bd. of Educ.</u>, 2002 U.S. Dist. LEXIS 27384, *12 (D.Conn. 2002) (same); see also <u>In re PE Corp. Securities Litigation</u>, 221 F.R.D. 20, 24 (D.Conn. 2003) (rejecting objections to relevance of plaintiffs' document requests based on defendants' "narrow" reading of claims); <u>Flynn v. Goldman, Sachs & Co.</u>, 1991 WL 238186, *2 (S.D.N.Y. 1991) (overruling objections where documents withheld "solely on the basis of defendants' unilateral and self-serving determinations of relevance").

Like irrelevance, undue prejudice cannot just be asserted in a conclusory manner. "Undue" prejudice must be something more than the fact that the evidence tends to go

against the opposing party's defense and it must substantially outweigh the probative

value of the evidence. FRE 403. In a <u>non-jury</u> trial, evidence should not be excluded on

the grounds that it is unduly prejudicial because the Court is capable of assessing the

probative value of the evidence and excluding any improper inferences. <u>McCormick,</u>

supra, §60; <u>BIC Corp. v. Far Eastern Source Corp</u>., 23 Fed. Appx. 36, 39 (2d Cir. 2001)

("the admission of evidence in a bench trial is rarely ground for reversal, for the trial

judge is presumed to be able to exclude improper inferences from his or her own

decisional analysis"); <u>Tracinda Corp. v. DaimlerChrysler</u>, supra, 362 F.Supp. 2d 487, 498

(D.Del. 2005).

        Judge Squatrito and Your Honor have already rejected Defendants' generic

objections that nothing is relevant to this litigation except the Plan document and the SPD

and other ERISA communications. See Mem. Op. and Order (dkt. #67) at 3 and Ex. E to

Pl. Mot. to Compel filed Feb. 2, 2006 (dkt. # 161) (4/20/2005 Hearing Tr. at 15-16).

Defendants' <u>80-pages</u> of Proposed Findings further show that Defendants are asking the

Court to admit a very large number of facts not contained in the Plan document and SPDs.

        Defendants cannot produce a long laundry list of Plaintiffs' Exhibits, declare them

irrelevant and unduly prejudical, and then place the burden on the Plaintiffs to prove the

relevance of each document and how it is not unduly prejudicial. The unworkability of

this approach is demonstrated by the fact that because Defendants' objections lack

particularity, Plaintiffs would essentially have to restate each of the related Proposed

Findings to put each Exhibit in context and show how it is relevant.[14]

To the extent the Court may find an exhibit irrelevant or unnecessary to its final determination, it can simply disregard that exhibit, rather than excluding it prior to trial. In the introductory section of their Memorandum, Defendants recognize that this is the proper approach, acknowledging that the Court may admit the exhibits and give them "whatever weight it deems appropriate upon considering the evidence as a whole at the conclusion of the trial." Dfs. Mem. at 3.

Plaintiffs believe nevertheless that it is useful to point out some of the flaws in CIGNA's repeated effort to characterize any facts, other than those it wants to introduce, as having "no bearing" on the ERISA claims. See Dfs. Mem. at 7-11.[15] While lawsuits by their nature ultimately involve legal determinations, factual elements are involved in both the claims and defenses. Here, that is demonstrated by both parties' extensive Proposed Findings.  Moreover, ERISA establishes a fiduciary duty to act in accordance with the requirements of ERISA. Thus, the statute requires a good faith, diligent effort to comply

_____

[14] CIGNA's categorization of Plaintiffs' Exhibits is also unworkable because its categorizations lack context and are replete with errors and inconsistencies. Defendants categorize four Exhibits as related to "wear-away" that do not address it. Ex. 61-62, 78 and 82. And Defendants question the relevance of the results of a survey that CIGNA conducted about its communications (Exs. 87 and 133), but then cite results from the same survey themselves. Compare Dfs. Memo. at 6-7 with Dfs. Prop. Findings ¶174.

[15] See also Dfs. Response to Pls. Prop. Findings ¶¶1-3, 7-8, 10-13, 21-22, 28, 31, 54-55, 58, 60,67-69, 71, 74-76, 78, 80, 84, 89, 94-96, 98-100, 104-5, 116-19, 128, 130-31, 134-36, 138-39, 141-42, 148-49, 192-94, 212, 217, 231, 233-37, 239, 244, 253-67, 279-81, 283-86, 288-94, 298, 310-313, 320-21, and 340.

with the law.

For example, ERISA's disclosure standards are based on whether communications are "reasonably calculated to be understood" by the average plan participant. ERISA §102. The employer's awareness of substantial benefit reductions from an amendment and the employer's actual intentions in communicating information to participants about those changes have an obvious relevance to this litigation. Here, CIGNA essentially asserts a good faith intention in its Trial Brief and Proposed Findings, contending that any deficiencies in its disclosures were "details" that it was unfeasible to communicate without "confusing" the participants. The Exhibits that Plaintiffs offer show that CIGNA knew that the cash balance conversion resulted in substantial benefit reductions and that its intent was to withhold comparative information and falsely assure employees that the cash balance plan was an "enhancement" or "improvement" in order to "avoid any significant negative reactions from employees." See Exs. 8, 27-28, 40-41, 49, 54, 70-76, 78-83, 91-93, 117, 128-131, 133, 140. The only concession to truthfulness was to avoid "unequivocal statements about 'will not harm' or 'big improvement.'" Ex. 58 (which CIGNA now seeks to exclude as both hearsay and irrelevant). Evidence of earlier and later disclosures of benefit reductions by CIGNA also show the feasibility of precautionary measures that were not taken. FRE 407.

The regulations implementing ERISA §204(h)'s notice requirements further require that a determination be made "at the time" of whether it is reasonably expected

that participants' benefits will be reduced by an amendment. 26 C.F.R. 1.411(d)-6, Q&A-9. Again, it is relevant to that notice requirement that CIGNA knew "at the time" that benefits were being substantially reduced, but provided no notice to its employees reasonably intended to communicate that.

The same applies to the other ERISA violations. If the discovery or proof at trial were relegated to what appears on the face of Plan documents, CIGNA's ERISA 204(g) and 205(g) violations would not be established and would go unremedied. Discovery revealed that there was no notification of minimum benefits, no protection of minimum benefits for over 9,400 participants, and no disclosure of relative values of benefit options, including the value of minimum benefits. Under CIGNA's construct, that evidence would be irrelevant.

Plaintiffs' Exhibits are also relevant to the other violations of ERISA §§203 and 204. The Exhibits: (a) substantially narrow the areas of potentially disputed facts by showing that CIGNA knew about the forfeitures, the wear-away periods with no accruals, and the age-based reductions in accruals, and (b) show that CIGNA's current justifications are all post hoc constructions. If Defendants' relevance and undue prejudice objections were sustained, Defendants would succeed, for example, in excluding internal memoranda about the wear-aways and spreadsheets showing the declining rates of accrual because of age. Exs. 32, 40-41, 44 (on the wear-aways) and Exs. 51, 57, 61-62, 65 (on the declining rates of accrual). The Exhibits further show that CIGNA's defense that the

29

reductions in accrual rates based on age merely reflect the "time value of money" was not contemporaneous at all. They show that CIGNA knew that older workers' benefits would be less and intended that result. In <u>Cooper v. IBM</u>, 274 F.Supp.2d 1010, 1022, Judge Murphy found evidence that IBM went down this same path with "open eyes."

With respect to expert testimony, if Plaintiffs' Exhibits were to be excluded, Defendants' actuarial expert would be able to make unsupported assertions, without contradiction, about "mainstream" or "common" practices which Plaintiffs' Exhibits show not to be credible.

**Conclusion**

For the foregoing reasons, the Plaintiff Class requests that Defendants' hearsay and irrelevance objections to the Plaintiffs' Exhibits be overruled.

Dated: July 25, 2006

Respectfully submitted,

 s/ Stephen R. Bruce 
Stephen R. Bruce Ct23534
Allison Caalim
805 15th St., NW, Suite 210
Washington, DC 20005
(202) 371-8013

 s/ Thomas G. Moukawsher 
Thomas G. Moukawsher Ct08940
Moukawsher & Walsh, LLC
21 Oak St.
Hartford, CT 06106
(860) 278-7000

Attorneys for Plaintiff Class

## CERTIFICATE OF SERVICE

I certify that the foregoing Plaintiff Class' Memorandum in Response to

Defendants' Memorandum Regarding Defendants' Responses to Plaintiffs' Proposed

Trial Exhibits was filed electronically through the CM/ECF system on July 25, 2006.

Notice of this filing will be sent by e-mail to all parties listed below by operation of the

Court's electronic filing system. The parties may access this filing through the Court's

CM/ECF system.

Joseph J. Costello
Jeremy P. Blumenfeld
Jamie M. Kohen
Morgan, Lewis & Bockius
1701 Market St.
Philadelphia, PA 19103-2921

James A. Wade
Brett J. Boskiewicz
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103-3597

Christopher A. Parlo
Morgan Lewis & Bockius
101 Park Avenue
New York, NY 10178-0600

/s/ Thomas G. Moukawsher
Thomas G. Moukawsher  ct08940
21 Oak Street
Hartford, CT 06106
(860) 278-7000
(860) 446-8161 (fax)
tmoukawsher@mwlawgroup.com

Attorney for the Plaintiffs