<u>Amara v. CIGNA</u>, Case No. 01-2361 (MRK)

# EXHIBIT 202

| 99TH CONGRESS 1st Session | HOUSE OF REPRESENTATIVES | REPORT 99-453 |

# CONSOLIDATED OMNIBUS BUDGET RECONCILIATION ACT OF 1985

DECEMBER 19, 1985.—Ordered to be printed

Mr. GRAY of Pennsylvania, from the committee on conference, submitted the following

## CONFERENCE REPORT

[To accompany H.R. 3128]

The committee of conference on the disagreeing votes of the two Houses on the amendment of the House to the amendment of the Senate to the text of the bill (H.R. 3128) to make changes in spending and revenue provisions for purposes of deficit reduction and program improvement, consistent with the budget process, having met, after full and free conference, have agreed to recommend and do recommend to their respective Houses as follows:

That the Senate recede from its disagreement to the amendment of the House and agree to the same with an amendment as follows: In lieu of the matter proposed to be inserted by the House amendment insert the following:

### SHORT TITLE

SECTION 1. This Act may be cited as the "Consolidated Omnibus Budget Reconciliation Act of 1985".

### TABLE OF CONTENTS

Title I. Agriculture programs.
Title II. Armed services and defense-related programs.
Title III. Housing and community development programs.
Title IV. Transportation and related programs.
Title V. Corporation for Public Broadcasting and Federal Communications Commission.
Title VI. Maritime, coastal zone, and related programs.
Title VII. Energy and related programs.
Title VIII. Outer Continental Shelf and related programs.
Title IX. Medicare, Medicaid, and Maternal and Child Health programs.
Title X. Private health insurance coverage.
Title XI. Single-employer plan termination insurance system amendments.
Title XII. Income security and related programs.
Title XIII. Revenues, trade, and related programs.

55-876 O

568

participant premium of $2.60. The Employee Retirement Income Security Act of 1974 (ERISA) permits the PBGC to provide for a risk-related premium (within limits).

*House bill—H.R. 3128*

The premium is increased to $8.00 for plan years beginning after December 31, 1985, and before January 1, 1989. For plan years beginning after December 31, 1988, the premium level returns to $2.60. The bill also provides for a study by the Treasury Department with respect to risk-related premiums.

*House bill—H.R. 3500*

The premium is increased to $8.50 for all plan years beginning after December 31, 1985.

*Senate amendment—Title VII*

The premium is increased to $8.10 for all plan years beginning after December 31, 1985. The bill also provides for a study by the Department of Labor (DOL) with respect to risk-related premiums.

*Senate amendment—Title IX*

No provision.

*Conference agreement*

The conference agreement follows H.R. 3500 except that the conferees agreed generally to require the PBGC to study the premium structure (including the feasibility of a risk-related premium) and make recommendations for change, if necessary. An advisory group appointed by the Chairman of the House Committees on Education and Labor and Ways and Means and the Senate Committees on Labor and Human Resources and Finance is required to analyze and critique the study. The study is to be filed with the Congress no later than one year from the date of enactment and the advisory group's report is due no later than six months after the PBGC submits its report to the Advisory Council.

## 2. Single Employer Pension Plan Amendment Act

### a. Clarification of authority to freeze plans

*Present law*

Under present law, a plan may be amended to freeze future benefit accruals and to freeze other factors used to calculate benefits, such as compensation taken into account. In the absence of a contractual obligation, an employer is not required to provide participants with advance notice of a freeze.

*House bill—H.R. 3128*

No provision.

569

*House bill—H.R. 3500*

Under the bill, an amendment freezing accruals is not effective unless, subsequent to the adoption of the amendment and at least 60 days prior to the effective date of the amendment, the plan administrator gives written notice to each affected party. The term "affected party" is defined under the bill as each participant in the plan, each beneficiary of a deceased participant, each beneficiary who is an alternate payee under a qualified domestic relations order, and each employee organization representing participants in the plan and the PBGC.

*Senate amendment—Title VII*

No provision.

*Senate amendment—Title IX*

Although the bill contains no specific provisions covering plan freezes, the proposed first stage of plan termination covers similar situations (see Voluntary plan terminations—Senate amendment).

*Conference agreement*

The conference agreement provides that an amendment to reduce significantly future benefit accruals under a plan is not effective unless, subsequent to the adoption of the amendment and at least 15 days prior to the effective date of the amendment, the plan administrator gives written notice of the reduction to each participant in the plan, each beneficiary under the plan who is a beneficiary of a deceased participant, each beneficiary who is an alternate payee under a qualified domestic relations order, and each employee organization representing participants in the plan. This notice does not apply to any amendment (or portion thereof) to retroactively reduce plan benefits (Sec. 412(c)(8) of the Code and Section 302(c)(8) of ERISA).

The conference agreement does not affect the requirements for qualification of a plan under the Code. For example, the agreement does not change the requirement of minimum benefit accruals under a frozen top-heavy plan.

### b. Voluntary plan terminations

*Present law*

*Restrictions on plan termination.*—Under present law, an employer's continued maintenance of a defined benefit pension plan is not required by statute. Thus, subject to contractual obligations, the employer generally may terminate a plan at any time upon satisfaction of the procedural requirements described below.

*Employer liability under a terminated plan.*—If a single-employer defined benefit pension plan is terminated with assets sufficient to pay benefits at the level guaranteed by the PBGC (described below), the employer has no further liability to the PBGC.

If a single-employer defined benefit pension plan is terminated with insufficient assets to pay benefits at the level guaranteed by the PBGC, then the employer is liable to the PBGC for the insufficiency. However, the employer's liability is limited to 30 percent of

---

are mentioned separately to indicate the legislative background of the separate House bill provisions.