**Amara v. CIGNA**, Case No. 01-2361 (MRK)

# EXHIBIT 208

John O. Arko
Director, Retirement Benefits
Office of the Plan Administrator





**CIGNA**

December 4, 2001

Routing TL17B
1601 Chestnut Street
Philadelphia PA 19192
Telephone 215.761.2562
Facsimile 215.761.5510
John.Arko@CIGNA.com

Stephen R. Bruce, Esq.
805 Fifteenth Street, N.W., Suite 210
Washington, D.C. 20005

Dear Mr. Bruce:

This is a response to your September 17, 2001 letter on behalf of Janice C. Amara regarding her benefits under the CIGNA Pension Plan.  I am responding on behalf of CIGNA's Office of the Plan Administrator, and we are treating your letter as a claim by Ms. Amara under ERISA.

You claim that Ms. Amara has suffered reductions in her accrued benefit and is not being offered her distribution options properly, thus, potentially forfeiting her accrued benefits in violation of ERISA requirements.  These claims come as a direct result of her termination from CIGNA employment and subsequent rehire into Part B of the CIGNA Pension Plan.

During Ms. Amara's first period of employment with CIGNA, she participated in what is now Part A (also called the "old plan") of the Pension Plan, which provides pension benefits based on final average earnings.  Part B provides benefits based on what CIGNA now calls an account balance formula.  This type of formula is more commonly known as a cash balance formula.  CIGNA adopted the cash balance formula effective January 1, 1998.

Allow me to first comment on the Pension Plan calculations that were provided Ms. Amara and referred to as the Exhibits in your September 17, 2001 letter.

1.    <u>December 14, 1995 letter from Theresa Kane of CIGNA</u>.  Pension calculation based on Ms. Amara's initial period of employment with CIGNA through her termination date of August 8, 1995.
      - It showed a benefit available at her normal retirement age of 65 to be $2,099.92 per month for life.
      - The letter also stated that Ms. Amara could receive a benefit as early as her attainment of age 55.  That benefit would be $2,010.51 per month reducing to $1,565.48 per month following her 65th birthday.

Stephen R. Bruce, Esq.
December 4, 2001
Page 2

2.   February 23, 2001 letter from Janet VanDeusen of CIGNA Retirement & Investment
     Services. This was a pension estimate (completed following her return to CIGNA),
     which assumed Ms. Amara continues her CIGNA employment through April 30,
     2005 and her annual earnings of $94,400.00 increase 4.0% per year.
     • It showed a benefit commencing at age 55 of $1,340.28 per month for life.
       Unfortunately this amount was wrong. The correct amount should have been
       $1,833.65 per month for life.
     • It also shows a lump sum option at age 55 of $193,371.43.

3.   July 6, 2001 letter from Kevin Kenny of CIGNA Retirement & Investment Services.
     This was another estimate projecting what benefits might be in the future for Ms.
     Amara. It assumed she continued her CIGNA employment only through June 30,
     2001 and used current annual earnings of $97,500.00.
     • It showed a benefit commencing at age 55 of $1,833.65 per month for life.
     • It also showed a lump sum option at age 55 of $162,986.51.

I apologize for the inaccurate February 23, 2001 calculation. As you mention in your letter,
Andy Hodges did explain this flaw to Ms. Amara both verbally and apparently in the email
included with your letter. Essentially the calculation inadvertently did not fully take into
consideration Ms. Amara's first period of employment with CIGNA.

I will now turn to your specific concerns as regards the appropriateness of the provisions of
the CIGNA Pension Plan and how they specifically relate to Ms. Amara's benefit.

1.   No Reduction in Ms. Amara's Accrued Benefit Has Occurred. You are, of course,
correct in stating that section 204(g)(1) of the Employee Retirement Income Security Act of
1974, as amended ("ERISA"), provides that a participant's "accrued benefit" may not be
decreased by an amendment. In accordance with ERISA §204(g), §§1.1(c), 1.32 and 7.3 of
Part B of the CIGNA Pension Plan ("Part B") protect Ms. Amara's "accrued benefit" under
Part A of the CIGNA Pension Plan ("Part A") as of the date she ceased accruing benefits
under Part A.

       a. Normal Retirement Benefit. Under §§1.1(c) and 1.32 of Part B, a participant's Part
B normal retirement benefit will always equal or exceed the normal retirement benefit the
participant accrued under Part A. Thus, there is no violation of ERISA §204(g) when the
benefit is paid at normal retirement date.

       b. Early Retirement Subsidy. Under ERISA §204(g)(2), if a participant has or will
satisfy the age and/or service requirements for an early retirement subsidy, an amendment
may not eliminate or reduce the subsidy "with respect to benefits attributable to service
before the amendment." Section 7.3(b) of Part B preserves the Part A early retirement
subsidy as required. Section 7.3(b) provides that Ms. Amara's Part B benefit will always be
equal to or greater than the benefit she accrued under Part A prior to 1998, using the Part A
early commencement reduction factors if the benefit is paid at a time and in a form to
which the factors would have applied under Part A.

Stephen R. Bruce, Esq.
December 4, 2001
Page 3

ERISA does not require that the early retirement subsidy be included in the Part B opening account balance. Note, however, that under §1.28(a) of Part B, CIGNA voluntarily included the Part A early retirement subsidy in an employee's opening account balance if the sum of the employee's age and service on December 31, 1997 was 55 or greater. Ms. Amara did not receive this enrichment because she was not employed by CIGNA on January 1, 1998.

The preservation of the early commencement reduction factors with respect to the Part A accrued benefit does not, however, fully answer the question. As the chart below shows, Ms. Amara's minimum Part B benefit as of June 30, 2001 commencing at May 1, 2005 in the form of a single life annuity is $176.86 less than the age 55 through age 65 Part A benefit as of August 8, 1995 (commencing at the same time and in the same form).

|  | Part A Benefit as of August 8, 1995 | Part B Minimum Benefit as of June 30, 2001 |
|---|---|---|
| Payable from age 55-65 | $2,010.51 | $1,833.65 |
| Payable on and after age 65 | $1,565.48 | $1,833.65 |

Note, however, that once Ms. Amara attains age 65, the minimum Part B benefit is $268.17 *more* than the Part A benefit. The lesser benefit from age 55 through age 65, and the larger benefit at age 65, are attributable to the Social Security supplement.

c.    The Social Security Supplement. Under Part A, an eligible participant may elect to commence receipt of his or her benefit prior to age 65. Once the participant attains age 65, the benefit is reduced by ½ of the participant's primary old age insurance benefit under the Social Security Act. This is often referred to as a Social Security offset, because of the offset at age 65; it also is a Social Security supplement because it supplements the participant's retirement benefit prior to age 65.

This Social Security supplement is not a protected benefit under ERISA §204(g) because it is not part of the "accrued benefit." Treas. Reg. §1.411(d)-4 Q&A 1(d) provides that "social security supplements described in section 411(a)(9), except qualified social security supplements as defined in §1.401(a)(4)-12" are not protected benefits under §411(d)(6) of the Internal Revenue Code of 1986, as amended (the "Code"). The Part A Social Security supplement is described in Code §411(a)(9) and it is not a "QSUPP" as defined in Treas. Reg §1.401(a)(4)-12. Accordingly, the age 55 to 65 Part A benefit could have been reduced to $1,565.48 per month without violating ERISA §204(g).

Despite the fact that the Part A Social Security supplement is not protected by ERISA §204(g) (or its counterpart, Code §411(d)), Part B does include the Social Security supplement in the minimum protected benefit, if the benefit is paid at a time and in a form to which the supplement would have applied under Part A. Rather than providing the Social Security supplement as an amount which is only payable prior to age 65, §7.3(b) of Part B provides that the equivalent actuarial value of the Social Security supplement will be added to the

Stephen R. Bruce, Esq.
December 4, 2001
Page 4

benefit which would have been payable under Part A, to determine the minimum amount of the benefit payable under Part B. That is why Ms. Amara's Part B minimum benefit of $1,833.65 is payable before age 65 as well as after, unlike the Part A accrued benefit as of August 8, 1995 which decreased to $1,565.48 as of the first of the month following Ms. Amara's attainment of age 65.

Thus, §7.3(b) of Part B preserves the minimum benefit required under ERISA §204(g) (the pre-1998 Part A accrued benefit determined using the Part A early commencement factors) and more (the actuarial equivalent of the Social Security supplement).

2.    No Forfeiture of Ms. Amara's "Accrued Benefit" Has Occurred. Should Ms. Amara elect to receive her benefit in the form of an annuity (*e.g.*, a single life annuity) prior to her normal retirement date but after her attaining age 55, §§1.1, 7.2(a)(2) and 7.3 of Part B provide that her benefit will equal the greater of (a) or (b), as follows:

    (a)    The benefit accrued under Part B through June 30, 2001, which is determined as follows:

        i.    The opening account balance = $91,124.77.

        ii.    Added to the opening account balance are the Benefit Credits through June 30, 2001 ($20,254.96) plus Interest Credits through May 1, 2005 (projected to be $51,556.78). The total balance is projected to be $162,936.51, which is as of Ms. Amara's attainment of age 55.

        iii.    The amount determined in step (ii) would then be converted to a single life annuity, which is projected to be $1,129.33 per month, if the benefit commencement date is May 1, 2005.

    (b)    The protected benefit under §§1.1(c) and 7.3 of Part B, which is equal to Ms. Amara's pre-1998 Part A accrued benefit, payable at age 65 ($2,099.92), adjusted to take into account early commencement in accordance with Part A and the actuarial equivalent of the Social Security supplement ($1,833.65 per month if the benefit commencement date is May 1, 2005).

Ms. Amara's right to the greater of (a) or (b) is nonforfeitable, as required by ERISA §203. Ms. Amara's right to the greater of (a) or (b) is unconditional under all circumstances required by ERISA and the Code. Part B provides that the greater of (a) or (b) will be paid to Ms. Amara, to protect Ms. Amara's "accrued benefit" as required by ERISA §204(g).

You state that "Cigna's Part B Plan document appears to be offering the annual pay credits and interest, but conditioning their actual receipt in violation of ERISA." You misread Part B. Part B provides the benefit credits and interest credits as amounts in addition to the opening account balance, determined in accordance with §1.28 of Part B. There has been no forfeiture of this amount. As required by ERISA, however, this amount is payable only if it exceeds the amount required to be protected by ERISA, plus the equivalent actuarial value of

Stephen R. Bruce, Esq.
December 4, 2001
Page 5

the Social Security supplement. This method of preserving protected benefits does not result in a forfeiture. (See, e.g., Treas. Reg. §1.401(a)(4)-13(c)(4)(ii) formula with wear away.)

3.    Conclusion. Your claim appears to be either (a) that the early retirement factors and Social Security supplement should have been included in the opening account balance or (b) that the method used to preserve the Part A protected benefit is not permissible. We are not aware of any guidance that supports either claim. You cite IRS Notice 96-8 and *Esden v. Bank of Boston*, 229 F.3d 154 (2d Cir. 2000), *cert. dismissed*, 121 S. Ct. 674 (2001). Neither Notice 96-8 nor *Esden* addresses the establishment of an opening account balance or preserving ERISA §204(g) protected benefits with respect to benefits accrued prior to the cash balance plan conversion. Both address the method of crediting future interest credits and whether a lump sum distribution may be based on the current retirement account, or projection to normal retirement age is required.

Unlike the plan in *Esden*, Part B was designed to and does comply with IRS Notice 96-8. Unlike the plan in *Esden*, Part B does not guarantee an interest rate which is higher than the rate used to project the account value to normal retirement age. Thus the *Esden* forfeiture and conditional benefit issues do not arise under Part B of the CIGNA Pension Plan.

As regards to the Tolling Agreement you asked us to sign, we choose not to sign the agreement as drafted. If you are interested in a version that we would find acceptable, please let me know.

If you still believe your client has not received the benefits due to her under the CIGNA Pension Plan you may appeal to the Plan Administrator by writing to:

Stewart M. Beltz
Plan Administrator
CIGNA
1601 Chestnut Street, TL17B
Philadelphia, PA 19192

The Plan Administrator has the final authority to make determinations under the CIGNA Pension Plan. Should you have further questions about this letter, please contact me.

Sincerely,

John Jk

cc:    Ms. Janice Amara