**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

---------------------------------------------------X
:
JANICE C. AMARA, GISELA         :   3:01 CV 2361 (MRK)
R. BRODERICK, ANNETTE S. GLANZ  :
individually, and on behalf of others :   Trial Date: 09/11/06
similarly situated,             :
                                :
                 Plaintiffs,    :
        v.                      :
                                :
CIGNA CORP. AND CIGNA           :
PENSION PLAN,                   :
                                :
                 Defendants.    :
                                :
---------------------------------------------------X

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION IN LIMINE TO EXCLUDE
THE EXPERT TESTIMONY OF PROFESSOR STRATMAN**

**I.   INTRODUCTION**

Defendants CIGNA Corporation and CIGNA Pension Plan (together, "Defendants"), hereby respond to Plaintiffs' Opposition to their Motion In Limine to exclude from the upcoming trial of this matter any testimony or other evidence of Professor James Stratman. Professor Stratman's Expert Report and testimony relate exclusively to legal conclusions for which expert testimony is inadmissible.

Most significantly, Plaintiffs ignore that fact that the Second Circuit Court of Appeals and districts court in the Second Circuit consistently and routinely resolve ERISA disclosure claims of the sort Plaintiffs assert here without expert testimony. As did all of those courts, this Court should resolve Plaintiffs' Section 204(h) notice and summary plan description ("SPD")[1]

---

[1]   In their Trial Brief, Plaintiffs also attack the adequacy of the plan's summary of material modification. Because this claim was not alleged anywhere in Plaintiffs' Third Amended

disclosure claims by examining the documents themselves and the ERISA plan to which they apply. Expert testimony is neither required nor appropriate for the Court to draw this legal conclusion. Testimony by Mr. Stratman can only waste the Court's time and invite error.

Moreover, the Court should not be misled by Plaintiffs' contention that Professor Stratman should be permitted to testify because he also will opine on matters of fact, for which expert testimony is appropriate. Plaintiffs' disclosure arguments elucidated in their trial briefing, as well as Professor Stratman's own admission that he will opine on whether the plan administrator's written disclosures satisfied ERISA's disclosure requirements, confirms that he plans to testify on this legal issue of statutory interpretation.

## II.    ARGUMENT

### A.    Every Court In the Second Circuit That Has Decided Disclosure Claims Like Those Raised By Plaintiffs Has Done So By Reviewing The Written Documents At Issue, Without Expert Testimony.

Whether or not an SPD or Section 204(h) notice satisfies ERISA's statutory disclosure requirements is a conclusion of law which depends exclusively on the terms of the written disclosure at issue. Accordingly, it is not surprising that Plaintiffs cited no cases in the Second Circuit in which a court relied upon expert testimony to evaluate this statutory interpretation question, and that Defendants' research revealed no such cases. Quite to the contrary, the Second Circuit and district courts within this circuit consistently opine on whether an SPD or Section 204(h) notice satisfies ERISA's disclosure requirements by simply evaluating the written

---

Complaint, however, it is not properly before the Court. (See Defs' Trial Brief at 49 n.35 [dkt #182]); see also Engers v. AT&T, 428 F. Supp. 2d 213, 231 n.21 (D.N.J. 2006) (finding that where Plaintiffs for the first time on summary judgment "invoke language which refers to . . . rules governing the issuance of a summary of material modification ('SMM') [and] these claims have not been properly pled in the Complaint within the context of Plaintiffs' Sixth Claim, the Court will disregard any arguments relating to them for the purposes of this motion.").

terms of the documents.[2]

For example, in Burke v. Kodak Ret. Income Plan, 336 F.3d 103, 110-11 (2d Cir. 2003), the Second Circuit held that an SPD failed to comply with ERISA because it omitted a critical restriction on eligibility for joint and survivor benefits, namely that an employee and his/her domestic partner had to file a joint affidavit on the plan administrator's form. On de novo review of the district court's grant of summary judgment, the Court of Appeals reviewed the language of the SPD and the specific instances in which it discussed joint and survivor benefits, comparing such representations to the plan document itself. Id. The Court determined, merely by reviewing the documents themselves, that participants could "reasonably conclude" that there was not such an affidavit requirement given the level of detail in the joint and survivor discussion in the SPD, versus the discussion included for other provisions in the same section of the SPD. Id. at 111. Thus, the Court closely evaluated the written language of the SPD to determine ERISA compliance, without the need for a communications expert to guide this legal analysis.

Similarly, in Layaou v. Xerox Corp., 238 F.3d 205, 210 (2d Cir. 2001), upon which the Second Circuit in Frommert v. Conkright, 433 F.3d 254, 257-60 (2d Cir. 2006) relied in finding that Xerox employee-participants were not properly told of a phantom offset in the pension plan, the Court concluded that the company's SPD was inadequate without hearing expert testimony. Both the Layauo district court in granting summary judgment, as well as the Second Circuit in reversing summary judgment, simply reviewed the language in the plan that provided for

---

[2]  Plaintiffs protest that Defendants' authority for the proposition that whether a communication satisfies ERISA's requirements is a legal issue merely references the standard of review and does not address expert testimony. (See Opp. at 11). Plaintiffs' critique is foolish. First, the opinions cited do not speak to expert testimony because the courts in those cases decided the disclosure issues without reference to any expert opinions. (See Defs' Motion In Limine at 3-5). Moreover, the fact that the Court of Appeals reviews district courts' determinations as to ERISA statutory disclosure compliance de novo indicates that the underlying decision was one of law.

3

different benefit calculations formulas, and compared the relevant language in the SPD. See Layauo v. Xerox Corp., 69 F. Supp. 2d 419, 426-28 (W.D.N.Y. 1999); 238 F. 3d at 206, 210-21. As the Court of Appeals determined:

> The only relevant language in Xerox's SPD states that "[t]he amount you receive may also be reduced if you had previously left the Company and received a distribution at that time." The SPD does not mention the term "phantom account," describe the "phantom account" offset concept, or even indicate that the choice among the three methods of calculating future benefits will be made by first adding on, and then later offsetting, not the amount of the prior distributions but instead an appreciated value of the prior lump-sum distributions. Nor does the SPD offer any example of how to calculate benefits for individuals who had received prior lump-sum distributions.

238 F. 3d at 210. After examining this SPD language, and without any expert testimony, the Court determined that the SPD did not describe the full import of the phantom offset plan provision, which it held to be a violation of ERISA's disclosure rules. Id. at 211.[3]

Plaintiffs make no effort to distinguish this precedent. Instead, faced with the reality that every other court in the Second Circuit has determined these claims as a matter of law without

---

[3] See also, e.g., Wilkins v. Mason Tenders' Dist. Council Pension Fund, 445 F.3d 572, 581 (2d Cir. 2006) (noting that the question of whether the content of the SPDs complied with ERISA "is simply one of statutory construction." and resolving question without expert testimony); Sheehan v. Metro. Life Ins. Co., 368 F. Supp. 2d 228, 260-61 (S.D.N.Y. 2005) (finding that the SPD violated ERISA after quoting and comparing the language regarding medical benefits eligibility for a mental disorder contained in the plan certificate versus the language in an SPD booklet given to participants, without expert testimony); Copeland v. Geddes Fed. Sav. & Loan Ass'n Ret. Income Plan, 62 F. Supp. 2d 673, 678 (N.D.N.Y. 1999) (holding that the plan administrator did not provide adequate notice of a plan amendment by reviewing the alleged notification and determining that it was "ambiguous," without expert testimony); Normann v. Amphenol Corp., 956 F. Supp. 158, 165-66 (N.D.N.Y. 1997) (finding a Section 204(h) notice inadequate because it failed to set forth the actual plan amendment reducing early retirement benefits, after examining the written notice to participants and the amendment provision, without expert testimony, and concluding that "[c]learly, Amphenol's employees could not have been expected to equate the phrases 'standard early retirement reductions' with the actual reductions adopted.").

expert testimony, Plaintiffs turn to a single unpublished New Jersey district court opinion. Plaintiffs' emphasis on Engers v. AT&T, NO. CIV. A. 98-3660, 2005 WL 2338862, at *4 (D.N.J. Aug. 10, 2005), however, is misleading. (See Opp. at 5-6). First, while the Magistrate's opinion in Engers admittedly noted that Professor Stratman's testimony could assist the trier of fact, no court actually heard testimony from Professor Stratman in analyzing whether the plan administrator's disclosures concerning plan amendments violated ERISA. Rather, the court dismissed the SPD disclosure and Section 204(h) notice claims on summary judgment. See Engers v. AT&T, 428 F. Supp. 2d 213, 222, 236, 243 (D.N.J. 2006).[4] Next, the district court's adoption of the Magistrate's opinion was under an abuse of discretion standard, and the court specifically invited the parties to raise the issue if needed in a motion in limine or at trial.[5] See Engers v. AT&T, NO. CIV. A. 98-3660, 2006 WL 1210507, at *2, *5 (D.N.J. April 17, 2006). Additionally, in Engers, Professor Stratman was poised to testify concerning the "word patterns, grammar and ordering, [and] other factors" to determine "understandability" of a notification

---

[4]  Indeed, the district court's order approving the magistrate's opinion appears to be dicta insofar as it relates to Professor Stratman, as opposed to Plaintiffs' expert Claude Poulin. Only Mr. Poulin's testimony in Engers still is relevant to claims which survived summary judgment and other claims for which motions currently are pending. See Engers, 2006 WL 1210507, at *1 n.2 (noting that after the Court's March 31, 2006 summary judgment order, "to the extent that Poulin's and Stratman's testimony is still relevant to the newly filed motions, the Court addresses the instant magistrate appeal.").

[5]  The district court even signaled that it might preclude Professor Stratman's testimony at a later point in the litigation:

> [I]f the Court were to determine that Stratman's report contains impermissible legal analysis, it will disregard that analysis as well. However, these determinations are better left for disposition within the context of the pending motions than within the context of an appeal of a magistrate judge's ruling. This denial, without prejudice, of Defendants' appeal does not end the inquiry into the admissibility of these experts' testimony. If issues relating to the admissibility of expert testimony remain relevant after disposition of pending motions, these issues may be raised at a later moment by motion in limine or at trial.

Engers, 2006 WL 1210507, at *5.

regarding a plan amendment. Here, however, as described more fully below, see infra at 7-8, Defendants admit the facts concerning Plaintiffs' disclosure claims – that the disclosures did not include a comparison from the old plan to the new plan, and that former CIGNA employees were not given advance notice of the Rehire Rule after they left the company – but maintain as a legal matter that these actions did not violate ERISA. This Court should reject Plaintiffs' suggestion that it admit Professor Stratman's testimony based on a single unpublished opinion from outside this circuit. As do all courts in the Second Circuit, the Court should resolve the question based on its own independent review of the documents at issue.

>    **B.    Professor Stratman Will Testify On Whether The SPD And Section 204(h) Notice Violated ERISA's Statutory Disclosure Requirements, A Legal Question Of Statutory Interpretation.**

Plaintiffs also argue that the court should permit Professor Stratman's opinion, even though he will testify to the ultimate legal issue, because courts permit expert testimony offering factual inferences and embracing an ultimate issue of law. (See Opp. at 3-4). Rather than providing a single case in which a court held that the disclosure issues of the type at issue here involved mixed questions of law and fact, Plaintiffs instead look to allegedly "analogous" situations involving disclosure issues, such as a court's review of a warning label in the product liability context. (Id. at 8-9). Plaintiffs cannot point to any case beyond Engers demonstrating that the question at issue here – whether a Section 204(h) notice or SPD violate ERISA's disclosure requirements – is one of mixed fact and law.

Plaintiffs argue that the Second Circuit has held that disclosure claims involve mixed questions of fact and law, citing Mullins v. Pfizer, 23 F. 3d 663, 669 (2d Cir. 1994), as stating: "If an affirmative misrepresentation is found, whether it is 'material' is a 'a mixed question of law and fact' based on whether 'there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about if and when to retire."

6

(Opp. at 9). In the fiduciary misrepresentation claim decided in Mullins, however, the factual questions involved: (a) the content of the communications, which here is revealed through the Court's review of the documents themselves; (b) whether the communication was a misrepresentation, which here is revealed by comparing the written disclosure to the plan; and (c) whether there was a likelihood that an employee would rely on the misrepresentation. 23 F. 3d at 669. Here, in contrast, Professor Stratman will not testify as to whether participants were "likely harmed" by the alleged deficiencies in the administrator's disclosures, which Plaintiffs also are required to prove to prevail on their disclosure claims. Rather, Plaintiffs will attempt to demonstrate "likely prejudice" through testifying class member testimony.

Unlike the law and fact question posed in Mullins, Professor Stratman's expert report and testimony address only whether the plan administrator's disclosures themselves violated ERISA's statutory disclosure requirements, a purely legal question of statutory interpretation. Indeed, Professor Stratman admitted in his deposition that he evaluated this precise question, and reached his conclusions by merely reading the communications at issue. (See Motion at 4-5).

Moreover, a review of Plaintiffs' disclosure claims reveals that no expert testimony on any factual issues will be included in Professor Stratman's trial testimony. Plaintiffs' two principle arguments are: (a) that participants should have been told that the benefits they would earn under Part B were less than the benefits they would have earned had they remained in Part A; and (b) that Part A participants who were former employees should have been provided advance notice of the Rehire Rule even after they left CIGNA. (See Plfs' Reply to Plfs' Trial Brief at 32-37). As to these arguments, Defendants concede that neither the SPD nor the Section

204(h) notice[6] provided participants comparison information, and that former employees were not provided notice of the Rehire Rule unless and until they were rehired.  The Court is not faced with a "complicated" analysis as to whether the written disclosures actually supplied this information, as Plaintiffs misleadingly suggest.  Nor does the Court need Professor Stratman to explain to it what the documents themselves say; the Court can review the documents on their face.[7]

In sum, because Professor Stratman seeks only to testify about legal issues of "statutory interpretation," his testimony is inadmissible and should be precluded.

---

[6]   Defendants contend that both the November 1997 Signature Benefits Newsletter and the Retirement Information Kit satisfied the requirements of Section 204(h).  (See Defs' Trial Brief at 70 n.46).

[7]   Plaintiffs claim that Defendants' proposed findings of fact demonstrate that Professor Stratman's testimony will include factual matters.  (See Opp. at 10).  Defendants' proposed findings of fact, however, merely directed the Court to the terms of the documents and highlighted certain provisions for the Court's convenience.  [See dkt #181].  Such an exercise is perfectly appropriate for counsel to accomplish, and indeed is not something for which expert testimony is required.

### III.  CONCLUSION

For the foregoing reasons, and those stated in Defendants' Motion in Limine, Defendants respectfully request that the Court exclude any testimony or other evidence from Professor James Stratman.


Dated:  August 1, 2006                    Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

By:  /s/ Joseph J. Costello_____
Joseph J. Costello
Jeremy P. Blumenfeld
Jamie M. Kohen
*Admitted pro hac vice*
1701 Market Street
Philadelphia, Pennsylvania  19103-2921
(215) 963-5295/5258/5472
(215) 963-5001 (fax)

**ROBINSON & COLE**
James A. Wade (CT # 00086)
280 Trumbull Street
Hartford, Connecticut  06103
(860) 275-8270
(860) 275-8299 (fax)

*Attorneys for Defendants*
*CIGNA Corporation and CIGNA Pension Plan*