## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

-----------------------------------------------------X
                                            :
JANICE C. AMARA, GISELA              :            3:01 CV 2361 (MRK)
R. BRODERICK, ANNETTE S. GLANZ       :
individually, and on behalf of others       :            Trial Date: 09/11/06
similarly situated,                          :
                                            :
                              Plaintiffs,   :
                    v.                      :
                                            :
CIGNA CORP. AND CIGNA                :
PENSION PLAN,                           :
                                            :
                              Defendants.   :
                                            :
-----------------------------------------------------X

### DEFENDANTS' SUPPLEMENTAL PROPOSED CONCLUSIONS OF LAW

Dated:  August 30, 2006              **MORGAN, LEWIS & BOCKIUS LLP**

                                            By:  /s/ Joseph J. Costello_____
                                            Joseph J. Costello
                                            Jeremy P. Blumenfeld
                                            Jamie M. Kohen
                                            *Admitted pro hac vice*
                                            1701 Market Street
                                            Philadelphia, Pennsylvania  19103-2921
                                            (215) 963-5295/5258/5472
                                            (215) 963-5001 (fax)
                                            jcostello@morganlewis.com
                                            jkohen@morganlewis.com

                                            **ROBINSON & COLE**
                                            James A. Wade (CT # 00086)
                                            280 Trumbull Street
                                            Hartford, Connecticut  06103
                                            (860) 275-8270
                                            (860) 275-8299 (fax)
                                            jwade@rc.com

                                            *Attorneys for Defendants*
                                            *CIGNA Corporation and CIGNA Pension Plan*

Defendants CIGNA Corporation ("CIGNA") and the CIGNA Pension Plan (the "Plan") (together "Defendants") propose the following conclusions of law, in addition to those proposed in Defendants' June 27 pre-trial submission. These conclusions of law regard significant legal developments that occurred after the filing of Defendants' proposed conclusions of law on June 27.

## I.  NEW LAW CONFIRMS THAT CASH BALANCE PLANS ARE NOT AGE-DISCRIMINATORY.

### A.  In <u>Cooper v. IBM</u>, The First Appellate Court To Rule On The Issue Confirmed That Cash Balance Plans Are Not Age-Discriminatory.

1.      On August 7, 2006, the Seventh Circuit issued its decision in <u>Cooper v. IBM Personal Pension Plan and IBM Corp.</u>, No. 05-3588, 2006 WL 2243300 (7th Cir. August 7, 2006), and rejected age discrimination challenges related to IBM's cash balance plan. This is the first appellate court to address this issue.

2.      The Seventh Circuit agreed with the majority of district courts that cash balance plans are not age discriminatory under ERISA Section 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(i)(H)(i).  <u>Cooper v. IBM Personal Pension Plan and IBM Corp.</u>, No. 05-3588, 2006 WL 2243300 (7th Cir. August 7, 2006).  See <u>Tootle v. ARINC, Inc.</u>, 222 F.R.D. 88 (D. Md. 2004) (rejecting claim that cash balance plan design is age discriminatory); <u>Eaton v. Onan Corp.</u>, 117 F. Supp. 2d 812 (S.D. Ind. 2000) (same); <u>Register v. PNC Fin. Servs. Group, Inc.</u>, No. 04-6097, 2005 WL 3120268 (E.D. Pa. Nov. 21, 2005) (same); <u>Engers v. AT&T Corp.</u>, No. 98-3660, 2001 U.S. Dist. LEXIS 25889 (D.N.J. June 6, 2001) (same);  <u>Hurlic v. S. Cal. Gas Co.</u>, No. 05-5027 (C.D. Cal. Mar. 24, 2006) (same).

3.      The district court in <u>Richards v. FleetBoston Fin. Corp.</u>, 427 F. Supp. 2d 150 (D. Conn. 2006), now stands alone in finding that cash balance plans are inherently age discriminatory.

1

4.     In <u>Cooper</u>, the district court had concluded that IBM's cash balance plan was age-discriminatory because "younger employees receive interest credits for more years." <u>Cooper</u>, 2006 WL 2243300, at *1.  The district court's decision had turned on its interpretation of the phrase "benefit accrual" under ERISA Section 204(b)(1)(H)(i), which equated to the definition of "accrued benefit," <u>i.e.</u>, an amount  "expressed in the form of an annual benefit commencing at normal retirement age." <u>Id.</u> at *2.

5.     Under the district court's view in <u>Cooper</u>, the IBM plan discriminated against older employees because younger workers would receive a greater payout as a result of "the power of compound interest." <u>Id.</u>  The Seventh Circuit concluded that this approach was improper and rejected the premise that the time value of money properly forms the basis for an age discrimination claim:

> Nothing in the language or background of §204(b)(1)(H)(i) suggests that Congress set out to legislate against the fact that younger workers have (statistically) more time left before retirement, and thus a greater opportunity to earn interest on each year's retirement savings. **Treating the time value of money as a form of discrimination is not sensible.**

<u>Id.</u> at *3 (emphasis added).

6.     The Seventh Circuit adopted the same approach to the issue of age discrimination that has been embraced by the vast majority of courts that have addressed the issue, and that served as the theoretical underpinning for the conclusion of Defendants' expert that the CIGNA Plan is not age discriminatory.  <u>Id.</u>  In doing so, the Seventh Circuit expressly rejected the position espoused by the Plaintiffs and their expert in this case.

7.    Like IBM's cash balance plan, CIGNA's cash balance plan ("Part B") is age-neutral: "Under IBM's plan any differences in pension benefits are a function of differing years of service, salary history, or the years the balance has been allowed to compound; age is not a factor." Id. at *6.

8.    "[T]he Cooper decision virtually inoculates employers against age discrimination lawsuits attacking hybrid plans." Fawn Johnson, *New Pension Law Plus Cooper Ruling Dooms Age-Related Suits, Practitioners Say*, D.L.R., No. 166, Aug. 28, 2006, at C-1.

9.    This Court will follow the reasoning of the Seventh Circuit, as well as every district court but one to rule on the issue, in rejecting Plaintiffs' claim that CIGNA's cash balance plan is age-discriminatory.

**B.    The Southern District of New York Rejected An Age Discrimination Challenge to A Cash Balance Plan In <u>Hirt v. Equitable</u>.**

10.    A district court in the Southern District of New York also has held that cash balance plans are not inherently age discriminatory. In <u>Hirt v. Equitable Ret. Plan for Employees, Managers and Agents</u>, No. 01 Civ. 7920, 2006 WL 2023545 (S.D.N.Y. July 20, 2006), Equitable's cash balance plan participants earned benefit credits as a percentage of annual compensation and compounded interest credits on the accumulation, like the CIGNA Plan ("Part B") at issue here. Id. at *27.

11.    The plaintiffs alleged that Equitable's cash balance plan was age discriminatory because "the longer an employee works before reaching normal retirement age, the more interest accumulates in the employee's Cash Account, and the larger the employee's annuity will be following retirement or earlier termination." Id. Like CIGNA, Equitable argued in response "that its plan does not discriminate, that the differences in accumulations reflect the time value of money, between the time that retirement benefits are earned to the time they may be distributed."

Id.

12.     The <u>Hirt</u> court followed the reasoning of most other district courts in holding that the Equitable cash balance plan did not discriminate because of attainment of any age.  The court rejected Judge Hall's interpretation of the phrase "the rate of an employee's benefit accrual" in <u>Richards</u>, 427 F. Supp. 2d 150, and held that "it follows logically that the rate of benefit accrual [for cash balance plans] is determined by the change in the account balance." <u>Id.</u> at *32-33 (citing <u>Register</u>, 2005 WL 3120268) (alteration in original).

13.     While Plaintiffs attempt to diminish the importance of <u>Hirt</u>, contending that it ignored the Second Circuit's admonitions in <u>Esden v. Bank of Boston</u>, 229 F.3d 154 (2d Cir. 2000), the only issue in <u>Esden</u> was the calculation of lump sum benefits pursuant to IRS Notice 96-8 and a process known as "whipsaw."  <u>Esden</u> did not rule as to whether the cash balance plan was age-discriminatory under Section 204(b)(1)(H)(i).

### C.   New Federal Legislation Confirms That Cash Balance Are Not Age-Discriminatory Or Illegal.

14.     On August 17, 2006, President Bush signed into law the Pension Protection Act of 2006 ("PPA"), a 900-page comprehensive bill that makes significant changes in the federal laws, including ERISA, governing traditional single employer defined benefit pension plans, multiemployer pension plans, "cash balance" and pension equity plans, 401(k) and other defined contribution plans, and individual retirement accounts.  <u>See</u> Pension Protection Act of 2006, Pub. L. No. 109-280, 120 Stat. 780.

15.     The PPA established that cash balance plans that meet certain requirements are a viable option for plan sponsors, do not inherently violate the age discrimination prohibitions of ERISA, the Internal Revenue Code or the Age Discrimination in Employment Act, and indeed are legal.  <u>Id.</u>

16.    The PPA provides that for conversions of traditional plans to cash balance plans that occur after June 29, 2005, certain conditions must be met in order to comply with the PPA. Id.  Significantly, however, because CIGNA's plan conversion occurred before 2005, these provisions are not applicable to this case.

17.    Additionally, the PPA amended ERISA to permit cash balance plans to treat the account balance as the participant's accrued benefit (rather than requiring conversion to an annuity at normal retirement and then discounting to present value), as long as the plan credits interest on account balances at a "market" rate.  Thus, lump sum distributions may be based on the participant's hypothetical account balance, and sponsors are no longer requires to pay larger distributions because of the so-called "whipsaw" effect, also not at issue in this case.  This amendment, unlike the others, is effective for distributions made after enactment of the PPA.  Id.

18.    The cash balance plan provisions of the PPA apply prospectively from June 29, 2005, and the statute specifically provides that no inference may drawn from these provisions regarding the legality of cash balance plans created prior to June 29, 2005.  Id.

19.    However, the Senate debate on the issue makes clear that Congress was focused squarely on precluding age discrimination claims from rendering cash balance plans illegal:

> Hybrid plans have been criticized on the theory that the design was per se discriminatory. The theory suggests that the hypothetical individual account plan design unlawfully favors younger workers over older ones because younger workers could accrue interest on their account over a longer period of time than older workers. This theory amounts to a declaration that the "time-value of money'' is age discriminatory.
>
> Not surprisingly, given the confused logic of stating that compound interest in a pension plan is age discriminatory, most courts that have reviewed the age appropriateness of hybrid plan designs have found them to be legitimate. Indeed, the first federal court to review the question stated "Plaintiffs' proposed interpretation would produce strange results totally at odds with the intended goal of the OBRA 1986 pension age discrimination

provisions (Eaton v. Onan (S.D. N.Y. 2000)).'' <u>The case law validating the hybrid design includes three federal court decisions issued since a 2003 rogue decision in the Southern District of Illinois. These decisions explicitly reject that court's reasoning and conclusion</u> (Tootle v. ARINC (D. Md. 2004), Register v. PNC (E.D. Pa. 2005) and Hirt v. Equitable (S.D. N. Y. 2006) and hold the hybrid pension design to be legal. <u>Consistent with these numerous federal court decisions, the Internal Revenue Service (IRS) for 15 years issued approvals for individual cash balance plans and the Treasury Department and IRS repeatedly issued guidance as to the validity of the cash balance design.</u>

\* \* \*

[¶]   This bill sets forth a test for age discrimination in defined benefit pension plans that compares an employee's accrued benefit with that of any similarly situated younger employee.  For this purpose, an employee's accrued benefit may be expressed as the current balance in a hypothetical account for any plan that determines the employee's accrued benefit (or any portion thereof) by reference to a hypothetical account, such as a cash balance plan.

152 Cong. Rec. S8747, 8751 (August 3, 2006) (emphasis added).

20.     Because Part B of the CIGNA Plan complies with the PPA as of July 29, 2005, any claim that Part B is illegal after that date is directly refuted by the statute.

21.     CIGNA's cash balance plan is not inherently age-discriminatory or illegal.

## II.     <u>HIRT'S REASONING ON THE REQUIREMENTS OF A SECTION 204(H) NOTICE IS MISGUIDED AND SHOULD BE REJECTED.</u>

22.     While it logically analyzed the age discrimination claims, the <u>Hirt</u> court's analysis of Equitable's 204(h) notice of its cash balance conversion drew conclusions that are both puzzling and unfortunate.  <u>Hirt</u>, 2006 WL 2023545.  This Court accordingly rejects <u>Hirt's</u> skewed reasoning and will apply the statute and regulations in effect at the time of the Plan Administrator's 204(h) Notice.

23.     The <u>Hirt</u> court examined several amendment notices prepared and distributed by the plan administrator to the plan participants, including the notice issued on December 4, 1990 related to the conversion to a cash balance plan ("1990 Notice").  <u>Id.</u> at *20-23.

24.     The 1990 Notice was a one-page document addressed to "Participants in the Equitable Retirement Plan for Employees and Managers," which stated that "after December 31, 1990, only those participants who either had attained age fifty or had completed twenty years of service by December 31, 1990 could receive benefits under the grandfathering provision [as set forth in the December 1988 notice ("1988 Notice")]."  <u>Id.</u> at *6.  The 1990 Notice did not explain the new amendment, but rather referred participants to an attached one-and-a-half page Benefits Update which, in turn, further referred participants to the 1988 Notice "for a description of the change."  <u>Id.</u>

25.     In holding that the 1990 Notice was inadequate, the <u>Hirt</u> court appears to have applied the notice requirements set forth in Section 204(h) as amended in 2001—eleven years after the issuance of the 1990 Notice.  <u>Id.</u> at *22.  In so doing, the court held that "[t]he 2001 statutory amendment made explicit that which was implicit in the requirement of a notice."  <u>Id.</u>

26.     Notably, <u>Hirt's</u> analysis of the plan's 1998 notice appears to apply the correct version of Section 204(h), since the court determined the notice was adequate despite fact that it did not make benefit comparisons required under the current statutory and regulatory scheme, because the notice explained the applicable amendments and provided the effective date.  <u>See id.</u> at *19.

27.     <u>Hirt's</u> application of the 2001 amended statutory requirements to the 1990 Notice may be disregarded as mere dicta.  The court stated that the statute, as it read in 1990, itself implied that that a notice must include "the material terms of the plan amendment."  Because the

1990 Notice did not even include the material terms, it violated the statute in effect in 1990. <u>Id</u>. at *22. Indeed, the court stated that "[t]he insufficiency of Equitable's 1990 Notice – <u>under the terms of the statute in effect at the time it was given, December 4, 1990</u>, and the courts' interpretation of the statutory requirements – vitiates the amendment itself." <u>Id</u>. at *23 (emphasis added).

  28. <u>Hirt's</u> interpretation of a subsequent amendment as merely clarifying that which was implicit in an earlier statute, without any written legislative intent for the statute or regulation to do so, makes no sense. The fact that Congress subsequently amended the statute to require administrators to explain an amendment's resultant reductions in benefits, if anything, supports the view that prior to such amendment that requirement did not exist.

  29. It is well-established that "a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." <u>Bowen v. Georgetown Univ. Hosp.</u>, 488 U.S. 204, 208 (1988) (citing <u>Brimstone R. Co. v. United States</u>, 276 U.S. 104, 122 (1928) ("[t]he power to require readjustments for the past is drastic. It … ought not to be extended so as to permit unreasonably harsh action without very plain words.")).

  30. <u>Hirt's</u> application of a subsequent statute or regulation to a Section 204(h) notice issued prior to the effective date of such statute or regulation was improper because it constitutes an unauthorized retroactive application of the subsequent changes. <u>Bowen v. Georgetown Univ. Hosp.</u>, 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.") (citations omitted).

  31. This canon of statutory and regulatory interpretation is even more compelling

where retroactive application would unjustly impose liability for past conduct where that conduct

was legitimate at the time it was taken.  Landgraf v. USI Film Prods., 511 U.S. 244, 272 (1994)

(holding that prospective statutory application remains the appropriate default rule unless

Congress has made clear its intent to disrupt the parties' settled expectations).

32.    Hirt's application of the current standard to a Section 204(h) notice issued prior to

the standard's enactment also is inconsistent with the approach of every other court which

evaluated a 204(h) claim after a subsequent change in the legal standard.  As one district court in

this district noted:

> In reaching this conclusion the Court notes that the IRS has
> recently promulgated regulations that state that "future benefit
> accrual is determined without regard to optional forms of benefit
> ⋯, early retirement benefits, or retirement type subsidies." 26
> C.F.R. Part 1, § 1.411(d)-6T, A-5(b). However, the Court need not
> address here whether the IRS regulations comport with the plain
> language of ERISA because the regulations state: "This section
> applies to amendments adopted on or after Dec. 15, 1995 and
> amendments effective by their terms on or after Jan. 2, 1996." 26
> C.F.R. Part 1, § 1.411(d)-6T, A-15(b).

Normann v. Amphenol Corp., 956 F. Supp. 158, 165 n.4 (N.D.N.Y. 1997).

33.    See also e.g. Copeland v. Geddes Fed. Savings & Loan Ass'n Ret. Income Plan,

62 F. Supp. 2d 673, 678 (N.D.N.Y. 1999) (analyzing Section 204(h) notice under text of the

1986 version of the statute only, with no reference to either the 1995 temporary or the 1998

permanent regulations, and requiring only that the plan administrator set forth "the plan

amendment and its effective date."); Charles v. Pepco Holdings, Inc., No. 05-702, 2006 WL

1892672, at *3 (D. Del. July 11, 2006) (regarding Section 204(h) notice in 1998, court noted that

"the law only requires the notice to include an understandable summary of the amendment and

not a description of its potentially adverse effects."); Abels v. Titan Int'l, Inc., 85 F. Supp. 2d

924, 936-37 (S.D. Iowa 2000) (applying only the 1986 version of Section 204(h) to a plan's

9

notice issued in 1993, with no reference to the existing but subsequently issued regulations).

34.     The legality of the Section 204(h) notice issued by CIGNA's Plan Administrator in 1997 must be governed solely by the statutory and regulatory scheme in place as of that date, and no legal justification exists to scrutinize it under statutes and/or regulations that did not exist at the time.

35.     Defendants cannot be held liable for failing to apply requirements beyond what was required at the end of 1997 when the Section 204(h) notice satisfied the standard in place at the time.

36.     Nothing in Section 204(h) at the time required the notice to describe how benefits are reduced or to compare what a participant's benefits would be had the participant remained in a prior plan, as Plaintiffs suggest.  Rather, the legislative and regulatory scheme required only that plan administrators make a "good faith effort to" ensure that Section 204(h) notices provided a "summary of the amendment . . .written in a manner calculated to be understood by the average plan participant."  Notice of Significant Reduction in the Rate of Future Benefit Accrual, 63 Fed.Reg. 68,678, 68,682 (Dec. 14, 1998); Hirt, 2006 WL 2023545, at *18.

## III.    PLAINTIFFS' ALLEGATIONS IN COUNT 5 REGARDING PRUDENTIAL'S ISOLATED RECORD-KEEPING ERRORS DO NOT RAISE CLASS CLAIMS APPROPRIATE FOR DETERMINATION IN THIS CASE.

37.     Plaintiffs' claims regarding the minimum benefit and Free 30% protection, and the relative value disclosures are completely baseless and do give rise to liability under ERISA Section 204(g), which only prohibits an accrued benefit from being "decreased by an amendment of the plan."  29 U.S.C. § 1054(g)(1).

38.     Plaintiffs' suggestion that random and isolated record-keeping errors on the part of the Plan's record-keeper, Prudential, is a basis for liability under 29 U.S.C. § 1054(g)(1) is incorrect.

39.     "Several courts have held that the communication of inaccurate information regarding the amount of benefits to which an employee is entitled is not a breach of fiduciary duty under ERISA."  Christensen v. Qwest Pension Plan, 376 F. Supp. 2d 934, 943 (D. Neb. 2005) (collecting cases); see also Carlos v. Reed Rolled Thread Die Co., 49 F.3d 790, 795, n.5 (1st Cir. 1995) (finding no breach of duty where employer initially provided incorrect early retirement benefit figures, but later informed the employee of its mistake and permitted the employee to make a new election); Fitch v. Chase Manhattan Bank, 64 F. Supp. 2d 212 , 230-31 (W.D.N.Y. 1999) (finding that the employer was not liable for an incorrect calculation of benefits where it was shown that the error was not based on any motive to actively mislead the plaintiffs); Easa v. Florists' Transworld Delivery Ass'n, 5 F. Supp. 2d 522, 529-30 (E.D. Mich. 1998) (clerical error in calculating anticipated retirement benefits by actuary for pension plan was not breach of fiduciary duty).

40.     The Court lacks jurisdiction to review claims regarding errors in the benefits offered or paid to participants, until those participant has exhausted his administrative remedies and provided the administrator the opportunity to correct the mistake.  See Ravencraft v. UNUM Life Ins. Co. of Am., 212 F.3d 341, 343 (6th Cir. 2000) (holding, in dismissing plaintiff's claim of futility in failing to exhaust his administrative remedies, that review or exhaustion "enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions.") (quoting Makar v. Health Care Corp., 872 F.2d 80, 83 (4th Cir.1989)); Hebert v. Aetna Life Ins. Co., 96 F. Supp. 2d 540, 542 (E.D. L.A. 1998) (same).

41.     If in isolated instances Prudential committed a record-keeping error and failed to provide a participant the minimum benefit, that individual participant would be required to exhaust his administrative remedies and "a mistake in calculating pension benefits does not constitute willful misconduct or bad faith sufficient" for liability." Gramm v. Bell Atlantic Mgmt., 983 F. Supp. 585, 593 (D.N.J. 1997).

A.    **No Class Claim Exists For Failure to Provide The Plan's Free 30% Or The Relative Value Of Benefit Options.**

42.     The Plan Administrator's disclosures regarding minimum benefits and the relative value of benefit options complied with applicable requirements at the time.

43.     The regulations that Plaintiffs cite do not require that a plan automatically provide a participant with every benefit option that might be available to him at any point in time in the future.  Indeed, there are infinite combinations of benefit commencement dates (e.g., age 54 and 10 months, age 54 and 11 months, age 55, and 55 and 1 month) and benefit forms (e.g., lump sum, single life annuity, joint and survivor annuity, joint and survivor annuity with lump sum) available under Part B, and, indeed, available under most plans.

44.     In accordance with Treas. Reg. § 1.401(a)-20, CIGNA's participant was informed of the options available to him at that time, and could receive other explanations upon request or through the financial planning tools made available.

45.     The Treasury Regulations which now require further disclosures, such as "a meaningful comparison of the relative economic values of the two forms of benefit without the participant having to make calculations using interest or mortality assumptions" only became applicable as of February 1, 2006, and Prudential has taken steps to comply with the new requirements on disclosures.  See 26 C.F.R. § 1.417(a)(3)-1(f) ("Except as otherwise provided in this paragraph (f), this section applies to a QJSA explanation with respect to any distribution

with an annuity starting date that is on or after February 1, 2006.").

**B.      No Class Representatives or Class Members Have Standing To Pursue Plaintiffs'
Minimum Benefit, Free 30% or Relative Value Claims.**

46.    Even if Plaintiffs' claims regarding the minimum benefit, Free 30% or relative

value disclosures had any merit, this Court lacks jurisdiction since there is not a Class

Representative who has standing to pursue these claims.

47.    The Court never considered whether the named plaintiffs were appropriate class

representatives for, or whether their claims were typical of, the claims of absent class members

vis-à-vis Count 5, because Plaintiffs filed their Third Amended Complaint adding Count 5 over

two years after the Class was certified.  See Fed. R. Civ. P. 23(c)(1)(B).

48.    Indeed, none of named plaintiffs have standing to assert an issue regarding the

minimum benefit, Free 30% or relative value disclosures and accordingly none may serve as a

Class Representative for purposes of these claims.  See O'Shea v. Littleton, 414 U.S. 488, 494

(1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite

of a case or controversy with the defendants, none may seek relief on behalf of himself or any

other member of the class.").

49.    Because even if Plaintiffs' claims in Count 5 are appropriate for class-wide

consideration the Named Plaintiffs lack standing to pursue these claims, the Court must dismiss

these claims.

50.    The group of class members who have not yet initiated a pension payment and

accordingly may face such issues in the future is undefineable at the present time and similarly

lacks standing.  Because the participants who might be affected by these claims cannot be

identified at the present time, their claims are not ripe for this Court's determination.

51.    "[T]he ripeness doctrine seeks to separate matters that are premature for review

because the injury is speculative and never may occur, from those cases that are appropriate for federal court action."  Erwin Chemerinsky, Federal Jurisdiction, Section 2.4 (3d ed. 1999); see Abbott Laboratories v. Gardiner, 387 U.S. 136, 148 (1967).  "The purpose of the ripeness requirement is to ensure that a dispute has generated injury significant enough to satisfy the case or controversy requirement of Article III of the U.S. Constitution" by "prevent[ing] a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur. . ."  Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 90 (2d Cir. 2002).

52.     The lack of ripeness is a jurisdictional defect that bars this Court from adjudicating these claims.  Thomas v. City of New York, 143 F.3d 31, 34 (2d Cir. 1998) (holding "[b]ecause the ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction, the court can raise it sua sponte, and, indeed, can do so for the first time on appeal.") (internal citations omitted)).  C.f.  Lugo v. Employees Ret. Fund of Illumination Prod's Indus., 529 F.2d 251, 258 (2d Cir. 1976) (holding 53-year-old plaintiff's claim for retirement benefits, under plan which required that participants reach age 60 and work at least 90 months in prior ten years, "not ripe for adjudication" because the plaintiff's claim is "at best a claim that when, seven years from now, plaintiff is old enough to be entitled to apply for such benefits, the trustees will deny his application on the basis of the 90/10 rule, which he claims is illegal.").

53.     Moreover, there is no "hardship to the parties of withholding court consideration," given that the administrative review process is in place to evaluate any claims by participants that they were improperly denied the full benefits to which they were due.  See United States v. Quinones, 313 F.3d 49, 58 (2d Cir. 2002).

14

54. Participants who initiated a benefit distribution and believe they received inadequate disclosures of the relative value of their benefit options, also lack standing to pursue these claims in this suit.

55. If these participants believe they should be allowed re-elect their benefits in a different form, they must file a claim with the Plan Administrator. Absent such a claim and appeal to the Plan Administrator, this Court lacks jurisdiction to consider these class members' personal circumstances and individual claims. Peterson v. Cont'l Cas. Co., 282 F.3d 112, 118 (2d Cir. 2002) (holding that "[b]y issuing a decision on permanent benefits [before the plaintiff filed a claim for benefits with the plan administrator], the District Court determined a question over which it had no jurisdiction").

56. Because Prudential corrected any mistakes in which the Free 30% was omitted or minimum benefit not applied in error, and the participants already received a payment correcting the errors, the claims are moot and cannot be disposed of in this trial.

57. Where a party has shored up its procedures to prevent any errors in the future, and where no intention that these problems will recur can be inferred from past practices or comments, the dispute is deemed moot. City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283 (1982); Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 190 (2000) (holding that the threshold of mootness is not that allegedly wrongful behavior is absolutely shown to never possibly recur, but that it is absolutely clear that the behavior is not reasonably expected to recur).

58. For example, in Adams v. Bowater Inc., 313 F.3d 611 (1st Cir. 2002), the court found that a claim regarding a plan amendment that was subsequently deleted was not moot, relying specifically on the fact that the plan administrator "has been persistently unwilling either

to admit that its amendment was unlawful or to say that it will not be reintroduced." Id. at 614.

The court explained:

> [The administrator] could easily have said on the record that it would not in the future reintroduce for [certain] workers the substance of the challenged amendment.  If this had been done without hesitation in the district court, this almost certainly would have persuaded us that the quarrel was moot.  Yet, even at oral argument on this appeal, [the plan administrator]'s counsel said he could not give such a commitment to the plaintiffs.

Id.

59.    Here, in contrast, Prudential and CIGNA have admitted that the failure to provide the Free 30% to twelve (12) participants, including Ms. Broderick, was error, and also have evidenced a clear intent to provide a recalculation of all participants allegedly "affected" by the Depenbrock litigation.  Adams is clearly distinguishable from these claims, which are moot.

60.    Even if the claims of participants who already received a payment were not moot, the statute of limitations may defeat the claims of many class members who made a benefits election years ago, an individualized question which was inappropriate for class consideration in this trial.

## IV.    CIGNA'S SOLICITATION OF RELEASES FROM THOUSANDS OF CLASS MEMBERS DID NOT VIOLATE ANY ETHICAL RULES OR RULE 23.

61.    While indeed state attorney ethics rules might prevent CIGNA's in-house attorneys or outside counsel from speaking directly with class members about this suit, no evidence even remotely suggests that any lawyer engaged in such conduct.  No ethical issues exist concerning CIGNA's solicitation of releases that waived the claims pursued in this litigation.

62.    Moreover, Rule 23's prerequisites to class action settlements are not at stake here, because CIGNA has not sought a class-wide settlement.

63.    The 2003 changes to Rule 23 requiring that a court must review and approve a settlement in a class action apply only to class-wide settlements of a certified class.  Fed. R. Civ. P. 23(e)(1)(a) ("The court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class.").

64.    As the Advisory Committee Notes to the 2003 changes to Rule 23(e) explained:

> Rule 23(e)(1)(A) resolves the ambiguity in former Rule 23(e)'s reference to dismissal or compromise of "a class action." That language could be--and at times was--read to require court approval of settlements with putative class representatives that resolved only individual claims. See Manual for Complex Litigation Third, § 30.41. The new rule requires approval only if the claims, issues, or defenses of a certified class are resolved by a settlement, voluntary dismissal, or compromise.

Fed. R. Civ. P. 23 advisory committee's notes.

65.    Moreover, the fact that Rule 23's provisions regarding class notice of a settlement specifically do not apply to the settlement of individual class representatives' claims further supports the notion that individual putative or certified class members may release their claims. Fed. R. Civ. P. 23(e)(1)(B) ("The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.").

66.    As the Advisory Committee Notes state:

> Subdivision (e)(1)(B) carries forward the notice requirement of present Rule 23(e) when the settlement binds the class through claim or issue preclusion; notice is not required when the settlement binds only the individual class representatives. Notice of a settlement binding on the class is required either when the settlement follows class certification or when the decisions on certification and settlement proceed simultaneously.

Fed. R. Civ. P. 23 advisory committee's notes. (emphasis added).

17

67.     Accordingly, Rule 23 does not bar the release of claims by individual members of the class.

Dated:  August 30, 2006

**MORGAN, LEWIS & BOCKIUS LLP**

By:  /s/ Joseph J. Costello
Joseph J. Costello
Jeremy P. Blumenfeld
Jamie M. Kohen
*Admitted pro hac vice*
1701 Market Street
Philadelphia, Pennsylvania  19103-2921
(215) 963-5295/5258/5472
(215) 963-5001 (fax)
jcostello@morganlewis.com
jkohen@morganlewis.com

**ROBINSON & COLE**
James A. Wade (CT # 00086)
280 Trumbull Street
Hartford, Connecticut  06103
(860) 275-8270
(860) 275-8299 (fax)
jwade@rc.com

*Attorneys for Defendants*
*CIGNA Corporation and CIGNA Pension Plan*