**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-------------------------------------------------X
                                                 :
JANICE C. AMARA, GISELA                          :   3:01 CV 2361 (MRK)
R. BRODERICK, ANNETTE S. GLANZ                   :
individually, and on behalf of others            :   Trial Date: 09/11/06
similarly situated,                              :
                                                 :
                           Plaintiffs,           :
            v.                                   :
                                                 :
CIGNA CORP. AND CIGNA                            :
PENSION PLAN,                                    :
                                                 :
                           Defendants.           :
                                                 :
-------------------------------------------------X
```

## DEFENDANTS' SUPPLEMENTAL PROPOSED FINDINGS OF FACT

Dated:  August 30, 2006          **MORGAN, LEWIS & BOCKIUS LLP**
                                 By: /s/ Joseph J. Costello_____
                                 Joseph J. Costello
                                 Jeremy P. Blumenfeld
                                 Jamie M. Kohen
                                 *Admitted pro hac vice*
                                 1701 Market Street
                                 Philadelphia, Pennsylvania  19103-2921
                                 (215) 963-5295/5258/5472
                                 (215) 963-5001 (fax)
                                 jcostello@morganlewis.com
                                 jkohen@morganlewis.com

                                 **ROBINSON & COLE**
                                 James A. Wade (CT # 00086)
                                 280 Trumbull Street
                                 Hartford, Connecticut  06103
                                 (860) 275-8270
                                 (860) 275-8299 (fax)
                                 jwade@rc.com

                                 *Attorneys for Defendants*
                                 *CIGNA Corporation and CIGNA Pension Plan*

In addition to the Proposed Findings of Fact ("DFF") Nos. 1-242, submitted on June 27, Defendants CIGNA Corporation ("CIGNA") and CIGNA Pension Plan (collectively, "Defendants") hereby propose the additional findings of fact Nos. 243-78 set forth below.

## VII. CLASS MEMBER FLANNERY'S SPD AND SECTION 204(H) CLAIMS FAIL.

243. Based on the testimony of Plaintiff Patricia Flannery, the Court finds the following facts regarding the issues of likely harm and harmless error in connection with Counts 2 and 4:

- Ms. Flannery was born on March 30, 1946, making her 51 years old at the time of the November 1997 Newsletter announcing the Part B cash balance plan and the freezing of accruals for some participants under Part A.

- Ms. Flannery completed one year of college at night while working in the 1970s.

- She began work for CIGNA in 1978 in the purchasing department, and left for another job opportunity in 1979.

- In 1981, Ms. Flannery returned to CIGNA until 1991, when she was laid off.

- In 1993, Ms. Flannery returned to CIGNA on a short-term job until 1994.

- In September, 1994, Ms. Flannery returned to CIGNA as an independent contractor doing clerical work until 1997, until her project ended.

- After March 1997, Ms. Flannery worked as an independent contractor for CIGNA doing computer testing, for two years.

- In October 2000, Ms. Flannery returned to CIGNA as a business analyst in the Integrated Care Systems department, located in the Philadelphia headquarters.

- She got the job through a colleague at CIGNA who also served as a business analyst, and was motivated to return by her desire to have healthcare and a pension, and she was not making as much money in calligraphy. During the interview process, she tried unsuccessfully to obtain a higher salary.

- During the interview process, Ms. Flannery asked the Human Resources representative about her pension, and was told that her previous service would be bridged, that she would get her pension, and that more information would be provided in orientation when she began her job.

- Ms. Flannery accepted the position, but did not begin to work for CIGNA until a about a month later. During this time, she did not inquire any further regarding her pension benefits upon rehire.

- The person running Ms. Flannery's orientation on her first day of work told her to contact her HR representative for more information on her pension. Two months later, at the beginning of 2001, Ms. Flannery met with Carol Pirozzi of HR regarding her pension.

- In March 2001, Ms. Flannery received an estimate of her benefits in Part B, and she immediately thought that an error had been made because the figure of her opening account balance was too low.

- In July 2001, Ms. Flannery contacted Stewart Beltz, who she understood to be the Plan Administrator for the CIGNA pension plan, to inquire as to why she had been converted to Part B.

- After that point, Ms. Flannery did not request of CIGNA any additional information regarding her pension until 2004.

- In 2003, Ms. Flannery received her Total Compensation Report and in 2004 and 2005, her Total Rewards Report.

- In July 2004, Ms. Flannery called Prudential Retirement to inquire regarding her service credits for her prior CIGNA employment.

- In 2005, Ms. Flannery contacted John Arko, who she understood at that time to be the Plan Administrator for the CIGNA pension plan, and asked him to review her opening account balance because she believed there was an error.

- Prudential reviewed her prior CIGNA employment service history and determined that an error had been made in the calculation of Ms. Flannery's opening account balance. Prudential then recalculated her opening account balance and sent her a statement indicated how such balance was derived.

- After her account balance was corrected, Ms. Flannery received a pension statement, and was also able to access Prudential's website to check her account balance.

## VIII. PLAINTIFFS' ALLEGATIONS CONCERNING PRUDENTIAL'S RECORD-KEEPING VIOLATIONS ARE INACCURATE.

As noted in DFF Nos. 78-79, Prudential Retirement ("Prudential") is the record keeper for the CIGNA Pension Plan, since the Stock Purchase and Asset Transfer of CRIS of CIGNA to Prudential in November 2003. Since the sale, Prudential completes the benefits estimates

and calculations for Plan participants, including the Class Members herein. When Prudential is missing information required to complete such estimates and calculations, Prudential contacts CIGNA, which provides the information.

244. Prudential has various controls, checks and systems in place to ensure that the accuracy of all estimates and calculations for Plan participants is confirmed, including those policies and procedures reflected in Defs' Proposed Trial Ex. 729.

### A. Plaintiffs' Allegation That Prudential Did Not Preserve The Minimum Benefit For Thousands Of Class Members Is Inaccurate and Misleading.

245. The minimum benefit is fully protected and Prudential had various procedures and checks in place to ensure the accuracy of benefit estimates and distributions. See Defs' Proposed Trial Exs. 726, 727, 729.

246. Plaintiffs' conclusions regarding the so-called "missing OAB"–namely Plaintiffs' accusation that the OAB was "missing" and therefore the minimum benefit could not be protected–derive only from a lack of understanding of the operation of the plan and the record-keeping functionalities Prudential employs.

247. Upon Plaintiffs' accusation that the OAB field was inappropriately "missing" data for certain class members, Prudential undertook an extensive investigation of the propriety of the zero entries. See Defs' Proposed Trial Ex. 724.

248. Prudential hired Andrew Hodges, who was familiar with Part B as a result of his work on the conversion, to complete this review, on which he spent a month and a half. Andy Hodges also evaluated any class members who had a zero entry in the fields identifying the annuity at the time of conversion or the social security offset, which also are figures that may be used to determine a participant's minimum benefit. Id.

249. Ms. Hodge's analysis revealed that out of 10,000 entries reviewed, all but 68 of

the "zero OAB" entries were proper because the participant did not have, and should not have had, an opening account balance. Id.

250.  Numerous explanations exist for why zero in the OAB field in the record-keeping system is both accurate and proper. These include that, inter alia: (1) the participant did not have sufficient credited service under the old pension plan to accrue an OAB; (2) the participant took a payment from the plan and his OAB was "zeroed out" in the record-keeping system; (3) the participant took a cash payout of his entire Part A benefit; (4) the participant was hired after January 1, 2001 and therefore did not have his Part A benefit converted to an OAB; (5) and the participants left CIGNA in a nonvested status. Id.

251.  To date, out of approximately 10,000 entries reviewed, Mr. Hodges has confirmed that for approximately 9,700, the "zero OAB" entries were proper because the participant did not have, and should not have had, an opening account balance. Of the approximately 300 class members for whom further review was required, 111 required additional information from CIGNA to validate the social security offset or employment history. For the remaining 188, Prudential collected and/or calculated missing information, and all record-keeping errors have been resolved before the participant elected a benefit.

252.  None of the individuals for whom a calculation was required had already received a distribution. This is because pursuant to Prudential's verification procedures, before a benefit distribution is effectuated, the benefits administration staff verifies the accuracy of the benefit payment, including checking for the application of the minimum benefit. Accordingly, no concerns exists that participants who have received benefits were improperly not given the advantage of their minimum benefit, where applicable. Defs' Proposed Trial Ex. 729.

253.  Because the participants corrected had not requested a benefits distribution, no

harm resulted from Prudential's omission of the OAB data from its record-keeping for these 68 individuals.

### B. Prudential Only Erred In Failing To Provide The Free 30% To Four Class Members, Other Than Plaintiff Broderick.

254. In response to Broderick's complaint that she did not receive the Free 30%, Prudential reviewed the data for all class members who had initiated a pension payment and may have been entitled to the Free 30% (i.e., former Tier 1 participants who had a spouse at the time of the benefit commencement), to ensure that they were properly provided the Free 30%. See Defs' Proposed Trial Exs. 722-23.

255. Prudential conducted a detailed analysis to determine the scope of the issue, evaluating some reason existed for non-application of the Free 30% for each participant who was terminated vested and received a payment since 1998. Id.

256. Of the more than 16,500 participants who were vested terminated and had initiated payments, Prudential determined that only twelve (12) of those participants, including Ms. Broderick, improperly did not receive the benefit of the Free 30%, although they were entitled to such benefit upon their payout. See Defs' Proposed Trial Ex. 722.

257. These reasons for not being eligible for Free 30% included, inter alia, that the participant: was a prior Tier 2 participant; was a prior employee of Healthsource/Provident (did not begin participating in Plan until 1999), Teledrug/Trilog (did not begin participating in Plan until 2001, no prior DB pension plan), Intracorp (had no prior CIGNA benefit), or Unum- (no prior DB pension plan), or was less than age 55 upon termination. Id.

258. Prudential accordingly is in the process of contacting these participants and issuing a payment reflecting the difference between the lump sum payment they received and that which they were owed by virtue of the Free 30% benefit.

- 5 -

259. Moreover, Prudential has put into place detailed processes for its benefits specialists to follow to assure that the Free 30% is appropriately applied in the future.

260. No concern exists that any class members but these nine (9) individuals were, or will be, deprived of the Free 30%, and Plaintiffs' claim for relief should be rejected.

### C. No Class Representatives or Class Members Have Standing To Pursue Plaintiffs' Minimum Benefit, Free 30% or Relative Value Claims.

261. None of named plaintiffs have standing to assert an issue regarding the minimum benefit, Free 30% or relative value disclosures and accordingly none may serve as a Class Representative for purposes of these claims.

262. As to Plaintiff Amara, while Plaintiffs allege she was not told about her minimum benefit on two occasions, because Ms. Amara was rehired before December 21, 1998, CIGNA voluntarily recalculated her benefits to her satisfaction in accordance with the Depenbrock decision. Ms. Amara, like all other participants whose benefits have been recalculated as a result of the Depenbrock decision, accordingly lacks standing on these claims.

263. Ms. Amara's estimates or benefit distribution forms related to Part B therefore had no bearing on the benefits to which she is entitled, as she is receiving benefits as if she were in Part A.

264. Plaintiff Broderick, a Tier 1 rehire who was eligible for the Free 30%, was erroneously not offered the Free 30% when she initiated benefit payments in 2003. Upon notification by Ms. Broderick that there was a problem with her benefits, CIGNA treated her complaint as a claim to the plan administrator, who upon discovery that an error had been made, recalculated her benefits to provide the Free 30%.

265. Ms. Broderick is now receiving all benefits to which she is due, and therefore lacks standing on these claims.

266. Plaintiffs have never asserted that Plaintiff Glanz, a Tier 1 employee who was continuously employed from 1988 until June 2004, suffered any harm as a result of any disclosures associated with benefit option forms.

267. The minimum benefit and Free 30% do not apply to the entire class. Indeed, for many participants, the minimum benefit is irrelevant because the participants' account balances exceed the minimum benefit value at the time of benefit commencement.

268. The applicability of the Free 30% or relative value disclosures to individual class members is necessarily unknown at the present. For example, the Free 30% is irrelevant for all participants except those who elect a benefit in annuity form where the annuity with the Free 30% exceeds the value of the participant's account balance. Additionally, because the Free 30% only is applicable where the participant has a surviving spouse at benefit commencement, its application only may be evaluated at the time of benefit commencement.

269. Because the participants who might be affected by the Free 30% claims cannot be identified at the present time, their claims are not ripe for this Court's determination.

## IX. CIGNA'S SOLICITATION OF RELEASES FROM THOUSANDS OF CLASS MEMBERS DID NOT VIOLATE ANY ETHICAL RULES OR RULE 23.

270. The claims of all three Plaintiffs, one testifying class member (Curlee), and thousands of other class members in this suit are barred entirely by an Agreement and Release ("Release") each signed in exchange for the payment of severance. See Defs' Proposed Trial Exs. 525-28, 730.

271. No evidence even remotely suggests that any lawyer engaged in unethical conduct. Rather, CIGNA provided severance payments to thousands of class members who were laid off in exchange for a release that was presented by CIGNA's human resources professionals in the ordinary course of business.

272. The depositions of the Named Plaintiffs and the two testifying class members confirm that none of them had discussions regarding the releases with attorneys representing CIGNA in which they were not represented by counsel.

273. No ethical issues exist concerning CIGNA's solicitation of releases that waived the claims pursued in this litigation.

274. CIGNA has not sought a class-wide settlement. Rather, in the ordinary course of reductions in force, CIGNA solicited releases from various individuals who are class members in this suit.

275. Since at least March of 2004, Plaintiffs' counsel has been aware of CIGNA's solicitation of releases of laid-off employees, including class members, and Plaintiffs' counsel has never moved the Court for an injunction concerning CIGNA's solicitation of releases in the ordinary course of business.

### X.  THE CLASS REPRESENTATIVES LACK STANDING ON PLAINTIFF'S DEPENBROCK ALLEGATIONS AND ALL RECALCULATIONS NEVERTHELESS HAVE BEEN COMPLETED.

276. Despite that neither the terms of the Plan, nor the Court's order in Depenbrock **required** CIGNA to recalculate the benefits of the 206 participants similarly-situated to John Depenbrock, CIGNA has voluntarily undertaken to complete those recalculations. Defs' Proposed Trial Ex. 718.

277. The process of recalculation for each participant was complicated and required various assumptions to be drawn. To that end, CIGNA and Prudential formed an agreement for Prudential to complete the recalculations, and sent notification to the participants of such recalculations, a process which is now nearly complete. Id.

278. Prudential is in the process of recalculating the benefits for all of those participants similarly-situated to the plaintiff John Depenbrock, namely those participants rehired

between January 1, 1998 and December 21, 1998, and notifying those participants.  Defs' Proposed Trial Ex. 719-21.

279.    No Class Representative exists who has standing to pursue claims for missing or inaccurate Depenbrock recalculations on behalf of class members.  Each of the Named Plaintiffs either were not impacted by the Depenbrock decision at all (Broderick and Glanz), or already have been recalculated to their satisfaction (Amara).

Dated:  August 30, 2006

**MORGAN, LEWIS & BOCKIUS LLP**

By: /s/ Joseph J. Costello_____
Joseph J. Costello
Jeremy P. Blumenfeld
Jamie M. Kohen
*Admitted pro hac vice*
1701 Market Street
Philadelphia, Pennsylvania  19103-2921
(215) 963-5295/5258/5472
(215) 963-5001 (fax)
jcostello@morganlewis.com
jkohen@morganlewis.com

**ROBINSON & COLE**
James A. Wade (CT # 00086)
280 Trumbull Street
Hartford, Connecticut  06103
(860) 275-8270
(860) 275-8299 (fax)
jwade@rc.com

*Attorneys for Defendants*
*CIGNA Corporation and CIGNA Pension Plan*