UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| Janice C. Amara, Gisela R. Broderick, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> CIGNA Corp. and CIGNA Pension Plan, <br><br> Defendants. | : <br> : <br> : <br> : <br> : <br> : Civil. No. 3:01-CV-2361 (MRK) <br> : <br> : August 31, 2006 <br> : <br> : <br> : |

**PLAINTIFF CLASS' SUPPLEMENTAL AUTHORITIES AND NEW EVIDENCE**

Stephen R. Bruce Ct 23534
Suite 210
805 15th St., NW
Washington, DC 20005
(202) 371-8013

Thomas Moukawsher Ct 08940
Moukawsher & Walsh, LLC
21 Oak Street
Hartford, CT 06106
(860) 287-7000

Attorneys for the Plaintiff Class

## PLAINTIFFS' SUPPLEMENTAL AUTHORITIES AND NEW EVIDENCE

Plaintiffs bring to the Court's attention the following supplemental authorities and newly-produced evidence which was not available prior to Plaintiffs' July 25, 2006 Reply Brief:

**1. December 4, 1998 Letter from CIGNA's Vice-President for Employee Benefits to Employees Denying Benefit Reductions Described in *Wall Street Journal* Article.** On August 23, 2006, Prudential as the "recordkeeper" for CIGNA produced a December 4, 1998 letter from CIGNA's Vice-President of Employee Benefits to employees which was prepared in response to an article appearing in the *Wall Street Journal* on the same date about employers winning "big" with cash balance conversions but employees often "losing" benefits. The letter assures CIGNA's employees that its "Plan is not designed to save money" and that CIGNA "wants to ensure that older, longer-service employees receive fair and adequate benefits at retirement." Questions and Answers enclosed with the letter repeat assurances contained in the December 1997 Retirement Kit (Pls. Ex. 8, Stratman Ex. 2) that "generally speaking" the cash balance benefits are "comparable" or "larger" than the prior plan's and that CIGNA is saving no money "with these changes." The letter and enclosure are attached as Prop. Pls. Ex. 217, along with a copy of the *Wall Street Journal* article from Prudential's files.[1]

In objecting to Plaintiffs' inclusion of the same *Wall Street Journal* article in Pls. Ex. 130, CIGNA represented that this article was written by persons who are not parties to this suit, without mentioning that it was the subject of a specific written communication from CIGNA's Vice-President for Employee Benefits. See Mem. Regarding Defs. Responses to Plaintiffs Prop.

---

[1] Plaintiffs will provide an updated index and tabs at the pre-trial conference for the new Prop. Pls. Exs. referenced herein, which are numbered 217-226, so that they can be added to Binder VI.

1

Trial Exs. (dkt. #180) at 4 and 6-7. The letter again shows that CIGNA's object was to "avoid any significant negative reaction from employees" (Pls. Prop. Findings ¶264), even if this entailed denying employees complete and accurate information about the changes.

**2. New SPD and Supplement for CIGNA's Cash Balance Plan.** On July 28, 2006, three days after Plaintiffs' Reply Brief was filed, CIGNA distributed a new SPD and Supplement to active participants and retirees about the cash balance plan. The new SPD and Supplement, together with the accompanying email and cover letter from CIGNA, are submitted as Proposed Pls. Ex. 218. For the Court's convenience, Plaintiffs' counsel prepared the attached summary table as Pls. Ex. 219 comparing the disclosures in the new SPD and Supplement with those in the prior SPD. The table shows that CIGNA is now providing information on:

(1) The "bookkeeping" nature of the cash balance accounts;

(2) The "effect of interest rates on your annuity payments"; and

(3) The preservation of the preserved spouse's benefit (also known as the "Free 30%" survivor's benefit).

None of this information was provided in the disclosures distributed contemporaneously with the cash balance conversion.

The table also shows that CIGNA is modifying many of the assurances that it developed contemporaneous with the cash balance conversion to "quickly dispel any perceptions of take-aways" (Pls. Prop. Findings ¶253) about how:

(1) The opening account balances under cash balance are "equal" to the lump sum value of the pension benefit you earned through December 31, 1997 and were "based on guidelines established by the federal government";

(2) "Each dollar's worth of credit is a dollar of retirement benefits payable to you after you are vested"; and

2

(3) Participants will be "notified" by the Retirement Service Center "if the minimum benefits rule applies to you."

The reports of Plaintiffs' actuarial expert and the record in this case, including CIGNA's own admissions, establish that each of these assurances was false. Pls. Prop. Findings ¶¶34-63, 128-29, 151-53, 154, and 300-7.

The new SPD and Supplement were produced by Defendants on August 2, 2006 (without the cover email or letter, which two of the named Plaintiffs provided). Defendants have produced no documents related to the drafting of the new SPD or Supplement. A Pension Plan Initiatives log maintained by Prudential indicates that CIGNA started preparing these documents in early 2006, with distribution scheduled for the end of April 2006. Pls. Ex. 220 at SuppD025509.

Plaintiffs submit that the new SPD and Supplement are admissible under FRE 407 to establish CIGNA's "control" over the disclosures and to show the "feasibility of precautionary measures." They are also admissible in regard to dates of notice and if CIGNA intends to argue that its liability on any of the disclosure claims is thereby limited to the period prior to July 28, 2006.

**3. Decision in Richards v. FleetBoston on ERISA Disclosures**. On July 24, 2006, Judge Hall issued a decision in Richards v. FleetBoston, 2006 WL 2092086 (D.Conn.) (which was not received by counsel for the Plaintiffs until after the July 25, 2006 Reply Brief) which denied Fleet's motion to dismiss Richards' disclosure claims. Because Fleet's disclosures are remarkably similar to CIGNA's, the rulings in Richards are particularly pertinent here:

 (a) "The SPD does not alert such participants that ... the administrators included less than the full value of the retirement benefit available to a participant under the Traditional Plan when calculating the opening balance of the cash balance account." Id. at *8.

3

(b)    "[T]he SPD does not properly explain the manner in which Traditional Plan benefits are converted to cash balance accounts, let alone the "full import" of that term." Id. at *8.

(c)    Richards "adequately alleged that the SPD failed to explain the full import of all provisions affecting participants. This is so particularly with respect to the wear-away effect, which is alleged to affect many participants and is not an 'idiosyncratic contingency.'" *8.

(d)    Richards adequately alleged that FleetBoston's "1996 Employee Reference Guide" misleadingly stated that "your cash balance benefit builds steadily throughout the time you work at Fleet." Id. at *5. "The Guide's description of the cash balance account as a "benefit" gives the impression that the employees' accrued benefits grow steadily over the course of their employment." Id. Defendants do not dispute that "[w]hile the hypothetical cash balance accounts may grow steadily as described in the Guide," "Richards and similarly-situated participants have actually accrued no new benefits in the nine years since the plan amendment. Neither the statement quoted in the Complaint nor surrounding language in the Guide alerts employees that the "cash balance benefit" is merely a hypothetical account, or that a wear-away effect exists." Id.

(e)    The Guide also "answered a hypothetical employee question: 'Can my pension benefit decrease under the new Fleet Pension Plan?', with the answer 'No', by disingenuously observing: 'Whether you participate in the cash balance benefit or the traditional benefit, you will never receive less than the benefit you earned as of December 31, 1996." Id. at *6. This statement fails to mention "that the amendment caused many plan participants to lose substantial plan benefits to the wear-away effect and the benefit accruals that decline with age." Id.

(f)    "The statement that a participant's pension benefit would not decrease under the Amended Plan, and that a participant "will never receive less than the benefit he or she earned as of December 31, 1996," may correctly describe the Amended Plan terms, as described in the Amended Complaint, but only if one interprets the term "pension benefit" to refer to total accrued benefit, rather than to the rate of benefit accrual." Id. The court cannot find, at this stage in the litigation, that Fleet's statements would not have misled a reasonable participant into believing that his or her periodic benefit accruals would remain constant or increase under the Amended Plan, and Richards alleges that she and many other employees actually accrued zero new benefits following the plan amendment." Id. at *6.

(g)    Richards also adequately pled that the assurance in the Guide that "The New Plan makes good sense for our employees" was materially misleading "because she has pled that the plan amendment "significantly reduced the rate of future benefit

4

accruals for many plan participants, including Richards." Id. at *6.

Judge Hall, at the same time, dismissed Richards' allegations that the SPD failed to explain that the rate of benefit accrual declines with age. The court found "no authority suggesting that either [ERISA] section 102 or section 404 would require disclosure of whether or not a participant's rate of benefit accrual declines with age." Id. at *9 (citing Register v. PNC, 2005 WL 3120268 *9 (E.D. Pa. 2005)).

**4. Prudential Production on "Minimum Benefits."** On August 23, 2006, Prudential produced a number of documents further establishing that "minimum benefits" (i.e., the benefits earned under the Plan before the conversion), including the "Free 30%" survivor's annuity, have not been protected. From a list of 17 individuals for whom the Plaintiffs requested systems print-outs in January 2006, Prudential produced printouts with handwritten notes showing a failure to protect the minimum benefits, including the Free 30% survivor's benefit, for 5 of the 17 individuals. Pls. Ex. 221 includes the cover pages of those printouts with Prudential's handwritten notes. Plaintiffs have already identified another 9 such individuals in their briefs. Pls. Prop. Findings at ¶¶303-4, 310-11, 320, 328-29, and Reply Br. at 73 (citing Pls. Exs. 144, 191 and 207). According to Prudential, over 60 more records have been "updated" in the last two months, Prop. Pls. Ex. 225 (fourth page), although Prudential has yet to produce the related corrections.

On August 23, 2006, Prudential also produced a "draft" analysis dated June 1, 2006 prepared for CIGNA about which cash balance plan participants should be eligible for the Free 30% survivor annuity. That analysis is attached as Pls. Ex. 222. Prudential has prepared a related spreadsheet indicating that 166 participants who have commenced benefits, plus 341 participants

who died since 1998, may have been eligible for the Free 30% survivor's benefit. That spreadsheet is attached as Pls. Ex. 223.[2]

Through emails dated April 28, 2006 and August 8, 2006 (submitted as Pls. Ex. 224), Prudential recently issued instructions to its "CIGNA accounts team" "to check to make sure that if [participants] should have an OAB that they do have them" and check if the "minimum [benefits] EXCEED the annuity" from cash balance. CIGNA's and Prudential's documents indicate that this was not part of the procedures before. This is inconsistent with the representations in CIGNA's Trial Brief that "Prudential has a number of procedures in place to ensure that minimum benefits are calculated and that those benefits are protected." Id. at 44.

No instructions have been issued to the CIGNA accounts team about checking persons whose retirement benefits commenced before August 8, 2006 to ensure that minimum benefits were protected. A spreadsheet prepared by Prudential and attached as Pls. Ex. 225 indicates that Prudential has, to date, "updated" 66 records of participants who have not commenced benefits and is analyzing 208 others. But Prudential simultaneously has developed six other "Exclusion Reasons" for declining to review an additional 9,319 participants whose records do not include minimum benefits. Under "Exclusion Reason 1" over 5,200 participants are inexplicably excluded from review because they commenced benefits after January 1, 1998. Pls. Ex. 225 (first page). Prudential's Rule 30(b)(6) representative, a former CIGNA employee who was rehired for this project, testified that he was "instructed" not to look at those records and he did what he was "told to do." Pls. Ex. 226 (Hodges 8/4/06 Tr.) at 13, 22-23 and 47-48. No other explanation has

---

[2] Prudential's estimate of 166 participants who have commenced benefits is similar to Plaintiffs' estimate of 200. Pls. Ex. 9 at ¶7.

been offered. The analysis of the Plaintiff Class' actuarial expert shows that these are precisely the participants who are most likely to be affected by CIGNA's failure to protect minimum benefits. Pls. Prop. Findings ¶319. Another 1,187 participants were excluded from review because they have terminated employment without vested benefits--even though ERISA specifically provides that their benefits cannot be forfeited unless and until they incur a 5-year break in service without being re-employed by CIGNA. ERISA §203(b)(3), 29 U.S.C. §1053(b)(3), as amended by the Retirement Equity Act of 1984. Still another group of 2,954 participants were excluded from Prudential's review because their "credited service @ conversion = 0." Tellingly, the former CIGNA employee who was rehired for this project testified that he was "hoping to arrive at the conclusion that there was no credited service under the terms of the plan." Pls. Ex. 226 at 30-31. The record of Steve Law, one of the employee witnesses, shows that the computer records may show "0" in this field when it is simply wrong. Dfs. Ex. 568 at P1862-3 (Mr. Law had over 5 years of service at the conversion).

No systems checks or other procedures have been installed to identify either current or former participants like Patricia Flannery whose minimum benefits were understated. Ms. Flannery's minimum benefits and opening account balance were only <u>one-third</u> of what they should have been until she complained repeatedly and retained a lawyer. Pls. Prop. Findings ¶¶320-21.

As detailed in the accompanying Motion for Adverse Inferences and Sanctions, both CIGNA and Prudential continue to refuse to produce electronic data that will allow Plaintiffs' experts to identify the persons whose minimum benefits have not been protected. Plaintiffs respectfully request that the Court draw the inference requested in that Motion that these records

will show hundreds, and potentially thousands, of individuals whose minimum benefits had greater value than their cash balance accounts on separation.[3]

**5. The Seventh Circuit Decision in Cooper v. IBM**. On August 7, 2006, the Seventh Circuit decided the Cooper v. IBM appeal on the ERISA §204(b)(1)(H) claim in favor of IBM. 2006 WL 2243300. The employee class filed a petition for rehearing *en banc* on August 21, 2006, because of the inconsistences between the panel's decision and Berger v. Xerox, 338 F.3d 755 (7th Cir. 2003). Plaintiffs submit that the Cooper decision is contrary to fundamental canons of statutory construction because it conflates two different statutory rules for defined benefit and defined contribution plans and is premised entirely on the panel's policy analysis, which has gaping holes. For example, the panel states that "Nothing depends on age" and then illustrates by describing how an age 65 employee could "wait" 40 years to draw his benefits, i.e., until age 105, in order to obtain an equal amount of retirement income. 2006 WL 2243300 at *4. In finding IBM's plan to be "economically equivalent" to a defined contribution plan, the Cooper decision furthermore fails to address "wear-away" periods in which older, longer-service do not earn additional benefits. Defined contribution plans are required to have separate individual accounts,

---

[3] In anticipation of an argument by CIGNA that its current instructions "moot" the minimum benefit claims, Plaintiffs point out that "protestations of repentance and reform" in the midst of litigation are all too predictable. Gwaltney v. Chesapeake Bay Fdn., 484 U.S. 49, 67 (1987). Claims are only moot when a defendant's actions render any relief either unnecessary or impossible so that the Court is "without power" to grant further relief. United States Parole Comm'n v. Geraghty, 445 U.S. 388, 411 (1980). In this regard, a defendant carries a "heavy burden." Friends of the Earth, Inc. v. Laidlaw Envtrl. Servs. Inc., 528 U.S. 167, 189 (2000). Accord McGinty v. State of New York, 193 F.3d 64, 71 (2d Cir. 1999) ("continuing live dispute over the sufficiency of defendants' actions in curing their ADEA violations" required reversal of district court's determination that claims were moot); Buckhannon Bd. & Care Home v. W.Va. Dept. of Health & Human Res., 532 U.S. 598, 608-9 (2001); Firefighters Local Union No. 1784 v. Stotts, 467 U.S. 561, 571-72 (1984).

ERISA §3(34), 29 U.S.C. §1002(34), which by definition, does not allow "wear-aways." The panel's decision relatedly neglects to address the fact that employers who sponsor cash balance plans are not actually making monetary contributions to individual accounts, Berger, supra, 338 F.3d at 758 ("the employee has no actual account [and] the employer makes no contributions to an actual account"), and instead frequently adopt contractual features, such as wear-aways, that negate payment of the hypothetical credits to employees' bookkeeping accounts.

Plaintiffs respectfully submit that this Circuit's decision in Esden, 229 F.3d 154 (2000), which Judge Leval wrote, the Seventh Circuit's decision in Berger, and Judge Hall's decision in Richards v. FleetBoston, 427 F.Supp.2d 150, offer the sounder and more persuasive application of ERISA to cash balance plans. ERISA's rules for defined benefit plans are designed to ensure that participants ratably accrue an "annual benefit commencing at normal retirement age" without reductions because on age. ERISA §§ 3(23) and 204(b)(1), 29 U.S.C. §§1002(23) and 1054(b)(1). Telling an older employee that he can "wait" until age 105 to "draw" the same retirement benefit for a year of service as a younger employee offers no solace or legal excuse. Judge Posner had it right when he wrote in Berger that when a "hybrid" plan fails to conform with the rules for defined benefit plans, "for hybrid read unlawful." 338 F.3d at 763.

**6. Identification List of Witnesses and Key Employees**. For the Court's convenience, Plaintiffs' counsel have prepared a list identifying the witnesses, experts and key employees for both parties, which is attached to this submission.

**7. Errata/Corrections.** Plaintiffs bring the following errata/corrections from the Trial Brief, Reply Brief, and accompanying materials to the Court's attention:

(a) Pls. Ex. 52 (transcript of Conference of Consulting Actuaries' audiotape of

Defendants' actuarial expert asking questions of IRS officials). The transcript included as Pls. Ex. 52 was inadvertently a draft which contained a number of transcription errors that were subsequently corrected. Plaintiffs request that the final version be substituted and will supply it at the pre-trial conference. Defendants have already been provided the audiotape and final version of the transcript.

(b) *Connecticut v. Teal*: correct the citation on p. 29 of the Reply Br. to 457 U.S. 440.

(c) *Katt v. City of New York*: correct the citation on p. 6, n.3 of the Reply Brief to 151 F.Supp.2d 313.

(d) *Lee v. Burkhart*: correct the citation on page 55 of the Reply to 991 F.2d 1004.

(e) In the Plaintiffs' Proposed Conclusions of Law on page 28, the reference to ERISA §107 should have been ERISA §209, 29 U.S.C. §1059.

Dated: August 31, 2006

Respectfully submitted,

By: /s/ Thomas G. Moukawsher
Thomas G. Moukawsher ct08940
Ian O. Smith ct24135
Moukawsher & Walsh, LLC
21 Oak Street
Hartford, CT 06106
(860) 278-7000
(860) 446-8161 (fax)
tmoukawsher@mwlawgroup.com

Stephen R. Bruce ct23534 (pro hac vice)
Allison C. Caalim
805 15th St., NW, Suite 210
Washington, DC 20005
(202) 371-8013
(202) 371-0121 (fax)
stephen.bruce@prodigy.net

Attorneys for the Plaintiff Class

## CERTIFICATE OF SERVICE

I certify that copies of the foregoing Plaintiff Class' Supplemental Authorities and New Evidence, with Identification List and Proposed Plaintiffs' Exhibits 217-226, and this Certificate of Service, were filed electronically through the CM/ECF system on August 31, 2006. Notice of this filing will be sent by e-mail to all parties listed below by operation of the Court's electronic filing system:

> Joseph J. Costello
> Jeremy P. Blumenfeld
> Jamie M. Kohen
> Morgan, Lewis & Bockius
> 1701 Market St.
> Philadelphia, PA 19103-2921
>
> Christopher A. Parlo
> Morgan Lewis & Bockius
> 101 Park Avenue
> New York, NY 10178-0600
>
> James A. Wade
> Brett J. Boskiewicz
> Robinson & Cole, LLP
> 280 Trumbull Street
> Hartford, CT 06103-3597

/s/ Thomas G. Moukawsher
Thomas G. Moukawsher  ct08940
21 Oak Street
Hartford, CT 06106
(860) 278-7000
(860) 446-8161 (fax)
tmoukawsher@mwlawgroup.com

Attorney for the Plaintiffs