UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Janice C. Amara, Gisela R. Broderick, | : | |
| individually and on behalf of | : | |
| all others similarly situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | Civil. No. 3:01-CV-2361 (MRK) |
| | : | |
| CIGNA Corp. and | : | August 31, 2006 |
| CIGNA Pension Plan, | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFF CLASS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ADVERSE INFERENCES AND SANCTIONS BASED ON DEFENDANTS' RESPONSES TO DISCOVERY

Stephen R. Bruce Ct 23534
Suite 210
805 15th St., NW
Washington, DC 20005
(202) 371-8013

Thomas Moukawsher Ct 08940
Moukawsher & Walsh, LLC
21 Oak Street
Hartford, CT 06106
(860) 287-7000

Attorneys for the Plaintiff Class

## **Table of Contents**

Introduction ............................................................... 1

I.    Defendants Have an Obligation to Produce the Documents Identified by the
      Rule 30(b)(6) Deponents ................................................ 3

      A.    The Documents Related to the "Cost Savings" from CIGNA's Cash Balance
            Conversion ...................................................... 3
      B.    The Incomplete Electronic Data Requested With the "Class List" ........... 6
      C.    "Processes and Procedures" Related to the Protection of "Minimum Benefits" . . 9

II.   The Refusal to Produce These Documents Warrants Adverse Inferences ........... 11

III.  Sanctions Should Also Be Ordered under Rule 37 and 28 U.S.C. §1927 ........... 14

Conclusion ............................................................... 15

i

**Introduction**

This is Plaintiffs' third motion related to CIGNA's production of documents in this

lawsuit. As Plaintiffs detailed in their last motion filed on February 2, 2006 (dkt. # 158 and 159),

CIGNA's responses the Plaintiffs' Second and Third Requests for Production in June 2002 and

July 2005 were woefully incomplete. The production of documents by Prudential, acting as the

recordkeeper for CIGNA, has continued intermittently up to August 30, 2006, but it continues to

be incomplete and inadequate.

Plaintiffs filed the February 2, 2006 motion to compel after numerous efforts to obtain the

documents. In a telephone conference call on February 14, 2006, Your Honor suggested that

Plaintiffs take the Rule 30(b)(6) depositions of the "custodians of records" of both CIGNA and

Prudential to determine whether documents existed and find out why they were not produced.[1]

Prudential initially produced two Rule 30(b)(6) witnesses, Lorraine Morris and Gregg Loboda,

who were deposed on April 19, 2006, but limited their testimony to certain items in the notice. A

second deposition was to be held to cover the remaining items. Plaintiffs deposed CIGNA's

30(b)(6) witness, John Arko, on April 28, 2006. After repeated requests, three additional

witnesses for Prudential, Andy Hodges, Denise Belanger, and Mark Lynch, were deposed on

August 4, 2006.

In the February 14, 2006 telephone conference, the Court advised Plaintiffs' counsel to

focus any further requests for sanctions, rather than list each and every document that has not

---

[1] The Rule 30(b)(6) notice to CIGNA and the subpoena and notice to Prudential are
attached as Exhibits 1 and 2. The attachments include Defendants' responses to the Requests for
Production and the follow-up requests from Plaintiffs' January 17, 2006 inspection of the
computer systems for the Pension Plan. (Because the attachments to both notices are the same,
they are included only with Exhibit 1 here.)

been produced. Accordingly, this motion focuses on three categories of documents that have continued not to be produced:

(1) Documents related to "cost savings" from CIGNA's cash balance conversion;

(2) Electronic data fields requested with the "Class List"; and

(3) Processes or procedures for protecting "minimum benefits," i.e., the retirement benefits earned under the prior plan before the date of the conversion.

Plaintiffs have given Defendants opportunity after opportunity to produce these documents, including allowing them to produce documents long after the discovery deadline passed with the expectation that cooperation would be obtained. With the trial date imminent, Plaintiffs move to draw adverse inferences and for sanctions based on this non-production.

Plainly, Defendants have repeatedly disregarded the Federal Rules of Civil Procedure by not producing these documents in response to Plaintiffs' Requests for Production or the February 2, 2006 Motion to Compel, and by still not producing the documents at the Rule 30(b)(6) depositions. A Rule 30(b)(6) deponent "is specifically obligated to produce at the deposition such documents coming within the Rule 30(b)(6) notice and request to produce which are not privileged." *Security Insurance Co. of Hartford v. Trustmark Ins. Co.*, 218 F.R.D. 29, 33-34 (D.Conn. 2003) (Dorsey) (quoting *Protective Nat'l Ins. Co. v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 283 (D.Neb. 1989). A party is therefore "obliged to identify documents relied on by its 30(b)(6) witness and produce such documents to the extent it has not done so already." *Security Insurance Co.*, supra, 218 F.R.D. at 34.

In this instance, as discussed below, both CIGNA's and Prudential's Rule 30(b)(6) representatives admitted that documents responsive to the notices and subpoenas exist and are

2

available. Yet production of these documents has continued not to take place. Defendants are at

bottom disregarding their obligation to the judicial system to cooperate in discovery and produce

documents responsive to Plaintiffs' requests. Even after depositions of six Rule 30(b)(6)

representatives, and repeated follow-up requests, Defendants' production remains incomplete. In

light of Defendants' continuing delay, Plaintiffs move that the Court draw adverse inferences at

trial based on the non-production and that the Court sanction CIGNA and its counsel.

## I. Defendants Have an Obligation to Produce the Documents Identified by the 30(b)(6) Deponents.

Although CIGNA's production remains incomplete for many of Plaintiffs' Second and

Third Requests for Documents, in accordance with the Court's direction, Plaintiffs' instant

motion focuses on the three categories of documents described above.

### A. The Documents Related to "Cost Savings" from CIGNA's Cash Balance Conversion.

In its written communications with employees, CIGNA repeatedly and unequivocally

assured its employees that there were no "cost savings" from the cash balance changes. See Pls.

Prop. Findings (dkt.#175) ¶¶160, 170. Internal documents produced in discovery in the

*Depenbrock v. CIGNA* litigation revealed, however, that there were significant cost savings. Pls.

Exs. 28 and 77.

As a result, Plaintiffs' Second Requests for Production of Documents Nos. 21, 22, 27,

and 29 requested all documents related to CIGNA's cost savings from its conversion to a cash

balance pension plan. Ex. 1, Tab 1. In its July 8, 2005 responses, CIGNA did not produce any

documents responsive to those requests, objecting that the information sought was not "relevant

to the claims or defenses of the parties." Ex. 1, Tab 1.

3

On April 28, 2006, CIGNA's Rule 30(b)(6) witness, John Arko, testified that in-house CIGNA attorney Paul Gontarek had actually provided documents to CIGNA's outside counsel related to accounting gains or losses from the cash balance conversion and that outside counsel was looking those documents over. Ex. 3 (Arko 4/28/2006) at 260-63. Those documents were never produced. In a May 17, 2006 letter, CIGNA's counsel represented that the production of documents identified in Mr. Arko's deposition was "complete" and that nothing further need be produced. Ex. 4. When Plaintiffs inquired about why they were not produced after the Rule 30(b)(6) deposition, CIGNA reiterated its prior objection that documents "related to accounting gains or losses from the conversion" "are not relevant to any of the claims or defenses in this suit" and refused to produce anything. Ex. 5. [2]

"The scope of discovery under Fed. R. Civ. P. 26(b) is very broad, encompassing any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (relevancy is "construed broadly"). Under Rule 26, the test for relevance is whether a request "appears reasonably calculated to lead to the discovery of admissible evidence." Defendants "bear[] the burden of demonstrating, inter alia, that the request is not relevant." *Ruran v. Beth El Temple*, 226 F.R.D. 165, 169 (D.Conn. 2005). CIGNA cannot shift the burden back to Plaintiffs by invoking non-specific objections of "irrelevance." Accord *Flynn v. Goldman, Sachs & Co.*,

---

[2] In the same e-mail, CIGNA's counsel refused to produce any documents in possession of three individuals with accounting responsibilities, Messrs. Mike Bell, Frank Lemay, and Mordecai Schwartz, whose files were specifically requested because they are "related to the accounting surrounding the conversion." Id.

4

1991 WL 238186, *2 (S.D.N.Y. 1991) (overruling defendant's objections where documents were withheld "solely on the basis of defendants' unilateral and self-serving determinations of relevance").

Defendants' repeated relevance objections to documents related to "cost savings" from the cash balance conversion exemplifies the pattern of refusing to cooperate in discovery. The documents related to cost savings are clearly within the scope of discovery as defined by Rule 26(b). Request Nos. 21-22 seek information that supports Defendants' written disclosures that the cash balance amendments were "expected to be a plus" for the employees and that the Plan's rules were "not changing" "to cut costs." Ex. 1, Tab 1. The documents sought by Request Nos. 27 and 29 should show CIGNA's projected cost savings from the adoption of the cash balance plan. Id.

In *Hirt v. Equitable*, 2006 WL 2023545, *20 (S.D.N.Y. July 20; 2006), a recent case involving another cash balance conversion, Judge Hellerstein observed that:

> "The aggregate amount [of cost savings] is significant. In a summary of accomplishments, a member of Equitable's management cited $414 million cumulative cost savings over twenty years through adoption of the Cash Balance plan for employees and managers in January 1989, $6.8 million annually through the de-grandfathering adopted in 1990, and $1.8 million annually through the merging of agents into the Cash Balance plan effected as of January 1, 1993. Similarly, in a letter dated September 8, 1992, Equitable's managers advised Equitable's Board of Directors that extension of the Cash Balance plan to agents was expected to lower annual expenses by $1.8 million."

Id. at *20. Judge Hellerstein concluded that "[t]he savings that Equitable's management estimated to result from the change in pension plan is" "indicative of the reduced rate of benefit accrual to participants." Id.

Given CIGNA's explicit communications to employees that there were no cost savings

5

and the contradictory evidence uncovered in the *Depenbrock* litigation, it is clear that Defendants are refusing to produce highly relevant documents. These are not documents with "no conceivable bearing on the case." *Coudert v. Janney Montgomery Scott*, 2004 WL 2381552, *2 (D.Conn. 2004).

In the absence of production, an adverse inference should be drawn that CIGNA falsely represented to its employees that there were no cost savings from the cash balance conversion.

**B.    The Incomplete Electronic Data Requested With the "Class List."**

Plaintiffs' Request No. 4, originally served on May 16, 2005, seeks production of a class list including specific benefits data, namely, final average earnings for each participant before the conversion, the account balance at the pension commencement date, the forms of benefit offered, and the benefit amount elected. Ex. 1, Tab 1. As Plaintiffs pointed out in the prior motion to compel, class counsel are entitled to relevant information about the benefits of class members. See, e.g., *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 352-54 (1978). CIGNA produced an electronic version of a class list on October 11, 2005, and a second list on January 9, 2006. However, these lists did not contain much of the information Plaintiffs requested, including the fields described above.

The systems inspection conducted by Plaintiffs' counsel and a computer systems expert in Hartford on January 17, 2006, revealed that CIGNA or Prudential possessed all of the requested information in one or more of their databases. A document produced by Prudential on August 16, 2006 entitled "Amara data provided to Morgan Lewis" outlines the "data elements" that have been provided to Plaintiffs to date and the data elements that were not produced. Ex. 6. The "account balance at pension commencement date," "forms of benefit offered," "form of benefit

6

elected," and "benefit amount" were coded as "we did not include this information but it is readily available." Id. The field for "final average eligible earnings" at conversion was coded as "we did not include this information and it will take programming resources some time to obtain/find out if we can obtain it." Id.

The systems inspection in January 2006 also revealed that even for two of the fields provided, the class lists provided were missing key data for 9,412 of the 27,159 class members on the annuity benefit earned under the old plan prior to 1998 and the opening balance under the cash balance plan. The class list showed blank entries for both of these fields for these 9,400+ individuals. At his Rule 30(b)(6) deposition, Mr. Arko was unable to answer questions related to the absence of this minimum benefit information on this scale. Arko 4/28/2006 Depo. at 141-48 and 322-24.

In the first Rule 30(b)(6) deposition, Prudential's representative, Lorraine Morris, promised a class list with the remaining data within the next week (except for the absent minimum benefit entries for which she had no explanation). Ex. 7 (Morris Dep. Tr.) at 61-62. That data was never produced despite additional requests. Two days before the second deposition of Prudential's representatives on August 4, 2006, Prudential produced another class list which was indistinguishable from the one produced on January 17, 2006.

After the second round of Prudential depositions, Plaintiffs submitted a memorandum to Prudential's counsel on August 9, 2006 again identifying the data that had not been produced. On August 16, 2006 Prudential produced the document which stated that all but one of the requested data fields were actually "readily available" and indicated a coordination of Prudential's production with the Morgan Lewis law firm. Ex. 6. A Pension Plan Initiatives log that CIGNA

7

produced on July 14, 2006 further indicated that Morgan Lewis was reviewing Prudential's

production in advance: A June 29, 2006 entry states that "Final documentation [was sent] to Pru

legal for approval and forwarding to Morgan Lewis." Ex. 8.[3]

On August 16, 2006, Prudential produced additional electronic data. But 17 data files on

the CD were "password protected" and thus inaccessible to the Plaintiffs. Ex. 10. Prudential has

to date not provided the passwords for these files, which are listed in the accompanying

footnote.[4]

On August 25, 2006, Prudential finally produced a CD with some of the data originally

requested on May 16, 2005 on distribution amounts and forms of benefit, but without the account

balance at commencement field and with no identification of the codes for the forms of benefit.

---

[3] Rule 30(b)(6) deposition testimony further established that there was a catered luncheon with Morgan Lewis at Prudential in June 2006. See Ex. 9 (Hodges Dep. Tr.) at 57.

[4] The "password protected" files are:

- Curr Status of ppts.xls (Disk 1 in Hodges folder)
- Gross Annual offset.xls (Disk 1 in Hodges folder)
- Gross Annual offset.xls (Disk 1 - other files)
- Copyof~1.zip (Disk 1 in Chapter Files ABH folder)
- Jf1.zip (Disk 1 in Chapter Files ABH folder)
- Jf2.zip (Disk 1 in Chapter Files ABH folder)
- Jf3.zip (Disk 1 in Chapter Files ABH folder)
- Sandy.zip (Disk 1 in Chapter Files ABH folder)
- Tcerpenp.zip (Disk 1 in Chapter Files ABH folder)
- Chapter5.zip (Disk 1 in Chapter Files ABH folder)
- Chapter6.zip (Disk 1 in Chapter Files ABH folder)
- Chapter7.zip (Disk 1 in Chapter Files ABH folder)
- Chapter8.zip (Disk 1 in Chapter Files ABH folder)
- Ch11.zip (Disk 1 in Chapter Files ABH folder)
- Ch13.zip (Disk 1 in Chapter Files ABH folder)
- Tcrpenn.zip (Disk 1 in Chapter Files ABH folder)
- Ch14.zip (Disk 1 in Chapter Files ABH folder)

On August 30, 2006, Prudential produced an Excel file, which an accompanying email contained data on final average earnings "obtained from CIGNA during the conversion of the Cash Balance Plan." Ex. 11. The data on final average earnings covers 18,350 members of the 27,000+ person class. Prudential has still not provided any of the missing minimum benefits or opening account balance data for a corresponding total of over 9,400 members of the class.

As Plaintiffs indicated in their Trial Brief at 61-63, the missing data that Plaintiffs seek relate to the issues of whether all participants were uniformly converted to the cash balance plan, whether the "minimum benefits" earned under the old plan were fully protected, and whether "wear-away" periods were common among class members. To the extent that additional, but still incomplete data has been provided within the last week, Plaintiffs' experts will now have to work with it to analyze and apply it and cannot do so in time for trial. Without data, an analysis cannot be done concerning the 9,400 records without minimum benefits, except to conclude based on the absence of entries, that minimum benefits were not protected.

In the absence of timely production, adverse inferences should accordingly be drawn that (1) CIGNA has not protected participants' minimum benefits in accordance with ERISA; and (2) in the instances where minimum benefits have been protected, participants have often actually earned nothing more under the cash balance plan than what they had a right to before the conversion. FRE 803(7) expressly provides that the absence of entries in records of regularly conducted activities is evidence of the "nonoccurrence or nonexistence of the matter."

## C.    "Processes and Procedures" Related to the Protection of "Minimum Benefits."

In its Trial Brief and Proposed Findings, CIGNA maintained that "Prudential has a

9

number of procedures in place to ensure that minimum benefits are calculated and that those benefits are protected." Dfs. Trial Br. at 44; Dfs. Prop. Facts ¶135. Discovery has not produced any such processes or procedures. If such processes or procedures existed, either CIGNA or Prudential, or both, should have produced them.

During their Rule 30(b)(6) depositions, Lorraine Morris and Denise Belanger both testified that there is a "Shared Drive" in Prudential's computer network that can be copied and produced. According to their testimony, this Shared Drive contains "processes and procedures." Ex. 7 (Morris Dep. Tr.) at 85-88, 104; Ex. 12 (Belanger Dep. Tr.) at 21-23, 32-33, 37, 91. Ms. Morris and Ms. Belanger also testified that Ms. Belanger has a number of folders including papers such as "memos," "checklists," and "cheat sheets" on subjects as checking minimum benefits, including eligibility for the Free 30% survivor's benefit. Both testified that Ms. Belanger had never been asked to produce those folders in response to Plaintiffs' discovery requests. Ex. 7 (Morris) at 89-90; Ex. 12 (Belanger) at 33.

The "processes and procedures" which have been produced from the "Shared Drive" do not evidence processes or procedures for checking minimum benefits, nor has anything else been produced to date evidencing the same. The only documents related to these subjects which have been produced are dated April 28, 2006 and June 14, 2006 (after the date of the first Prudential depositions) and August 8, 2006 (after the date of the second Prudential depositions). Ex. 13. A "CIGNA Calculation Checklist" was also produced, as revised on January 25, 2006 (after Plaintiffs' January 17, 2006 systems inspection) with a reference to checking off "OAB/Min Bn

10

for Ppt w/DOH prior 1-1-98." Ex. 14.[5] The January 2006 systems inspection revealed that data

related to the Free 30% survivor's benefit was not carried over for any cash balance participant,

so those benefits were obviously never protected. Ms. Belanger testified, moreover, that a

spreadsheet for computing the Free 30% survivor's benefit for cash balance participants was only

developed in the January to August 2006 time frame. Ex. 12 (Belanger Dep. Tr.) at 15.

 In the absence of production, adverse inferences must be drawn that (1) there have been

no processes or procedures in place to ensure that minimum benefits, including the Free 30%

survivor's benefit, were protected, and (2) no processes or procedures have been in place to

check on whether the minimum benefit records even exist, and to reconstruct those records when

the data is missing. Such inferences are again specifically contemplated by FRE 803(7), which

provides that the absence of entries in records of regularly-conducted activities may be used to

prove the "nonoccurrence or nonexistence of the matter."

## II.    The Refusal to Produce These Documents Warrants Adverse Inferences.

"[A] district court has wide discretion in sanctioning a party for discovery abuses and for

the spoilation of evidence." *Reilly v. Natwest Mkts. Group, Inc.*, 181 F.3d 253, 267 (2d Cir.

1999); *Phoenix Four v. Strategic Resources Corp.*, 2006 U.S. Dist. LEXIS 32211, *10 (S.D.N.Y.

May 23, 2006). Where the "breach of a discovery obligation is the non-production of evidence,"

a district court has the discretion "to proceed with the trial and give an adverse inference

instruction." *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 107 (2d Cir.

---

[5] Defendants' Proposed Ex. 729 (untimely filed on August 30, 2006), contains three other documents, none of which show that minimum benefits were protected. The second page of the first document in that Exhibit, dated 7/15/02, has a reference to "ATTACH PROCEDURES FOR AOVER AGE 55 MINIMUM BENEFIT CHECKOUT." But no such procedures are attached and the protection of minimum benefits is not limited to participants over age 55.

11

2002).

"[C]ourts have recognized a remedial rationale for the adverse inference--namely, that an adverse inference should serve the function, insofar as possible, of restoring the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir. 1998); see also *Byrnie v. Town of Cromwell Board of Education,* 243 F.3d 93, 107 (2d Cir. 2001).

An adverse inference may be drawn where evidence is not timely produced for trial if (1) "the party having control over the evidence had an obligation to timely produce it;" (2) "the party that failed to timely produce the evidence had a 'culpable state of mind'; and" (3) "the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support the claim or defense." *Residential Funding,* supra, 306 F.3d at 107.

First, CIGNA indisputably has an obligation to preserve and timely produce the documents Plaintiff requested. See *Fujitsu Ltd. v. Fed. Express Corp.,* 247 F.3d 423, 436 (2d Cir. 2001) ("The obligation to preserve evidence arises when a party has notice that the evidence is relevant to the litigation or when a party should have known that the evidence may be relevant to future litigation"). The testimony of the Rule 30(b)(6) witnesses confirms that CIGNA and Prudential possess a number of responsive documents, but have simply refused to produce them.

Second, CIGNA's prolonged resistence to production is sufficient to establish a "culpable state of mind." In *Residential Funding,* RFC took several months to produce the e-mails in response to DeGeorge's document requests and never produced any e-mails from the critical

12

factual time period.[6]  When RFC finally turned over its back-up tapes <u>three days prior to the trial,</u> DeGeorge's vendor located 950,000 of the missing e-mails. The Second Circuit held that "an adverse inference instruction may be imposed on a party that has breached a discovery obligation not only through bad faith or gross negligence, but also through ordinary negligence." *Residential Funding Corp., supra*, 306 F.3d at 113. The court found that the timing of RFC's decision to retain a third-party to retrieve the emails, its "careless, if not intentionally misleading" statements regarding its effort to retrieve the emails, and RFC's refusal to answer basic technical questions about the back-up tapes could support a finding that RFC acted with a culpable state of mind. *Residential Funding*, 306 F.3d at 110-12.  Accord, *Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 268 (2d Cir. 1999) (adverse inference instruction appropriate where Natwest failed to produce files "until the eleventh hour" and Reilly identified missing documents at trial); *Lyondell-Citgo Refining v. Petroleos de Venezuela*, 2005 U.S. Dist. LEXIS 7907, *10 (S.D.N.Y. 2005); *MasterCard Int'l, Inc. v. Moulton*, 2004 U.S. Dist. LEXIS 11376, *11 (S.D.N.Y. 2004) ("absence of bad faith" "does not protect defendants from appropriate sanctions, since even simple negligence is a sufficiently culpable state of mind to justify a finding of spoliation").

As Plaintiffs explained above, Defendants made little effort over the course of a year to respond to Plaintiffs' discovery requests, repeatedly buttressing their failure to respond with generic objections and even coordinating Prudential's responses so that Plaintiffs would not obtain information from Prudential either. Defendants have had multiple opportunities to

---

[6] Among RFC's excuses for not producing these e-mails sooner: "RFC did not have the internal resources necessary to retrieve [the emails from the back-up tapes];" "It would take a couple of weeks to print the emails and transmit them to counsel"; the email printouts it had received were "completely unrelated to the case;" and it was "just beginning to print-out emails due to additional technical problems." 306 F.3d at 102-4.

13

produce these materials. CIGNA's long-running refusal to cooperate in discovery and produce documents that have been proven to exist is certainly sufficient to support a "culpable state of mind."

Third and finally, it is clear that the documents which Plaintiffs request are "relevant" to its claims or defenses. "Relevant in this context means something more than sufficiently probative to satisfy Rule 401." *Residential Funding*, 306 F.3d at 108-9. "Rather, the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that the [unavailable] evidence would have been of the nature alleged by the party affected by its destruction." Id. at 109. The Second Circuit also explained that "[c]ourts must take care not to hold the prejudiced party to too strict a standard of proof regarding the likely contents of the [unvailable] evidence because doing so would subvert the purposes of the adverse inference." Id. Furthermore, a showing of bad faith or gross negligence is sufficient evidence "from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party." Id. at 109.

In *Residential Funding*, RFC's "purposeful sluggishness" suggested that the e-mails were likely harmful to RFC. "Just as the intentional or grossly negligent *destruction* of evidence in bad faith can support an inference that the destroyed evidence was harmful to the destroying party, so too, can intentional or grossly negligent acts that hinder discovery support such an inference, even if those acts are not ultimately responsible for the unavailability of the evidence." Id. at 110.

Here, CIGNA's persistent failure to produce documents about CIGNA's "cost savings," the requested "class list" data, and documents about the "processes and procedures" for ensuring

14

that participants' minimum benefits are protected, all support inferences that the unproduced documents are harmful to Defendants.

## III.   Sanctions Should Also Be Ordered Under Rule 37 and 28 U.S.C. §1927.

Plaintiffs request that CIGNA and its counsel also be sanctioned under Fed. R.Civ. P. 37(a), (b) and (d) for the "practice" of consistently and purposefully refusing to comply with Plaintiffs' discovery requests and Court Orders, even after a prior motion to compel and two 30(b)(6) depositions. *Apex Oil Co. v. Belcher Co.*, 855 F.2d 1009, 1020 (2d Cir. 1988) (defendants' counsel engaged in "practice" of requiring plaintiff to "make a motion" to compel discovery before providing requested information); *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 113 (2d Cir. 2002) ("District courts should not countenance 'purposeful sluggishness' in discovery on the part of parties or attorneys and should be prepared to impose sanctions when they encounter it").

Plaintiffs request that CIGNA be ordered to pay the fees and expenses associated with the initial motion to compel, the Rule 30(b)(6) depositions, this motion, and the costs of their experts' analysis of the untimely-produced and still incomplete data. See *Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682, 688 (2d Cir. 1989) (party "failed to cooperate with legitimate discovery requests necessitating ... several motions to compel discovery" and "subsequently disobeyed two court orders"); *Kramer v. Arms*, 1997 WL 85830, *1 (2d Cir. February 27, 1997) (counsel failed to comply with numerous court orders to produce documents and respond to discovery requests); *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 179 F.R.D. 77, 81 (D.Conn. 1998) (defendant's failure to produce documents "clearly hindered the plaintiff's pursuit of this case"); *Strougo v. BEA Associates*, 199 F.R.D. 515, 521 (S.D.N.Y. 2001) (failure to provide timely

15

privilege log may be held to waive privilege claims); *Wahad v. FBI*, 813 F.Supp. 224, 227

(S.D.N.Y. 1993) ("Parties must not be permitted to better their position because they have failed

to comply with discovery orders").

In addition, Plaintiffs request that CIGNA's attorneys be sanctioned under 28 U.S.C. §

1927 for unreasonably and vexatiously multiplying the proceedings by causing the Plaintiffs to

have to file this third motion in order to obtain answers and documents that are clearly required

under the Federal Rules. See *Apex Oil Co. v. Belcher, supra*; *J-Square Marketing Inc. v. Sipex

Corp.*, 1999 WL 977742, *3 (D.Conn. 1999).

**Conclusion**

For the foregoing reasons, Plaintiffs respectfully request that their motion for inferences

and sanctions be granted, that adverse inferences be drawn from CIGNA's failure to produce the

categories of documents identified above. Plaintiffs further request that CIGNA and its counsel

be sanctioned.

Dated: August 31, 2006

Respectfully submitted,

By: /s/ Thomas G. Moukawsher
Thomas G. Moukawsher ct08940
Ian O. Smith ct24135
Moukawsher & Walsh, LLC
21 Oak Street
Hartford, CT 06106
(860) 278-7000
(860) 446-8161 (fax)
tmoukawsher@mwlawgroup.com

Stephen R. Bruce ct23534 (pro hac vice)
Allison C. Caalim
Suite 210
805 15th St., NW
Washington, DC 20005

(202) 371-8013
(202) 371-0121 (fax)
stephen.bruce@prodigy.net

Attorneys for the Plaintiff Class

17

**Exhibits to August 31, 2006 Motion for Adverse Inferences and for Sanctions:**

Exhibit 1:      Notice of 30(b)(6) deposition of CIGNA and CIGNA Pension Plan dated February 24, 2006 with attachments.

Exhibit 2:      Subpoena and notice of 30(b)6) deposition of Prudential dated March 10, 2006 (attachments included with Exhibit A)

Exhibit 3:      Excerpt from John Arko's 4/28/06 deposition

Exhibit 4:      5/17/2006 letter that production from Arko deposition is "complete"

Exhibit 5:      7/7/06 email from Morgan Lewis that documents related to "accounting gains or losses" "are not relevant to any claims or defenses in this suit"

Exhibit 6:      Table entitled "Amara.data provided to Morgan Lewis"

Exhibit 7:      Excerpts from Lorraine Morris' 4/19/06 deposition

Exhibit 8:      Pension Plan Initiatives log produced 6/29/06 stating that "Final documentation [was sent] to Pru legal for approval and forwarding to Morgan Lewis"

Exhibit 9:      Excerpts from Andy Hodges' 8/4/06 deposition

Exhibit 11:     8/30/06 email from Prudential attaching Excel file with final average earnings

Exhibit 12:     Excerpts from Denise Belanger's 8/4/06 deposition

Exhibit 13:     Documents dated 4/28/06, 6/14/06 and 8/8/06 related to Prudential's "processes or procedures" for checking the minimum benefits data or the free 30% survivor's benefit

Exhibit 14:     CIGNA "Calculation Checklist"