# EXHIBIT 9

```
            UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF CONNECTICUT


JANICE C. AMARA, GISELA R.      )
BRODERICK, ANNETTE S. GLANZ,    )
Individually and on behalf of   )   Civil Action No.
others similarly situated,      )   3:01 CV 2361(MRK)
          Plaintiffs,           )
                                )
VS                              )
                                )
CIGNA CORPORATION AND CIGNA     )
PENSION PLAN,                   )
          Defendant.            )




              DEPOSITION OF:  Andrew B. Hodges
              DATE:           August 4, 2006
              HELD AT:        Moukawsher & Walsh
                              21 Oak Street
                              Hartford, Connecticut




    Reporter:  ROBIN L. BALLETTO, RPR, LSR #230
        BRANDON SMITH REPORTING SERVICE
              44 Capitol Avenue
          Hartford, Connecticut 06106
              (860) 549-1850

         Six Landmark Square, 4th Floor
           Stamford, Connecticut  06901
                (203) 316-8591
                (800) 852-4589
```

**Page 2**

```
 1   APPEARANCES:
 2
 3     Representing the Plaintiffs
 4       Stephen R. Bruce, Esq.
         805 15th Street, NW
 5       Suite 210
         Washington, D.C. 20005
 6       202-371-8013
 7       Moukawsher & Walsh, LLC
         Ian O. Smith, Esq.
 8       21 Oak Street
         Hartford, Connecticut 06106
 9       860-445-1809
10
       Representing the Defendants
11
         Morgan, Lewis & Bockius, LLP
12       Jamie M. Kohen, Esq.
         1701 Market Street
13       Philadelphia, PA 19103
         215-963-5472
14
15     For Prudential Financial and the Deponent
16       Prudential Financial
         The Prudential Insurance Company of America
17       Amy Ravitz, Esq.
         280 Trumbull Street
18       Hartford, Connecticut 06103
         860-534-4069
19
20
21
22
23
24
25
```

**Page 3**

```
 1              STIPULATIONS
 2
 3       It is stipulated by counsel for the parties
 4   that all objections are reserved until the time of
 5   trial, except those objections as are directed to the
 6   form of the question.
 7
 8       It is stipulated and agreed between counsel
 9   for the parties that the proof of the authority of the
10   Commissioner before whom this deposition is taken is
11   waived.
12
13       It is further stipulated that any defects in
14   the notice are waived.
15
16       It is further stipulated that the reading and
17   signing of the deposition transcript by the witness may
18   be signed before any Notary Public.
19
20
21
22
23
24
25
```

**Page 4**

```
 1              I N D E X
 2
 3   Examinations                              Page
 4
 5   Andrew B. Hodges,
 6     Direct Examination by Mr. Bruce          5
 7
 8
 9
10
...
25
```

**Page 5**

```
 1       (Deposition commenced at 12:42 p.m.)
 2
 3       Andrew B. Hodges,
 4       Having been first duly sworn, was
 5       examined and testified on his oath as
 6       follows:
 7
 8   DIRECT EXAMINATION BY MR. BRUCE
 9
10   Q   Would you state your name?
11   A   Andrew B. Hodges.
12   Q   And Mr. Hodges, you sat for a deposition once
13   before, right?
14   A   That's correct.
15   Q   And that was in about June of 2003?
16   A   Summer of 2003, yes.
17   Q   And at that time I think you had already left
18   CIGNA and you were doing the teacher training to start
19   as a high school math teacher?
20   A   That is correct.
21   Q   And so that is what you've been doing since?
22   A   Yes, sir.
23   Q   And you now have some capacity back with
24   Prudential?
25   A   I'm not positive of my employment
```

2 (Pages 2 to 5)

Page 54

1 history, and credited service today, credited service
2 in every plan year between conversion and today to
3 confirm that every minute of credited service that the
4 individual has today came post conversion.
5   Q   And you think there are a couple of hundred
6 of those?
7   A   That's a reasonable estimate at this point.
8 My guess is probably 150-ish if you pin me down,
9 probably somewhere in there.
10  Q   So what are the other 2,350?
11  A   Zero credited service today, therefore, zero
12 at point of conversion.
13  Q   Oh, that both numbers are zero?
14  A   Yes, at conversion.
15  Q   Both today and at conversion is zero?
16  A   Correct.
17  Q   You think that accounts for 2,300 of those?
18  A   Yes. These are estimates, Stephen, just
19 understand that, but they're fairly reliable estimates.
20  Q   And so if it is zero and zero, then Donna
21 Leclair doesn't review those?
22  A   Correct.
23  Q   And have you ever found anywhere the DBRK
24 system shows zero credited service at conversion but
25 your method shows a positive amount?

Page 55

1   A   Not that comes to mind. I don't think so. I
2 mean, I would have remembered.
3   Q   So your analysis has never departed from the
4 DBRK system one way or the other, correct?
5   A   On this issue, no, I've accepted it as gospel
6 as outlined.
7   Q   You've accepted --
8   A   I've accepted information today, credited
9 service today, figure out where it came from as gospel.
10  Q   No, I said the DBRK system record that shows
11 the years of credited service at conversion has never
12 varied from what your conclusion was one way or the
13 other, correct?
14  A   Not that I can recall in the records that
15 I've looked at so far.
16  Q   So you could just have well have used the
17 DBRK record, and you would have reached the same
18 conclusion in every case, correct?
19  A   Hindsight is 20/20.
20  Q   How many hours do you think you've put in on
21 this?
22  A   The whole project I can't parcel it out into
23 different components, but probably four full-time weeks
24 sometime.
25  Q   And you're not aware of any instances where

Page 56

1 people show zero credited service and that is not what
2 they really have, correct?
3        MS. KOHEN: Objection.
4        MS. RAVITZ: Objection.
5   A   Not in the records I've looked at to date.
6 They certainly could be the case in records to be
7 reviewed. I want to reiterate that I'm not done with
8 the analysis.
9        MR. BRUCE: Okay. I'm done.
10       MS. KOHEN: I want to take a couple of
11 minutes and think about whether I want to ask Andy a
12 question.
13       (Pause.)
14       MR. BRUCE: I have a couple more
15 questions. I don't think Jamie is going to ask any.
16       MS. KOHEN: I don't plan to.
17 BY MR. BRUCE:
18  Q   You were talking with Ms. Kohen at the break,
19 Mr. Hodges?
20  A   Yes, I was.
21  Q   And what was that about?
22  A   Just about clarification for Jamie's
23 understanding on the credited service back-off process,
24 if you will. Accepting today's information as factual
25 and accurate, and therefore, reconstructing the growth

Page 57

1 of credited service.
2   Q   So you were explaining that or you're going
3 to provide her with something on that?
4   A   No, just, I want to make sure that is what
5 you did, Andy, because apparently I wasn't as clear as
6 I thought I was explaining that process.
7   Q   And have you talked with Ms. Kohen before?
8   A   I have met Ms. Kohen for the first time, I
9 want to say, July high teens. Socially I was invited
10 into a luncheon at a meeting they were attending,
11 principally to say hello to some old CIGNA people I
12 worked with for many years.
13  Q   And what was the meeting?
14  A   They were having some meeting, the gist of
15 what I was not involved in. They brought in lunch, and
16 hey, Andy, if you want to grab a sandwich, come on up,
17 just what are your kids up to, hi, Jamie, nice to meet
18 you, and Jeramy was there, et cetera.
19  Q   So have you talked with Jeramy since your
20 deposition in 2003?
21  A   The only extent was a call to inform him that
22 I had read the transcript and saw no problems with it.
23  Q   And how about at this luncheon?
24  A   Other than, you know, nothing relative to
25 CIGNA pension plan, it was a social event.

## Page 58

1  Q   And then you had lunch before starting your
2  deposition today with Ms. Ravitz and Ms. Kohen?
3  A   Yes, I did.
4  Q   And did you talk some about your testimony?
5  A   Just about the breakdown of the categories as
6  we've discussed for the last couple of hours.
7  Q   And you haven't provided them with anything?
8  A   These two women?
9  Q   About that, yes.
10 A   There is an accounting that I think has been
11 provided, but maybe that was Morris, I don't know.
12        THE WITNESS: Did you get that
13 accounting, Amy?
14        MS. RAVITZ: I think it was just the
15 numbers we were talking about during the depo, Stephen,
16 and the sheet that was shared with Jamie, for some
17 reason I don't know why I don't have that one. It was
18 literally just the categories we talked about with the
19 numbers that were discussed, there is no more
20 information on it than that. I would be glad to get it
21 to you, if you want that document.
22        MR. BRUCE: Did you have it at lunch?
23        MS. RAVITZ: Yes, I didn't take it.
24        MR. BRUCE: It's got to be around
25 somewhere.

## Page 59

1         MS. RAVITZ: You know what, I spilled
2  some salad dressing on it, so I threw out the one. I
3  think it was either thrown out.
4         MR. BRUCE: Do you have a copy?
5         MS. KOHEN: I don't have a copy, but if
6  I may. Andy, this document that Amy is referring to,
7  is this something that you prepared for preparation for
8  your own deposition here today?
9         THE WITNESS: Yes, just to get my arms
10 around the issues.
11        MS. KOHEN: And did you prepare it in
12 order to refresh your recollection as to the number of
13 tallies in the database.
14        THE WITNESS: Yes.
15        MS. KOHEN: And was that the only
16 purpose of this document?
17        THE WITNESS: Yes.
18        MR. BRUCE: Then you can produce it.
19        MS. KOHEN: I didn't say that we
20 wouldn't.
21        MR. BRUCE: Well, if you had it at
22 lunch, Amy --
23        MS. RAVITZ: I spilled salad dressing on
24 the one that I had.
25        MR. BRUCE: You threw it away?

## Page 60

1         MS. RAVITZ: Yes. I'll get you that
2  piece of paper, it is no more information than you
3  already have. It was literally a piece of paper with
4  numbers and categories.
5  BY MR. BRUCE:
6  Q   Now, you just indicated that there was a
7  document that was shown to Jamie, but then you
8  indicated that there was something else that you
9  provided too, correct?
10 A   Just handwritten summaries of the status of
11 things as it evolved to Lorrain Morris, my controller,
12 if you will, at Prudential, just the status of things,
13 but that document that I just referred to was passe
14 because it was two or three weeks ago.
15        MS. RAVITZ: That wasn't produced today
16 at lunch. Is that what you're asking?
17        MR. BRUCE: Yes, that is what I'm
18 saying, there seems to be several different documents
19 that he's talking about. There is one document that he
20 showed to you that was shown to Jamie, and then there
21 are other documents.
22        MS. RAVITZ: That were not shown to us
23 at lunch. You're worried about something that was
24 produced today at lunch.
25        MR. BRUCE: Well, it hasn't been

## Page 61

1  produced.
2         MS. RAVITZ: That is what you're asking
3  about, something other than what we talked about at
4  lunch.
5         MR. BRUCE: I'm asking about both of
6  them.
7         MS. RAVITZ: Okay. I just wasn't clear.
8  BY MR. BRUCE:
9  Q   So you produced those to counsel, or you just
10 produced them to Lorrain?
11 A   The first one to Lorrain, the second one just
12 conversation about where my analysis was today in terms
13 of the categorization of this issue.
14 Q   That was produced to Amy or to Lorrain?
15 A   Amy today. The document is related, it is
16 effectively the same information. One was, hey, Andy,
17 take a minute -- the Lorrain document was take a
18 minute, tell me where everything is. It was updated
19 just to refresh my memory, because we go, you know,
20 coming in trying to resolve these issues, and you
21 categorize people, and I don't account for them along
22 the way, so you've got to call a time out and figure
23 out what you've gone and done in the last two, three
24 weeks.
25        MR. BRUCE: So we'll get both of those