# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

-----------------------------------------------------X
                                             :

| | | |
|---|---|---|
| JANICE C. AMARA, GISELA | : | 3:01 CV 2361 (MRK) |
| R. BRODERICK, ANNETTE S. GLANZ | : | |
| individually, and on behalf of others | : | Trial Date: 09/11/06 |
| similarly situated, | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| CIGNA CORP. AND CIGNA | : | |
| PENSION PLAN, | : | |
| | : | |
| Defendants. | : | |
| | : | |

-----------------------------------------------------X

## DEFENDANTS' OPPOSITION TO
## PLAINTIFFS' MOTION FOR ADVERSE INFERENCES AND
## SANCTIONS BASED ON DEFENDANTS' RESPONSES TO DISCOVERY

TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 2

I.       NO ADVERSE INFERENCES OR SANCTIONS ARE WARRANTED IN
CONNECTION WITH PLAINTIFFS' REQUEST FOR DOCUMENTS
RELATED TO ALLEGED "COST SAVINGS" FROM THE CONVERSION......... 2

      A.    Defendants Have Timely and Properly Objected To Plaintiffs' Requests
For "Cost Savings" Documents Since 2002, And Therefore There Is No
Basis For Drawing An Adverse Inference Against Defendants Or
Sanctioning CIGNA And Its Counsel. ................................................................. 2

      B.    The "Cost Savings" Documents Are Not Relevant To Plaintiffs' Claims............. 5

II.      NO ADVERSE INFERENCES OR SANCTIONS ARE WARRANTED IN
CONNECTION WITH DOCUMENTS IN PRUDENTIAL'S POSSESSION........... 6

      A.    The Evidence And Adverse Inference Plaintiffs Seek Concerning
Minimum Benefits Are Not Relevant To Their Claims......................................... 6

      B.    Neither CIGNA Nor Its Counsel Has Impeded Plaintiffs' Discovery of
Information From Prudential And Accordingly Neither Adverse
Inferences Nor Sanctions Are Warranted. ........................................................... 8

      C.    The Absence Of Data On The Class List Does Not Warrant An Adverse
Inference. .......................................................................................................... 10

      D.    Prudential's Failure To Produce A Written Minimum Benefit Procedure
Does Not Warrant An Adverse Inference. .......................................................... 13

CONCLUSION..................................................................................................... 14

# TABLE OF AUTHORITIES

Dooley v. American Airlines, Inc.,
797 F.2d 1447 (7th Cir. 1986) ........................................................................7

Eastway Constr. Corp. v. City of NY,
762 F.2d 243 (2d Cir. 1985)..........................................................................10

Hirt v. Equitable Ret. Plan for Employees, Managers and Agents,
 -- F. Supp. 2d --, 2006 WL 2023545 (S.D.N.Y. Jul. 20, 2006) ..........................................5

Krumme v. Westpoint Stevens Inc.,
143 F.3d 71 (2d Cir. 1998)............................................................................7

Mone v. Comm'r of Internal Rev.,
774 F.2d 570 (2d Cir. 1985)..........................................................................10

Oliveri v. Thompson,
803 F.2d 1265 (2d Cir. 1986)..........................................................................4

Residential Funding Corp. v. DeGeorge Fin. Corp.,
306 F.3d 99 (2d Cir. 2002)........................................................................4, 14

Stewart v. Nat'l Shopmen Pension Fund,
730 F.2d 1552 (D.C. Cir. 1984) ......................................................................7

## FEDERAL STATUTES

28 U.S.C. 1927 ........................................................................................10

29 U.S.C. § 1054(g)(1) ................................................................................6

## RULES

Fed. R. Civ. P. 37(a)(4)(a) ...........................................................................3

Fed. R. Civ. P. 45....................................................................................10

**INTRODUCTION**

Plaintiffs have waited until the eve of trial to complain about the fact that Defendants CIGNA Corporation ("CIGNA") and the CIGNA Pension Plan (the "Plan") (together "Defendants") have not produced what they characterize as "cost savings" documents — a production to which Defendants have timely and properly objected since 2002. Plaintiffs request that the Court draw adverse inferences against Defendants, and sanction CIGNA and its counsel based on Defendants' longstanding objections to the "cost saving" documents and the purported discovery deficiencies of a third party, Prudential Retirement ("Prudential").

There is no factual or legal basis for Plaintiffs' extraordinary motion. Plaintiffs have tried to obscure the weaknesses in their case by unjustifiably attacking Defendants and their counsel. They have failed to comply with Judge Squatrito's Order in this case requiring the parties to file a motion to compel within twenty days of the service of objections. Plaintiffs suggest that there was something improper about Defendants' objections to the "cost savings" documents, when the objections were timely served and the documents are plainly not relevant to Plaintiffs' claims.

Plaintiffs also seek adverse inferences against Defendants and sanctions against CIGNA and its counsel without any evidence of spoliation, a violation of a Court order, or other improper conduct. In so doing, they rely on the discovery positions taken by a third party that Defendants do not control, related to material that has no bearing on their claims.

Twice before in this suit, Plaintiffs' counsel's request for sanctions against Defendants has been properly denied. Plaintiffs' sharp tactics should not be tolerated. Plaintiffs' Motion should be denied.

- 1 -

## <u>ARGUMENT</u>

**I.     NO ADVERSE INFERENCES OR SANCTIONS ARE WARRANTED IN CONNECTION WITH PLAINTIFFS' REQUEST FOR DOCUMENTS RELATEDTO ALLEGED "COST SAVINGS" FROM THE CONVERSION.**

    **A.     Defendants Have Timely and Properly Objected To Plaintiffs' Requests For "Cost Savings" Documents Since 2002, And Therefore There Is No Basis For Drawing An Adverse Inference Against Defendants Or Sanctioning CIGNA and Its Counsel.**

Plaintiffs suggest that simply because documents related to "accounting gains or losses from the cash balance conversion" exist, Defendants' failure to produce them warrants an adverse inference and is sanctionable.  (<u>See</u> Pls' Motion at 4-6).  That position cannot be squared with the Federal Rules of Civil Procedure.

In written discovery responses in 2002 and 2005, Defendants objected to Plaintiffs' requests for "cost savings" documents, as they had the right to do under Federal Rules of Civil Procedure 26 and 37.  First, in their Responses to Plaintiff's First Request for Production of Documents, dated June 17, 2002, Defendants objected to Plaintiffs' requests for documents concerning the "actuarial valuation reports" and "cost estimates" for the Plan from 1996 forward. <u>See</u> extract from Responses to Plaintiff's First Request for Production of Documents, dated June 17, 2002, Request Nos. 5-6, at 4, attached hereto as Ex. A.  Defendants objected to both requests because they sought "information that is no relevant to the claims or defenses of the parties, that is overbroad, harassing, and oppressive, that responding would be unduly burdensome." <u>Id.</u> at 3-4.  At that time, Plaintiffs did not challenge Defendants' objections, despite Judge Squatrito's Order in this case requiring the parties to bring motions to compel within twenty days of the serving of objections. <u>See</u> extract from Order dated March 25, 2002, attached hereto as Ex. B.

Similarly, in their Supplemental Objections and Responses to Plaintiff's Second Request for Production of Documents, dated July 8, 2005, Defendants again objected to Plaintiffs'

request for documents regarding "costs savings" or "accounting losses or gains" from the conversion to Part B, on the grounds that the request was overbroad and sought documents that are not relevant to the claims or defenses at issue.  See extract from Supplemental Objections and Responses to Plaintiff's Second Request for Production of Documents, dated July 8, 2005, Request Nos. 22 and 27, at 13, 15, attached hereto as Ex. C.  Plaintiffs filed a motion to compel seven months later, in February 2006, again violating Judge Squatrito's Order.  [See dkt # 158-3].  While the focus of the motion was other purported discovery deficiencies, Plaintiffs did reference Defendants' objections to Request Nos. 22 and 27.  [See id. at 5).  Notably, however, this Court denied that motion without prejudice so that Plaintiffs could take the Rule 30(b)(6) depositions of representatives of CIGNA and Prudential to determine what documents existed that might have a bearing on Plaintiffs' claims.

The CIGNA Rule 30(b)(6) deposition was completed in April 2006, and Defendants have continued to object to the production of "cost savings" documents.  (See Pls' Motion at 4).  Nonetheless, Plaintiffs have waited an additional four and one-half months to raise this issue with the Court.

Given these circumstances, an adverse inference or sanctions is plainly not justified.  Defendants cannot be punished for asserting a legitimate objection to discovery under Fed. R. Civ. P. 26 and 34.  Indeed, under Fed. R. Civ. P. 37, sanctions only may be imposed where a party disobeys a court order after the opposing party has brought a successful motion to compel.  Fed. R. Civ. P. 37(a)(2)(A).  There has been no such order here.  Moreover, even where a court grants a motion to compel and requires a broader disclosure, no sanctions may be imposed where the non-producing party's "objection was substantially justified." Fed. R. Civ. P. 37(a)(4)(a).  As

- 3 -

set forth in Section I.B. below, Defendants' objection to production of ten years' worth of irrelevant "cost savings" documents is substantially justified.

Sanctions also are not warranted under 28 U.S.C. § 1927, because there is no evidence that Defendants' counsel multiplied the proceedings for any vexatious purpose.[1]  Section 1927 "authorizes penalties only when there is a clear showing of bad faith on the part of an attorney." Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986).  Here, Defendants' counsel timely asserted a legitimate discovery objection, and consistently maintained that the requested documents bore no relevance to this suit and would not be produced.  There is no evidence of bad faith.

Plaintiffs also are not entitled to an adverse inference that CIGNA experienced costs savings from the conversion based on Defendants' refusal to produce documents on the accounting and funding of the Plan.  To obtain an adverse inference on the basis that evidence was not produced in time for use at trial, "the party seeking the instruction must show:  (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind;' and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."  Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 108 (2d Cir. 2002).  Plaintiffs cannot demonstrate that Defendants were under any obligation to produce the requested "cost savings" documents in light of their timely

---

[1]     Plaintiffs' counsel is the one who appears to have "multiplied the proceedings."  This Court specifically instructed the parties months ago to bring any discovery disputes to its attention via a request for a telephone conference, so that such disputes could be resolved expeditiously and efficiently.  Had Plaintiffs' counsel sought the information for a proper purpose, he could have – and undoubtedly would have – done so months ago.  Instead, Plaintiffs' counsel waited until the eve of trial to file this *ad hominem* attack on Defendants and their counsel.

objections.  Nor is there any evidence of a "culpable state of mind," such as spoliation.  Finally, as explained below, the "cost savings" documents have no relevance to Plaintiffs' claims.

### B.    The "Cost Savings" Documents Are Not Relevant To Plaintiffs' Claims.

Plaintiffs baldly assert that the "cost savings" documents are relevant to their claims. Yet, the wearaway, age discrimination, forfeiture, and anti-cutback claims in Counts 1, 3, and 5 depend exclusively on the terms of the written Part B plan document.  Whether there were "costs savings" to CIGNA as a result of the cash balance conversion, the design of the wearaway, or the underlying Plan amendments does not inform the issues, which are legal questions of statutory interpretation.  Similarly, whether the Part B SPD or the Section 204(h) notice at issue in Counts 2 and 4 satisfied ERISA's disclosure requirements depends on the language of those documents themselves, and the harm, if any, resulting to individual plan participants from any inadequate disclosure.  Whether CIGNA saved money by converting to a cash balance plan has no bearing on these issues.[2]

Defendants have produced all documents regarding the Plan that affect participants, including plan documents, communications about the Plan, internal documents regarding the administration of the Plan, and claims and appeals to the Plan Administrator.  In contrast, how CIGNA meets its funding obligations, and its cost accounting for the Plan, have no bearing on any of the claims at issue in this case.  Plaintiffs do not allege that the Plan was unfunded or under-funded.  Nor do Plaintiffs allege that CIGNA's accounting for the Plan was improper.  The

---

[2]    Plaintiffs point only to Hirt v. Equitable Ret. Plan for Employees, Managers and Agents, -- F. Supp. 2d --, 2006 WL 2023545 (S.D.N.Y. Jul. 20, 2006), to support their contention that such "cost savings" documentation is relevant to their Section 204(h) claim.  The Hirt court mentioned the costs savings of the amendment to the company, as well as costs savings that other companies had experienced upon conversion, but there is no indication that the costs savings was in any way relevant to the court's decision.  Id. at *20-21. Rather, the defendants in Hirt did not dispute that there was a reduction in benefit accruals requiring a Section 204(h) notice.

documents Plaintiffs seek – regarding CIGNA accounting and funding for the Plan since 1996 –
are irrelevant.

## II.    NO ADVERSE INFERENCES OR SANCTIONS ARE WARRANTED IN CONNECTION WITH DOCUMENTS IN PRUDENTIAL'S POSSESSION.

Plaintiffs also claim that minimum benefit information has not been provided by
Prudential, suggest that the Court should draw an adverse inference that class members'
minimum benefits are not being protected, and ask that sanctions be imposed against CIGNA
and its counsel.  In doing so, they not only distort the factual record, they also make no
distinction between the actions of Prudential (a Fortune 500 company represented by its own
counsel) and CIGNA (another Fortune 500 company) and its counsel

### A.    The Evidence and Adverse Inference Plaintiffs Seek Concerning Minimum Benefits Are Not Relevant To Their Claims.

The evidence and adverse inference Plaintiffs seek concerning minimum benefit
protection have no relevance to any claims in this case.  Plaintiffs assert that the absence of
(1) certain information on Prudential's Class List, and (2) written procedures related to the
protection of minimum benefits, must mean that class members' minimum benefits have not
been protected in violation of ERISA Section 204(g).  This allegation, part of Plaintiffs' Count 5,
is flawed for several reasons.

First, Section 204(g) only prohibits an accrued benefit from being "decreased by an
<u>amendment</u> of the plan," and it is undisputed that the Part B plan document protects all accrued
benefits from being decreased.  29 U.S.C. § 1054(g)(1) (emphasis added).  (<u>See</u> Defs' Trial Brief
at 40-43; Defs' Supp'l Trial Brief at 10-11, 14 [dkt # 193]).  Here, because it is undisputed that
the Part B amendment protected the minimum benefit, Plaintiffs instead take issue with the
administration of Part B benefits.  Plaintiffs allege that for certain participants, the terms of Part

B are not followed.  If true, the participants could state a claim for benefits under ERISA Section 502(a)(1)(B) after exhausting the internal claims and appeal process in the Plan.  The failure to follow the terms of a plan, however, does not state a claim under Section 204(g), 29 U.S.C. § 1054(g).  Courts routinely reject claims under Section 204(g) where the alleged action at issue was not a "plan amendment."  For example, in Krumme v. Westpoint Stevens Inc., 143 F.3d 71 (2d Cir. 1998), the plaintiffs brought an ERISA Section 204(g) claim challenging new actuarial assumptions utilized by the plan administrator.  Id. at 85-86.  The court found that because the plaintiffs were not challenging the terms of any amendment to the plan, their Section 204(g) failed as a matter of law.  Id.; see also Dooley v. American Airlines, Inc., 797 F.2d 1447, 1451-52 (7th Cir. 1986) (rejecting Section 204(g) claim where plaintiff challenged application of plan terms, not the plan itself); Stewart v. Nat'l Shopmen Pension Fund, 730 F.2d 1552, 1561 (D.C. Cir. 1984) (noting that Congress "the word 'amendment" is used as a word of limitation" and holding that where there was no plan amendment, 204(g) claim based on application of a plan provision failed).  The fact that Plaintiffs cannot point to a plan amendment at issue in their Section 204(g) claim alone provides a basis for the Court to reject any motion that an adverse inference should be drawn, and underscore the deficiencies in Count 5 of their Third Amended Complaint.

Second, even if the Court somehow excused the lack of a plan amendment at issue in Count 5, because the minimum benefit only applies to a small subset of the class, no class-wide claim for relief can be grounded in this inference.  (See Defs' Supp'l Trial Brief at 17 [dkt #183]).  And even if a problem with minimum benefit protection existed for a subset of the class, no class representative has standing to pursue these claims.  (Id. at 16).  Similarly, the group of participants, yet undefined, who have not yet initiated a pension payment but anticipate that their

minimum benefit may not be protected upon commencement of their benefits in the future,

similarly lacks standing to pursue this claim.  This group, which is undefineable and fluid, does

not have ripe claims that may be adjudicated at this time.  (<u>Id.</u> at 17).  Likewise, to the extent that

a participant was paid benefits that did not properly take into account his/her minimum benefit,

that participant also lacks standing to sue absent exhaustion of the claim to the plan

administrator.  (<u>Id.</u> at 19-20).  (<u>See</u> Defs' Trial Brief at 46, n.29) (lack of exhaustion is a

jurisdictional defect).  That participant also may face statute of limitation problems, which

further highlights the individualized nature of the inquiry.  (<u>Id.</u> at 21).  Thus, because Plaintiffs'

sought-after minimum benefit evidence is not relevant to the legal resolution of the claims in this

case, their motion should be denied.

### B.    Neither CIGNA Nor Its Counsel Has Impeded Plaintiffs' Discovery Of Information From Prudential And Accordingly Neither Adverse Inferences Nor Sanctions Are Warranted.

Plaintiffs ask that an adverse inference be drawn against Defendants and that CIGNA and

its counsel be sanctioned "for the practice of consistently and purposefully refusing to comply

with Plaintiffs' discovery requests and Court Orders . . . ."  (Pls' Motion at 15).  Plaintiffs fail,

however, to identify a single Court order that Defendants or their counsel have violated,

unjustifiably attribute the discovery positions of Prudential and its counsel to CIGNA and its

counsel as if they are one in the same, and accuse CIGNA and its counsel of orchestrating

widespread discovery abuses by Prudential without any evidence to support these allegations.

The Court should deny Plaintiffs' motion.

When Plaintiffs first requested information that was in the possession of Prudential – and

not CIGNA – Defendants' counsel sought to facilitate the discovery of that information.

Specifically, Defendants' counsel requested that Prudential provide an electronic Class List with

benefit information to Plaintiffs' counsel in October 2005.  In February 2006, dissatisfied with

the information they had received, Plaintiffs moved to compel further discovery.  At that time,

and specifically during the Court's February 14, 2006 teleconference on Plaintiffs' motion,

Defendants' counsel advised the Court that CIGNA had no control over the content or timeliness

of Prudential's responses, and <u>encouraged</u> Plaintiffs' counsel to subpoena Prudential directly.[3]

As Plaintiffs acknowledge, the Court directed Plaintiffs to seek discovery directly from

Prudential.  (Pls' Motion at 1).

Thereafter, Plaintiffs subpoenaed Prudential directly and coordinated discovery with

three lawyers from Prudential's in-house legal department, Thomas Schiaffo, Robert (Nick)

Merritt, and Amy Ravitz.  Prudential provided five witnesses to satisfy Plaintiffs' Rule 30(b)(6)

deposition subpoena and Prudential's in-house counsel was present to defend each deposition.

Defendants' counsel was not involved in the selection or preparation of the Prudential witnesses

for the Rule 30(b)(6) deposition.  (<u>See</u> Declaration of Jamie M. Kohen, Defendants' Counsel,

dated September 10, 2006, ¶9, attached as Ex. D).  Prudential also has provided countless

productions of documents totaling thousands of pages, and Defendants' counsel did not interfere

with or impede this process in any way.  (<u>Id.</u> at ¶7).  Indeed, Prudential's largest production of

materials, consisting of three CDs containing hundreds of files, was served on Plaintiffs days

before it was served on Defendants.[4]  (<u>Id.</u> at ¶8).  Neither CIGNA nor its counsel has prevented

or in any way thwarted Plaintiffs' counsel from obtaining information from Prudential.  (<u>Id.</u> ¶3).

---

[3]    Indeed, Defendants made the suggestion to avoid exactly the kind of dispute Plaintiffs have now brought
before the Court.

[4]    Plaintiffs complain that some of the files Prudential produced on these CDs could not be opened because they
were password-protected.  (Pls' Motion at 8 n.4).  However, Prudential did not provide a password to
Defendants' counsel either, and Prudential reports that its own personnel are not able to open these files, and
continued . . .

In sum, Plaintiffs' complaints about Prudential's discovery response is properly aimed –

if at anyone – at Prudential itself, not at CIGNA or its counsel.  No sanctions may be imposed

under Rule 37 because, as noted above, Defendants have not disobeyed any court order,

destroyed documents, or engaged in any other improper conduct.  Likewise, under 28 U.S.C. §

1927, sanctions are not warranted because there is no evidence that Defendants' counsel acted in

bad faith to delay this litigation.  If anything, Defendants' counsel sought to facilitate discovery

by suggesting Plaintiffs seek discovery directly from Prudential.  Sanctioning CINGA or its

counsel would be inconsistent with the Second Circuit's has admonishment that 28 U.S.C. §

1927 "should be construed narrowly and with great caution."  Mone v. Comm'r of Internal Rev.,

774 F.2d 570, 574 (2d Cir. 1985) (citing Eastway Constr. Corp. v. City of New York, 762 F.2d

243, 254 (2d Cir. 1985)).

If Plaintiffs were not satisfied with Prudential's response to their subpoena, the proper

recourse was to seek relief under Rule 45 against Prudential, as Rule 45 provides remedies only

for the "failure of any person without adequate excuse to obey a subpoena served upon that

person."  Fed. R. Civ. P. 45.[5]  There is simply no factual or legal basis, however, for drawing

adverse inferences against Defendants or imposing sanctions against CIGNA and its counsel.

### C.     The Absence Of Data On The Class List Does Not Warrant An Adverse Inference.

Plaintiffs also complain that because the Class List provided by Prudential did not

include all of the information Plaintiffs requested.  To be sure, no data was excluded on account

_____

that it is investigating whether any of the information may be recovered by its information technologies department.  (See Kohen Declaration, ¶16 Ex. D).

[5]      In taking this position, Defendants do not mean to suggest that Prudential has done anything improper.

of any instruction from Defendants' counsel.[6]  (See Kohen Declaration, attached hereto as Ex.

D).  Likewise, no data was provided to Defendants' counsel that was not provided to Plaintiffs.

(Id. at ¶4, Ex. D).  Defendants' counsel also understands that Prudential has provided to

Plaintiffs all data that is readily available on a class-wide basis. (Id. at ¶17, Ex. D).  No adverse

inference is warranted where all available data has been dutifully provided.[7]

Plaintiffs allege that certain "data elements" were readily available and not provided.  But

as Defendants' counsel learned from inquiring with Prudential (and as presumably Plaintiffs'

counsel could have learned through questioning of the six Prudential 30(b)(6) witnesses

deposed), the following explains why Plaintiffs' allegation is simply untrue:

- The "account balance at pension commencement date" for each class member in fact was provided to Plaintiffs on a CD on August 23, 2006, more than a week before the instant motion was filed.  Gathering this information for each class member required Prudential to extract information from three different record-keeping systems, including one which was shut down.  The process for the Prudential Information Technology and Systems personnel to extract this data from those various systems and input into a single readable format was very time-consuming, thus explaining the delay.  (Id. at ¶18, Ex. D)[8]

- The "forms of benefit offered" is not a data element that is maintained in any of Prudential's electronic record-keeping systems.  As Plaintiffs' counsel learned during his January 2006 forensic review of Prudential's systems, this information only may be obtained by reviewing whatever paper documents were imaged and placed on the system for a specific individual participant.  Upon request, Prudential

---

[6]  Indeed, Defendants' counsel had never seen the Prudential analysis of what information could be provided to Morgan Lewis for the Class List created in the fall of 2005, Motion Ex. 5, before that analysis was provided to both parties in August 2006.  (See Kohen Declaration, ¶6, Ex. D).

[7]  Plaintiffs' counsel also complains that the additional electronic Class List data that Prudential provided in August 2006 did not include a key for the data codes therein.  What Plaintiffs' counsel does not mention, however, is that the information was provided on August 23, and yet Plaintiffs' counsel never asked Prudential's in-house counsel, with whom he was in almost-daily email contact, for a key to this document. Nonetheless, upon Defendants' counsel's making Prudential aware of Plaintiffs' confusion after the filing of the instant motion, Prudential provided a key.  (See Kohen Declaration, ¶10, Ex. D).

[8]  Prudential understood the request for a participant's "benefit amount" to be the same as the request for the "account balance at pension commencement date," which has been provided.  (See Kohen Declaration, ¶13, Ex. D).

provided print-outs of the imaged documents stored for each of the specific participants for whom Plaintiffs' counsel asked for such documents. At no time since has Plaintiffs' counsel requested more imaged documents or that he be permitted to further conduct an inspection of the imagining system.

- • The "form of benefit elected" is indeed reflected in the Class List, but the record-keeping system only reveals whether the benefit was a lump sum or an annuity. The system does not maintain data reflecting what type of annuity was selected.

Prudential can only provide to Plaintiffs' counsel that data which it maintains in its record-keeping systems. No adverse inference or sanctions are warranted.

Second, Plaintiffs complain that key data elements are "missing" for 9,412 class members, and accordingly allege that the Court should draw an adverse inference that the minimum benefit was not protected for these individuals. As explained in Defendants' Supplemental Trial Brief, Plaintiffs' suggestion that a zero entry in the opening account balance ("OAB") proves that the minimum benefit was not protected for those participants is completely baseless. First, many of the participants for whom the entry is zero have not yet initiated benefits and so there is no way to determine whether their minimum benefit even would apply. Second, Prudential witnesses Lorraine Morris and Andrew Hodges testified to various reasons why zero in the OAB field in the record-keeping system may be both accurate and proper.[9] Third, as explained in Defendants' Supplemental Trial Brief, upon hearing of Plaintiffs' allegation that there was "missing" data in the record-keeping systems for these individuals, Prudential undertook a review of its data to ensure that all participants had been properly paid the minimum

---

[9]     As explained in the Prudential Rule 30(b)(6) deposition of Mr. Hodges this month, these include that, <u>inter alia</u>: (1) the participant did not have sufficient credited service under the old pension plan to accrue an OAB; (2) the participant took a payment from the plan and his OAB was "zeroed out" in the record-keeping system; (3) the participant took a cash payout of his entire Part A benefit; (4) the participant was hired after January 1, 2001 and therefore did not have his Part A benefit converted to an OAB; and (5) the participants left CIGNA in a nonvested status. (<u>See</u> DFF No. 250).

benefit and to complete any missing data fields so that its records would be complete.  (See Defs' Supp'l Trial Brief at 13-14).[10]  Furthermore, as noted below, because Prudential has various procedures and checks in place to ensure that the minimum benefit is fully protected, no concerns exists that participants who have received benefits were improperly not given the advantage of their minimum benefit, where it applied.[11]  Thus, in order for the Court to draw an adverse inference from the zero entries alone, the Court would have to discredit entirely the Prudential Rule 30(b)(6) deposition testimony and the Prudential documents on Defendants' trial exhibit list.  Plaintiffs have not presented a sound argument for the Court to take this drastic measure.

> ### D.    Prudential's Failure To Produce A Written Minimum Benefit Procedure Does Not Warrant An Adverse Inference.

Finally, Plaintiffs maintain that because Prudential failed to produce a written policy instructing that the minimum benefit should be protected, the Court should draw an adverse inference against Defendants that the class' minimum benefit was not being protected.  No adverse inference is warranted, because the absence of a written policy proves nothing.

As Plaintiffs correctly note, see Motion at 9-10, Defendants' proposed findings of fact reflect an intention to develop testimony (if needed) that Prudential has always maintained policies and procedures to protect participants' minimum benefit.  Pursuant to Prudential's verification procedures, before a benefit distribution is effectuated, the benefits administration

---

[10]    Perhaps most importantly, all of these facts were well known to Plaintiffs' counsel on August 4, 2006, when he deposed Mr. Hodges, a Prudential 30(b)(6) witness.  Plaintiffs' failure to even mention the Hodges deposition in their motion speaks volumes about what they are trying to accomplish here.

[11]    To date, the only participants whose OAB needed to be calculated were participants who were not yet paid benefits, and accordingly, no harm resulted from Prudential's correction of the OAB data from its record-keeping for any individuals.  (See Kohen Declaration, ¶14, Ex. D).

- 13 -

staff verifies the accuracy of the benefit payment, including checking for the application of the minimum benefit. (See Defs' Supp'l Trial Brief at 13). Plaintiffs complain that Prudential only produced written policies concerning minimum benefits from 2006, yet these are apparently the only such written policies that Prudential possesses. (See Kohen Declaration, ¶15, Ex. D). Moreover, the written Part B plan document, dated from 1998, itself instructs Prudential that it must protect the minimum benefit.

No adverse inference may be drawn from the lack of minimum benefit documentation, where the Plan itself protects the minimum benefit and anticipated trial testimony will demonstrate that benefits specialists who perform calculations protect the minimum benefit and follows the terms of the Plan. No evidence exists that written policies were destroyed by Prudential, CIGNA or their counsel or that any of these parties acted "with a culpable state of mind," thus barring the requested adverse inference. Residential Funding Corp., 306 F.3d at 108.

## CONCLUSION

For the reasons set forth above, no factual or legal basis exists for Plaintiffs' request for sanctions or adverse inferences. Accordingly, Defendants respectfully request that the Court deny Plaintiffs Class' Motion for Adverse Inferences and Sanctions Based on Defendants' Responses to Discovery in its entirety.

Dated: September 11, 2006

**MORGAN, LEWIS & BOCKIUS LLP**

By:  /s/ Joseph J. Costello_____
Joseph J. Costello
Jeremy P. Blumenfeld
Jamie M. Kohen
*Admitted pro hac vice*
1701 Market Street
Philadelphia, Pennsylvania  19103-2921
(215) 963-5295/5258/5472
(215) 963-5001 (fax)
jcostello@morganlewis.com
jblumenfeld@morganlewis.com
jkohen@morganlewis.com

**ROBINSON & COLE**
James A. Wade (CT # 00086)
280 Trumbull Street
Hartford, Connecticut  06103
(860) 275-8270
(860) 275-8299 (fax)
jwade@rc.com

*Attorneys for Defendants*
*CIGNA Corporation and CIGNA Pension Plan*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served this 11th day of

September, 2006 via hand delivery upon the following:

Thomas G. Moukawsher
Moukawsher & Walsh, LLC
328 Mitchell Street
Groton, CT  06340

Stephen R. Bruce
805 15th Street, NW
Suite 210
Washington, DC 20005


/s/ Jamie M. Kohen
Jamie M. Kohen