**Amara v. CIGNA, Case No. 01-2361 (MRK)**

# EXHIBIT 243

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JANICE C. AMARA, GISELA R. : 
BRODERICK, ANNETTE S. GLANZ :
individually and on behalf :
of all others similarly situated, :
 :
                Plaintiff, :
 :
vs. : Civil. No. 3:01-CV-2361 (MRK)
 :
CIGNA Corp. and : May 2, 2006
CIGNA Pension Plan, :
 :
                Defendants. :
 :

## PLAINTIFF STEVEN I. LAW'S ANSWERS TO
## DEFENDANTS' FIRST SET OF INTERROGATORIES TO HIM

**General Objections**

    Plaintiff objects to Defendant CIGNA's Interrogatories on the following grounds:

    1. Absent leave of Court, FRCP 33 limits interrogatories to 25 questions, "including all discrete subparts." Through compound questions with "discrete subparts," CIGNA has posed in excess of the permissible number of interrogatories.

    2. CIGNA's Interrogatories ask for legal contentions, even though absent class members do not "contend" anything directly. They are members of the class on whose behalf the named Plaintiffs make legal contentions.

    3. CIGNA's Interrogatories repeatedly refer to the attached Exhibits A, B, and C as containing the November 1997 Newsletter, 1998 Summary Plan Description and 1999 Summary Plan Description. The exhibits contain only one page of text from a 19-page 1998 SPD and two pages from the 1999 SPD, and only every other page from the November 1997 Newsletter.

4. CIGNA's Interrogatories repeatedly refer to the term "misleading" without explaining the legal meaning of this term when there is a duty to disclose.

5. CIGNA's Requests for Admission repeatedly refer to the terms "harm or prejudice" without explaining the legal meaning of these terms and without explaining the "likely prejudice" standard that applies in the Second Circuit.

Each response below is made subject to the foregoing General Objections, regardless of whether a specific objection is stated in the particular response.

If Plaintiff learns of or uncovers additional information, he reserves the right to supplement or change these responses.

1. For each Request for Admission directed to you by CIGNA that you did not admit without qualification, please explain in detail the basis for your response.

**ANSWER:** The multi-part Interrogatories set out below which cover each Request for Admission repeat this Interrogatory. Accordingly, my answers are provided below in response to the more specific Interrogatories.

2. For each Request for Admission directed to you by CIGNA that you did not admit without qualification, please identify any and all documents that support or relate or refer to your response.

**ANSWER:** The multi-part Interrogatories set out below which cover each Request for Admission repeat this Interrogatory. Accordingly, my answers are provided below in response to the more specific Interrogatories.

3. If you did not admit without qualification Request for Admission No. 1, 2, or 3, please describe in detail:

   a. The language in the newsletter that you believe was misleading or inaccurate;
   b. Each and every way in which you were harmed or prejudiced, including the damages, and calculations of damages, you suffered as a result of such harm;
   c. When you suffered such harm or prejudice;
   d. Whether such harm or prejudice is ongoing;
   e. Any and all documents related to such harm or prejudice;
   f.. Any and all individuals with knowledge about such harm or prejudice.

**ANSWER:** I worked in the Systems area of CIGNA's Investments Department from December 1985 to March 1991. I came back to CIGNA from June 1993 to September 1994 as a contract employee doing consulting with the same department. I later worked as a contract consultant for other companies like Connecticut Mutual, Aetna, and AMF, but I decided to return to CIGNA and was rehired as a permanent employee in September 1999. Since then, I have been working as a Application Development Senior Specialist in the Investments Department.

I did not receive the November 1997 Newsletter anytime before or after I returned to work for CIGNA in September 1999. Reviewing the Newsletter now, it does not say that I would be placed in the new cash balance plan if I returned to CIGNA, nor does it inform me that the new plan would reduce my pension benefits. Page 2 of the Newsletter states that "Employees who were hired prior to 1989, who do not work for a healthplan company in the CIGNA HealthCare Division, and whose age and service total at least 45 years, will stay in the current Pension Plan rather than transfer to the new CIGNA Retirement Plan." If that statement was

correct, I should have remained in the old retirement plan because I was 48 years old at the time of the conversion with more than five years of service since 1985. Page 2 also states that "If you earned a benefit under the current Pension Plan, the lump sum value of that benefit as of December 31, 1997, will be transferred to your account as your opening account balance," which is also misleading and inaccurate. It does not tell how your opening account balance is calculated and it implies that the benefits under cash balance represent the entire value of my pension benefits under the old plan. The Newsletter did not give notice of significant reductions in my rate of benefit accrual under the new plan.

  CIGNA never gave me the November 1997 Newsletter, the December 1997 Information Kit, the 1998 or 1999 Summary Plan Descriptions, or any other documents explaining the cash balance plan before or after I was rehired in 1999. Before I was rehired, I had been vested in the prior plan and I believed I would stay in that plan. I was never told that my pension would change if I returned to work for CIGNA. I did not even find out that I was in the cash balance plan until I received a statement of my account balance in December 1999. Afterwards I spoke to other employees in my department and realized I had been switched to a different plan. I was upset when I found out because I had no reason to believe that I was going to be placed into a new plan. After talking to my colleagues some more, I also suspected that my pension benefits would be reduced under the cash balance plan. However, I did not know the extent of the reductions. I could not do comparisons with the old plan and I did not have the formulas to calculate whether my account balance was correct. At the same time, I knew that the cash balance plan offered the advantage of being able to see and quantify your pension as a growing account balance, so in that sense I thought the new plan might actually be as good as the old plan.

I did not hear about this lawsuit until around 2003, when Gisela Broderick spoke to me. I later heard that employees who were rehired up to December 1998 were grandfathered into the old plan as a result of a court case and I was disappointed that I was not included in that group. I felt like I should have been grandfathered too, given that I had more than 45 age and service points prior when I was rehired. I recently tried to do my own benefit calculations after reading these questions to estimate how much my age 65 benefit would have been at the time of the conversion, compared to the value of my opening account balance in 1997. I computed these amounts using both the 6.5% discount rate that CIGNA uses in its estimates and a 4.89% interest rate, which I feel is a more realistic assumption. By my calculations, I determined that my opening account balance was less than half the value of the benefit I had under the old plan. I also performed calculations to compare the value of my cash balance account at the end of 2005 versus my June 2006 discounted value of my age 65 benefit under the old plan. The result was the same as the other comparison, namely, that the old plan, which I expected to apply to me, is richer than the new plan.

Because I did not know that I would be switched to the cash balance plan before I returned to CIGNA in September 1999 and did not have knowledge of the reductions, I could not assess the financial impact of the conversion to cash balance on my retirement benefits. I have always been careful about saving money and regularly making the maximum contributions to my 401(k) account. Each quarter I look at my account balance and add that amount to my savings and other assets to assess my financial status at retirement. If I had known before my rehire seven years ago that I would be switched to the cash balance plan and my pension benefits were being reduced, I would have reconsidered my rehire offer and may not have returned to CIGNA

in the first place. Alternatively, I could have asked to be placed in a higher job grade in order to make up for the difference in benefits (CIGNA offered me an increase in job grade as part of an incentive for me to accept employment in 1999). If the employees, including myself, had been told beforehand that the conversion to cash balance meant a reduction in benefits, we could have complained about it. I could have complained to the managers of my department and farther up the ladder. I could have also looked for another position that offered better benefits or compensation. To make up for what I would have received if the cash balance plan was comparable to the old plan, I may have to work longer.

The method for computing the damages and/or equitable relief sought has been set out in the March 8, 2004 Answers to the Second Set of Interrogatories from CIGNA (see the Answers to Interrogatory Nos. 1-9) and in Mr. Poulin's Supplemental Declaration dated January 3, 2006. In terms of Mr. Law's individual benefits, Mr. Poulin estimates that a return to the Part A Tier 1 formula, sought as relief for the violations in Counts II and IV, would increase his annuity benefits, as of the end of 2005, from approximately $672 per month at age 65 under cash balance to $1,429 per month (based on final average earnings of $89,350 over the 36 months from 2002-2004, 11.167 years of credited service, and a net accrual rate under the Tier 1 formula of 1.6%). In addition, Mr. Law would have been eligible for early retirement benefits, including a Social Security supplement to age 62, under the Part A Tier 1 provisions.

A rate of benefit accrual that is not reduced because of age would offer him an annuity of $1,074 per month at age 65, applying the 1.79% accrual rate that Actuary Poulin found for younger employees to Mr. Law's cumulative 1999-2005 salary of approximately $518,058 and adding that to the $301.01 annuity that he had at the start of 1999.

The documents related to Mr. Law's pension benefits are identified in response to Document Request No. 1.

4. If you did not admit without qualification Request for Admission No. 4, 5, or 6, please describe in detail:

   a. The language in the newsletter that you believe should have been included;

   b. Each and every way in which you were harmed or prejudiced, including the damages, and calculations of damages, you suffered as a result of such harm or prejudice;

   c. When you suffered such harm or prejudice;

   d. Whether such harm or prejudice is ongoing;

   e. Any and all documents related to such harm or prejudice;

   f. Any and all individuals with knowledge about such harm or prejudice.

**ANSWER:** See my answer to Interrogatory No. 3. The Newsletter failed to identify any of the disadvantages of cash balance, including the reductions in future accruals and the elimination of the very favorable early retirement subsidies. CIGNA should have disclosed how the opening account balances were calculated, including that early retirement benefits were not included in the values and that a discount for pre-retirement mortality had been applied.

As described in the response to Interrogatory No. 3, if I had known about how much my benefits were being reduced, I could have taken steps to protect myself, including requesting increased compensation or looking for another job.

5. If you did not admit without qualification Request for Admission No. 7, 8, or 9, please

describe in detail:

    a. The language of the 1998 SPD for Part B that you believe was misleading or inaccurate;

    b. Each and every way in which you were harmed or prejudiced, including the damages, and calculations of damages, you suffered as a result of such harm or prejudice;

    c. When you suffered such harm or prejudice;

    d. Whether such harm or prejudice is ongoing;

    e. Any and all documents related to such harm or prejudice;

    f. Any and all individuals with knowledge about such harm or prejudice.

**ANSWER:** As I recall, I never received the 1998 or 1999 SPD before or after I returned to CIGNA in September 1999. Reviewing the documents now, there is nothing in the 1998 or the 1999 SPD that says that my benefit accruals are reduced under the cash balance plan. An inset in the 1998 SPD's Table of Contents says that some employees "have a pension plan benefit different from the plan described in this summary" and lists criteria for staying in the old plan. After reading this, I was again under the impression that I should have stayed in the prior pension plan. The 1998 SPD also states on page 3 that "If you were an employee on December 31, 1997, or rehired after 1997, any benefit you earned under the Pension Plan through December 31, 1997 was converted to an opening account balance in this Pension Plan. The opening balance was equal to the lump sum value of the pension benefit you earned through December 31, 1997." These statements are inaccurate because there were employees hired before 1989 whose benefits were not converted to cash balance, and because when my benefit was converted, the opening account balance was not equal to the lump sum value of that prior benefit. Page 8 discusses what happens if you are "reemployed" and were in the old plan, but none of this information was

8

communicated to me before I was rehired.

As described above in response to Interrogatory No. 3, if I had been given adequate information about the benefit reductions and other disadvantages under cash balance, I could have taken steps to protect myself.

6. If you did not admit without qualification Request for Admission No. 10, 11, or 12, please describe in detail:

   a. The language in the 1998 SPD for Part B that you believe should have been included;

   b. Each and every way in which you were harmed or prejudiced, including the damages, and calculations of damages, you suffered as a result of such harm or prejudice;

   c. When you suffered such harm or prejudice;

   d. Whether such harm or prejudice is ongoing;

   e. Any and all documents related to such harm or prejudice;

   f. Any and all individuals with knowledge about such harm or prejudice.

**ANSWER:**   See my answer to Interrogatory No. 5.


7. If you did not admit without qualification Request for Admission No. 13, 14, or 15, please describe in detail:

   a. The language of the 1999 SPD for Part B that you believe was misleading or inaccurate;

   b. Each and every way in which you were harmed or prejudiced, including the damages, and calculations of damages, you suffered as a result of such harm or prejudice;

   c. When you suffered such harm or prejudice;

9

    d. Whether such harm or prejudice is ongoing;

    e. Any and all documents related to such harm or prejudice;

    f. Any and all individuals with knowledge about such harm or prejudice.

**ANSWER:** See my answer to Interrogatory No. 5. As best I can tell, the language in the 1999 SPD is the same as the 1998 SPD.


8. If you did not admit without qualification Request for Admission No. 16, 17, or 18, please describe in detail:

    a. The language in the 1999 SPD for Part B that you believe should have been included;

    b. Each and every way in which you were harmed or prejudiced, including the damages, and calculations of damages, you suffered as a result of such harm or prejudice;

    c. When you suffered such harm or prejudice;

    d. Whether such harm or prejudice is ongoing;

    e. Any and all documents related to such harm or prejudice;

    f. Any and all individuals with knowledge about such harm or prejudice.

**ANSWER:** See my answer to Interrogatory Nos. 3, 5 and 7.


9. If you did not admit without qualification Request for Admission No. 19 or 20, please describe in detail:

    a. The written or oral disclosures (e.g., newsletters, SPDs, pamphlets, booklets, policies, etc.) from CIGNA regarding pension benefits that you contend were false, inaccurate or misleading.

    b. Each and every way in which you were harmed or prejudiced by such disclosures, including the damages, and calculations of damages, you suffered as a result of such

       harm or prejudice;

    c. When you suffered such harm or prejudice;

    d. Whether such harm or prejudice is ongoing;

    e. Any and all documents related to such harm or prejudice;

    f. Any and all individuals with knowledge about such harm or prejudice.

**ANSWER:** See my answers above. In 1999 I received a rehire packet that included a leaflet which summarizes your benefits. Under "Company-Provided Benefits," it says "Pension Plan–If eligible for the CIGNA Pension Plan, you automatically start participating on your first day of work. You will be vested after five years of vesting service." I understood this to mean that I was vested in CIGNA's prior pension plan in which I participated during my earlier years of service from 1985 to 1991 and therefore would stay in that plan. The summary did not mention the cash balance plan. It also stated that I should refer to my Signature Benefits Binder for further details, but I do not recall receiving that binder. I did not find out about the cash balance plan, or that I had been placed into the plan, until I received a benefits statement in December 1999.

    CIGNA also distributed a Retirement Information Kit to plan participants in December 1997, but I never received the Information Kit before or after I was rehired in September 1999. Reviewing the Information Kit now, I do not see anything that says your benefits will be reduced. On page 2 of "Transition to the New Retirement Plan," it says "Any benefits that you have earned under the Pension Plan through December 31, 1997 are fully protected, and their value will be reflected in your new plan balance." This statement is misleading because it implies that my opening account balance represented the full amount of the pension benefit I had under the

old plan. It also ignores the value of being able to continue to accrue benefits under the old plan, which would have been very valuable to me. Page 3 of "Transition to the New Retirement Plan" and page 6 of "Your CIGNA Retirement Program" refer to a "moderate" 6.5% interest rate used to calculate your account balance. A 6.5% assumption is unrealistic since Treasury rates have fallen since CIGNA switched to the cash balance plan. On page 3 of "Q&A on the Retirement Program," it says that "Employees who were hired before 1989, who are not in a CIGNA HealthCare division healthplan company, and whose age and service total at least 45 years, will remain in the CIGNA Pension Plan." As stated above, because I met all of those criteria, I was one of the employees who should have remained in the old plan.

I also received "Total Compensation Reports" from CIGNA each year which I found to be fairly useful as a source for retirement planning, but the Reports do not say anything about the reductions in my benefit. I have also gone online on the Prudential Retirement website to check my cash balance retirement account. I assess my account balance each quarter to see how much I will have for retirement, in addition to my other finances. However, I have not been able to check whether my account balance is accurate because it does not give me any formulas to do the calculations, or factors to convert my account to a monthly retirement benefit.

10. If you did not admit without qualification Request for Admission No. 21 or 22, please describe in detail:

   a. The written or oral disclosures that you contend CIGNA should have made, but did not.

   b. Each and every way in which you were harmed or prejudiced by CIGNA not making such disclosures, including the damages, and calculations of damages, you suffered as

      a result of such harm or prejudice;

  c. When you suffered such harm or prejudice;

  d. Whether such harm or prejudice is ongoing;

  e. Any and all documents related to such harm or prejudice;

  f. Any and all individuals with knowledge about such harm or prejudice.

**ANSWER:** As stated in my answers to Interrogatory Nos. 3 and 4, CIGNA should have told me before I was rehired that I was going to be placed in a new pension plan. CIGNA should have disclosed all relevant information about the cash balance plan, including the disadvantages and the formulas for calculating opening account balances and future benefits, so a participant could figure out what the change in pension formulas and features meant to him or her. CIGNA should have told us if benefits were going to be reduced under the new plan so we could express dissatisfaction and make savings and employment decisions with full information.

     11. If, in response to any of the previous interrogatories, you indicated that you were harmed or prejudiced in any way regarding your finances or retirement planning, please identify on the chart below each asset and liability of you and your spouse, for the period of time **one (1) year before through one (1) year after the date of each and every** harm or prejudice you suffered and identify documents sufficient to confirm the information contained in your response. Treat the following kinds of assets and liabilities together (e.g., treat all bank accounts as one asset):

      Assets
      • Savings, checking, and other banking accounts
      • Certificates of deposit

- Mutual funds, stocks, bonds, and other similar investments
- Home
- Real estate (other than your home)

Liabilities
- Mortgages
- Loans
- Credit card debt

Do not include in your assets any funds held in a spendthrift or irrevocable trust.

**ANSWER:** Objection: Relevance, overbreadth, undue burden, annoyance, and oppression.

| Type of Asset | Amount |
| --- | --- |
| Savings, checking, and other banking accounts | $ 20,000 |
| Certificates of deposit | None |
| Mutual funds, stocks, bonds, and other similar investments | $ 80,000 |
| Home | $ 210,000 |
| Real estate (other than your home) | $ 105,000 |
| Other assets (identify): | CIGNA 401k - $280,000 |
| **Type of Liability** | **Amount** |
| Mortgages | $ 640/month |
| Loans | None |
| Credit card debt | None |
| Other liabilities (identify): | None |

12. If, in response to any of the previous interrogatories, you indicated that you were harmed or prejudiced in any way regarding your finances or retirement planning, please identify in the chart below all sources of income (including but not limited to jobs, self-employment, investments, Social Security payments, gifts, inheritances, and pension benefits) to you and your

14

spouse that provided you and your spouse with $1,000 or more for the period of time **one (1) year before through one (1) year after the date of each and every** harm or prejudice you suffered and identify documents sufficient to confirm the information contained in your response.

**ANSWER:** Objection: Relevance, overbreadth, undue burden, annoyance, and oppression. Subject to those objections, my response to Document Request No. 1 includes all the documents I have located about my retirement benefits from CIGNA. CIGNA already possesses my W-2's and other information related to my salary, bonuses, and 401k contributions and balance.

| Year | Source of Income | Amount |
|---|---|---|
| 2005 | Salary at CIGNA | $ 85,200 |
| | SS benefits at age 66 | $ 1,942/month |
| | CIGNA Pension | Unknown |

13. If, in response to any of the previous interrogatories, you indicated that you were harmed or prejudiced in any way regarding your finances or retirement planning, please identify your and your spouse's federal tax returns for the period of time **one (1) year before through one (1) year after the date of each and every** harm or prejudice you suffered.

**ANSWER:** Objection: Relevance, overbreadth, undue burden, annoyance, and oppression.

14. If, in response to any of the previous interrogatories, you indicated that you were harmed or prejudiced in any way regarding your finances or retirement planning, please identify any financial planners or accountants with whom you consulted during the period of time **one (1) year before through one (1) year after the date of each and every** harm or prejudice you

suffered and also:

    a.    Identify where was the financial planner located?

    b.    Identify any documents prepared or generated by you, your spouse, your financial planner or accountant related to your financial circumstances during the period of time **one (1) year before through one (1) year after the date of each and every** harm or prejudice you suffered.

**ANSWER:**    I have not consulted a financial planner or professional accountant regarding my retirement.

15. Did you sign a release or waiver of claims in connection with your employment with CIGNA, including but not limited to any claims for severance pay?

**ANSWER:**    Yes, because my job is being eliminated as of June 2006.

Dated: May 2, 2006

Stephen R. Bruce ct23534
Suite 210
805 15th St., NW
Washington, DC 20005
(202) 371-8013
stephen.bruce@prodigy.net

Thomas G. Moukawsher ct08940
Ian O. Smith ct24135
Moukawsher & Walsh, LLC
21 Oak Street
Hartford, CT 06106
(860) 278-7000
tmoukawsher@mwlawgroup.com

## **VERIFICATION**

I, Steven I. Law, hereby state as follows:

1. I am a plaintiff class member in the *Amara v. CIGNA* litigation.

2. Pursuant to 28 U.S.C. §1746, I verify under penalty of perjury that the facts set forth in Plaintiff Steven I. Law's Answers to Defendants' First Set of Interrogatories are true and correct to the best of my knowledge, information and belief.

Dated: May 1, 2006

_____
Steven I. Law

## CERTIFICATION OF SERVICE

I certify that a copy of the Plaintiff Steven I. Law's Answers to Defendants' First Set of Interrogatories to Him was mailed on this 2nd day of May 2006, by first-class U.S. Mail, postage prepaid, to counsel for the Defendants at:

> Joseph J. Costello
> Jeremy P. Blumenfeld
> Jamie M. Kohen
> Morgan, Lewis & Bockius
> 1701 Market St.
> Philadelphia, PA 19103-2921
> (215) 963-5295
>
> James A. Wade
> Erin O'Brien Choquette
> Robinson & Cole, LLP
> 280 Trumbull Street
> Hartford, CT 06103-3597

Dated this 2nd day of May, 2006.

_____
Stephen R. Bruce