Amara v. CIGNA, Case No. 01-2361 (MRK)

# EXHIBIT 245

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JANICE C. AMARA, GISELA R. :
BRODERICK, ANNETTE S. GLANZ :
individually and on behalf :
of all others similarly situated, :
: 
                    Plaintiff, :
:
vs. : Civil. No. 3:01-CV-2361 (MRK)
:
CIGNA Corp. and : April 19, 2006
CIGNA Pension Plan, :
:
                    Defendants. :
:

## PLAINTIFF MITCHELL A. HABER'S ANSWERS TO DEFENDANTS' FIRST SET OF INTERROGATORIES TO HIM

**General Objections**

Plaintiff objects to Defendant CIGNA's Interrogatories on the following grounds:

1. Absent leave of Court, FRCP 33 limits interrogatories to 25 questions, "including all discrete subparts." Through compound questions with "discrete subparts," CIGNA has posed in excess of the permissible number of interrogatories.

2. CIGNA's Interrogatories ask for legal contentions, even though absent class members do not "contend" anything directly. They are members of the class on whose behalf the named Plaintiffs make legal contentions.

3. CIGNA's Interrogatories repeatedly refer to the attached Exhibits A, B, and C as containing the November 1997 Newsletter, 1998 Summary Plan Description and 1999 Summary Plan Description. The exhibits contain only one page of text from a 19-page 1998 SPD and two pages from the 1999 SPD, and only every other page from the November 1997 Newsletter.

4. CIGNA's Interrogatories repeatedly refer to the term "misleading" without explaining the legal meaning of this term when there is a duty to disclose.

5. CIGNA's Requests for Admission repeatedly refer to the terms "harm or prejudice" without explaining the legal meaning of these terms and without explaining the "likely prejudice" standard that applies in the Second Circuit.

Each response below is made subject to the foregoing General Objections, regardless of whether a specific objection is stated in the particular response.

If Plaintiff learns of or uncovers additional information, he reserves the right to supplement or change these responses.

1. For each Request for Admission directed to you by CIGNA that you did not admit without qualification, please explain in detail the basis for your response.

**ANSWER:** The multi-part Interrogatories set out below which cover each Request for Admission repeat this Interrogatory. Accordingly, my answers are provided below in response to the more specific Interrogatories.

2. For each Request for Admission directed to you by CIGNA that you did not admit without qualification, please identify any and all documents that support or relate or refer to your response.

**ANSWER:** The multi-part Interrogatories set out below which cover each Request for Admission repeat this Interrogatory. Accordingly, my answers are provided below in response to the more specific Interrogatories.

3. If you did not admit without qualification Request for Admission No. 1, 2, or 3, please describe in detail:

    a. The language in the newsletter that you believe was misleading or inaccurate;
    b. Each and every way in which you were harmed or prejudiced, including the damages, and calculations of damages, you suffered as a result of such harm;

    c. When you suffered such harm or prejudice;

    d. Whether such harm or prejudice is ongoing;

    e. Any and all documents related to such harm or prejudice;

    f.. Any and all individuals with knowledge about such harm or prejudice.

**ANSWER:** The November 1997 Newsletter did not inform me that the new cash balance plan was reducing my future retirement benefits. The statement in the first page that the cash balance plan is "similar to the current pension plan" is inaccurate, incomplete, and misleading. Page 4 of the Newsletter says that "One advantage the company will not get from the retirement program changes is cost savings," which is also misleading and inaccurate. The Newsletter did not give me notice of any significant reductions in my rate of benefit accrual under the new plan.

At the time of the conversion, I was working in Retirement and Investment Services at a field office in Los Angeles. When CIGNA informed us that it was switching to a cash balance plan, they portrayed the new plan as a positive change. The documents that CIGNA distributed, like the November 1997 Newsletter, had an overriding theme of "retain and compete;" i.e., the company was switching to a pension plan that was good enough to be able to attract and keep its employees. My understanding was that I was going to receive a lump sum amount and would earn benefits each year on top of what I already had. I assumed that my lump sum opening

account balance was correct and had no basis to really question it. None of CIGNA's communications told me that my future benefits were reduced under the cash balance plan and my office did not have any meetings to disclose any reductions or even explain the new plan. As far as I knew, none of the other employees I worked with were aware of any reductions. I left CIGNA in December 2001 and did not find out about the reductions until late in 2004, when a colleague of mine told me about a *Wall Street Journal* article about the *Depenbrock v. CIGNA* decision. I still do not really know the extent of the reductions.

The Newsletter and other communications that CIGNA provided about the new plan did not give me the facts to assess the financial impact of the conversion to cash balance on my retirement benefits. I believe a pension is a big reason for being at your job in the first place. I was aware of how good CIGNA's pension plan was because I worked in Retirement and Investment Services and the pension plan was a very "visible" aspect of my employment. To me, a traditional pension plan is the most potent and powerful retention tool available. If I had been able to stay in the old plan, I may not have left CIGNA.

If I had known earlier that the switch to the cash balance plan was going to reduce my retirement benefits, I may not have stayed with CIGNA as long as I did. I would have complained about the changes to my managers and asked that something be done in order to make up for the difference in benefits. I would have also tried to find out more information about the reductions from my former colleagues, such as Mark Lynch, because they had more knowledge about the technical aspects of the plan. I would like to have been able to better inform myself so I could determine what kind of adjustments I needed to make in my financial planning, or, if necessary, my employment. At that point, I could have looked for another job

with better benefits or compensation, or I could have stayed with CIGNA but increased the amount of money I put into my savings and considered other investment opportunities as additional sources of retirement income.

The method for computing the damages and/or equitable relief sought has been set out in the March 8, 2004 Answers to the Second Set of Interrogatories from CIGNA (see the Answers to Interrogatory Nos. 1-9) and in Mr. Poulin's Supplemental Declaration dated January 3, 2006. In terms of Mr. Haber's individual benefits, Mr. Poulin estimates that a return to the Part A Tier 2 formula, sought as relief for the violations in Counts II and IV, would increase his annuity benefits, as of the end of 2001, from approximately $3,444 per month at age 65 under cash balance to $6,291 per month (based on final average earnings of $387,156 over the 36 months from 1999 to 2001, 13 years of credited service, and a net accrual rate under the Tier 2 formula of 1.5%). The less extensive relief of an "A plus B" formula, sought in the Prayer for the Count I and Count II violations, would provide Mr. Haber a cash balance benefit of $4,438 per month at 65.

The documents related to Mr. Haber's pension benefits are identified in response to Document Request No. 1.

4. If you did not admit without qualification Request for Admission No. 4, 5, or 6, please describe in detail:

    a. The language in the newsletter that you believe should have been included;

    b. Each and every way in which you were harmed or prejudiced, including the damages, and calculations of damages, you suffered as a result of such harm or prejudice;

   c. When you suffered such harm or prejudice;

   d. Whether such harm or prejudice is ongoing;

   e. Any and all documents related to such harm or prejudice;

   f. Any and all individuals with knowledge about such harm or prejudice.

**ANSWER:** See my answer to Interrogatory No. 3. The Newsletter failed to identify any of the disadvantages of cash balance, including any periods of time where no additional retirement benefits would be earned, the reductions in future pension accruals, and the elimination of the valuable early retirement subsidies. CIGNA should have disclosed how the opening account balances were calculated, including that early retirement benefits were not included in the values and a pre-retirement mortality discount had been applied. Based on CIGNA's communications, I assumed that the opening account balance calculated for me was accurate. I had no basis to believe otherwise.

As described in the response to Interrogatory No. 3, if I had known about how much my benefits were being reduced, I could have taken steps to protect myself, including expressing my dissatisfaction about the changes, looking for other job opportunities, and adjusting my financial plans for retirement.

5. If you did not admit without qualification Request for Admission No. 7, 8, or 9, please describe in detail:

   a. The language of the 1998 SPD for Part B that you believe was misleading or inaccurate;

   b. Each and every way in which you were harmed or prejudiced, including the damages, and calculations of damages, you suffered as a result of such harm or prejudice;

6

   c. When you suffered such harm or prejudice;

   d. Whether such harm or prejudice is ongoing;

   e. Any and all documents related to such harm or prejudice;

   f. Any and all individuals with knowledge about such harm or prejudice.

**ANSWER:** Neither the 1998 nor 1999 SPD states that benefit accruals are reduced under the cash balance plan and neither describes any periods of time where new benefits are not being earned. As far as I could tell, there is nothing in the 1998 nor the 1999 SPD that discloses that benefit accruals are reduced under the cash balance. The SPD describes "how your account grows" through benefit and interest credits, but it does not give me any information to compare my benefits under the old plan with my benefits under the cash balance plan.

As described above in response to Interrogatory No. 3, if I had been given adequate information about the benefit reductions and other disadvantages under cash balance, I could have taken steps to protect myself.


6. If you did not admit without qualification Request for Admission No. 10, 11, or 12, please describe in detail:

   a. The language in the 1998 SPD for Part B that you believe should have been included;

   b. Each and every way in which you were harmed or prejudiced, including the damages, and calculations of damages, you suffered as a result of such harm or prejudice;

   c. When you suffered such harm or prejudice;

   d. Whether such harm or prejudice is ongoing;

   e. Any and all documents related to such harm or prejudice;

   f. Any and all individuals with knowledge about such harm or prejudice.

**ANSWER:**   See my answer to Interrogatory No. 5.


   7. If you did not admit without qualification Request for Admission No. 13, 14, or 15, please describe in detail:

   a. The language of the 1999 SPD for Part B that you believe was misleading or inaccurate;

   b. Each and every way in which you were harmed or prejudiced, including the damages, and calculations of damages, you suffered as a result of such harm or prejudice;

   c. When you suffered such harm or prejudice;

   d. Whether such harm or prejudice is ongoing;

   e. Any and all documents related to such harm or prejudice;

   f. Any and all individuals with knowledge about such harm or prejudice.

**ANSWER:**   See my answer to Interrogatory No. 5. As far as I can tell, the language in the 1999 SPD is the same as the 1998 SPD.


   8. If you did not admit without qualification Request for Admission No. 16, 17, or 18, please describe in detail:

   a. The language in the 1999 SPD for Part B that you believe should have been included;

   b. Each and every way in which you were harmed or prejudiced, including the damages, and calculations of damages, you suffered as a result of such harm or prejudice;

   c. When you suffered such harm or prejudice;

8

   d. Whether such harm or prejudice is ongoing;

   e. Any and all documents related to such harm or prejudice;

   f. Any and all individuals with knowledge about such harm or prejudice.

**ANSWER:**   See my answer to Interrogatory Nos. 3, 5 and 7.


9. If you did not admit without qualification Request for Admission No. 19 or 20, please describe in detail:

   a. The written or oral disclosures (e.g., newsletters, SPDs, pamphlets, booklets, policies, etc.) from CIGNA regarding pension benefits that you contend were false, inaccurate or misleading.

   b. Each and every way in which you were harmed or prejudiced by such disclosures, including the damages, and calculations of damages, you suffered as a result of such harm or prejudice;

   c. When you suffered such harm or prejudice;

   d. Whether such harm or prejudice is ongoing;

   e. Any and all documents related to such harm or prejudice;

   f. Any and all individuals with knowledge about such harm or prejudice.

**ANSWER:**   See my answers above. None of CIGNA's communications told me about any benefit reductions, and I did not find out my benefits had been reduced under the new plan until three years after I left CIGNA.

During my employment with CIGNA, I received annual "Total Compensation Reports" which I found to be very valuable. I believe CIGNA's Total Compensation Reports were an effective tool to communicate how you were doing and they promoted how each source of your retirement income, i.e., your pension, 401k plan, health benefits, etc., worked as a whole. I relied

9

upon my Total Compensation Reports quite a bit because they told me what I could expect to have at retirement and whether I was on track to reach my retirement goals. The Reports assured me that my pension benefits were growing each year, even under the cash balance plan.

I also received a "Retirement Information Kit" in December 1997, which included documents entitled "Transition to the New Retirement Plan," "Q&A on the Retirement Program," and "Your CIGNA Retirement Program." As far as I could tell, nothing in the Information Kit said my benefits were going to be reduced. None of the "sample opening account balances" on page 5 of the "Transition to the New Retirement Plan" was comparable to my circumstances. Page 2 "Q&A on the Retirement Program" says that "We want to improve the competitiveness of our benefits program and thus our ability to attract and retain top talent." The statement implies that the cash balance plan is the same, if not better, for your pension benefits. Page 3 states that CIGNA is not saving any money with the pension plan changes, which was also inaccurate and misleading.

10. If you did not admit without qualification Request for Admission No. 21 or 22, please describe in detail:

   a. The written or oral disclosures that you contend CIGNA should have made, but did not.

   b. Each and every way in which you were harmed or prejudiced by CIGNA not making such disclosures, including the damages, and calculations of damages, you suffered as a result of such harm or prejudice;

   c. When you suffered such harm or prejudice;

   d. Whether such harm or prejudice is ongoing;

  e. Any and all documents related to such harm or prejudice;

  f. Any and all individuals with knowledge about such harm or prejudice.

**ANSWER:** As I stated above, CIGNA should have disclosed all relevant information about the cash balance plan, including the disadvantages of the new plan and the formulas for calculating future benefits, so a participant could figure out what the change in pension formulas and features meant to him or her. Because pension benefits are such an important aspect of employment, CIGNA should have told us if benefits were going to be reduced under the new plan so we could express dissatisfaction and make better-informed savings and employment decisions.

  11. If, in response to any of the previous interrogatories, you indicated that you were harmed or prejudiced in any way regarding your finances or retirement planning, please identify on the chart below each asset and liability of you and your spouse, for the period of time **one (1) year before through one (1) year after the date of each and every** harm or prejudice you suffered and identify documents sufficient to confirm the information contained in your response. Treat the following kinds of assets and liabilities together (e.g., treat all bank accounts as one asset):

    <u>Assets</u>
    • Savings, checking, and other banking accounts
    • Certificates of deposit
    • Mutual funds, stocks, bonds, and other similar investments
    • Home
    • Real estate (other than your home)

    <u>Liabilities</u>
    • Mortgages

- Loans
- Credit card debt

Do not include in your assets any funds held in a spendthrift or irrevocable trust.

**ANSWER:**   Objection: Relevance, overbreadth, undue burden, annoyance, and oppression.

| Type of Asset | Amount |
|---|---|
| Savings, checking, and other banking accounts | $ 300,000 |
| Certificates of deposit | $ 150,000 |
| Mutual funds, stocks, bonds, and other similar investments | $ 400,000 |
| Home | $ 1.4 million |
| Real estate (other than your home) | None |
| Other assets (identify): | $ 375,000 (CIGNA 401k account) |
|  | $ 140,000 (Massachusetts Mutual 401k) |
|  |  |
|  |  |
| **Type of Liability** | **Amount** |
| Mortgages | $1,800 per month |
| Loans | None |
| Credit card debt | None |
| Other liabilities (identify): | None |

(Attach additional sheets if necessary).

12. If, in response to any of the previous interrogatories, you indicated that you were harmed or prejudiced in any way regarding your finances or retirement planning, please identify in the chart below all sources of income (including but not limited to jobs, self-employment, investments, Social Security payments, gifts, inheritances, and pension benefits) to you and your spouse that provided you and your spouse with $1,000 or more for the period of time **one (1)**

**year before through one (1) year after the date of each and every** harm or prejudice you suffered and identify documents sufficient to confirm the information contained in your response.

ANSWER:    Objection: Relevance, overbreadth, undue burden, annoyance, and oppression. Subject to those objections, my response to Document Request No. 1 includes all the documents I have located about my retirement benefits from CIGNA. CIGNA already possesses my W-2's and other information related to my salary, bonuses, and 401k contributions and balance.

| Year | Source of Income | Amount |
|------|------------------|--------|
| 2001 | Final salary at CIGNA | $ 382,715 |
| 2005 | Salary at Mass. Mutual | $ 650,000 |
|      | CIGNA Pension | Unknown |
|      | Mass. Mutual Cash Balance account | $ 150,000 |
|      |                  |        |
|      |                  |        |
|      |                  |        |

13. If, in response to any of the previous interrogatories, you indicated that you were harmed or prejudiced in any way regarding your finances or retirement planning, please identify your and your spouse's federal tax returns for the period of time **one (1) year before through one (1) year after the date of each and every** harm or prejudice you suffered.

ANSWER:    Objection: Relevance, overbreadth, undue burden, annoyance, and oppression.

14. If, in response to any of the previous interrogatories, you indicated that you were harmed or prejudiced in any way regarding your finances or retirement planning, please identify any financial planners or accountants with whom you consulted during the period of time **one (1)**

13

**year before through one (1) year after the date of each and every** harm or prejudice you suffered and also:

    a.     Identify where was the financial planner located?

    b.     Identify any documents prepared or generated by you, your spouse, your financial planner or accountant related to your financial circumstances during the period of time **one (1) year before through one (1) year after the date of each and every** harm or prejudice you suffered.

**ANSWER:**     I have not consulted a financial planner or professional accountant regarding my retirement.

15. Did you sign a release or waiver of claims in connection with your employment with CIGNA, including but not limited to any claims for severance pay?

**ANSWER:**     No.

Dated: April 19, 2006

*[signature]*
Stephen R. Bruce ct23534
Suite 210
805 15th St., NW
Washington, DC 20005
(202) 371-8013
stephen.bruce@prodigy.net

Thomas G. Moukawsher ct08940
Ian O. Smith ct24135
Moukawsher & Walsh, LLC
21 Oak Street
Hartford, CT 06106
(860) 278-7000
tmoukawsher@mwlawgroup.com

## VERIFICATION

I, Mitchell A. Haber, hereby state as follows:

1. I am a plaintiff class member in the *Amara v. CIGNA* litigation.

2. Pursuant to 28 U.S.C. §1746, I verify under penalty of perjury that the facts set forth in Plaintiff Mitchell A. Haber's Answers to Defendants' First Set of Interrogatories are true and correct to the best of my knowledge, information and belief.

Dated: April 19, 2006

*/s/ Mitchell A. Haber*
Mitchell A. Haber

## CERTIFICATION OF SERVICE

I certify that a copy of the Plaintiff Mitchell A. Haber's Answers to Defendants' First Set of Interrogatories to Him was mailed on this 19th day of April 2006, by first-class U.S. Mail, postage prepaid, to counsel for the Defendants at:

>Joseph J. Costello
>Jeremy P. Blumenfeld
>Jamie M. Kohen
>Morgan, Lewis & Bockius
>1701 Market St.
>Philadelphia, PA 19103-2921
>(215) 963-5295

>James A. Wade
>Erin O'Brien Choquette
>Robinson & Cole, LLP
>280 Trumbull Street
>Hartford, CT 06103-3597

Dated this 19th day of April, 2006.

Stephen R. Bruce