**<u>Amara v. CIGNA</u>, Case No. 01-2361 (MRK)**

# EXHIBIT A

Plaintiffs' Supplemental Post-Trial Brief

Part I

Section 411. – Minimum Vesting Standards

26 CFR 1.411(b)-1:  Accrued benefit requirements.

(Also, § 7805; § 301.7805-1.)


Rev. Rul. 2008-7


ISSUE

Does the defined benefit plan described below that was converted from a traditional benefit formula to a lump sum-based benefit formula satisfy the accrual rules of § 411(b)(1)(A), (B), and (C) of the Internal Revenue Code for the 2002 plan year?

FACTS

Plan A is a defined benefit pension plan that (prior to the amendment described below) provided a normal retirement benefit payable in the form of a straight life annuity commencing at the age 65 normal retirement age under the plan equal to the product of 1.1% of average compensation for the three consecutive years of service with the highest such average multiplied by the number of years of service at normal retirement age.  Under Plan A, the accrued benefit (prior to the amendment described below) of a participant at any point prior to attainment of normal retirement age is the benefit, payable in the form of a straight life annuity commencing at the age 65 normal retirement age, equal to the product of 1.1% of the participant's highest average compensation at such point multiplied by the participant's number of years of service at such point.  Plan A provides that an employee commences participation in the plan on the first day of the first month after commencing employment, or, if later, the first day of the first month following attainment of age 21.

Plan A was amended in 2001 to change the plan's benefit formula effective for plan years beginning on or after January 1, 2002.  The new benefit formula is a "lump sum-based" benefit formula as further described below.  Under the lump sum-based benefit formula, a hypothetical account is created for each participant.  For participants who were employees on December 31, 2001, the opening account balance was equal to the actuarial present value of the participant's accrued benefit determined as of that date.  Under Plan A, this actuarial present value was determined using the applicable interest rate, post-

1

retirement mortality using the applicable mortality table specified under § 417(e)(3) for 2002, and no pre-retirement mortality. Thereafter, the hypothetical account balance is credited with hypothetical interest at the rate of interest on 3-year Treasury Constant Maturities for the month prior to the first day of the plan year plus 25 basis points (for the 2002 plan year, the rate of interest was determined as 3.87%, which is 3.62%, the yield on 3-year Treasury Constant Maturities for December 2001, plus 25 basis points). Additionally, the hypothetical account for each participant is credited at the end of each accrual computation period (which is the plan year) with pay credits that are determined as a percentage of compensation for the participant for the plan year. The percentage is determined, based upon the age of the participant at the beginning of the plan year, in accordance with the following table:

| Age at Beginning of Year | Percentage |
|---|---|
| 25 or less | 3 |
| 26-40 | 4 |
| 41-50 | 5 |
| 51-60 | 6 |
| 61 or more | 7 |

The annual benefit payable at the age 65 normal retirement age under the new benefit formula is determined by converting the hypothetical account balance at that time to a straight life annuity. The plan provides for the conversion to a straight life annuity to be made using the applicable interest rate and applicable mortality table, defined as the 30-year Treasury rate as published by the Commissioner of Internal Revenue under § 417(e)(3) for the month prior to the beginning of the plan year, and the mortality table published by the Commissioner under § 417(e)(3). For 2002, that applicable interest rate was 5.48% and that applicable mortality table was the mortality table set forth in Revenue Ruling 2001-62, 2001-2 C.B. 632.

The amendment to Plan A also changed how the accrued benefit of a participant is determined under the plan. For participants who were employed on December 31, 2001, had completed 15 years of service, and had attained age 50 as of that date, Plan A provides that the accrued benefit will be the greater of the accrued benefit provided by the hypothetical account balance at the age 65 normal retirement age (determined as described above) and the accrued benefit determined under the pre-conversion formula as in effect on December 31, 2001, taking into account compensation and years of service after December 31, 2001, but not taking into account compensation and years of service after December 31, 2005. Plan A refers to such participants as grandfathered participants. The accrued benefit provided by the hypothetical account balance at the age 65 normal retirement age is equal to the hypothetical account balance at that age (including projected interest credits under the plan to age 65), converted to a

straight life annuity commencing at age 65 using the applicable interest rate and applicable mortality table.

For participants who were employed on December 31, 2001, and who either had not completed 15 years of service or had not attained age 50 as of that date (i.e., participants who are not grandfathered participants), Plan A provides that the accrued benefit at any point in time is determined as the greater of (1) the accrued benefit determined under the terms of the plan under the pre-conversion formula immediately before the amendment, but taking into account only service and compensation through December 31, 2001, and (2) the accrued benefit provided by the hypothetical account balance at the age 65 normal retirement age (determined as described above).  Accordingly, compensation increases and years of service after December 31, 2001, are not taken into account in determining the accrued benefit under the pre-conversion formula.

For all new participants (i.e., those employees who commenced participation on or after January 1, 2002), the accrued benefit at any point is the accrued benefit provided by the hypothetical account balance at the age 65 normal retirement age (determined as described above).

LAW

Section 401(a)(7) provides that a trust is not a qualified trust under § 401 unless the plan of which such trust is a part satisfies the requirements of § 411 (relating to minimum vesting standards).

Section 411(a) requires a qualified plan to provide that an employee's right to the normal retirement benefit is nonforfeitable upon attainment of normal retirement age and that an employee's right to his or her accrued benefit is nonforfeitable upon completion of the specified number of years of service under one of the vesting schedules set forth in § 411(a)(2).  Section 411(a) also requires that a defined benefit plan satisfy the requirements of § 411(b)(1).

Section 411(a)(7)(A)(i) defines a participant's accrued benefit under a defined benefit plan as the employee's accrued benefit determined under the plan, expressed in the form of an annual benefit commencing at normal retirement age, subject to an exception for § 411(c)(3).  Under § 411(c)(3), the accrued benefit is the actuarial equivalent of the annual benefit commencing at normal retirement age in the case of a plan that does not express the accrued benefit as an annual benefit commencing at normal retirement age.

Section 1.411(a)-7(a)(1) of the Income Tax Regulations provides that, for purposes of § 411 and the regulations thereunder, the accrued benefit of a participant under a defined benefit plan is either (A) the accrued benefit determined under the plan if the plan provides for an accrued benefit in the form of an annual benefit commencing at normal retirement age or (B) an annual

benefit commencing at normal retirement age which is the actuarial equivalent (determined under § 411(c)(3) and § 1.411(c)-1) of the accrued benefit under the plan if the plan does not provide for an accrued benefit in the form of an annual benefit commencing at normal retirement age.

Section 411(b)(1) provides that a defined benefit plan must satisfy one of the three accrual rules of § 411(b)(1)(A), (B), and (C) with respect to benefits accruing under the plan. The three accrual rules are the 3% method of § 411(b)(1)(A), the 133 1/3% rule of § 411(b)(1)(B), and the fractional rule of § 411(b)(1)(C).

Section 411(b)(1)(A) provides that a defined benefit plan satisfies the requirements of the 3% method if, under the plan, the accrued benefit payable upon the participant's separation from service is not less than (A) 3% of the normal retirement benefit to which the participant would be entitled if the participant commenced participation at the earliest possible entry age under the plan and served continuously until the earlier of age 65 and the normal retirement age under the plan, multiplied by (B) the number of years (not in excess of 33 1/3 years) of his or her participation in the plan. Section 411(b)(1)(A) provides that, in the case of a plan providing retirement benefits based on compensation during any period, the normal retirement benefit to which a participant would be entitled is determined as if the participant continued to earn annually the average rate of compensation during consecutive years of service, not in excess of 10, for which his or her compensation was highest. Section 411(b)(1)(A) also provides that Social Security benefits and all other relevant factors used to compute benefits are treated as remaining constant as of the current plan year for all years after the current year.

Section 411(b)(1)(B) provides that a defined benefit plan satisfies the requirements of the 133 1/3% rule for a particular plan year if, under the plan, the accrued benefit payable at the normal retirement age is equal to the normal retirement benefit, and the annual rate at which any individual who is or could be a participant can accrue the retirement benefits payable at normal retirement age under the plan for any later plan year is not more than 133 1/3% of the annual rate at which the individual can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year.

For purposes of applying the 133 1/3% rule, § 411(b)(1)(B)(i) provides that any amendment to the plan which is in effect for the current year is treated as in effect for all other plan years. Section 411(b)(1)(B)(ii) provides that any change in an accrual rate which does not apply to any individual who is or could be a participant in the current plan year is disregarded. Section 411(b)(1)(B)(iii) provides that the fact that benefits under the plan may be payable to certain participants before normal retirement age is disregarded. Section 411(b)(1)(B)(iv) provides that Social Security benefits and all other relevant

factors used to compute benefits are treated as remaining constant as of the current plan year for all years after the current year.

Section 411(b)(1)(C) provides that a defined benefit plan satisfies the fractional rule if the accrued benefit to which any participant is entitled upon his or her separation from service is not less than a fraction of the annual benefit commencing at normal retirement age to which the participant would be entitled under the plan as in effect on the date of separation if the participant continued to earn annually until normal retirement age the same rate of compensation upon which the normal retirement benefit would be computed under the plan, determined as if the participant had attained normal retirement age on the date on which any such determination is made (but taking into account no more than 10 years of service immediately preceding separation from service). The fraction is a fraction, not exceeding 1, the numerator of which is the total number of the participant's years of participation in the plan (as of the date of separation from service) and the denominator of which is the total number of years the participant would have participated in the plan if the participant separated from service at normal retirement age. Section 411(b)(1)(C) also provides that Social Security benefits and all other relevant factors used to compute benefits are treated as remaining constant as of the current plan year for all years after the current year.

Section 1.411(b)-1(a)(1) provides that a defined benefit plan is not a qualified plan unless the method provided by the plan for determining accrued benefits satisfies at least one of the three alternative methods in § 1.411(b)-1(b) for determining accrued benefits with respect to all active participants under the plan. The three alternative methods are the 3% method, the 133 1/3% rule, and the fractional rule. A defined benefit plan may provide that accrued benefits for participants are determined under more than one plan formula. Section 1.411(b)-1(a)(1) provides that, in such a case, the accrued benefits under all such formulas must be aggregated in order to determine whether or not the accrued benefits under the plan for participants satisfy one of these methods. Under § 1.411(b)-1(a)(1), a plan may satisfy different methods with respect to different classifications of employees, or separately satisfy one method with respect to the accrued benefits for each such classification, provided that such classifications are not so structured as to evade the accrued benefit requirements of § 411(b) and § 1.411(b)-1.

Section 1.411(b)-1(b)(1)(i) provides that a defined benefit plan satisfies the requirements of the 3% method for a plan year if, as of the close of the plan year, the accrued benefit to which each participant is entitled, computed as if the participant separated from service as of the close of such plan year, is not less than 3% of the 3% method benefit, multiplied by the number of years (not in excess of 33 1/3) of his or her participation in the plan, including years after normal retirement age. The 3% method benefit is the normal retirement benefit to which the participant would be entitled if the participant commenced participation at the earliest possible entry age for any individual who is or could

5

be a participant under the plan and served continuously until the earlier of age 65 and the normal retirement age under the plan.

Section 1.411(b)-1(b)(2)(i) provides that a defined benefit plan satisfies the 133 1/3% rule for a particular plan year if (A) under the plan the accrued benefit payable at the normal retirement age (determined under the plan) is equal to the normal retirement benefit (determined under the plan), and (B) the annual rate at which any individual who is or could be a participant can accrue the retirement benefits payable at normal retirement age under the plan for any later plan year cannot be more than 133 1/3% of the annual rate at which the participant can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year.

Pursuant to § 411(b)(1)(B)(i), § 1.411(b)-1(b)(2)(ii)(A) provides that, for purposes of the 133 1/3% rule, any amendment to the plan which is in effect for the current plan year is treated as if it were in effect for all other plan years. Pursuant to § 411(b)(1)(B)(ii), § 1.411(b)-1(b)(2)(ii)(B) provides that any change in an accrual rate which change does not apply to any individual who is or could be a participant in the current plan year is disregarded. The regulations provide an example illustrating this rule under which, for the plan year 1980, a plan provides an accrued benefit of 2% of the highest 3 years' compensation for each year of service and provides that, for the plan year 1981, the accrued benefit is 3% of the highest 3 years' compensation. The regulations then state that the change in rate does not cause the plan to fail to satisfy the 133 1/3% rule because in the plan year 1980 the change in the accrual rate does not apply to any individual who is or could be a participant in the plan year 1980. However, the regulations further state that if, for example, a plan were to provide for an accrued benefit of 1% of the highest 3 years' compensation for each of the first 10 years of service and 1.5% of such compensation for each year of service thereafter, then the plan would fail to satisfy the 133 1/3% rule for the plan year even though no participant is actually accruing at the 1.5% rate because an individual who could be a participant and who has over 10 years of service would accrue at the 1.5% rate, which exceeds 133 1/3% of the 1.0% rate.

Section 1.411(b)-1(b)(2)(ii) provides that the fact that certain benefits under the plan may be payable to certain participants before normal retirement age is disregarded. Section 1.411(b)-1(b)(2)(ii) further provides that a plan does not satisfy the requirements of § 1.411(b)-1(b)(2) if the base for the computation of retirement benefits changes solely by reason of an increase in the number of years of participation.

Section 1.411(b)-1(b)(2)(iii) provides examples illustrating the 133 1/3% rule. One of these examples, Example (3), concludes that a plan fails to satisfy the 133 1/3% rule where the plan provides for an annual benefit commencing at age 65 equal to a percentage of a participant's highest 3 years of compensation equal to 2% for each of the first 5 years of participation, 1% for each of the next 5

years of participation, and 1.5% for each subsequent year of participation (even though the average rate of accrual in this case is not less rapid than ratable).

Section 1.411(b)-1(b)(3)(i) provides that a defined benefit plan satisfies the fractional rule if the accrued benefit to which any participant is entitled is not less than the fractional rule benefit multiplied by a fraction (not exceeding one) (A) the numerator of which is the participant's total number of years of participation in the plan, and (B) the denominator of which is the total number of years the participant would have participated in the plan if he or she separated from service at the normal retirement age under the plan.

Section 1.411(b)-1(b)(3)(ii) provides that the "fractional rule benefit" is the annual benefit commencing at normal retirement age under the plan to which a participant would be entitled if the participant continued to earn annually until normal retirement age the same rate of compensation upon which the participant's normal retirement benefit would be computed. The rate of compensation is computed on the basis of compensation taken into account under the plan (but taking into account average compensation for no more than the 10 years of service immediately preceding the determination). For purposes of the fractional rule benefit, the normal retirement benefit is determined as if the participant had attained normal retirement age on the date any such determination is made. Section 1.411(b)-1(b)(3)(ii) further provides that, for purposes of the fractional rule, for any plan year, Social Security benefits and all relevant factors used to compute benefits, e.g., consumer price index, are treated as remaining constant as of the beginning of the current plan year for all subsequent plan years.

Section 1.411(b)-1(b)(3)(iii) provides examples illustrating the fractional rule. One of these examples, Example (2), concludes that, in the case of a plan that provides a normal retirement benefit of 1% of average compensation multiplied by the number of years of plan participation completed by the participant, the plan fails to satisfy the fractional rule with respect to a participant whose annual compensation over an 11-year period varies from $17,000 up to $32,000. If the participant were to separate from service at the end of the period, the participant's annual benefit under the plan would be $2,530 commencing at age 65 (based on the 11 years of compensation), which is less than $2,561, which, taking into account only the last 10 years of compensation, is the minimum annual benefit under the fractional rule.

Notice 96-8, 1996-1 C.B. 359, states that benefits attributable to interest credits under a cash balance plan are in the nature of accrued benefits within the meaning of § 1.411(a)-7(a). Notice 96-8 further states that, in order for a plan's interest credits to satisfy the accrual rules of § 411(b)(1), the interest must be frontloaded. In order for interest to be frontloaded, the benefits attributable to future interest credits with respect to a hypothetical allocation accrue at the same time as the benefits attributable to the hypothetical allocation. Thus, in

determining the accrued benefit of a participant under a cash balance plan at any time prior to normal retirement age, the balance in the cash balance account must be projected with interest credits to normal retirement age.  (See, however, § 411(a)(13), as added by the Pension Protection Act of 2006, Public Law 109-280 (PPA '06), for special rules which apply to certain hybrid pension plans for purposes of the vesting and distribution rules of §§ 411(a)(2),  411(c), and 417(e), but which do not apply for purposes of the benefit accrual rules of § 411(b)(1)(A)-(C).)

Notice 2007-6, 2007-3 I.R.B. 272, states that, on September 15, 1999, the Service's Director, Employee Plans, issued a field directive (the 1999 Field Directive) requiring that open determination letter applications and examination cases that involved the conversion of a defined benefit plan formula into a benefit formula commonly known as a cash balance formula be submitted for technical advice with respect to the conversion's effect on the qualified status of the plan.  Notice 2007-6 further states that in Announcement 2003-1, 2003-1 C.B. 281, the Service announced that the cases that were the subject of the 1999 Field Directive would not be processed pending issuance of regulations addressing age discrimination.  Further, Notice 2007-6 states that the Service will resume processing the determination letter and examination cases that were the subject of the 1999 Field Directive and Announcement 2003-1.  Notice 2007-6 refers to these plans as "moratorium plans."

ANALYSIS

A plan satisfies the accrual rules of § 411(b)(1)(A), (B), and (C) if, for all participants, the accrued benefit of each participant satisfies one of the three alternative methods (the 3% method, the 133 1/3% rule, or the fractional rule).  In applying each of the three alternative methods to a participant (including, in the case of the 133 1/3% rule, anyone who could be a participant), § 1.411(b)-1(a)(1) requires that the benefits under all formulas applicable to the participant must be aggregated.  Therefore, even if one formula applicable to a participant by itself would produce a benefit that satisfies the 133 1/3% rule, and another formula by itself would produce a benefit that satisfies the fractional rule, the total benefit provided by the interaction of the two formulas must accrue in a manner that satisfies at least one of the three alternative methods.

If the benefits of all participants do not satisfy the same accrual rule, the plan is permitted to satisfy one of the accrual rules for some participants and another accrual rule for other participants, but only if the different classification of participants is not so structured as to evade the accrued benefit requirements of § 411(b)(1)(A), (B), and (C).  Pursuant to § 1.411(b)-1(a)(1), this determination of whether the different classification of participants is not so structured as to evade the accrued benefit requirements is made with consideration of which classification of participants is satisfying which of the three accrual rules.

Another consideration in this determination is whether the assignment of a participant to a classification will change merely because of the passage of time.

When determining the accrued benefit for purposes of whether a plan satisfies the accrued benefit requirements of § 411(b)(1)(A), (B), and (C), the accrued benefit as determined for purposes of § 411 is tested regardless of how the accrued benefit may be defined in the plan.  Thus, if the plan does not define the accrued benefit as an annual benefit commencing at normal retirement age, the annual benefit commencing at normal retirement age that is the actuarial equivalent of the accrued benefit under the plan is tested to determine whether the plan satisfies the accrued benefit requirements of § 411(b)(1)(A), (B), and (C).

Analysis of 133 1/3% Rule in General[1]

Under the 133 1/3% rule, the annual rate at which the retirement benefits payable at normal retirement age accrue under the plan (the annual rate of accrual) must be determined under the terms of the plan for anyone who is or could be a participant in the plan.  The annual rate of accrual with respect to a participant is determined for the current plan year and all future plan years.  Then the annual rate of accrual for any future plan year is compared to the annual rate of accrual for any year beginning on or after the current plan year, and before such future plan year, to see whether the ratio of the later annual rate of accrual to the earlier annual rate of accrual exceeds 133 1/3%.

Pursuant to § 1.411(b)-1(a)(1), the annual rate of accrual for a plan year is determined by aggregating all benefit formulas.   Furthermore, the value of all relevant factors used to determine benefits for the current plan year is kept constant in determining the annual rates of accrual for future years.  Thus, for example, for the plan year under consideration, which is 2002, the 3.87% interest crediting rate, the 5.48% applicable interest rate under § 417(e)(3), and the applicable mortality table under § 417(e)(3) are assumed to remain constant in determining the annual rate of accrual for each plan year after 2002.

If a plan has a single benefit formula, the annual rate of accrual for a plan year is generally determined as the increase in the accrued benefit under that benefit formula for the plan year.  If a plan has more than one benefit formula applicable to a participant, the annual rate of accrual for the participant for the plan year must be determined using a single methodology, such as the increase in the dollar amount of the accrued benefit or the increase in the dollar amount of the accrued benefit expressed as a percentage of compensation for the plan year.  Thus, the annual rate of accrual may be determined as the difference between (A) the dollar amount of the accrued benefit as a percentage of average

---

[1] Because the benefits provided by Plan A, both before and after the conversion, accrue over a period of years in excess of 33 1/3 years, Plan A fails to satisfy the 3% method.  Accordingly, the analysis starts with the 133 1/3% rule.

compensation at the beginning of the plan year and (B) the dollar amount of the accrued benefit as a percentage of average compensation at the end of the plan year.  In applying the 133 1/3% rule for a plan year, whichever methodology is used to determine the annual rate of accrual must be used consistently for all plan years (that is, the current plan year and all future plan years).

In applying the 133 1/3% rule, the analysis considers at least three groups of employees.  The three groups are (1) those who became employed after December 31, 2001 (who will accrue benefits solely under the lump sum-based benefit formula), (2) those who were not grandfathered participants but who were employed on December 31, 2001 (who will accrue some benefits under the lump sum-based benefit formula, but whose benefits were "frozen" under the pre-conversion formula), and (3) the grandfathered participants (who will accrue benefits for a time under both the pre-conversion formula and the lump sum-based benefit formula).

Analysis of the 133 1/3% Rule for New Employees

For the group of new employees, the annual rate of accrual for a plan year is most easily determined as the increase in the dollar amount of the accrued benefit payable at the age 65 normal retirement age for a plan year expressed as a percentage of compensation for the plan year.  Thus, for any year, the annual rate of accrual is determined by multiplying the compensation of a participant for the plan year by the percentage from the table of pay credit percentages set forth under the facts above, accumulating such result with hypothetical interest to age 65, converting the accumulation at age 65 to a single life annuity, and dividing the result by compensation for the year.   Accordingly, the annual rate of accrual for a year will depend on the pay credit for the year, future interest credits, and the conversion factor.   For purposes of applying the 133 1/3% rule to the plan, the interest crediting rate (the current year's value of the three-year Treasury Constant Maturity rate plus 25 basis points) and the conversion factor for future years (using the applicable interest rate and the applicable mortality table under § 417(e)(3) for 2002) are assumed to be the same as for the current plan year.

For 2002, the three-year Treasury Constant Maturity rate is 3.62% (which is the rate for December 2001), and the resulting hypothetical interest crediting rate is 3.87%.  For 2002, the 30-year Treasury rate is 5.48% (the rate for December 2001) and the applicable mortality table is the table set forth in Rev. Rul. 2001-62.  The following table shows the annual rates of accrual for each age assuming that these values for 2002 remain the same for future plan years:

| Age at Beginning of Plan Year | Annual Rate of Accrual |
| --- | --- |
| 21 | 1.41% |
| 22 | 1.35% |
| 23 | 1.30% |

| | |
|---|---|
| 24 | 1.26% |
| 25 | 1.21% |
| 26 | 1.55% |
| 27 | 1.49% |
| 28 | 1.44% |
| 29 | 1.38% |
| 30 | 1.33% |
| 31 | 1.28% |
| 32 | 1.24% |
| 33 | 1.19% |
| 34 | 1.15% |
| 35 | 1.10% |
| 36 | 1.06% |
| 37 | 1.02% |
| 38 | 0.98% |
| 39 | 0.95% |
| 40 | 0.91% |
| 41 | 1.10% |
| 42 | 1.06% |
| 43 | 1.02% |
| 44 | 0.98% |
| 45 | 0.94% |
| 46 | 0.91% |
| 47 | 0.87% |
| 48 | 0.84% |
| 49 | 0.81% |
| 50 | 0.78% |
| 51 | 0.90% |
| 52 | 0.87% |
| 53 | 0.84% |
| 54 | 0.80% |
| 55 | 0.77% |
| 56 | 0.75% |
| 57 | 0.72% |
| 58 | 0.69% |
| 59 | 0.66% |
| 60 | 0.64% |
| 61 | 0.72% |
| 62 | 0.69% |
| 63 | 0.67% |
| 64 | 0.64% |

As may be seen by inspection of the table, the annual rate of accrual for any later year is not more than 133 1/3% of the annual rate of accrual for any earlier year and, thus, the lump sum-based benefit formula standing alone satisfies the 133 1/3% rule. For example, in considering a participant who is age 21 in 2002, the

highest ratio of any future annual rate of accrual to any earlier rate is 128.1% (which is less than 133 1/3%). This occurs at age 26, where the ratio of 1.55% (which also happens to be the highest rate of accrual) to the 1.21% rate for age 25 (which is the smallest rate between ages 21 and 26) is 128.1%.

Analysis of the 133 1/3% Rule for Participants Who Are Not Grandfathered Participants

For participants who were employed on December 31, 2001, and who were not grandfathered participants, the accrued benefit under the pre-conversion formula does not increase after 2001, and the participants will only accrue benefits under the lump sum-based benefit formula. However, whether there is any increase in the accrued benefit of a participant will depend on the extent to which the new lump sum-based benefit formula provides a benefit that exceeds the benefit that had been accrued under the pre-conversion formula as of December 31, 2001. If, for a period of years, the lump sum-based benefit formula does not provide a greater benefit than the frozen accrued benefit under the pre-conversion formula as of December 31, 2001, then there is a period where the annual rate of accrual is zero. After that period, there will be a period of a positive annual rate of accrual as the lump sum-based benefit formula begins to provide a benefit that exceeds the frozen accrued benefit under the pre-conversion formula.

Ordinarily, a period of a zero annual rate of accrual followed by a period of positive annual rates of accrual would result in a plan failing to satisfy the 133 1/3% rule. However, because there is no ongoing accrual under the pre-conversion formula for these participants for service after the January 1, 2002 effective date of the conversion amendment, the lump sum-based benefit formula is the only formula under the plan (other than the § 411(d)(6) protected benefit), and, pursuant to the special rule of § 411(b)(1)(B)(i), that formula is treated as if it were in effect for all other plan years. Accordingly, the benefits under the lump sum-based benefit formula are the only benefits that need to be considered for purposes of applying the 133 1/3% rule (and the § 411(d)(6) protected benefit under the pre-conversion formula accrued through the date of conversion is disregarded in applying § 411(b)(1)(B)). As illustrated above, the lump sum-based benefit formula standing alone satisfies the 133 1/3% rule, and Plan A thus satisfies the rule for participants who are not grandfathered participants.

Analysis of the 133 1/3% Rule for Grandfathered Participants Age 61 and Above

For participants who are grandfathered participants, the pre-conversion formula continues for a period of four years after the effective date of the amendment and thus is not disregarded pursuant to the special rule of § 411(b)(1)(B)(i). For grandfathered participants who are age 61 or above on January 1, 2002, the pre-conversion formula continues at least through normal retirement age (age 65), and, based upon calculations using the 3.87% crediting rate and the applicable interest rate and applicable mortality table, such participants have an annual rate

of accrual of 1.1%, the rate of accrual under the pre-conversion formula (because the lump sum-based benefit formula never provides a higher benefit). Thus, the annual rate of accrual through normal retirement age will continue to be 1.1% of highest average compensation, and the plan satisfies the 133 1/3% rule with respect to those participants.

Analysis of the 133 1/3% Rule for Grandfathered Participants Below Age 61 Who Do Not Accrue Additional Benefits Under the Lump Sum-Based Benefit Formula Before Normal Retirement Age

For grandfathered participants who are at least age 50 and not yet age 61 on January 1, 2002, the pre-conversion formula provides a greater benefit for the next four years after the amendment (assuming, as required under § 411(b)(1)(B)(iv), that the relevant factors used to compute benefits as of 2002 are held constant in the future). Thereafter, the accrued benefit under the pre-conversion formula does not increase, and the participants will only accrue benefits under the lump sum-based benefit formula. However, whether there is any increase in the accrued benefit of a participant after 2005 and before normal retirement age will depend on the extent to which the new lump sum-based benefit formula provides a benefit that exceeds the benefit that had been accrued as of December 31, 2005. If there is a period of time after December 31, 2005 when the benefit under the pre-conversion formula (taking into account service at least through December 31, 2005) remains larger than the benefit under the lump sum-based formula, then there will be a period of zero annual rates of accrual. Assuming that the relevant factors in effect for the 2002 plan year remain the same for all future plan years, for grandfathered participants who are at least age 55 and not yet age 61 on January 1, 2002, the period of zero annual rates of accrual extends at least through the age 65 normal retirement age, because the benefit payable at age 65 under the plan will be the accrued benefit under the pre-conversion formula as of December 31, 2005. Because the annual rate of accrual for these participants changes from 1.1% to zero, and then does not increase prior to normal retirement age, Plan A satisfies the 133 1/3% rule with respect to these participants for 2002.

Analysis of the 133 1/3% Rule for Grandfathered Participants Below Age 61 Who Do Accrue Additional Benefits Under the Lump Sum-Based Benefit Formula Before Normal Retirement Age (Age 50 to 55)

For grandfathered participants who are at least age 50 and not yet age 55 on January 1, 2002, assuming as required under § 411(b)(1)(B)(iv) that the relevant factors used to compute benefits as of 2002 remain constant in the future, the period of zero accruals after 2005 will be followed by a period of annual rates of accrual prior to normal retirement age greater than zero. In such a case, the later annual rate of accrual which is greater than zero will exceed 133 1/3% of the zero annual rate of accrual, and thus Plan A does not satisfy the 133 1/3% rule with respect to these participants for 2002.

The effect on grandfathered participants who are at least age 50 and not yet age 55 on January 1, 2002, may be illustrated by a participant who commenced participation at age 35 with compensation of $40,000.  Assume that the participant's compensation increased at the rate of 3% per year in the years before 2002.  The participant on December 31, 2001, was age 50, had 15 years of service, and had highest average compensation of $58,758.  Accordingly, the participant's accrued benefit at that date is $9,695 per year (1.1% of $58,758 multiplied by 15 years of service) payable at normal retirement age.  At age 54, 4 years after the conversion, assuming the participant's compensation remains constant at the 2001 level, the participant would have an accrued benefit under the pre-conversion formula of $12,645 per year (1.1% of $60,504 multiplied by 19 years of service) payable at normal retirement age.  The opening account balance at January 1, 2002, is $49,352.  Taking into account expected hypothetical contributions to the account in accordance with the table of pay credit percentages above, and assuming that the hypothetical account is credited with interest at 3.87%, the cash balance account would provide a benefit of less than $12,645 for the first 9 plan years after conversion.  Therefore, there would be a period of approximately 5 plan years (after the 4-year period of continued accruals under the pre-conversion formula) for which the participant has no increase in his or her accrued benefit (i.e., effectively an annual rate of accrual of zero).  In approximately the 10th plan year after the conversion, the participant would have a small annual rate of accrual and the participant would have a relatively larger annual rate of accrual in the remaining 5 plan years until age 65.

Thus, there are some grandfathered participants who are at least age 50 and not yet age 55 with respect to whom Plan A fails to satisfy the 133 1/3% rule for 2002.   Accordingly, Plan A cannot satisfy the accrual rules unless it can satisfy the accrual rules through the use of the fractional rule.  While the fractional rule cannot effectively be used on a permanent basis for Plan A (for the reasons discussed below), the post-conversion transitional accruals under the pre-conversion formula result in a pattern of accrued benefits that may satisfy the fractional rule on a temporary basis for the grandfathered participants who are at least age 50 and not yet age 55 on January 1, 2002.  Therefore, Plan A may be able to satisfy the accrual rules using the fractional rule for these participants, and the 133 1/3% rule for the other participants.

Analysis of Fractional Rule for Grandfathered Participants Age 50 to 55

In order to apply the fractional rule to the grandfathered participants in Plan A who do not satisfy the 133 1/3% rule, the fractional rule benefit must be determined for each such participant.  This benefit is determined under the terms of the plan by assuming that participation continues to normal retirement age, and that all relevant factors used to determine benefits are kept constant as of the current year for all years after the current year. The fractional rule benefit for a participant is also determined by reflecting all of the participant's prior

compensation and years of participation, and assuming that the participant continues to earn the same rate of compensation in future years that is taken into account under the plan, but taking into account no more than 10 years of compensation.  For this purpose, the number of years of compensation that would be taken into account under the plan, pursuant to § 411(b)(1)(C) and § 1.411(b)-1(b)(3)(ii)(A), is determined as if the participant had attained normal retirement age on the date the determination is made.

The fractional rule benefit, as so determined, is multiplied by a fraction, the numerator of which is the number of years of participation at each future point, and the denominator of which is the number of years of participation the participant will have if participation continues through normal retirement age.  If, for the current plan year and each future plan year, the accrued benefit under the plan equals or exceeds the result obtained by multiplying the fractional rule benefit by the applicable fraction for that year, the plan satisfies the fractional rule with respect to that participant for the current plan year.

For grandfathered participants who are at least age 50 and not yet 55 on January 1, 2002, the fractional rule benefit is the greater of the benefit that is projected to be provided by the pre-conversion benefit formula and the benefit that will be provided by the hypothetical account of each participant, based upon the participation and compensation history of the participant.  In determining the benefit that will be provided by the hypothetical account, future pay credits are determined by assuming that compensation for each future year is equal to the average of the compensation taken into account under the plan for the immediately preceding 10 years of participation (or for all years of participation for employees with less than 10 years of participation).

The fractional rule benefit for a participant may be determined at a date as illustrated by the following steps:

(1)  Assuming that the participant had no additional service, participation, or compensation after the date of determination, determine which benefit formula would provide the benefit payable at normal retirement age under the plan (based on all other relevant factors on such date).

(2)  For the formula determined in step (1), determine the number of years of service for which compensation is taken into account under that formula as of the determination date.  For this purpose, where the lump sum-based benefit formula is the formula in step (1) and the plan provided for the establishment of an opening account balance equal to the present value of the accrued benefit determined under the pre-conversion formula, the number of years of service is the number of years of service taken into account in determining that balance, plus one year for each year since the initial account balance was determined.

(3)  Determine the participant's average compensation as of the determination date for the immediately 10 preceding years or, if less, the number of years determined in step (2).

(4)  Assume that the participant's compensation for each future year of participation until attainment of normal retirement age is the average compensation determined in step (3).

(5)  Determine the participant's fractional rule benefit as the benefit that would be payable upon attainment of normal retirement age under the plan by applying the plan formulas based on future participation using the compensation determined under step (4) and based on the assumption that all other relevant factors remain constant through normal retirement age at the values for the date on which the determination is being made.

Under these facts, where the pattern of accruals results from a transition from a final average pay formula that satisfies the fractional rule to an accumulation formula that satisfies the 133 1/3% rule by providing the greater of the benefit under the final average pay formula or the benefit under the lump sum-based benefit formula during the transition period, the classification of participants between at least age 50 and not yet age 55 on January 1, 2002 (including the use of the fractional rule with respect to such participants) is not a classification that is structured to evade the accrued benefit requirements of § 411(b)(1)(A), (B), and (C) or § 1.411(b)-1.  Accordingly, the grandfathered participants in Plan A whose annual rate of accrual fails the 133 1/3% rule may pass the accrual rules of § 411(b)(1)(A), (B), and (C) by using the fractional rule.

To illustrate this, consider the grandfathered participant described above who commenced participation at age 35.  For the plan year under consideration, which is 2002, this participant had a projected benefit at the age 65 normal retirement age under the pre-conversion 1.1% formula (based on service through the end of the grandfathering period and using the compensation determined under Steps 1 through 4 above, which is $58,758) equal to $12,281.  The projected benefit from the hypothetical account balance at the age 65 normal retirement age (assuming the pay credit percentages under the table above and future compensation of $58,758, and that the 3.87% interest crediting rate, the 5.48% applicable rate, and the applicable mortality table remain the same for future years) is $13,999.  Therefore, the fractional rule benefit is $13,999.  As may be seen from the following table, the accrued benefit under the plan (the greater of the $12,281 benefit under the prior 1.1% formula and the benefit provided by the hypothetical account balance) is not less than the pro rata portion of the fractional rule benefit at the end of each future year. Accordingly, the benefit with respect to this participant satisfies the fractional rule for 2002.

| Age[2] | Fraction | Fraction times $13,999 | Accrued Benefit at End of Year Per Plan |
|---|---|---|---|
| 51 | 16/30 | $7,466 | $10,341 |
| 52 | 17/30 | $7,933 | $10,998 |
| 53 | 18/30 | $8,399 | $11,634 |
| 54 | 19/30 | $8,866 | $12,281 |
| 55 | 20/30 | $9,333 | $12,281 |
| 56 | 21/30 | $9,799 | $12,281 |
| 57 | 22/30 | $10,266 | $12,281 |
| 58 | 23/30 | $10,733 | $12,281 |
| 59 | 24/30 | $11,199 | $12,281 |
| 60 | 25/30 | $11,666 | $12,281 |
| 61 | 26/30 | $12,132 | $12,461 |
| 62 | 27/30 | $12,599 | $12,867 |
| 63 | 28/30 | $13,066 | $13,259 |
| 64 | 29/30 | $13,532 | $13,636 |
| 65 | 30/30 | $13,999 | $13,999 |

Because the accrued benefit of this participant at any future point will not be less than the result obtained by multiplying the fractional rule benefit by the ratio of the number of years of participation to that point to the total number of years of participation the participant will have at normal retirement age, Plan A satisfies the fractional rule for this participant for 2002.

If Plan A can make a similar demonstration for all grandfathered participants at least age 50 and not yet age 55 on January 1, 2002, then Plan A can satisfy the fractional rule for these participants and the 133 1/3% rule for all other participants.  Under the facts presented, it is expected that such a demonstration will show that, for 2002, the fractional rule is satisfied for all participants whose accrual patterns were unable to satisfy the 133 1/3% rule.[3]

HOLDING

Plan A satisfies the 133 1/3% rule of § 411(b)(1)(B) for 2002 for all participants except the grandfathered participants who are at least age 50, but not yet age 55, on January 1, 2002.  Under the above facts, the class of grandfathered participants who are at least age 50, but not yet age 55, on January 1, 2002, is not a classification that is structured to evade the accrued benefit requirements of

---

[2] Age at the end of the plan year.
[3] It is similarly likely that a demonstration will show that, for 2002, the fractional rule is satisfied for all grandfathered participants age 55 or above on January 1, 2002.  Also, the use of the fractional rule with respect to all such participants is not a classification that is so structured as to evade the accrued benefit requirements of § 411(b)(1)(A), (B), and (C) and § 1.411(b)-1.

§ 411(b)(1)(A), (B), and (C) and § 1.411(b)-1 so that the fractional rule may be used for these participants. With respect to the grandfathered participants who are at least age 50, but not yet age 55, on January 1, 2002, if the accrued benefits of these participants satisfy the fractional rule of § 411(b)(1)(C) as set forth in this revenue ruling, Plan A satisfies the accrual rules of § 411(b)(1)(A), (B), and (C) for 2002.

Satisfaction of Accrual Rules in Future Years

The analysis and holding in this revenue ruling only address the 2002 plan year. It is possible for a plan described in the facts of this revenue ruling to fail to satisfy the accrual rules of § 411(b)(1)(A), (B), and (C) for a subsequent year, either due to changes in relevant factors that are treated as constant for any given year or due to changes in facts relating to plan participants. For example, in the facts addressed in this revenue ruling, whether the pattern of increasing pay credits results in an annual rate of accrual which is more than 133 1/3% of the annual rate of accrual for any earlier year is affected by the rate of interest that is credited under the plan (which is treated as constant for all future years for purposes of applying the accrual rules of § 411(b)(1)(A), (B), and (C) to any year). In the year 2002, that interest rate is 3.87%. If the rate of interest credited under the plan for a later year were to be less than 1.58%, Plan A would not satisfy the 133 1/3% rule for that later year for participants who are not grandfathered participants and thus would need to be amended in order to satisfy the 133 1/3% rule.

As another example, if the grandfathered participant described above who did not satisfy the 133 1/3% rule were to continue to have compensation increases in years after 2002 at an annual 3% rate, then by 2013 the fractional rule benefit would be so large that the aggregate accrued benefit of the participant for that year would be less than the result obtained by multiplying that larger fractional rule benefit by the applicable fraction (the number of years of participation to that time to the total number of years of participation the participant will have at normal retirement age). Accordingly, even compensation increases that are regular and predictable can result in Plan A failing to satisfy the fractional rule for the grandfathered participants. Moreover, the possible volatility resulting from unpredictable future compensation increases is a major reason why the fractional rule cannot effectively be used on a permanent basis for plans such as Plan A.

If changes to relevant factors such as a decrease in the interest crediting rate or an increase in future compensation were to result in a failure to satisfy the accrual rules, the plan's benefit formula would need to change. Some of the types of changes that may be used are outlined below with respect to Plan A. Any change would need to satisfy applicable qualification requirements, including satisfaction of the anticutback rules of § 411(d)(6) and the requirement that a plan provide benefits that are definitely determinable.

In order to bring the plan into compliance in the event of a decrease in the interest crediting rate, Plan A's benefit formula could be changed to increase the hypothetical pay credits at the earlier ages, reduce the hypothetical pay credits at the higher ages, or a combination of an increase at the lower ages and a reduction at the higher ages. The resulting pattern of pay credits would have to be less steep than before in order for the 133 1/3% rule to be satisfied using the lower interest crediting rate. Plan A could also provide an interest crediting rate higher than 1.58% for that year and all future years for participants for whom the 133 1/3% rule is not satisfied, but any such minimum rate could not result in a rate of interest which exceeds a market rate of interest under § 411(b)(5)(B)(i)(I), as added to the Code by PPA '06.

It may be possible that Plan A could be changed to adjust the hypothetical pay credits to ensure compliance with the accrual rules of § 411(b)(1)(A), (B), and (C) for future years. Such a provision would need to provide that if the interest crediting rate at the beginning of any plan year is less than 1.58%, the hypothetical pay credits are adjusted so that the resulting pattern of pay credits satisfies the 133 1/3% rule using the interest crediting rate for the year. Any such possible provision would need to include specific rules on how the adjustment is made, which would typically be dependent on the extent to which the interest crediting rate is less than 1.58%. Furthermore, the provision would need to be clear as to what happens in future years should the interest crediting rate again change. Note that it may be difficult to design such provisions and, furthermore, difficult to put them into effect in actual plan operations on a timely basis.

With respect to the possibility that compensation increases for any future year may result in a plan failing to satisfy the fractional rule for that year, provisions would be necessary either to ensure that the plan could instead satisfy the 133 1/3% rule for that year (as described in the preceding two paragraphs) or to provide a combination of increases in the accrued benefit for earlier years or decreases in the accruals for future years (but § 411(d)(6) would not permit decreases for service before the applicable amendment date) in order to satisfy the fractional rule for that year. However, unlike the discussion above concerning interest crediting rates, it is not clear how a provision to alter accrual rates or accrued benefits could be implemented annually by a plan provision in the absence of relevant participant information such as the compensation history through the plan year. It may be possible to limit the compensation taken into account for any participant by providing that only compensation increases up to some specified percentage are taken into account. However, any such provision would be difficult to design and extremely difficult to put into effect in actual plan operations on a timely basis.

Section 7805(b) Relief

Under the authority of § 7805(b), this paragraph provides relief for plans under which a group of employees specified under the plan receives a benefit equal to

the greatest of the benefits provided under two or more formulas (an applicable "greater-of" benefit), provided that each such formula standing alone would satisfy an accrual rule of § 411(b)(1)(A), (B), or (C) for the years involved.  This relief applies to a plan only if either:  (1) as of February 19, 2008, the plan provisions under which the applicable "greater-of" benefit is provided have been the subject of a favorable determination letter;  (2) as of February 19, 2008, a remedial amendment period under § 401(b) for the plan provisions under which the applicable "greater-of" benefit is provided has not expired; or (3) the plan is otherwise a "moratorium plan" as defined in Notice 2007-6. Under the relief set forth in this paragraph, for plan years beginning before January 1, 2009, the Service will not treat a plan described in the preceding sentence as failing to satisfy the accrual rules of § 411(b)(1)(A), (B), and (C) solely because the plan provides an applicable "greater-of" benefit, where the separate formulas, standing alone, would satisfy an accrual rule of § 411(b)(1)(A), (B), and (C).  For this purpose, a plan described in (2) that provides a group of employees specified under the plan an applicable "greater-of" benefit can be retroactively amended[4] so that each formula, standing alone, would satisfy an accrual rule of § 411(b)(1)(A), (B), and (C) for the years involved.  For example, a moratorium plan that has a determination letter request pending under which the lump-sum based benefit formula standing alone fails to satisfy the accrual rules of § 411(b)(1)(A), (B), and (C) for a plan year beginning before January 1, 2009 (because the interest credits under the plan are insufficient to compensate for the effect of age-based or service-based pay credits) can be retroactively amended so that the lump-sum based benefit formula satisfies an accrual rule of § 411(b)(1)(A), (B), and (C) for the years involved.

The relief under the prior paragraph does not extend to other issues under § 411. Accordingly, before a favorable determination letter can be issued, the plan must otherwise satisfy the requirements of § 411.[5]  Thus, for example, in order to avoid a forfeiture of the accrued benefit under the plan for purposes of § 411, or to ensure compliance with the accrual rules of § 411(b)(1)(A), (B), and (C), the annual benefit payable at normal retirement age attributable to the lump sum-based benefit formula at the end of the current year must not change thereafter, assuming that no change were to occur in any relevant factor used to determine benefits and disregarding any future pay credits (e.g., under the plan, the annual benefit payable at normal retirement age attributable to the lump sum-based benefit formula as of the end of a year cannot increase or decrease after that year due merely to operation of the plan and the passage of time, as opposed to additional pay credits or changes in a relevant factor used to determine benefits).

DRAFTING INFORMATION

---

[4] Any such amendment must satisfy the anticutback rules of § 411(d)(6).

[5] As provided by Notice 2007-6, issues as to whether the conversion satisfies the requirements of § 411(b)(1)(H) will generally not be considered for plans where the conversion is before June 30, 2005.

The principal author of this revenue ruling is James E. Holland, Jr. of the Employee Plans, Tax Exempt and Government Entities Division.  Mr. Holland may be reached by e-mail at RetirementPlanQuestions@irs.gov.