# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JANICE C. AMARA,                    :
GISELA R. BRODERICK,                :
ANNETTE S. GLANZ,                   :
individually and on behalf          :
of all others similarly situated,   :
                                    :
            Plaintiffs,             :
                                    :
    vs.                             :     Civil No. 3:01-CV-2361 (MRK)
                                    :
CIGNA Corp. and                     :
CIGNA Pension Plan,                 :
                                    :
            Defendants.   :

# PLAINTIFFS' MEMORANDUM ON RELIEF

Stephen R. Bruce Ct23534
Allison C. Caalim
805 15th St., NW, Suite 210
Washington, DC 20005
(202) 371-8013

Thomas G. Moukawsher Ct08940
Moukawsher & Walsh, LLC
21 Oak St.
Hartford, CT 06106
(860) 278-7000

Attorneys for Named Plaintiffs and
Plaintiff Class

## **Table of Contents**

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   Under ERISA §502(a)(3), Complete Relief, Including Past Due Benefits, Can Be Provided to the Members of the Class Consistent With Great-West and Varity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   A.   Great-West Holds that Appropriate Equitable Relief Does Not Include "Personal Liability" for a "Contractual Obligation" to Reimburse Money, But It Recognizes that Equitable Relief Includes Orders to Recalculate Benefits to Remedy Statutory Violations . . . . 8

   B.   The Equitable Relief Affirmed in Varity for Disclosure Violations Was Not Diminished by Great-West. . . . . . . . . . . . . . . . . . . . . . . . . 12

   C.   Requiring Retirement Benefits to Be Paid in the Future to "Undo" Statutory Violations Is "Specific" or Injunctive Relief. . . . . . . . . . . 14

   D.   Like Back Pay under Title VII, Past Due Benefits Are an "Integral Part of an Equitable Remedy"; Past Due Benefits Can Also Be Recovered Through Equitable Restitution of CIGNA's Unjust Cost Savings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

II.  Frommert Shows that Past Due Benefits for Statutory Violations Can Alternatively Be Recovered Under §502(a)(1)(B) . . . . . . . . . . . . . . . . . . 21

III. The Relief Which Plaintiffs Seek Is "Appropriate" Because It Protects Participants from CIGNA's Disclosure Violations and Deters Future Violations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

IV.  Plaintiffs' Relief Proposal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

   A.   Declaratory and Injunctive Relief to Require Disclosure of the Full Impact of the Cash Balance Changes . . . . . . . . . . . . . . . . . . . . 30

B.    Continue the Prior Formulas Until Notice of Reductions Is Provided to Remedy the Violation of the ERISA §204(h) Notice Rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

C.    Protect the "Full Value" of Prior Benefits, Prohibit Undisclosed Wear-Aways, and Provide "At Least Roughly Equivalent" Future Benefits to Redress the SMM/SPD Violations. . . . . . . . . . . . . . . 34

D.    Order Annuities with Equitable Setoffs of Lump Sums to Cure the Relative Value Violations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

E.    Other Relief Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

F.    Attorneys' Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

V.    CIGNA's Anticipated Counter-Proposals on <u>Great-West</u>, the Costs of Remedies, Retroactive Relief, "Cashed Out" Participants, and Relative Value Elections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Amato v. Western Union Int'l, Inc.*, 773 F.2d 1402 (2d Cir. 1985) .............. 1

*In re AOL Time Warner ERISA Litig.*, 2007 WL 3145111 (S.D.N.Y. 2007) ................................................................................. 45

*Beck v. Levering*, 947  F.2d 639 (2d Cir. 1991), *cert. denied*, 112 S.Ct. 1937 (1992) ........................................................................... 43

*Bennett v. Manufacturers & Traders*, 2005 WL 2896962 (N.D.N.Y. 2005) 37

*Bowen v. Massachusetts*, 487 U.S. 879 (1988) ...................... 8, 10, 15-16, 18

*Bridges v. American Electric Power Co.*, 498 F.3d 442 (6th Cir. 2007) .... 50

*Broga v. Northeast Utilities*, 315 F. Supp. 2d 212 (D.Conn. 2004) ........... 17

*Burke v. Kodak*, 336 F.3d 103 (2d Cir. 2003) ................................... 5, 27, 37

*Burke v. Kodak*, C.A. 00-6596 (W.D.N.Y. 2004) ....................................... 40

*Burton v. City of Belle Glade*, 966 F. Supp. 1178 (S.D. Fl. 1997) ............. 39

*Carrabba v. Randalls Food Markets*, 145 F. Supp. 2d 763 (N.D. Tex. 2000) ................................................................................. 48

*Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739 (2004) ........... 1, 49

*Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care*, 433 F.3d 181 (2d Cir. 2005) ............. 16

*Central States Southeast & Southwest Areas Health and  Welfare Fund v. Merck-Medco Managed Care*, 504 F.3d 229 (2d Cir. 2007) ............. 45

*In re Citigroup Pension Plan ERISA Litigation*, 241 F.R.D. 172 (S.D.N.Y. 2006) .............................................................. 16-17

*In re Citigroup Pension Plan ERISA Litigation*, 470 F. Supp. 2d 323 (S.D.N.Y. 2006) ...................................................................... 4, 32

*Clark v. Wooster*, 119 U.S. 322 (1886) ....................................... 19

*Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006) ............................ 4

*Cobell v. Norton*, 283 F. Supp. 2d 66 (D.D.C. 2003) ............................... 44

*Crocco v. Xerox*, 137 F.3d 105 (2d Cir. 1998) ........................... 16

*Crosby v. Bowater Inc. Retirement Plan*, 382 F.3d 587 (6th Cir. 2004) ..... 23

*Curtiss-Wright v. Schoonejongen*, 514 U.S. 73 (1993) .............................. 36

*Dittmann v. Dyno Nobel*, 1998 WL 865603 (N.D.N.Y. 1998) ................... 24

*Dobson v. Hartford Life & Accident Ins. Co.*, 389 F.3d 386 (2d Cir. 2004) 44

*Dobson v. Hartford Life & Accident Ins. Co.*, 518 F. Supp. 2d 365 (D. Conn. 2007) ...................................................................... 44

*Dunnigan v. Metropolitan Life Ins. Co.*, 277 F.3d 223 (2d Cir. 2002) . 20, 44

*Esden v. Bank of Boston*, 229 F.3d 154 (2d Cir. 2000) .............................. 22

*Flight Attendants v. Zipes*, 491 U.S. 754 (1989) ............................................ 5

*Florin v. Nationsbank*, 34 F.3d 560 (7th Cir. 1994) ................................... 46

*Forbush v. J.C. Penney Pension Plan*, C.A. 90-2719 (N.D. Tex.) .............. 46

*Franklin v. Thornton*, 983 F.2d 939 (9th Cir. 1993) .................................. 38

*Frommert v. Conkright*, 433 F.3d 254 (2d Cir. 2006) ......................... *passim*

*Frommert v. Conkright*, 472 F. Supp. 2d 452 (W.D.N.Y. 2007) ............... 48

*FTC v. Verity Int'l*, 443 F.3d 48 (2d Cir. 2006) ......................................... 21

iv

*Gediman v. Anheuser-Busch*, 299 F.2d 537 (2d Cir. 1962) ....................... 40

*Gilley v. Monsanto*, 490 F.3d 848 (11th Cir. 2007) .................................... 16

*Goldberger v. Integrated Resource Inc.*, 209 F.3d 43 (2d Cir. 2000) ......... 46

*Graden v. Conexant Systems*, 496 F.3d 291 (3d Cir. 2007) ....................... 11

*Greater Blouse, Skirt & Undergarment Ass'n, Inc. v. Morris*, 1996
    WL 325595 (S.D.N.Y. 1996) .................................................. 24

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002)  *passim*

*Hall v. LHACO, Inc.*, 140 F.3d 1190 (8th Cir. 1998) ................................ 25

*Harper v. Virginia Department of Taxation*, 509 U.S. 86 (1993) .............. 49

*Harzewski v. Guidant*, 489 F.3d 799 (7th Cir. 2007) ............................ 49-50

*Hecht Co. v. Bowles*, 321 U.S. 321 (1944) .................................................. 6

*Heidgerd v. Olin Corp.*, 906 F.2d 903 (2d Cir. 1990) .................................... 5

*Herman v. So. Carolina National Bank*, 140 F.3d 1413 (11th Cir. 1998) .. 26

*Ingersoll Rand Co. v. McClendon*, 498 U.S. 133 (1990) ........................... 25

*Johnson v. Georgia Highway Express*, 417 F.2d 1122 (5th Cir. 1969) ...... 19

*Katsaros v. Cody*, 744 F.2d 270 (2d Cir. 1984) ..................................... 4, 43

*LaRue v. DeWolff, Boberg, and Assocs.*, 552 U.S. --, 2008 WL 440748
    (Feb. 20, 2008) .................................................................. 12

*Layaou v. Xerox Corp.*, 238 F.3d 205 (2d Cir. 2001) ............................ 5, 22

*Layaou v. Xerox Corp.*, 330 F. Supp. 2d 297 (W.D.N.Y. 2004) ................ 22

*Leckey v. Stefano*, 263 F.3d 267 (3d Cir. 2007) ......................................... 38

*Lorillard v. Pons*, 434 U.S. 575 (1978) ........................................................ 7

*In re Marsh ERISA Litig.*, 2006 WL 3706169 (S.D.N.Y. 2006) ................. 11

*Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) ......... 11

*Mathews v. Chevron Corp.*, 362 F.3d 1172 (9th Cir. 2004) ....................... 10

*Mertens v. Hewitt Associates*, 508 U.S. 248 (1993) ............................. 6-7, 19

*Mitchell v. Robert De Mario Jewelry*, 361 U.S. 288 (1960) ...................... 5-6

*Modern Settings, Inc. v. Prudential-Bache Secur., Inc.*, 936 F.2d 640
    (2d Cir. 1991) ................................................................................. 37

*Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435 (2d Cir. 2006) . 46

*Page/Collins v. PBGC*, No. 88-3406 (D.D.C.) ..................................... 43, 46

*Pease v. Rathbun-Jones Engineering Co.*, 243 U.S. 273 (1917) ............... 19

*Peralta v. Hispanic Business, Inc.*, 419 F.3d 1064 (9th Cir. 2005) ........... 27

*Pereira v. Farace*, 413 F.3d 330 (2d Cir. 2005) ................................... 4, 20

*Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41 (1987) ....................... 1-2

*Porter v. Warner Holding Co.*, 328 U.S. 395 (1946) ......................... 3, 6, 19

*Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749 (1995) ............................ 49

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (E.D.N.Y. 1997) ..................... 45

*Robinson v. Lorillard Corp.*, 444 F.2d 791 (4th Cir. 1971) ........................ 8

*Sereboff v. Mid Atlantic Medical Services*, 547 U.S. 356 (2006) ........... 9-10

*Sheppard v. Consolidated Edison Co.*, 2002 WL 2003206 (E.D.N.Y.
    2002) ................................................................................................. 45

*Strom v. Goldman, Sachs & Co.*, 202 F.3d 138 (2d Cir. 1999) ................... 4

*Sullivan v. LTV Aerospace & Defense Co.*, 82 F.3d 1251 (2d Cir. 1996) ..... 8

*Swede v. Rochester Carpenters Pension Fund*, 467 F.3d 216 (2d Cir. 2006) ............................................................................ 48-49

*Taylor v. United Technologies*, 2007 WL 2302284 (D.Conn. 2007) .......... 51

*Varity Corp. v. Howe*, 516 U.S. 489 (1996) ........................... 2, 13-14, 26-27

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) . 45, 47

*West v. AK Steel*, 484 F.3d 395 (6th Cir. 2007) .................................... 22-23

*Whitlock v. Hause*, 694 F.2d 861 (1st Cir. 1982) ........................................ 19

*Wickham Contracting Co. v. Local Union 3, IBEW*, 955 F.2d 831 (2d Cir.), *cert. denied*, 506 U.S. 946 (1992) ........................................................ 44

## FEDERAL STATUTES, REGULATIONS AND LEGISLATIVE HISTORY

ERISA §2, 29 U.S.C. §1001 .......................................................................... 1

ERISA §203(e), 29 U.S.C. §1053(e) ............................................................ 38

ERISA §204(b)(5)(B)(ii), 29 U.S.C. §1054(b)(5)(B)(ii) ............................. 31

ERISA §204(h), 29 U.S.C. §1054(h) .................................................... *passim*

ERISA §205(a)(1), 29 U.S.C. §1055(a)(1) ................................................. 38

ERISA §205(c), 29 U.S.C. §1055(c) ........................................................... 38

ERISA §205(g), 29 U.S.C. §1055(g) ..................................................... 38, 40

ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) ............................... *passim*

ERISA §502(a)(2), 29 U.S.C. §1132(a)(2) ........................................... 12, 50

ERISA §502(a)(3), 29 U.S.C. §1132(a)(3) ......................................... *passim*

IRC §417(e), 26 U.S.C. §417(e) ................................................... 38

Treas. Reg. 1.401(a)-20 ............................................................ 38

Treas. Reg. 1.411(a)-11(c)(2)(i) ............................................... 4, 38

Treas. Reg. 1.417(a)(3)-1 .......................................................... 31

Treas. Reg. 1.417(e)-1(b) ....................................................... 4, 38

Treas. Reg. 54.4980F-1 ............................................................ 30

65 Fed. Reg. 70227 (Nov. 21, 2000) ............................................ 31

P.L. 107-16, §659 ..................................................................... 33

P.L. 109-80, §701(a) ................................................................. 31

S.Rep. No. 93-127, 1974 U.S.C.C.A.N. 4838 ................................. 2, 25- 26

H. Conf. Rep. 101-386, 1989 U.S.C.C.A.N. 3018 ................................... 26

## MISCELLANEOUS

Dobbs, *Law of Remedies* (2d ed.) ................................................ 2, 19, 21, 47

John Langbein*, What ERISA Means By "Equitable": The Supreme Court's
    Trail of Error in Russell, Mertens, and Great-West,* 103 Colum. L. Rev.
    1317, 1336 (Oct. 2003) ....................................................... 26

*Manual for Complex Litigation (Fourth)* ............................................. 28, 39

*Restatement (2d) of Trusts* ......................................................... 5-7

**Introduction**

ERISA §502(a)(3) authorizes the Court to enjoin the enforcement of undisclosed benefit reductions in the CIGNA Pension Plan and to provide other appropriate equitable relief to the extent the undisclosed provisions were the subject of misleading representations by CIGNA. ERISA §502(a)(1)(B) also authorizes the Court to order that past due benefits be paid in accordance with the lawful and properly disclosed plan provisions.

Ordering that benefits be provided to employees and their families to redress statutory violations is an inescapable necessity for a statute entitled the "Employee Retirement Income Security Act" whose basic purpose is to protect "the interests of participants in employee benefit plans and their beneficiaries." ERISA §2."There is no doubt about the centrality of ERISA's object of protecting employees' justified expectations of receiving the benefits their employers promise them." Central Laborers' Pension Fund v. Heinz, 541 U.S. 739, 743 (2004).  ERISA was "enacted for the purpose of assuring employees that they would not be deprived of their reasonably anticipated pension benefits." Amato v. Western Union Int'l, Inc., 773 F.2d 1402 (2d Cir. 1985).

The causes of action in ERISA Section 502(a) provide "essential tools for accomplishing the stated purposes of ERISA."  Pilot Life Ins. Co. v. Dedeaux, 481

U.S. 41, 52-53 (1987). Congress "specifically" designed ERISA's enforcement provisions "to provide...participants and beneficiaries with broad remedies for redressing or preventing violations." S. Rep. 93-127, at 35; 1974 U.S.C.C.A.N. 4838, 4871. "Relief may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits." <u>Dedeaux</u>, supra, 481 U.S. at 53.

If the contrary position was accepted, Congress would have enacted a series of pension reforms over a nearly 35-year period, while perversely leaving participants and their families with no meaningful remedies when those rules are broken. As the Supreme Court observed in <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 515 (1996), "We are not aware of any ERISA-related purpose that denial of a remedy would serve." If the position were to be accepted that "*all* available remedies" are to be denied, Dobbs recognizes that this would be "exactly equivalent to saying the plaintiff has no right at all." *Law of Remedies*, §2.4(7) (emph. in orig.).

Based on discussions with counsel, Plaintiffs anticipate nonetheless that CIGNA will contend that the statutory cause of action on which this Court primarily relies in the February 15, 2008 decision, ERISA §502(a)(3), forecloses all or almost all meaningful relief. As indicated above, the long-established and

2

well-settled legal principle is, however, that "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." Moreover, where the "equitable jurisdiction" of the court is "properly invoked," the court has "the power to decide all relevant matters in dispute and to award complete relief." Porter v. Warner Holding Co., 328 U.S. 395, 398-9 (1946) ("unless otherwise provided by statute" or "by a necessary and inescapable inference" "[t]he great principles of equity, securing complete justice, should not be yielded").

No relief or very limited relief for misleading disclosures is especially antithetical to ERISA §204(h) because Congress virtually built relief for disclosure violations into the law. As the primary illustration, ERISA §204(h), as in effect until June 7, 2001 provides that "[a] plan ... may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless ... not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date to each participant in the plan ...." The Second Circuit has already ruled that without the proper notice, the amendment that provides for a significant reduction is "ineffective." Frommert v. Conkright, 433 F.3d 254, 268 (2d Cir.

2006). Accord <u>In re Citigroup Pension Plan ERISA Litig.</u>, 470 F.Supp.2d 323, 340

(S.D.N.Y. 2006) ("the amendments never took legal effect").[1]

As discussed further below, Plaintiffs appreciate that the Court has

discretion in providing "appropriate" relief. But the breadth of that discretion is

defined by the statutory specifics, such as in Section 204(h) and by the statutory

purpose of protecting the reasonably-anticipated retirement income of participants

and their beneficiaries. See <u>Strom v. Goldman, Sachs & Co.</u>, 202 F.3d 138, 247

(2d Cir. 1999) (the "objective is to eliminate the direct economic effect of an

alleged violation of the statute" and thereby "serve Congress' purpose of affording

meaningful relief to benefit plan beneficiaries in circumstances such as these") [2];

<u>Katsaros v. Cody</u>, 744 F.2d 270, 281 (2d Cir. 1984) ("ERISA grants the court wide

discretion in fashioning equitable relief to protect the rights of pension fund

beneficiaries"). It is incontestable that disclosing important information about

retirement benefits to participants in an understandable manner and not misleading

---

[1] Similarly, the Treasury regulations on relative value disclosures build in
the conclusion that "No consent is valid" unless the required explanation is
provided. Treas. Reg. 1.411(a)-11(c)(2)(i) and 1.417(e)-1(b)(2)(i).

[2] <u>Pereira v. Farace</u>, 413 F.3d 330, 340 (2d Cir. 2005), and <u>Coan v. Kaufman</u>,
457 F.3d 250, 263-4 (2d Cir. 2006), both distinguish <u>Strom</u> on the ground that the
plaintiffs in <u>Pereira</u> and <u>Coan</u> were seeking money damages instead of equitable
relief.

4

them about their benefits are among ERISA's primary reforms. See <u>Heidgerd v.</u>
<u>Olin Corp.</u>, 906 F.2d 903, 907 (2d Cir. 1990); <u>Layaou v. Xerox</u>, 238 F.3d 205, 209
(2d Cir. 2001); <u>Burke v. Kodak</u>, 336 F.3d 103, 110 (2d Cir. 2003);  <u>Frommert</u>,
supra, 433 F.3d at 262. As the Supreme Court found in <u>Mitchell v. Robert De</u>
<u>Mario Jewelry</u>, 361 U.S. 288, 296 (1960), concerning the Fair Labor Standards
Act, "because of what we have found to be the statutory purposes, there is
doubtless little room for the exercise of discretion not to order reimbursement."[3]

I.    **Under ERISA §502(a)(3), Complete Relief, Including Past Due Benefits, Can Be Provided to the Members of the Class Consistent With <u>Great-West</u> and <u>Varity</u>.**

At common law, an order requiring a trustee to provide benefits in
compliance with the terms of a trust or with statutory requirements was equitable
relief.  Indeed, at common law, trust beneficiaries had no where else to turn for
remedies than courts of equity. Section 199 of the <u>Res. (2d) of Trusts</u> provides
under the heading "Equitable Remedies of Beneficiary": "The beneficiary of a
trust can maintain a suit (a) to compel the trustee to perform his duties as a trustee;
(b) to enjoin the trustee from committing a breach of trust; (c) to compel the
trustee to redress a breach of trust..." Under "Nature of Remedies of Beneficiary,"

---

[3] Accord <u>Flight Attendants v. Zipes</u>, 491 U.S. 754, 758-9 (1989) (finding
that discretion on "appropriate remedies" is guided by the "'large objectives' of
the relevant Act").

Section 197 of the Restatement provides that "[e]xcept as stated as Section 198, the remedies of the beneficiary against the trustee are exclusively equitable."[4]

Supreme Court decisions when "memories of the divided bench"[5] were less distant than today were to the same effect. In addition to the Supreme Court's decision in <u>Porter v. Warner Holding Co.</u>, supra, on the restitution of rents collected by an apartment owner in excess of emergency price controls, the Supreme Court held in <u>Mitchell v. Robert De Mario Jewelry</u>, supra, concerning the restoration of lost wages required to be paid by the FLSA, that:

> When Congress entrusts to an equity court the enforcement of prohibitions contained in a regulatory enactment, it must be taken to have acted cognizant of the historic power of equity to provide complete relief in light of the statutory purposes. As this Court long ago recognized, 'there is inherent in the Courts of Equity a jurisdiction ... to give effect to the policy of the legislature.'

361 U.S. at 291-92 (quoting and following 1839 Supreme Court decision).[6]

Accord <u>Hecht Co. v. Bowles</u>, 321 U.S. 321, 329 (1944) ("The essence of equity

---

[4] Section 198 provides: "If the trustee is under a duty to pay money immediately and unconditionally to the beneficiary, the beneficiary can maintain an action at law against the trustee to enforce payment."

[5] <u>Mertens v. Hewitt Associates</u>, 508 U.S. 248, 256 (1993).

[6] The dissent in <u>Mitchell</u> agreed with the majority that "It is not to be doubted that an equity court, proceeding under unrestricted general equity powers, may decree all the relief, including incidental legal relief, necessary to do complete justice between the parties." 361 U.S. at 299.

6

jurisdiction has been the power of the Chancellor to do equity and to mould each

decree to the necessities of the particular case"); <u>Res. (2d) of Trusts</u>, §205,

comment a (if "trustee commits a breach of trust, the beneficiary may have the

option of pursuing a remedy which will put him in the position in which he was

before the trustee committed the breach of trust ... or ... a remedy which will give

him any profit which the trustee has made by committing the breach ... or ... which

will put him in the position in which he would have been if the trustee had not

committed the breach of trust").

    Against this backdrop, Congress enacted ERISA §502(a)(3) authorizing the

Federal courts "to enjoin any act or practice which violates any provision of this

title or the terms of the plan or to obtain other appropriate equitable relief to

redress such violations or to enforce any provisions of this title or the terms of the

plan."  In interpreting statutory language like "appropriate equitable relief," it is

well-settled that the relevant precedents are those in effect "at the time" of the

enactment. See, e.g., <u>Lorillard v. Pons</u>, 434 U.S. 575, 582 (1978). Indeed, the

majority in <u>Mertens v. Hewitt Assoc.</u>, supra, criticizes the dissent for "projecting

current attitudes upon the helpless past" when the issue was "the state of the law"

"in 1974, when ERISA was enacted." 508 U.S. at 257 n.7. When ERISA was

enacted in 1974, the Supreme Court's view of the judiciary's authority to provide

7

equitable relief to redress violations of statutory requirements was expressed in

cases like <u>Mitchell</u> and <u>Porter</u> and Title VII cases like <u>Robinson v. Lorillard Corp.</u>,

444 F.2d 791, 802 (4th Cir. 1971) ("The back pay award is ... equitable- intended to

restore the recipients to their rightful economic status absent the effects of the

unlawful discrimination").[7]

      A.    **<u>Great-West</u> Holds that Appropriate Equitable Relief Does Not Include "Personal Liability" for a "Contractual Obligation" to Reimburse Money, But It Recognizes that Equitable Relief Includes Orders to Recalculate Benefits to Remedy Statutory Violations.**

    <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204 (2002),

unfortunately seems to sometimes be known more by gross characterization than

what the Court actually held. The Court's careful distinction between the

contractual relief which it denied and the equitable relief available under Title VII

and in <u>Bowen v. Massachusetts</u>, 487 U.S. 879 (1988), for statutory violations is

sometimes simply overlooked. This has sowed confusion even with respect to

basic remedies for statutory violations, but Plaintiffs respectfully submit that

<u>Great-West</u> presents no barrier to the relief sought here.

---

    [7] The Second Circuit has also determined that Congress intends for all of the relief available under ERISA §§502(a)(1)(B) and 502(a)(3) to be "equitable in nature" for purposes of deciding whether there is a right to a jury trial. <u>Sullivan v. LTV Aerospace & Defense Co.</u>, 82 F.3d 1251, 1257-9 (2d Cir. 1996).

In <u>Great-West</u>, the petitioners (the insurer and a plan) sued an employee's spouse under a plan's reimbursement provision to recover medical expenses paid to the spouse from proceeds she had received from a third-party tortfeasor. The Supreme Court held that such relief was not equitable because the petitioners sought "to impose personal liability on respondents for a contractual obligation to pay money" and "an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity." 534 U.S. at 210-211. The Court distinguished its prior ruling in <u>Bowen</u> on Medicare benefits as a case which sought "specific relief" to redress a violation of a federal statute: "<u>Bowen</u> ... did not deal with specific performance of a contractual obligation to pay past due sums." *Id.* at 212. Instead, it dealt with a "statutory obligation" the violation of which the State of Massachusetts claimed "would lead to underpayments in the future. Thus, the [<u>Bowen</u>] suit was not merely for past due sums, but for an injunction to correct the method of calculating payments going forward." *Id.*

Four years later, the Supreme Court rejected an expansive view of <u>Great West</u> in <u>Sereboff v. Mid Atlantic Medical Services</u>, 547 U.S. 356 (2006). There the Court demurred when it was asked to hold that relief for a claim sounding in contract can never be appropriate equitable relief because contract claims are

always at law. The Court reverted to historic equity jurisprudence, relying on a

1914 case for the proposition that a "contract to convey a specific object even

before it is acquired" can be enforced as an equitable lien, even if the "specific

object" is expressed in monetary terms. *Id*. at 363 and 367. <u>Sereboff</u> warns against

reading <u>Great West</u> to squeeze the life out of Section 502(a)(3):

> ERISA provides for equitable remedies to enforce plan terms, so the fact
> that the action involves a breach of contract can hardly be enough to prove
> relief is not equitable; that would make Section 502(a)(3)(B)(ii) an empty
> promise.

*Id*. In <u>Bowen</u>, the Supreme Court likewise warned that "[t]he fact that a judicial

remedy may require one party to pay money to another is not a sufficient reason to

characterize the relief as 'money damages.'" 487 U.S. at 893. That the benefits are

monetary "cannot transform the nature of the relief sought–specific relief, not

relief in the form of damages." *Id*. at 895. Citing this principle, the Ninth Circuit

held in <u>Mathews v. Chevron Corp.</u>, 362 F.3d 1172, 1185 (9th Cir. 2004), that

remedying a breach of fiduciary duty in a misrepresentation case by ordering a

plan to treat participants as retiring later did not involve money damages even

though it resulted in the plaintiffs collecting money in the form of additional

benefits. The important thing was that the Court's order changed the position of

the plaintiffs under the plan terms. *Id.* Along the same line, the Third Circuit

recently held in <u>Graden v. Conexant Systems</u>, 496 F.3d 291 (3d Cir. 2007), that

ERISA entitles participants "not only to what is in their accounts, but also to what

should be there given the terms of the plan and ERISA's fiduciary obligations."

*Id.* at 297. <u>Graden</u> rejected the defendant's argument that the claim was "better

characterized as one for damages rather benefits," holding that "it is beyond

dispute that such relief" is "properly characterized as 'benefits' because it merely

gives the participant what he is entitled to receive under the plan." *Id.* at 298-9.

Accord <u>In re Marsh ERISA Litig.</u>, 2006 WL 3706169, *7 (S.D.N.Y. 2006) ("It is

of no consequence that, in the final reckoning, Plan members will benefit from the

recovery, because it is taken for granted that an ERISA-covered plan ultimately

serves individuals").

    In both <u>Great-West</u> and <u>Massachusetts Mutual Life Ins. Co. v. Russell</u>, 473

U.S. 134 (1985), the plaintiffs sought to remedy individual injuries with cash and

were not seeking to adjust their rights under the plan terms to redress or undo

statutory violations. In <u>Russell</u>, the plaintiff was eventually paid disability benefits

under the terms of the plan but sought consequential damages for the delay in her

receipt of those benefits. In <u>Great-West</u>, the insurer and plan sought to recover

medical expenses that they had previously incurred from the personal injury

recovery that an employee's spouse secured from a tortfeasor.

11

Just last month, the Supreme Court rejected a related attempt to limit the relief available under Section 502(a)(2). In <u>LaRue v. DeWolff, Boberg, and Assocs.</u>, 552 U.S. --, 2008 WL 440748 (Feb. 20, 2008), the Court overturned a Fourth Circuit ruling that participants lack standing to sue for individualized losses from breaches of fiduciary duty because ERISA §409 is limited to "losses to the plan."  The Court allowed Mr. LaRue to seek a Section 502(a)(2) remedy for  a breach of fiduciary that affected him individually because the breach "creates the kind of harms that concerned the draftsmen of §409."  In doing so, the Court distinguished <u>Russell</u> as a case that sought "a remedy for individual injuries distinct from plan injuries." 2008 WL 440748 at *5.

Thus, <u>Great-West</u> prohibits  a "freestanding claim for money damages." But it does not prohibit "specific relief" designed to undo statutory violations. 534 U.S. at 212 and 218 n.4. Here, in contrast to both <u>Russell</u> and <u>Great-West</u>, but as in <u>LaRue</u>, the Plaintiffs seek remedies based on the underlying plan terms and the law, and not remedies for "individual injuries distinct from plan injuries."

**B.    The Equitable Relief Affirmed in <u>Varity</u> for Disclosure Violations Was Not Diminished by <u>Great-West</u>.**

A construction of <u>Great-West</u> that blocks appropriate relief for misleading disclosures about retirement benefits would be contrary to the Supreme Court's

holding in <u>Varity</u>, supra. As in this case, <u>Varity</u> dealt with "misleading" assurances to participants "that they would continue to receive similar benefits in practice," 516 U.S. at 501–even though Varity "knew ... the reality was very different" and was "aware of the importance of the matter" to the employees. *Id.* at 494 and 503. The Varity Corp. nevertheless provided its employees with "materially misleading" assurances "to persuade the employees ... to accept the change," "to avoid the undesirable fallout that could have accompanied" forthright disclosures, and "to save the employer money at the beneficiaries' expense." *Id.* at 493-94 and 505-6. "[T]he basic message conveyed to the employees was that transferring from Massey-Ferguson to Massey Combines would not significantly undermine the security of their benefits." *Id.* at 501.[8]

For redress, the participants in <u>Varity</u> sought "an order that, in essence,

---

[8] As here:

> The ultimate message Varity intended to convey-'your benefits are secure'-depended in part upon its repeated assurances that benefits would remain 'unchanged,' in part upon the detailed comparison of benefits, and in part upon assurances about Massey Combines' 'bright' financial future. Varity's workers would not necessarily have focused upon each underlying supporting statement separately, because what primarily interested them, and what primarily interested the District Court, was the truthfulness of the ultimate conclusion that transferring to Massey Combines would not adversely affect the security of their benefits.

*Id.* at 504-5.

would reinstate each of them as a participant in the employer's ERISA plan," *id.* at

492, and provide "the benefits they would have been owed under their old,

Massey-Ferguson plan, had they not transferred to Massey Combines." *Id.* at 494-

95. The Supreme Court agreed with the Eighth Circuit and the employees that

ERISA §502(a)(3) is a "catchall" provision enacted "as a safety net, offering

appropriate equitable relief for injuries caused by violations that § 502 does not

elsewhere adequately remedy." *Id.* at 512. The Court concluded that "We are not

aware of any ERISA-related purpose that denial of a remedy would serve. Rather,

we believe that granting a remedy is consistent with the literal language of the

statute, the Act's purposes, and pre-existing trust law." *Id.* at 515. "[I]t is hard to

imagine why Congress would want to immunize breaches of fiduciary obligation

that harm individuals by denying injured beneficiaries a remedy." *Id.* at 513.

Accordingly, the Court affirmed the judgment of the Eighth Circuit which had, in

turn, affirmed the district court's determinations on appropriate relief. 516 U.S. at

492 and 494-95.

## C.    Requiring Retirement Benefits to Be Paid in the Future to "Undo" Statutory Violations Is "Specific" or Injunctive Relief.

In <u>Bowen</u>, the Supreme Court recognized that "an equitable action for

specific relief ... may include an order providing for the reinstatement of an

14

employee with backpay or for 'the recovery of specific property or monies.'" 487

U.S. at 893. Quoting Dobbs, the Court stated that "specific remedies 'are not

substitute remedies at all, but attempt to give the plaintiff the very thing to which

he was entitled.'" *Id.* at 895. The Court extensively quoted from Judge Bork's

opinion in another case involving Medicare reimbursements sought by the State of

Maryland: "Maryland is seeking funds to which a statute allegedly entitles it rather

than money in compensation for the losses." Thus, Maryland is seeking "specific

relief, not relief in the form of damages." *Id.* (quoting Maryland Dept. of Human

Resources v. Department of Health and Human Services, 763 F. 2d 1441, 1446

(D.C. Cir. 1985)). Likewise in Bowen, the Supreme Court concluded that the

respondent was "seeking to enforce the statutory mandate itself, which happens to

be one for the payment of money. The fact that the mandate is one for the payment

of money must not be confused with the question whether such payment, in these

circumstances, is a payment of money as damages or as specific relief."487 U.S. at

900. "[S]ince the orders are for specific relief (they undo the Secretary's refusal to

reimburse the State) ..., they are within the District Court's jurisdiction." *Id.* at

910.[9]

---

[9] In a dissenting opinion, Justice Scalia agreed:

An action seeking an order that will prevent the wrongful disallowance of

Recent Second and Eleventh Circuit decisions also hold that a judgment requiring pension benefits to be paid in the future is injunctive relief. See <u>Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care</u>, 433 F.3d 181, 199 (2d Cir. 2005) ("participant" has standing "to obtain injunctive relief related to ERISA's disclosure and fiduciary duty requirements without a showing of individual harm"); <u>Gilley v. Monsanto</u>, 490 F.3d 848, 855-56 (11th Cir. 2007) ("the judgment here does include injunctive relief, because it requires Monsanto to continue to pay pension benefits as they accrue in the future"). <u>Crocco v. Xerox</u>, 137 F.3d 105, 107 n.2 (2d Cir. 1998), observes, moreover, that participants can sue the company, as Plaintiffs have done here, if their claims "request injunctive or equitable relief under 502(a)(3)."

In <u>In re Citigroup</u>, 241 F.R.D. 172, 181 (S.D.N.Y. 2006), Citigroup challenged whether restoring retirement benefits for violations of ERISA §204(h) might fall outside the scope of "restitutionary relief." Judge Scheindlin held that "[w]hile it is true that Plan participants are suing to recover benefits, the primary relief being sought is declaratory" which "is neither restitutionary nor equitable."

---

future claims is an action seeking specific relief and not damages, since no damage has yet occurred.

487 U.S. at 921-22.

16

"What is sought is a declaration that [Citigroup's] method of computing [accrued benefits] is unlawful. [A] declaratory judgment is <u>normally</u> a prelude to a request for other relief, whether injunctive or monetary." *Id.* (quoting <u>Berger</u>, 338 F.3d at 764).[10] Here, as in <u>Bowen</u> and cases like <u>Citigroup</u>, the class seeks specific injunctive relief to "undo" the violations and "correct the method of calculating benefit payments going forward" as well as "past due sums."

The difficulty with any effort to characterize the relief that Plaintiffs seek as legal rather than specific injunctive relief can be illustrated by the remedies sought for Ms. Broderick. If the prior CIGNA benefit formula is required to continue because of the absence of Section 204(h) notice of a significant reduction and the misleading representations that significant reductions were "not a component or a possible result" of the new formula (Slip Op. at 80), Plaintiffs' actuary, Mr. Poulin, calculates that Ms. Broderick's past and future monthly benefits should increase by approximately $1,357 per month. Ex. 7 (subtracting the highest of the cash balance accrued benefit or the minimum benefit from the projected prior plan benefit). Ms. Broderick started her monthly retirement benefits in December 2004 when she was age 60 and 9 months. Ex. 4, Tab 8, and Ex. 38. Thus, by the end of

---

[10] Accord <u>Broga v. Northeast Utilities</u>, 315 F.Supp.2d 212, 256 (D.Conn. 2004) (ordering defendant to modify retirement plan records "[t]o do equity and to cure its breach of its own fiduciary duties" in disclosures).

17

May 2008, Ms. Broderick will have 3½ years of past due monthly benefits, plus an

increase in future benefits for the rest of her life. The life expectancy tables that

the IRS uses for Individual Retirement Accounts estimate that to be 21.8 years.[11]

Plaintiffs contend that the increases in Ms. Broderick's monthly benefits for

an estimated period of 21.8 years in the future are equitable relief, like the

recalculations of Medicare reimbursements in Bowen. Plaintiffs further maintain

that her 3.5 years of back payments are an "integral part" of the equitable relief as

contemplated in Great-West, 534 U.S. at 218, and further discussed below. Indeed,

as in Bowen, 487 U.S. at 889, back payments are an "inevitable" part of the relief

because it is very unlikely that by the time of the Court's judgment in a case like

this no participant will have benefits which are "past due."[12]

> **D.    Like Back Pay under Title VII, Past Due Benefits Are an "Integral Part of an Equitable Remedy"; Past Due Benefits Can Also Be Recovered Through Equitable Restitution of CIGNA's Unjust Cost Savings.**

In analyzing the term "appropriate equitable relief" under ERISA

---

[11] See http://www.irs.gov/publications/p590/ar02.html (Appendix C).

[12] As a second example of the relief Plaintiffs seek, Mr. Poulin calculates that Ms. Glanz's monthly benefit would be increased by approximately $852 per month to remedy the §204(h) violation. Ex. 7. Because Ms. Glanz is currently age 43, none of the increased monthly benefits are presently due. Thus, the increases in future benefits due her are entirely equitable.

§502(a)(3), <u>Mertens v. Hewitt Associates</u> recognized that "we have construed the

similar language of Title VII of the Civil Rights Act," i.e., "any other equitable

relief as the court deems appropriate." 508 U.S. at 255. Against this backdrop,

<u>Great-West</u> distinguished the restitution that the insurer/petitioner sought in that

case from the many precedents under Title VII like <u>Johnson v. Georgia Highway</u>

<u>Express, Inc.</u>, 417 F.2d 1122, 1125 (5th Cir. 1969), where back pay was "an

integral part of an equitable remedy" for a statutory violation. The Court stated

that "[t]he restitution sought here by Great-West is not that, but a freestanding

claim for money damages." 534 U.S. at 218 n.4. Dobbs' treatise on remedies,

which <u>Great-West</u> cites as one of the standard texts, 534 U.S. at 211, also finds

that "backpay and reinstatement remedies are usually considered equitable."

§6.10(1) at 163. The Title VII precedents are, moreover, not a unique product of

that statute but in line with historic equity practice. As indicated by <u>Porter v.</u>

<u>Warner Holdings</u>, supra, "where ... the equitable jurisdiction of the court has

properly been invoked for injunctive purposes, the court has the power to decide

all relevant matters in dispute and to award complete relief." 328 U.S. at 399.

Accord <u>Clark v. Wooster</u>, 119 U.S. 322, 325 (1886); <u>Pease v. Rathbun-Jones</u>

<u>Engineering Co.</u>, 243 U.S. 273, 279 (1917); <u>Whitlock v. Hause</u>, 694 F.2d 861, 863

(1st Cir. 1982) (historically, courts of equity courts were permitted "to award

19

money damages where such an award was incidental to the equitable relief that
supplied jurisdiction initially").

In addition to being an integral part of the basic injunctive relief, the past
due benefits sought by the class are equitable restitution. As this Court
determined, CIGNA chose not to tell its employees about the adverse impact of the
changes including by disavowing any cost savings in order to avoid the employee
backlash that was likely to result from disclosure. Slip Op. at 22, 80-1, 85-7 and
104. CIGNA also affirmatively represented that "CIGNA Pays" substantial
amounts in the years when participants like Ms. Broderick were actually earning
nothing. Ex. 99 (stating that "CIGNA Pays" $7,617 and $16,757 for 2001 and
2002). Thus, while CIGNA was estimating annual cost savings internally of
approximately $10 million, Slip Op. at 22, CIGNA was repeatedly assuring its
employees that significant reductions were "not a component" of the retirement
program changes and that "[o]ne advantage the company will not get ... is cost
savings," Slip Op. at 22 and 80.

Restitution is equitable when it recovers the "defendant's unjust gain."
Pereira v. Farace, 413 F.3d 330, 340 (2d Cir. 2005); Dunnigan v. Metropolitan
Life Ins. Co., 277 F.3d 223, 229 (2d Cir. 2002) ("When benefits are paid only after
the date on which the beneficiary was entitled to receive them under the terms of

20

the plan, the beneficiary has not received the full value of what was promised and, to the same degree, the plan has realized an unjust enrichment (assuming the lateness was unjustified"); <u>FTC v. Verity Int'l</u>, 443 F.3d 48, 68 (2d Cir. 2006) (although "it is incorrect to generalize" "in many cases" "the defendant's gain will be equal to the consumer's loss"); Dobbs, *Law of Remedies*, §4.1(2) ("The fundamental substantive basis for restitution is that the defendant has been unjustly enriched by receiving something, tangible or intangible, that properly belongs to the plaintiff.  Restitution rectifies unjust enrichment by forcing restoration to the plaintiff"). Here, because of the representations that CIGNA made to its employees, CIGNA's cost savings were unjust gains.

## II.    <u>Frommert</u> Shows that Past Due Benefits for Statutory Violations Can Alternatively Be Recovered Under ERISA §502(a)(1)(B).

Separate from ERISA §502(a)(3), ERISA §502(a)(1)(B) provides authority for a participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." In <u>Frommert v. Conkright</u>, 433 F.3d 254, 270 (2d Cir. 2006), the Second Circuit addressed the remedies for Xerox's failure to disclose an adverse plan provision in violation of ERISA §204(h). <u>Frommert</u> decided that when a participant's benefits have been calculated by applying an

21

unlawful plan term, e.g., a term that is "ineffective" because of the absence of

§204(h) notice, but there is no ongoing violation of the notice rules because the

violation has been corrected going forward, the participant may recover benefits

under the plan's effective terms under ERISA §502(a)(1)(B). The Second Circuit

made clear that this conclusion was based on its determination that "sweeping

relief" under §502(a)(3) was "not warranted" and that "the necessary remedies can

be fully provided under §502(a)(1)(B)." *Id*. at 269-70.  Accord <u>Layaou v. Xerox

Corp.</u>, 238 F.3d 205, 212 (2d Cir. 2001), and on remand, 330 F.Supp.2d 297, 304

(W.D.N.Y. 2004); <u>Esden v. Bank of Boston</u>, 229 F.3d 154, 161-62 and 177 (2d

Cir. 2000) (summary judgment against class in action under ERISA §502(a)(1)(B)

and (a)(3) to recover unpaid benefits under cash balance plan due to violation of

statutory requirements "REVERSED and ... REMANDED for further proceedings

to calculate class damages").[13]

Thus, where, as here, there are past due benefits and ongoing violations,

<u>Great West</u>, <u>Bowen</u>, the Title VII cases, and the 19th and early 20th century equity

cases all indicate that the past due benefits can be awarded as an "integral part of

---

[13] See also <u>West v. AK Steel</u>, 484 F.3d 395, 405 (6th Cir. 2007) (although "§502(a)(1)(B) offers redress only for the recovery of benefits, enforcement of rights, or clarification of rights to future benefits under the terms of the Plan, those terms must nevertheless comply with ERISA").

an equitable remedy." 534 U.S. at 218. Alternatively, following <u>Frommert</u>, past due benefits can be awarded under §502(a)(1)(B), and the provision of benefits in the future can be remedied under §502(a)(3).

The only decision of which Plaintiffs' counsel are aware in which relief has been denied in an analogous case involving retirement benefits is <u>Crosby v. Bowater Inc. Retirement Plan</u>, 382 F.3d 587 (6th Cir. 2004). In <u>Crosby</u>, relief was denied on the basis that the Plaintiffs sought money due and owing while specifically disclaiming any claim under ERISA §502(a)(1)(B). 382 F.3d at 591 and 594. Thereafter, <u>West v. AK Steel</u>, 484 F.3d 395, 403-5 (6th Cir. 2007), distinguished <u>Crosby</u> and affirmed an award of relief in a class action involving the same statutory violation where the Plaintiffs proceeded under ERISA §502(a)(1)(B).

Based on a statement by defense counsel, it appears that CIGNA may be misreading what this Court held about ERISA §502(a)(1)(B). This Court held that <u>CIGNA</u> cannot directly be reached under §502(a)(1)(B), but the Plan, which is a defendant in this action can be held liable under §502(a)(1)(B). Compare Slip Op. at 67 with 68 n.26 ("To the extent Plaintiffs seek to recover benefits under the Plan under §502(a)(1)(B), they may pursue such claims against the Plan itself, which is a named defendant"). Indeed, under ERISA §502(d)(2), the only entity

23

against which a "money judgment" under Title I of ERISA "shall be enforceable"

is the Plan "unless liability against such person is established in his individual

capacity."[14] Accordingly, the Plan will be bound to provide the relief that this

Court orders under §502(a)(1)(B).[15]

Relatedly, whether Stewart Beltz, CIGNA's putative former Plan

administrator, and/or John Arko, the CIGNA employee who currently holds that

title, were named as additional defendants for purposes of the cause of action

under §502(a)(1)(B) is a red herring. As this Court's February 15th decision

recognizes, even if Plaintiffs had named Mr. Beltz and/or Mr. Arko, Plaintiffs

would not be able to recover anything more under §502(a)(1)(B) because neither

Mr. Beltz nor Mr. Arko would be liable in their personal capacity and neither one

---

[14] Although they may be named as defendants, plan administrators are not
liable under §502(a)(1)(B) in their "individual capacity." Dittmann v. Dyno Nobel,
1998 WL 865603, *7 n.7 (N.D.N.Y. 1998) ("neither the Trustee nor the
Administrators may be held personally liable for pension benefits pursuant to §
502(a)(1)(B)"); Greater Blouse, Skirt & Undergarment Ass'n, Inc. v. Morris, 1996
WL 325595,*4 (S.D.N.Y. 1996) ("ERISA ... does not require the plan
administrator personally to pay pension benefits, which are uniquely the Plan's
obligation").

[15] An argument from CIGNA that it should not have to pay past due benefits
would also appear to be collaterally estopped by CIGNA's actions in the
Depenbrock v. CIGNA litigation. According to CIGNA, benefits have already
been recalculated and paid for all participants rehired before 12/21/1998 as a result
of the Depenbrock decision. Defs. Post-Trial Br. (dkt.#251) at 113; Defs. Post-
Trial Findings (dkt. #250) at ¶¶43-44.

has any power apart from CIGNA to effect remedies. See <u>Hall v. LHACO, Inc.</u>, 140 F.3d 1190, 1196 (8th Cir. 1998). As this Court has also observed, CIGNA represented to Judge Squatrito that "If the Court orders that a provision of the Plan must be changed or removed, the Plan acting through its trustees and fiduciaries, must then implement that relief as to all of the Plan's participants."  Dfs. Opp. Br. filed June 7, 2002, at 8 (dkt. #30). Thus, CIGNA is committed to having the Plan act through its trustees and fiduciaries to implement the relief as to all participants. As a result, if this Court considers past due benefits to be legal relief pursuant to <u>Frommert</u>, the Court can order the Plan acting through its trustees and fiduciaries to implement that relief.

### III.    The Relief Which Plaintiffs Seek Is "Appropriate" Because It Protects Participants from CIGNA's Disclosure Violations and Deters Future Violations.

While this Court clearly has authority to provide complete relief, the question remains whether the relief that Plaintiffs seek is "appropriate."  The Court possesses discretion at the relief stage, but that discretion is bounded by the statutory provisions and the statutory purpose of affording meaningful relief to participants for violations of ERISA. Congress intended "to completely secure the rights and expectations brought into being by this landmark reform legislation." <u>Ingersoll Rand Co. v. McClendon</u>, 498 U.S. 133, 137 (1990) (quoting S.Rep. No.

25

93-127, at 36, 1974 U.S.C.C.A.N. 4838, 4872). Congress was clearly displeased

that courts had been "reluctant to apply concepts of equitable relief" and were not

using "the full range of legal and equitable remedies available in both state and

federal courts." 1974 U.S.C.C.A.N. at 4842 and 4871. See also Herman v. So.

Carolina Nat'l Bank, 140 F.3d 1413, 1423 (11th Cir. 1998) (quoting H. Conf. Rep.

101-386, at 431-32, 1989 U.S.C.C.A.N. 3018, 3035-36: "It remains the intent of

Congress that the courts use their power to fashion legal and equitable remedies

that not only protect participants and beneficiaries but deter violations of the law

as well").

In Varity, supra, 516 U.S. at 515, the Supreme Court held that "granting a

remedy" for misleading representations under the "catchall" authority of 502(a)(3)

"is consistent with the literal language of the statute, the Act's purposes, and pre-

existing trust law." The "catchall" provision of ERISA §502(a)(3) thus

"vindicates the core principle of trust remedy law, the make-whole standard,

which restores the victim to the position that he or she would have had if there had

been no breach of trust."  John Langbein, *What ERISA Means By "Equitable":*

*The Supreme Court's Trail of Error in Russell, Mertens, and Great-West*, 103

COLUM. L. REV. 1317, 1336 (Oct. 2003).

In Frommert, 433 F.3d at 272, the Second Circuit held that the district

26

court's determination of appropriate equitable relief "must be based on ERISA policy and the 'special nature and purpose of employee benefit plans.'" After the Second Circuit remanded <u>Frommert</u>, Judge Larimer relied on the ruling in <u>Burke v. Kodak</u>, 336 F.3d at 113, that "The consequences of an inaccurate SPD must be placed on the employer" and articulated the principles used in determining appropriate relief. He stated that he looked to "most clearly reflect[] what a reasonable employee would have anticipated based on the not-very-clear language in the Plan and SPD" guided by the point that "if there is some doubt or ambiguity as to th[e] formula," "it must be resolved in favor of the employee" while "adequately preventing employees from receiving a windfall." *Id.* at *5.

If CIGNA had been negligent in only one aspect of its disclosures, rather than having misled its own employees on multiple points, Plaintiffs would not rule out that there would more room for discretion in determining the appropriate relief. But when, as here, a defendant engages in a pattern of repeated disclosure violations and misleading statements with financial gains from those statements, ERISA §502(a)(3) clearly authorizes complete relief. <u>Varity</u>, supra, 516 U.S. at 512-15. Accord, <u>Peralta v. Hispanic Business, Inc</u>., 419 F.3d. 1064, 1074-75 (9th Cir. 2005) ("substantive relief under ERISA is available where an employer actively and deliberately misleads its employees to their detriment").

27

Here, as in <u>Frommert</u>, CIGNA's evidently engrained practice of providing misleading communications to its own employees about vitally important retirement benefits will not be deterred by a slap on the wrists. In fact, just three days after this Court's decision, CIGNA's head of HR circulated a memo to "all employees" announcing that "we are disappointed and troubled" by this Court's ruling that "CIGNA did not adequately communicate with employees" but "[w]e continue to believe that we treated all employees fairly and appropriately." New Ex.246.[16]

Another indication of CIGNA's continuing views of disclosure occurred at about the same time. CIGNA announced on January 18, 2008 that the Part A Tier 1 participants who had been "grandfathered" are going to be moved to the cash balance formula. A 10-page January 18th notice touts how CIGNA has "enhanced" the cash balance pay credits without ever mentioning the huge benefit reductions that these participants will incur. New Ex. 247. On February 15th, CIGNA followed up with "personalized" statements about the change which buries and diminishes the impact. The personalized statements bury any mention of "lower"

---

[16] CIGNA distributed this communication to members of the class even though the Court and the parties previously discussed the rules against communicating with members of the class on the subject of the representation. See *Manual for Complex Litigation* (4th), §21.33.

28

benefits until the last page of a seven-page notice and then diminish that statement with a graph showing much smaller reductions than CIGNA's internal documents compute. Compare New Ex. 248 at 11/11 (indicating an approximately 5% reduction after 5 years) with Ex.79 at 29424 (2002 memo estimating that grand-fathered employees moved to cash balance will have their benefits reduced by 61% to 78% after 5 years).

As these recent communications show, CIGNA continues to be very reluctant to take responsibility for its representations to participants that the plan was not being changed to reduce benefits and very reluctant to disclose new benefit reductions. By violating ERISA's disclosure requirements and making misleading statements about benefits, CIGNA has indisputably gained financially from lower benefit costs while keeping its employees in the dark about the reductions in their retirement incomes. The resulting losses to participants' future old age income will not be adequately restored and CIGNA will not be adequately deterred unless employees recover the additional benefits which CIGNA led them to believe they were still earning.

## IV.    Plaintiffs' Relief Proposal

Based on the Court's decision and as initially outlined in Plaintiffs' Additional Submission on Relief (dkt.#205, filed Sept. 12, 2006), Plaintiffs seek

29

the following relief on each of the claims on which the Court has granted

judgment:

### A. Declaratory and Injunctive Relief to Require Disclosure of the Full Impact of the Cash Balance Changes.

First, Plaintiffs are requesting declaratory and injunctive relief to finally

require CIGNA to disclose the impact of the cash balance changes to all class

members. The Plaintiffs ask for an order requiring CIGNA to tell all class

members in understandable terms in both a 204(h) notice and an SMM/SPD, that

the cash balance formula is a very significant benefit reduction which was

structured in a way where there could be lengthy periods of wear-away during

which no benefits accrue at all. Plaintiffs also ask that the relative value

disclosures be corrected for the shortfalls identified in the Court's decision.

For a Section 204(h) notice that is issued today to be effective, it must

conform to new 204(h) regulations which require disclosure of "sufficient

information to allow each applicable individual to determine the approximate

magnitude of the expected reduction." Treas. Reg. §54.4980F-1, Q&A 11.

Because timely notice of the amendment will not occur until after June 29, 2005,

see Frommert, 433 F.3d at 263 ("an ERISA 'amendment' occurs only when the

plan's employees are informed of a change in the text of the plan"), any wear-

30

aways should now be prohibited by Section 701(a) of the Pension Protection Act.

P.L. 109-80, which added ERISA §204(b)(5)(B)(ii).

Following Department of Labor guidance, CIGNA should be required to

issue a revised Summary of Material Modification/updated SPD to understandably

disclose "how [the] prior conversion may have affected benefits that classes of

participants may have reasonably expected the plan to provide," 65 Fed. Reg.

70227 (Nov. 21, 2000), and to correct the misleading communications which the

Court has identified.

CIGNA should also be required to send revised relative value disclosures to

address the deficiencies that the Court identified in those disclosures and to

conform to the Treasury Department's new regulations on relative value

disclosures. Treas. Reg. 1.417(a)(3)-1(c) through (e).

### B.    Continue the Prior Formulas Until Notice of Reductions Is Provided to Remedy the Violation of ERISA §204(h) Notice Rule.

As the Court found, CIGNA has never provided Section 204(h) notice that

significant reductions were a component of the changes. Worse still, CIGNA's

representations in the Newsletter and Retirement Kit intentionally led employees

to believe that "wear away was not a likely result of the transition to Part B, that

the full value of the accrued benefits under Part A, including early retirement

31

benefits, would be included in the opening account balances, and that the accrual rates for both short- and long-term employees under Part B were at least roughly equivalent to those under Part A." Slip Op. at 104.

The relief which Plaintiffs are requesting for the violation of the Section 204(h) notice rule between 15 days before January 1, 1998 and the date when the revised notice described above is finally distributed is virtually built into the statute. ERISA §204(h) provides that "unless" the statutory notice of significant reduction is provided, the plan "may not be amended so as to provide for a significant reduction in the rate of future benefit accrual." See <u>Frommert</u>, 433 F.3d at 268 ("without such proper notice to Plan participants, the amendment was ineffective as to them"); <u>Citigroup</u>, 470 F.Supp.2d at 340 ("the amendments never took legal effect"). CIGNA's violation of the 204(h) notice requirements is particularly egregious because CIGNA not only omitted disclosure of the reductions but included misleading information indicating that significant reductions were "not a component" of the new design. Moreover, to this day, CIGNA continues to deny that it failed to "fairly and appropriately" disclose the reductions. Ex. 246.

To remedy the ERISA §204(h) violation, all members of the class who CIGNA employed after the January 1, 1998 cash balance conversion, including

32

persons rehired after that date, whose benefits are less than the benefits they would have earned under the Part A formula should be restored to the Part A benefit formulas (Tier 1 or Tier 2) that applied on December 31, 1997. The absence of the required disclosure compounded by the affirmative misrepresentations means that the benefit-reducing amendments were "ineffective." Unless and until proper notice of reductions is given, participants must continue to accrue benefits under the more favorable benefit formulas in effect on December 31, 1997. Participants like Ms. Broderick who commenced benefits after December 31, 1997 should receive the difference between the benefit they have received and the benefit due under the lawful Plan terms, with pre- and post-judgment interest.

Although the statute and regulations are silent on prejudice, Frommert requires that the employees show "likely prejudice" to obtain relief for the inadequate disclosure. 433 F.3d at 267 and 269. Your Honor has already determined that plaintiffs have satisfied the likely prejudice requirement. Slip Op. at 104. As amended in 2001, Section 204(h) contains a similar condition of an "egregious failure," which is defined as an intentional failure to provide the information or any failure to provide most of the individuals with most of the information that they need. ERISA §204(h)(6)(B), as amended by P.L. 107-16, §659. If that standard was effective, CIGNA would be in violation of it, too.

Footnote 41 on page 102 of the decision in this case suggests that this Court might still entertain an effort by CIGNA to use "evidence regarding the lack of impact the faulty disclosures had" at the remedies stage. Plaintiffs respectfully disagree to the extent this could be read to invite CIGNA to reintroduce a detrimental reliance requirement which the Second Circuit rejected in both <u>Burke</u> and <u>Frommert</u>.  See Pls. Post-Trial Br. at 79-88. This Court has found likely prejudice and CIGNA has not come close to meeting its burden of establishing harmless error (indeed, CIGNA did not offer any evidence on this point during the entire trial). Following <u>Frommert</u>, the issue at this juncture is the appropriate relief for the violation.

### C.    Protect the "Full Value" of Prior Benefits, Prohibit Undisclosed Wear-Aways, and Provide "At Least Roughly Equivalent" Future Benefits to Redress the SMM/SPD Violations.

This Court has determined that CIGNA led the employees to believe that the full value of their prior benefits were protected in the opening cash accounts and that the cash balance formula would offer "at least roughly equivalent" benefits to the prior Plan with no wear-aways. Slip Op. at 104. To redress these disclosure violations, the Plaintiffs request that the Plan be enjoined from enforcing the benefit reductions that the Retirement Kit (which CIGNA identified as its Summary of Material Modification) and the SPD did not properly disclose from

34

January 1, 1998 until the date when the revised SMM/SPD described above is distributed. As this Court determined, participants were led to believe three things: First, they were led to believe that "the full value of the accrued benefits under Part A, including early retirement benefits, would be included in the opening account balances." Slip Op. at 104. Second, they were led to believe that the cash balance benefit and interest credits would be added to those accounts and paid: "Each dollar's worth of credit is a dollar of retirement benefits payable to you." Slip Op. at 96. The "wear away" design in which the benefit and interest credits might not be paid was never disclosed. Slip Op. at 93, 95-97. Third, participants were led to believe "that the accrual rates for both short- and long-term employees under Part B were at least roughly equivalent to those under Part A." Slip Op. at 104.

In conformity with these three representations, the Plan's rules should be interpreted and applied so that participants' opening accounts include the full value of the accrued benefits under Part A, including early retirement benefits. In accordance with CIGNA's representations in the SMM/Retirement Kit and the SPD that "Each dollar's worth of credit is a dollar of retirement benefits payable to you" and that "any benefits" from the prior plan were "fully protected" with the cash balance benefits "grow[ing] steadily" as an addition, no wear-aways should

35

occur.  The Plan's rules should also be interpreted and applied consistent with the representations in the SMM/Retirement Kit that the cash balance formula would offer "at least roughly equivalent" future benefits to those offered by the prior Plan formulas.

As a result, the benefits earned after January 1, 1998 should be at least roughly equivalent to those provided under the benefit formula (Tier 1 or Tier 2) that previously applied to the participant. To translate this into a mathematical standard, Plaintiffs will not contest the appropriateness of this Court defining "at least roughly equivalent" to mean that the benefits earned after January 1, 1998 must be no less than 90% of the benefits that would have been earned under the prior applicable benefit formula.

In its pre-trial brief, CIGNA argued that the Second Circuit's 2003 decision in Burke to provide relief for SPD violations is at odds with the Supreme Court's 1993 decision in Curtiss-Wright v. Schoonejongen, 514 U.S. 73. In the post-trial brief, CIGNA admitted that Burke is controlling, but sought to "preserve [the issue] for appeal." Dfs. Br. at 84. Given CIGNA's recognition that the issue is only being preserved, Plaintiffs will only say here that Schoonejongen addresses a "valid amendment procedure," 514 U.S. at 81-85, while Burke concerns "whether detrimental reliance or prejudice is required to recover in deficient SPD cases."

36

336 F.3d at 112. The validity of the plan amendment procedure was not at issue in

Burke, nor is it at issue here.

    **D.    Order Annuities with Equitable Setoffs of Lump Sums to Cure the Relative Value Disclosure Violations.**

If a participant was eligible for early retirement and was not notified that the

prior Plan's early retirement "subsidies" were only available through the annuity

form, no consent to a lump sum distribution is valid. Slip Op. at 114. Any consent

to a lump sum distribution is also invalid because CIGNA failed to notify

employees that the present value of the annuity option exceeded their cash balance

account. See *id*. at 118. Accordingly, all members of the class who elected lump

sum distributions without notice of the relative value of their early retirement

annuity options should be provided a recalculated benefit in annuity form. To

move this matter forward, Plaintiffs will not oppose an equitable setoff of any

lump sum previously distributed computed under the terms described below. See

Modern Settings, Inc. v. Prudential-Bache Secur., Inc., 936 F.2d 640, 648 (2d Cir.

1991) (recognizing setoff as an "equitable remedy"); Bennett v. Mfrs. & Traders,

2005 WL 2896962, *10 (N.D.N.Y. 2005) (authorizing setoff of defendant's

benefits to restore losses to the plan).

The statutory and regulatory framework establishes that providing an

increased annuity with an equitable setoff instead of an encumbered second election is the appropriate form of relief. Under ERISA, the normal form of benefit for a defined benefit plan is a qualified joint and survivor's annuity. ERISA §§205(a)(1) and (c), 29 U.S.C. §1055(a)(1) and (c); Treas. Reg. 1.401(a)-20, Q&A 8. Consent of the participant and, if married, his or her spouse is required for a distribution in any form other than the qualified annuity. See ERISA §§203(e) and 205(c) and (g); Treas. Reg. 1.417(e)-1(b); IRC §417(e); and e.g., <u>Leckey v. Stefano</u>, 263 F.3d 267 (3d Cir. 2007). The Treasury regulations on relative value disclosures provide that "No consent is valid" unless the participant and his or her spouse receives an explanation of the relative values of the optional forms of benefit. Treas. Reg. 1.411(a)-11(c)(2)(i) and 1.417(e)-1(b)(2)(i); <u>Franklin v. Thornton</u>, 983 F.2d 939, 942-43 (9th Cir. 1993) (participant did not validly consent to distribution).  If a consent to a lump sum distribution is invalid, the normal form of benefit, i.e., the qualified annuity has not been waived. ERISA §205(a)(1) and (c)(1).

The option of ruling that the first election is invalid and providing a second election would only be available if it could be done without placing a "significant detriment ... on any participant who does not consent to a distribution" of the lump sum. Treas. Reg. 1.411(a)-11(c)(2)(i). Because of the "significant detriment" rule,

a second or "do over" election cannot be done under any conditions which mean

that Ms. Jones or others are likely to continue to surrender part of the value of

their annuities because they cannot afford to pay back lump sum distributions or

shoulder the burden of liquidating accounts and amending tax returns, etc. If a

"significant detriment" is attached to the annuity option, the second election would

be as invalid as the uninformed first election. *Id*.  This is consistent with the

principle that the remedy for one violation of law should not be another violation.

Burton v. City of Belle Glade, 966 F.Supp. 1178, 1185 (S.D. Fl. 1997) ("Court

finds it hard to accept that the remedy for one violation of state law is another

violation of state law").[17]

CIGNA should accordingly be required to provide Lillian Jones and others

like her with the annuity if it contained a subsidized early retirement benefit or

otherwise exceeded the value of the cash account. CIGNA can request, and the

Plaintiff class will not oppose, an equitable set off of the lump sum distributions

previously made. The appropriate set off can be determined by converting the

lump sum to annuity form based on the actuarial assumptions applicable under

---

[17] In reviewing proposed class action settlement agreements, the *Manual for Complex Litigation* also counsels the courts to examine whether "cumbersome claim procedures" mean that "many members will be unlikely to claim benefits," with a reversion of those funds to the defendant. *Id*. at §§21.61-.62.

ERISA §205(g)(3) at the time of the original distribution. This will prevent Ms. Jones or others from being unjustly enriched while avoiding placing a "significant detriment" on the annuity form through a second election with a payback requirement.

Similar relief has been provided in other cases involving benefit options. See, e.g., <u>Burke v. Kodak</u>, dkt. #39, C.A. 00-6596 (W.D.N.Y. 1/9/2004) (on remand, district court ordered defendants to pay a monthly annuity for remainder of plaintiff's life with lump sum for back payments); <u>Gediman v. Anheuser-Busch</u>, 299 F.2d 537, 545 (2d Cir. 1962) (entering judgment for $78,356 in plan benefits where defendant's advice about options was inadequate and misleading).

As a related matter, Plaintiffs wish to clarify one point in the Court's discussion of Claim 5. Note 49 on page 113 of the Slip Opinion states that "The Court construes Plaintiffs' failure to pursue their 204(g) claim in their post-trial briefing as an indication that they have abandoned this claim ...." This is mistaken. The allegations in Claim 5 that CIGNA has failed to protect minimum benefits as required by ERISA §204(g) were not abandoned. Those allegations were instead taken off the schedule for the bench trial and the post-trial briefing because CIGNA was in agreement that at least some mistakes existed in the Plan's records and the parties were seeking to narrow the issues before the Court.  Two mediation

40

sessions with Magistrate Judge Garfinkel were held on this part of Claim 5, but unfortunately it was not resolved. The parties agree that this part of Claim 5 still needs to be resolved and included in a comprehensive remedial order. Accordingly, Plaintiffs have included provisions in the Proposed Order to establish a joint procedure for correcting discrepancies in Plan data which led to this part of Claim 5 and to CIGNA's admission that at least some mistakes in protecting benefits had been made (e.g., such as for Patricia Flannery who testified at trial that CIGNA had been computing her prior benefits at one-third of their actual amount). Based on the discrepancies in Plan data related to prior benefit amounts like Ms. Flannery's, the Free 30% survivor's benefit, credited service records, and early retirement eligibility, Plaintiffs request that a procedure be established under which a joint committee in combination with a class action administrator will have access to all of related data and will set up and implement systematic procedures to review and correct such discrepancies to finally resolve the ERISA §204(g) issues. It is, of course, essential that the underlying Plan data be correct not only for its own sake but so that the benefit recalculations described above will be correct.

### E.    Other Relief Provisions

In addition to approving the prospective relief and remedial formulas

41

described above, the Court will need to decide some related issues to ensure that the violations are fully remedied. The remedies that Plaintiffs described in the previous sections are remarkably practical because they can be consolidated into one formula. The Plaintiffs' actuary and a class action administration consultant have determined that a formula that continues the prior Tier 1 and Tier 2 benefit formulas and subtracts out (or sets off) the reduced benefits that CIGNA has, in fact, provided will address all of the violations. Sharon Taulman, a class action administration consultant retained by the Plaintiffs, has already done considerable work to identify all of the necessary data fields for these recalculations and to perform test recalculations.

However, even with the simplifying feature that the remedial formulas can be consolidated, the question remains how the relief will actually be implemented and supervised. It is standard practice for the Court to retain jurisdiction in a class action like this to enforce its equitable decrees. Plaintiffs' proposed order includes this provision, but contains two structural provisions to minimize the need for future court intervention.

First, Plaintiffs recommend that a joint committee with an independent class action administrator be appointed to implement the relief. For example, in the Page/Collins v. PBGC class action, the district judge's order retained jurisdiction

42

but established a joint board to supervise an independent administrator with a

neutral chair to help resolve any disputes. See Page/Collins v. PBGC, No. 88-3406

(D.D.C.) (dkt. # 114, 118). CIGNA has indicated that it may be receptive to this

approach.  Plaintiffs propose that a neutral chair be selected to resolve any dispute

on the committee.

Second, Plaintiffs propose that the benefit recalculations described above be

performed by the Joint Committee with help from experts under a tight time frame

(before being put in operation by the class action administrator).  The Joint

Committee and experts should be granted full access to all related data (the most

recent data that Plaintiffs currently have is from 2005) so these calculations can be

performed quickly by the parties' experts and reconciled to ensure that there are no

significant differences in the results or latent issues that the parties, the Committee

or the Court needs to address and resolve.

Appointment of an independent class action administrator subject to

oversight by a joint committee with a neutral chair is reasonable because the Court

has authority to remove fiduciaries altogether for substantial, repeated or serious

misconduct in violation of statutory obligations. See, e.g., Beck v. Levering, 947

F.2d 639, 641 (2d Cir. 1991), cert. denied, 112 S.Ct. 1937 (1992); Katsaros v.

Cody, supra, 744 F.2d at 281. In view of that authority and CIGNA's repeated,

43

serious violations, appointment of a joint committee and independent class action administrator to implement the relief is a compromise solution. Measures such as appointment of a special committee are commonly regarded as "less intrusive" than removal and replacement. Cobell v. Norton, 283 F.Supp.2d 66, 132-33 (D.D.C. 2003), vacated on other grounds, 391 F.3d 251 (D.D.C. 2004).

Once the Court decides the basic remedies issues, the Plaintiffs request an opportunity to apply for additional appropriate equitable relief to cover such issues as: (i) prejudgment interest, (ii) procedures for when class members have died, and (iii) procedures for addressing unlocated class members, spouses, or family members.[18] Prejudgment interest is particularly significant issue here because CIGNA's standard practice is to apply 8.5% interest to past due benefits. CIGNA already applied that rate to calculate the past due benefits due as a result of the Depenbrock case.

---

[18] Prejudgment interest has been awarded "notwithstanding the statute's silence on the subject of interest" "when the awards were fair, equitable, and necessary to compensate the wronged party fully." Wickham Contracting Co. v. Local Union 3, IBEW, 955 F.2d 831, 835 (2d Cir.), cert. denied, 506 U.S. 946 (1992). See also Dunnigan v. Metropolitan Life Ins. Co., supra, 277 F.3d at 229-30 (interest may "be awarded as an equitable remedy under § 502(a)(3)(B)"); Dobson v. Hartford Life & Accident Ins. Co., 518 F.Supp.2d 365, 372 and 374 (D.Conn. 2007) (on remand from 389 F.3d 386 (2d Cir. 2004), holding that plaintiff was entitled to interest on past due disability payments under §502(a)(1)(B) because "recovery of interest on unreasonably withheld benefits payments is an implicit "benefit" under the Plan").

The Plaintiffs also ask for the opportunity to move for incentive awards to the named Plaintiffs and witnesses for assisting in this case and putting themselves on the line on behalf of all CIGNA employees and retirees. Higher incentive awards are justified here based on the considerable retirement benefits that will accrue to many class members as a result of this litigation and on the basis of risk that these individuals took that current or future employers would flag them based on their willingness to pursue litigation. Compare Roberts v. Texaco, Inc., 979 F. Supp. 185, 200-5 (E.D.N.Y. 1997) (approving incentive awards ranging up to $85,000), Sheppard v. Consol. Edison Co., 2002 WL 2003206 *6-7 (E.D.N.Y. 2002) (incentive awards up to $29,167), with In re AOL Time Warner ERISA Litig., 2007 WL 3145111 *2-4 (S.D.N.Y. 2007) (reducing requested incentive awards down to $1,000 and $500 in light of "the indirect, and much smaller" relief accruing to absent class members).

### F.     Attorneys' Fees.

After the basic remedial issues are decided, Plaintiffs' counsel will move for an order awarding attorneys' fees and litigation expenses from the common fund recovery for the class. See Central States Southeast & Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, 504 F.3d 229, 249 (2d Cir. 2007) (ERISA); Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 121-23 (2d Cir.

2005); Goldberger v. Integrated Resource Inc., 209 F.3d 43, 49-50 (2d Cir. 2000). Common fund fee requests are standard for class actions of this kind and are authorized by counsel's fee agreements with the named Plaintiffs.

Plaintiffs will also seek to obtain an award of statutory fees and costs from Defendants under ERISA §502(g). See, e.g., Paese v. Hartford Life & Accident Ins. Co., 449 F.3d 435, 450-51 (2d Cir. 2006). Any award of statutory fees and costs secured under §502(g) would be offset/deducted from the common fund fee award. The Section 502(g) award will thus reduce the common fund recovery that is ultimately deducted from any class member's benefits. Plaintiffs' counsel have followed this procedure in other cases to lower the net percentage that is deducted from the class' recovery. See Page/Collins v. PBGC, C.A. 88-3406 (D.D.C.) (dkt. #117) (attached as Ex. 249); Forbush v. J.C. Penney Pension Plan, C.A. 90-2719 (N.D. Tex) (dkt. #143).[19] Plaintiffs propose that the attorneys' fee and expense motion with declarations and fee records be filed within 30 days of the Court's order on remedies.

---

[19] The argument that the availability of statutory fees precludes a common fund award was rejected in Florin v. Nationsbank, 34 F.3d 560, 563 (7th Cir. 1994).

V.    **CIGNA's Anticipated Counter-Proposals on <u>Great-West</u>, the Costs of Remedies, Retroactive Relief, "Cashed Out" Participants, and Relative Value Elections.**

In terms of a counter-submission on remedies, CIGNA is likely to focus on a preclusive construction of <u>Great-West</u> and on arguments that the costs to CIGNA of any relief that survives <u>Great-West</u> must be kept low because of the importance of CIGNA's financial interests. The fundamental flaws in the view that <u>Great-West</u> forecloses the Court's ability to undo statutory violations have been exposed above. In terms of the costs to CIGNA of a complete remedy, CIGNA offered no evidence at trial that it is unable to withstand the costs of the judgment. See <u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.</u>, supra, 396 F.3d at 117 (following <u>Grinnell</u> factors for evaluating a proposed settlement). And there are certainly no cases to support the proposition that the relief that costs a defendant less is presumptively more appropriate when the defendant's costs can only be reduced by making corresponding reductions in the relief provided to the class. See Dobbs, *Law of Remedies* (2d ed.), §2.4(5) (defendant's costs are "best considered" when they are "not an inseparable part of the plaintiff's right" or when the cost "far exceeds the benefit to which the plaintiff is entitled"). CIGNA's representation to Judge Squatrito implied, moreover, that if violations were found, CIGNA would take all necessary steps to provide relief to all participants, rather than seek to lessen that

47

relief or limit it to certain groups of participants on grounds of cost.

In the remand of <u>Frommert</u>, Xerox proposed some less costly methods for taking prior distributions into account through an actuarial expert (coincidentally, Lawrence Sher). Xerox suggested that the district court should adopt certain computational approaches because they were more "appropriate" financially or actuarially than the Plaintiffs. The district court rejected those approaches because:

> What is 'best' from a financial or actuarial point of view is not what the Court has been charged with determining. The Court's task, as directed by the Court of Appeals, is simply to determine based on the language of the Plan and the SPD, what benefits are now due this group of rehired participants. To the extent that there is some ambiguity as to the precise manner by which prior distributions are to be offset from present benefits, it is Xerox, not the employees who should suffer.

472 F.Supp.2d 452, 457 (W.D.N.Y. 2007).[20]

<u>Swede v. Rochester Carpenters Pension Fund</u>, 467 F.3d 216, 219 and 221-22 (2d Cir. 2006), also rejects the suggestion that "retroactive benefits" are not appropriate when the guidance in the case law has not been entirely constant. <u>Swede</u> holds that a former employee is entitled to "full retroactive benefits" for an ERISA violation. Although the Plan restored Mr. Swede's benefits as of November 2004 in light of the Supreme Court decision on ERISA §204(g) in

---

[20] In <u>Carrabba v. Randalls Food Markets</u>, 145 F.Supp.2d 763, 773 (N.D. Tex. 2000), the "appropriateness" of the remedial benefit accrual formula was also the basis for the Court's decision, not its cost.

Central Laborers' Pension Fund v. Heinz, 541 U.S. 739 (2004), the Plan refused to pay Swede his past due retirement benefits for the entire period during which they had been suspended on the ground that Heinz was new law. The Plan further argued that IRS Revenue Procedure 2005-23 limited the retroactive effect of Heinz. The Second Circuit disagreed, concluding that Rev. Proc. 2005-23 did not "affect the substantive rights of parties under ERISA." 467 F.3d at 221. The Second Circuit also rejected the Plan's alternative argument that retroactive relief should not be provided because the case law was not entirely clear before Heinz, citing the Supreme Court's decisions in Harper v. Virginia Dept. of Taxation, 509 U.S. 86 (1993) and Reynoldsville Casket Co. v. Hyde, 514 U.S. 749 (1995).

CIGNA may suggest that Ms. Broderick and Ms. Glanz are atypical in that they have not "cashed out" their benefits and that participants whose benefits have been completely "cashed out" (like Lillian Jones and Robert Upton) should be treated differently for purposes of relief. This is a substantial issue because, as shown earlier, over 95% of CIGNA's former employees have cashed out their cash balance accounts shortly after terminating their employment since CIGNA's cash balance conversion. Ex. 9 at ¶6. The idea that cashed out employees should be excluded from class action recoveries has been rejected in two recent appeals court decisions. In Harzewski v. Guidant, 489 F.3d 799 (7th Cir. 2007), the plaintiffs

49

alleged that the company and its officers breached their fiduciary duties by investing in inflated company stock. The district court ruled that former employees who had received full distributions of their benefits lacked standing because they did not qualify as plan participants under §502(a)(2). In an opinion by Judge Posner, the Seventh Circuit reversed, holding that if a "formula is misapplied to the participant's detriment, he can sue for an adjustment in the benefits designed to give him what he would have received had the formula been honored." 489 F.3d at 805. Bridges v. American Electric Power Co., 498 F.3d 442 (6th Cir. 2007), follows Harzewski in holding that "a former employee like Bridges has 'participant' standing despite having 'cashed out' his defined benefit plan." 498 F.3d at 445. The Sixth Circuit held that the plaintiff's receipt of losses resulting from a breach of fiduciary duty "will constitute the receipt of a plan benefit." *Id.*

As indicated above, CIGNA may also suggest some type of "do over" election with a payback requirement for participants like Lillian Jones who did not receive the required disclosures about the relative value of their benefit options. This is inappropriate for the reasons discussed above, namely: (1) it ignores the fact that the normal form of payment under ERISA is the annuity form which is only subject to waiver under specified conditions, including understandable

50

disclosures about relative value, and (2) it ignores the fact that a "do over" election with a payback condition would impose a "significant detriment" on electing the annuity form and thus produce a pro forma remedy in which virtually no former employees would participate.[21]

**Conclusion**

For the foregoing reasons, Plaintiffs respectfully request that the Court adopt Plaintiffs' accompanying proposed Order on remedies.

Dated: March 17, 2008

                              Respectfully submitted,

                               s/ Stephen R. Bruce
                              Stephen R. Bruce Ct23534
                              Allison C. Caalim
                              805 15th St., NW, Suite 210
                              Washington, DC 20005
                              (202) 371-8013

                               s/ Thomas G. Moukawsher
                              Thomas G. Moukawsher Ct08940
                              Moukawsher & Walsh, LLC
                              21 Oak St.

---

[21] To the extent CIGNA implicitly contends that a less effective remedy is appropriate because failing to disclose "relative values" of benefit options was an "industry practice," Taylor v. United Technologies, 2007 WL 2302284 *4 (D.Conn. 2007), rejects this as a defense in an ERISA case. Moreover, as this Court determined, CIGNA violated not only the Treasury regulations on disclosing "subsidized" early retirement options but also the provisions of its own Plan document and SPD on making such disclosures.

Hartford, CT 06106
(860) 278-7000

Attorneys for Named Plaintiffs and
Plaintiff Class

Exhibit 246:    February 19, 2008 email from John Murabito, Executive Vice
President Human Resources, to all CIGNA employees re:
"Pension law suit decision"

Exhibit 247:    January 18, 2008 email from John Murabito to certain Part A
CIGNA employees re: "Important Information: CIGNA
Pension Plan - Part A" with "Part A Plan Change Questions
and Answers" dated January 18, 2008

Exhibit 248:    February 15, 2008 letter from John Arko, CIGNA Pension Plan
administrator to participants with "204(h) Notice" and
"Personalized Benefit Projection"

Exhibit 249:    *Collins v. PBGC* Order dated June 7, 1996 approving
attorneys' fee award

# CERTIFICATE OF SERVICE

I certify that copies of the foregoing (1) Plaintiffs' Memorandum On

Relief, with Exs. 246 to 249, (2) the Proposed Order, and (3) this Certificate of

Service were filed electronically through the CM/ECF system on March 17, 2008.

Notice of this filing will be sent by e-mail to all counsel listed below by operation

of that system:

        Joseph J. Costello
        Jeremy P. Blumenfeld
        Jamie M. Kohen
        Morgan, Lewis & Bockius
        1701 Market St.
        Philadelphia, PA 19103-2921

        Christopher A. Parlo
        Morgan Lewis & Bockius
        101 Park Avenue
        New York, NY 10178-0600

        James A. Wade
        Brett J. Boskiewicz
        Robinson & Cole, LLP
        280 Trumbull Street
        Hartford, CT 06103-3597

                        s/ Stephen R.Bruce
                        Stephen R. Bruce