**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

------------------------------------------------------X
                                      :

| | | |
|---|---|---|
| JANICE C. AMARA, GISELA | : | 3:01 CV 2361 (MRK) |
| R. BRODERICK, ANNETTE S. GLANZ | : | |
| individually, and on behalf of others | : | Trial Dates: |
| similarly situated, | : | September 11-15, 2006 |
| | : | January 24-25, 2007 |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| CIGNA CORP. AND CIGNA | : | |
| PENSION PLAN, | : | |
| | : | |
| Defendants. | : | |
| | : | |

------------------------------------------------------X

**DEFENDANTS' MEMORANDUM ON**
**INDIVIDUAL ISSUES AND CLASS RELIEF**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ...................................................................................................... 2

    A.    The Court Must Resolve A Number Of Individualized Issues Before Awarding Relief To Absent Class Members. ........................................ 2

        1.    The Court Must Rule On Individualized Issues Of Likely Prejudice And/Or Harmless Error Before Affording A Remedy To Any Class Member Other Than The Named Plaintiffs Or Those Class Members Who Testified At Trial ............................................ 2

        2.    Defendants' Proposal For Resolving Individualized Issues ..................... 7

    B.    Even For Those Class Members Who Prove Likely Prejudice And For Whom Defendants Cannot Demonstrate Harmless Error, The Court Can Only Award "Appropriate Equitable Relief" Under ERISA Section 502(a)(3). ......................................................................... 10

        1.    The Monetary Remedies Plaintiffs Seek Under ERISA Section 502(a)(3) Are Not "Appropriate" Because A Complete Remedy Was Available Under ERISA Section 502(a)(1)(B) If Plaintiffs Had Sued The Designated Plan Administrator. ....................................... 11

        2.    Plaintiffs' Request For An Injunction Requiring CIGNA To Provide Benefits Comparable To Those Available Under Part A Is Not "Appropriate Equitable Relief." .................................................... 14

        3.    Plaintiffs' Request For Additional Benefits Cannot Otherwise Be Characterized As "Appropriate Equitable Relief." ................................. 17

    C.    Plaintiffs And The Class Are Not Entitled To Benefits Under Part A (Or Something Similar) Through Today And Into The Future As A Remedy For Their 204(h) Notice Claim. ....................................................... 19

        1.    No Member of the Class Is Entitled To Benefits Under Part A (Or Anything Comparable) Because Such A Remedy Bears No Relationship To The Harm Suffered, Since the 1998 Part B SPD Sufficiently Disclosed Part B's Ongoing Benefit Formula And Class Members Received Several Communications Describing Exactly What Their Benefits Were At Any Point In Time. ..................... 19

        2.    No Class Member Is Entitled To Benefits Under Part A Because Amendment No. 4 Properly Froze Benefit Accruals Under Part A And Has Not Been Challenged In This Litigation. .................................. 22

        3.    Rehires Are Not Entitled To Benefits Under Part A (Or Something Similar) Because They Were Not Entitled To Any Section 204(h) Notice. ................................................................................ 24

i

**TABLE OF CONTENTS**
(continued)

D.    Plaintiffs' Request For Additional Benefits Sufficient To Eliminate Wearaway Fails To Account For Subsequent Disclosures And Ignores The Legitimate Causes Of Wearaway........................................................................ 25

E.    Plaintiffs' Request For Additional Benefits For Participants Who Previously Elected A Lump Sum Benefit With A Lower Value Than Their Subsidized Early Retirement Benefit Is Inappropriate. ....................................... 27

F.    Plaintiffs' Request For A Common Fund Attorneys' Fee Enhancement, Incentive Payments, And Interest Are Not Appropriate. .................................... 29

III.    CONCLUSION............................................................................................ 32

## TABLE OF AUTHORITIES

**Page**

Aiken v. Policy Mgmt. Sys. Corp.,
13 F.3d 138 (4th Cir. 1993) ........................................................................2

Barnes v. Am. Tobacco Co.,
161 F.3d 127 (3d Cir. 1998)........................................................................7

Bowen v. Mass.,
487 U.S. 879 (1988)..................................................................................16

Branch v. G. Bernd Co.,
955 F.2d 1574 (11th Cir. 1992) ..................................................................2

Brytus v. Spang & Co.,
203 F.3d 238 (3d Cir. 2000)......................................................................31

Burke v. Kodak Ret. Income Plan,
336 F.3d 103 (2d Cir. 2003).......................................................................4

Burstein v. Ret. Account Plan For Employees Of Allegheny
Health Educ. and Research Found.,
334 F.3d 365 (3d Cir. 2003)......................................................................14

Central Laborers' Pension Fund v. Heinz,
541 U.S. 739, 743 (2004)..........................................................................20

Chiles v. Ceridian Corp.,
95 F.3d 1505 (10th Cir. 1996) ....................................................................2

In re Citigroup Pension Plan ERISA Litig.,
No. 05 Civ. 5296, 2007 WL 4205855 (S.D.N.Y. Nov. 27, 2007) .........................20, 22

City of Burlington v. Dague,
505 U.S. 557 (1992)..................................................................................30

Coan v. Kaufman,
457 F.3d 250 (2d Cir. 2006)..................................................................15, 16

D'Amico v. CBS Corp.,
297 F.3d 287 (3d Cir. 2002)......................................................................14

Drennan v. Gen. Motors Corp.,
977 F.2d 246 (6th Cir. 1992) ....................................................................31

Dunnigan v. Metro. Life Ins. Co.,
277 F.3d 223 (2d Cir. 2002)......................................................................32

# TABLE OF AUTHORITIES
### (continued)

Page

Eichorn v. AT&T Corp.,
484 F.3d 644 (3d Cir. 2007), cert. denied, 128 S.Ct. 709 (2007) ..................................16

Elmore v. Cone Mills Corp.,
23 F.3d 855 (4th Cir. 1994) .........................................................................................31

Exarhakis v. Visiting Nurse Serv. of N.Y.,
No. 02-C 2006 WL 335420 (E.D.N.Y. Feb. 13, 2006)....................................................4

First Unum Life Ins. Co. v. Wulah,
Civ. No. 06-1749, 2007 U.S. Dist. LEXIS 82650 (S.D.N.Y. Nov. 8, 2007) ...............4, 5

Fisher v. Penn Traffic Co.,
No. 06 Civ. 5848(HB), 2007 WL 496657 (S.D.N.Y. Feb. 16, 2007)...........................18

Flint v. ABB, Inc.,
337 F.3d 1326 (11th Cir. 2003) ...................................................................................32

Frommert v. Conkright,
433 F.3d 254 (2d Cir. 2006)....................................................................6, 11, 12, 14

Frommert v. Conkright,
472 F. Supp. 2d 452 (W.D.N.Y. 2007) .........................................................................15

Gerosa v. Savasta & Co., Inc.,
329 F.3d 317 (2d Cir. 2003)........................................................................................15

Great-West Life & Annuity Ins. Co. v. Knudson,
534 U.S. 204 (2002).................................................................................14, 15, 17, 18

Greeley v. Fairview Health Servs.,
479 F.3d 612 (8th Cir. 2007) .........................................................................................2

Harris v. Bodman,
Civil Action No. 06-1848 (JR), 2008 WL 647528 (D.D.C. March 11, 2008)................6

Harrison v. Metro. Life Ins. Co.,
417 F. Supp. 2d 424 (S.D.N.Y. 2006)..........................................................................12

Health Cost Controls of Illinois, Inc. v. Wash.,
187 F.3d 703 (7th Cir. 1999) .........................................................................................2

# TABLE OF AUTHORITIES

(continued)

**Page**

Henry v. Champlain Enter., Inc.,
445 F.3d 610 (2d Cir. 2006)..................................................................................20

Int'l Bhd. of Teamsters v. United States,
431 U.S. 324 (1977)................................................................................................8

Irwin v. Dep't of Veterans Affairs,
498 U.S. 89 (1990)..................................................................................................6

Johnson v. Buckley,
356 F.3d 1067 (9th Cir. 2004) ................................................................................3

Krauss v. Oxford Health Plans, Inc.,
517 F.3d 614 (2d Cir. 2008)..................................................................................13

LaRue v. DeWolff, Boberg & Assocs., Inc.,
128 S. Ct. 1020 (2008)..........................................................................................11

Layaou v. Xerox Corp.,
238 F.3d 205 (2d Cir. 2001)..................................................................................22

Manginaro v. Welfare Fund of Local 771, I.A.T.S.E.,
21 F. Supp. 2d 284 (S.D.N.Y. 1998).......................................................................4

Mauser v. Raytheon Co. Pension Plan for Salaried Employees,
239 F.3d 51 (1st Cir. 2001).....................................................................................2

Mead v. Andersen,
309 F. Supp. 2d 596 (S.D.N.Y. 2004)...................................................................32

Mertens v. Hewitt Assocs.,
508 U.S. 248 (1993).......................................................................................14, 17

Mitchell v. Emeritus Mgmt., LLC,
524 F. Supp. 2d 67 (D. Me. 2007) ........................................................................18

Murphy v. Reliance Standard Life Ins. Co.,
247 F.3d 1313 (11th Cir. 2001) ............................................................................31

Nechis v. Oxford Health Plans, Inc.,
421 F.3d 96, 103 (2d Cir. 2005)............................................................................18

## TABLE OF AUTHORITIES
(continued)

**Page**

York v. Hill,
528 U.S. 110 (2000).................................................................................................6

O'Connor v. Boeing N. Am. Inc.,
197 F.R.D. 404 (C.D.Ca. 2000) ..............................................................................7

Ranke v. Sanofi-Synthelabo, Inc.,
No. 04-1618, 2004 WL 2473282 (E.D.Pa. Nov. 3, 2004) ........................................16

Savoie v. Merchants Bank,
166 F.3d 456 (2d Cir. 1999)...................................................................................30

Sheehan v. Metro. Life Ins. Co.,
368 F. Supp. 2d 228 (S.D.N.Y. 2005)......................................................................4

Tyndall v. New England Teamsters & Trucking Industry Pension Fund,
No. 3:03CV194, 2006 WL 3815140 (D. Conn. Dec. 7, 2006) ...................................32

Varity Corp. v. Howe,
516 U.S. 489 (1996)...............................................................................................2

In re Visa Check/MasterMoney Antitrust Litig.,
280 F.3d 124 (2d Cir. 2001)....................................................................................7

Wachtel v. Guardian Life Ins. Co. of Am.,
453 F.3d 179 (3d Cir. 2006)....................................................................................7

Weinreb v. Hosp. For Joint Diseases Orthopaedic Inst.,
404 F.3d 167 (2d Cir. 2005)................................................................................4, 5

Young v. Reconstructive Orthopaedic Assocs., II,
No. 03-2034, 2005 WL 627796 (E.D. Pa. March 16, 2005)......................................16

## STATUTES

5 U.S.C. § 702 ......................................................................................................16

29 U.S.C. § 1054(g) .........................................................................................14, 15

29 U.S.C. § 1132(a)(3)....................................................................................1, 2, 19

42 U.S.C. § 1396b(d) ..............................................................................................7

# TABLE OF AUTHORITIES
(continued)

**Page**

26 C.F.R. § 1.411(d)-6T (Q-9) ..................................................................................2, 13

26 C.F.R. § 1.417(a)(3) ...................................................................................................18

29 U.S.C. § 1054(h) ..................................................................................................10, 19

# RULES

Fed. R. Civ. P. 23(c)(1)(B) .........................................................................................1, 7

# MISCELLANEOUS

Herbert B. Newberg & Alba Conte,
Newberg on Class Actions §§ 9.59, 9.71 (4th ed.) .........................................................8

Manual for Complex Litigation (Fourth) 32.42 (2004) ..................................................9

I.    **INTRODUCTION**

In its February 15, 2008 Memorandum of Decision ("MOD"), the Court directed the parties to file briefs "regarding class relief. . . [and] the issue of how to address any remaining claims, including individual claims."  (MOD at 122).  In their submission, however, Plaintiffs proceed as if all individualized issues have been adjudicated, and therefore argue that *all* class members are now entitled to broad injunctive and monetary relief.  Their proposed relief includes an award of "additional retirement benefits under the Part A Tier 1 and Tier 2 formulas from January 1, 1998 until CIGNA distributes the revised notices about the Part B reductions." (Pls' Proposed Order at 3).

Plaintiffs' assertion that there is nothing left for the Court to decide except the remedy ignores the Court's March 12, 2007 Order issued under Federal Rule of Civil Procedure 23(c)(1)(B), in which the Court identified a number of individualized issues that ultimately must be resolved.  Moreover, the monetary remedies that Plaintiffs propose are not available under Section 502(a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1132(a)(3), the provision under which the Court held that Plaintiffs must proceed.  Furthermore, in seeking an award of past accruals under Part A as if the CIGNA Pension Plan had never been amended, Plaintiffs request, in effect, that the Court reverse its decision that the Part B cash balance plan design was entirely lawful.  Finally, Plaintiffs conveniently ignore the consequences of their inexplicable choice not to name the designated Plan Administrator as a defendant in this action.

As set forth below, Defendants offer suggestions for addressing the individual issues identified by the Court in its March 12, 2007 Order.  Defendants also explain why most of the remedies sought by Plaintiffs simply do not pass muster under ERISA Section 502(a)(3).

## II.    ARGUMENT

### A.    The Court Must Resolve A Number Of Individualized Issues Before Awarding Relief To Absent Class Members.

#### 1.    The Court Must Rule On Individualized Issues Of Likely Prejudice And/Or Harmless Error Before Affording A Remedy To Any Class Member Other Than The Named Plaintiffs Or Those Class Members Who Testified At Trial.

In their Memorandum on Relief, Plaintiffs do not address the numerous individualized issues that must be resolved before absent class members can claim any entitlement to relief, and that affect the scope of any such relief.  For example, in its March 12, 2007 Order, the Court identified the following individualized issues in connection with Count II, Plaintiffs' claim regarding the adequacy of CIGNA's summary plan descriptions ("SPDs"):

> "Whether any individual class member of likely prejudiced by any of the violations alleged in Count II;" and

> "Whether any violation alleged in Count II was harmless error as to any individual class member"

(March 12, 2007 Order at 5).[1]  The Court reached the very same conclusion with respect to Plaintiffs' Section 204(h) notice claim, Count IV, and relative value disclosure claim, Count V. (Id. at 6-8).[2]

---

[1]    Defendants acknowledge that this Court is bound by Second Circuit precedent. Nevertheless, Defendants submit that the likely prejudice/harmless error standard articulated by the Second Circuit is inconsistent with ERISA's disclosure and enforcement provisions, and the primacy of written plan documents under ERISA.  (See Defs' Post-Trial Brief at 84-85).  At a minimum, a plan participant should be required to prove detrimental reliance before being entitled to benefits based on a flawed SPD.  The First, Fourth, Seventh, Eighth, Tenth, and Eleventh Circuits all have imposed a requirement that participants prove detrimental reliance or prejudice to state a claim based on a deficient SPD.  See Mauser v. Raytheon Co. Pension Plan for Salaried Employees, 239 F.3d 51, 55 (1st Cir. 2001); Aiken

2

Consistent with its March 12, 2007 Order, the Court recognized in its decision on the merits that a presumption of likely prejudice is rebutted where a plaintiff has "actual knowledge . . . of the requirement omitted from the SPD." (MOD at 103). Defendants acknowledge that this Court has held that certain uniform written communications were insufficient to defeat a claim of likely prejudice, or demonstrate harmless error, on a classwide basis, and Defendants do not seek to relitigate those issues here. Nevertheless, and pursuant to the Court's March 12, 2007 Order, the Court still has to rule on likely prejudice/harmless error for each absent class member.

In particular, before an absent class member is entitled to a remedy, the Court must rule on whether that class member had "actual knowledge" of the information the Court held was not

---

v. Policy Mgmt. Sys. Corp., 13 F.3d 138, 141 (4th Cir. 1993); Health Cost Controls of Illinois, Inc. v. Washington, 187 F.3d 703, 711 (7th Cir. 1999); Greeley v. Fairview Health Servs., 479 F.3d 612, 614-15 (8th Cir. 2007); Chiles v. Ceridian Corp., 95 F.3d 1505, 1519 (10th Cir. 1996); Branch v. G. Bernd Co., 955 F.2d 1574, 1578-80 (11th Cir. 1992).

[2]     The Court also correctly recognized in its March 12, 2007 Order that "[w]hether any individual class member was likely to suffer a significant reduction in [his or her] rate of future benefit accrual as a result of the amendment adopting the Plan," such that the Plan Administrator was required to provide that individual with a Section 204(h) notice, was an individualized issue. (March 12, 2007 Order at 6). That is, regardless of whether any particular class member *actually* suffered a reduction in his or her rate of future benefit accruals (because, for example, interest rates fell after the cash balance plan was adopted), an individual can only state a Section 204(h) notice claim if that individual was "likely" *at the time of the amendment* to suffer a "significant" reduction in the rate of future benefit accrual. 26 C.F.R. § 1.411(d)-6T (Q-9) (Section 204(h) notice obligations are triggered only based on the facts and circumstances "at the time the amendment is adopted."). Indeed, as the Court held, "[u]nder § 204(h), if notice is not due to an individual at the time of the amendment, the plan administrator need never provide a § 204(h) notice to that individual." (MOD at 107). Importantly, moreover, this analysis must be limited to a comparison of the likely future normal retirement age-65 benefits under Parts A and B without regard to subsidized early retirement benefits or the wearaway associated with those subsidized benefits. (MOD at 72) ("Thus, reductions or eliminations of early retirement benefits, for example, do not require a § 204(h) notice."). Again, this is an individualized issue that depends on how the cash balance conversion was likely to affect each participant, based on that participant's expected future benefit accruals if Part A had continued (including, among other things, that participant's age, service, and salary history), and that participant's expected future benefit accruals under Part B.

sufficiently disclosed, and whether that class member's particular claims otherwise succeed or

fail under the likely prejudice/harmless error analysis.[3]  For example, at the time of the cash

balance plan conversion, CIGNA's business included pension plan consulting and

administration, and some CIGNA employees participated in the design of other cash balance

plans or of Part B itself.  These employees may have fully understood the implications of a cash

balance plan, the potential for wearaway under Part B, the causes of such wearaway, and the

relative benefit accruals provided under Part B compared to Part A.  Indeed, the Court found that

CIGNA was "aware of the significant reduction in the rate of future benefit accrual" and "aware

of the possibility of wearaway."  (MOD at 87, 94).  CIGNA could only have that awareness

through its employees, many of whom are class members.  Furthermore, the Court made

---

[3]    See Burke v. Kodak Ret. Income Plan, 336 F.3d 103, 113 (2d Cir. 2003) ("[W]e require, for
a showing of prejudice, that a plan participant or beneficiary was *likely* to have been harmed
as a result of a deficient SPD. Where a participant makes this initial showing, however, the
employer may rebut it through evidence that the deficient SPD was in effect a harmless
error.") (emphasis in original); Weinreb v. Hosp. For Joint Diseases Orthopaedic Inst., 404
F.3d 167, 171 (2d Cir. 2005) ("dispensing with any showing of prejudice. . . would afford
unjustified windfalls to employees"); Exarhakis v. Visiting Nurse Serv. of N.Y., No. 02-CV-
5562, 2006 WL 335420, at *12 (E.D.N.Y. Feb. 13, 2006) ("The emphasis on the word
'likely' indicates the heightened showing required in order to survive a summary judgment
motion on a deficient-SPD claim; rather than simply identifying a factual dispute that
possibly prejudiced plaintiff, e.g., that plaintiff might have filed for and received benefits
had the SPD not been deficient, plaintiff must provide sufficient evidence on which an
inference could be based that she would have filed for the benefits but for the deficiency in
the SPD."); Sheehan v. Metro. Life Ins. Co., 368 F. Supp. 2d 228, 262 (S.D.N.Y. 2005)
("The rule to be derived from Burke and Manginaro is that in an ERISA action, likely
prejudice to a plaintiff will be presumed if, as the result of an SPD deficiency, he was not
aware *of the need to take an action within his control* (submitting an affidavit, filing a law
suit) *which would have avoided the restriction on eligibility for benefits*, and consequently
failed to take that action.") (emphasis added); Manginaro v. Welfare Fund of Local 771,
I.A.T.S.E., 21 F. Supp. 2d 284, 296 (S.D.N.Y. 1998) (same); First Unum Life Ins. Co. v.
Wulah, Civ. No. 06-1749, 2007 U.S. Dist. LEXIS 82650, at *19-20 (S.D.N.Y. Nov. 8, 2007)
("Unlike Weinreb, Exarhakis, and most cases applying the likely prejudice standard, in
which it was undisputed that a plan participant (or potential participant) lost out on benefits
because of the plan administrator's failure to apprise him of certain features of the plan,
[plaintiff] has not shown that he is materially worse off than he would have been had he
received an SPD . . .").

reference to a number of employee complaints about Part B, some of which reflected clear knowledge that benefits under Part B could be less than they were under Part A. (Id. at 84-85). This evidence suggests that the likely prejudice/harmless error issue will be resolved in Defendants' favor for at least some absent class members.

Likewise, other plan participants may have performed their own benefit comparisons, hired financial planners, looked at benefit estimates they received before and after the conversion, or spoken to co-workers to learn the relevant information. For example, the Court found that Plaintiff Janice Amara learned about wearaway from a conversation with CIGNA's Chief Actuary, Mark Lynch. (Id. at 94). If Mr. Lynch (or anyone else) told other class members about wearaway, then those class members' claims – to the extent based on the failure to disclose wearaway – would fail on a likely prejudice/harmless error standard. See Weinreb, 404 F.3d at 172 (holding that plaintiff failed to establish likely prejudice where there was no SPD, but plaintiff was advised informally of plan enrollment requirement). Similarly, absent class member Steven Law's deposition testimony that he performed his own benefit comparisons should demonstrate the absence of likely prejudice and/or harmless error, and therefore preclude any remedy to him. (Law Dep. at 70-75, attached as Ex. A hereto).[4]

In addition, Plaintiffs make clear in their Memorandum on Relief that they seek an award of ten years of additional retroactive benefits (from 1998 to the present), plus continued benefits going forward.[5] (Pls' Proposed Order at 3). However, even if a particular class member did not

---

[4]    Defendants offer the deposition testimony of Mr. Law, who did not testify at trial, only by way of example to demonstrate that this Court should hear testimony from him and each absent class member before making findings on likely prejudice or harmless error.

[5]    Specifically, Plaintiffs request (1) for those who already have commenced their pension, dollars in the amount of back benefits and interest, and (2) for those who have not yet commenced benefits, retroactive increases in their account balances and prospective increases in the amount they are paid. (Pls' Mem. at 34-37).

have actual knowledge of the relevant information sufficient to demonstrate no likely

prejudice/harmless error in 1997 or 1998, any remedy to which that class member may be

entitled should cease, at a minimum, at the point in time when that class member acquired actual

knowledge of the relevant information (or otherwise ceased to be prejudiced/harmed).  See e.g.,

Frommert v. Conkright, 433 F.3d 254, 263 (2d Cir. 2006) (where the company provided a

deficient SPD but then provided an adequate one in 1998, limiting remedy for prior deficient

SPD to those hired prior to 1998).  By way of example, class members Barbara Hogan[6] and

Robert Upton[7] testified that they learned about wearaway and/or that their benefits under Part B

were lower than under Part A, at some point in time before trial.  (Defs' Proposed Post-Trial

Findings of Fact ¶¶ 391, 406).  Likewise, Plaintiffs Janice Amara, Gisela Broderick, and Annette

Glanz alleged in the various versions of the Complaint certain facts (and retained counsel and

experts who opined on those facts), and should be charged with knowledge of those facts at or

about the time the Complaint was filed.  See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 92

(1990) ("Under our system of representative litigation, each party is deemed bound by the acts of

his lawyer-agent *and is considered to have notice of all facts, notice of which can be charged

upon the attorney*.") (emphasis added, internal citations and quotations omitted); New York v.

Hill, 528 U.S. 110, 115 (2000) (same); Harris v. Bodman, Civil Action No. 06-1848 (JR), 2008

WL 647528, at *1 (D.D.C. March 11, 2008) (client will be charged with knowledge of the

EEOC's issuance of a right to sue letter at the point in time when attorney had notice of the

---

[6]     Ms. Hogan testified that she requested a benefit estimate in 1999 and compared that estimate
to her prior benefit estimates.  She also was not affected by wearaway because she received
more favorable opening account balance conversion factors.  (Defs' Proposed Post-Trial
Findings of Fact ¶¶ 385, 391).

[7]     Mr. Upton learned in 1999 that his pension benefit was going to be 29% lower under the
new plan.  (Defs' Proposed Post-Trial Findings of Fact ¶ 406)

letter).  This knowledge – at a minimum – cuts off liability for any new accruals for each

Plaintiff or class members at the point in time when that knowledge was acquired.

      Thus, not only is the question of whether a particular absent class member is entitled to a

remedy an individualized inquiry, but whether that remedy continues and for how long it

continues are also individualized issues that the Court must decide before any remedy is

awarded.  For that reason, Plaintiffs' assertion that the Court can now order a classwide remedy

is simply wishful thinking.[8]

### 2.    Defendants' Proposal For Resolving Individualized Issues.

      Pursuant to the Court's March 12, 2007 Order and its February 15, 2008 Memorandum of

Decision, the adjudication of classwide issues has concluded and a series of individualized issues

remain to be adjudicated.[9]  The Second Circuit, in In re Visa Check/MasterMoney Antitrust

Litig., 280 F.3d 124, 141 (2d Cir. 2001), explained in similar circumstances that when

individualized issues arise, a court may "decertify[] the class after the liability trial and provid[e]

notice to class members concerning how they may proceed to prove damages."  See also Barnes

v. Am. Tobacco Co., 161 F.3d 127, 147-49 (3d Cir. 1998) (affirming decertification of Rule

23(b)(2) class given unmanageability of individual issues); O'Connor v. Boeing N. Am. Inc., 197

F.R.D. 404, 413 (C.D.Ca. 2000) (decertifying Rule 23(b)(2) class because "individual variances"

---

[8]    Defendants may also be able to rely on a release signed by certain absent class members as a complete defense to their claims.  Although the Court rejected Defendants' defense based on the release signed by Plaintiffs and certain class members who testified, the Court acknowledged that a later version of the release may have overcome the ambiguity that the Court found fatal to Defendants' position.  (MOD at 39 n.12).  Whether this defense would be successful would presumably be determined on a case-by-case-basis.

[9]    The purpose of Fed. R. Civ. P. 23(c)(1)(B) is to identify which claims, issues, and defenses are being litigated on a classwide basis so the parties and the Court can "'determine how the case will be tried.'"  Wachtel v. Guardian Life Ins. Co. of Am., 453 F.3d 179, 186 (3d Cir. 2006) (vacating class certification order based on inadequacy of Rule 23(c)(1)(B) statement of issues, which requires a "full and clear articulation of the litigation's contours. . . .").

caused the court to conclude that "maintaining a class action no longer provides for judicial economy or the fair determination of [the] controversy").  Here, for the reasons explained above, individualized issues of likely prejudice/harmless error (and whether any particular class member was likely, at the time of the cash balance plan amendment, to suffer a significant reduction in his or her rate of future benefit accrual) must be resolved before absent class members are entitled to a remedy.  Under these circumstances, Defendants would not oppose decertification of the class based on the resolution of the classwide issues identified in the Court's March 12, 2007 Order.

Alternatively, Defendants believe that another approach can accomplish the same goals without formal decertification of the class:

> Accumulated experience in class action litigation has led to several recognized approaches for managing and resolving related individual issues.  After identifying common issues that would support class certification, and recognizing generally or specifically that individual issues would remain after common questions have been litigated, the chief judicial management tool for handling individual issues is to sever them for subsequent trial. . . .

> \* \* \*

> When irreducible individual issues remain, it is in the interest of the entire class to ensure that adequate notice is sent to the class to advise class members of the need to come forth individually in some manner than the court prescribes in order to assert their claims.

Herbert B. Newberg & Alba Conte, Newberg on Class Actions §§ 9.59, 9.71 (4th ed.).  In accordance with this authority, and the process for resolving individualized issues identified by the Supreme Court in Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 360-61 (1977), Defendants propose a three-step process for resolving the individualized issues in this litigation:

o First, class members should be provided notice (agreed to by the parties and approved by the Court) outlining the Court's findings and the current status of the litigation, and an opportunity to express their willingness to participate in future proceedings regarding each individual's knowledge of the relevant facts, other aspects of the likely prejudice/harmless error analysis, and any other individualized issues.

o Second, for those class members who are willing to proceed to the next phase of the case, Defendants must be afforded the opportunity to serve document requests and conduct depositions regarding these individualized issues.

o Third, this Court can conduct "Teamsters hearings" to resolve all remaining individualized issues for each class member. Teamsters, supra, 431 U.S. at 360-61. See also Manual for Complex Litigation (Fourth) 32.42 (2004).

As that process is completed for each absent class member, the Court can issue findings of fact and conclusions of law as to (1) whether that class member was likely, at the time of the cash balance conversion, to have suffered a reduction in his or her rate of future benefit accruals, (2) whether that class member was likely prejudiced (and, if appropriate, until what time period) by any disclosure deficiencies, (3) whether any deficiencies in the disclosures to that participant were harmless error (or whether they became harmless error at some point in time such that any remedy should end), and (4) the appropriate remedy, if any, to address that participant's prejudice or harm, and the length of time that remedy should remain in force, in accordance with the principles discussed in detail below.[10]

---

[10] Plaintiffs argue in their Memorandum on Relief that Defendants previously agreed to afford the same remedies to all Plan participants, and suggest that Defendants waived any right to litigate individualized issues. (Pls' Mem. at 25). This is disingenuous for several reasons. First, Defendants made an *offer* to treat all Plan participants in a similar fashion if the Court denied the motion for class certification. (See Defs' Opp. to Pl's Mot. For Class Cert. at 9). As made clear from Defendants' submission and the Order granting the motion for class certification, however, Defendants' offer was not accepted by Plaintiff Amara (the only plaintiff to whom the offer was extended) and was not adopted by the Court. Second, Defendants only offered to treat "similarly situated" individuals similarly. As Defendants made clear in that same submission – and in numerous subsequent filings – detrimental reliance and/or prejudice are individualized issues that must be resolved before determining

**B.     Even For Those Class Members Who Prove Likely Prejudice And For Whom Defendants Cannot Demonstrate Harmless Error, The Court Can Only Award "Appropriate Equitable Relief" Under ERISA Section 502(a)(3).**

Defendants respectfully disagree with the Court's conclusion that the SPDs, summary of material modification ("SMM"), and Section 204(h) notice did not satisfy ERISA's requirements.  Nevertheless, in light of the Court's ruling in its Memorandum of Decision, Defendants do not oppose Plaintiffs' request for a supplemental communication to class members that contains more detailed information about wearaway and otherwise satisfies ERISA's requirements as interpreted by the Court.  Defendants respectfully submit that this communication should be based on the original 1998 SPD, with any modifications the Court deems necessary (and subject to whatever input from the parties the Court is willing to accept).[11]

Aside from this request for a supplemental communication, Plaintiffs' proposed remedies are largely barred by ERISA's carefully crafted, and limited, remedial provisions.

---

whether individuals are similarly situated.  Indeed, Defendants specifically made clear their position that if this case were certified, "every one of the estimated 25,000 class members would be called upon to present evidence, as to, inter alia, the extent if any, of his or detrimental reliance on the SPD."  (Defs' Opp. to Pl's Mot. For Class Cert. at 12).  (This brief referred to "detrimental reliance" because it was filed before the Second Circuit articulated its likely prejudice/harmless error analysis.)  That has been Defendants' position consistently, and remains their position today.

[11]   Importantly, however, this communication should only be subject to the statutory disclosure requirements as they existed *in 1998*, when the cash balance plan was adopted and when it became effective.  Plaintiffs offer no justification or precedent to support their request that the proposed remedial communication be subject to later versions of those requirements. (See Pls' Mem. at 30-31).

1.     **The Monetary Remedies Plaintiffs Seek Under ERISA Section 502(a)(3) Are Not "Appropriate" Because A Complete Remedy Was Available Under ERISA Section 502(a)(1)(B) If Plaintiffs Had Sued The Designated Plan Administrator.**

This Court has held that Plaintiffs can maintain their disclosure claims against CIGNA only under ERISA Section 502(a)(3).  (MOD at 70).  Plaintiffs' remedies therefore are limited to those provided for in that subsection of ERISA.

Section 502(a)(3) authorizes only limited remedies:

> A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).  The Supreme Court and the Second Circuit have explained that Section 502(a)(3) operates as a "catchall," and that relief under that provision is not "appropriate" where relief is available under another provision of ERISA:

> [The Supreme Court] has consistently disfavored the expansion of the availability of equitable relief where remedies at law are sufficient. In Varity Corp. v. Howe, 516 U.S. 489, 512, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996), the Court concluded that §§ 502(a)(3) and (5), the section's "catchall" provisions, "act as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." It also observed that "we should expect that where Congress provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.' " Id. at 515, 116 S. Ct. 1065.

Frommert, 433 F.3d at 270; LaRue v. DeWolff, Boberg & Assoc., Inc., 128 S.Ct. 1020, 1026 (2008) ("[W]e have held that relief is not "appropriate" under § 502(a)(3) if another provision, such as § 502(a)(1)(B), offers an adequate remedy.") (Roberts, J. concurring) (citing Varity, supra).

More specifically, the Second Circuit ruled in <u>Frommert</u> that "recalculation of benefits" is an available remedy under ERISA Section 502(a)(1)(B) for a Section 204(h) notice violation and that such relief is therefore not available under ERISA Section 502(a)(3).  The court held:

> The relief that the plaintiffs seek, recalculation of their benefits consistent with the terms of the Plan, falls comfortably within the scope of § 502(a)(1)(B), which allows a plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Because adequate relief is available under this provision, there is no need on the facts of this case to also allow equitable relief under § 502(a)(3). <u>See Johnson v. Buckley</u> 356 F.3d 1067, 1077 (9th Cir. 2004) ("when relief is available under section 1132(a)(1), courts will not allow relief under § 1132(a)(3)'s 'catch-all provision.'").

<u>Frommert</u>, 433 F.3d at 270.  <u>See also</u> <u>Harrison v. Metro. Life Ins. Co.</u>, 417 F. Supp. 2d 424, 433 (S.D.N.Y. 2006) (dismissing Section 502(a)(3) claim because, as with the claim dismissed in <u>Frommert</u>, adequate relief was available under Section 502(a)(1)(B)).

In this case, as in <u>Frommert</u>, Plaintiffs claimed ERISA disclosure violations.  In <u>Frommert</u>, however, the plaintiffs sued the pension plan administrators.  <u>See</u> <u>Frommert</u>, 433 F.3d at 256 (noting that defendants included "individually named Plan Administrators").  By contrast, Plaintiffs in this case had ample opportunity to sue the designated Plan Administrator for disclosure violations under Section 502(a)(1)(B), but they inexplicably chose not to do so. (MOD at 64 n. 23) (observing that "had Plaintiffs' counsel, even simply in an excess of caution, elected to name the plan administrator in addition to the company and the Plan itself, substantial confusion and effort would have been avoided").  Instead, Plaintiffs pursued their disclosure claims against CIGNA under Section 502(a)(3).  To the extent Plaintiffs now seek under Section 502(a)(3) a recalculation of their benefits without wearaway, that same relief would have been

available had they sued the designated Plan Administrator under Section 502(a)(1)(B).[12]
Pursuant to Frommert, Varity, and LaRue, because Plaintiffs could have sought recalculation of
their benefits against the designated Plan Administrator under Section 502(a)(1)(B), they cannot
obtain such relief under Section 502(a)(3), and their claim for relief against CIGNA must fail as
a matter of law.

Recognizing the difficulties they face in obtaining a remedy under Section 502(a)(3),
Plaintiffs devote several pages of their Memorandum on Relief to an exploration of why they are
entitled to a remedy under Section 502(a)(1)(B) against the Plan instead of CIGNA.  (Pls' Mem.
at 21-25).  This position cannot be reconciled, however, with the Court's clear (and correct)
pronouncement that "[t]he Second Circuit has also noted this assignment of duties by permitting
suits to recover benefits under a plan to proceed against the plan itself and/or the administrator of
the plan, *while restricting claims of inadequate disclosures to plan administrators only.*"  (MOD
at 63) (emphasis added).  Cf. Krauss v. Oxford Health Plans, Inc., 517 F.3d 614, 631 (2d Cir.
2008) ("since Oxford is not 'the person specifically so designated by the terms of the instrument
under which the plan is operated,' 29 U.S.C. § 1002(16)(A)(I), it is not a plan 'administrator'
within the meaning of ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1).  [Plaintiffs] therefore cannot
recover statutory damages under that provision of ERISA for Oxford's nondisclosure of certain
information.").[13]

---

[12]    As noted below, Plaintiffs' assertion that they are entitled to be awarded additional pension
benefits under Part A, as if Part B had never existed, does not pass muster under Section
502(a)(1)(B) or Section 502(a)(3).

[13]    Defendants acknowledge that the Plan is an appropriate defendant – and perhaps the only
proper defendant – on a traditional claim seeking benefits under the terms of the plan.  The
Court recognized this as well in its decision.  (MOD at 68 n.26).  Here, however, Plaintiffs
seek benefits beyond those to which they are entitled under the Plan (and beyond those for
which the Plan has been funded) as a remedy for disclosure violations.

The appropriate path for Plaintiffs to have taken on their disclosure claims was set forth clearly in the Second Circuit's decision in <u>Frommert</u>.  Plaintiffs should have sued the designated Plan Administrator under Section 502(a)(1)(B), and requested that the Court order the Plan Administrator to recalculate their benefits without the undisclosed provision – in this case, wear-away.  <u>See</u> <u>Frommert v. Conkright</u>, 472 F. Supp. 2d 452, 458-59 (W.D.N.Y. 2007) (holding that the "best course" under Section 502(a)(1)(B) is to direct the plan administrator "'to recalculate plaintiff's retirement benefit'").  Plaintiffs' conscious decision to forego this path, while difficult to comprehend, forecloses them from being awarded the remedies they now seek under Section 502(a)(3).

### 2.     Plaintiffs' Request For An Injunction Requiring CIGNA To Provide Benefits Comparable To Those Available Under Part A Is Not "Appropriate Equitable Relief."

Even if the Court were to conclude that Plaintiffs are entitled to a remedy under ERISA Section 502(a)(3), the principal remedy they propose – awarding them retroactive and prospective benefits recalculated under Part A – does not constitute "appropriate equitable relief."  As this Court is well-aware, the Supreme Court has held that "appropriate equitable relief" under Section 502(a)(3) is limited to "those categories of relief that were *typically available in equity*."  <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204, 210 (2002) (emphasis added); <u>Mertens v. Hewitt Assocs.</u>, 508 U.S. 248, 256 (1993) (same).[14]  Regarding

---

[14]     <u>See also</u> <u>D'Amico v. CBS Corp.</u>, 297 F.3d 287, 292 n. 5 (3d Cir. 2002) ("Because plaintiffs have chosen to proceed under 29 U.S.C. § 1132(a)(3), their fiduciary duty claims are limited to equitable relief.  <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204, 122 S.Ct. 708 718-19, 151 L.Ed.2d 635 (2002)."); <u>Burstein v. Ret. Account Plan For Employees Of Allegheny Health Educ. and Research Found.</u>, 334 F.3d 365, 373 and n.12 (3d Cir. 2003) ("These claims for breach of fiduciary duty under ERISA are brought pursuant to ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B). . . .  We note that the Supreme Court has drawn a distinction between legal and equitable remedies in detailing what remedies are available under ERISA § 502(a)(3)(B) in its recent decision in <u>Great–West Life & Annuity Insurance Co. v. Knudson</u>, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002).").

injunctive relief in particular (the relief sought by Plaintiffs under ERISA Section 502(a)(3) in this case), the Supreme Court explained in <u>Knudson</u> that:

> statutory reference to that [injunction] remedy must, absent other indication, be deemed to contain *the limitations upon its availability that equity typically imposes*. Without this rule of construction, a statutory limitation to injunctive relief would be meaningless, *since any claim for legal relief can, with lawyerly inventiveness, be phrased in terms of an injunction*.

<u>Knudson</u>, 534 U.S. at 211 n.1 (emphasis added).

Here, Plaintiffs request an injunction requiring CIGNA to provide Plaintiffs (through the Plan) more money, both retroactively and prospectively. Although framed in terms of an injunction, this proposed remedy does not constitute equitable relief under Section 502(a)(3). <u>Id.</u> at 211 n.1; <u>Gerosa v. Savasta & Co., Inc.</u>, 329 F.3d 317, 321 (2d Cir. 2003) ("In determining the propriety of a remedy [under ERISA Section 502(a)(3)], we must look to the real nature of the relief sought, not its label."). To the contrary, this is precisely the type of relief that the Supreme Court held in <u>Knudson</u> was not available under ERISA. <u>Knudson,</u> 534 U.S. at 210 ("*Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for money damages*, as that phrase has traditionally been applied. . . . And money damages are, of course, the classic form of legal relief.") (emphasis added; internal quotations and citations omitted).

Pursuant to <u>Knudson</u>, the Second Circuit in <u>Coan v. Kaufman</u>, 457 F.3d 250 (2d Cir. 2006), affirmed this Court and rejected a retirement plan participant's request for a similar "injunction" seeking additional benefits:

> We agree with the district court, moreover, that the alternative relief Coan seeks under section 502(a)(3), an injunction requiring the defendants to restore funds to the defunct 401(k) plan to be distributed to former participants, does not transform what is effectively a money damages request into equitable relief.

Id. at 264.  Similarly, the Third Circuit recently held as a matter of law that a remedy strikingly

similar to the injunction requested by Plaintiffs here was not equitable relief under Section

502(a)(3).  In Eichorn v. AT&T Corp., 484 F.3d 644 (3d Cir.), cert. denied, 128 S.Ct. 709

(2007), the plaintiffs asserted a claim under Section 502(a)(3) for appropriate equitable relief,

and sought an injunction "requiring [the defendant] to adjust its pension records," which would

have "create[d] an obligation to pay the plaintiffs more money, both in the past and going

forward."  Id. at 655.  The Third Circuit held that such a remedy – even though phrased an

"equitable injunction" – was not equitable relief available under Section 502(a)(3).[15]

      Plaintiffs' requested injunction in this case – requiring CIGNA to provide Plaintiffs

benefits comparable to those they had under Part A – is no different from the proposed

injunctions in Coan and Eichorn seeking greater pension benefits.  Both remedies, although

phrased in terms of an injunction, would "create an obligation to pay the plaintiffs more money"

and both are legal relief not available under ERISA Section 502(a)(3).  Coan, 457 F.3d at 264;

Eichorn, 484 F.3d at 655.[16]  Consequently, as in Coan and Eichorn, Plaintiffs' request for an

injunction under ERISA Section 502(a)(3) should be denied.

---

[15]   See also Ranke v. Sanofi-Synthelabo, Inc., No. 04-1618, 2004 WL 2473282, at *7 (E.D.Pa. Nov. 3, 2004) (holding that request for reinstatement of the enhanced pension benefit was not "appropriate equitable relief" under ERISA); Young v. Reconstructive Orthopaedic Assocs., II, No. 03-2034, 2005 WL 627796, at *15 (E.D. Pa. March 16, 2005) (refusing to award "benefits [plaintiff] would have received had [defendant] not breached its fiduciary duty" because such a remedy "does not fall within the narrow set of remedies defined by the Supreme Court as appropriate under ERISA Section 502(a)(3)").

[16]   Plaintiffs reliance on Bowen v. Mass., 487 U.S. 879 (1988), for a contrary proposition is misplaced.  The Supreme Court in Knudson specifically distinguished Bowen on the grounds that it dealt with a different statute with different statutory language:

> Bowen v. Massachusetts, supra, upon which petitioners rely, is not to the contrary.  We held in Bowen that the provision of the Administrative Procedure Act that precludes actions seeking "money damages" against federal agencies, 5 U.S.C. § 702, does not bar a State from seeking specific relief to obtain money to which it claims

**3.     Plaintiffs' Request For Additional Benefits Cannot Otherwise Be Characterized As "Appropriate Equitable Relief."**

Plaintiffs also argue, as others have before them, that because equity courts had sole jurisdiction over matters relating to trusts, they had broad discretion to craft appropriate remedies without regard for the distinction between "legal" and "equitable."  (See Pls' Mem. at 5-8).  The Supreme Court, however, squarely considered and specifically rejected the argument that equitable relief under ERISA Section 502(a)(3) encompasses all such remedies:

> Since *all* relief available for breach of trust could be obtained from a court of equity, limiting the sort of relief obtainable under § 502(a)(3) to "equitable relief" in the sense of "whatever relief a common-law court of equity could provide in such a case" would limit the relief *not at all.*  We will not read the statute to render the modifier ["equitable"] superfluous.

Mertens, 508 U.S. at 257-58 (footnote omitted); see also Knudson, 534 U.S. at 219 ("These trust remedies are simply inapposite.  In Mertens, we rejected the claim that the special equity-court powers applicable to trusts define the reach of § 502(a)(3).").  Consistent with Knudson and Mertens, the Second Circuit has explained:

> [the Supreme] Court made clear that section 502(a)(3) requires *both* that the "basis for [the] claim" *and* the "nature of the recovery" sought be equitable.  See Sereboff, 126 S.Ct. at 1874.  Even if breach of fiduciary duty is an equitable *claim*, therefore, *remedies* for breach of that fiduciary duty do not constitute "equitable relief" under section 502(a)(3) unless the plaintiff seeks a "categor[y] of relief that [was] typically available in equity." Mertens, 508 U.S. at 256 (emphasis omitted).

_____

entitlement under the federal Medicaid statute, 42 U.S.C. § 1396b(d) (1994 ed. and Supp. V).  Bowen "did not turn on distinctions between 'equitable' actions and other actions ... but rather [on] what Congress meant by 'other than money damages' " in the Administrative Procedure Act. Department of Army v. Blue Fox, Inc., 525 U.S. 255, 261, 119 S.Ct. 687, 142 L. Ed. 2d 718 (1999).

Knudson, 534 U.S. at 210.

<u>Coan</u>, 457 F.3d at 264.[17]

Here, the relief Plaintiffs seek is, at bottom, an award of additional benefits, both prospectively and retroactively.  No matter how Plaintiffs try to characterize this relief, such a remedy is not "appropriate" or "equitable," and consequently is unavailable under ERISA Section 502(a)(3).[18]

---

[17]    See also <u>Fisher v. Penn Traffic Co.</u>, No. 06 Civ. 5848(HB), 2007 WL 496657, at *5 (S.D.N.Y. Feb. 16, 2007) ("Fisher cannot cloak a legal claim for damages in equitable clothing. ERISA § 502(a)(3) 'only allows for *equitable relief*.'  Although Fisher requests declarations [that he receive a lump-sum benefit] from this Court, the nature of such declarations is inherently legal."); <u>Mitchell v. Emeritus Mgmt., LLC</u>, 524 F. Supp. 2d 67, 71 (D. Me. 2007) (rejecting the plaintiff's remedial request as not "typically available at equity" because it would require defendant "to pay her life insurance benefits").

[18]    Plaintiffs also try to justify their request for "past due benefits" on the grounds that Defendants have been unjustly enriched.  (Pls' Mem. at 18-21).  Plaintiffs ignore, however, that this Court already held that the cash balance plan was entirely lawful, and accordingly no unjust enrichment resulted from the adoption of Part B.  This Court also did not find any unjust enrichment (nor did Plaintiffs allege or prove any) as a result of the disclosures that this Court held were deficient.  Indeed, the remedy Plaintiffs propose for the disclosure violations bears no relationship to any alleged unjust enrichment.

Moreover, any unjust enrichment only could form the basis of a claim for restitution at law, and would not be "appropriate equitable relief" under ERISA Section 502(a)(3).  The Supreme Court in <u>Knudson</u> explained that a claim for restitution in equity based on unjust enrichment could only lie where specific "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession."  <u>Knudson</u>, 534 U.S. at 213.  By contrast, where the plaintiff "could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him, the plaintiff had a right to restitution *at law*."  <u>Id.</u> (emphasis added).  Here, Plaintiffs do not assert title or right to any particular property, so any claim to unjust enrichment would be a claim at law, not "equitable relief" under ERISA Section 502(a)(3).  <u>E.g.</u>, <u>Nechis v. Oxford Health Plans, Inc.</u>, 421 F.3d 96, 103 (2d Cir. 2005) (rejecting claim for unjust enrichment where the monies sought could not "clearly be traced back to particular funds or property in the defendant's possession").

**C.     Plaintiffs And The Class Are Not Entitled To Benefits Under Part A (Or Something Similar) Through Today And Into The Future As A Remedy For Their 204(h) Notice Claim.**

In their Memorandum On Relief, Plaintiffs propose as a remedy for their Section 204(h) notice claim that every class member should be entitled to benefits substantially equivalent to the benefits they would have earned under the Plan if Part A were still in effect today and into the future.[19]  (Pls' Mem. at 34-37).  Even putting aside that Plaintiffs' proposed remedy runs afoul of the "appropriate equitable relief" limitations in ERISA Section 502(a)(3), Plaintiffs' proposed remedy also fails because it (1) bears no relationship to the prejudice or harm Plaintiffs suffered, as it disregards the myriad communications provided to Plaintiffs notifying Plan participants that they would earn benefits under the Part B benefit formula, (2) ignores Amendment No. 4, which was a separate (and unchallenged) amendment that froze benefits under Part A and was disclosed to class members in clear and unambiguous terms, and (3) cannot be reconciled with the Court's holding that rehires were not entitled to any Section 204(h) notice and are not entitled to any remedy on their Section 204(h) notice claim.

**1.     No Member of the Class Is Entitled To Benefits Under Part A (Or Anything Comparable) Because Such A Remedy Bears No Relationship To The Harm Suffered, Since the 1998 Part B SPD Sufficiently Disclosed Part B's Ongoing Benefit Formula And Class Members Received Several Communications Describing Exactly What Their Benefits Were At Any Point In Time.**

Defendants acknowledge that some courts have stated that plan amendments are not enforceable where a proper Section 204(h) notice is not provided.  However, neither the statute nor Second Circuit precedent authorizes such a sweeping result where it is not necessary to remedy the harm caused to plan participants.  To the contrary, Section 204(h) did not contain any

---

[19]     Plaintiffs also propose a remedy on their Section 204(h) notice claim regarding wearaway that is the same remedy proposed on Plaintiffs' SPD/SMM claims.  The wearaway remedy is discussed separately infra at 25-27.

provision authorizing the complete invalidation of plan amendments enacted without a Section 204(h) notice until the statute itself was amended in 2001, and even that new statute provides that an amendment is invalid only if the failure to provide the Section 204(h) notice was an "egregious failure."  29 U.S.C. § 1054(h).[20]  Here, awarding Plaintiffs and members of the class benefit accruals under Part A (or anything similar) would be a windfall, and would provide Plan participants with much more than any of them reasonably could have, or would have, expected.

"[T]here is no doubt about the centrality of ERISA's object of protecting employees' justified expectations of receiving the benefits their employers promise them."  Frommert, 433 F.3d at 262 (quoting Central Laborers' Pension Fund v. Heinz, 541 U.S. 739, 743 (2004)).  (See also MOD at 71 (Section 204(h) notice requirement is designed to protect "employees' reasonable expectations regarding [their] benefits")).  On the other hand, however, the "aim of ERISA is to make the plaintiffs whole, *but not to give them a windfall*."  Henry v. Champlain Enter., Inc., 445 F.3d 610, 624 (2d Cir. 2006) (citation and internal quotations omitted) (emphasis added).  Accordingly, the court in In re Citigroup Pension Plan ERISA Litig., No. 05 Civ. 5296, 2007 WL 4205855, at * 3 (S.D.N.Y. Nov. 27, 2007), invalidated a plan amendment adopting a cash balance plan only "to the extent" the amendment failed to disclose one particular aspect of the plan, but did not invalidate the entire plan.

The Section 204(h) notice disclosure violations found by this Court fall into two distinct categories:  (1) disclosure deficiencies regarding wearaway and opening account balances, and (2) disclosure deficiencies regarding the ongoing benefits earned under Part B each year from 1998 to the present.  The latter deficiencies relate only to the disclosures in the 1997 Newsletter

---

[20]    That Congress had to amend Section 204(h) in 2001 to specifically insert a provision invalidating amendments for which a Section 204(h) notice was not provided demonstrate that this remedy was not available under the prior version of the statute.

and Retirement Kits.[21]  Importantly, Plaintiffs have not alleged – and this Court has not found – any misrepresentations or disclosure deficiencies regarding the description of the ongoing benefit formula in the 1998 SPD.  To the contrary, the SPD (which post-dates both the Retirement Kit and the Newsletter) unambiguously describes how benefit credits are earned based on the class member's age, service, and salary, and how interest is earned on the account balance at a rate based on "5-year Treasury Bonds as of November of the previous calendar year, plus 0.25 percentage points."  (Defs' Proposed Post-Trial Findings of Fact ¶ 242).[22]  Thus, by the time of the publication of the SPD (if not before), class members were properly apprised of the ongoing benefit formula.  Class members also received annual account statements reflecting their account balances at the beginning of each year, the amount of benefit credits and interest earned during the year, and their account balance at the end of the year.  As such, each class member knew exactly how much he/she earned in additional benefits in each year, and how that number was calculated.

For example, Plaintiff Annette Glanz was explicitly told in her annual account statements that she earned a benefit of $3095.98 in 1998, $3495.14 in 1999, $4994.94 in 2000, and $5668.89 in 2001, and she was told how those benefits were calculated.  (See Trial Ex. 520).  Yet despite these disclosures, Plaintiffs request, as a remedy for the disclosure violation, benefit

---

[21]  Deficiencies regarding wearaway – and the appropriate remedy for such deficiencies – are addressed infra at 25-27.  Importantly, these deficiencies relate exclusively to the creation of opening account balances based on the benefits earned by participants as of December 31, 1997.

[22]  The SPD also describes the 4.5% minimum and 9% maximum interest crediting rates.  (Defs' Proposed Post-Trial Findings of Fact ¶ 242).

accruals in each of those years that (according to Plaintiffs) would far exceed the annual benefit accruals that Ms. Glanz was unambiguously told she was receiving.[23]

In light of the 1998 SPD and annual account statements, it would not be "appropriate" or "equitable" – or in keeping with ERISA's disclosure requirements or enforcement provisions – to award class members *more* in benefits than they were told they were going to receive, or than they could reasonably have expected to receive, in any given year.  In re Citigroup Pension Plan ERISA Litig. 2007 WL 4205855 at * 3; see also Layaou v. Xerox Corp., 238 F.3d 205, 212 (2d Cir. 2001) ("ERISA empowers plan participants and beneficiaries to bring civil actions against plan fiduciaries for any damages *that result from* the failure to disclose. . . .") (internal quotations omitted; emphasis added).

>    **2.      No Class Member Is Entitled To Benefits Under Part A Because Amendment No. 4 Properly Froze Benefit Accruals Under Part A And Has Not Been Challenged In This Litigation.**

Even if the adoption of Part B was declared invalid as Plaintiffs suggest, Plaintiffs still would not be entitled to any additional benefits under Part A because Amendment No. 4 properly froze benefit accruals under Part A and has not been challenged in this litigation.  Thus, if the adoption of Part B is declared ineffective (as Plaintiffs request), then the only plan in effect must be Part A as frozen by Amendment No. 4.

Specifically, in November 1997, CIGNA adopted Amendment No. 4 to the Plan, which froze benefit accruals for all non-grandfathered participants effective December 31, 1997.  (Trial Ex. 2, Amendment No. 4 (D00132-33)).  CIGNA explained the terms of Amendment No. 4 in its Retirement Kit.  Specifically, CIGNA advised that: "You will earn no further benefits under the Pension Plan after December 31, 1997."  (Trial Ex. 508, Q&A at 4 (D00726)).  Plaintiffs' own

---

[23]     Again, Defendants are not addressing here the Court's findings and conclusions regarding the failure to disclose wearaway.  That discussion occurs infra at 25-27.

communications expert, James Stratman, admitted that he could not draft "clearer text that would explain to participants in the new plan that they would stop accruing benefits under the old plan as of December 31, 1997" than was included in the Retirement Kit.  (Stratman Tr. 594).  Not surprisingly, therefore, Plaintiffs did not challenge the effectiveness of Amendment No. 4 in their Third Amended Complaint, nor did they challenge the validity of Amendment No. 4 in their statement of class claims, issues and defenses.  See March 12, 2007 Order Under Rule 23(c)(1)(B).

Governing regulations make clear that Amendment No. 4 must be treated as a separate amendment from the amendment adopting Part B.  26 C.F.R. § 1.411(d)-3, as in effect in 1997 and 1998, made clear that separate amendments are treated "as one plan amendment" only where the amendments have "the same adoption and effective dates."[24]  26 C.F.R. § 1.411(d)-3(b).  Here, Amendment No. 4 was adopted in November 1997, but the cash balance plan amendment was adopted on December 21, 1998.[25]  Thus, these two amendments cannot be treated "as one plan amendment" under ERISA.

This Court has held that certain communications describing the adoption of Part B were deficient.  But Plaintiffs do not suggest, nor is there any basis to conclude, that the deficient communications regarding Part B's adoption rendered deficient the communications about Amendment No. 4 merely because both communications were in the same written materials.  Amendment No. 4 was described in clear and unambiguous terms.  No Plaintiff or testifying

---

[24]    Newer regulations are consistent with the regulations in effect during the relevant time.  See 26 C.F.R. § 1.411(d)-3(a)(2)(ii); 26 C.F.R. § 1.411(d)-3(g)(4).

[25]    Amendment No. 4 and the cash balance amendment also were effective on different dates: December 31, 1997 versus January 1, 1998.  These regulations were issued under ERISA's anti-cutback rule, ERISA Section 204(g), 29 U.S.C. § 1054(g).  There is no basis for interpreting ERISA Section 204(h), 29 U.S.C. § 1054(h), any differently from ERISA 204(g).

class member testified as to any ambiguity or doubt that their benefits under Part A were frozen, and they each understood that they were not earning any additional benefits under Part A.  (<u>See, e.g.</u>, Hogan Tr. 728 ("[Y]ou understood that you wouldn't be earning any benefits, any more benefits, under the old plan, right? A. Correct.").  Under these circumstances, no basis exists for rendering Amendment No. 4 ineffective, or otherwise ordering participants to earn new benefits under Part A.

**3.    Rehires Are Not Entitled To Benefits Under Part A (Or Something Similar) Because They Were Not Entitled To Any Section 204(h) Notice.**

In their Memorandum On Relief, Plaintiffs also ignore this Court's specific holding that rehires were not entitled to a Section 204(h) notice because they were not "plan participants" for purposes of the Section 204(h) notice requirements, and because rehires were not likely to suffer a significant reduction in their rate of future benefit accrual because of the adoption of the cash balance plan, or any amendment to the rehire rule.  (<u>See</u> MOD at 107-09).  This Court explicitly rejected Plaintiffs' argument that "an employer must provide notice to separated vested employees regarding a change in the method of calculating benefits upon rehire, even after formal amendment of the plan."  (<u>Id.</u> at 107).  Of course, if rehires were not entitled to a Section 204(h) notice at the time of the amendment, then there can be no Section 204(h) notice violation with respect to those rehires.[26]  (<u>See</u> <u>id.</u> at 107) ("Under § 204(h), if notice is not due to an individual at the time of the amendment, the plan administrator need never provide a § 204(h) notice to that individual.").

---

[26]    Defendants acknowledge the Court's separate holding that disclosures regarding the mechanics of Part B, <u>i.e.</u>, wearaway, were deficient.  (<u>See</u> MOD at 109).  Whether rehires, or any other class members, are entitled to a remedy for these deficient disclosures on Plaintiffs' SPD and SMM claims is discussed separately <u>infra</u> at 25-27.

Indeed, the Section 204(h) notice violation that the Court found was based on two communications – the Retirement Information Kit and Newsletter – that were not even provided to rehires. This Court has held that the adoption of Part B was effective as to rehires when the Plan document was signed on December 21, 1998. (See id. at 109). Accordingly, rehires are not entitled to any remedy on Plaintiffs' Section 204(h) claim, and there is no basis for Plaintiffs' request for rehires to earn benefits under Part A.

**D.     Plaintiffs' Request For Additional Benefits Sufficient To Eliminate Wearaway Fails To Account For Subsequent Disclosures And Ignores The Legitimate Causes Of Wearaway.**

Putting aside that any award of additional benefits is not appropriate equitable relief available under ERISA (discussed supra at 14-18), and that the Plan should not be held liable for SPD deficiencies for which it was not responsible and in which it played no role (discussed supra at 12-13, Plaintiffs' request for additional benefits sufficient to eliminate wearaway also fails for other reasons.[27]

As the Court found, the wearaway effect was caused by three factors: (1) the use of an age-65 benefit to form the basis of the opening account balance; (2) the use of a mortality discount when calculating the opening account balance; and (3) falling interest rates. Unfortunately, Plaintiffs have not articulated any specific methodology for eliminating wearaway, so Defendants assume that Plaintiffs are suggesting some method for increasing opening account balances for those participants affected by wearaway.[28] In light of these causes

---

[27]   As stated earlier, Defendants do not object to additional disclosures being provided related to wearaway.

[28]   To the extent Plaintiffs have some other, as yet unarticulated proposed remedy, Defendants respectfully request the right to respond once an actual concrete proposal is made.

of wearaway, Plaintiffs' request to eliminate wearaway completely is unreasonable and inappropriate.[29]

First, although the Court found that the potential wearaway effect was not adequately disclosed in the SPD, it is indisputable that every member of the class knew exactly what his or her opening account balance was and how it was calculated. This information was specifically disclosed in the Retirement Kits and the initial account statement provided to participants. For example, Plaintiff Annette Glanz testified that she received her initial account statement and knew that the opening account balance was based the present value of her age-65 benefit. (Glanz Tr. 165-67). She even thought the amount was low, based on her age and service. (Glanz Tr. 165). Ms. Glanz also was told the specific interest rate that was used for converting her age-65 benefit into an opening account balance. (Trial Ex. 597). Under these circumstances, there is no reason to now use a lower interest rate than was disclosed,[30] or to apply a non-age-65 subsidized early retirement benefit, to increase opening account balances above the values specifically told to class members.

Second, this Court already held that it was proper to use a mortality discount when calculating opening account balances because of the life insurance value in the cash balance account balance. (See MOD at 93 n. 36). In other words, applying a mortality discount ensures that the cash balance account balance reflects the full value (but not more than the full value) of previously earned benefits. Again, there is no basis for increasing opening account balances for

---

[29]  Of note, participants with more than 55 age and service points who were converted on January 1, 1998 received more favorable opening account balance conversion factors, and therefore did not experience wearaway. (Defs' Proposed Post-Trial Findings of Fact ¶ 148). Likewise, certain participants rehired after December 31, 2000 did not have opening account balances at all, so those participants also did not experience wearaway. Class members that fall into these categories should not receive any remedy related to wearaway.

[30]  Plaintiffs' own expert testified that the interest rates used for calculating opening account balances were reasonable. (Defs' Proposed Post-Trial Findings of Fact ¶ 260).

the value of the mortality discount when Plan participants already received that full value as part

of the life insurance benefit provided in the cash balance plan.

Despite these objections, to the extent the Court believes that it would be appropriate to

increase opening account balances as a remedy for any disclosure violations related to wearaway,

Defendants respectfully submit that all opening account balances for those participants converted

on January 1, 1998 should be calculated in the same fashion that opening account balances were

calculated for participants with 55 or more points, because even Plaintiffs' expert admitted that

this was sufficient to avoid wearaway.  (Defs' Proposed Post-Trial Findings of Fact ¶ 148).  For

rehired participants converted after January 1, 1998, Defendants submit that a similar process

should be used, but based on the interest rates in effect at the time, i.e., 5 year treasury bonds

minus 0.75% for the relevant year.  Such a remedy would avoid wearaway and thereby moot any

of the deficiencies identified by the Court in the 1998 SPD.

**E.    Plaintiffs' Request For Additional Benefits For Participants Who Previously Elected A Lump Sum Benefit With A Lower Value Than Their Subsidized Early Retirement Benefit Is Inappropriate.**

To remedy the failure to provide relative value disclosures that described the information

the Court found was required to be provided as part of the benefit election materials, Defendants

do not oppose additional communications to those participants who elected lump sum benefits

between January 1, 1998 and September 30, 2004, but who had annuity options at the time of

their benefit election that were relatively more valuable because of the availability of a

subsidized early retirement benefit.[31]  Defendants also do not oppose giving those participants

the right to undo their prior election and make a new benefit election with the relevant

---

[31]    The 2003 Treasury regulations permit optional forms of benefits to be deemed relatively equal where they vary from the actuarial present value of the qualified joint survivor annuity by 5 percent or less.  See 26 C.F.R. § 1.417(a)(3)-1(c)(2)(iii).

information in hand.[32]  Those participants who make a new election would therefore be entitled

to those benefits – and only those benefits – that they could have elected, in the form they could

have elected them had they been provided all of the information required.

As a consequence, some participants who now choose an annuity benefit *may* be required

to pay back *part* of the lump sum they received.  That is, of course, because a participant who re-

elects an annuity benefit effective between 1998-2004 would be entitled to annuity payments for

those prior years.  If the value of those annuity payments to date would exceed the lump sum

amount the participant received, then the participant would not have to repay any portion of the

lump sum.  This will be true, for example, for participants who, as Plaintiffs have argued, had

annuities that were substantially more valuable than their lump sum benefits.  For a participant

whose lump sum exceeds the value of the annuity payments that the participant would have

received to date (because the lump sum and annuity benefits for that participant were relatively

close in value), however, the participant should be required to pay back the difference if they

want to elect an annuity, thus putting the participant in the same position vis-à-vis the Plan that

the participant would have been in had he/she made the election in the first place with all

required information.

Plaintiffs' proposal to merely increase the benefits of each of these individuals by the

value of the additional annuity would not be appropriate equitable relief under ERISA Section

502(a)(3), nor would it constitute a benefit provided under the terms of the Plan under ERISA

Section 502(a)(1)(B).  Instead, such a benefit would be a windfall to participants by providing

them additional monies to which they are not entitled under the terms of the Plan and that were

---

[32]   This remedy may become moot, depending on the Court's remedy regarding wearaway
disclosures, discussed <u>supra</u> at 25-27.

never promised to participants, and that no participant could have elected had he/she been provided with the relevant information.  Nothing in ERISA justifies such a remedy.[33]

**F.    Plaintiffs' Request For A Common Fund Attorneys' Fee Enhancement, Incentive Payments, And Interest Are Not Appropriate.**

Defendants do not dispute that ERISA Section 502(g) may entitle Plaintiffs to reasonable attorneys' fees, and Defendants will respond in due course to any specific request (supported by appropriate documentation) for attorneys' fees based on a lodestar calculation.  See 29 U.S.C. § 1132(g).  Defendants submit that such a request should be deferred until the Court rules on the other remedies requested by Plaintiffs.

Although Defendants recognize that the Court has discretion to award Plaintiffs fees under ERISA, Plaintiffs' Memorandum on Relief reveals that Plaintiffs' counsel also intend to ask the Court to order their absent class member clients -- who have never received notice of this action, much less been given the opportunity to decide whether they wanted to participate – to pay them *additional* fees.  Such fees, which would be in excess of the "reasonable" statutory fee under ERISA Section 502(g), would be deducted from any monetary recovery of pension benefits that might be obtained for such class members.[34]

A reasonable statutory fee that might be obtained from Defendants in this case, if the Court in its discretion elected to award a fee, would properly be calculated on the basis of

---

[33]    Moreover, Plaintiff's suggestion that relief should be granted on their claim arising under ERISA Section 204(g) is baseless, since Plaintiff did not prove any plan amendment that reduced participants' previously-accrued benefits.  29 U.S.C. § 1054(g).  (See Defs' Post-Trial Brief at 40-48).

[34]    Under ERISA, like most fee-shifting statutes, it is the party rather than the attorney that is eligible for a fee award.  Nevertheless, Defendants attribute the position of the Memorandum On Relief to Plaintiffs' counsel because it is unclear whether the class representatives have directed or authorized Plaintiffs' counsel to take this position.

Plaintiffs' counsel's lodestar with respect to claims on which Plaintiffs prevailed. [35]  Any further fee that might be obtained from class members' monetary recovery (if any), in addition to being, by definition, "supra-reasonable," would constitute an enhancement of Plaintiffs' counsel's lodestar, at the expense of their involuntary and likely unknowing clients.

The relief phase of this litigation should not result in anything that would properly be regarded as a "common fund;" as explained above, any increase in specific class members' pension benefits would necessarily require individualized proof and result in individualized awards.  Putting this point aside, however, Plaintiffs' counsel would not be entitled to enhancement of a lodestar-based award in this statutory fee case even if they had actually created (or might in the future create) a "common fund."

In City of Burlington v. Dague, 505 U.S. 557 (1992), the Supreme Court, observing that "case law construing what is a 'reasonable' fee applies uniformly" to federal fee-shifting statutes, explained that it had "established a 'strong presumption' that the lodestar represents the 'reasonable fee'."  Id. at 562 (citation omitted).  The Court held that "contingency enhancement" of lodestars (by use of a multiplier) was "not consistent with our general rejection of the contingent-fee model for fee awards, nor is it necessary to the determination of a reasonable fee."  Id. at 566.

---

[35]    The lodestar method multiplies

> the numbers of hours expended by each attorney involved in each type of work on the case by the hourly rate normally charged for similar work by attorneys of like skill in the area and, once this base or lodestar rate is established, ... [the court] determine[s] the final fee by then deciding whether to take into account other less objective factors, such as the risk of litigation, the complexity of the issues, and the skill of the attorneys.

Savoie v. Merchants Bank, 166 F.3d 456, 460 (2d Cir. 1999)

Since City of Burlington, a number of appellate courts have concluded that the principles articulated in that case apply to ERISA actions.  See, e.g., Murphy v. Reliance Standard Life Ins. Co., 247 F.3d 1313, 1315 (11th Cir. 2001) ("a contingency fee enhancement is improper under ERISA's attorney's fee provision"); Elmore v. Cone Mills Corp., 23 F.3d 855, 863 n.8 (4th Cir. 1994) (in an ERISA class action, court observed that "enhancement based on the risk of contingency would be inappropriate" after City of Burlington); Drennan v. Gen. Motors Corp., 977 F.2d 246, 253-54 (6th Cir. 1992) (rejecting multiplier of two in an ERISA class action, citing City of Burlington).  The Third Circuit, in particular, had occasion in Brytus v. Spang & Co., 203 F.3d 238 (3d Cir. 2000), to address the specific question whether plaintiffs' counsel in an ERISA class action could obtain a "common fund" recovery from their clients in addition to a statutory fee from the defendant.  Analyzing City of Burlington, the Brytus court found no equitable basis for a common fund recovery:

> In this case, there is no inequity to redress, as [defendant] ultimately bore the entire cost of the litigation.  Counsel argue that their clients, the original plaintiffs, assigned to counsel any statutory fee they received, but in fact those plaintiffs paid nothing toward counsel's fee, as that was received from [defendant].  The class members may have been enriched, but their enrichment was not at the expense of either the litigating parties or their counsel.

Brytus, 203 F.3d at 246.

As in Brytus, there will be no equitable basis here, even if a common fund were created, for a common fund recovery to augment an already "reasonable" fee.  The Court should therefore limit any fee award to Plaintiffs' counsel's lodestar, insofar as it might reflect time devoted to claims on which Plaintiffs prevailed.

Likewise, Plaintiffs' request for incentive awards for the named Plaintiffs and testifying class members also is inappropriate, because such awards are not available under any of ERISA's enforcement provisions.  Incentive awards do not constitute benefits "under the plan"

under ERISA Section 502(a)(1)(B).  Nor may they be properly characterized as "appropriate equitable relief" under ERISA Section 502(a)(3).[36]  Accordingly, Plaintiffs' request for incentive awards should be denied.

Lastly, Plaintiffs have suggested that the question of prejudgment interest be deferred. Defendants agree that deferral would be appropriate, and request that the Court allow supplemental briefs on the question of prejudgment interest only if the Court determines that an award of past-due benefits is appropriate.  For now, Defendants will simply note that, as this Court has stated, the Supreme Court's decision in Knudson "casts serious doubt on whether interest on retroactive awards of benefits is a permissible form of equitable relief."  Tyndall v. New England Teamsters & Trucking Industry Pension Fund, No. 3:03CV194, 2006 WL 3815140, at *5 n.9 (D. Conn. Dec. 7, 2006).  See also Mead v. Andersen, 309 F. Supp. 2d 596, 598-99 (S.D.N.Y. 2004) (Knudson calls into question the suggestion in Dunnigan v. Metro. Life Ins. Co. 277 F.3d 223, 229 -230 (2d Cir. 2002) that such interest may ever be appropriate equitable relief); Flint v. ABB, Inc., 337 F.3d 1326, 1331 (11th Cir. 2003) (noting that Knudson "raises the question whether 502(a)(3) ever allows an award of interest for delayed benefits or whether such a claim is an impermissible attempt to dress an essentially legal claim in the language of equity").

### III.    CONCLUSION

Plaintiffs have jumped the gun by suggesting that classwide relief to all class members is appropriate at this point.  Simply put, the disclosure claims of absent class members who did not

---

[36]    Moreover, incentive awards typically derive from a common fund or settlement payment, but here, as noted above, no common fund or settlement exists.  As such, the cases Plaintiffs cite approving incentive awards, which all involved settlements, are inapposite.  (See Pls' Mem. at 45).

testify at trial have yet to be adjudicated.  Moreover, the monetary remedies that Plaintiffs seek

are plainly not available under ERISA Section 502(a)(3).

Dated:  April 16, 2008                        Respectfully submitted,


**MORGAN, LEWIS & BOCKIUS LLP**

By:  /s/ Joseph J. Costello
Joseph J. Costello
Jeremy P. Blumenfeld
Jamie M. Kohen
*Admitted pro hac vice*
1701 Market Street
Philadelphia, Pennsylvania  19103-2921
(215) 963-5295/5258/5472
(215) 963-5001 (fax)

**ROBINSON & COLE**
James A. Wade (CT # 00086)
280 Trumbull Street
Hartford, Connecticut  06103
(860) 275-8270
(860) 275-8299 (fax)
*Attorneys for Defendants*
*CIGNA Corporation and CIGNA Pension Plan*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendants' Memorandum on Individual Issues and Class Relief was served this 16th day of April, 2008, via federal express upon the following:

Thomas G. Moukawsher
Moukawsher & Walsh, LLC
328 Mitchell Street
Groton, CT  06340

Stephen R. Bruce
805 15th Street, NW
Suite 210
Washington, DC  20005


/s/ Jamie M. Kohen
Jamie M. Kohen