# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANICE C. AMARA, | : | |
| GISELA R. BRODERICK, | : | |
| ANNETTE S. GLANZ, | : | |
| individually and on behalf | : | |
| of all others similarly situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | Civil No. 3:01-CV-2361 (MRK) |
| | : | |
| CIGNA Corp. and | : | |
| CIGNA Pension Plan, | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFFS' REPLY MEMORANDUM ON RELIEF

Stephen R. Bruce Ct23534
Allison C. Caalim
805 15th St., NW, Suite 210
Washington, DC 20005
(202) 371-8013

Thomas G. Moukawsher Ct08940
Moukawsher & Walsh, LLC
21 Oak St.
Hartford, CT 06106
(860) 278-7000

Attorneys for Named Plaintiffs and
Plaintiff Class

# **Table of Contents**

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      The Remedies for the Section 204(h) Violation . . . . . . . . . . . . . . . . . . . . . . 1

        A.      CIGNA's Efforts to Distinguish <u>Frommert</u> Are Unpersuasive  . . . . . 2

        B.      <u>Great-West</u> Does Not Keep the Court from Undoing Statutory
                Violations.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        C.      CIGNA Is Rearguing the Court's Decisions About the Effect of
                the Annual Account Statements, "Amendment No. 4," and Section
                204(h) Notice for All Participants Including Rehires  . . . . . . . . . . . 7

        D.      CIGNA's Principal Strategy Is to Reduce the Class Size and Make
                the Case "Grind to a Halt" By Making It an Opt-In Case Where
                Every One of the 26,000+ Class Members Has to Produce Personal
                Financial Records and Other Documents, Be Deposed, and Testify
                in Court to Obtain Any Relief  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II.     The Remedies for the Misleading Disclosures in the SMM and SPD  . . . . 20

III.    The Remedies for the Missing Relative Value Disclosures . . . . . . . . . . . . 26

IV.     The Remedies for CIGNA's Failure to Protect the Free 30% Survivor
        Benefit and Other Previously-Earned Benefits . . . . . . . . . . . . . . . . . . . . . . 27

V.      Implementation Issues and Prejudgment Interest . . . . . . . . . . . . . . . . . . . . 29

VI.     Incentive Awards and Common Fund Fee Requests  . . . . . . . . . . . . . . . . . 31

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Amara v. CIGNA*, 2004 U.S. Dist. LEXIS 21116 (D.Conn. 2004) ............. 15

*Beck v. Levering*, 947 F.2d 639 (2d Cir. 1991) ........................................... 29

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ........................................ 32

*Bonilla v. Trebol Motors Corp.*, 1997 WL 178844 (D.P.R. 1997) .............. 17

*Burke v. Kodak*, 336 F.3d 103 (2d Cir. 2003) ............................................... 9

*Brytus v. Spang & Co.*, 203 F.3d 238 (3d Cir. 2000) ............................. 33-34

*In re Citigroup Pension Plan ERISA Litig.*, 2007 WL 4205855
    (S.D.N.Y. 2007) ..................................................................................... 2

*Clark v. Universal Builders*, 501 F.2d 324 (7th Cir. 1974) ........................ 16

*Clevenger v. Dillards, Inc.*, 2007 WL 764291 (S.D. Ohio 2007) ............... 34

*Cobell v. Norton*, 283 F. Supp. 2d 66 (D.D.C. 2003) ................................. 29

*Cooper v. IBM Personal Pension Plan*, 2005 WL 1981501
    (S.D. Ill. 2005) ...................................................................................... 34

*County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295
    (2d Cir. 1990) ....................................................................................... 33

*Cox v. American Cast Iron Pipe*, 784 F.2d 1546 (11th Cir. 1986) ............. 17

*In re Currency Conversion Fee Antitrust Litigation*, 2004 WL 2453927
    (S.D.N.Y. 2004) ................................................................................... 18

*Dobson v. Hartford Life and Accident*, 389 F.3d 386 (2d Cir. 2004) .... 30-31

*Dobson v. Hartford Life and Accident*, 518 F. Supp. 2d 365
   (D.Conn. 2007) ................................................................ 30-31

*Dubin v. E.F. Hutton Group*, 1992 WL 6164 (S.D.N.Y. 1992) ................. 18

*Dunnigan v. Metropolitan Life Ins. Co.*, 277 F.3d 223 (2d Cir. 2002) ... 7, 30

*Ellis v. Edward D. Jones & Co.*, 527 F. Supp. 2d 439 (W.D. Pa. 2007) ..... 16

*Esden v. Bank of Boston*, 229 F.3d 154 (2d Cir. 2000) .............................. 22

*FTC v. Verity International*, 443 F.3d 48 (2d Cir. 2006) ............................ 7

*In re Fine Host Corp. Sec. Litig.*, 2000 WL 33116538 (D.Conn. 2000) ..... 32

*Florin v. Nationsbank of Georgia*, 34 F.3d 560 (7th Cir. 1994) ........... 32-33

*Frommert v. Conkright*, 433 F.3d 254 (2d Cir. 2006) ..................... 2-3, 5, 22

*Goldberger v. Integrated Resources*, 209 F.3d 43 (2d Cir. 2000) ............. 33

*Great-West v. Knudson*, 534 U.S. 204 (2002) ............................. 6, 24-26, 30

*Hall v. LHACO*, 140 F.3d 1190 (8th Cir. 1998) ........................................ 4

*Klay v. Humana*, 382 F.3d 1241 (11th Cir. 2004), *cert. denied*, 125 S.Ct.
   877 (2005) ............................................................................ 17

*Laborers Local 17 Health & Benefit Fund v. Philip Morris*, 1998 WL
   241279 (S.D.N.Y. 1998) ...................................................... 18

*Long v. Trans World Airlines, Inc.*, 761 F. Supp. 1320 (N.D. Ill. 1991) .... 18

*McCarthy v. Paine Webber*, 164 F.R.D. 309 (D.Conn. 1995) ................... 18

*Mitchell v. Robert DeMario Jewelry*, 361 U.S. 288 (1960) ........................ 6

*Moore v. CapitalCare, Inc.*, 461 F.3d 1 (D.C. Cir. 2006) .......................... 30

iii

*Parke v. First Reliance Std. Life Ins. Co.*, 368 F.3d 999 (8th Cir. 2004) .... 30

*Pereira v. Farace*, 413 F.3d 330 (2d Cir. 2005) ........................................... 7

*In re Publication Paper Antitrust Litig.*, 2005 WL 1629633
 (D. Conn.2005) ...................................................................... 17

*Roberts v. Texaco., Inc.*, 979 F. Supp. 185 (E.D.N.Y. 1997) ..................... 31

*Rogers v. Baxter International*, 2007 WL 2908829 (N.D. Ill. 2007) .......... 18

*Sereboff v. Mid Atlantic Medical Services*, 547 U.S. 356 (2006) ........ 6-7, 30

*Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425 (S.D.N.Y. 2007) ....... 31

*Skretvedt v. E.I. DuPont de Nemours*, 372 F.3d 193 (3d Cir. 2004) .......... 30

*Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939) ........................... 32

*Strom v. Goldman, Sachs & Co.*, 202 F.3d 138 (2d Cir. 1999) ................. 22

*Swede v. Rochester Carpenters Pension Fund*, 467 F.3d 216
 (2d Cir. 2006) ....................................................................... 22

*Teachers' Retirement System v. ACLN Ltd.*, 2004 U.S. Dist. LEXIS 25927
 (S.D.N.Y. 2004) .................................................................... 18

*Theissen v. GE Capital Corp.*, 267 F.3d 1095 (10th Cir. 2001) ................ 17

*In re Unisys Corp. Retiree Medical Benefits ERISA Litig.*, 57 F.3d 1255
 (3d Cir. 1995) ....................................................................... 25

*Varity Corp. v. Howe*, 516 U.S. 489 (1996) .............................................. 25

*Vizcaino v. Microsoft*, 290 F.3d 1043 (9th Cir. 2002) ............................... 34

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ...... 33

iv

## FEDERAL STATUTES AND REGULATIONS

ERISA §204(g), 29 U.S.C. §1054(g) ..................................................... 27, 29

ERISA §204(h), 29 U.S.C. §1054(h) ..................................................... *passim*

ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) .............................. *passim*

ERISA §502(a)(3), 29 U.S.C. §1132(a)(3) ......................................... *passim*

ERISA §502(d)(2), 29 U.S.C. §1132(d)(2) ............................................. 3

ERISA §502(g), 29 U.S.C. §1132(g) ..................................................... 34

Treas. Reg. 1.411(a)-11(c)(2)(i), 26 C.F.R. 1.411(a)-11(c)(2)(i) .............. 26

Treas. Reg. 1.417(a)(3)-1(f)(2), 26 C.F.R. 1.417(a)(3)-1(f)(2) ................. 27

## MISCELLANEOUS

*Manual for Complex Litigation* (4th) .......................................................... 18

*Newberg on Class Actions* (3d ed.) ............................................................ 18

"Procedural Approaches to Countering the Dual-Filed FLSA Collective
    Action and State-Law Wage Class Action," *The Labor Lawyer*,
    Vol. 20, No. 3 (Winter/Spring 2005) ...................................................... 16

**Introduction**

Plaintiffs respectfully submit that Defendants' submission on relief is unresponsive to the Court's request for a full discussion of remedies and is another effort to make these proceedings "grind to a halt." CIGNA is not required to be entirely cooperative or respond to everything in Plaintiffs' brief. But the Court should proceed with resolving the issues that CIGNA misstates or avoids and not be sidetracked with efforts to reargue liability or otherwise halt relief.

CIGNA begins and ends its brief by suggesting that the Plaintiffs engaged in "wishful thinking" or "jumped the gun." Defs. Br. at 7 and 32. By mocking the Plaintiff class' effort to obtain remedies for misleading disclosures about their retirement benefits, CIGNA hopes to obscure that it is asking the Court to derail the relief in this case. CIGNA concludes its brief with the absolutely remarkable statement given the 7-day bench trial and the Court's 122-page decision that "Simply put, the disclosure claims of absent class members who did not testify at trial have yet to be adjudicated." Defs. Br. at 32-33.

**I.    The Remedies for the Section 204(h) Violation.**

With respect to the Section 204(h) violations, this Court found that CIGNA's misleading statements about future benefits violated the Section 204(h) notice requirement. Slip Op. at 80-87. The Second Circuit has provided relief for a

204(h) violation in <u>Frommert v. Conkright,</u> 433 F.3d 254, 257-60 (2d Cir. 2006),

under the principle that the courts will not enforce significant benefit reductions

that are hidden from participants.

What is CIGNA suggesting as a remedy for its violation of Section 204(h)?

The answer appears to be nothing, other than a notice with yet-to-be-determined

content 10 years after the fact. Defs. Br. at 10. CIGNA maintains that under the

pre-2001 law there can be no benefit recalculations using the legally-effective plan

provisions. *Id*. at 19-20. Rather than advance that position as a legal argument,

CIGNA accuses the 26,000 person class of current and former employees of

seeking a "windfall." Defs. Br. at 20. CIGNA never explains how the recovery of

retirement benefits that its current and former employees reasonably expected

based on its misleading representations constitutes a windfall. CIGNA cites <u>In re</u>

<u>Citigroup</u>, 2007 WL 4205855 (S.D.N.Y. 2007), as a basis for limiting relief. *Id*.

But CIGNA does not explain how <u>Citigroup</u> applies when this Court found that

CIGNA misled employees about the reductions in a series of statements, Slip Op.

at 80-82; it did not just hide a particular plan provision as Citigroup did.

## A.    CIGNA's Efforts to Distinguish <u>**Frommert**</u> Are Unpersusasive.

CIGNA suggests that the relief that <u>Frommert</u> provided under ERISA

§502(a)(1)(B) for a Section 204(h) violation is predicated on the Plaintiffs naming

the "plan administrator" as a defendant. Defs. Br. at 12-14. However, as CIGNA
indirectly admits, other than "noting" that the defendants included an individual
plan administrator, 433 F.3d at 256, <u>Frommert</u> does not say that. Defendants'
suggestion is remarkable because Plaintiffs already pointed out that CIGNA
seemed to be misreading the Court's decision on §502(a)(1)(B). Pls. Br. at 23.
This Court held that CIGNA as a corporation cannot be directly liable under
§502(a)(1)(B), but the Plan, which is a defendant in this action, can be. Compare
Slip Op. at 67 with 68 n.26 ("To the extent Plaintiffs seek to recover benefits
under the Plan under §502(a)(1)(B), they may pursue such claims against the Plan
itself, which is a named defendant").[1]

CIGNA sticks its chin out to continue its "gotcha" argument about not
naming the individual plan administrator (the former employee Stewart Beltz) as a
defendant. Even though CIGNA later argues that a remedy is not available for a
Section 204(h) violation before 2001, Defs. Br. at 19-20, in this part of the brief
CIGNA contends that "a complete remedy" could have been granted if only
Plaintiffs had sued Mr. Beltz. Defs. Br. at 11-13. CIGNA says that Plaintiffs
"inexplicably" made a "conscious decision to forego this path." Defs. Br. at 12-14.

---

[1] Indeed, under ERISA §502(d)(2), the only entity against whom a "money
judgment" under Title I of ERISA "shall be enforceable" is the Plan "unless
liability against such person is established in his individual capacity."

3

While this Court frankly acknowledged the difficulty that the arguments about the plan administrator presented and lamented that Plaintiffs did not name Mr. Beltz, the Court already rejected CIGNA's position. The Court ruled that CIGNA, which was named in the Complaint as the Plan administrator, was "a *de facto* administrator or co-administrator of the Plan for purposes of disclosures" (and that Stewart Beltz had no role in the disclosures). Slip Op. at 65-67. This Court further agreed with the Eighth Circuit's decision in <u>Hall v. LHACO</u>, 140 F.3d 1190, 1196 (8th Cir. 1998), which holds that it is pointless to require a former employee like Mr. Beltz be sued if he or she does not have any power to provide relief. While this Court made plain that less ink would have been spilled if Plaintiffs had named Mr. Beltz, appropriate equitable relief can be provided under §502(a)(3) against all Defendants with any additional relief such as back benefits provided under §502(a)(1)(B) against the Plan.[2]

As indicated, CIGNA does not maintain a consistent position on the availability of relief under §502(a)(1)(B): After contending that "a complete

---

[2] CIGNA distinguishes its representation to Judge Squatrito that CIGNA would provide full relief if the Court found violations of ERISA as an "offer" conditioned on the Court denying class certification. Defs. Br. at 9 n.10. CIGNA then reiterates the threat, first made then and now belatedly revisited in this post-trial submission, that if the class was certified, it wants to call "every one of the estimated 25,000 class members ... to present evidence." *Id.*

4

remedy" could have been obtained if only Plaintiffs had sued Mr. Beltz, CIGNA

maintains in a footnote that relief is not available under §502(a)(1)(B) because

"Plaintiffs seek benefits beyond those to which they are entitled under the Plan ...

as a remedy for disclosure violations." Defs. Br. at 13 n.13. Of course, that

position is contrary to <u>Frommert</u>. Also contrary to both <u>Frommert</u> and its prior

position on the plan administrator, CIGNA later maintains that relief is not

available under the pre-2001 version of Section 204(h) under any section of

ERISA. Defs. Br. at 19-20.

To keep appropriate equitable relief from being awarded under §502(a)(3),

CIGNA next tries to rewrite <u>Frommert</u>: The opinion in <u>Frommert</u> rules that

because "sweeping relief" under §502(a)(3) was "not warranted" and "the

necessary remedies can be fully provided under §502(a)(1)(B)," "there is no need

on the facts of this case to also allow equitable relief under §502(a)(3)."  433 F.3d

at 269-70. CIGNA rewrites this to say that <u>Frommert</u> held that because the

"recalculation of benefits" is available under §502(a)(1)(B), it is "not available

under §502(a)(3)." Defs. Br. at 12. CIGNA would thus revise the Second Circuit's

ruling "on the facts of this case" that relief need not be allowed under §502(a)(3)

because relief was "fully provided" under §502(a)(1)(B) into a ruling that Section

204(h) relief can never be available under §502(a)(3).

5

**B.    Great-West Does Not Keep the Court from Undoing Statutory Violations.**

With respect to §502(a)(3), CIGNA ignores the basic distinction between this case and Great-West v. Knudson, 534 U.S. 204 (2002). As Plaintiffs have pointed out:

> Great-West ... prohibits a "freestanding claim for money damages." But it does not prohibit redressing statutory violations with specific relief grounded in the plan terms. 534 U.S. at 218. Here, as in LaRue, but in contrast to both Russell and Great-West, the Plaintiffs seek remedies based on the underlying plan terms and the law, and not remedies for "individual injuries distinct from plan injuries."

Pls. Br. at 12. Here, if the Section 204(h) notice of reductions is not provided, the statutory section, as it existed before 2001, specifically provides that the "plan may not be amended so as to provide for a significant reduction in the rate of future benefit accrual." Plaintiffs are seeking to enforce the plan without the provisions for a significant reduction which CIGNA put in place without the notice required by law.

CIGNA's brief is unresponsive to the other points that Plaintiffs have made concerning Great-West. See Defs. Br. at 14-18. CIGNA offers no distinction of the case law on backpay under Title VII or of Mitchell v. Robert DeMario Jewelry, 361 U.S. 288 (1960), and the other cases on "historic powers of equity" at the time Congress enacted ERISA. There is no discussion of the explanation in Sereboff v.

Mid Atlantic Medical Services, 547 U.S. 356, 363 (2006), that ERISA §502(a)(3)

should not be construed as an "empty promise." And there is no response to the

Supreme Court's repeated explanations (cited on pp. 10-11 of Plaintiffs' brief)

about how relief is not legal simply because it ultimately is in monetary form.

There is also nothing in response to the Plaintiffs's point that "undoing" statutory

violations is the classic work of equity. Pls. Br. at 14-18.

CIGNA makes a fleeting effort to distinguish unjust enrichment in a

footnote. Defs. Br. at 18 n.18. But it does not address any of the Second Circuit

decisions which Plaintiffs cited: Pereira v. Farace, 413 F.3d 330, 340 (2d Cir.

2005), Dunnigan v. Metropolitan Life Ins. Co., 277 F.3d 223, 229 (2d Cir. 2002),

and FTC v. Verity Int'l, 443 F.3d 48, 68 (2d Cir. 2006). The "tracing" requirement

that CIGNA seeks to impose was rejected in Sereboff, 547 U.S. at 364-65.

**C.    CIGNA Is Rearguing the Court's Decisions About the Effect of the Annual Account Statements, "Amendment No. 4" and Section 204(h) Notice for All Participants Including Rehires.**

In a further effort to block relief for the Section 204(h) violations, CIGNA

simply revisits its arguments about:

(1)    The effect of disclosing the "ongoing" rules about benefit and interest credits and providing annual account statements, Defs. Br. at 21-22;

(2)    The period between the effective date and the adoption date and "Amendment No. 4," Defs. Br. at 22-24, and

7

    (3)    Whether Section 204(h) notice of reductions was required for all participants including terminated vested participants who may later be rehired. Defs. Br. at 24-25.

This Court already analyzed the annual account statements and the disclosures about benefit credits and interest credits and found that they did not correct the misleading representations. Slip Op. at 82-83. The Court also already analyzed Amendment No. 4 and concluded that the freezing of Part A on December 31, 1997 was a precondition to starting Part B on January 1, 1998. Slip Op. at 74-75. Lastly, this Court already found that while the rehired employees like Ms. Broderick were not entitled to a separate Section 204(h) notice about the change in the rehire rule alone, they were entitled to the same disclosures under both 204(h) and the SPD/SMM rules about the benefit reductions that would apply if they returned to work with CIGNA: "[T]he Court's determination that there was no violation of ERISA in CIGNA's failure to provide notice of the rehire rule specifically does not affect its determination that the notices provided to all CIGNA employees, whether rehires or not, were deficient due to their material misrepresentations concerning the mechanics of Part B." Slip Op. at 109. Essentially, CIGNA is using part of its Court-invited memorandum on remedies to make an untimely motion for reconsideration of these three issues.

**D.    CIGNA's Principal Strategy Is to Reduce the Class Size and Make the Case "Grind to a Halt" By Making It an Opt-In Case Where Every One of the 26,000+ Class Members Has to Produce Personal Financial Records and Other Documents, Be Deposed, and Testify in Court to Obtain Any Relief.**

As its principal strategy to stop relief, CIGNA now suggests that this Court should permit it to serve 26,000+ "document requests" and take "depositions" of every absent class member who wants to obtain any relief for the Section 204(h) violations and then hold another months or years-long bench trial or set up an unprecedented series of "Teamsters hearings" to make findings of fact and conclusions of law about any further arguments on either "likely prejudice" or "harmless error" that CIGNA wishes to make. Defs. Br. at 7-9.  To justify this, CIGNA first argues that absent class members still must individually establish "likely prejudice," see Defs. Br. at 3 and 9–even though this Court already found likely prejudice on a classwide basis. Slip Op. at 101-5. CIGNA also endeavors to conjoin "likely prejudice" with "harmless error" by describing it as "the likely prejudice/harmless error issue" or "the likely prejudice/harmless error analysis." Defs. Br. at 5, 8-10. Lastly, CIGNA simply forgets that <u>Burke v. Kodak</u>, 336 F.3d 103, 113 (2d Cir. 2003), and the Second Circuit's subsequent precedents, place the burden of establishing "harmless error" squarely on the defendant.

9

The Court's February 15, 2008 decision concludes that "the Court must reject CIGNA's claim of harmless error."  Slip Op. at 101.  The Court rejected the reasons that CIGNA offered for the harmless error defense, including CIGNA's principal argument that everyone received enough information from the opening and annual account statements and the Total Compensation Reports to cure any deficiencies in the disclosures. Slip Op. at 101-2 and n.41 ("Suffice it to say, the Court does not consider the additional materials provided by CIGNA adequate either to cure the defects in the notices or to transform any possible prejudice into harmless error"; CIGNA's evidence "was insufficient to rebut Plaintiffs' showing of likely harm"). Thus, the Court did not find "harmless error" on a classwide basis; nor did the Court find it on an individual basis for any of the persons who testified.

Undeterred, CIGNA now advances a proposal under which harmless error would be considered to remain unresolved and the burden with respect to that issue would be shifted to each absent class member. Unless each of the 26,000+ absent class members responds to CIGNA's document requests, sits for a deposition as an adverse witness, and undergoes cross-examination at another bench trial or Teamsters hearing, CIGNA would ask that no relief be provided, in other words, it would ask the Court to reverse itself and presume that the

10

misleading disclosures and 204(h) violation are "harmless error" as to that individual–without ever offering any evidence to that effect.[3]

As support for the proposition that such proceedings might establish harmless error in some individual cases, CIGNA reargues some of the same points that it used in its pre- and post-trial briefs. See Defs. Br. at 4-6 and compare Defs. Post-Trial Br. at 59-61. But the examples that CIGNA conjures up display an incomplete or faulty memory. For instance, Barbara Hogan testified that when she told her supervisor that her husband was skeptical about how her cash balance benefits compared with the old plan, she was told that he didn't know what he was talking about. Pls. Prop. Post-Trial Findings (dkt.#248) at ¶¶373-74. And when Robert Upton persisted and found that his benefits were being reduced by 29% and went up the ladder to complain to Gerald Meyn, the head of benefits, Mr. Meyn called Mr. Upton's boss to tell him to keep quiet. *Id*. ¶370.

In an act of defiance or desperation, CIGNA submits excerpts from the deposition of Steven Law. Defs. Br. at 5. As the Court may remember, Plaintiffs objected to the use of Mr. Law's deposition transcript at trial because Mr. Law was within the subpoena power and was available to testify and answer questions

---

[3] For good measure, CIGNA suggests that it has some additional arguments about "releases," too. Defs. Br. at 7 n.8.

11

from both Plaintiffs' and Defendants' counsel. Tr. at 1067, line 6 - 1071, line 22.

The spreadsheet to which the excerpt from Mr. Law's testimony refers (without

attaching it) was Mr. Law's effort to understand the benefit reductions. While his

non-expert spreadsheet is subject to criticism as to what it actually shows, the

main point if Mr. Law was called to testify at trial is that he would have explained

that he prepared this spreadsheet in March 2006 <u>after</u> he was asked to be a witness

concerning CIGNA's failure to disclose reductions.[4]

In addition to CIGNA already having the opportunity to present evidence of

harmless error at trial, Plaintiffs provided CIGNA with additional opportunities in

the "Stipulation and Joint Motion on Conduct of Discovery and Trial on 'Likely

Prejudice' and 'Harmless Error' Issues...." Dkt. #167 and 170 (approving

Stipulation). That Stipulation provided CIGNA with the opportunity to obtain

documentary discovery from 26 members of its litigation control group who were

also class members, including Lorraine Morris, John Arko, and Gerald Meyn, in

order to try to develop some concrete examples of harmless error. ¶4 n.1. CIGNA

was also given the opportunity to take discovery on these issues not only from the

8 class members selected by Plaintiffs, but also from 8 additional class members

_____

[4] CIGNA's counsel were provided with the electronic version of this spreadsheet, the metadata of which shows that it was created on March 25, 2006.

12

selected by Defendants. ¶¶1-3. The Stipulation further provided that CIGNA could call any of those 16 persons who Plaintiffs did not choose to call as adverse witnesses at the trial. ¶7. At trial, CIGNA would be required to establish any of its classwide or individual defenses with respect to the named Plaintiffs and the individuals who testified. ¶8. The Stipulation further provided that "Following the trial, the parties will meet with the Court to confer on" "[t]he need for, and procedures for, any individualized hearings on likely prejudice or harmless error, and any related discovery." ¶10. CIGNA has availed itself of none of these opportunities (except for requesting documents from and deposing the 8 class members who Plaintiffs selected). And, as the Court knows, CIGNA did not call a single witness at trial–other than its actuarial expert.

In addition, CIGNA has always had the opportunity to develop evidence of harmless error on its own. For instance, CIGNA's brief mentions that employees who participated in the design of the Part B cash balance formula might have information on benefit reductions that was not otherwise available. Defs. Br. at 4. Independent of taking discovery from Plaintiffs, CIGNA has had six years to identify those individuals and question them.[5] CIGNA also mentions that Mark

---

[5] If CIGNA had identified the insiders who knew about the benefit reductions, it might, of course, have helped Plaintiffs to further prove the extent to which CIGNA knew about the benefit reductions and failed to disclose them.

13

Lynch, its chief actuary, might have told other individuals besides Ms. Amara that they were under wear-aways. *Id*. at 5. But Mark Lynch, who was still a CIGNA employee at last report, was identified by Plaintiff as early as her March 2002 Rule 26(a) disclosures. Again, CIGNA has had over 6 years to ask him. CIGNA further suggests that other employees besides Robert Upton might have received calculations of benefit reductions. *Id.* 4-5. However, as Plaintiffs stated in their Proposed Findings, Mr. Upton was the only employee identified in discovery to have received such a calculation. ¶¶312-14. The other people who Plaintiffs identified were persons who were seeking such calculations and who were denied them under CIGNA's internal policy against offering any comparative information. See *id*. at ¶¶310-21 (e.g., "what would the value of my retirement package be under the old plan, and under the new plan?"). If other individuals existed who were successful in obtaining such calculations, CIGNA had an obligation to provide that information in discovery.

Thus, the discussion in CIGNA's brief seems calculated to hide the fact that it has not developed proof with respect to even a single individual that establishes "harmless error." Nevertheless, CIGNA suggests that such proof inevitably must be out there for at least some persons if CIGNA is allowed to continue searching, including by issuing 26,000+ requests for personal financial records and other

14

documents, taking thousands of depositions, and then calling all of those persons to be cross-examined by CIGNA's counsel. CIGNA mocks the possibility that the Court could grant the class a remedy for their misleading disclosures based on the Court's finding of "likely prejudice" and the Court's rejection of CIGNA's claim of "harmless error." See Defs. Br. at 7.

Plaintiffs do not believe that 26,000+ document requests, depositions and individual-by-individual Teamsters hearings are what the Court had in mind when it invited the parties to "address any remaining claims, including individual claims." Slip Op. at 122. Without a single instance of proof of "harmless error," this Court did not intend to invite tens of thousands of additional document requests, depositions, and Teamsters hearings which are obviously calculated by CIGNA to make these proceedings "grind to a halt"–in the words that Defendants' counsel so memorably used in opposing Plaintiffs' motion for leave to amend the Complaint to add the very same Section 204(h) notice claim. See Dkt. #117 at 14. As Judge Squatrito stated in denying CIGNA's motion to decertify the class in 2004, "a more convincing demonstration is required." Amara v. CIGNA, 2004 U.S. Dist. LEXIS 21116 *5 (October 13, 2004). Here, any gains in information about "harmless error" from tens of thousands of document requests are speculative and dwarfed by the enormous expense and burdens on absent class

15

members and the judicial system, and the ultimate effect of excluding tens of

thousands of class members from any remedies in this case.

Plaintiffs readily concede that if this Court were to authorize 26,000+

additional document requests, depositions, and individual trials, it would

intimidate tens of thousands of class members and keep them from sharing in any

relief for CIGNA's violations of Section 204(h). Opt-in procedures have been used

in collective actions under the FLSA since the 1930's: "The opt-in rate in a FLSA

collective action not backed by a union is generally between 15 and 30 percent."

Ellis v. Edward D. Jones & Co., 527 F.Supp.2d 439, 444 (W.D. Pa. 2007).[6] If

additional requirements are imposed like producing personal financial records,

being deposed as an adverse witness, and being cross-examined in court, the

participation rate will be much lower.

A number of cases have addressed the use of mass discovery of absent class

members as a "stratagem to diminish class membership." In Clark v. Universal

Builders, 501 F.2d 324, 340-41 (7th Cir. 1974), the Seventh Circuit held that the

district court erred in dismissing the claims of class members who failed to answer

---

[6] Citing "Procedural Approaches to Countering the Dual-Filed FLSA
Collective Action and State-Law Wage Class Action" in the Winter/Spring 2005
issue (Vol. 20, No. 3) of The Labor Lawyer, available online at
http://www.bna.com/bnabooks/ababna/laborlawyer/20.3.pdf.

interrogatories or appear for depositions. <u>Clark</u> ruled that the defendants have the burden of showing "necessity and the absence of any motive to take undue advantage" of class members with such requirements. In <u>Cox v. American Cast Iron Pipe</u>, 784 F.2d 1546, 1556 (11th Cir. 1986), the Eleventh Circuit found that "Requiring the individuals affirmatively to request inclusion in the lawsuit [by answering seven pages of interrogatories] would result in freezing out the claims of people–especially small claims held by small people–who for one reason or another, ignorance, timidity, unfamiliarity with business or legal matters, will simply not take the affirmative step." <u>Cox</u> ruled that "[u]sed in a Rule 23(b)(2) setting, a discovery order threatening dismissal for non-compliance amounts to no more than an affirmative opt-in device." Accord <u>Klay v. Humana</u>, 382 F.3d 1241, 1260 (11th Cir. 2004), cert. denied, 125 S.Ct. 877 (2005) ("any individual inquiry was outweighed by the predominance of defendants' conduct: "It is ridiculous to expect 600,000 doctors across the nation to repeatedly prove these complicated and overwhelming facts."); <u>Theissen v. GE Capital Corp.</u>, 267 F.3d 1095, 1106-7 (10th Cir. 2001) (reversing district court's decertification of age discrimination action where a pattern or practice was involved and defendants did not convince the court that individual issues would predominate at trial); <u>Bonilla v. Trebol</u>

17

Motors Corp., 1997 WL 178844, *45 (D.P.R. 1997) ("There is no reason to decertify a class ... because of hypothetical individual defenses").[7]

Here, as described above, the Court-approved Stipulation already used the representative sampling method that the authorities recommend as a way to determine whether "specific further inquiry is warranted." Laborers Local 17 Health & Benefit Fund v. Philip Morris, 1998 WL 241279, *3 (S.D.N.Y. 1998); Long v. Trans World Airlines, Inc., 761 F.Supp. 1320, 1329-30 (N.D. Ill. 1991) (after representative sampling, the district court may conclude that "There simply is no substantial benefit to full discovery that offsets the added burdens"). Having uncovered not a single instance of harmless error through that sampling method, CIGNA cannot simply ignore the results and ask the Court to allow it to trudge

---

[7] A number of other decisions recognize the danger that discovery is being used "as a means of reducing class size," Dubin v. E.F. Hutton Group, 1992 WL 6164, *3 (S.D.N.Y. 1992), and the corollary requirement of "a strong showing of the need for the particular discovery" of absent class members. In re Publication Paper Antitrust Litig., 2005 WL 1629633, *1 (D. Conn. 2005); McCarthy v. Paine Webber, 164 F.R.D. 309, 313 (D.Conn. 1995); Teachers' Ret. Sys. v. ACLN Ltd., 2004 U.S. Dist. LEXIS 25927, *30 (S.D.N.Y. 2004); In re Currency Conversion Fee Antitrust Litig., 2004 WL 2453927, *2 (S.D.N.Y. 2004); Rogers v. Baxter Int'l, 2007 WL 2908829 *1 and 6 (N.D. Ill. 2007) (rejecting 14,511 sets of interrogatories when defendants had "not met their burden of demonstrating" that individual proof of reliance was necessary). See generally Manual for Complex Litig. (4th), §21.41; Newberg on Class Actions (3d ed.), §16.03, 16-21.

onward in an endeavor whose only certain result would be to diminish the class size dramatically and secure tremendous financial gains for CIGNA.

CIGNA's brief places considerable emphasis on the contents of the Court's "Order Under Rule 23(c)(1)(B)" (dkt. #241). See Defs. Br. at 1-3, 7-8, and 23. However, that Order, which was issued after the bench trial was completed, recognized that the parties disagreed "about the content of the proposed order" and states that:

> "The recitation below generally sets forth the claims of the parties as they have chosen to describe them, with such specificity as is required to understand the claim. The Court expresses no opinion on the merits of the claims or defenses of the parties, and therefore the parties should attach no significance to the particular phraseology chosen to describe any claim or defense."

Order at 3. Now, however, CIGNA revises the Order as if it reads that all of "the numerous individualized issues" included in that Order at CIGNA's request "must be resolved before absent class members can claim any entitlement to relief." Defs. Br. at 2; see also id. at 1. CIGNA's position ignores the terms of the Order and the simple truth that no matter how many claims or defenses one party or the other includes in a Complaint, Answer or Rule 23(c)(1)(B) Order, those claims or defenses must be established at trial or be forever lost.

19

Based on this record, including the March 2006 Stipulation, the 7-day bench trial, and the February 15, 2008 decision that CIGNA has not established its claim of "harmless error," Plaintiffs submit that Defendants have not come anywhere near to making a "strong showing" of the need for 26,000+ document requests on harmless error, much less the need for tens of thousands of depositions and adverse testimony. Simply put, the Court does not have to permit tens of thousands of document requests, depositions and individual trials, where as here, CIGNA with years of discovery behind it and a Stipulation that gave it an opportunity to sample class members, has still not produced any evidence that a single class member's claim would be defeated by proof of harmless error. In place of evidence, CIGNA continues to substitute counter-factual assertions, innuendo, and speculation.

## II.    The Remedies for the Misleading Disclosures in the SMM and SPD

CIGNA advances some other proposals to attempt to gain a nearly consequence-free outcome to a decade of misleading disclosures and omissions of any mention of benefit reductions. The only concession is that CIGNA would not "oppose" the Court redrafting its 1997-98 204(h) notice, SMM or SPD to provide "more detailed information about wearaway" and other requirements "as interpreted by the Court." Defs. Br. 10.

CIGNA still seems unsure that it did anything wrong and therefore does not discuss what the new 204(h)/SMM/SPD would disclose. The February 19, 2008 email from John Mirabito, CIGNA's head of HR, to "all employees" about the "pension law suit decision" states that CIGNA found the decision "disappointing and troubling" and "continue[s] to believe that it treated all employees fairly and appropriately." Pls. Ex. 246. CIGNA's relief submission mentions "more detailed information about wearaway" but later revives its contention that it adequately disclosed wearaway. Defs. Br. at 26. CIGNA never mentions the misleading communications the Court found about how the "full value" of previous benefits, "including early retirement benefits," were to be  protected, and how future benefits would be "comparable" to or even "larger" than those under Part A, with those future benefits growing with "each dollar's worth" of pay and interest credits under the cash balance formula. Slip Op. at 81, 98-99, 104.

Outside of unspecified additional disclosures, CIGNA takes the position that the Court lacks the authority to award benefits to remedy the misleading statements that the Court found. CIGNA maintains that "Plaintiffs' proposed remedies are largely barred by ERISA's carefully crafted, and limited remedial provisions." Defs. Br. at 10; see also id. at 14 (the "principal remedy" Plaintiffs

propose, recalculated retroactive and prospective benefits, "does not constitute 'appropriate equitable relief'").

CIGNA's brief nowhere distinguishes the relief in the form of benefits that the Second Circuit has afforded to participants for violations of ERISA in Frommert, Swede v. Rochester Carpenters Pension Fund, 467 F.3d 216, 221 (2d Cir. 2006), Esden v. Bank of Boston, 229 F.3d 154, 161-62 and 177 (2d Cir. 2000), and Strom v. Goldman, Sachs & Co., 202 F.3d 138, 147 (2d Cir. 1999). Furthermore, there is no response to the demonstration in Plaintiffs' remedies brief about how the increases in future monthly benefits that Ms. Broderick and Ms. Glanz seek must be considered equitable relief (Pls. Br. at 17-18).

After reviving the argument that wear-away was adequately disclosed by telling employees their account balances, Defs. Br. at 26, CIGNA makes an exception by indicating a willingness to accept a watered-down remedy on wear-aways which would recalculate opening account balances with basically a one percent lower interest rate. Defs. Br. at 27 (presumably referring to Exhibit 1, Section 1.28(a)). CIGNA's brief represents that participants with these "more favorable opening account balance conversion factors ... did not experience wearaway" and that "Plaintiffs' expert admitted this was sufficient to avoid wearaway." Defs. Br. at 26 n.29 and 27. In both instances, CIGNA cites Defs.

22

Prop. Post-Trial Findings ¶148. However, the transcript citations contained in that

Proposed Finding do not support this assertion at all. Mr. Poulin's supplemental

expert report, in fact, stated:

> "[P]articipants like Ms. Hogan who had more than 55 points on December 31, 1997 experienced a more favorable conversion rate in the calculation of their opening balance and hence non-existent **or shorter** wear-away periods."

Ex. 4 at ¶28 (emph. added).

This Court has determined, moreover, that CIGNA's misleading

representations led employees to believe that the opening accounts represented the

"full value" of previously-earned benefits, "including early retirement benefits,"

that there would be no wear-aways because "each dollar's worth of credit is a

dollar of retirement benefits payable," and that future benefits would accrue at

rates "at least roughly equivalent" to those under Part A. Slip Op. at 93, 95-97,

104. Thus, CIGNA's relief proposal does not come close to covering all of the

misleading statements that the Court found. It does not even ensure a complete

remedy for wear-aways by providing the "A plus B" approach that the Court found

would eliminate wear-away. Slip Op. at 92.  To illustrate, CIGNA's proposal

would not eliminate the wear-aways for Ms. Broderick because even if her

opening cash balance was recalculated with a one percent lower interest rate, her

early retirement benefits would not be included. Ms. Broderick would continue to be better off with an "A plus B" approach, i.e., her frozen benefits, including the early retirement features, plus her cash balance pay and interest credits for the years of employment after the cash balance conversion. CIGNA's proposal would also do nothing for participants like Barbara Hogan and Steven Curlee who suffered large 34 and 36% benefit reductions (see Ex. 7), but no wear-aways.

In finally offering limited or partial relief, CIGNA never explains how the Court could have the authority to recalculate opening balances with a one percent lower interest rate but lack the authority to redress all the misleading disclosures. Great-West certainly does not contain an 'opening balance' exception. If the Court has authority to adjust opening balances, it has authority to completely remedy wear-aways and the misleading representations that the "full value" of previously-earned benefits, "including early retirement benefits," were protected and that future benefits were "at least roughly equivalent" to those provided before. Slip Op. at 104. As stated above, CIGNA staked out a similarly inconsistent position concerning the Section 204(h) violation when it stated that Plaintiffs could have obtained "a complete remedy" if only they had sued the Plan administrator, but later maintained that no relief at all is available under the pre-2001 law. Compare Defs. Br. at 11-14 with *id*. at 19-20.

24

As this suggests, CIGNA's brief is downgrading <u>Great-West</u> to almost a sidelight occupying only 4 pages in a 33-page brief. See Defs. Br. at 14-18. Even in that discussion CIGNA never addresses the point that providing appropriate relief for misleading representations by persons with fiduciary responsibilities is an established part of equitable relief. Plaintiffs' remedies brief devoted two pages to the striking parallels between this case and the misleading representations in <u>Varity Corp. v. Howe</u>, 516 U.S. 489 (1996), and the relief which the Supreme Court affirmed. Pls. Br. at 12-14 and 26.  CIGNA's response is complete silence. In addition to the parallel to <u>Varity</u>, the Third Circuit has upheld similar relief in <u>In re Unisys Corp. Retiree Med. Benefits ERISA Litig.</u>, 57 F.3d 1255, 1264 (3d Cir. 1995). In the <u>Unisys</u> case, the retirees were also the victims of affirmative material misrepresentations in an SPD and written and oral communications. Addressing the relief available under ERISA §502(a)(3), the Third Circuit found that the retirees "seek an injunction ordering specific performance of the assurances Unisys made, restitutionary reimbursement for back benefits, and restoration of the status quo ante for the Sperry early retirees by rescinding their retirement agreements. These are remedies which are restitutionary in nature and thus equitable."

Other than reading <u>Great-West</u> to foreclose the relief for statutory violations

which <u>Great-West</u> actually distinguished and preserved, CIGNA only offers a

conclusory justification for not providing a remedy: "Plaintiffs' assertion that they

are entitled to be awarded additional pension benefits under Part A, as if Part B

had never existed, does not pass muster under Section 502(a)(1)(B) or Section

502(a)(3)." Defs. Br. at 13 n.12. As indicated, CIGNA does not even consistently

maintain this position since it also asserts that a "complete remedy" could have

been provided if only Plaintiffs had sued its powerless ex-employee Stewart Beltz,

and that, so long as the Court accepts CIGNA's terms, a partial remedy for wear-

away can be offered.

### III.   The Remedies for the Missing Relative Value Disclosures.

To redress the relative value disclosure violations, CIGNA proposes

"additional communications" with a do-over election contingent on paying back

any previous lump sum distribution. Defs. Br. at 27-29. CIGNA never discusses

the "significant detriment" that a do-over election with the condition that the

participant pay back all or a part of a previous lump sum distribution would

impose, or the Treasury regulation which provides that an election is invalid when

a "significant detriment" is attached to one option. Treas. Reg. 1.411(a)-

11(c)(2)(i). There is no response to the Plaintiffs' point that the most effective way

to remedy this violation and avoid imposing a significant detriment in violation of the regulations is to allow an equitable set off to account for the past lump sums.

CIGNA partially concedes that point by allowing that the amount of the lump sum to be paid back could be reduced by any annuity payments that are already past due. Defs. Br. at 28. But even with that concession, a payback requirement would continue to impose a significant detriment that would prevent the vast majority of participants from availing themselves of a do-over election. Even Lillian Jones would be unable to take advantage of this unless she was advanced the money. The effect would simply be to allow CIGNA to escape a large part of the financial consequences of misleading disclosures.[8]

## IV.    The Remedies for CIGNA's Failure to Protect the Free 30% Survivor Benefit and Other Previously-Earned Benefits.

Inexplicably, CIGNA disagrees with what Plaintiffs' counsel believed was the incontestable point that they never dropped their claim of ERISA §204(g) violations under Claim 5. Compare Defs. Br. at 29 n.33 with Pls. Br. at 40. Both

---

[8] CIGNA also seeks to limit the do-over elections to the period before October 1, 2004. Defs. Br. at 27.  This is the date when the new relative value regulations for options with unequal value took effect. Treas. Reg. 1.417(a)(3)-1(f)(2). However, CIGNA continued to offer elections without the required relative value disclosures long after that date. CIGNA's Post-Trial Brief previously <u>admitted</u> that CIGNA did not offer any relative value disclosures before May 2006. Defs. Post-Trial Br. at 118.

parties represented to the Court that this part of Claim 5, including CIGNA's

failure to protect the Free 30% survivor benefit, was being removed from the

bench trial for settlement discussions because CIGNA acknowledged that at least

some mistakes had been made. See Defs. Post-Trial Br. (Dkt. #251) at 109 n.91

("The remaining issues arising out of Count 5 are the subject of ongoing

settlement discussions between the parties, and are not before the Court for

adjudication"). There were two mediation sessions with Magistrate Judge

Garfinkel in Bridgeport on January 10 and March 14, 2007, but no resolution was

reached. CIGNA's brief not only denies the facts that it previously admitted, but it

does not respond to Plaintiffs' proposed procedure for correcting such mistakes,

which was described in both our brief and the Proposed Order. Pls. Br. at 40-41

and Prop. Order at 5.

CIGNA's argument that there was no plan amendment that reduced

participants' previously-accrued benefits (Defs. Br. at 29 n.33) is equally lacking.

The plan amendment was the amendment that converted the Plan to a cash balance

formula. After that amendment, previously-earned benefits, including early

retirement benefits and survivor's benefits like the Free 30% survivor's benefit

were required to be protected. But CIGNA failed to protect all of the accrued

benefits as ERISA requires. For example, the Free 30% survivor's benefits was

simply dropped from the data transferred to the new Part B database and was

therefore not protected for any participant who was moved to Part B. Pls. (Pre-

Trial) Prop. Findings (dkt.#175) ¶¶336-47. As a second type of example, Patricia

Flannery's prior benefits were to be protected under ERISA §204(g) after the

amendment. But CIGNA preserved only one-third of the required correct amount.

Pls. Post-Trial Findings ¶¶351-56. As a result, Ms. Flannery's accrued benefits

were not protected after the cash balance conversion. CIGNA also "inadvertently"

dropped Janice Amara's protected minimum benefits following the cash balance

amendment. What happened to Ms. Amara's protected benefits was described in

the Complaint. See Third Amended Cmplt. (dkt. #165) ¶¶26-29.

## V.    Implementation Issues and Prejudgment Interest.

CIGNA's brief nowhere discusses the Plaintiffs' proposal that the Court

retain jurisdiction while relief is implemented and that a joint committee and

independent class action administrator can be selected to accomplish this. CIGNA

also does not discuss the Second Circuit's decision in <u>Beck v. Levering</u>, 947 F.2d

639, 641 (2d Cir. 1991), that fiduciaries may be removed for repeated, serious

violations of their obligations or the discussion in <u>Cobell v. Norton</u>, 283

F.Supp.2d 66, 132-33 (D.D.C. 2003), about how using an independent

administrator for a specific project can be "less intrusive."

Remarkably, CIGNA opposes prejudgment interest (Defs. Br. at 32) even though this is a standard part of relief in ERISA benefit cases under either §§502(a)(1)(B) or 502(a)(3). CIGNA does not dispute that it has provided prejudgment interest (at an 8.5% rate) in other contexts, including to the persons affected by the <u>Depenbrock</u> litigation. CIGNA suggests that the Second Circuit's decision in <u>Dunnigan v. Metropolitan Life Ins. Co.</u>, 277 F.3d 223, 229-30 (2d Cir. 2002), on unjust enrichment is no longer good law because of <u>Great-West v. Knudson</u>. But the Court's 2006 decision in <u>Sereboff</u>, supra, 547 U.S. at 363, should have laid that argument to rest by holding that "ERISA provides for equitable remedies to enforce plan terms" and should not be construed as an "empty promise."  See also <u>Parke v. First Reliance Standard Life Ins. Co.</u>, 368 F.3d 999, 1006-7 (8th Cir. 2004) (prejudgment interest is available "in light of <u>Knudson</u>" as an "accounting for profits"); <u>Skretvedt v. E.I. DuPont de Nemours</u>, 372 F.3d 193, 207-15 (3d Cir. 2004) (affirming availability of interest under both ERISA §§502(a)(1)(B) and 502(a)(3) after <u>Knudson</u>); <u>Moore v. CapitalCare, Inc.</u>, 461 F.3d 1, (D.C. Cir. 2006) ("prejudgment interest" is available to prevent "unjust enrichment" and because "<u>Knudson</u> explicitly recognized ... an accounting for profits"). CIGNA also neglects the Second Circuit's decision in <u>Dobson v. Hartford Life and Accident</u>, 389 F.3d 386, 398 (2d Cir. 2004), and Judge

30

Arterton's decision on remand, at 518 F.Supp.2d 365, 372 and 374 (D.Conn.

2007), awarding prejudgment interest under ERISA §502(a)(1)(B) pursuant to the

Second Circuit's instructions.

## VI.    Incentive Awards and Common Fund Fee Requests.

CIGNA next challenges Plaintiffs' proposal to seek incentive awards for the

named Plaintiffs and testifying witnesses. Defs. Br. at 31-32. Incentive awards are

common in both settlements and litigated class actions. CIGNA's argument to the

contrary is unsupported. It is true that some courts are reluctant to make large

incentive awards. Compare  Silberblatt v. Morgan Stanley, 524 F.Supp.2d 425,

435 (S.D.N.Y. 2007), with Roberts v. Texaco., Inc., 979 F.Supp. 185, 200-5

(E.D.N.Y. 1997). But there is no support for the position that incentive awards

should be denied. And in a case like this a substantial incentive award is justified

by the time that the named Plaintiffs and testifying witnesses devoted and the risks

that these individuals undertook (Ms. Amara was an active employee when she

filed this suit; Ms. Flannery was an active employee at the time she testified at

trial; Mr. Charette testified at considerable risk to his rising career as a manager).

Lastly, CIGNA indicates that it wants to challenge a common fund fee

request. Defs. Br. at 29-31. After spending practically all of its brief trying to

defeat meaningful remedies for class members, CIGNA warms to them when it

comes to the suggestion that Plaintiffs' counsel will ask the Court for a common fund award. There is considerable authority, however, that a defendant's effort to align itself at the end of a case with the interests of the plaintiff class when it comes to a common fund fee award is viewed with great skepticism, if not ignored altogether. See, e.g., <u>Boeing Co. v. Van Gemert</u>, 444 U.S. 472, 481-82, (1980) (defendant has no continuing interest in the fund, and "any right defendant may establish to the return of money eventually unclaimed is contingent on the failure of … class members to exercise their present rights of possession"); <u>Florin v. Nationsbank of Georgia</u>, 34 F.3d 560, 562 n.1 (7th Cir. 1994) ("Defendants have satisfied their obligation to pay into the settlement fund, and thus have no interest in the amount of fees class counsel want to extract from the fund").

The authority to make a common fund award is part of the Court's inherent equitable authority. <u>Sprague v. Ticonic Nat'l Bank</u>, 307 U.S. 161, 166 (1939). Contrary to CIGNA's suggestion, the common fund rule is also the prevailing view in this Circuit. As Judge Hall described it in <u>In re Fine Host Corp. Sec. Litig.</u>, 2000 WL 33116538, *1 (D.Conn. 2000), "A party that has secured a benefit on behalf of a class of people is entitled to recover its costs, including attorneys' fees, from a common fund created as part of a settlement agreement." The authority to make a common fund award is no different when a Court order rather than a

32

settlement agreement creates the common fund. In 2000, in <u>Goldberger v.
Integrated Res.</u>, 209 F.3d 43, 50 (2d Cir. 2000), the Second Circuit held that "both
the lodestar and the percentage of the fund methods are available to district judges
in calculating attorneys' fees in common fund cases." Five years later, the Second
Circuit concluded in <u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,</u> 396 F.3d 96, 121
(2d Cir. 2005), that "the trend in this Circuit is toward the percentage method."

 The Court's authority to make a common fund award is not altered by a
statutory fee provision. See <u>County of Suffolk v. Long Island Lighting Co.</u>, 907
F.2d 1295, 1327 (2d Cir. 1990) ("fee-shifting statutes are generally not intended to
circumscribe the operation of the equitable fund doctrine"). CIGNA does not
distinguish <u>County of Suffolk</u> or  <u>Florin v. Nationsbank</u>, supra, 34 F.3d at 563,
which specifically holds that the availability of statutory fees under ERISA does
not preclude a common fund award. CIGNA misreads the Third Circuit's decision
in <u>Brytus v. Spang & Co.</u>, which reached essentially the same conclusion as
<u>Florin</u>: "This is not to say that the common fund doctrine may never be applied in
a case for which there is a statutory fee provision and which goes to judgment."
203 F.3d 238, 247 (3d Cir. 2000). <u>Brytus</u> simply concludes that "the District Court

33

here did not abuse its discretion in declining to award additional fees." *Id.*[9]

CIGNA further misreads the cases which deny common fund awards under the

aegis of ERISA §502(g). See Defs. Br. at 31. As <u>Florin</u> and <u>Brytus</u> recognize, the

authority to make a common fund award is not found in ERISA §502(g) but

resides in the court's inherent equitable authority.

    In <u>Vizcaino v. Microsoft</u>, 290 F.3d 1043, 1050 (9th Cir. 2002), and <u>Cooper</u>

<u>v. IBM Personal Pension Plan</u>, 2005 WL 1981501, *8 (S.D. Ill. 2005), 28% and

29% awards were made in ERISA cases. See also <u>Esden v. Bank of Boston</u>, C.A.

97-CV-114 (D.Vt. Mar. 21, 2001) (on Pacer as dkt.#111) (29% award); <u>Clevenger</u>

<u>v. Dillards, Inc.</u>, 2007 WL 764291, *3 (S.D. Ohio 2007) (29%). In this case,

Plaintiffs' counsel intend to request a common fund award of 15% or less.

    In response to Defendants' contention about absent class members being

subject to a common fund award without notice, Defs. Br. at 29-30, Plaintiffs are

not going to ask the Court to make a common fund award until notice is provided

to the class with the opportunity to object. Moreover, as stated in the opening

brief, any award of statutory fees under ERISA §502(g) will be used to reduce the

---

    [9] The subtext to <u>Brytus</u> was that the United Steelworkers represented the members of the plaintiff class and intervened in the lawsuit to oppose the common fund award. Cf. 203 F.3d at 241.

common fund percentage so the net percentage deducted from the class's recovery will be lower. Pls. Br. at 46.

**Conclusion**

For the foregoing reasons, Plaintiffs respectfully ask that the Court adopt their proposed order and make any changes the Court believes are appropriate. Because CIGNA's submission transparently seeks to have these proceedings "grind to a halt," without forthrightly addressing the question of whether this Court can provide appropriate remedies in the form of recalculated benefits for misleading representations, it has little value to offer the Court.

Dated: April 25, 2008

Respectfully submitted,

 s/ Stephen R. Bruce
Stephen R. Bruce Ct23534
Allison C. Caalim
805 15th St., NW, Suite 210
Washington, DC 20005
(202) 371-8013

 s/ Thomas G. Moukawsher
Thomas G. Moukawsher Ct08940
Moukawsher & Walsh, LLC
21 Oak St.
Hartford, CT 06106
(860) 278-7000

Attorneys for Named Plaintiffs and
Plaintiff Class

35

## CERTIFICATE OF SERVICE

I certify that copies of the foregoing (1) Plaintiffs' Reply Memorandum On Relief and (2) this Certificate of Service were filed electronically through the CM/ECF system on April 25, 2008. Notice of this filing will be sent by e-mail to all counsel listed below by operation of that system:

Joseph J. Costello
Jeremy P. Blumenfeld
Jamie M. Kohen
Morgan, Lewis & Bockius
1701 Market St.
Philadelphia, PA 19103-2921

Christopher A. Parlo
Morgan Lewis & Bockius
101 Park Avenue
New York, NY 10178-0600

James A. Wade
Brett J. Boskiewicz
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103-3597

s/ Stephen R.Bruce
Stephen R. Bruce