# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JANICE C. AMARA,     :
GISELA R. BRODERICK,   :
ANNETTE S. GLANZ,    :
individually and on behalf   :
of all others similarly situated,  :
            :
      Plaintiffs, :
            :
   vs.        :  Civil No. 3:01-CV-2361 (MRK)
            :
CIGNA Corp. and     :
CIGNA Pension Plan,    :
            :
     Defendants. :

# PLAINTIFFS' SUPPLEMENTAL POST-ARGUMENT BRIEF ON RELIEF

Stephen R. Bruce Ct23534
Allison C. Caalim
805 15th St., NW, Suite 210
Washington, DC 20005
(202) 371-8013

Thomas G. Moukawsher Ct08940
Moukawsher & Walsh, LLC
21 Oak St.
Hartford, CT 06106
(860) 278-7000

Attorneys for Named Plaintiffs and
the Plaintiff Class

# TABLE OF CONTENTS

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    Relief for the Relative Value Disclosure Violation. . . . . . . . . . . . . . . . . . 1

    A.    How Many People Have Left CIGNA with a Right to Subsidized
        Early Retirement Benefits Since the Cash Balance Conversion Who
        May Have Been Affected by the Failure to Provide Relative Value
        Disclosures? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    Can Relief Be Provided to the Persons Affected by This Violation
        Without a Payback Requirement? . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   Relief for the Section 204(h)/SPD Violations. . . . . . . . . . . . . . . . . . . . . . 7

    A.    How Would Separate Remedies for CIGNA's Misleading
        Disclosures About Wear-Aways and Benefit Reductions Affect
        the Class? Provide Data If Possible. . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.    Are the Court's Choices that Part B Is "Ineffective" Because of
        CIGNA's Misleading Disclosures and Therefore Part A Continues
        (Plaintiffs' Position) or that Part B Is "Ineffective" But This Leaves
        Participants With a Frozen Part A with No Accruals (CIGNA's
        Position)? Is There a Middle Ground? . . . . . . . . . . . . . . . . . . . . . . . 11

    C.    Is There Case Law Under ERISA §502(a)(1)(B) that the Terms of
        the Plan Are Limited to the Four Corners of the Plan Document and
        Are Not Affected by What Is in an SPD, SMM or  Section 204(h)
        Notice? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    D.    To the Extent Relief for Benefit Reductions Is Unavailable under
        ERISA §502(a)(1)(B), Is It Available Under §502(a)(3)? . . . . . . . . 23

        1.    Is the relief for misleading representations in equity specific
            performance or do courts provide money damages based

on the misrepresented party's loss? . . . . . . . . . . . . . . . . . . . . . 25

2.    Can Plaintiffs recover under unjust enrichment based on ill-gotten gains, not losses? . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

E.    If the Cash Balance Amendments Are Ineffective and CIGNA Re-Adopts a Cash Balance Formula, Will It Have to Comply with the Pension Protection Act's Requirements for an "A plus B" Transition? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

III.    Do Individual Issues Remain to Be Tried After the Court's February 15, 2008 Decision? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

IV.    Do the Parties Need Rulings on Prejudgment Interest, Attorney Fees or Incentive Awards Before Any Appeal? . . . . . . . . . . . . . . . . . . . . . . . . 31

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Amschwand v. Spherion*, 505 F.3d 342 (5th Cir. 2007), pet. for certiorari
pending ...................................................................................... 28

*Berger v. Xerox*, 231 F. Supp. 2d 804 (S.D. Ill. 2002) ................................. 5

*Burke v. Kodak*, 336 F.3d 103 (2d Cir. 2003) ...................... 16-17, 25-27, 30

*Burstein v. Retirement Account Plan for Allegheny Health, Ed. and
Resources Fdn.*, 334 F.3d 365 (3d Cir. 2003) ................................... 15, 17

*Burstein v. Retirement Account Plan for Allegheny Health, Ed. and
Resources Fdn.*, 2004 WL 2612162 (E.D. Pa. 2004) ............................ 21

*Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739 (2004) ............... 15

*Chisholm v. Plan Administrator of Joint Industry Board*,
2004 WL 3267292 (E.D.N.Y. 2004) ...................................................... 31

*Crocco v. Xerox*, 137 F.3d 105 (2d Cir. 1998) ........................................... 19

*Curtiss-Wright v. Schoonejongen*, 514 U.S. 73 (1995) ............................... 25

*Dobson v. Hartford Life & Accident*, 389 F.3d 386 (2d Cir. 2004) ............. 31

*Dobson v. Hartford Life & Accident*, 518 F. Supp. 2d 365
(D. Conn. 2007) ..................................................................................... 31

*Donovan v. Bierwith*, 680 F.2d 263 (2d Cir. 1982) ...................................... 26

*Dunnigan v. Metropolitan Life Insurance Co.*, 277 F.3d 223
(2d Cir. 2002) ......................................................................................... 31

*Eichorn v. AT&T Corp.*, 484 F.3d 644 (3d Cir. 2007) ................................. 27

*FTC v. Verity International*, 443 F.3d 48 (2d Cir. 2006) ........................... 28

*Feifer v. Prudential Insurance Co. of America*, 306 F.3d 1202
     (2d Cir. 2002) ...................................................................... 17

*Frommert v. Conkright*, 433 F.3d 254 (2d Cir. 2006) .... 12, 14-15, 20, 24, 26

*Frommert v. Conkright*, 472 F. Supp. 2d 452 (W.D.N.Y. 2007) .................. 5

*Geer v. Challenge Financial Investors*, 2007 WL 1341774
     (D. Kan. 2007) ..................................................................... 30

*Greater Blouse, Skirt & Undergarment Ass'n. v. Morris*, 1996 WL 325595
     (S.D.N.Y. 1996) .................................................................... 19

*Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371
     (4th Cir. 2001) ................................................................. 22, 27

*In re Gulf Pension Litigation*, 764 F. Supp. 1149 (S.D. Tex. 1991) ........... 13

*Hooven v. Exxon Mobil Corp.*, 465 F.3d 566 (3d Cir. 2006) ...................... 22

*Jones v. UNUM Life Insurance Co.*, 223 F.3d 130 (2d Cir. 2000) ............. 31

*LaScala v. Scrufari*, 479 F.3d 213 (2d Cir. 2007) ................................... 26

*Layaou v. Xerox*, 238 F.3d 205 (2d Cir. 2001) ........................................ 17

*Leyda v. AlliedSignal*, 322 F.3d 199 (2d Cir. 2003) .................................. 17

*Lifson v. INA Life Insurance Co.*, 333 F.3d 349 (2d Cir. 2003) ................. 14

*Luckasevic v. World Kitchen*, 2007 WL 2683995 (W.D. Pa. 2007) ........... 28

*Manginaro v. Welfare Fund of Local 71*, 21 F. Supp. 2d 284 (S.D.N.Y.
     1998) ................................................................................... 30

*Mathews v. Chevron Corp.*, 362 F.3d 1172 (9th Cir. 2004) ................ 22, 27

*May Department Stores v. Federal Insurance Co.*, 305 F.3d 597
    (7th Cir. 2002) .................................................................... 18-19

*McAuley v. IBM*, 165 F.3d 1038 (6th Cir. 1999) ........................ 22

*Medoy v. Warnaco Employees Long Term Disability*, 2005 WL 3775953
    (E.D.N.Y. 2005) ..................................................................... 30

*Mullins v. Pfizer*, 23 F.3d 663 (2d Cir. 1994) ............................ 26

*Production & Maintenance Employees' Local 504 v. Roadmaster Corp.*,
    954 F.2d 1397 (7th Cir. 1992) ............................................... 15

*Estate of Ritzer v. National Organization of Industrial Trade Unions
    Insurance Trust Fund*, 822 F. Supp. 951 (E.D.N.Y. 1993) .................. 31

*Shaver v. Siemens Corp.*, 2008 WL 859251 (W.D. Pa. 2008) ..................... 28

*Swede v. Rochester Carpenters Pension Fund*, 467 F.3d 216
    (2d Cir. 2006) ..................................................................... 15

*In re Unisys Corp. Retiree Medical Benefits ERISA Litigation*,
    57 F.3d 1255 (3d Cir. 1995) ............................................... 22, 27

*Varity Corp. v. Howe*, 516 U.S. 489 (1996) ................................... 22, 24, 27

*Washington v. Murphy Oil*, 497 F.3d 453 (5th Cir. 2007) ................... 16, 17

*West v. AK Steel*, 484 F.3d 395 (6th Cir. 2007) ......................... 16

*Wilkins v. Mason Tenders District Council Pension Fund*, 445 F.3d 572
    (2d Cir. 2006) ..................................................................... 16

## FEDERAL STATUTES AND REGULATIONS

ERISA §102(a), 29 U.S.C. 1022(a) .......................................... 22

ERISA §204(b)(5)(B)(ii), 29 U.S.C. 1054(b)(5)(B)(ii), as amended by
    the Pension Protection Act, P.L. 109-280, Section 701(a)(1) ............... 29

ERISA §204(g), 29 U.S.C. 1054(g) ........................................................... 32

ERISA §204(h), 29 U.S.C. 1054(h) ................................................... *passim*

ERISA §205(g)(3), 29 U.S.C. §1055(g)(3) ..................................................... 3

ERISA §502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B) .................................. *passim*

ERISA §502(a)(3), 29 U.S.C. 1132(a)(3) ........................................... *passim*

ERISA §502(d), 29 U.S.C. 1132(d) ........................................................... 19

Treas. Reg. 1.411(a)-11(c)(2)(i), 26 C.F.R. 1.411(a)-11(c)(2)(i) ................. 2

Treas. Reg. 1.411(d)-6, 26 C.F.R.1.411(d)-6 (1999 ed.) ........................... 12

FRCP Rule 23(h)(1) and (3) ...................................................................... 32

## MISCELLANEOUS

Richard Thaler and Cass Sunstein, *Nudge: Improving Decisions About
   Health, Wealth, and Happiness* (Yale 2008) ......................................... 2

**Introduction**

Plaintiffs respectfully submit this supplemental brief to address the

questions and issues about relief raised at the oral argument on April 30, 2008.

**I.    Relief for the Relative Value Disclosure Violation.**

    **A.    How Many People Have Left CIGNA with a Right to Subsidized Early Retirement Benefits Since the Cash Balance Conversion Who May Have Been Affected by the Failure to Provide Relative Value Disclosures?**

This Court decided that the absence of relative value disclosures violates the

law because CIGNA told participants that their previously-accrued pension

benefits were "fully protected" in the cash balance accounts and did not tell them

that the "early retirement benefits accrued under Part A were only available under

the annuity, and not as part of the lump sum payment." Slip Op. at 98 and 115. To

comply with the Treasury regulations on explaining the relative value of benefit

options and to keep the promises made in the SPD, CIGNA was "required to

notify its employees that the subsidized early retirement benefits were available

only through the annuity option." *Id*. at 114. CIGNA admits that it did not do this

for any benefit elections between January 1998 and May of 2006. Defs. Post-Trial

Br. (dkt. #251) at 118.

Based on electronic queries applied to the databases that CIGNA has

1

supplied, Plaintiffs' counsel estimate that 415 people who separated from service with CIGNA since the January 1998 were entitled to receive subsidized early retirement benefits but "elected" lump sum distributions with no disclosure of the relative value of the annuity option. About 95 of those people were entitled to the more heavily subsidized Part A Tier 1 early retirement benefits and approximately 320 were entitled to the Part A Tier 2 early retirement benefits. The attached Declaration of Allison Caalim explains how the queries were done.

### B.    Can Relief Be Provided to the Persons Affected by This Violation Without a Payback Requirement?

As the Court stated at the oral argument, if participants are forced to repay money, with or without interest, in order to obtain a new election, they are not going to do so and the harm from failing to disclose the relative value of the annuity option will go unremedied. This is because attaching a payback requirement to an annuity option places a "significant detriment" on that option which is not attached to the status quo. Under the Treasury regulations at 1.411(a)-11(c)(2)(i), this would render the second election invalid, too. The literature on behavioral economics also recognizes the effects of "status quo bias" and "loss aversion." See Richard Thaler and Cass Sunstein, *Nudge: Improving Decisions About Health, Wealth, and Happiness* (Yale 2008), at 33-35, 83-87, 108-10.

A payback requirement would not only be unadvisable, but it is also unnecessary because it is feasible to provide relief without requiring individuals to pay back the lump sums they previously received. The annuity benefits to which these individuals were eligible can be subject to an "equitable setoff" (see Pls. 3/17/2008 Br. on Relief at 37) based on the lump sums previously received. Plaintiffs propose that the lump sums previously distributed be converted to annuity form using the interest and mortality assumptions in ERISA §205(g)(3), 29 U.S.C. §1055(g)(3), that applied as of the dates of distribution. The early retirement benefit available to the individual will be reduced by the annuity to which the lump sum translates and the residual annuity will be paid. Any past due monthly payments will be accumulated with prejudgment interest and paid. Future payments will be provided to the individual in the form of a monthly annuity (with a qualified survivor's benefit if the individual is married).

To illustrate, the lump sum distribution of $122,965 that CIGNA made on September 1, 2003 to Lillian Jones will be converted to annuity form using the 4.96 % interest rate and the "1994 GAR" mortality assumption that applied under ERISA §205(g)(3) for an individual who was age 59 as of that date (this translates to a 162.98 conversion factor). The resulting monthly annuity of $754 will be deducted from the $1,251 per month annuity that was payable to her starting on

3

that date. The residual annuity of $497 per month will be paid to Ms. Jones

prospectively. The past due monthly payments from September 1, 2003 will be

accumulated and paid with interest. Using the 8.5% interest rate that CIGNA uses

for past due payments–including in the <u>Depenbrock v. CIGNA</u> litigation–Ms.

Jones' back payments for the 58 months through June 1, 2008 would total

$35,496. Both that distribution as well as the future monthly annuity payment of

$497 would be distributions from a qualified plan which Ms. Jones could rollover

into her IRA or spend as she needs.

Despite defense counsel's assertions at oral argument, CIGNA has no claim

to an additional discount under the theory that more people will receive an annuity

under this remedy than would have received an annuity if CIGNA had offered full

disclosures of the relative value of the benefit options during the period between

January of 1998 and May of 2006. The remedy described above is appropriate

relief for the participants who were affected by CIGNA's misleading disclosures

and an appropriate deterrent for CIGNA against repeating this type of conduct.

There is, moreover, no way to factor in a discount based on the probability that

fewer individuals would have elected the annuity option with full disclosure

without taking benefits away from the participants who would have elected the

annuity option with full disclosure. Under CIGNA's theory, they would bear the

cost of providing benefits to the persons who might not have taken an annuity with full disclosure. If someone has to bear the the risk of that, it is appropriate that CIGNA bear it, not the participants who CIGNA's actions hurt. It is CIGNA's fault, not the participants', that we will never know which participants would or would not have chosen annuities if CIGNA had given proper disclosures about the relative value of their benefit options.

On remand of <u>Frommert v. Conkright</u>, Lawrence Sher, the expert who testified for CIGNA, testified for Xerox. Mr. Sher offered remedy proposals which Judge Larimer tactfully described as based on "what is 'best' from a financial or actuarial point of view." Judge Larimer roundly rejected those proposals because "[t]he Court's task ... is simply to determine the benefits due based on the language of the Plan and the SPD" and "[t]o the extent there is some ambiguity as to the precise manner by which prior distributions are to be offset from present benefits, it is Xerox, not the employees who should suffer." <u>Frommert v. Conkright</u>, 472 F.Supp.2d 452, 457 (W.D.N.Y. 2007).[1]

In a footnote, CIGNA contends that the remedy for the relative value

---

[1] In the <u>Berger v. Xerox</u> litigation, Xerox also advanced remedies favorable to its interests. See <u>Berger v. Xerox</u>, 231 F.Supp.2d 804, 819 (S.D. Ill. 2002) ("Court sees no reason why the remedy in this case should be designed in the manner currently most favorable to the RIGP").

disclosures might become "moot" depending on the Court's remedy regarding wear-away disclosures. Defs. 4/16/2008 Br. at 28 n. 32. At oral argument, CIGNA's counsel seemed to reframe this tosay that the relative value remedy could "moot" the need for a remedy for the representations that participants' benefits including early retirement benefits were "fully protected" in the opening balances. Whichever way it is framed, CIGNA's mootness argument seems to try to make the relative value remedy solve more problems than it can. For instance, if Lillian Jones receives her frozen early retirement benefit as relief for the relative value claim, she will not have received any additional retirement benefits for the 1½ years that she worked under the cash balance formula. Including the value of the early retirement benefits in opening account balances will also assist the people who are not affected by the relief for the relative value disclosures, such as persons who were entitled to early retirement benefits but have not commenced benefits and persons like Douglas Robinson who selected lump sums before reaching early retirement age based on the misleading representations that their benefits were "fully protected" in the cash balance accounts.

II.     **Relief for the Section 204(h)/SPD Violations.**

A.     **How Would Separate Remedies for CIGNA's Misleading Disclosures About Wear-Aways and Benefit Reductions Affect the Class? Provide Data If Possible.**

In many respects the most outrageous part of CIGNA's cash balance conversion is undoubtedly the periods of wear-away. But the benefit reductions extend well beyond the wear-aways: Not everyone was affected by wear-aways and overall the periods of wear-away account for only about 20 to 25% of the benefit losses from the cash balance changes.

This Court's February 15, 2008 decision repeatedly found that CIGNA engaged in misleading disclosures about benefit reductions well beyond the undisclosed periods of wear-away. Indeed, the Court found a systemic effort by CIGNA to avoid any disclosure of the substantial benefit reductions:

- "[C]omparing the benefit accruals under Part A with those under Part B, the Court finds that a significant reduction occurred. CIGNA itself admitted at trial that if CIGNA 'never adopted the cash balance plan,' '[plan participants] would have a larger benefit than they have under th[e] conversion." Slip Op. at 76.

- "[E]ven if §204(h) did not require the additional information regarding reductions that Plaintiffs request, the statute certainly does not permit CIGNA to avoid providing such information and to offer material misrepresentations suggesting benefit increases instead." *Id*. at 78-79.

- "CIGNA offered statements that misled plan participants into

7

believing that significant reductions in the rate of future benefit accrual were not a component or a possible result of Part B." *Id.* at 80.

• "[N]othing in the Newsletter indicated to plan participants that their rate of future benefit accrual might decrease, much less by a significant margin. And yet that is exactly what happened." *Id.*

• "Even looking outside the purported §204(h) notice to the other publications provided by CIGNA, information regarding possible reductions in the rate of future benefit accrual is equally non-existent." *Id.*

• "While CIGNA admitted that certain long-term employees would remain in Part A because 'these employees couldn't match this benefit growth under the new plan,' it went on to assure readers that 'other employees and all new hires will be able to earn *comparable benefits* as career employees under the CIGNA Retirement Plan.' " *Id.* at 81 (emph. orig.).

• "[T]he Court concludes that CIGNA was aware of the significant reduction in the rate of future benefit accrual that would affect at least a substantial proportion of its employees as a result of the transition to Part B, that CIGNA wished to avoid the employee backlash likely to result from a thorough discussion of these aspects of Part B, and that CIGNA sought to negate the risk of backlash by producing affirmatively and materially misleading notices regarding Part B." *Id.* at 87.

• "[T]the notices provided by CIGNA 'likely, and quite reasonably, led plan participants to believe' that ... the accrual rates for both short- and long-term employees under Part B were at least roughly equivalent to those under Part A." *Id.* at 104.

In response to this Court's question, there are three principal groups of class members who were affected by the reductions in future benefits but who didn't

8

suffer periods of wear-away and therefore would not receive any relief from an "A plus B" or other remedy to repair wear-aways:

(a)    Generally, the approximately 3,370 individuals under Tier 2 who were subject to the special rule for those with 55 or more age and service points,[2]

(b)    Over 2,200 individuals who were under Part A but had little or no prior credited service and thus little or no prior benefits that could be worn away under the "wear-away" design, see Defs. Ex. 724, and

(c)    Approximately 340 individuals who were rehired on or after January 1, 2001 and therefore were subject to the second amendment to the rehire rule which provided for an "A plus B" transition.

For the remaining 21,000+ members of the class like Ms. Glanz and Ms. Broderick, the periods of wear-away account for substantial losses, but those losses represent only a portion of the total loss from the benefit reductions that CIGNA effected. As Mr. Poulin showed, even if there were no wear-aways, a cash balance formula will generally reduce benefits because benefits are based on year-by-year salary rather than a highest or final average of salary. CIGNA's expert, Mr. Sher, confirmed Mr. Poulin's analysis when he estimated that, apart from the

---

[2] Mr. Poulin performed individual calculations for Barbara Hogan and Stephen Curlee, both of whom were subject to the special 55 or more age and service point rule, and did not find wear-aways. Contrary to defense counsel's assertions, Mr. Poulin did not make an across-the-board determination for everyone who was subject to this special rule. See Pls. Reply Br. on Relief at 22-23 (citing Ex. 4 at ¶28).

wear-away effect, the net accrual rate under the old Tier 1 formula was 1.5% of highest pay, compared with 0.75% of highest pay when the cash balance benefits are expressed in that form. See Slip Op. at 76.

Continuing with the nine examples of the named Plaintiffs and witnesses that Mr. Poulin developed in Ex. 7, the wear-aways under CIGNA's Plan on average account for 20 to 25% of the potential liability for benefit reductions. See Declaration of Sharon Taulman attached.[3]  Without waiving work-product, Plaintiffs' counsel represent that this percentage is consistent with what they are estimating in other cash balance cases, namely, <u>Tomlinson v. El Paso</u> (D. Colo. 04-2686) and <u>Engers v. AT&T</u> (D.N.J. 98-3660).

This is not to say that the percentages of the benefit reductions accounted for by wear-away are consistent from individual to individual or one subgroup to another. For some Tier 2 formula employees whose tenure ended before or close to the end of the wear-away effect, the percentage of the benefit reductions accounted for by wear-away may exceed 60%. For others like Gisela Broderick, it may be less than 20%. For employees like Ms. Hogan, it is 0%. Taulman Decl. ¶6.

The benefit reductions are therefore the issue that binds practically

---

[3] Ms. Taulman is an accountant and MBA with over 25 years experience in computer systems and both retirement plan and class action administration.

everyone, including those like Ms. Hogan who do not have significant periods of wear-away. Plaintiffs estimate that the group where the cash balance formula was actually comparable or larger would comprise only 5% of the class (or approximately 1,000 people).

In this connection, it is important to point out that the primary reason Plaintiffs' counsel have not had their experts set up spreadsheets to perform calculations of an "A plus B" remedy for wear-aways is because the remedy for wear-aways is most efficiently provided as part of the overall remedy for the benefit reductions. To illustrate, if the remedy for benefit reductions provides that Ms. Broderick's benefits will continue under Part A, she will earn approximately an additional $1,357 per month. This will remedy her 4-years of wear-away and there will be no need to fix it separately with an "A plus B" formula. In other words, the recalculation of benefits under Part A sweeps in the remedy for the wear-aways without a separate calculation (other than potentially as a failsafe).

**B.    Are the Court's Choices that Part B Is "Ineffective" Because of CIGNA's Misleading Disclosures and Therefore Part A Continues (Plaintiffs' Position) or that Part B Is "Ineffective" But This Leaves Participants With a Frozen Part A with No Accruals (CIGNA's Position)? Is There a Middle Ground?**

Applying the Treasury Department's 1998 regulations on Section 204(h) notice, this Court has ruled, "Generally, and except under limited circumstances

11

not present here, an amendment that is not accompanied by a valid § 204(h) notice is void." Slip Op. at 73 (citing Treas. Reg. 1.411(d)-6, Q&A 13 and 14 (1999 ed.)). Frommert v. Conkright, 433 F.3d 254, 268 (2d Cir. 2006), also holds that an amendment reducing benefits is "ineffective" without the timely and understandable notice required by Section 204(h) and the SPD. 433 F.3d at 268. In Frommert, as here, Xerox adopted an amendment to modify the old provision. But when the Second Circuit ruled that the undisclosed modification was ineffective, the old provision was reinstated.

This Court has effectively rejected CIGNA's position that the "relief" for not disclosing the benefit reductions in accordance with Section 204(h) is to freeze everyone's benefits at their December 31, 1997 level. CIGNA contends that since it was clear that CIGNA was freezing Part A, albeit for one second before Part B, participants were adequately informed that Part A was gone forever and it cannot or should not be required to continue Part A as a remedy for CIGNA's having misled participants about how Part B compared with Part A. However, this Court has already held that:

> "the freeze here was nominal at best.... CIGNA made clear from the outset that its intent was to shift directly from Part A to Part B, with the freeze only as an interim stopgap.... Permitting employers to avoid these important obligations simply by exploiting the technicality of 'freezing' old benefits before retroactively instituting new ones runs diametrically opposite to that

12

purpose."

Slip Op. at 74-75. CIGNA's position also seems to rest on a fundamental

misunderstanding of what a benefit freeze is. When benefit provisions are frozen,

the Plan provisions are not eliminated (in fact, here, they continued as on-going

rules until April 1, 2008 for all of the participants who were grand-fathered).

Instead, "frozen" generally means benefit accruals have been suspended–pending

some other event or indefinitely–but the plan continues in operation. In re Gulf

Pension Litigation, 764 F.Supp. 1149, 1202 (S.D. Tex. 1991). Here, it was only

when CIGNA adopted the Part B provisions and made them retroactively effective

to January 1, 1998 that the Part A provisions were replaced by Part B for the non-

grandfathered participants.

    As this Court pointed out on April 30th, a middle ground between the

continuation of Part A and CIGNA's position that no remedy should be offered

would hinge on tailoring a remedy to CIGNA's misleading representation that Part

B was going to offer "comparable" or "larger" benefits, in other words, calibrating

relief to only provide benefits "at least roughly equivalent to those under Part A."

Slip Op. at 104. If the Court believes that this requires plan provisions to be

rewritten (and the parties will not consent to that rewriting), then this middle

ground is not available. Plaintiffs are at a loss to find another middle ground that

comports with ERISA's statutory and regulatory provisions and its remedial purposes. CIGNA's suggestions would, of course, leave the class with little or no meaningful redress for CIGNA's systematic campaign of misleading communications about their retirement benefits. CIGNA's suggestions cannot reasonably be called a middle ground.

> **C.    Is There Case Law under ERISA §502(a)(1)(B) that the Terms of the Plan Are Limited to the Four Corners of the Plan Document and Are Not Affected by What Is in an SPD, SMM or Section 204(h) Notice?**

As the Second Circuit held in Lifson v. INA Life Ins. Co., 333 F.3d 349, 353 (2d Cir. 2003), the terms of an ERISA plan "must be construed in accordance with the reasonable expectations" of participants. No cases under ERISA §502(a)(1)(B) hold that the terms of an ERISA plan are strictly limited to the four corners of the plan document and not affected by what is or is not disclosed in a Section 204(h) notice, SMM or SPD. In fact, the case law consistently takes the opposite position. Frommert required benefits to be provided under ERISA §502(a)(1)(B) which would not be available if one only looked at Xerox's plan document and read it devoid of legal requirements. See 433 F.3d at 269-70. Frommert "looks to the plain meaning of the term [amendment] and defines an 'amendment' to a plan as taking place at the moment when employees are properly

14

*informed* of a change." *Id*. at 262-63 (emph. orig.). "Without" the notice required

by Section 204(h), the amendment reducing benefits is "ineffective." 433 F.3d at

268. In so holding, <u>Frommert</u> followed the statutory language, the Second

Circuit's precedents on SPDs and the Seventh Circuit's decision in <u>Production &</u>

<u>Maintenance Employees' Local 504 v. Roadmaster Corp.</u>, 954 F.2d 1397, 1404

(1992), where an amendment was also ineffective because of the absence of

Section 204(h) notice:

> "Because the June 27 amendment was ineffective, it follows that the plan continued in force as if it had not been amended. Therefore, Roadmaster was obligated to continue accruing benefits as the plan provided until it properly amended the plan."[4]

The same principle has applied under §502(a)(1)(B) in cases when an SPD

conflicts with the plan's terms. In <u>Burstein v. Retirement Account Plan for</u>

<u>Allegheny Health, Ed. and Res. Fdn.</u>, 334 F.3d 365, 381 (3d Cir. 2003), the Third

Circuit held that "[c]laims for ERISA plan benefits under ERISA §502(a)(1)(B)

are contractual in nature...Our determination that a SPD controls over the plan

---

[4] In <u>Swede v. Rochester Carpenters Pension Fund</u>, 467 F.3d 216, 217-19 (2d Cir. 2006), the Second Circuit enforced <u>Central Laborers' Pension Fund v. Heinz</u>, 541 U.S. 739 (2004), by affirming a statutory violation in a case where the plan's terms, if literally applied, would not have provided the benefits. The Second Circuit affirmed the judgment which "restored Swede's benefits" and ordered that he receive "full retroactive benefits" including interest. The decision does not specify whether the award was under §502(a)(1)(B) or §502(a)(3).

document where the two conflict does not change the contractual character of these claims...If an SPD conflicts with a plan document, then a court should read the terms of the 'contract' to include the terms of a plan document, as superseded and modified by conflicting language in the SPD." In <u>Washington v. Murphy Oil</u>, 497 F.3d 453, 458 (5th Cir. 2007), the Fifth Circuit recently quoted this passage and adopted the same principle. [5]

Most importantly, as Your Honor pointed out at oral argument, the Second Circuit has adopted the same position with respect to SPDs in <u>Wilkins v. Mason Tenders District Council Pension Fund</u>, 445 F.3d 572, 583 (2d Cir. 2006): The Second Circuit ruled that "Wilkins's challenge to the SPD asserts the elements of a 502(a)(1)(B) claim" and concluded that "Wilkins' SPD claim is cognizable under §502(a)(1)(B)." <u>Wilkins</u> cites this Circuit's earlier decisions in <u>Layaou</u> and <u>Burke</u> as consistent with the view that "where the plaintiff was likely prejudiced by a defective SPD, she was entitled to recover under §502(a)(1)(B) the benefits she was due under the plan *as construed in light of the SPD*." Emph. added.

As <u>Wilkins</u> indicates, the Second Circuit has already applied this principle without using the §502(a)(1)(B) nomenclature by refusing to enforce plan

---

[5] Accord <u>West v. AK Steel</u>, 484 F.3d 395, 405 (6th Cir. 2007) (although the relief available under ERISA §502(a)(1)(B) is limited to the terms of the Plan "those terms must nevertheless comply with ERISA").

16

provisions that are not disclosed in accordance with ERISA. In <u>Layaou v. Xerox</u>, 238 F.3d 205, 209 (2d Cir. 2001), the Second Circuit held that a plan sponsor cannot make sweeping statements that benefits are subject to unstated conditions and restrictions. Instead, the "full import" of conditions and restrictions has to be included in SPDs. <u>Id</u>. at 211. Otherwise, the court will refuse to enforce the conditions or restrictions. In <u>Burke v. Kodak</u>, 336 F.3d 103, 111 (2d Cir. 2003), the Court refused to permit an employer to enforce an administrative requirement when the requirement was not plainly set forth in the SPD section that dealt with the benefit at issue. In <u>Feifer v. Prudential Ins. Co. of Am.</u>, 306 F.3d 1202, 1212 (2d Cir. 2002), the Second Circuit refused to permit a plan sponsor to reduce disability plan benefits by the amount of participants' social security benefits where the reduction wasn't properly disclosed in a plan SPD. Similarly, in <u>Leyda v. AlliedSignal</u>, 322 F.3d 199, 201-3 (2d Cir. 2003), the Second Circuit affirmed a District of Connecticut decision about a plan's failure to disclose a reduction in life insurance coverage. <u>Leyda</u> upheld the district court's award of the larger amount of benefits that a participant's widow thought she would receive based upon prior disclosures.

Consistent with the Second Circuit's precedents and the Third and Fifth Circuits' decisions in <u>Burstein</u> and <u>Washington</u>, the Seventh Circuit has ruled that

ERISA is an implied term of the plan. In <u>May Department Stores v. Federal Insurance Co.</u>, 305 F.3d 597, 600 (7th Cir. 2002), Judge Posner addressed this issue in the context of a fiduciary liability policy that excluded coverage for a loss which "constitutes benefits due or to become due under the terms of a Benefit Program." May Department Stores sought to obtain up to $25 million in insurance to cover benefits paid in settlement of two ERISA class actions concerning violations of a Department of Labor regulation on suspensions of benefits issued under ERISA §203 and a violation of ERISA §204(c)(3)'s actuarial equivalence requirements. May Department Stores contended that the benefits provided under these settlements were not covered by a policy exception for benefits due under the terms of the plan because there is a distinction between the "language in the plan" and "provisions of ERISA." *Id*. at 600-1.[6] Judge Posner responded that "this means, according to May, that the claims were not for benefits and so did not come within the exclusion. That is incorrect.... The benefits sought were plan benefits; the question was how to compute them. The answer was given by ERISA, but that is just to say that like many other contracts, pension plans

_____

[6] If May's argument is familiar, it's because CIGNA tried to draw the same distinction in the exception to its releases. See Defs. Post-Trial Br. (dkt. #251) at 121-22. This Court refused to "rewrite the release for CIGNA" to draw these "fine distinctions." Slip Op. at 38-39.

governed by ERISA contain provisions implied by law." *Id*.

The <u>May</u> decision goes on to address the distinction that the insured tried to draw between §502(a)(1)(B) and §502(a)(3): May claimed that the class actions brought against it had to be under §502(a)(3) because they involved statutory and regulatory violations. But the Seventh Circuit held that:

> "If we are correct that "terms of his plan: include terms implied by law, it is irrelevant under which provision the class actions were brought. What was being sought were benefits, and characterizing an award of benefits as a form of equitable relief would not bring it outside the exclusion in the policy. But anyway such a characterization would be improper in a case such as this in which a suit for benefits provides all the relief that the plaintiff is seeking.... This conclusion is compelled by the fundamental principle that equitable relief is available only when legal relief is not, a condition not satisfied when a plaintiff can obtain all he wants in a suit for benefits."

*Id.* at 602.

Under ERISA §§502(a)(1)(B) and 502(d), this Court's Order may be directed to the Plan as an entity. Although the cases are not always clear on this, a Plan administrator, whether it is CIGNA or an uninvolved former employee like Mr. Beltz, cannot be liable in a personal capacity under ERISA §502(a)(1)(B). See ERISA §502(d)(2); <u>Greater Blouse, Skirt & Undergarment Ass'n. v. Morris</u>, 1996 WL 325595 *4 (S.D.N.Y. 1996) (pension benefits "are uniquely the Plan's obligation"). <u>Crocco v. Xerox</u>, 137 F.3d 105, 107-8 (2d Cir. 1998), also indicates

19

that if "the administrators and trustees of the Plan" are also sued, they may only be liable "in their capacity as such."  Thus, following <u>Frommert</u>, the Court can issue an order under ERISA §502(a)(1)(B) requiring the Plan to provide benefits due under the terms of the plan that are lawfully in effect. 433 F.3d at 269-70. <u>Crocco</u> also says the Plan can be sued for benefits under §502(a)(1)(B).

CIGNA has suggested that in cases where relief is sought under §502(a)(1)(B) because plan terms are ineffective due to disclosure violations, both the Plan and the Plan administrator have to be named so the Plan administrator can be ordered to recalculate the benefits. Although this is a resourceful argument, it is not based on the statute. This Court has already ruled that "To the extent Plaintiffs seek to recover benefits under the Plan under §502(a)(1)(B), they may pursue such claims against the Plan itself which is a named defendant." Slip Op. at 68 n.26. This Court has also held that while CIGNA may not be held directly liable, it is properly a defendant in this action and that it was, in fact, the Plan administrator for disclosure purposes. Slip Op. at 70 n.27 ("Court finds, that CIGNA should be considered the administrator of the Plan for purposes of the statutorily required notices"). CIGNA's effort to avoid responsibility through this artifice is particularly unseemly because it told Judge Squatrito (at a time when the Complaint could have easily been amended) that "[i]f the Court orders that a

20

provision of the Plan must be changed or removed, the Plan, acting through its

trustees and fiduciaries, must then implement that relief as to all of the Plan's

participants." Slip Op. at 70.

CIGNA may attempt to distinguish Burstein and Washington on the ground

that they depend on a "conflict" between the SPD and the Plan and here there is no

conflict but, at worst, misleading representations about the plan provisions.

However, on remand, the district court in Burstein found a conflict when it

determined "that the Third Circuit's insistence that there is no reliance element in a

claim for plan benefits under ERISA" means that "use of the term 'earned' created

a contractual right to the hypothetical bookkeeping entries, irrespective of the

participant's being vested in the account. Thus, plaintiffs have pled a claim against

the Plan, and PBGC as statutory trustee." Burstein, supra, 2004 WL 2612162 *2

(E.D. Pa. 2004).

Consistent with their position on §§502(a)(1)(B) and 502(a)(3), Plaintiffs

submit that CIGNA's representations that future benefits will be "comparable" or

"larger" are both in conflict with the plan terms and misleading and that the Court

therefore has authority to provide relief under both sections. And certainly if the

Court were to conclude that relief is unavailable under §502(a)(1)(B), it should be

available under the "catch-all" provision of §502(a)(3): Until the legally-required

21

disclosures are made, the Court can order reinstatement in Part A of the class

members harmed by the adoption of Part B. See, e.g., <u>Varity Corp. v. Howe</u>, 516

U.S. 489, 512-15 (1996) ("it is hard to imagine why Congress would want to

immunize breaches of fiduciary obligation that harm individuals by denying

injured beneficiaries a remedy"); <u>In re Unisys Corp. Retiree Med. Benefits ERISA</u>

<u>Litig.</u>, 57 F.3d 1255, 1264 (3d Cir. 1995); <u>Mathews v. Chevron Corp.</u>, 362 F.3d

1172, 1185 (9th Cir. 2004); <u>Griggs v. E.I. DuPont de Nemours & Co.</u>, 237 F.3d

371, 385 (4th Cir. 2001).

 At oral argument, CIGNA's counsel tried to distance the representations in

the SPD from those in the SMM (which CIGNA earlier identified as the

Retirement Kit) and the Section 204(h) notice, by contending that the SPD was

comparatively not as misleading as the earlier communications. The attempt to put

space between the SPD and the SMM is unavailing since they are mandated by the

same statutory section (ERISA §102(a)) and the SPD did nothing to "correct" the

misleading statements in the SMM that the prior benefits were "fully protected"

and that future benefits would be "comparable" or "larger." See, e.g., <u>Hooven v.</u>

<u>Exxon Mobil Corp.</u>, 465 F.3d 566, 578 n.7 (3d Cir. 2006) (citing <u>McAuley v.</u>

<u>IBM</u>, 165 F.3d 1038, 1046 (6th Cir. 1999)). Instead of correcting those

representations, CIGNA's SPD repeated verbatim the misleading representation in

the SMM/Retirement Kit that "each dollar's worth of credits is a dollar of retirement benefits payable to you." Slip Op. at 29 and 96.

At oral argument, the Court asked CIGNA's counsel: If Plaintiffs had sued the Plan administrator, what relief would they be entitled to receive under §502(a)(1)(B)? Defendants' counsel conceded that the Plan or Plan administrator could be ordered to provide benefits under an "A plus B" transition to avoid wear-away. Plaintiffs recognize that this was a significant concession and we respect that. But Plaintiffs submit that no defensible line can be drawn under §502(a)(1)(B) between ordering that benefits be recalculated under an "A plus B" formula and ordering that class members be reinstated into Part A because the plan amendments that reduced benefits were "ineffective" or void. This is what Frommert and the Treasury regulations that the Court cited require. The primary difference with Frommert is that it was multiple plaintiff action (with over 100 plaintiffs) whereas this case was certified a class action with a much larger number of individuals.

### D.    To the Extent Relief for Benefit Reductions Is Unavailable under ERISA §502(a)(1)(B), Is It Available Under §502(a)(3)?

As Frommert and this Court have held, when amendments reducing benefits are not accompanied by a valid 204(h) notice, the amendments are "ineffective" or

"void." 433 F.3d at 268 and Slip Op. at 73. Plaintiffs reiterate their position that to the extent the reinstatement of benefits under Part A is unavailable under §502(a)(1)(B), it should be available under §502(a)(3). Defendants' position that "recalculated retroactive and prospective benefits does not constitute appropriate equitable relief" under §502(a)(3) defies the statutory scheme. Appropriate relief for statutory violations is precisely what ERISA §502(a)(3) was drafted to provide when it refers to enjoining "any act or practice which violates any provisions of this title" and obtaining "other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title." CIGNA's position would mean that the Federal courts could not order benefits to be recalculated for violations of the benefit calculation and disclosure rules that Congress enacted to protect participants' reasonably-anticipated benefits. This would make §502(a)(3) the "empty promise" that Sereboff expressly disavows. There should be no doubt that specific relief to undo statutory violations must be an appropriate remedy under §502(a)(3) which does not transgress Varity, Great-West, or Sereboff. Great-West was seeking to keep claims for "freestanding money damages" out of ERISA §502(a)(3). Disclosure violations for which the relief is to recalculate benefits under the legally-effective plan terms cannot be considered claims for "freestanding money damages."

24

1.    **Is the relief for misleading representations in equity specific performance or do courts provide money damages based on the misrepresented party's loss?**

Despite CIGNA's counsel's protest about detrimental reliance, the cases on equitable relief for breaches of fiduciary duty in misleading disclosures are indistinguishable and instructive. Under ERISA as under the common law, there is a fiduciary duty to comply with statutory requirements, including the disclosure rules and regulations. Indeed, ERISA §404(a)(1)(D) expressly requires fiduciaries to act in conformity with title I of ERISA. See, e.g., <u>Curtiss-Wright v. Schoonejongen</u>, 514 U.S. 73, 82 (1995) (quoting ERISA §404(a)(1)(D) for the proposition that plan administrators have a fiduciary duty "actually to run the plan" in accordance with the provisions of the statute, including the responsibility "for sorting out, from among the occasional corporate communications that pass through their offices and that conflict with the existing plan terms, the bona fide amendments from those that are not").

If a statutory violation is found based on inadequate disclosures, it is a breach of the fiduciary duty in §404(a)(1)(D). One cannot say that a violation of the disclosure rules exists with a showing of likely prejudice, but a breach of fiduciary duty exists only with a higher standard of detrimental reliance. As <u>Burke</u> observes, detrimental reliance often imposes an "insurmountable hardship" on

25

participants seeking remedies for inadequate SPDs. 336 F.3d at 112. Interposing

that requirement between the liability and relief phases in a case would undermine

Burke and effectively transform CIGNA's fiduciary duties from "the highest duty

known to the law,"[7] to a duty for which relief can virtually never be secured.

Defendants' position overlooks that Frommert specifically addressed the

plaintiffs' claim that "publishing and supplying misleading information in SPDs"

is a breach of fiduciary duty. The Second Circuit directed the district court to

"reconsider" that claim and to consider "what 'appropriate equitable relief' is

necessary." 433 F.3d at 272. There was no reference to a detrimental reliance

requirement.

     Contrary to CIGNA's claim at oral argument, the Second Circuit has not,

moreover, imposed a detrimental reliance requirement in ERISA breach of

fiduciary duty/misrepresentation cases like Mullins v. Pfizer, 23 F.3d 663 (1994).

Those words appear no where in the decision.  To the contrary, the Court held that

material misrepresentations are those where "there is a substantial *likelihood* that it

would mislead a reasonable employee in making an adequately informed decision

about if and when to retire." *Id*. at 669. While reliance is an element of a common

---

[7] LaScala v. Scrufari, 479 F.3d 213, 220-21 (2d Cir. 2007) (quoting
Donovan v. Bierwith, 680 F.2d 263, 272 n.8 (2d Cir. 1982)).

law action for misrepresentation, <u>Mullins</u> refers to "likelihood" and in <u>Burke</u> the Second Circuit expressly set a different course of "likely prejudice" because of the "insurmountable hardship" that detrimental reliance requirements can impose.

Thus, the reinstatement remedies offered in <u>Varity</u>, <u>Mathews</u>, <u>Unisys</u> <u>Retiree Med. Benefits</u> and <u>Griggs</u> for misleading representations should be available here if it is necessary for the Court to go outside of §502(a)(1)(B) for a remedy. The relief in those cases was not money damages per se but reinstatement.

Following the Third Circuit's holding in <u>Eichorn v. AT&T Corp.</u>, 484 F.3d 644, 656 (3d Cir. 2007), that even if former employees are not rehired under a "no hire" policy that violates ERISA §510, ERISA §502(a)(3) does not cover "pension benefits for work they never did for [the company]," there have been two decisions out of the Western District of Pennsylvania addressing the relief that is still available in the Third Circuit under §502(a)(3). These cases show that relief is available when:

> "Restoration of plaintiffs' accrued pension benefits is for work previously performed under the defendants' pension plans, which are subject to reformation due to defendants' statutory violation in creating and administering those plans. Like the situation in <u>Varity</u> ..., the court's decree in such a situation properly is understood as 'a matter of restoring the plaintiffs' benefits enrollment to the preexsiting arrangement,' which arrangement existed while the work was performed.... A make-whole remedy for defendants' statutory violation necessarily has as components a restoration to the benefits defendants should have been paying since

27

plaintiffs' separation from employment and a recognition of their
entitlement to those restored benefits into the future."

Shaver v. Siemens Corp., 2008 WL 859251 *2 (W.D. Pa. 2008). Accord

Luckasevic v. World Kitchen, 2007 WL 2683995 *7-8 (W.D. Pa. 2007).

### 2.    Can Plaintiffs recover under unjust enrichment based on ill-gotten gains, not losses?

Unjust enrichment provides another basis for recovery under §502(a)(3).

Unjust enrichment is based on ill-gotten gains, rather than the other party's losses.

However, as in accounting, "in many cases" "the defendant's gain will be equal to

the consumer's loss." FTC v. Verity Int'l, 443 F.3d 48, 68 (2d Cir. 2006). Here,

Plaintiffs submit that the two are the same: The benefits that participants lost

translated directly into cost savings for CIGNA. This is not a case like

Amschwand v. Spherion, 505 F.3d 342 (5th Cir. 2007), where the defendants' gain

is limited to insurance premiums whereas the plaintiff's loss is the much larger

value of an insurance policy.[8] Plaintiffs will stipulate, moreover, that their back

benefit awards will in the aggregate be no more than CIGNA's $10 million per

year in cost savings plus the investment returns on those savings.

---

[8] While there is no guarantee that the Supreme Court will follow it, on
March 3, 2008 the Court invited the Solicitor General to file an amicus brief on
remedies under ERISA in Amschwand's petition for certiorari. See dkt. # 07-841.

28

E.    **If the Cash Balance Amendments Are Ineffective and CIGNA Re-Adopts a Cash Balance Formula, Will It Have to Comply with the Pension Protection Act's Requirements for an "A plus B" Transition?**

When a provision of law depends on a specific action and the earliest date on which that action occurs is after the law is changed, it is beyond dispute that the new law applies. Here, the Pension Protection Act ("PPA") rule requiring an "A plus B" transition applies to "applicable plan amendments" "adopted" after June 29, 2005. P.L. 109-280, §701(a)(1) (adding ERISA §204(b)(5)(B)(ii), 29 U.S.C. 1054(b)(5)(B)(ii)). If CIGNA's adoption of a cash balance amendment was "void" or "ineffective," the adoption of the same amendment after the PPA's effective date is subject to the new law's requirements.[9]

III.   **Do Individual Issues Remain to Be Tried After the Court's February 15, 2008 Decision?**

Plaintiffs' reply brief sets out their position based on the Court-approved Stipulation and numerous legal authorities which are contrary to Defendants' blatantly obstructive proposal to make the proceedings "grind to a halt" by

---

[9] The "A plus B" transition required by the PPA is not unfamiliar to CIGNA. CIGNA already provided an "A plus B" transition to former Tier 1 participants who were rehired after January 1, 2001. Pls. Prop. Findings ¶397 (dkt. #248). And pursuant to the PPA, CIGNA is presently required to provide "A plus B" to all employees previously grand-fathered under Part A who CIGNA moved to an "enhanced" cash balance formula effective April 1, 2008. See Ex. 247 and 248 (dkt. #275).

29

imposing an opt-in requirement and conducting up to 26,000 additional individual proceedings. See Pls. Reply on Relief (dkt. #277) at 9-20. Even when individuals are subject to the "opt-in" requirements applicable to FLSA and ADEA actions and thereby become "party-plaintiffs" rather than absent class members, the courts place strict limits to protect against the use of discovery to restrict class membership or otherwise burden the members of the class. [10] Plaintiffs will reserve any further response about this issue for the brief due on May 28, 2008.

With regard to CIGNA's argument at the oral hearing that each individual class member should be required to prove that they read the SPD, the Court is correct that this would reintroduce a detrimental reliance requirement. Burke, 336 F.3d at 113, already addressed this issue when it cited Manginaro v. Welfare Fund of Local 71, 21 F.Supp.2d 284, 296-97 (S.D.N.Y. 1998), for the proposition that if the information is disclosed, an employee can learn about it from co-workers "even if he never read the SPD himself." Manginaro is consistent with three other district court decisions in the Second Circuit, namely, Medoy v. Warnaco Employees Long Term Disability, 2005 WL 3775953, *5 (E.D.N.Y. 2005),

---

[10] See, e.g., Geer v. Challenge Financial Investors, 2007 WL 1341774, *4 (D. Kan. 2007) ("the burden and expense the requested discovery (depositions of every opt-in plaintiff) would impose on Plaintiffs clearly outweighs the likely benefit of such discovery").

<u>Chisholm v. Plan Administrator of Joint Industry Board</u>, 2004 WL 3267292, *5-6

(E.D.N.Y. 2004), and <u>Estate of Ritzer v. Nat'l Org. of Indus. Trade Unions Ins.

Trust Fund</u>, 822 F.Supp. 951, 955 (E.D.N.Y. 1993).[11]

## IV.    Do the Parties Need Rulings on Prejudgment Interest, Attorney Fees or Incentive Awards Before Any Appeal?

Plaintiffs believe the Court should rule on the availability of prejudgment

interest. Under the Second Circuit's decisions in <u>Dunnigan v. Metropolitan Life

Ins. Co.</u>, 277 F.3d 223, 229-30 (2d Cir. 2002) and <u>Dobson v. Hartford Life &

Accident</u>, 389 F.3d 386, 398 (2d Cir. 2004), prejudgment interest should be

awarded as equitable relief to prevent unjust enrichment or as an implied plan

term. See Pls. Reply on Relief (dkt. #277) at 30-31. In <u>Jones v. UNUM Life Ins.

Co.</u>, 223 F.3d 130, 139 (2d Cir. 2000), the Second Circuit held that prejudgment

interest is "ordinarily left to the discretion of the district court" but this discretion

must "take into consideration the need to fully compensate the wronged party." In

the remand of <u>Dobson</u>, 518 F.Supp.2d 365 (2007), Judge Arterton found that

"recovery of interest on unreasonably withheld benefits payments is an implicit

'benefit' under the Plan." She found interest implicit in the "mandatory"

provisions that the payment of benefits will commence on certain dates. *Id*. at 374.

---

[11] Plaintiffs cited these cases in their Pre-Trial Reply Brief (dkt. #187) at 47.

Quoting the Second Circuit's decision, Judge Arterton ruled that "if benefits are not paid until after they are due, beneficiaries receive less monetary value than they are contractually entitled to." *Id*. In this instance, the same types of provisions for the "mandatory" payment of benefits are found in Articles IV and VII of Parts A and B of CIGNA's Plan. See Exs. 1 and 2. If necessary, the Court should also require CIGNA to provide a declaration and related documents to either confirm or deny that the interest rate that it applies for past due payments, including in the Depenbrock v. CIGNA litigation, has been 8.5%.

The Court's decisions on attorney fees and incentive awards can be deferred until after judgment on the merits, including relief. Because of FRCP Rule 23(h)(1) and (3), the decisions on attorney fees should ultimately be made, but they can be placed on a different schedule and consolidated with the merits appeal.

Plaintiffs also respectfully request that the Court's Order cover the violations of ERISA §204(g), e.g., the failure to preserve the Free 30% benefit, or at least reserve those issues for continued mediation with Magistrate Judge Garfinkel.

**Conclusion**

For the foregoing reasons, Plaintiffs request that the Court issue an Order providing the requested relief to the members of the class for the violations found

in this Court's February 15, 2008 Memorandum of Decision.

Dated: May 16, 2008

Respectfully submitted,

 s/ Stephen R. Bruce
Stephen R. Bruce Ct23534
Allison C. Caalim
805 15th St., NW, Suite 210
Washington, DC 20005
(202) 371-8013

 s/ Thomas G. Moukawsher
Thomas G. Moukawsher Ct08940
Moukawsher & Walsh, LLC
21 Oak St.
Hartford, CT 06106
(860) 278-7000

Attorneys for Named Plaintiffs and
Plaintiff Class

## CERTIFICATE OF SERVICE

I certify that copies of the foregoing (1) Plaintiffs' Supplemental Post-Argument Brief on Relief, (2) the Declarations of Allison C. Caalim and Sharon L. Taulman, and (3) this Certificate of Service were filed electronically through the CM/ECF system on May 16, 2008. Notice of this filing will be sent by e-mail to all counsel listed below by operation of that system:

Joseph J. Costello
Jeremy P. Blumenfeld
Jamie M. Kohen
Morgan, Lewis & Bockius
1701 Market St.
Philadelphia, PA 19103-2921

Christopher A. Parlo
Morgan Lewis & Bockius
101 Park Avenue
New York, NY 10178-0600

James A. Wade
Brett J. Boskiewicz
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103-3597

s/ Stephen R.Bruce
Stephen R. Bruce