UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANICE C. AMARA, GISELA R. BRODERICK, ANNETTE S. GLANZ, individually and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br><br>    vs.<br><br>CIGNA CORP. and CIGNA PENSION PLAN,<br><br>                      Defendants. | Civil No. 3:01-CV-2361 (MRK) |

**DEFENDANTS' REPLY TO PLAINTIFFS'**
**SUPPLEMENTAL POST-ARGUMENT BRIEF ON RELIEF**

## TABLE OF CONTENTS

                                              **Page**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

    1.     Benefit Election Forms ............................................................................................ 1

    2.     ERISA Section 204(h) Remedy Regarding The Failure To Disclose Wearaway and Benefit Reductions ............................................................................................ 3

    3.     Individualized Issues / Knowledge .......................................................................... 4

    4.     Plaintiffs Are Not Entitled To A Remedy On An Unjust Enrichment Theory ................... 6

    5.     Prejudgment Interest ................................................................................................ 8

## TABLE OF AUTHORITIES

Adams v. Tetley USA, Inc.,
363 F. Supp. 2d 94 (D. Conn. 2005)..................................................................................8

Burke v. Kodak Ret. Income Plan,
336 F.3d 103 (2d Cir. 2003)..........................................................................................5, 6

Campanella v. Mason Tenders' Dist. Council Pension Plan,
299 F. Supp. 2d 274 (S.D.N.Y. 2004)..............................................................................10

Dobson v. Hartford Fin. Servs. Group, Inc.,
389 F.3d 386 (2d Cir. 2004)..............................................................................................9

Dunnigan v. Metro. Life Ins. Co.,
277 F.3d 223 (2d Cir. 2002)............................................................................................10

Fischer v. Philadelphia Elec. Co.,
994 F.2d 130 (3d Cir. 1993)..............................................................................................8

Flint v. ABB, Inc.,
337 F.3d 1326 (11th Cir. 2003) ......................................................................................10

Frommert v. Conkright,
433 F.3d 254 (2d Cir. 2006)..............................................................................................4

Great-West Life & Annuity Ins. Co. v. Knudson,
534 U.S. 204 (2002).....................................................................................................8, 10

Henry v. Champlain Enter., Inc.,
445 F.3d 610 (2d Cir. 2006)..............................................................................................2

Jones v. UNUM Life Ins. Co. of Am.,
223 F.3d 130 (2d Cir. 2000)............................................................................................11

King v. Pension Trust Fund of the Pension Hospitalization and
Benefit Plan of the Elec. Indus., 131 F. A'ppx 740 (2nd Cir. Feb. 22, 2005)...................8

Kinstler v. First Reliance Standard Life Ins. Co.,
181 F.3d 243 (2d Cir. 1999)............................................................................................10

Layaou v. Xerox Corp.,
330 F. Supp. 2d 297 (W.D.N.Y. 2004) .............................................................................2

# TABLE OF AUTHORITIES
(continued)

Page

Mead v. Andersen,
309 F. Supp. 2d 596 (S.D.N.Y. 2004) ................................................................................10

Mendez v. Teachers Ins. & Annuity Ass'n & College Ret. Equities Fund,
982 F.2d 783 (2d Cir. 1992) ...............................................................................................11

Mullins v. Pfizer,
23 F.3d 663 (1994) ..............................................................................................................8

Nechis v. Oxford Health Plans, Inc.,
421 F.3d 96 (2d Cir. 2005) ..................................................................................................9

SEC v. First Jersey Sec., Inc.,
101 F.3d 1450 (2d Cir. 1996) ............................................................................................11

Siskind v. Sperry Ret. Program,
47 F.3d 498 (2d Cir. 1995) ..................................................................................................8

Tyndall v. New England Teamsters & Trucking Indus. Pension Fund,
No. 3:03CV194, 2006 WL. 3815140 (D. Conn. Dec. 7, 2006) .........................................10

Weinreb v. Hosp. For Joint Diseases Orthopaedic Inst.,
404 F.3d 167 (2d Cir. 2005) ............................................................................................5, 7

Wickham Contracting v. Local Union No. 3, IBEW,
955 F.2d 831 (2d Cir. 1992) ..............................................................................................11

Wilkins v. Mason Tenders Dist. Council Pension Fund,
445 F.3d 572 (2d Cir. 2006) ............................................................................................5, 6

## STATUTES

26 C.F.R. § 1.417(a)(3) ..................................................................................................................3

**INTRODUCTION**

Pursuant to the Court's instructions during oral argument on April 30, 2008, the parties simultaneously filed briefs addressing certain questions related to the disclosure claims under the Employee Retirement Income Security Act ("ERISA") decided by the Court in its February 15, 2008 Memorandum of Decision ("MOD"). Defendants now respond to Plaintiffs' Supplemental Post-Argument Brief. ("Supp'l Brief").[1]

**ARGUMENT**

**1.    Benefit Election Forms**

Plaintiffs continue to suggest that the Court may order that participants be given an opportunity to make a new benefit election without undoing their prior election and paying back any excess lump sum they already received. (Supp'l Brief at 2-6). This proposed remedy would result in a windfall to Plaintiffs and is not an appropriate equitable remedy authorized by ERISA.

Plaintiffs' suggested "equitable setoff," (id. at 3-4), would still result in participants, including Lilian Jones, receiving *more* than they were entitled to under the CIGNA Pension Plan (the "Plan"). Ms. Jones would receive a guaranteed lump sum, the equivalent of a life annuity with a guaranteed payment minimum, plus an additional annuity — a combined benefit which would put Ms. Jones in a more advantageous position than she would have been in had she elected an annuity benefit initially. Although ERISA aims for participants to receive proper disclosures, it does not call for remedies that provide a windfall to participants. See Henry v. Champlain Enter., Inc., 445 F.3d 610, 624 (2d Cir. 2006) (The "aim of ERISA is to make the plaintiffs whole, but not to give them a windfall.") (citation and internal quotations omitted);

---

[1]    Defendants will not repeat all of the arguments made in their April 16, 2008 Memorandum on Individual Issues and Class Relief or their May 16, 2008 Responses to the Court's April 30, 3008 Inquiries, but incorporate them by reference here.

Layaou v. Xerox Corp., 330 F. Supp. 2d 297, 304-05 (W.D.N.Y. 2004) (ordering plan administrator to recalculate benefit and opining that it would "not be unreasonable" for administrator to "subtract out the amount of the prior distribution" since to do otherwise would provide plaintiff with a "windfall"). Indeed, neither ERISA Section 502(a)(1)(B) nor ERISA Section 502(a)(3) authorizes an award of additional benefits beyond those provided under the terms of the Plan.

Three additional points also bear note:

First, Plaintiffs request relief on their relative value claim for participants who elected a lump sum between January 1998 and May 2006. (Supp'l Brief at 1). The Court's MOD, however, made clear that it was limiting this claim to the time period between January 1, 1998 and September 30, 2004. (MOD at 116 n.52) ("[T]he Court will address only the period of January 1, 1998, when Part B became effective, until September 30, 2004."). Thus, pursuant to the Court's MOD, any remedy should be restricted to those participants who elected lump sums between January 1, 1998 and September 30, 2004, but who could have elected to receive an immediate annuity that was more valuable than the lump sum received.

Second, as noted previously, the 2003 Treasury regulations permit optional forms of benefits to be deemed relatively equal where they vary by five percent or less. See 26 C.F.R. § 1.417(a)(3)-1(c)(2)(iii). Here, Plaintiffs do not dispute that only participants whose benefit options varied by more than five percent should obtain any remedy. Accordingly, any remedy should be limited to those participants whose annuity benefit would have exceeded the participant's lump sum value by more than five percent.

Lastly, at oral argument, Plaintiffs suggested that even deceased participants should be allowed to re-elect (posthumously) if such participants were married at the time of benefit

2

commencement and death. But for participants who have died, the lump sum option has already proven to be the more valuable option for that participant. Any failure to disclose the relative value of benefit options to these participants therefore is harmless error and no remedy should be awarded.

**2.    ERISA Section 204(h) Remedy Regarding The Failure To Disclose Wearaway and Benefit Reductions**

As noted in their May 16 submission, Defendants maintain that any remedy besides one to compensate for wearaway would not be equitable or appropriate in light of the communications provided to Plan participants.

Plaintiffs point out that the Court found that the Benefits Newsletter and Retirement Information Kit, which were intended to satisfy the Section 204(h) notice requirements, were deficient. However, subsequent disclosures to participants, including most importantly the Part B SPD and the annual account statements, properly disclosed to participants the ongoing benefits they would earn each year under Part B.

Although the Court found that the SPD and subsequent disclosures did not overcome earlier faulty disclosures for purposes of Section 204(h) because the SPD also failed to disclose that opening balances did not include early retirement subsidies and the wearaway effect, it is undisputed that the SPD published in September 1998 (before the Part B Plan document was executed) accurately described how the plan operated on an ongoing basis. Importantly, the Court's only criticism of the SPD, namely its statement that: "Each dollar's worth of credit is a dollar of retirement benefits payable to you after you are vested," would be completely accurate once wearaway is eliminated. (MOD at 29, quoting 1998 SPD).[2] Under these circumstances,

---

[2]    Likewise, once wearaway is removed, the opening account balance would equal or exceed the value of all prior Plan benefits, including early retirement subsidies.

3

there is no basis in Second Circuit precedent (or elsewhere in ERISA) to afford any additional remedy.[3]

Moreover, Plaintiffs themselves admit that the Court does not have the power to create from whole cloth a remedy that increases the ongoing benefit amounts earned by participants each year from 1998 to the present to something similar to those benefits earned under Part A. (Supp'l Brief at 13-14). Such a remedy would far exceed the annual benefit accruals that participants were unambiguously told they were going to receive in the SPD or annual account statements. There is no basis for awarding any class member additional accruals for each year from 1998 – 2008 beyond those that each class member was specifically told he or she had earned in each year, nor is there any basis for awarding additional benefits based on a formula not described in the SPD or the Plan documents. Nothing in Burke v. Kodak Ret. Income Plan, 336 F.3d 103 (2d Cir. 2003), Weinreb v. Hosp. For Joint Diseases Orthopaedic Inst., 404 F.3d 167 (2d Cir. 2005), Frommert, supra, or Wilkins v. Mason Tenders Dist. Council Pension Fund, 445 F.3d 572, 585 (2d Cir. 2006) authorizes such a remedy. Accordingly, assuming the Court decides to order a monetary remedy over Defendants' objections, that remedy should be limited to eliminating wearaway.

## 3.     **Individualized Issues / Knowledge**

Plaintiffs' Supplemental Brief contends that Defendants are trying to impose a requirement that each participant prove detrimental reliance and that he/she read the faulty

---

[3]   Indeed, Plaintiffs complain that the 1998 SPD did not correct earlier misstatements in the Benefits Newsletter and Retirement Kit, but they acknowledge that it accurately and specifically described how benefits were earned each year. In this respect, this case is similar to Frommert v. Conkright, 433 F.3d 254 (2d Cir. 2006), in which the Second Circuit held that the 1998 SPD in that case cut-off any further remedy even though it did not "correct" previous misstatements, id. at 263, because it accurately described the relevant portion of the Plan.

4

disclosures. (Supp'l Brief at 30). This is incorrect and misstates Defendants' position. As Defendants' May 16 submission explained, the likely prejudice / harmless error standard is an individualized inquiry, which requires some proof that a participant was likely or actually harmed by the faulty disclosure, even if a participant is <u>not</u> required to show actual detrimental reliance. (<u>See</u> Defs' Responses to the Court's April 30 Inquiries at 7.) [4]

Defendants do not contend, as Plaintiffs claim (Supp'l Brief at 30), that a participant must show that he actually read the faulty disclosure in order to obtain a remedy. Rather, Defendants maintain that under Second Circuit precedent, the Court must find that a participant likely/actually would have taken some action to obtain additional benefits if she had received an accurate disclosure, as in <u>Burke</u>, <u>Weinreb</u>, or <u>Wilkins</u>, or that she was otherwise likely or actually harmed by its contents. A necessary corollary is that the participant must have either read the misleading communication or somehow become was aware of its contents, as there can be no harm – likely or actual – if the participant was unaware of the contents of the misleading communication. By ruling on this likely prejudice/harmless error analysis on a classwide basis, the Court effectively rendered the <u>Burke</u> analysis superfluous in favor of an objective materiality standard. If that approach were correct, the individualized facts discussed in <u>Burke</u>, <u>Weinreb</u>, and <u>Wilkins</u>, which formed the basis of the prejudice/harm analysis in those cases, would have been unnecessary. Indeed, this Court's findings of fact regarding what Plaintiffs Glanz, Broderick and Amara, and testifying class members Charette, Flannery and Hogan (and others) understood or did would have likewise been unnecessary if the likely prejudice/harmless error analysis does not depend on each participant's "actual knowledge." (MOD at 103).

---

[4] Moreover, as explained in Defs' Responses to the Court's April 30 Inquiries, the burden shifting element of <u>Burke</u> only matters where the evidence is in equipoise. (<u>See</u> Defs' Responses to the Court's April 30 Inquiries at 7-8.)

The opinions in <u>Burke</u>, <u>Weinreb</u>, and <u>Wilkins</u> each demonstrate that such facts are indeed relevant and must be considered as part of the prejudice/harm analysis. See <u>Burke</u>, 336 F.3d at 114 (finding that the absence of the domestic partnership affidavit requirement in the SPD likely led the Burkes to believe that an affidavit was unnecessary, and considering the Burkes' designation of a beneficiary for other benefit plans was reasonable in light of their circumstances); <u>Wilkins</u>, 445 F.3d at 585 (remanding to the district court for a determination as to whether Wilkins could show likely prejudice by proffering evidence that had the SPD notified him of his need to retain pay records to substantiate his level of benefits due, he "would have taken effective measures either to safeguard these records against such perils, or to obtain and safeguard other competent evidence of covered employment" and would have preserved such records); <u>Weinreb</u>, 404 F.3d at 171-72 (finding that Weinreb suffered no prejudice from the absence of an SPD which would have alerted him to the need to fill out an enrollment form, where the evidence showed that the hospital told Weinreb three times to complete the enrollment form, "he received the form two, if not three, times," and he had "promptly remitted [a different] enrollment form after human resources asked him for it.").

In short, this standard is individualized and must be examined on a case-by-case basis.

**4.         Plaintiffs Are Not Entitled To A Remedy On An Unjust Enrichment Theory**

Plaintiffs' suggestion that they should be entitled to a remedy for the Plan Administrator's disclosure violations based on an unjust enrichment theory likewise should be rejected. (Supp'l Brief at 28).

First, Plaintiffs cite CIGNA's anticipated $10 million a year in cost savings arising from the conversion to Part B (savings that were offset by changes to the 401(k) plan) as "unjust

6

enrichment" that demands a remedy. (Supp'l Brief at 28).[5] These cost savings, however, did not result from faulty disclosures or anything that Plaintiffs or class members did or did not do because of those disclosures. To the contrary, the expected $10 million in cost savings was the result of the plan amendment converting to a cash balance plan, which this Court has found to be entirely lawful, and would have been realized regardless of whether CIGNA satisfied its disclosure obligations. Thus, any cost savings that CIGNA experienced were lawful and were not "unjust." Those cost savings bear no relationship to the disclosure deficiencies for which Plaintiffs now seek relief. Under these circumstances, an unjust enrichment award is entirely inappropriate.[6]

Moreover, any unjust enrichment only could form the basis of a claim for restitution at law, and would not be "appropriate equitable relief" under ERISA Section 502(a)(3). The

---

[5] Plaintiffs again confuse the different defendants in this action in trying to justify their unjust enrichment claim. Plaintiffs seek benefits from the Plan, so whether CIGNA itself saved money or not is irrelevant.

[6] Plaintiffs also now contend that the Court may grant relief for the disclosure violations as a breach of fiduciary duty, and further maintain that such a claim does not require Plaintiffs to show detrimental reliance. This is incorrect. See King v. Pension Trust Fund of the Pension Hospitalization and Benefit Plan of the Elec. Indus., 131 F. A'ppx 740, 742 (2nd Cir. Feb. 22, 2005) (rejecting breach of fiduciary duty misrepresentation claim because plaintiff "did not rely on the statement, and therefore suffered no injury and is not entitled to relief"); Adams v. Tetley USA, Inc., 363 F. Supp. 2d 94, 108 (D. Conn. 2005) (fiduciary misrepresentation claim requires proof that "the plaintiff relied on those misrepresentations to their detriment."); see also Siskind v. Sperry Ret. Program, 47 F.3d 498, 507 (2d Cir. 1995) (finding failure to allege detrimental reliance fatal to a breach of fiduciary duty claim). Plaintiffs further suggest that the Second Circuit's opinion in Mullins v. Pfizer, 23 F.3d 663 (1994), reflects that the standard instead is "substantial likelihood" of harm, as in Burke's likely prejudice standard. Plaintiffs confuse the different elements of a fiduciary breach claim. The "substantial likelihood" of harm standard from Mullins which Plaintiffs quote refers to the materiality requirement of a fiduciary breach claim. Indeed, while Plaintiffs' Supp'l Brief omitted the case citation, the Mullins court was quoting from Fischer v. Philadelphia Elec. Co., 994 F.2d 130 (3d Cir. 1993), written by Second Circuit Judge Feinberg sitting by designation, in which the court explicitly stated that it was addressing whether the failure to meet the materiality requirement of a fiduciary breach claim warranted summary judgment. 994 F.2d at 135.

7

Supreme Court has held that a claim for restitution in equity based on unjust enrichment can only lie where specific "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213 (2002). By contrast, where the plaintiff "could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him, the plaintiff had a right to restitution *at law*." Id. (emphasis added). Here, Plaintiffs do not assert title or right to any particular property. Instead, they merely seek benefits from the Plan without pointing to any particular assets to which any particular participant is entitled. Any claim to unjust enrichment would therefore be a claim at law, not "equitable relief" under ERISA Section 502(a)(3). E.g., Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 103 (2d Cir. 2005) (rejecting claim for unjust enrichment where the monies sought could not "clearly be traced back to particular funds or property in the defendant's possession").

**5.    Prejudgment Interest**

Finally, the Court asked the parties to address whether prejudgment interest would be necessary or appropriate in this case. (See Order dated May 22, 2008). Defendants' position is that prejudgment interest is neither permitted nor proper here.

Neither of the ERISA provisions under which Plaintiffs seek benefits authorizes prejudgment interest under these circumstances. First, under ERISA Section 502(a)(1)(B), prejudgment interest may be awarded only where it is owed under the terms of a plan. See Dobson v. Hartford Fin. Servs. Group, Inc., 389 F.3d 386, 398 n.5 (2d Cir. 2004). Plaintiffs note that in Dobson, Judge Arterton found that the recovery of interest was implicit under the terms of the plan at issue in the case, where the defendants conceded that benefits were due. (Supp'l Brief at

8

31). However, in Dobson, under the terms of the plan, participants were owed payment upon their submission of proof of disability, and the court's analysis dealt with whether the plan required payment of prejudgment interest on benefits that were delayed while the administrator determined whether that proof was sufficient. 389 F.3d at 392-94. Here, in contrast, Plaintiffs are not trying to get a benefit that was delineated under the terms of the plan, and there is no plan provision entitling them to interest on benefits that might be due under an SPD.[7]

Plaintiffs try to analogize the payment provisions in Articles IV and VII of Parts A and B of CIGNA's Plan to the "mandatory" payment provisions in Dobson, but this comparison is inapposite. Here, Plaintiffs timely received the benefits they were due under the Plan. There is no Plan provision, explicit or implicit, that entitles participants to interest on the additional benefits Plaintiffs seek. Nor does the Plan specify that such benefits must be paid by a certain date.[8] Accordingly, Dobson is inapposite to Plaintiffs' request for extra-contractual, compensatory interest.

Second, pre-judgment interest may not be awarded under ERISA Section 502(a)(3) because it does not constitute appropriate equitable relief. Plaintiffs cite the Second Circuit's decision in Dunnigan v. Metro. Life Ins. Co., 277 F.3d 223, 229-230 (2d Cir. 2002), in which the court held that prejudgment interest may be awarded as equitable relief. But subsequent

---

[7] The fact that certain participants have been paid interest on recovered benefits wrongfully withheld in error under the Plan is not sufficient to find that the Plan calls for the recovery of prejudgment interest, or to otherwise grant prejudgment interest to Plaintiffs under these circumstances. See Dobson, 389 F.3d at 396.

[8] Moreover, any determination as to whether Part B entitles participants to interest should be made in the first instance by the Plan Administrator, who retains discretion to interpret the plan and whose determination would be subject to deference. Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 249 (2d Cir. 1999) (where a plan reserves discretionary authority, denials of benefits are subject to deferential arbitrary and capricious review and may be overturned only if the decision is "without reason, unsupported by substantial evidence or erroneous as a matter of law").

decisions have universally recognized that this opinion was called into question by the Supreme Court's decision in Knudson, 534 U.S. at 214. See Mead v. Andersen, 309 F. Supp. 2d 596, 599 (S.D.N.Y. 2004) (Knudson "calls into question" the holding in Dunnigan). As Judge Droney has explained, the Supreme Court's decision in Knudson "casts serious doubt on whether interest on retroactive awards of benefits is a permissible form of equitable relief." Tyndall v. New England Teamsters & Trucking Industry Pension Fund, No. 3:03CV194, 2006 WL 3815140, at *5 n.9 (D. Conn. Dec. 7, 2006); Campanella v. Mason Tenders' Dist. Council Pension Plan, 299 F. Supp. 2d 274, 292 (S.D.N.Y. 2004) (same). See also Flint v. ABB, Inc., 337 F.3d 1326, 1331 (11th Cir. 2003) (noting that Knudson "raises the question whether 502(a)(3) ever allows an award of interest for delayed benefits or whether such a claim is an impermissible attempt to dress an essentially legal claim in the language of equity"). While Defendants acknowledge that some courts of appeals have permitted an award of prejudgment interest even in the face of Knudson, Defendants respectfully suggest that this Court should join its sister courts in finding that prejudgment interest is not proper equitable relief under ERISA.

Finally, even if this Court found prejudgment interest was available under ERISA in certain circumstances, it is not warranted here. The Second Circuit has cautioned that prejudgment interest "must not result in over-compensation of the party to whom judgment has been awarded," and should be awarded "only in cases where such an award is 'fair, equitable and necessary to compensate the wronged party fully.'" Mendez v. Teachers Ins. & Annuity Ass'n & College Ret. Equities Fund, 982 F.2d 783, 790 (2d Cir. 1992) (quoting Wickham Contracting v. Local Union No. 3, IBEW, 955 F.2d 831, 835 (2d Cir. 1992)). To determine whether prejudgment interest is appropriate, a court must consider four factors: "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the

relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." Jones v. UNUM Life Ins. Co. of Am., 223 F.3d 130, 139 (2d Cir. 2000) (quoting SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1476 (2d Cir. 1996)).

Here, these factors favor a denial of prejudgment interest. First, many participants have not yet commenced their benefits and therefore no benefits are owing. Second, as noted earlier, participants were fully apprised, through the Part B SPD, the Total Compensation Reports and the annual Account Statements, of the exact amount in their pension account. There is no reason to provide interest on monies that participants never expected to receive in the first place.

Moreover, this is not a typical denied benefits claim. Plaintiffs are not owed any additional benefits under the Plan until such time as this Court holds that the Plan Administrator's disclosures were deficient and that Plaintiffs therefore are entitled to additional benefits. There is no basis under ERISA or Part B to pay any participant more money before the Court's rules what additional benefits, if any, are payable. Under these circumstances, while post-judgment interest may be warranted, prejudgment interest is not appropriate.

Respectfully submitted,

Dated: May 30, 2008

**MORGAN, LEWIS & BOCKIUS LLP**
By: /s/ Joseph J. Costello
Joseph J. Costello
Jeremy P. Blumenfeld
Jamie M. Kohen
*Admitted pro hac vice*
1701 Market Street
Philadelphia, Pennsylvania 19103-2921
(215) 963-5295/5258/5472
(215) 963-5001 (fax)

11

**ROBINSON & COLE**
James A. Wade (CT # 00086)
280 Trumbull Street
Hartford, Connecticut  06103
(860) 275-8270
(860) 275-8299 (fax)

*Attorneys for Defendants*
*CIGNA Corporation and CIGNA Pension Plan*

12

## CERTIFICATE OF SERVICE

This is to certify that the foregoing Defendants' DEFENDANTS' REPLY TO PLAINTIFFS' SUPPLEMENTAL POST-ARGUMENT BRIEF ON RELIEF was filed electronically through the CM/ECF system on May 30, 2008. Notice of this filing will be sent by e-mail to all parties listed below by operation of the Court's electronic filing system. The parties may access this filing through the Court's CM/ECF system. The aforementioned documents were also served on the parties listed below by first class United States mail, postage prepaid, this 30th day of May 2008.

>Thomas G. Moukawsher
>Moukawsher & Walsh, LLC
>328 Mitchell Street
>Groton, CT  06340
>
>Stephen R. Bruce
>805 15th Street, NW
>Suite 210
>Washington, DC  20005

                By: /s/ Joseph J. Costello
                    Joseph J. Costello

13