# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JANICE C. AMARA,             :
GISELA R. BRODERICK,      :
ANNETTE S. GLANZ,         :
individually and on behalf      :
of all others similarly situated,   :
                                 :
                Plaintiffs,   :
                                 :
     vs.                    :     Civil No. 3:01-CV-2361 (MRK)
                                 :
CIGNA Corp. and             :
CIGNA Pension Plan,       :
                                 :
              Defendants. :

## PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSES TO THE COURT'S APRIL 30, 2008 INQUIRIES

Stephen R. Bruce Ct23534
Allison C. Caalim
805 15th St., NW, Suite 210
Washington, DC 20005
(202) 371-8013

Thomas G. Moukawsher Ct08940
Moukawsher & Walsh, LLC
21 Oak St.
Hartford, CT 06106
(860) 278-7000

Attorneys for Named Plaintiffs and
Plaintiff Class

**Table of Contents**

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    The Years under Wear-aways and the Benefit Reductions . . . . . . . . . . . . 1

II.    Remedies for the Relative Value Disclosure Violations . . . . . . . . . . . . . . 6

III.    CIGNA's Proffer to Support 26,000+ Discovery Requests and
       Individual Hearings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV.    Prejudgment Interest on Past Due Benefits . . . . . . . . . . . . . . . . . . . . . . . . 14

V.    Attorneys' Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Amschwand v. Spherion Corp.*, 505 F.3d 342 (5th Cir. 2007), *pet. for certiorari pending*, No. 07-841 ................................................................ 4

*Burke v. Kodak Ret. Income Plan*, 336 F.3d 103 (2d Cir. 2003), *cert. denied*, 540 U.S. 1105 (2004) ............................................................. 11

*Cement and Concrete Workers District Council Annuity Fund v. Lollo*, 148 F.3d 194 (2d Cir. 1998) ................................................................. 11

*Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) .................................................................................. 13

*Dobson v. Hartford Life & Accident*, 518 F.Supp. 2d 365 (D.Conn. 2007), *on remand from* 389 F.3d 386 (2d Cir. 2004) ........................... 14

*Dunnigan v. Metropolitan Life Insurance Co.*, 277 F.3d 223 (2d Cir. 2002) .................................................................................. 14

*Frommert v. Conkright*, 433 F.3d 254 (2d Cir. 2006) ........................ 3, 12-13

*Frommert v. Conkright*, 472 F. Supp. 2d 452 (W.D.N.Y. 2007) .................. 7

*Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371 (4th Cir. 2001) ...... 4

*Harte v. Bethlehem Steel*, 214 F.3d 446 (3d Cir.), *cert. denied*, 531 U.S. 1037 (2000) .............................................................................. 5

*Hooven v. Exxon Mobil Corp.*, 465 F.3d 566 (3d Cir. 2006) ...................... 5

*Jones v. UNUM Life Insurance Co.*, 223 F.3d 130 (2d Cir. 2000) ............. 14

*Jordan v. Federal Express*, 116 F.3d 1005 (3d Cir. 1997) ........................ 12

*Layaou v. Xerox Corp.*, 330 F. Supp. 2d 297 (W.D.N.Y. 2004) .................. 7

*Mathews v. Chevron Corp.*, 362 F.3d 1172 (9th Cir. 2004) ........................... 4

*Manginaro v.Welfare Fund of Local 771, I.A.T.S.E.*, 21 F. Supp. 2d 284
    (S.D.N.Y. 1998) ...................................................................... 11

*Moriarity v. United Techs. Corp. Represented Employees Retirement Plan*,
    947 F. Supp. 43 (D. Conn. 1996), *aff'd*, 158 F.3d 157 (2d Cir. 1998) .. 11

*Mullins v. Pfizer*, 23 F.3d 663 (2d Cir. 1994) ............................................... 4

*Mullins v. Pfizer*, 147 F. Supp. 2d 95 (D.Conn. 2001) ................................. 4

*In re Unisys Corp. Retiree Medical Benefits ERISA Litig.*, 57 F.3d 1255
    (3d Cir. 1995) ........................................................................ 4

*Varity Corp. v. Howe,* 516 U.S. 489 (1996) .................................................. 4

## FEDERAL STATUTES, REGULATIONS AND RULES

ERISA §203(e), 29 U.S.C. §1053(e) ............................................................. 8

ERISA §204(h), 29 U.S.C. §1054(h) ............................................................ 4

ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) ..................................... 2-3

ERISA §502(a)(3), 29 U.S.C. §1132(a)(3) ............................................... 2-4

26 C.F.R. 1.417(a)(3)-1(c) .......................................................................... 8

F.R.C.P. 23(h) ........................................................................................ 15-16

F.R.C.P. 54(d)(2) ....................................................................................... 15

F.R.C.P. 58(e) ........................................................................................... 15

**Introduction**

CIGNA's brief does not address the Court's requests for quantitative information. And CIGNA skips or overlooks a number of legal issues, e.g., the effect of the Pension Protection Act's provision on wear-aways, unjust enrichment, and prejudgment interest. Because CIGNA's submission is 13 pages, Plaintiffs will keep this response short–even if CIGNA might have sandbagged class counsel by not putting much content in its May 16th brief.

**I.      The Years under Wear-aways and the Benefit Reductions**

The Court asked the parties to provide relevant numbers about the incidence of wear-aways and the relationship between wear-aways and benefit reductions, but said the Court would understand if CIGNA did not do so. It looks like CIGNA chose the latter because its brief includes no such information. Plaintiffs have advised the Court that an "A plus B" remedy for wear-away would not offer even a 50% solution for the benefit reductions but a 20-25% solution which would be spread very inconsistently among the members of the class (close to 6,000 of whom did not experience a period of wear-away).

Wear away is a major problem, especially for relatively older, longer-serving class members like Ms. Broderick who were rehired. It is also a problem for the relatively younger class members like Ms. Glanz. But the benefit

1

reductions were deeper and more painful for all class members, including Ms. Glanz and Ms. Broderick. Ensuring that everyone receives at least "A plus B" is an essential part of any remedy but it would only incompletely address the misleading representations about "comparable" or "larger" benefits and it cures nothing for the close to 6,000 individuals like Ms. Hogan who did not suffer from wear away.

Other than pages 11-12 and fn. 6 (which seems to go in different directions), CIGNA does not presently contest that relief can be provided under ERISA §502(a)(1)(B), or if not there, under §502(a)(3). Defs. Br. at 5 ("Setting aside all of Defendants' objections to Plaintiffs' proposed remedies ..."; "even if such a remedy were otherwise possible under ERISA's enforcement provisions").

Instead, CIGNA strongly urges that a remedy for wear-aways should be the extent of the relief:

> "[T]here is no reason to afford any additional remedy, even if such a remedy were otherwise possible under ERISA's enforcement provisions." Defs. Br. at 5.

> "[A]ssuming the Court decides to order a monetary remedy over Defendants' objections, that remedy should be limited to eliminating wearaway," Defs. Br. at 6.[1]

---

[1] In its effort to stop the remedy at eliminating wear-aways, CIGNA offers some candid admissions about wear-aways:

However, in staking out this position, CIGNA offers little in the way of a rationale

for it. CIGNA asserts that Plaintiffs are seeking "a formula not described in the

SPD or the Plan documents." Defs. Br. at 6. But CIGNA has elsewhere recognized

that Plaintiffs seek reinstatement to the Part A formula. See Defs. April 16, 2008

Br. at 14, 16, 19-20.

CIGNA suggests that in the Second Circuit detrimental reliance is still an

element of a breach of fiduciary duty claim. Defs. Br. at 7 n.7. But this is a red

herring to divert attention from the issue of whether reinstatement is available

under ERISA. As <u>Frommert</u> shows, reinstatement is available under ERISA

§502(a)(1)(B) when plan amendments or other provisions are "ineffective"

because of violations of law. Reinstatement is also available as appropriate

equitable relief under §502(a)(3). Although Plaintiffs respectfully submit that they

are correct about <u>Frommert</u>, 433 F.3d at 272 (which directed the district court to

reconsider if "publishing and supplying misleading information in SPDs" is breach

---

"[O]nce wearaway is eliminated ... the statement in the 1998 SPD that 'Each dollar's worth of credit is a dollar of retirement benefits payable to you after your are vested' would be completely accurate." Defs. Br. at 5-6.

"[W]earaway may not have been sufficiently disclosed ..." *Id*. at 6.

3

of fiduciary duty), and <u>Mullins v. Pfizer</u>, 23 F.3d at 669, [2] the point Plaintiffs are

making about <u>Varity</u>, <u>Unisys</u>, <u>Mathews</u> and <u>Griggs</u> is that all of these decisions

show that reinstatement is also available under ERISA §502(a)(3).[3]

CIGNA next reverts to reiterating merits defenses. This Court held that the

Section 204(h) notice and SMM were misleading disclosures because they led

employees to believe that their retirement benefits under cash balance would be

"at least roughly equivalent to those under Part A." Slip Op. at 104.  Now, CIGNA

indirectly suggests that the misleading representations in the Section 204(h) notice

and SMM are old news which Plaintiffs should stop bringing up. CIGNA does this

by dropping any reference to the Newsletter and Retirement Kits and emphasizing

the 1998 SPD. See Defs. Br. at 5-6. But just because CIGNA did not make all of

the misleading statements each time that it spoke does not mean that the

---

[2] On the remand of <u>Mullins</u>, Judge Arterton held that a reasonable employee likely would have wanted to take the withheld information about benefit changes into account. 147 F. Supp. 2d 95, 109 (D.Conn. 2001).

[3] On May 23, 2008, the Solicitor General filed an amicus brief by invitation in support of the petition for certiorari in <u>Amschwand v. Spherion Corp.</u>, No. 07-841. See http://www.usdoj.gov/osg/briefs/2007/2pet/6invit/2007-0841.pet.ami.inv.pdf.  The brief recognizes that <u>Varity</u> "held that Section 502(a)(3) authorized the reinstatement of the plaintiff employees to a plan that they had been tricked into leaving by the plan fiduciary." Br. at 10 n.3.  The Solicitor also takes the position that relief is available against fiduciaries under the equitable doctrine of "surcharge."  Br. at 11-13.

4

misleading statements were never spoken. The later statements, including the SPD, have to be read against the backdrop of the earlier ones. Plaintiffs have shown that there is not only a duty to avoid misleading statements about retirement benefits, but also a duty to "correct" any misleading statements in previous communications. See Pls. 5/16/2008 Br. at 22-23; Hooven v. Exxon Mobil Corp., 465 F.3d 566, 578 (3d Cir. 2006) ("statute's SPD provisions implicitly *require* employers and plan administrators to correct misleading or incomplete SPDs"); accord Harte v. Bethlehem Steel, 214 F.3d 446, 452-54 (3d Cir 2000).

CIGNA also revives its argument that the individual account statements adequately disclose the import of the change to the cash balance formula because they disclose the amount of the cash balance credits earned in each year and the cumulative account balance. Defs. Br. at 6. But this Court has already rejected the notion that telling people about credits to account balances discloses a significant reduction in their retirement benefits. Slip Op. at 82. The individual account statements nowhere disclosed that participants' retirement benefits were being reduced by 40 to 50% in relation to the Part A formulas and nowhere counter the misleading representations that retirement benefits are "comparable" or "larger." [4]

---

[4] To the extent there were any projections of retirement income in the Total Compensation Reports, the evidence showed that they were inflated with unrealistic interest assumptions and accompanied by other misleading

5

## II.    Remedies for the Relative Value Disclosure Violations

CIGNA's discussion of relief for the relative value disclosure violations likewise provides no estimates of the number of people affected, and no examples related to the feasibility of offering a remedy without a repayment requirement. As a result, there is not much to agree with or rebut. CIGNA's relative value section starts by recognizing that the Court "asked the parties to estimate the number of class members potentially affected ..." Defs. Br. at 3. But CIGNA does not provide this information.

CIGNA was also supposed to respond on whether it is feasible to provide a remedy without a payback requirement. CIGNA "agree[s]" that it is feasible, Defs. Br. at 4, but does not describe how. Compare Pls. Br. at 3-4. Instead, CIGNA advances a new legal argument about how this "would constitute an award in excess of the benefits to which the class member was entitled under the terms of the plan, a windfall that is simply not permissible under ERISA." Defs. Br. at 4. On closer reading, it appears that CIGNA is merely rephrasing the proposal it previously made about requiring participants to pay back lump sum distributions to the extent that they exceed the back benefits due the participant. The argument that doing anything more than that "would constitute an award in excess of the

---

communications. Pls. Prop. Findings ¶¶ 188-91, 219-20, 367.

6

benefits to which the class member was entitled" is fatuous. The benefit which class members such as Lillian Jones were entitled was an annuity. Subjecting that annuity to an equitable setoff is advantageous to CIGNA and it prevents any windfalls.

CIGNA misreads the decision in <u>Layaou</u> on remand. <u>Layaou</u> did not impose a repayment requirement or suggest that "any remedy that does not require repayments" is faulty. Defs. Br. at 4. To the contrary, the district court said that "it would not be unreasonable... to subtract out the amount of the prior distribution." 330 F.Supp.2d 297, 304 (W.D. N.Y. 2004); see also <u>Frommert</u>, 472 F.Supp.2d 452, 458 (W.D.N.Y. 2007). There was no suggestion whatsoever that any part of a participant's prior distribution needed to be repaid. The district court actually did not even authorize the subtraction of "interest/expected investment gains" in addition to the "<u>amount</u> of the prior distribution" as CIGNA requests. Defs. Br. at 4. In fact, on the remand of <u>Frommert</u>, the district court expressly rejected Xerox's "economic, financial and actuarial" proposals to add investment gains or interest to the prior distributions in various ways, and thus come up only a little short of the phantom offset. See 472 F.Supp.2d at 458.

Based on the "new" relative value regulations, CIGNA goes on to propose to exclude from any remedy those whose annuities were less than "five percent"

more valuable than the cash balance account. Defs. Br. at 3. This proposal should be rejected for three reasons. <u>First</u>, CIGNA has misread the new regulations. The new regulations do not provide for the exclusion from the relative value disclosure rules of participants whose options are within 5% of each other. Instead, the regulations provide that options within 5% of each other can be grouped and the participants can be told that they are "approximately equal in value" with an invitation to obtain "a more precise calculation." 26 C.F.R. 1.417(a)(3)-1(c)(2)(iii) and (c)(3)(ii). <u>Second</u>, throughout this case, CIGNA vigorously resisted the application of the "new regulations." This Court agreed that the "approach" described therein "was not required before the new regulations went into effect in 2004." Slip Op. at 117. Particularly after the Court accepted its position, CIGNA cannot turn around and seek to apply some part of the new regulations (particularly a part that rests on a misreading of the new rules). <u>Third</u>, if the value of a participant's annuity is $100,000, 5% of that would be $5,000, which is not an insignificant amount for a participant or CIGNA. If CIGNA believes that it is not cost-effective to provide an increased annuity when the difference in value between the annuity and the cash balance account is less than $5,000, there are a number of ways to deal with that without providing that the value of the increased annuity reverts to the party who broke the law. For instance, the increased

8

annuities can be distributed to those participants in lump sums, see ERISA

§203(e), 29 U.S.C. §1053(e), or, if the amounts are really inconsequential on an

individual basis, they can be aggregated and applied under the *cy pres* doctrine.

## III.   CIGNA's Proffer to Support 26,000+ Discovery Requests and Individual Hearings

The remainder of CIGNA's brief focuses on justifying its request for opt-in

relief and up to 26,000 discovery requests, depositions and individual hearings.

However, CIGNA continues to make no proffer of evidence to support that

request. As the Court made clear, CIGNA was supposed to make a strong proffer

on this because it has offered nothing to date. Nevertheless, CIGNA's brief reads

more like a legal argument that "harmless error" can rebut "likely prejudice" in

theory. See Defs. Br. at 7-10. Plaintiffs agree that harmless error can rebut likely

prejudice. That is what Burke holds. But Burke does not recognize an ethereal

version of harmless error; instead harmless error must be supported by actual

evidence.

Under the parties' Stipulation, CIGNA had a chance to gather actual

evidence of harmless error from 26 members of its litigation control group plus up

to 16 other class members and offer it at trial. CIGNA failed to find any such

evidence. On April 30, 2008, this Court offered one last opportunity for CIGNA to

make a strong proffer to support its request for a nearly unprecedented number of discovery requests and individual hearings. The Court said that CIGNA had offered nothing yet, e.g., no evidence of memos about wear-aways, benefit reductions or the relative value of benefit options that lower-level employees would have noticed as they crossed their desks.

Most notably, in response to the Court's point that CIGNA begin by asking the executives who were moved to cash balance whether they want to opt-out based on actual knowledge/harmless error, CIGNA conclusorily represents that "The executives responsible are no longer employed by CIGNA."  Defs. Br. at 11. It is true that many of the highest-level executives were "grandfathered" under Part A and were never in this group. But unless John Arko and Lorraine Morris (see dkt. #167, last page) terminated their employment last week, there are at least some mid-level executives in Part B who have not terminated their employment. Even for the executives who CIGNA no longer employs (e.g., Gerald Meyn and Denise Hill), Plaintiffs' understanding was that CIGNA believed they should be excluded from any relief and was representing at oral argument that it intended to have them to opt out of any relief. That representation has now vanished as completely as the executives. Whatever the excuse, CIGNA committed to offer evidence on this issue and again has not delivered.

10

In lieu of a proffer of evidence, CIGNA attempts to reinterpret Burke as "merely creat[ing] a burden-shifting approach for evidentiary purposes." Defs. Br. at 7. According to CIGNA, establishing "likely prejudice" with no rebuttal showing "harmless error" does not establish the plaintiffs' right to "any remedy." Instead, the participant still must satisfy "the substantive requirement that there must be actual prejudice ... before any remedy can obtain." Id. This is but another way for CIGNA to try to return to a detrimental reliance requirement.

CIGNA's error is epitomized by its reliance on Moriarity v. United Techs. Corp. Represented Employees Ret. Plan, 947 F.Supp. 43 (D. Conn. 1996). CIGNA cites Moriarity as support that "courts have made clear that a participant cannot be harmed by a deficient disclosure if the participant did not read the disclosure." Defs. Br. at 9. But Moriarity is one of the cases that Burke specifically singled out for disapproval because it applies a detrimental reliance standard. 336 F.3d at 112. Burke went on to cite with approval Manginaro v. Welfare Fund of Local 771, I.A.T.S.E., 21 F. Supp. 2d 284, 297 (S.D.N.Y. 1998), for the proposition that "had the Fund adequately disclosed the two-year limitation ...via the SPD, it is likely that [the plaintiff] would have learned of this limitation from his employer, his co-workers, or the union, even if he never read the SPD himself." 336 F.3d at 113 (emph.added).

11

CIGNA also mischaracterizes Cement and Concrete Workers Dist. Council Annuity Fund v. Lollo, 148 F.3d 194, 196 (2d Cir. 1998), as a "misrepresentation claim" comparable to this one when it was actually a "fraud claim" against an individual who had no disclosure or other statutory responsibilities. CIGNA would read Lollo to anachronistically undercut the Second Circuit's subsequent 2003 and 2006 decisions in Burke and Frommert and create a requirement for relief which shifts the burden of showing "harmless error" from CIGNA and essentially requires every single class member to prove that the disclosures were actually harmful to them. CIGNA's proposal that each individual must prove "that he personally knew of the misrepresentations" is yet another way of arguing for the reading and detrimental reliance requirements that Burke specifically rejected.[5]

CIGNA tries a different tack by emphasizing that some people may have acquired actual knowledge at some point before the end of May 2008. CIGNA says the Court "acknowledged during the April 30, 2008 argument that the length of time that any remedy should be in effect might also turn on when a class

---

[5] CIGNA makes a confusing point about not "conflat[ing]" likely harm with materiality. Defs. Br. at 9. Contrary to CIGNA's suggestion, the proof of likely prejudice described in Burke and Frommert is quite comparable to proof of materiality. See Jordan v. Federal Express, 116 F.3d 1005, 1015-17 (3d Cir. 1997) ("a misrepresentation rises to a material level if there is a substantial likelihood that it will mislead a reasonable employee in making an adequately informed retirement decision").

member acquired actual knowledge of the relevant information, or otherwise when that class member ceased to suffer any harm." Defs. Br. at 10. Plaintiffs' counsel do not recall the Court acknowledging this. But if the Court did, CIGNA has misinterpreted "actual knowledge of the relevant information" and the point at which class members "ceased to suffer any harm." Plaintiffs do not have actual knowledge of the relevant information when they first suspect violations or when named Plaintiffs first allege them. For instance, the Court's February 15th decision discusses how Janice Amara was likely prejudiced by absence of "timely" disclosures even though she subsequently talked to actuary Mark Lynch at a going-away party. Slip Op. at 94 and 104-5. In the February 15th decision, the Court does, in fact, suggest that Ms. Amara ceased to suffer any harm when she was placed back in Part A as a result of the Depenbrock decision. Slip Op. at 106. The Court does not suggest in any way, however, that participants like Ms. Amara ceased to suffer harm at the point when the Complaint was filed or when they thought or told someone that the account balance "looked low."

CIGNA observes finally that this would be the first case to provide relief under Burke and Frommert "on a classwide basis." Defs. Br. at 9. This is true, but Frommert was a multi-party action involving over 100 plaintiffs. That is a sufficient number to constitute a class in any jurisdiction. See, e.g., Consolidated

13

Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) (class of 40

members satisfies numerosity requirement). And there was no requirement in

Frommert to prove actual harm on an individual basis. Nor was any such

requirement imposed by the district court on remand.

## IV.    Prejudgment Interest on Past Due Benefits

CIGNA's brief omitted any discussion of prejudgment interest. Plaintiffs

will not repeat the discussion of Dunnigan and Dobson here. See Pls. 5/16/2008

Br. at 31-32. However, Plaintiffs want to make clear that their request for

prejudgment interest applies only to benefits that are past due. It does not apply to

future monthly benefits. Because Plaintiffs are primarily seeking increased

annuities, back benefits comprise only a small portion of the relief. Only 23% of

the members of the class have even reached early retirement age. See May 30,

2008 Declaration of Allison Caalim (attached). However, for the persons who are

due back benefits, prejudgment interest is needed to "fully compensate the

wronged party." Jones v. UNUM Life Ins. Co., 223 F.3d 130, 139 (2d Cir. 2000).

In the Depenbrock litigation and in the context of discussing remedies for the

relative value violations, CIGNA has already recognized the need to account for

"interest/expected investment gains." See Defs. Br. at 4. No less should be

afforded to persons who are due back benefits.

## V.    Attorneys' Fees

Plaintiffs agree with CIGNA that the Court can take up the attorneys' fees issue after an appealable judgment is entered. Plaintiffs reach that conclusion for slightly different reasons than CIGNA. The cases on which CIGNA relies may still be correct, but Plaintiffs believe the timing of fee motions is controlled by F.R.C.P. 54(d)(2), 58(e) and 23(h). Under F.R.C.P. 54(d)(2), as amended effective at the end of 1993, "[a] claim for attorney's fees and related nontaxable expenses" "must be filed no later than 14 days after the entry of judgment." F.R.C.P. 58(e), as amended at the same time, provides that "if a timely motion for attorney's fees is made under Rule 54(d)(2), the court may act before a notice of appeal has been filed and become effective [in] order that the motion have the same effect under Federal Rule of Appellate Procedure 4(a)(4) as a timely motion under Rule 59."[6]

"[I]n a certified class action," Rule 23(h), as amended effective December 1, 2003, authorizes the Court to set a different time for filing a fee motion than under Rule 54(d)(2). See also the 2003 Advisory Committee Notes ("The court should

---

[6] As the 1993 Advisory Committee Notes to Rule 58 explain, "in many cases it may be more efficient to decide fee questions before an appeal is taken so that appeals relating to the fee award can be heard at the same time as appeals relating to the merits of the case." However, "[p]articularly if the claim for fees involves substantial issues or is likely to be affected by the appellate decision, the district court may prefer to defer consideration of the claim for fees until after the appeal is resolved."

direct when the fee motion must be filed"). While Rule 23(h) gives the Court discretion, it does not suggest that fee motions should simply be deferred until the conclusion of any appeals. This Court has indicated that it does not want to put the fee motion off until that time. The Court has simply indicated that it does not want to address this issue in this Order, which is a position which Plaintiffs accept.

**Conclusion**

For the foregoing reasons, Plaintiffs reiterate their request that the Court issue an Order providing the requested relief to the members of the class for the violations found in this Court's February 15, 2008 Memorandum of Decision.

Dated: May 30, 2008

Respectfully submitted,

 /s/ Stephen R.Bruce
Stephen R. Bruce Ct23534
Allison C. Caalim
805 15th St., NW, Suite 210
Washington, DC 20005
(202) 371-8013

 /s/ Thomas G. Moukawsher
Thomas G. Moukawsher Ct08940
Moukawsher & Walsh, LLC
21 Oak St.
Hartford, CT 06106
(860) 278-7000

Attorneys for Named Plaintiffs and
the Plaintiff Class

## <u>CERTIFICATE OF SERVICE</u>

I certify that copies of the foregoing (1) Plaintiffs' Reply to Defendants' Responses to the Court's April 30, 2008 Inquiries, (2) the Declaration of Allison C. Caalim, and (3) this Certificate of Service were filed electronically through the CM/ECF system on May 30, 2008. Notice of this filing will be sent by e-mail to all counsel listed below by operation of that system:

> Joseph J. Costello
> Jeremy P. Blumenfeld
> Jamie M. Kohen
> Morgan, Lewis & Bockius
> 1701 Market St.
> Philadelphia, PA 19103-2921
>
> Christopher A. Parlo
> Morgan Lewis & Bockius
> 101 Park Avenue
> New York, NY 10178-0600
>
> James A. Wade
> Brett J. Boskiewicz
> Robinson & Cole, LLP
> 280 Trumbull Street
> Hartford, CT 06103-3597

>       s/ Stephen R. Bruce
>       Stephen R. Bruce