UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| Janice C. Amara, Gisela R. Broderick, Annette S. Glanz, individually and on behalf of all others similarly situated, : : : : : | |
| Plaintiffs, : : | |
| vs. : : | Civil No. 3:01-CV-2361 (MRK) |
| CIGNA Corp. and CIGNA Pension Plan, : : : : | July 11, 2008 |
| Defendants. : : | |

**PLAINTIFFS' MEMORANDUM ON APPROPRIATE AMOUNT OF SUPERSEDEAS BOND**

Stephen R. Bruce Ct 23534
Allison C. Pienta
805 15th St., NW, Suite 210
Washington, DC 20005
(202) 371-8013

Thomas Moukawsher Ct 08940
Moukawsher & Walsh, LLC
21 Oak Street
Hartford, CT 06106
(860) 287-7000

Attorneys for the Plaintiff Class

**Introduction**

In accordance with this Court's June 13, 2008 Memorandum of Decision and July 3, 2008 Minute Order, Plaintiffs respectfully request that the Court order CIGNA to post a supersedeas bond in the amount of $106 million, with interest through the end of the appeal process. This bond will secure the retirement benefits that the June 13, 2008 Memorandum of Decision orders CIGNA to provide the members of the Plaintiff class as remedies for the violations of ERISA's disclosure rules. As described below, Plaintiffs' request is based on conservative estimates by its experts of the value of the additional retirement benefits provided under an "A+B" formula, including the value of the benefits needed to remedy the violations of the "relative value" disclosure requirements.

**I.    The Purpose of the Supersedeas Bond.**

"The purpose of a supersedeas bond in connection with a stay pending appeal is to protect the party that has prevailed below against loss resulting from the stay of execution of the judgment." *Westpoint Stevens v. Aretex*, 2007 WL 1346616 *7 (S.D.N.Y. 2007). "The philosophy underlying F.R.C.P. 62(d) is that a plaintiff who has won in the trial court should not be put to the expense of defending his judgment on appeal unless the defendant takes reasonable steps to assure that the judgment will be paid if it is affirmed." *Rand-Whitney Containerboard P'ship v. Montville*, 245 F.R.D. 65, 69 (D.Conn. 2007).

"[T]he court's role is not to rubber-stamp whatever bond the judgment debtor presents." *Rand-Whitney Containerboard Limited P'ship*, supra, 245 F.R.D. at 68. "Prior

to the approval of a supersedeas bond, there must be a showing that the bond is sufficient. The trial judge is the sole party to make the decision in judging the solvency of the sureties and the sufficiency of securities for the purpose of a supersedeas bond." *Id.* at 68-69. The court should "err, if at all, on the side of greater provision for the protection of the interests of the parties who prevailed upon the first appeal to this Court." *Aretex*, supra, at *10 (bond set at $200 million without prejudice for the parties to apply for an increase or decrease of the amount).

## II.     Plaintiffs' Estimate of the Appropriate Amount of the Bond.

Since the June 13, 2008 Order, Plaintiffs' experts have developed estimates of the value of the retirement benefits that are required to be provided. The estimates are designed to include both the additional benefits provided by the "A+B" remedy and the additional benefits provided to correct the failure to disclose the "relative value" of benefit options. The basis for those estimates is described below and in the attached declaration from Sharon L. Taulman. Claude Poulin developed the present value factors and has independently reviewed the methodology and made adjustments. Plaintiffs' methodology has also been tested with the nine examples of named Plaintiffs and testifying witnesses that Mr. Poulin used at trial and with other cross-checks for reasonableness and the sensitivity of the results to key assumptions.

Plaintiffs respectfully submit that their estimate is reasonable and appropriate. While some computational shortcuts were developed to produce an estimate within the

short time frame, the methodology is not designed to overstate the value of the retirement benefits and in fact appears to understate them considerably because of the missing or incomplete data about frozen benefit amounts described in Ms. Taulman's Declaration.

    **A.**    **Estimation Methodology.**

The methodology used in developing these estimates was as follows:

**Active Employees and Terminated Participants with Vested Benefits Not Yet Distributed:**

1. Compute the present value ("PV") as of 12/31/2007 of the frozen retirement benefit under the Tier 1 or Tier 2 formula at 12/31/1997. This is the "A" portion of the "A+B" amount.

2. Determine the cash balance pay and interest credits exclusive of the Opening Account Balance ("OAB") as of 12/31/07. This is the "B" portion of the "A+B" amount. Interest of 5% is added from the date of any employment termination to 12/31/07.

3. Determine the "A+B" amount by adding #1 + #2 above.

4. Determine the participant's cash balance at 12/31/07, as CIGNA has computed it, based on the OAB plus pay and interest credits to 12/31/07.

5. Determine the amount the participant would receive under the current plan (the greater of the cash balance account at 12/31/07 (#4) or the PV of the frozen benefit (#1)).

6. Subtract #5 (the benefit CIGNA says is due) from #3 (the "A+B" benefit).

7. Add 5% interest from 12/31/07 to 7/31/08.

8. Total recovery = #6 + #7.

**Former Employees Who Have Received Lump Sum Distributions:**

If a lump sum distribution has been made, use the same procedure described

above, except the amount actually received in the distribution is used in #5 with interest added to 12/31/2007.

**Annuitants:**

If an annuity has been provided in the amount of the frozen benefit (the "A" portion of the remedial order), determine the "B" component as described in #2 above and add interest as provided in #7. If an annuity has been provided that is greater than the amount of the frozen benefit, the present value of the annuity is used in #5.

    **B.**    **Key Assumptions and Factors Not Taken Into Account.**

The key assumptions and factors not taken into account in these calculations are detailed in the accompanying Declaration of Ms. Taulman. The factors not taken into account, most notably the data issues concerning close to 4,100 participants with no data about their frozen benefits, indicate that the overall estimate continues to be understated (potentially by another $40 million, bringing the total to $146 million).

Interest after 8/1/2008 has not been included in Plaintiffs' estimate of the amount. Plaintiffs respectfully request, however, that the Court order that the bond cover interest during the pendency of CIGNA's appeal because appeals are currently running one to two years in the Second Circuit.

    **C.**    **Estimated Value of Remedies for Individuals and Participant Groups.**

The results of this methodology for the nine examples used at trial (Ms. Broderick, Annette Glanz, Patricia Flannery, et al) are attached to Ms. Taulman's Declaration as

Exhibit 1. Those results range from a recovery of less than $2,000 for Barbara Hogan, up to $51,616 for Mitchell Haber (who was deposed but did not testify at trial). The estimated recovery for Ms. Broderick would be $40,808 and the estimated recovery for Ms. Glanz would be $10,257.

To further show how the total estimated value of the remedies was developed, and to use as a cross-check on reasonableness of the estimates, Plaintiffs' experts prepared the following breakdowns of the estimated value of the remedies by participant groups (attached as Exhibit 2 to Ms. Taulman's Declaration):

| | |
|---|---|
| Tier 1 Rehires | $ 8.8 million |
| Tier 2 Rehires | $ 11.0 |
| Special Tier 2 Group with 55 points @ conversion | $ 33.6 |
| Higher Salary[1] | $ 17.5 |
| Service Credit >=8 | $ 25.7 |
| Service Credit > 4 and <=7 | $ 5.2 |
| Service Credit between > 1 and <=4 | $ 3.5 |
| Service Credit <1 | $ 0.1 |
| None of the above | $ 0.2 |

### III. Defendants' Estimate of an Appropriate Bond Amount.

Plaintiffs' counsel believe that CIGNA is arriving at a substantially lower number by applying a series of exclusions and then essentially estimating how much more Opening Account Balances would be for the remainder of the population if a 1% lower

---

[1] Higher Salary was defined as $110,000 or greater. If someone is in the Higher Salary group, that trumps inclusion in any other group except for Rehires and the Special Tier 2 Group.

interest rate had been used. This Court already rejected that approach in the June 13, 2008 Memorandum of Decision. Slip Op. (dkt. #285) at 31.

**Conclusion**

For the foregoing reasons, Plaintiffs respectfully request that this Court require CIGNA to post a bond within 14 days of the Court's Order in the amount of $106 million, with interest on that amount through the conclusion of the appeal.

Dated: July 11, 2008

                                              Respectfully submitted,

                                              s/ Stephen R. Bruce
Stephen R. Bruce Ct23534
Allison C. Pienta phv01316
805 15th St., NW, Suite 210
Washington, DC 20005
(202) 371-8013

                                              s/ Thomas G. Moukawsher
Thomas G. Moukawsher Ct08940
Moukawsher & Walsh, LLC
21 Oak St.
Hartford, CT 06106
(860) 278-7000

Attorneys for Plaintiff Class

**CERTIFICATE OF SERVICE**

I certify that copies of the foregoing Plaintiffs' Memorandum on Appropriate Amount of Supersedeas Bond, the Declaration of Sharon Taulman with Exhibits 1 and 2, and this Certificate of Service were filed electronically through the CM/ECF system on July 11, 2008. Notice of this filing will be sent by e-mail to all counsel listed below by operation of that system:

> Joseph J. Costello
> Jeremy P. Blumenfeld
> Jamie M. Kohen
> Morgan, Lewis & Bockius
> 1701 Market St.
> Philadelphia, PA 19103-2921
>
> Christopher A. Parlo
> Morgan Lewis & Bockius
> 101 Park Avenue
> New York, NY 10178-0600
>
> James A. Wade
> Brett J. Boskiewicz
> Robinson & Cole, LLP
> 280 Trumbull Street
> Hartford, CT 06103-3597

                                                     s/ Stephen R. Bruce
                                                     Stephen R. Bruce