**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JANICE C. AMARA, GISELA R. BRODERICK, ANNETTE S. GLANZ individually and on behalf of all others similarly situated, | : : : : : | |
| Plaintiff, | : : | |
| vs. | : : | Civil No. 3:01-CV-2361 (MRK) |
| CIGNA Corp. and CIGNA Pension Plan, | : : : | July 11, 2008 |
| Defendants. | : : | |

**DECLARATION OF SHARON L. TAULMAN**

1. My name is Sharon L. Taulman. I have over 25 years of experience in computer systems, software and databases and over 12 years of experience in both retirement plan administration and class action administration. I graduated with a B.B.A in Accounting in 1978 from Texas A&M University and an M.B.A in Management in 1981 from the University of North Texas. I am over 21 years of age and make this Declaration on personal knowledge.

2. I have set up a database for Plaintiffs' counsel to compile the various databases that CIGNA has produced in this litigation to date and to develop calculation routines to recalculate retirement benefits. Along with Mr. Bruce, I met with representatives of CIGNA and Prudential in Hartford in January, 2006 and in April, 2007 to go over the CIGNA/Prudential databases.

3. Since the June 13, 2008 Order, I was asked to develop a model to compute the estimated additional benefits based on the approach described in the Order. The estimates are

1

designed to include both the additional benefits provided by the "A+B" remedy and the additional benefits provided to correct the failure to disclose the "relative value" of benefit options.

  4.  The methodology that I utilized is described as follows, as well as the key assumptions and factors that have not been taken into account. Claude Poulin developed the present value factors and has independently reviewed the methodology and calculations and made recommendations which have been adopted.

**Active Employees and Terminated Participants with Vested Benefits Not Yet Distributed:**

1. Compute the present value ("PV") as of 12/31/2007 of the frozen retirement benefit under the Tier 1 or Tier 2 formula at 12/31/1997.

2. Determine the cash balance pay and interest credits exclusive of the Opening Account Balance ("OAB"). Interest of 5% is added from the date of any termination to 12/31/07.

3. Determine the "A+B" amount by adding #1 + #2.

4. Determine the participant's cash balance at 12/31/07, as CIGNA has computed it, based on the OAB plus pay and interest credits plus interest to 12/31/07.

5. Determine the amount the participant would receive under the current plan (the greater of the cash balance account at 12/31/07 (#4) or the PV of the frozen benefit (#1)).

6. Subtract #5 (the benefit CIGNA says is due) from #3 (the "A+B" benefit).

7. Add 5% interest from 12/31/07 to 7/31/08.

8. Total recovery = #6 + #7.

**Former Employees Who Have Received Lump Sum Distributions:**

If a lump sum has been distributed, use the same procedure as above, except that the distribution actually received is used in #5, even if the value of the annuity that the participant could have elected was greater. Interest is added to the amount of the distribution to bring it forward to 12/31/2007.

**Annuitants:**

If an annuity has been provided in the amount of the frozen benefit (the "A" portion of the remedial order), determine the "B" component as described in #2 above and add interest as provided in #7. If an annuity has been provided that is greater than the amount of the frozen benefit, the present value of the annuity is used in #5.

**Key Assumptions:**

    A.    If an annuitant such as Gigi Broderick is receiving his or her frozen benefits from the prior Tier 1 or Tier 2 formulas (the "A" portion of their benefit) with no increment from the cash balance credits, the "B" component of the cash balance credits is due in full, i.e., the cash balance pay credits accumulated with interest but without any opening balance.  There are approximately 549 participants receiving annuities, approximately 216 of whom were eligible for early retirement under Tier 1 or Tier 2.

    B.    A 4.69% annuity conversion interest rate (the effective rate for the 2007 plan year) and the "GAR94" mortality table were used by Mr. Poulin to compute the Present Value (PV) factors. A 50% pre-retirement mortality discount was applied in developing the PV factors for ages before 65. If no pre-retirement mortality discount is used, the PV factors would be higher at all ages before 65. A 5% interest rate was used to bring amounts forward to the present

3

date where the interest rate was not otherwise specified.

C. Because CIGNA has not updated the pay credit, interest credit, employment termination, and benefit commencement data previously provided to the class beyond 2006 (and in some cases not beyond 2005), it was assumed that active employees continued to be employed and received pay and interest credits based on assumed salary increases of 4% per year, pay credits consistent with the terms of the plan, and interest credits at an annual rate of 5%.

D. Early Retirement ("ER") value factors of 1.25 for Tier 2 and 1.75 for Tier 1 were applied to the present values of active employees, terminated vesteds, and lump sum recipients who are eligible for ER. These factors are used as computational shortcuts and have been tested for accuracy by Mr. Poulin. Excluding annuitants, approximately 1,328 Tier 2 participants and 307 Tier 1 participants are eligible for early retirement.

E. The value of early retirement benefits for active employees who may still grow into ER eligibility has not been taken into account. I estimate that approximately 440 active employees will grow into eligibility for ER during the period 2008 – 2010.

F. A "Free30%" value factor of 1.10 was applied to the present values of active employees, terminated vesteds and lump sum recipients eligible for the Free 30% benefit. The Free30% benefit is confined to former Tier 1 participants. This factor is used as a computational shortcut and has been tested for accuracy by Mr. Poulin. Approximately 265 former Tier 1 participants are eligible for the Free30% benefit.

**Incomplete Data and Factors Not Taken Into Account:**

G. There are serious outstanding data issues about over 4,100 participants who have zero frozen benefits in CIGNA's databases when it appears that they should non-zero amounts.

For the purpose of this estimate, the zeros have been accepted because there was no practical alternative. If the frozen benefit amounts are not zero, the estimated recoveries would be substantially higher, especially for participants with significant years of prior service. There are 328 individuals with Tier 1 benefits who were rehired before 1/1/2001 for whom the frozen benefit amount in CIGNA's databases is zero. There are also 2,229 Tier 2 rehires and 1,559 other individuals with service credit in excess of 8 years. If the data for these individuals is inaccurate or incomplete, the estimated recoveries would be substantially higher, e.g., by as much as $41 million if the recoveries for these individuals average $10,000 each.

      H.      The data provided by CIGNA regarding deceased participants is incomplete. No data has been provided about survivors' benefits or deceased annuitants who left no surviving spouses. Without that data, the recoveries due surviving spouses and estates could not be computed and included in this estimate.

      I.      Approximately 140 members of the *Depenbrock* group of pre-12/21/1998 rehires had not been placed back in the Tier 1 plan by CIGNA at the time of trial. Plaintiffs do not have a current list of who CIGNA has actually put back in the Tier 1 plan. Those individuals are currently not included in these estimates, but they should be if they are not in the Tier 1 plan.

      J.      Some of the Tier 1 rehires have frozen benefits computed as of later dates than 12/31/1997, e.g., if someone was initially grandfathered under the Tier 1 formula, left CIGNA in 1999 and was rehired in 2000. The frozen amount as of 12/31/1997 has been used in these calculations even though the 1999 frozen benefit (and the recovery under "A+B") would be higher.

K. There are outstanding data issues related to the distribution amounts for about 500 individuals whose distributions appear too low based on their service or who have conflicting distribution information as to the dates, amounts and types of distributions. For purposes of these calculations, the most conservative distribution data was utilized.

L. Interest during the pendency of CIGNA's appeal has not been included in these estimates.

**Estimated Value of Remedies for Individuals and Participant Groups**

5. This methodology has been tested with the nine examples of named Plaintiffs and testifying witnesses that Mr. Poulin used at trial and with other cross-checks for reasonableness and the sensitivity of the results to key assumptions. The results of the computations for the nine examples of named Plaintiffs and testifying witnesses are included in Exhibit 1.

6. With interest through 7/31/2008, the total estimated recovery value is approximately $106 million. The estimated recovery values totals for groups of participants within the class are shown in Exhibit 2 to this Declaration.

**Conclusion**

7. As indicated, these calculations could be done with more precision and complete data. But I believe this provides the Court with a sound estimate of the value of the remedies ordered by the Memorandum of Decision on June 13, 2008.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on July 11, 2008

                                                s/ Sharon L. Taulman
                                                Sharon L. Taulman

K.  There are outstanding data issues related to the distribution amounts for about 500 individuals whose distributions appear too low based on their service or who have conflicting distribution information as to the dates, amounts and types of distributions. For purposes of these calculations, the most conservative distribution data was utilized.

L.  Interest during the pendency of CIGNA's appeal has not been included in these estimates.

**Estimated Value of Remedies for Individuals and Participant Groups**

5.  This methodology has been tested with the nine examples of named Plaintiffs and testifying witnesses that Mr. Poulin used at trial and with other cross-checks for reasonableness and the sensitivity of the results to key assumptions. The results of the computations for the nine examples of named Plaintiffs and testifying witnesses are included in Exhibit 1.

6.  With interest through 7/31/2008, the total estimated recovery value is approximately $106 million. The estimated recovery values totals for groups of participants within the class are shown in Exhibit 2 to this Declaration.

**Conclusion**

7.  As indicated, these calculations could be done with more precision and complete data. But I believe this provides the Court with a sound estimate of the value of the remedies ordered by the Memorandum of Decision on June 13, 2008.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on July 11, 2008

_____
Sharon L. Taulman

6

1