UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Janice C. Amara, Gisela R. Broderick, Annette S. Glanz, individually and on behalf of all others similarly situated, | : : : : | |
| Plaintiffs, | : : | |
| vs. | : : | Civil No. 3:01-CV-2361 (MRK) |
| CIGNA Corp. and CIGNA Pension Plan, | : : : | July 18, 2008 |
| Defendants. | : : | |

**PLAINTIFFS' REPLY MEMORANDUM ON
APPROPRIATE AMOUNT OF BOND**

Stephen R. Bruce Ct 23534
Allison C. Pienta
805 15th St., NW, Suite 210
Washington, DC 20005
(202) 371-8013

Thomas Moukawsher Ct 08940
Moukawsher & Walsh, LLC
21 Oak Street
Hartford, CT 06106
(860) 287-7000

Attorneys for the Plaintiff Class

**Plaintiffs' Response to CIGNA's Submission**

Plaintiffs offer the following points in response to CIGNA's submission:

1. It is well-established that "[t]he party seeking to stay a court's order bears a difficult burden." *United States v. Private Sanitation Indus. Ass'n*, 44 F.3d 1082, 1084 (2d Cir. 1994). Rule 62(a) provides that a final judgment in an action for an injunction is not stayed "even if an appeal is taken" "unless the court orders otherwise." Rule 62(c) then provides that "the court may suspend...an injunction on terms for bond or other terms that secure the opposing party's rights."[1] In *Perez v. United States*, 747 F.2d 813, 815 (1st Cir. 1984), then-Judge Breyer wrote: "[T]he district court possesses adequate power under Rule 62 to require a bond that will...protect the winner from any subsequent harm suffered through appellate delay, whether or not the judgment is monetary in nature."[2]

Here, in ordering a stay of all relief *sua sponte*, this Court carefully and clearly applied the Rule 62(c) standards for staying an injunction, which include ensuring that the class will not suffer substantial injury if a stay is issued. Slip Op. at 49. This Court

---

[1] Plaintiffs' July 11, 2008 submission used the term "supersedeas bond." That term consistently appears to be limited to a bond that suspends a judgment creditor's power to levy execution pursuant to Rule 62(d). See, e.g., *Black's Law Dictionary* (2d Pocket Ed.). Plaintiffs' counsel did not intend by use of that term to limit the bond to the monetary relief the Court ordered as opposed to the injunctive and declaratory relief.

[2] Rule 65(c) establishes an analogous standard under which the movant for a preliminary injunction must "give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined."

2

specifically recognized "the Plaintiffs' interest in guaranteeing that any award affirmed is indeed paid" and ordered that CIGNA "post a bond in an appropriate amount." *Id*. at 50.

2.  CIGNA now says the Court and the Plaintiffs should not worry about a bond because CIGNA's net income in 2007 was $1.115 billion. Br. at 3. The members of the class, many of whom own CIGNA stock, have a strong interest in CIGNA doing well financially, but a company's net income in one year is unfortunately little assurance for the future. In the year before it collapsed, Enron had $979 million in net income. Fannie Mae's net income in 2006 was $3.5 billion. CIGNA cites an unpublished two-page decision in the Southern District of Illinois in *Berger v. Xerox* as support that a large, currently-profitable company should not have to post a bond. Br. at 3. But Judge Herndon does not say that and the decision expressly states that "Plaintiffs have not filed a response to Xerox's motion." Moreover, unlike here, Judge Herndon had not already ordered a bond to be posted pursuant to Rule 62(c) based on consideration of the factors required to satisfy the "difficult burden" of staying permanent injunctive relief.

3.  CIGNA next argues that the bond should be only for the amount of the additional benefits that it would have to pay immediately, and not for any benefits that the Court ordered it to provide in the future. Br. at 2-3. Although Plaintiffs have serious doubts that CIGNA's $25 million would cover the part of the Order that constitutes a monetary judgment, see Taulman Decl. at ¶11 (estimating the amount due those who have commenced payments to be over $47 million), $25 million is certainly insufficient to "guarantee[] that any award affirmed is indeed paid." The flaw in CIGNA's argument is

revealed when one asks: If something happens while the appeal is pending so that CIGNA cannot pay the benefits that are immediately due, how will the future benefits ordered under the Memorandum of Decision be guaranteed? Obviously, if CIGNA runs into financial difficulties while the appeal is pending, the value of the injunctive and declaratory relief may be even less secure than the benefits which are due immediately. If CIGNA's fortunes turn, moreover, the status of the future benefits would not be the same as existing benefits because the injunction requiring "A+B" will have been stayed and not implemented.

      4.     Finally, CIGNA suggests that its total additional liability for the "A+B" remedy is $68 million, as opposed to the $106 million that Plaintiffs' experts estimate. Br. at 2. When this Court was considering relief, CIGNA would not offer any statistics to assist the Court about the value of an "A+B" remedy compared with continuing or providing substantially equivalent benefits to the prior Plan. Now CIGNA provides an estimate, but it continues to offer little backup or detail that can be verified or tested for reasonableness. CIGNA offers nothing comparable to the individual calculations Plaintiffs' experts prepared for Ms. Broderick and the other witnesses to show the reasonability of their methodology and assumptions. And CIGNA does not address other major methodological and data issues. For example, CIGNA does not mention whether it included the 3,626 individuals in the Special Tier 2 group with "55 or more points" whom CIGNA's previous briefs on relief categorically asserted had "avoid[ed] wearaway." See 4/16/08 Br. (dkt. #276) at 27 and 5/16/08 Br. (dkt. #280) at 5, and compare attached Decl.

4

of Sharon Taulman at ¶4. CIGNA's presentation is consistent with its posture when the parties conferred about the appropriate amount of a bond: Following that conference, CIGNA's counsel sent a 7/2/2008 email refusing to agree to an exchange of information which detailed the methodology, assumptions, and any exclusions in the estimates: The email stated: "We won't agree to any restrictions or requirements on what that explanation will contain or look like."

5.      As previously described in the July 11th declaration of Sharon Taulman, Plaintiffs' experts made great efforts to detail the assumptions and factors that have not been taken into account in making their estimates, for example, Plaintiffs' experts specified the exact 4.69% and 5% interest rates and "GAR94" mortality assumptions that were used (with a specification of how "pre-retirement mortality" was handled). Plaintiffs' experts also offered both individual calculations and group-by-group average calculations to show the reasonability of their methodology. Rather than exchange that kind of information, CIGNA's goal is transparently to obtain a bond below a pre-ordained level of materiality. When the parties conferred on July 2nd, CIGNA's goal was a bond of $50 million. Now CIGNA has lowered its own goal to $25 million. Br. at 3.

**Conclusion**

For the foregoing reasons, Plaintiffs again respectfully request that the Court order CIGNA to post a bond in the amount of $106 million within 14 days of the Order, with interest on that amount through the conclusion of the appeal.

Dated: July 18, 2008

Respectfully submitted,

 s/ Stephen R. Bruce 
Stephen R. Bruce Ct23534
Allison C. Pienta phv01316
805 15th St., NW, Suite 210
Washington, DC 20005
(202) 371-8013

 s/ Thomas G. Moukawsher 
Thomas G. Moukawsher Ct08940
Moukawsher & Walsh, LLC
21 Oak St.
Hartford, CT 06106
(860) 278-7000

Attorneys for Plaintiff Class

## CERTIFICATE OF SERVICE

I certify that copies of the foregoing Plaintiffs' Reply Memorandum on Appropriate Amount of Bond, the Declaration of Sharon Taulman, and this Certificate of Service were filed electronically through the CM/ECF system on July 18, 2008. Notice of this filing will be sent by e-mail to all counsel listed below by operation of that system:

>Joseph J. Costello
>Jeremy P. Blumenfeld
>Jamie M. Kohen
>Morgan, Lewis & Bockius
>1701 Market St.
>Philadelphia, PA 19103-2921
>
>Christopher A. Parlo
>Morgan Lewis & Bockius
>101 Park Avenue
>New York, NY 10178-0600
>
>James A. Wade
>Brett J. Boskiewicz
>Robinson & Cole, LLP
>280 Trumbull Street
>Hartford, CT 06103-3597

 s/ Stephen R. Bruce
Stephen R. Bruce