UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANICE C. AMARA, GISELA R. BRODERICK, ANNETTE S. GLANZ individually and on behalf of all others similarly situated, | : : : : : |
| Plaintiff, | : : |
| vs. | : Civil No. 3:01-CV-2361 (MRK) : |
| CIGNA Corp. and CIGNA Pension Plan, | : July 18, 2008 : : |
| Defendants. | : : |

## DECLARATION OF SHARON L. TAULMAN

1. My name is Sharon L. Taulman. I am over 21 years of age and make this Declaration on personal knowledge. My experience and my work in setting up a database in this case to recalculate retirement benefits were described in my previous Declaration filed on July 11, 2008.

2. I have analyzed the Declaration of Matthew J. Henderson that was submitted to the Court on July 11, 2008 and have identified a number of issues related to that submission.

3. No individual calculations and no group calculations are provided with Mr. Henderson's Declaration similar to those I supplied with my Declaration in order to examine and test the reasonableness of the results based on known information, e.g., the additional amount that would be due to Ms. Broderick and the other named Plaintiffs and individuals who testified at trial.

4. Mr. Henderson does not mention whether Prudential included or excluded the

1

3,626 individuals in the Special Tier 2 group with "55 or more points" whom CIGNA's earlier briefs said were able to "avoid wearaway" because the interest rate used to compute their opening cash balances was 1% lower. I estimated liabilities of over $33 million for this group of individuals, resulting predominantly from wear-aways of subsidized early retirement benefits and mortality discounts.

5. Mr. Henderson does not indicate whether Prudential has now located non-zero data for the frozen benefits of over 4,100 participants who based on their length of service should have frozen benefits greater than zero. This data was not included in the databases previously supplied the Plaintiffs. I estimate that the potential liabilities for this group could exceed $40 million, although I very conservatively did not include that amount in the $106 million that I estimated.

6. By referring to the "Applicable Mortality Table," Mr. Henderson's Declaration indicates that pre-retirement mortality discounts were applied to compute the value of class member's Part A benefits "as of the measurement date." (Henderson Declaration, ¶16). For participants who have received lump sum distributions, the measurement date was the distribution date, even if that was a relatively young age such as 30. (See Henderson Declaration, ¶11). For participants who have yet to receive payment, the measurement date was April 1, 2008, even if that date is well before the individual reaches age 65. *Id*. The factors that Mr. Poulin developed for use under the methodology that I developed included a partial (50%) discount to account for the possibility of death before age 65, but not the complete discount that Mr. Henderson has evidently applied. My understanding is that Mr. Poulin's expert report and testimony were that pre-retirement mortality discounts were improper because neither the Part A

2

nor the Part B Plan forfeited benefits completely for death before retirement. Mr. Henderson's Declaration also does not indicate whether he applied the "1983 GAM" mortality table or the "1994 GAR" mortality table that the law currently mandates. Mr. Poulin's factors were based on the 1994 GAR mortality table.

7.     Mr. Henderson's Declaration indicates that CIGNA/Prudential excluded 6,480 participants who terminated prior to becoming vested in the plan. (Henderson Declaration, ¶6). The data that Defendants previously supplied the Plaintiffs indicated approximately 7,000 participants were non-vested, but approximately 90% of those persons were still active employees as of 12/31/2006. Because vesting only requires five years of service, a very substantial percentage of those persons should have vested during 2007 and 2008 if they remained employed by CIGNA. Others within that non-vested group would not have incurred disqualifying breaks-in-service under ERISA's "rule of parity" of five or more years and therefore should not be excluded. Mr. Henderson's Declaration does not provide a value for the "A+B" benefits of the individuals who were excluded as not vested under his methodology and assumptions.

8.     Mr. Henderson's Declaration does not indicate that the Free30% survivor's benefit was taken into account at all in the valuation of Part A benefits of the individuals who were eligible for those benefits.

9.     According to Mr. Henderson's Declaration, Prudential based their calculations on a population of 27,415 (Henderson Declaration, ¶5) versus the population in the data that Defendants previously supplied to the Plaintiffs of 27,159. Assuming that the additional 256 class members are entitled to the average computed recovery of $3,890, the estimated $106

3

million recovery that I previously computed is conservative by approximately $1 million.

10. Mr. Henderson's Declaration acknowledges that he did not compute A+B benefits for approximately 400 class members. (Henderson Declaration, ¶10). Mr. Henderson says that the benefits of 150 of these individuals were not computed because they were "pre-retirement deaths for whom we would expect the current cash balance plan to provide a more valuable benefit." Mr. Henderson's Declaration does not support that assertion and does not mention that the "Free30%" surviving spouse's benefit was substantially more valuable for many individuals. Addressing the remaining 250 individuals, assuming that they were all under the Tier 2 benefit formula and applying the average Tier 2 recovery amount computed by Plaintiffs ($3,647), I calculate an additional $1 million should be added to Henderson's estimate.

11. Regarding the amount of commenced payments calculated by Mr. Henderson (Henderson Declaration, ¶17), I compute $47.4 million for those who have commenced payments versus the $27 million computed by Mr. Henderson.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on July 18, 2008

                                              s/ Sharon L. Taulman
                                              Sharon L. Taulman

million recovery that I previously computed is conservative by approximately $1 million.

10. Mr. Henderson's Declaration acknowledges that he did not compute A+B benefits for approximately 400 class members. (Henderson Declaration, ¶10). Mr. Henderson says that the benefits of 150 of these individuals were not computed because they were "pre-retirement deaths for whom we would expect the current cash balance plan to provide a more valuable benefit." Mr. Henderson's Declaration does not support that assertion and does not mention that the "Free30%" surviving spouse's benefit was substantially more valuable for many individuals. Addressing the remaining 250 individuals, assuming that they were all under the Tier 2 benefit formula and applying the average Tier 2 recovery amount computed by Plaintiffs ($3,647), I calculate an additional $1 million should be added to Henderson's estimate.

11. Regarding the amount of commenced payments calculated by Mr. Henderson (Henderson Declaration, ¶17), I compute $47.4 million for those who have commenced payments versus the $27 million computed by Mr. Henderson.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on July 18, 2008

Sharon L. Faulman