## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

---------------------------------------------------------------X
:
JANICE C. AMARA, GISELA R.                                   :
BRODERICK, ANNETTE S. GLANZ,                                 :
individually, and on behalf of others similarly             :
situated,                                                   :
                                                             :
                                    Plaintiffs,             :          3:01 CV 2361 (DJS)
                                                             :
                        v.                                   :
                                                             :
CIGNA CORP. AND CIGNA                                         :
PENSION PLAN,                                                :
                                                             :
                                    Defendants.             :
                                                             :
---------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' BRIEF ON APPROPRIATE EQUITABLE RELIEF AND IN SUPPORT OF DEFENDANTS' MOTION TO DECERTIFY THE CLASS ACTION

**MORGAN, LEWIS & BOCKIUS LLP**
Joseph J. Costello
Christopher A. Parlo
Jeremy P. Blumenfeld
1701 Market Street
Philadelphia, Pennsylvania  19103-2921
(215) 963-5295/5258/5472
(215) 963-5001 (fax)

**ROBINSON & COLE**
James A. Wade (CT # 00086)
280 Trumbull Street
Hartford, Connecticut 06103
(860) 275-8270
(860) 275-8299 (fax)
*Attorneys for Defendants CIGNA Corporation and CIGNA Pension Plan*

Date Filed:  October 21, 2011
**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................ 1

RELEVANT PROCEDURAL HISTORY ........................................................ 5

    I.     This Court's Ruling................................................................... 5

    II.    Supreme Court Ruling ............................................................ 7

STANDARD.................................................................................................... 8

    I.     Standard of Proof for Remedies.............................................. 8

    II.    Standard for Class Certification of Remedies......................... 9

ARGUMENT ................................................................................................ 10

    I.     The Remedies Sought by Plaintiffs Are Not Appropriate Given the Nature of the ERISA Violation and the Harm Suffered by Plaintiffs ............................ 10

        A.    The Section 204(h) Violation at Issue Does Not Entitle Plaintiffs to an Injunction Voiding Part B and Reinstating Part A.............................. 11

        B.    Surcharge Is Not Applicable Here Because It Was Not Previously Sought and Must Be Premised on Losses to the Plan Caused by the Breach at Issue ...................................................................... 14

            1.    Plaintiffs Have Waived Any Claim for Surcharge ..................... 14

            2.    Surcharge Must Be Premised on Losses to the Plan Caused by the Breach at Issue ............................................... 16

            3.    Surcharge Is Not Available Against the Plan, Because the Plan Is Not a Fiduciary and Has Done Nothing Wrong.............. 19

            4.    Surcharge Is Not Available Against CIGNA Because There Were No Losses to the Trust Caused by the Disclosure Violations at Issue ....................................... 20

        C.    Neither Trust nor Contract Reformation Are Applicable Here ............... 23

            1.    There Is No Basis for Plaintiffs' Request for Reformation of the Plan Here, Because the Plan Has Not Engaged in Any Misconduct.......................................................... 24

            2.    Reformation of a Trust Is Only Available in Equity to Conform a Written Document to the Settlor's Intent, and the Part B Plan Document Already Reflects That Intent ............ 25

            3.    Plaintiffs Are Not Entitled to Contract Reformation Because There Is No Clear and Convincing Evidence of a Contract Agreed to by the Parties, Mutual Mistake, or Unilateral Mistake and Fraud....................................... 27

|  |  | (a) | There Is No Evidence That a Valid Agreement Existed That Was Not Reflected in Part B ....................... 27 |
|  |  | (b) | There Is No Evidence of Unilateral Mistake and Fraud.......................................................................... 29 |
|  |  | (c) | There Was No Scriveners' Error by CIGNA That Could Support a Finding of Mutual Mistake.................... 32 |
|  | D. | | Plaintiffs Have Rejected Equitable Estoppel as a Remedy..................... 34 |
| II. | | | Even If the Remedies Sought by Plaintiffs Were Appropriate Here, No Remedy Can Be Awarded on a Class-wide Basis, and Decertification Would Therefore Be Required............................................................................. 35 |
|  | A. | | The Individualized Determinations Required to Award Any Available Equitable Relief Under ERISA Section 502(a)(3) Mean That This Action No Longer Meets the Requirements of Rule 23(a) or (b)(2).......................................................................................... 37 |
|  |  | 1. | Surcharge Requires an Individualized Showing of Causation and Actual Harm, Precluding Certification ............... 39 |
|  |  | (a) | Plaintiffs Are Not Entitled to a "Presumption" of Harm and Causation.......................................................... 41 |
|  |  | (b) | The Court Did Not Make Any Findings of Harm or Causation For Each Class Member, and the Evidence at Trial Was Insufficient to Demonstrate Such Harm and Causation................................................. 46 |
|  | B. | | Equitable Estoppel Requires an Individualized Showing of Detrimental Reliance, and Reformation Requires a Showing of Mistake, Neither of Which Can Be Resolved on a Class-Wide Basis....................................................................................... 49 |
|  | C. | | Individualized Issues Also Prevent Class Certification Under Rule 23(b)(1) or (b)(3)...................................................................... 51 |
| CONCLUSION.................................................................................................. 53 |

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abrams v. Interco Inc.*,
719 F.2d 23 (2d Cir. 1983)................................................................................36

*Amara v. CIGNA Corp.*,
No. 01-2361, 2002 U.S. Dist. LEXIS 25947 (D. Conn. Dec. 20, 2002).......................5, 35, 37

*Amara v. CIGNA Corp.*,
534 F. Supp. 2d 288 (D. Conn. 2008)............................................................ passim

*Amara v. CIGNA Corp.*,
559 F. Supp. 2d 192 (D. Conn. 2008)............................................................ passim

*AMEX Assurance Co. v. Caripides*,
316 F.3d 154 (2d Cir. 2003)................................................................................29

*Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*,
760 F.2d 442 (2d Cir. 1985)................................................................................30

*Barboza v. Deutsche Bank Secs., Inc.*,
No. 10-0559, 2010 U.S. Dist. LEXIS 64953 (E.D. Cal. June 29, 2010) ...............................27

*Barnes v. American Tobacco Co.*,
161 F.3d 127 (3d Cir. 1998)..................................................................................9

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)............................................................................................43

*Basile v. H&R Block, Inc.*,
729 A.2d 574 (Pa. Super. Ct. 1999), *vacated by,* 761 A.2d 1115 (Pa. 2000) .........................49

*Beecher v. Able*,
575 F.2d 1010 (2d Cir. 1978)................................................................................27

*Biglands v. Raytheon Employee Savings & Inv. Plan*,
No. 10-0351, 2011 WL 2709893 (N.D. Ind. July 12, 2011)...............................................22

*Bixler v. Central Pa. Teamsters Health & Welfare Fund*,
12 F.3d 1292, 1298 (3d Cir. 1993)..........................................................................49

*Boucher v. Syracuse Univ.*,
164 F.3d 113 (2d Cir. 1999)..................................................................................9

*Bridge v. Phoenix Bond & Indemnity Co.*,
   553 U.S. 639 (2008)........................................................................................44

*Brown v. Kelly*,
   609 F.3d 467 (2d Cir. 2010)...........................................................................36

*Burke v. Kodak Ret. Income Plan*,
   336 F.3d 103 (2d Cir. 2003)...........................................................................49

*Burlington Northern & Santa Fe Ry. v. White*,
   548 U.S. 53 (2006)..........................................................................................45

*Burstein v. Ret. Account Plan for Emps. of Allegheny Health Educ. & Res. Found.*,
   334 F.3d 365 (3d Cir. 2003)...........................................................................33

*Califano v. Yamasaki*,
   442 U.S. 682 (1979)........................................................................................10

*Callery v. U.S. Life Ins. Co.*,
   392 F.3d 401 (10th Cir. 2004) .......................................................................16

*Casa Orlando Apts., Ltd. v. Fed. Nat'l Mortg. Assoc.*,
   624 F.3d 185 (5th Cir. 2010) .........................................................................53

*Chambers ex rel. Chambers v. School Dist. of Philadelphia Bd. of Educ.*,
   587 F.3d 176 (3d Cir. 2009)...........................................................................15

*Chin v. 355 Greenwich, LLC*,
   No. FSTCV054006579S, 2010 Conn. Super. LEXIS 868 (Conn. Super. Ct. Apr. 13,
   2010) .................................................................................................................8

*CIGNA Corp. v. Amara*,
   131 S. Ct. 1866 (2011) ........................................................................... passim

*Cinelli v. Sec. Pac. Corp.*,
   61 F.3d 1437 (9th Cir. 1995) ...................................................................24, 32

*Columbian Nat'l Life Ins. Co. v. Black*,
   35 F.2d 571 (10th Cir. 1929) .........................................................................28

*Delgrosso v. Spang & Co.*,
   769 F.2d 928 (3d Cir. 1985)...........................................................................28

*DePace v. Matsushita Elec. Corp. of Am.*,
   No. 02-4312, 2004 WL 1588312 (E.D.N.Y. July 16, 2004)...........................8

*Dobson v. Hartford Life & Acc. Ins. Co.*,
   99-2256, 2006 U.S. Dist. LEXIS 14922 (D. Conn. Mar. 31, 2006) ..........38, 52

*Dobson v. Hartford Fin. Servs. Group*,
    342 F. App'x 706 (2d Cir. 2009) ...........................................................36

*Dodge v. County of Orange*,
    226 F.R.D. 177 (S.D.N.Y. 2005) ..........................................................36

*Duncan v. Walker*,
    533 U.S. 167 (2001).............................................................................17

*East Texas Motor Freight Sys., Inc. v. Rodriguez*,
    431 U.S. 395 (1977).............................................................................10

*Eddy v. Colonial Life Ins. Co. of Am.*,
    919 F.2d 747, 748-49 (D.C. Cir. 1990)................................................49

*Edmunds v. Valley Circle Estates*,
    20 Cal. Rptr. 2d. 701 (Cal. App. Ct. 1993)..........................................49

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    131 S. Ct. 2179 (2011)........................................................................43

*In re Estate of Tuthill*,
    754 A.2d 272 (D.C. 2000) ...................................................................26

*In re Estate of Warden*,
    2 A.3d 565 (Pa. Super. Ct. 2010)........................................................16

*F.J. Hanshaw Enters. Inc. v. Emerald River Dev. Inc.*,
    244 F.3d 1128 (9th Cir. 2001) .............................................................18

*Fershtadt v. Verizon Commc'ns, Inc.*,
    No. 07-6963, 2010 WL 571818 (S.D.N.Y. Feb. 9, 2010)......................50

*Firestone Tire & Rubber Co. v. Bruch*,
    489 U.S. 101 (1989)......................................................................25, 26

*Fotta v. Trustees of the UMWA*,
    319 F.3d 612 (3d Cir. 2003).................................................................38

*Frommert v. Conkright*,
    433 F.3d 254 (2d Cir. 2006).............................................................40, 41

*FTC v. Figgie Int'l, Inc.*,
    994 F.2d 595 (9th Cir. 1993) ...............................................................43

*Giordano v. Coca-Cola Enters., Inc.*,
    No. 08-0391, 2011 WL 839507 (E.D.N.Y. Mar. 7, 2011)......................50

*Global Intellicom, Inc. v. Thomson Kernaghan & Co.*,
   99-0342, 1999 U.S. Dist. LEXIS 11378 (S.D.N.Y. July 27, 1999) ................................... 30, 51

*Grassian v. Grassian*,
   835 N.E.2d 607 (Mass. 2005) ...................................................................................... 26

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002) ................................................................................................ 2, 17

*Gregory v. Shelby Cnty.*,
   220 F.3d 433 (6th Cir. 2000) ......................................................................................... 15

*H. Prang Trucking Co. v. Local Union No. 469*,
   613 F.2d 1235 (3d Cir. 1980) ....................................................................................... 27

*Healy v. Rich Prods. Corp.*,
   981 F.2d 68 (2d Cir. 1992) ........................................................................................... 29

*Hein v. FDIC*,
   88 F.3d 210 (3d Cir. 1996) ........................................................................................... 20

*HSB Group, Inc., v. SVB Underwriting, Ltd.*,
   664 F. Supp. 2d 158 (D. Conn. 2009) ........................................................................... 8

*In re Hyde*,
   845 N.Y.S.2d 833 (App. Div. 3d Dep't 2007) ............................................................... 16

*In re: Initial Public Offerings Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006) ....................................................................................... 50, 52

*In re Johnson*,
   518 F.2d 246 (10th Cir. 1975) ...................................................................................... 18

*Int'l Union v. Murata Erie N. Am., Inc.*,
   980 F.2d 889 (3d Cir. 1992) ......................................................................................... 32

*Jordan v. E.I. DuPont de Nemours & Co.*,
   867 F. Supp. 1238 (D.S.C. 1994) ................................................................................. 8

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*,
   129 S. Ct. 865 (2009) ................................................................................................... 25

*Kenseth v. Dean Health Plan, Inc.*,
   No. 08-0001, 2011 U.S. Dist. LEXIS 30368 (W.D. Wis. Feb. 14, 2011) ....................... 21

*Kuper v. Iovenko*,
   66 F.3d 1447 (6th Cir. 1995) ........................................................................................ 20

*Le Blanc v. Salem*,
   196 F.3d 1 (1st Cir. 1999) .................................................................................18

*Lee v. Burkhart*,
   991 F.2d 1004 (2d Cir. 1993).........................................................................8, 34

*Lopinto v. Haines*,
   185 Conn. 527, 441 A.2d 151 (1981) ...............................................................8, 9

*Maneely v. City of Newburgh*,
   208 F.R.D. 69 (S.D.N.Y. 2002) .........................................................................36

*McNeil v. McNeil*,
   798 A.2d 503 (Del. Super. Ct. 2002) .................................................................18

*Meghrig v. KFC Western, Inc.*,
   516 U.S. 479 (1996).........................................................................................11

*Menkes v. Stolt-Nielsen S.A.*,
   No. 03-0409, 2011 U.S. Dist. LEXIS 7066 (D. Conn. Jan. 25, 2011).......................9

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993)...............................................................................2, 11, 17

*Middlesex Cnty. Sewerage Auth. v. Na'tl Sea Clammers Ass'n*,
   453 U.S. 1 (1981) .............................................................................................11

*Morris v. Wachovia Secs., Inc.*,
   448 F.3d 268 (4th Cir. 2006) ............................................................................49

*Morrissey v. Curran (II)*,
   650 F.2d 1267 (2d Cir. 1981)............................................................................18

*Morrissey v. Curran*,
   483 F.2d 480 (2d Cir. 1973)..............................................................................18

*Morrissey v. Segal*,
   526 F.2d 121 (2d Cir. 1975)..............................................................................18

*Moser v. Darrow*,
   341 U.S. 267 (1951)..........................................................................................18

*Nafar v. Hollywood Tanning Sys., Inc.*,
   339 F. App'x 216 (3d Cir. 2009) ........................................................................37

*O'Brien v. Argo Partners, Inc.*,
   736 F. Supp. 2d 528 (E.D.N.Y. 2010) ................................................................27

*Pearl v. Allied Corp.*,
102 F.R.D. 921 (E.D. Pa. 1984)............................................................37

*Pearson v. Voith Paper Rolls, Inc.*,
-- F.3d --, 2011 WL 3773343 (7th Cir. Aug. 25, 2011) ..........................48

*Pell v. E.I. DuPont de Nemours & Co.*,
539 F.3d 292 (3d Cir. 2008).................................................................12

*Perreca v. Gluck*,
295 F.3d 215 (2d Cir. 2002).................................................................24

*Preston v. U.S. Trust Co. of N.Y.*,
394 F.2d 456 (2d Cir. 1968).................................................................25

*Princess Lida of Thurn & Taxis v. Thompson*,
305 U.S. 456 (1939)............................................................................18

*Roth v. Sawyer-Cleator Lumber Co.*,
61 F.3d 599 (8th Cir. 1995) .................................................................16

*Scarangella v. Group Health, Inc.*,
No 05-5298, 2009 U.S. Dist. LEXIS 23457 (S.D.N.Y. 2009)................27

*Schlesinger v. Reservists Comm. to Stop the War*,
418 U.S. 208 (1974)............................................................................10

*Sedlack v. Braswell Servs. Grp., Inc.*,
134 F.3d 219 (4th Cir. 1998) ...............................................................20

*Sellers v. Mineta*,
358 F.3d 1058 (8th Cir. 2004) .............................................................45

*Shaver v. Siemens Corp.*,
No. 02-1424, 2008 WL 859251 (W.D. Pa. Mar. 28, 2008) ...................33

*Small v. Lorillard Tobacco Co.*,
720 N.E. 2d 892 (N.Y. 1999)...............................................................42

*Smith v. Dunham-Bush, Inc.*,
959 F.2d 6 (2d Cir. 1992).....................................................................24

*Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*,
262 F.3d 134 (2d Cir. 2001)...................................................................9

*Tardif v. Gen. Elec. Co.*,
No. 498CV1374, 2000 WL 33376644 (D. Conn. Sept. 30, 2000)..........20

*Taylor v. Hous. Auth. of New Haven*,
  267 F.R.D. 36 (D. Conn. 2010), *aff'd*, 645 F.3d 152 (2d Cir. 2011) .........................................9

*Thigpen v. Locke*,
  363 S.W.2d 247 (Tex. 1962).........................................................................................49

*Tokio Marine & Fire Ins. Co. v. Nat'l Union Fire Ins. Co*,
  91 F.2d 964 (2d Cir. 1937)...................................................................................28, 30

*TRW Inc. v. Andrews*,
  534 U.S. 19 (2001)......................................................................................................17

*UFCW Local 1776 v. Eli Lilly & Co*.,
  620 F.3d 121 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 3062 (2011) ...........................39, 50, 51

*United States v. Schiff*,
  602 F.3d 152 (3d Cir. 2010)........................................................................................44

*United States v. Wolfson*,
  642 F.3d 293 (2d Cir. 2011)........................................................................................44

*In re Unisys Corp. Retiree Med. Benefits Litig.*,
  No. 969, 2003 WL 252106 (E.D. Pa. Feb. 4, 2003) .................................... 41, 50, 52

*Unisys Corp. Retiree Med. Benefits ERISA Litig*.,
  579 F.3d 220 (3d Cir. 2009), *cert. denied*, 130 S. Ct. 1546 (2010)..........................35

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ........................................................................................ passim

*Washington v. Murphy Oil Corp.*,
  497 F.3d 453 (5th Cir. 2007) ......................................................................................33

*Wilkins v. Mason Tenders District Council Pension Fund*,
  445 F.3d 572 (2d Cir. 2006)...........................................................39, 40, 41, 46

*Wilson v. Moog Auto., Inc. Pension Plan*,
  193 F.3d 1004 (8th Cir. 1999) ....................................................................................32

*Young v. Verizon's Bell Atl. Cash Balance Plan*,
  667 F. Supp. 2d 850 (N.D. Ill. 2009), *aff'd*, 615 F.3d 808 (7th Cir. 2010),
  *cert. denied*, 131 S. Ct. 2924 (2011) ...................................................................32, 33

## STATUTES

29 U.S.C. §§ 1022, 1024, 1054(h) ..............................................................................24

29 U.S.C. § 1109........................................................................................................16, 17

29 U.S.C. § 1132(a)(1)(B) ................................................................................ passim

29 U.S.C. § 1132(a)(3)...................................................................................... passim

29 U.S.C. § 1132(d) ...............................................................................................24

**RULES**

Fed. R. Civ. P. 11.....................................................................................................49

Fed. R. Civ. P. 23..................................................................................................5, 9

Fed. R. Civ. P. 23(a) ....................................................................................... passim

Fed. R. Civ. P. 23(b) ..............................................................................................10

Fed. R. Civ. P. 23(b)(1)................................................................................51, 52, 53

Fed. R. Civ. P. 23(b)(2) ................................................................................... passim

Fed. R. Civ. P. 23(b)(3)..................................................................................51, 52

Fed. R. Civ. P. 23(c) .................................................................................................7

Fed. R. Civ. P. 23(c)(1)..........................................................................................35

Fed. R. Civ. P. 23(c)(1)(C) ......................................................................................9

**OTHER AUTHORITIES**

90 C.J.S. *Trusts*, § 92 (2011) .................................................................................26

2 Dann B. Dobbs, *Law of Remedies*, §§ 4.3, 9.5, 11.6 (2d ed. 1993) ................29, 33, 34

3 John N. Pomeroy, *A Treatise on Equity Jurisprudence*, § 839 (5th ed. 1941)...........31

3 William F. Fratcher, *Scott on Trusts*, § 205 (4th ed. 1987)......................................16

*Black's Law Dictionary* 1579 (9th ed. 2009) ..........................................................19

Brief of the Secretary of Labor as Amicus Curaie in Support of Reversal in *Kenseth v. Dean Health Plans, Inc*., No. 11-1560, EFC No. 18 at 16 (7th Cir. June 13, 2011) ..............40

Brief of the Secretary of Labor as Amicus Curiae  in Support of Petitin for Reahearing and Rehearing En Banc in *LaRue v. DeWolff, Boberg & Assoc., Inc.*, No. 05-1756, 2006 WL 2050799 (4th Cir. Jul. 12, 2006)........................................................17

Mary F. Radford & George G. Bogert et al., *The Law of Trusts & Trustees* § 991 ....................25

Restatement (Second) of Trusts § 197 cmt. a (1959).......................................................................25

Roger Henderson, *The Doctrine of Reasonable Expectation in Insurance Law After Two Decades*, 51 Ohio St. L. J. 823, 840-41, 848 n.123 (1990) ......................................................33

Defendants CIGNA Corporation ("CIGNA") and CIGNA Pension Plan (the "Plan") (collectively "Defendants") submit this Memorandum of Law in Opposition to Plaintiffs' Brief on Appropriate Equitable Relief and in Support of Defendants' Motion to Decertify the Class Action.[1]

## INTRODUCTION

This lawsuit arose as a result of CIGNA's conversion of its prior traditional defined benefit pension plan, now called CIGNA Pension Plan Part A ("Part A"), into a cash balance pension plan, CIGNA Pension Plan Part B ("Part B"). Plaintiffs challenged this conversion on behalf of a class of CIGNA employees who participated in the Plan before the conversion, contending, *inter alia*, that the Plan terms violated various provisions of ERISA and that various statutory disclosures published by the Plan Administrator about the Plan were misleading and/or deficient. This Court certified the class, found that the terms of Part B **were lawful**, but that certain disclosures about the Plan were misleading. The Court also held that the class was "likely prejudiced" by those disclosures (applying the Second Circuit standard in effect at that time). As a remedy, the Court awarded the class additional benefits – described as "A+B" – under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), even though those benefits were not provided under the actual terms of the Plan.

The Supreme Court has now held that no cause of action is available for benefits under the Plan under ERISA Section 502(a)(1)(B) based on disclosure violations, and the Second Circuit's "likely harm" standard does not apply. Therefore, this Court must once again turn to the issue of applicable remedies and class certification and determine if there are remedies

---

[1]    Defendants also rely on their Supplemental Proposed Findings of Fact, submitted pursuant to this Court's directive during the August 9, 2011 telephone conference. As demonstrated by the testimony cited in the Supplemental Proposed Findings of Fact, and as discussed *infra*, Plaintiffs have not and cannot make the necessary evidentiary showing to support their requested relief.

available under ERISA Section 502(a)(3) based on the evidence in this case, and if so, whether

such remedies are properly subject to class treatment.[2]

The Supreme Court, in remanding the case, made clear that Plaintiffs are required to

prove their entitlement to the various remedies they seek, including the factual and legal

elements of those remedies as they were "typically available in equity."  *CIGNA Corp. v. Amara*,

131 S. Ct. 1866, 1878 (2011) ("[A]ny requirement of harm must come from the law of equity . . .

To the extent any such requirement arises, it is because the specific remedy being contemplated

imposes such a requirement."); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993) (ERISA

Section 502(a)(3) authorizes only those categories of relief that were "typically available in

equity"); *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (same).

Plaintiffs have articulated four remedies but have not proven their entitlement to any of

them:

•  <u>Injunction</u>:  The particular injunction remedy Plaintiffs seek is not available under

ERISA Section 502(a)(3).  That provision does not authorize all forms of injunctions; instead, it

authorizes only injunctive relief "to enjoin any act or practice which violates any provision of

this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3)(A).  Here, Plaintiffs seek an

injunction requiring the Plan to pay benefits pursuant to the Part A benefit formula – instead of

---

[2]  As noted by Justice Scalia in his concurrence, the Supreme Court's discussion of the types of equitable remedies that *could* be available under ERISA 502(a)(3) was not necessary to the resolution of the question presented, and the majority analyzed remedies -- such as surcharge and reformation -- that were neither discussed nor briefed by the parties.  *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1883-84 (2011) (explaining that the discussion of "relief available under §502(a)(3) and *Mertens* is purely *dicta*," and "there is no discussion whatsoever of contract reformation or surcharge in the briefs of the parties or even *amici*").  Moreover, the majority explicitly stated it was not opining on whether any of the remedies discussed that could be available for a misrepresentation by a fiduciary under ERISA Section 502(a)(3) were available under the facts of this case. 131 S. Ct. at 1880.  This is an acknowledgement that the equitable remedies discussion is *dicta*.

the Part B formula – even though the Part B formula is *required* by the terms of the Plan and was entirely lawful.  Such an injunction is not one "to enjoin an act or practice which violates" the terms of the Plan or ERISA, and therefore is not available under ERISA Section 502(a)(3). Moreover, the particular injunctive relief Plaintiffs seek is not available for all of the reasons explained by this Court in denying Plaintiffs this same remedy previously, as the Supreme Court recognized.  *Amara*, 131 S. Ct. at 1876.  Indeed, Plaintiffs' request for an injunction to require the Plan to pay additional benefits ignores that the Plan – a separate entity with its own assets – has been vindicated in this litigation; the Court held that the Plan terms were lawful, and the Plan was not responsible for any of the communications that this Court held were deficient.  *Amara*, 131 S. Ct. at 1877 (noting that the Plan administrator has the statutory obligation to publish the communications this Court held were misleading).

•      <u>Surcharge</u>:  Surcharge is a remedy that applies only against a fiduciary for breaching a fiduciary duty that causes a loss to a trust.  Here, the Plan cannot be surcharged because the Plan is not a fiduciary and was not responsible for any of the communications at issue.  Moreover, surcharge was typically available in equity only to restore to a trust losses caused by a fiduciary breach.  In this case, there were no losses *to the trust*, let alone losses caused by the disclosure violations found by the Court.  Instead, Plaintiffs seek a remedy for alleged harm to themselves personally, but the reduction in benefits they seek to remedy was caused by the lawful amendment of the Plan, not by disclosures made about the Plan.[3]  Plaintiffs offer no evidence of actual harm or causation, nor do they even attempt to quantify the harm to any of them caused by any disclosure violations that could be surcharged.  Plaintiffs bear the burden of proof on these issues, and they have not met their burden.  *Amara*, 131 S. Ct. at 1881

---

[3]      Likewise, any cost savings were obtained as a result of the changes to the Plan terms, not the communications made about the Plan.  *See infra* at 22.

3

("a plan participant or beneficiary must show that the violation injured him or her. But to do so, he or she need only show harm and causation;" also noting that plaintiff must prove their entitlement to surcharge "by a preponderance of the evidence").

•    Reformation:  Reformation of a trust is available only if there has been fraud or mistake in drafting the trust document, such that the trust does not reflect the intent of the *settlor.* Plaintiffs offer no evidence that CIGNA – as plan sponsor – intended to provide anything other than the benefits described in the actual Part B plan document.  Nor do the principles of contract reformation apply to provide the A+B remedy requested by Plaintiffs.  The Plan is not a contract. It is a trust document that is subject to unilateral amendment or termination by the Plan sponsor without consideration, mutual assent, or any of the other requirements for a contract.  It is subject to the principles of trust reformation, not contract reformation.  Moreover, there is no evidence that CIGNA as the Plan *sponsor* committed fraud or that any class member actually believed – mistakenly – that they were entitled to an A+B benefit, which is a requirement for contract reformation.  Indeed, every testifying class member knew that their Part A benefit was being converted into an opening account balance.  Reformation cannot be used to eliminate the opening account balance benefits that class members knew were part of the Plan, particularly where the amount of each class member's opening account balance was disclosed before the Plan was adopted.

•    Equitable Estoppel:  Plaintiffs could seek an estoppel remedy – the remedy that was typically available in equity in similar circumstances – but the Supreme Court made clear that they would be required to prove detrimental reliance to prevail on such a claim.  *Amara*, 131 S. Ct. at 1881 ("[W]hen a court exercises its authority under § 502(a)(3) to impose a remedy equivalent to estoppel, a showing of detrimental reliance must be made.").  Perhaps for that

4

reason, Plaintiffs have long disavowed any request for estoppel, see *infra* at 34, and they continue to do so in their most recent brief.

Even assuming that any of the requested remedies were available, Plaintiffs are hampered by the fact that surcharge, contract reformation based on fraud and equitable estoppel require individualized assessments of causation and actual harm, unilateral mistake and detrimental reliance, respectively, for each and every participant.  Accordingly, decertification would be appropriate because the class no longer meets the requirements of Rule 23.

For these reasons, and others explained below, the relief Plaintiffs have requested should be denied or, at a minimum, the class should be decertified so that each individual class member can attempt to prove their entitlement to reformation, surcharge (and the amount to be surcharged), or estoppel based on their individual facts and circumstances.

## RELEVANT PROCEDURAL HISTORY

### I.    This Court's Ruling

On December 20, 2002, this Court certified a class of current and former CIGNA employees who participated in CIGNA's traditional defined benefit plan before January 1, 1998 and have since participated in CIGNA's cash balance plan.  *Amara v. CIGNA Corp.*, No. 01-2361, 2002 U.S. Dist. LEXIS 25947 (D. Conn. Dec. 20, 2002). The Court held that the class met Rule 23(a)'s requirements of commonality and typicality because there were common questions about whether CIGNA's pension plan violated ERISA and whether CIGNA's SPD was misleading.  *Id.* at *8.  However, in so holding, the Court noted that although there was a common question about whether the SPD was misleading, each plaintiff might be required to prove detrimental reliance upon the misleading SPD provision, and should Plaintiffs prevail on their claim that the SPD was misleading, "the court will revisit class certification on this issue as appropriate."  *Id.* at *9 n.4.

After a seven-day bench trial, this Court concluded that the terms of the Plan were lawful, but that certain disclosures about the Plan were deficient and/or misleading. *See Amara v. CIGNA Corp.*, 534 F. Supp. 2d 288, 306-11, 348-50 (D. Conn. 2008). The Court also recognized that each class member received an annual account statement and total compensation report describing that class member's benefits. *Id.* at 352. In that regard, the Court noted that "[i]t may be that CIGNA's evidence regarding the lack of impact the faulty disclosures had on employees will go to remedy, even though that evidence was insufficient to rebut Plaintiffs' showing of likely harm." *Id.* at 352 n.41.

The Court then decided the remedies. Applying the standard that existed in the Second Circuit before the Supreme Court's decision in this matter, this Court concluded that the class as a whole had met their burden to show likely harm, because the same misleading notices and disclosures were issued to the Class as a whole. *Amara v. CIGNA Corp*., 559 F. Supp. 2d 192, 197 (D. Conn. 2008). This Court also declined to require evidence that an individual was aware of the misleading notices and disclosures (i.e., had read them, heard about them from others, or paid any attention to their pension benefits) or was actually harmed by them, because such a requirement would elevate the "likely prejudice" standard into one of actual harm. *Id.* In fact, this Court stated a number of times that "[a]s with the likely prejudice/harmless error issue, the Court believes that CIGNA is seeking impermissibly to shift its burden of proof [regarding harm] onto the Class." *Id.* at 199. *See also id*. at 198 ("Given that CIGNA bears the burden of demonstrating harmless error, and has instead offered only unsupported speculation about what thousands of depositions might reveal . . .").

Finally, this Court concluded that a remedy could be provided under ERISA Section 502(a)(1)(B), ordered the Plan to pay additional benefits in accordance with an "A+B" benefit

formula that is not provided under the terms of the Plan, and ordered the Plan to pay all participants who received inadequate disclosures of the relative value of their benefits to receive additional benefits based on the value of a more valuable benefit option.

## II.     Supreme Court Ruling

The Supreme Court rejected the "likely harm" standard on which this Court had based class-wide relief.  In an opinion joined by eight justices, the Supreme Court first held that Plaintiffs were not entitled to benefits under ERISA § 501(a)(1)(B) because the misleading or inadequate communications at issue were not part of the Plan and did not amend or modify the terms of the Plan.  *Amara*, 131 S. Ct. at 1876-77.  The Supreme Court then held that a claim under ERISA § 502(a)(3) was not subject to the likely harm standard, and that the nature of the proof of harm that would be required would vary depending on the type of equitable relief sought.  *Id.* at 1880-82.  Without "decid[ing] which remedies are appropriate on the facts of this case," the Supreme Court described the standards of harm necessary for the three types of remedies that it suggested might be available in certain ERISA Section 502(a)(3) actions: equitable estoppel, surcharge and contract reformation.  *Id.* at 1880-81.

As explained by the Supreme Court, each of these remedies requires an evidentiary showing beyond that previously addressed by this Court at trial and beyond that identified by this Court in its Rule 23(c) Order identifying the class claims, issues and defenses that the parties were to litigate on behalf of the class at trial.  *See infra* at 35.  The Supreme Court concluded that the District Court "had not determined if an appropriate remedy may be imposed under § 502(a)(3)" and vacated the judgment below and remanded for such a determination.  *Id.* at 1882. The Supreme Court did not address whether the remedies at issue were available based on the facts in this lawsuit, nor did it address whether it would be appropriate to grant any of the relief on a class-wide basis.

7

## STANDARD

### I.     Standard of Proof for Remedies

Plaintiffs and class members must prove all elements, including detrimental reliance on the misrepresentations and actual harm caused by the misrepresentations, by a preponderance of the evidence to be entitled to either equitable estoppel or surcharge.  *See Amara*, 131 S. Ct. at 1881 ("a fiduciary can be surcharged under § 502(a)(3) only upon a showing of actual harm – proved . . . by a preponderance of the evidence."); *Lee v. Burkhart*, 991 F.2d 1004, 1009-10 (2d Cir. 1993) (holding that the facts alleged in the complaint were insufficient to satisfy plaintiffs' burden to prove the elements of equitable estoppel).[4]

Plaintiffs and class members must prove the elements necessary for reformation by clear and convincing evidence.  *See, e.g., HSB Group, Inc., v. SVB Underwriting, Ltd.*, 664 F. Supp. 2d 158, 176 (D. Conn. 2009); *Lopinto v. Haines*, 185 Conn. 527, 533, 441 A.2d 151, 155 (1981) (the equitable doctrine of reformation requires "evidence of a very high order" to overcome "the heavy presumption that a deliberately prepared and executed written instrument manifested the true intention of parties.") (internal quotations omitted); *Chin v. 355 Greenwich, LLC*, No. FSTCV054006579S, 2010 Conn. Super. LEXIS 868, at *8 (Conn. Super. Ct. Apr. 13, 2010); Pls' Br. at 38.  The standard of proof in reformation cases should operate as "weighty caution upon

---

[4]     *See also DePace v. Matsushita Elec. Corp. of Am.*, No. 02-4312, 2004 WL 1588312, at *6-13 (E.D.N.Y. July 16, 2004) (examining whether, viewing all evidence in the light most favorable to plaintiffs, they had met their burden to prove all of the elements of ERISA equitable estoppel); *Jordan v. E.I. DuPont de Nemours & Co.*, 867 F. Supp. 1238, 1249 (D.S.C. 1994) (holding that under an ERISA/federal common law theory of equitable estoppel, plaintiffs have the burden of showing detrimental reliance by preponderance of the evidence, and that they could not meet this burden).  Plaintiffs claim that the Supreme Court did not address the detrimental reliance burden of proof for equitable estoppel, and that the Supreme Court's discussion could be consistent with a presumption of detrimental reliance that would have to be disproven by defendants.  (Pls' Br. at 27).  Such a presumption, however, describes the "likely harm" standard that was explicitly rejected by the Supreme Court.

the minds of all judges, and it forbids relief whenever the evidence is loose, equivocal, or contradictory." *Lopinto*, 185 Conn. at 539 (quotations and citation omitted) (reversing order for reformation because the trial court did not clearly apply the "clear, convincing and substantial evidence standard" and holding that ambiguity and inference "hardly contributes to the high degree of proof required to order reformation.").

## II.     Standard for Class Certification of Remedies

Rule 23 of the Federal Rules of Civil Procedure governs class certification.   Under Rule 23, courts are "required to reassess their class rulings as the case develops" and "must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts."  *Taylor v. Hous. Auth. of New Haven*, 267 F.R.D. 36, 62 (D. Conn. 2010), *aff'd*, 645 F.3d 152 (2d Cir. 2011) (quoting *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999) and *Barnes v. Am. Tobacco Co.,* 161 F.3d 127, 140 (3d Cir. 1998)); *see also* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants . . . class certification may be altered or amended before final judgment."); *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.,* 262 F.3d 134, 139 (2d Cir. 2001) (noting the district court's ability to "decertify the class whenever warranted"); *Menkes v. Stolt-Nielsen S.A.*, No. 03-0409, 2011 U.S. Dist. LEXIS 7066, at *12 (D. Conn. Jan. 25, 2011) (noting "[t]he Court may revisit the appropriateness of certification at any time").

A party seeking to maintain certification must first demonstrate that the class continues to meet the requirements of Rule 23(a), which requires:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

If those requirements are met, the class must also continue to satisfy at least one of the three requirements listed in Rule 23(b). The plaintiff in this case obtained certification under Rule 23(b)(2), which provides that:

> (b) A class action may be maintained if Rule 23(a) is satisfied and if: … (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

The burden of these requirements cannot be treated lightly because, as the U.S. Supreme Court recently reiterated, a class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979)). "In order to justify a departure from that rule, 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Wal-Mart*, 131 S. Ct. at 2550 (quoting *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977), and *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)).

## ARGUMENT

**I.      The Remedies Sought by Plaintiffs Are Not Appropriate Given the Nature of the ERISA Violation and the Harm Suffered by Plaintiffs.**

Plaintiffs seek several different remedies, each of which they shoehorn into a theory of equitable relief.  First, they seek an injunction requiring the Plan to pay benefits to class members under the Part A benefits formula.  In the alternative, they seek relief under theories of surcharge and/or reformation, as follows:  (1) an order requiring the Plan to provide an A+B benefit; and/or (2) an order requiring the Plan to provide a "comparable benefit" to Part A that provides no cost savings to the company, and/or (3) an order requiring the CIGNA pay participants the annual amount saved by its implementation of Part B, plus interest.  (Pls' Br. at

70-74).  As discussed in detail below, none of these remedies is available under the facts of this case.

      **A.**      **The Section 204(h) Violation at Issue Does Not Entitle Plaintiffs to an Injunction Voiding Part B and Reinstating Part A.**

      Plaintiffs argue that this Court can issue an injunction invalidating the Part B Amendment based on the ERISA Section 204(h) violation without any evidentiary showing, ignore the validly adopted Plan freeze, and issue an injunction returning the participants to Part A. Plaintiffs' position is untenable for three independent reasons.

      First, ERISA does not authorize all types of injunctions.  Rather, ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), only authorizes a court to "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan."  29 U.S.C. §1132(a)(3); *see also Mertens*, 508 U.S. at 253; *Middlesex Cnty. Sewerage Auth. v. Na'tl Sea Clammers Ass'n*, 453 U.S. 1, 14 (1981) ("[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.") (internal quotations and citations omitted); *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 485 (1996) (holding that the Ninth Circuit erred in awarding clean-up costs as damages under RCRA because the statute described two specific remedies and did not include clean-up costs among them).  Here, this Court held that Part B of the Plan was lawful, and no one has ever alleged that its terms were violated.  *Amara*, 534 F. Supp. 2d at 317-29 (holding that the Part B cash balance plan was lawful); *Amara*, 559 F. Supp. 2d at 203 ("CIGNA rightly points out that the Court held in its Liability Decision that Part B itself is lawful.").  An injunction to enjoin the practices found to be illegal – disclosure violations – would result solely in an injunction prohibiting improper 204(h) notices and perhaps ordering the issuance of a corrected 204(h) notice – a remedy which the Court has already ordered.  But an injunction to reinstate Part A is

11

not the type of affirmative or negative injunction specifically authorized under Section

502(a)(3).[5]

Second, this Court previously rejected this same remedy based on the specific facts and

circumstances at issue here.  This Court held that Amendment No. 4 – the freeze – was validly

adopted and never challenged by Plaintiffs, explaining:

> Benefit accruals under Part A were frozen as of December 31, 1997 by virtue of
> the validly adopted Amendment 4, and CIGNA provided a valid § 204(h) notice
> of that freeze in its November 1997 Signature Benefits Newsletter . . . Plaintiffs
> have never challenged the validity of either the § 204(h) notice preceding
> Amendment 4, which put in place the freeze, or Amendment 4 itself.  Indeed, the
> Court can find no fault with CIGNA's § 204(h) notice.  CIGNA informed plan
> participants that "[e]mployees participating in the new CIGNA Retirement Plan
> will stop earning benefits under the current Pension Plan on December 31, 1997,"
> Ex. 516 (Nov. 1997 Newsletter) at D00611, and even Plaintiffs' communications
> expert, Prof. James Stratman, testified that he could not draft "clearer text that
> would explain [this fact] to participants."  . . .
>
> Further, and even apart from the question of appropriate notice, Plaintiffs have not
> challenged the freeze on a substantive basis.

*Amara*, 559 F. Supp. 2d at 207-208; *see also id.* at 209 (the remedy of invalidation would require

"a return not to a viable benefit plan, but to a freeze").[6]

---

[5]     While Plaintiffs argue that a court may issue an injunction requiring a Plan to provide
benefits (Pls' Br. at 20), the cases cited in support were actually cases of equitable
estoppel, requiring plaintiffs to prove:  (1) a material representation, (2) reasonable and
detrimental reliance upon the representation, and (3) extraordinary circumstances. *Pell v.
E.I. DuPont de Nemours & Co.*, 539 F.3d 292, 300-305, 310-11 (3d Cir. 2008) (affirming
award of injunctive relief through a constructive trust on the monies to be paid and
restitution to recover particular monies in defendant's possession premised on an
equitable estoppel theory); *Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d
220, 236-37 (3d Cir. 2009) (ordering that the trust reinstate the Burroughs Medical Plan
for twelve plaintiffs and enjoining Unisys from making any changes to the plan under a
theory of equitable estoppel), *cert. denied*, 130 S. Ct. 1546 (2010).

[6]     Plaintiffs' request to reinstate Part A benefits class-wide also cannot be reconciled with
the Court's holding that the entire class as defined did not experience a violation, since
rehires were not entitled to any Section 204(h) notice.  *Amara*, 534 F. Supp. 2d at 356
(holding that CIGNA had no duty to provide "notice to those rehired after December 21,
1998").

Plaintiffs now argue that, because the Court said that the freeze would not prevent a finding of liability, the freeze also should not prevent the restoration of Part A benefits. Pls' Br. at 62-64. But as the Supreme Court itself has recognized, Plaintiffs waived their ability to challenge the validity of Amendment 4 and the Part A freeze. *Amara*, 131 S. Ct. at 1875 (explaining that the District Court did not treat the November 1997 notice as a sham because respondents had not made such arguments); *Amara*, 131 S. Ct. at 1884 n.2 (Scalia, J.) (concurring) ("Respondents might (and likely should) have argued that the notice for the freeze was itself void, but they 'argued none of these things,' and the District Court declined to 'make these arguments now on [their] behalf.'"). In addition, in rejecting this proposed remedy previously, this Court already rejected the arguments Plaintiffs make now:

> [T]he Court does not believe that CIGNA intentionally implemented the freeze here in order to avoid its responsibilities under § 204(h) with respect to Part B or to attempt to shield itself from the possibility of a return to Part A - ***and certainly there was no evidence presented to support such an assertion***. Further, as the Court noted in its Liability Decision, *see id*. at 76, the combination of a freeze and retroactive benefits may have been more favorable to CIGNA's employees than other alternatives, such as a freeze without retroactive benefits. The Court therefore does not believe that CIGNA was acting in bad faith with respect to the freeze (for had the Court concluded otherwise, the Court believes that it would have ample power to remedy such misconduct).

*Amara*, 559 F. Supp. 2d at 210 (emphasis added).

Finally, awarding Plaintiffs and members of the class benefit accruals under Part A (or anything similar) would be an inappropriate windfall because it would provide Plan participants with much more than any of them reasonably could have, or would have (based on their testimony), expected. For example, Ms. Hogan testified that upon receiving the November 1997 newsletter she understood Part A benefits were being frozen and that she would not be accruing Part A benefits in the future. *See* Trial Tr. 726-28. Under these facts, there is no basis for invaliding the lawful Part B amendments, or requiring the Plan to pay benefits that are not

13

provided under its terms.  Thus, Plaintiffs' request to invalidate the lawful freeze amendment –

one that Plaintiffs never challenged – should be denied.

### B.   Surcharge Is Not Applicable Here Because It Was Not Previously Sought and Must Be Premised on Losses to the Plan Caused by the Breach at Issue.

#### 1.   Plaintiffs Have Waived Any Claim for Surcharge.

At the inception of the trial in this case, this Court asked Plaintiffs to identify the

"specific relief" Plaintiffs were seeking, and "precisely what remedy is requested" on each claim:

> Yes, there probably will be in this case post trial briefing, but I think that what I had wanted was some indication of what remedy you were requesting for each of the alleged violations that you are pursuing in the case so as I go through, I understand exactly what violation you are putting evidence on, into the record on, and *precisely what the remedy is requested for each of those violations*.
>
> *   *   *
>
> Just these four violations, if successful this is the remedy we are going to request of the Court, period.  It doesn't have to be briefing on why it works or why it doesn't work.  We'll get to that at some later point but it's just so we all are on the same page in terms of *what specific relief you are requesting for each alleged violation*.
>
> *   *   *
>
> I would like it to be relatively specific but it doesn't have to have all the formal words on it that a judgment would have or anything like that.

Trial Tr. 4-5, Sept. 11, 2006 (emphasis added).

Per the Court's instruction, Plaintiffs filed their Additional Submission on Relief (filed

9/12/06), in which they identified the specific relief sought on each claim.  As to Claims Two

and Four – the two claims on which Plaintiffs prevailed as to liability – Plaintiffs limited their

requested relief to *additional benefits from the Plan*:

- "The Plan cannot enforce benefit reductions that the SPD does not properly

disclose . . .  Instead, the Plan must be interpreted and applied in conformity with CIGNA's

representations in the SPD and Retirement Kit . . .  The Plan must also be interpreted and applied consistent with the representations in the Retirement Kit . . . ."  (*Id.*, Claim Two) (emphasis added).

.    •    "All members of the class who CIGNA employed on January 1, 1998 or who were rehired thereafter *must be restored to the benefit formulas* (Tier 1 or Tier 2) that applied on December 31, 1997. . .  Unless and until proper notice is given, current employees shall continue *to accrue benefits* under the benefit formulas in effect on December 31, 1997. . . ." (*Id.*, Claim Four) (emphasis added).

Plaintiffs did not request *any* relief from CIGNA Corporation as to Claims Two and Four;[7] instead the only relief sought was from the Plan.  Moreover, Plaintiffs did not request *any* surcharge remedy from either the Plan or CIGNA.[8]  Having identified "precisely what remedy is requested" as to Claims Two and Four, Plaintiffs have waived any claim to any other relief.[9] *Gregory v. Shelby Cnty.*, 220 F.3d 433, 442 (6th Cir. 2000) ("[A] party's failure to advance a theory of recovery in a pretrial statement constitutes waiver of that theory."); *Chambers ex rel. Chambers v. School Dist. of Philadelphia Bd. of Educ.*, 587 F.3d 176, 186 (3d Cir. 2009) ("In sum, the Chambers unambiguously, and under direct questioning by the District Court, invoked

---

[7]    Of note, Plaintiffs did request relief from both CIGNA Corporation and the Plan as to Count One:  "Defendants should be enjoined from interpreting or applying the Plan's provisions that result in periods of "wear-away" with no additional benefit accruals in violation of ERISA's anti-forfeiture and backloading rules."  *Id.* at Claim One.

[8]    Nor did Plaintiffs ever seek surcharge or any other form of relief – aside from additional benefits under ERISA Section 502(a)(1)(B) – during their appeal to the Second Circuit or the Supreme Court.

[9]    Surcharge was also typically available in equity only for claims of breach of fiduciary duty.  But here, Plaintiffs have repeatedly disavowed any claim for fiduciary breach.  *See, e.g., Amara*, 534 F. Supp. 2d at 312 n. 6 ("Plaintiffs seek relief on the ground that CIGNA has failed to comply with the statutory standards established by ERISA; they have made no claim of breach of fiduciary duty.").  Because a breach of fiduciary duty is a necessary element of a surcharge remedy, Plaintiffs' request for surcharge fails.

their right to seek compensatory damages alone.  Only now, on appeal, do they say they want

reimbursement for attorney's fees, evaluation costs and travel expenses.  Because they never

litigated their right to that relief before the District Court, they have waived their right to do so

before us."); *Callery v. U.S. Life Ins. Co.*, 392 F.3d 401, 408 (10th Cir. 2004) (rejecting

plaintiff's request for accounting for profits and reformation under ERISA Section 502(a)(3)

because the plaintiff "did not assert these arguments before the district court").

## 2.    Surcharge Must Be Premised on Losses to the Plan Caused by the Breach at Issue.

Surcharge is a remedy that allows a court to charge a fiduciary for actual losses to a trust

(in the ERISA context, the plan itself) caused by his or her breach of fiduciary duty.  *See, e.g.*,

*Roth v. Sawyer-Cleator Lumber Co*., 61 F.3d 599, 604-05 (8th Cir. 1995) ("[I]f a breach of trust

results in a loss to the trust estate, the trustee is chargeable with the amount of the loss" but the

same is not true if the loss is to the beneficiaries) (quoting 3 William F. Fratcher, *Scott on Trusts*

§ 205 at 238-39 (4th ed. 1987));  *In re Hyde*, 845 N.Y.S.2d 833, 837 (App. Div. 3d Dep't 2007)

("a surcharge is only warranted upon a showing that the trust's losses are causally connected to

the trustee's imprudence"); *In re Estate of Warden*, 2 A.3d 565, 573 (Pa. Super. Ct. 2010) ("[t]he

court must find the following before ordering a surcharge:  (1) that the trustee breached a

fiduciary duty and (2) that the trustee's breach caused a loss to the trust.").

Plaintiffs suggest that surcharge is the equivalent of any damages awarded for *any* harm

caused by a fiduciary.  Apart from the fact that such an interpretation is unsupported by the

caselaw, such an interpretation of surcharge under ERISA Section 502(a)(3) would render

ERISA Section 502(a)(2) superfluous.  More specifically, ERISA Section 502(a)(2) allows

appropriate relief for breach of fiduciary duty under Section 409 of ERISA, 29 U.S.C. § 1109.

That provision, in turn, imposes liability on a fiduciary of a plan "to make good to such plan any

losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary . . . ."  29 U.S.C. § 1109.  If Section 502(a)(3) allows for the kind of surcharge remedy that Plaintiffs claim, then Section 502(a)(2) of ERISA – the principal enforcement provision in ERISA for imposing liability on fiduciaries[10] – would be superfluous and completely subsumed within the relief available as purported "surcharge" under ERISA Section 502(a)(3).  *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotation marks omitted); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (same).

Moreover, in *Mertens*, 508 U.S. at 256, the Court held that § 502(a)(3) authorizes only "those categories of relief that were *typically* available in equity . . . ."  *See also Great-West*, 534 U.S. at 210 (same).  This was confirmed by the Supreme Court in this case.  *See Amara*, 131 S. Ct. at 1878.  Thus, regardless of whether the Supreme Court's opinion in *Amara* suggests that certain types of remedies, e.g., surcharge, might be available against fiduciaries but not against non-fiduciaries, nothing in *Amara* suggests that remedies are available under ERISA Section 502(a)(3) under circumstances where they were not "typically available in equity."  To that end, surcharge was typically available in equity only to remedy a breach of fiduciary duty that caused harm to *trust assets* – not harm to individual beneficiaries.  Indeed, this is borne out by looking at the very cases relied upon by Plaintiffs.  These cases demonstrate that surcharge is available only in instances where the fiduciary improperly handles monies in the trust, by taking it, investing it

---

[10]     The Department of Labor has itself recognized the critical importance of ERISA Section 502(a)(2).  *See, e.g.,* Brief of the Secretary of Labor as Amicus Curiae in Support of Petition For Rehearing And Rehearing En Banc in *LaRue v. DeWolff, Boberg & Assoc., Inc.*, No. 05-1756, 2006 WL 2050799, at *10 (4th Cir. Jul. 12, 2006) (stating that Section 502(a)(2) provides a remedy for "the crucible of congressional concern," which is the "misuse and  mismanagement of plan assets") (internal quotations and citations omitted).

inappropriately, paying it out improperly, giving it to the wrong people, or otherwise causing

losses to trust assets.  *See* the cases cited in Pls' Brief at 43: *Morrissey v. Curran (II)*, 650 F.2d

1267, 1281-82 (2d Cir. 1981) (affirming surcharge of union president requiring repayment to

trust for all improper payments and excess compensation received by other union officers, of

which he had knowledge); *Morrissey v. Curran*, 483 F.2d 480, 484-85 (2d Cir. 1973) (pre-

ERISA LMRDA case, upholding a surcharge imposed against a trustee of the union's pension

fund for acting in reckless disregard of his duty by approving pension payments to individuals

not covered by the plan); *Moser v. Darrow*, 341 U.S. 267, 271-73 (1951) (involving situation

where the trustee expressly allowed his employees to profit by selling securities to the trust at an

inflated price and to keep money that otherwise would have gone to the trust); *In re Johnson*, 518

F.2d 246, 250-51 (10th Cir. 1975) (surcharging trustee for losses to the trust where the evidence

established that the trustee hired a bookkeeper, who embezzled from the trust, and the trustee

never checked on the bookkeeper's work or discovered the losses to the trust); *Le Blanc v.

Salem*, 196 F.3d 1, 7 (1st Cir. 1999) (considering whether to surcharge a trustee who failed to

recover significant sums of money owed to the trust based on an alleged negligent investigation);

*McNeil v. McNeil,* 798 A.2d 503, 510-11 (Del. Super. Ct. 2002) (imposing a surcharge

representing a fraction of the commission charged to the trust that was paid out improperly

where the trustee had not adequately rendered the service for which the commission was given);

*see also Morrissey v. Segal*, 526 F.2d 121, 124, 126-27 (2d Cir. 1975) (in pre-ERISA LMRDA

action, noting that district court surcharged one union trustee who negligently authorized

unlawful pension payments, requiring him to pay back into the trust the amount dispersed).[11]

---

[11]     A few of the cases cited by Plaintiffs discuss but do not impose a surcharge.  *See, e.g.*,
*Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 464 (1939) (noting that a
court has the power to surcharge the trustee with losses the trust incurred); *F.J. Hanshaw*

### 3. Surcharge Is Not Available Against the Plan, Because the Plan Is Not a Fiduciary and Has Done Nothing Wrong.

Here, surcharge cannot be imposed upon the Plan. First, the Plan is not a fiduciary. As discussed in the cases cited above, surcharge can be sought only against a fiduciary, not against the trust. *See also Black's Law Dictionary* 1579 (9th ed. 2009) (defining surcharge as "[t]he amount that a court may charge *a fiduciary* that has breached its duty.") (emphasis added). Second, the Plan is not responsible for any of the disclosure violations at issue. Instead, those disclosure violations are, by statute, the responsibility of the Plan Administrator. *See Amara*, 131 S. Ct. at 1877 (noting that the plan administrator has the statutory obligation to publish the communications this Court held were misleading; also noting the careful distinction made in ERISA between ERISA plans, plan sponsors, and plan administrators); *Amara*, 534 F. Supp. 2d at 330 ("[u]nder ERISA, the plan administrator is responsible for issuing certain required disclosures" such as the SPD, SMMs and notices required under Section 204(h)); *Amara*, 559 F. Supp. 2d at 204 n.4 (explaining that "CIGNA [not the Plan] was the entity that produced and distributed the notices and disclosures the Court found defective"). As this Court held, the terms of Part B were completely lawful, and the Plan has paid all benefits actually due under the terms of the Plan. *See Amara*, 559 F. Supp. 2d at 203 ("Part B itself is lawful."). Thus, there is no basis for an award of surcharge against the Plan.

---

*Enters. Inc. v. Emerald River Dev. Inc.*, 244 F.3d 1128, 1142-43 (9th Cir. 2001) (holding that where one party was harmed by the other and wanted to be reimbursed for the losses sustained, "[t]he $200,000 transfer of assets from Frederick to Gordon . . . cannot properly be characterized as a "surcharge.") The Secretary of Labor, in its *amicus* brief, also does not cite any cases awarding surcharge where the breach at issue did not involve losses to a trust, i.e., through the misappropriation or mishandling of trust assets.

### 4.      Surcharge Is Not Available Against CIGNA Because There Were No Losses to the Trust Caused by the Disclosure Violations at Issue.

Surcharge is also not a viable remedy for the breach at issue here by CIGNA Corporation because there are no losses *to the trust (i.e., the Plan)* that were *caused* by the inadequate description of the Part B benefits.  A misrepresentation about the benefits available to Plan participants cannot *cause* a loss to the Plan.  Rather, any reduction in the benefits available under a Plan necessarily must result from a Plan amendment.  For example, in *Hein v. FDIC*, 88 F.3d 210, 222 (3d Cir. 1996), the plaintiff argued that the defendants breached their ERISA fiduciary duties by sending him a letter containing misrepresentations about his benefits and also improperly investing plan assets.  The Third Circuit rejected plaintiff's argument that defendants should therefore be required to pay him the amount of pension benefits reflected in the letter, explaining:

> Even assuming that all of Hein's allegations are true and that [the plan administrator] and the FDIC breached their fiduciary duties to the Plan, Hein cannot claim benefits to which he is not entitled.  Because Hein was not entitled to the benefits in the first place, there is no causal link between the alleged breach of fiduciary duty by [the plan administrator] and the FDIC and the denial of benefits to Hein.

*Id.* at 224; *see also Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 225 (4th Cir. 1998) ("Since [plaintiff] is not entitled to benefits [under the terms of the plan], there is no causal link between Braswell's alleged breaches of fiduciary duty and the harm for which Sedlack seeks to recover [benefits].."); *Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995) (requiring "causal link" between alleged breach of fiduciary duty and harm allegedly suffered); *Tardif v. Gen. Elec. Co.*, No. 498CV1374, 2000 WL 33376644, at *9 (D. Conn. Sept. 30, 2000) (holding that where plaintiff alleged a breach of fiduciary duty based on a misrepresentation about eligibility for benefits to which he was not actually entitled under the terms of the plan, he could not obtain the benefits promised because "even in the absence of the alleged misrepresentation, he would not

20

have received the benefits" and "**the breach itself could not have caused the 'loss' of benefits"**) (emphasis in bold added); *Kenseth v. Dean Health Plan, Inc.*, No. 08-0001, 2011 U.S. Dist. LEXIS 30368, at *4, *26-27 (W.D. Wis. Feb. 14, 2011) (holding that plaintiffs request for "make-whole" relief in the form of surcharge was really just a "thinly disguised claim for compensatory damages," but even if it were not, plaintiff would not be entitled to payment of her medical expenses because she had not proven those costs were caused by the alleged breach of fiduciary duty--failure to give plaintiff the correct information about her lack of coverage before she underwent surgery).

The same is true here.  Thus, the surcharge sought by Plaintiffs' counsel would not have typically been available in equity, and it cannot be available under ERISA Section 502(a)(3). Moreover, to the extent any class member's benefits were reduced – the only "harm" sought to be remedied by an award of additional benefits – those benefit reductions were caused by the lawful, validly adopted terms of the Plan, not any disclosures about the Plan.

Indeed, Plaintiffs' counsel's request for additional benefits for disclosure violations makes no sense under these facts, where each class member received an annual account statement and total compensation report explaining precisely what his or her account balance was at any point in time.  Regardless of whatever else any Plaintiff or class member might have understood or misunderstood about how their benefits were calculated, they always knew their own account balance.  Thus, the remedy Plaintiffs' counsel seek would award Plaintiffs more in benefits than they are entitled to under the Plan, and more than they were specifically told they would receive in their account statements and total compensation reports.  There is no precedent – in equity or otherwise – for such an award.

In short, the surcharge Plaintiffs seek – measured by an increase in their personal benefits – is not available under ERISA Section 502(a)(3) under the facts here, because there is no harm to the trust, and no evidence that the breach of fiduciary duty at issue – inadequate disclosures – *caused* any reduction in benefits available under the Plan.

As an alternative Plaintiffs are seeking a surcharge equal to the difference between what the old and new plans cost CIGNA (which they state is no more than $10 million annually), plus interest (Pls' Brief at 73).  However, this difference in cost also is not a measure of Plaintiffs' losses – or CIGNA's "profit" – from the inadequate disclosures.  This is because any cost savings CIGNA realized were due to the lawful adoption of Part B.  Indeed, there is no proof that the actions found to be unlawful – inadequate disclosures – yielded any cost savings or profits. Because Plaintiffs also cannot show that the inadequate disclosures at issue caused the Plan to lose $10 million annually, what they seek is not surcharge as it was traditionally available in equity, and the remedy they seek is not available under ERISA Section 502(a)(3). *Cf., e.g.*, *Biglands v. Raytheon Employee Savings & Inv. Plan*, No. 10-0351, 2011 WL 2709893, at *6 (N.D. Ind. July 12, 2011) (explaining that even after the Supreme Court's decision in *Amara*, a plaintiff "cannot seek a 'legal remedy' and call it an 'equitable' one just by labeling it a 'surcharge'").

Not only can Plaintiffs not recover cost savings on a surcharge theory for all of the reasons discussed above, but Plaintiffs never presented evidence about any *actual* cost savings from Amendment No. 5 adopting Part B and never put Defendants on notice that they were seeking to recover (on a surcharge or any other theory) the actual cost savings that resulted from the adoption of Part B.  To the contrary, during the trial, Plaintiffs explained that they wanted to introduce evidence of cost savings only to prove that CIGNA's representations regarding cost

22

savings made before the adoption of Part B were misleading.[12]  In light of Plaintiffs'

representations, this Court held that evidence of any actual cost savings was irrelevant:

> Here's the thing, Mr. Bruce:  *I don't care what their documents show today about
> what their cost savings are or haven't been under the plan.  That just seems to me
> to be completely irrelevant.*  What you are arguing, I take it, is that – and this may
> or may not be a proper legal claim but I think right now haven't gotten far enough
> into it, is that – in 1997 and 1998, they're telling employees affirmatively the one
> thing you can be certain of, the absolute thing you can be certain of, is this will
> not save CIGNA a dime and so documents at or around that time frame that are
> going to the decision makers as you just said, analyzing the cost savings, if any, of
> the program, I would be prepared to let you have those because obviously, if
> there's a document saying we are going to save zillions of dollars by switching to
> this plan and at the same time they're assuring everybody, that might be a claim.

Trial Tr. 927-928, Sept. 15, 2006 (emphasis added).  In light of this Court's ruling, and

Plaintiffs' failure to put Defendants (or the Court) on notice during the trial that they were

seeking to recover cost savings as a remedy, Defendants introduced no testimony about whether

there was any actual cost savings, or the amount of such savings.  For Plaintiff to now seek to

recover "cost savings" therefore is improper and prejudicial.

### C.    Neither Trust nor Contract Reformation Are Applicable Here.

Reformation is a remedy typically available in equity in which, under certain limited

circumstances, a written trust – here, the Plan – can be modified to reflect a plan sponsor/settlor's

intent (in the case of trust reformation), or a written contract can be modified to reflect the actual

---

[12]    Importantly, the communications that Plaintiffs challenged – communications which
stated that CIGNA did not anticipate any cost savings – did not refer just to changes to
the CIGNA Pension Plan.  Instead, those documents referenced changes to CIGNA's
overall retirement program, which included both changes to the Plan and additional
changes to the CIGNA 401(k) Plan, known as the SIP.  (Trial Tr. 583-87, Sept. 13, 2006).
Indeed, Professor Stratman admitted that class members would have known that the
reference to CIGNA's "retirement program" includes consideration of both plans
together.   (*Id.*).  In that context, statements about cost savings were entirely accurate
because any anticipated cost savings regarding the Plan were expected to be offset by
cost increases to the SIP.

terms of the parties' agreement (in contract reformation).  Neither type of reformation is applicable based on the facts here.

1.      There Is No Basis for Plaintiffs' Request for Reformation of the Plan Here, Because the Plan Has Not Engaged in Any Misconduct.

There is no basis for Plaintiffs' request for reformation *of the Plan* here because the Plan has not done anything wrong.  The Plan is a separate legal entity, with its own assets and liabilities, and its own separate legal obligations imposed by ERISA.  29 U.S.C. § 1132(d) ("An employee benefit plan may sue or be sued under this subchapter as an entity.").  This Court held Part B was lawful, and rejected Plaintiffs' challenges to the terms of the Plan.  Moreover, the only disclosure violations found by the Court are violations of obligations imposed, by statute, exclusively on the Plan administrator.  29 U.S.C. §§ 1022, 1024, 1054(h).  *Amara*, 131 S. Ct. at 1877 (noting that ERISA carefully distinguishes between plans, plan sponsors, and plan administrators).  Under these circumstances, there is no basis for any judgment of liability against the Plan here, let alone a remedy to reform the Plan to pay additional benefits.

Furthermore, reforming the Plan to require it to pay additional benefits based on disclosure violations by the Plan Administrator would undermine the actuarial soundness of the Plan and its ability to pay benefits that are actually owed under the Plan's terms – both to class members and other Plan participants.  *Perreca v. Gluck*, 295 F.3d 215, 225 (2d Cir. 2002) (explaining that ERISA's requirement that a plan have a written amendment procedure "protects the plan's actuarial soundness by preventing plan administrators from contracting to pay benefits to persons not entitled to such under the express terms of the plan") (quoting *Smith v. Dunham-Bush, Inc*., 959 F.2d 6 (2d Cir. 1992)).  *See also, e.g*., *Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437, 1444-45 (9th Cir. 1995) (rejecting reformation where the plan terms were clear because "application of the principles of mistake would be inconsistent with ERISA's strong preference

24

for the written terms of the plan").  For these reasons alone, there is no basis for reforming of the Plan to require it to pay additional benefits.

> ###     2.      Reformation of a Trust Is Only Available in Equity to Conform a Written Document to the Settlor's Intent, and the Part B Plan Document Already Reflects That Intent.

Plaintiffs also are not entitled to reformation because reformation of a trust was only typically available in equity to conform the written trust document to the *settlor's* intent, and the Part B plan document already reflects that intent.

The Plan is a trust instrument, and the rights and responsibilities of the parties are governed by principles of trust law.  As the Supreme Court made clear in this case: "The case before us concerns a suit by a beneficiary against a plan fiduciary (whom ERISA typically treats as a trustee) *about the terms of a plan (which ERISA typically treats as a trust)*."  *Amara*, 131 S. Ct. 1879 (emphasis added, parentheticals in original).  *See also Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 129 S. Ct. 865, 871 (2009) (recognizing that "the law of trusts [] 'serves as ERISA's backdrop'") (internal citation omitted); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989) ("ERISA abounds with the language and terminology of trust law.").  Accordingly, to the extent reformation is available as a remedy, it is only available where reformation *of a trust* would typically have been available in equity.  *Cf.*  Restatement (Second) of Trusts § 197 cmt. a (1959) ("A trustee who fails to perform his duties as trustee is not liable to the beneficiary for breach of contract").

When evaluating a claim for reformation of a trust, a court must look to the intent of the settlor in drafting the trust, and only reform the trust where it is clear the settlor made a mistake such that the language of the trust does not reflect his or her true intent.  *See Preston v. U.S. Trust Co. of N.Y.*, 394 F.2d 456, 460, 462 and n. 4, 6 (2d Cir. 1968) (when reforming a trust, the court must consider whether the language used is what the grantor intended); Mary F. Radford &

George G. Bogert et al., *The Law of Trusts & Trustees* § 991 ("The court may reform the terms of a trust, even if unambiguous, to conform the terms *to the settlor's intention* if it is proved by clear and convincing evidence that *both the settlor's intent* and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement.") (emphasis added); *Grassian v. Grassian*, 835 N.E.2d 607, 608 (Mass. 2005) (in order to reform a trust "[w]e require clear and decisive proof that the instrument fails to embody the settlor's intent"); *In re Est. of Tuthill*, 754 A.2d 272, 275 (D.C. 2000) ("The party seeking reformation bears the burden of establishing the settlor's actual intent has been displaced by the error" ); 90 C.J.S. *Trusts*, § 92 (2011) ("[A] party seeking reformation of a trust bears the burden of establishing that the settlor's actual intent has been displaced by an error.").   This is consistent with the Supreme Court's long held view under ERISA that "[t]he terms of trusts created by written instruments are determined by the provisions of the instrument as interpreted in light of all the circumstances and such other evidence *of the intention of the settlor* with respect to the trust . . . ."  *Bruch*, 489 U.S. at 112 (emphasis added, internal quotations and citations omitted).

Here, there is no evidence (let alone clear and convincing evidence) that CIGNA – as plan sponsor/settlor[13] – intended the terms of Part B to be any different from the actual terms of the plan document.  Indeed, Plaintiffs have never even alleged that the Part B plan terms did not reflect CIGNA's intent in adopting Part B, let alone presented any evidence of such.  As such, there is no basis for reformation of the Plan as that remedy was typically available in equity.

---

[13]     The Supreme Court explained in this case that "[t]he plan's sponsor (e.g., the employer), like a trust's settlor, creates the basic terms and conditions of the plan, executes a written instrument containing those terms and conditions, and provides in that instrument a procedure for making amendments."  *Amara*, 131 S. Ct. 1877 (emphasis added) (internal citations and quotations omitted).

**3.      Plaintiffs Are Not Entitled to Contract Reformation Because There Is No Clear and Convincing Evidence of  a Contract Agreed to by the Parties, Mutual Mistake, or Unilateral Mistake and Fraud.**

Putting aside that principles of contract reformation are inapposite here for the reasons discussed *supra*, Plaintiffs also are not entitled to contract reformation because they cannot prove, by clear and convincing evidence, the existence of a contract agreed to by the parties, mutual mistake, or unilateral mistake and fraud.

**(a)      There Is No Evidence That a Valid Agreement Existed That Was Not Reflected in Part B.**

The first element of contract reformation requires the plaintiff to prove that a valid contract existed between the parties that was not accurately reflected in a written instrument. *See, e.g., Beecher v. Able,* 575 F.2d 1010, 1015 (2d Cir. 1978) ("It is well established that reformation is appropriate only to conform an agreement to accurately reflect the intentions of the parties at the time of the agreement") (citations omitted); *H. Prang Trucking Co. v. Local Union No. 469*, 613 F.2d 1235, 1239 (3d Cir. 1980) ("Reformation presupposes that a valid contract between the parties was created but, for some reason, was not properly reflected in the instrument that memorializes the agreement.").

"The proponent of reformation must show in no uncertain terms . . . exactly what was really agreed upon between the parties." *Scarangella v. Group Health, Inc.*, No 05-5298, 2009 U.S. Dist. LEXIS 23457, at *55-56 (S.D.N.Y. 2009) (internal quotation and citations omitted); *see also O'Brien v. Argo Partners, Inc.,* 736 F. Supp. 2d 528, 536 (E.D.N.Y. 2010)  ("A party seeking reformation must 'show in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties.'") (citation omitted); *Barboza v. Deutsche Bank Secs., Inc.*, No. 10-0559, 2010 U.S. Dist. LEXIS 64953, at *11 (E.D. Cal. June 29, 2010) ("[a] complaint for the reformation of a contract should allege what the real agreement

27

was, what the agreement as reduced to writing was, and where the writing fails to embody the real agreement.") (citation omitted).

Here, Plaintiffs have no evidence that CIGNA intended for Part B to contain any terms other than those expressed in the Part B plan document.  Although Plaintiffs argue that the Plan can be reformed based on communications by the Plan Administrator, such fiduciary communications (e.g., the SPD, SMM, and 204(h) Notice) are not evidence of the Plan *sponsor's* intent – even where the same entity serves both roles.  *Amara* 131 S. Ct. at 1877 ("And we have no reason to believe that the statute intends to mix the responsibilities by giving the administrator the power to set plan terms indirectly by including them in the summary plan descriptions."); *id.* ("Nor do we find it easy to square the Solicitor General's reading with the statute's division of authority between a plan's sponsor and the plan's administrator.").  Thus, those fiduciary communications cannot form the basis of a "contract" between the plan sponsor and plan participants, such that the Plan could be reformed to reflect that "contract."[14]

Importantly, reformation is not merely a remedy available to compensate a plaintiff for a defendant's "inequitable" conduct, or even fraud.  Instead, reformation only is available to conform the terms of a written document to the *actual agreement* between the parties.

---

[14]    None of the reformation cases cited by the Secretary (at pp. 16-17) are analogous to the facts here.  Instead, these cases involve indisputable contractual agreements between the parties not reflected in the later writing.  *See, e.g., Tokio Marine & Fire Ins. Co. v. Nat'l Union Fire Ins. Co*, 91 F.2d 964, 965-66 (2d Cir. 1937) (holding that reformation was proper where two insurance companies reached agreement on a policy of reinsurance as reflected in their correspondence and binder, but then an agent for one of the companies changed one of the terms when it formalized the original agreement); *Columbian Nat'l Life Ins. Co. v. Black*, 35 F.2d 571, 574 (10th Cir. 1929) (reformation proper where agreement was reached by the parties, but error by printer did not reflect those terms and instead provided for a significantly higher payment); *Delgrosso v. Spang & Co.*, 769 F.2d 928, 938 (3d Cir. 1985) (holding that reformation was proper where parties agreed via collective bargaining agreement that surplus monies from the pension plan would not revert to the employer, but the administrator then added a reversion clause to the plan in direct contradiction of the agreement).

In this case, therefore, Plaintiffs must prove that the precise reformation they seek –
eliminating the Plan's opening account balance provisions and minimum benefit provisions,
unwinding class members' account balances, and requiring the Plan to pay A+B instead – are all
what was actually intended, and what class members mistakenly thought they were entitled to
under the Plan.  Plaintiffs have not met their burden, and cannot do so.

Even if Plaintiffs could demonstrate by clear and convincing evidence a meeting of the
minds on Plan terms for Part B between the plan sponsor and participants that were not reflected
in the actual Part B plan document, this would not suffice for contract reformation.  A plaintiff
seeking contract reformation must *also* demonstrate that the reason the contract as written does
not memorialize the actual terms of the parties' agreement is because of either mutual mistake or
unilateral mistake coupled with fraud in the writing of the contract.  *See, e.g., Healy v. Rich
Prods. Corp.*, 981 F.2d 68, 73 (2d Cir. 1992) (reformation is permitted upon mutual mistake,
where both parties share the same erroneous belief that is not reflected in the written instrument);
2 Dann B. Dobbs, *Law of Remedies*, § 9.5, p. 618 (2d ed. 1993) (contract reformation is available
when the instrument does not reflect the parties' agreement based upon either mutual mistake or
unilateral mistake and fraud); *AMEX Assurance Co. v. Caripides*, 316 F.3d 154, 161 (2d Cir.
2003) (holding that there could be no mutual mistake for a non-negotiated flight insurance policy
because the insurer drafted the policy and knew what it provided).  Plaintiffs cannot prevail
under either theory.

**(b)        There Is No Evidence of Unilateral Mistake and Fraud.**

To prove reformation of a contract (which does not apply here for the reasons explained
above) under a theory of unilateral mistake and fraud, a plaintiff must prove by clear and
convincing evidence that the parties reached agreement on the terms of an enforceable contract,
that one party actually made a mistake based on a belief the written contract reflected the parties'

agreement, but that the other party engaged in fraud/inequitable conduct by deliberately transcribing the contract in a way that does not reflect the parties' prior agreement. *See, e.g., Ansam Assocs., Inc. v. Cola Petroleum, Ltd.,* 760 F.2d 442, 447 (2d Cir. 1985) (affirming denial of reformation and noting that plaintiff could prove neither mutual mistake nor unilateral mistake, coupled with fraud); *Global Intellicom, Inc. v. Thomson Kernaghan & Co.,* 99-0342, 1999 U.S. Dist. LEXIS 11378, at *57-58 (S.D.N.Y. July 27, 1999) ("Although unilateral mistake alone is insufficient to support a reformation claim, reformation may be appropriate in a case of fraud, [where] the parties have reached an agreement and, unknown to one party but known to the other (who has misled the first), the subsequent writing does not properly express the agreement.") (internal quotations and citation omitted).[15]

In this case, as explained above, because there was no prior agreement and the terms of the CIGNA Plan as intended by the settlor were accurately set forth in the Plan document, there also was no enforceable contract between the *plan sponsor* and Plaintiffs (or the Plan and Plaintiffs) to provide Plaintiffs with benefits other than those set forth in the Part B plan document. *See supra* at 25, 28.

Moreover, Plaintiffs have no evidence of mistake sufficient to justify reformation of the Plan to provide the A+B remedy Plaintiffs request. As the Secretary of Labor explains in its *amicus* brief, "mistake" means:

> an erroneous mental condition, conception, or conviction, induced by ignorance, misapprehension, or misunderstanding of the truth, but without negligence, and resulting in some act or omission done or suffered erroneously by one or both the

---

[15]   The only difference between fraud and inequitable conduct is that the change by the transcribing party originally may be made without an intent to deceive; the party seeking reformation still must prove unilateral mistake in that it signed the final written agreement in reliance on a promise by the transcribing party of conformity with the prior agreement. *Tokio Marine & Fire Ins. Co.*, 91 F.2d at 966-67.

parties to a transaction, but without its erroneous character being intended or known at the time.

(Secretary of Labor Amicus Brief, at 16) (quoting 3 John N Pomeroy, *A Treatise on Equity Jurisprudence* § 839 at 284-85 (5th ed. 1941)).  Here, there is no testimony by ***anyone*** claiming that they believed the Plan entitled them to A+B, i.e., that Part A benefits would be provided as an annuity under Part A and separate cash balance benefits provided under Part B.  To the contrary, every Plaintiff and testifying class member understood that their Part A benefit was converted into an open account balance, and they were told precisely (1) the amount of their personal opening balance and (2) how that amount was calculated.  *See Amara*, 535 F. Supp. 2d at 352 (finding that each plaintiff received an opening account balance statement and periodic total compensation statements); *see also, e.g.*, Ex. 85 (p. 15 (P1801)).  As such, there is no evidence of "an erroneous mental condition, conception, or conviction" by any Plaintiff or class member that would warrant reformation of the Plan to provide A+B, as Plaintiffs seek.[16]

Therefore, because the opening account balance that each participant received was consistent with the actual terms of Part B and the personalized communications each class member received, there is no basis for reformation of Part B to provide A+B or otherwise increase any class members' account balances.[17]

---

[16]  As the Secretary of Labor's brief makes clear, "mistake" is an individualized inquiry because it depends on whether each class member had an "erroneous mental condition, conception, or conviction" and whether that mental condition "*result[ed] in* some act or omission done" by the class member. (Secretary of Labor Amicus Brief, at 16) (emphasis added).

[17]  Nor would it be appropriate to reform the Plan to increase the size of each class members' account balance; a remedy that Plaintiffs do not even seek.  The 1997 newsletter told participants they would receive a Total Compensation Statement indicating their lump sum opening account balance and how it was calculated.  Each participant received this opening account balance statement in May 1998 – several months before the SPD was issued (November 1998), and before the Part B amendment (December 1998).  *See* Ex. 516 (November, 1997 Signature Benefits Newsletter at 5

**(c)     There Was No Scriveners' Error by CIGNA That Could Support a Finding of Mutual Mistake.**

The closest thing to mutual mistake that can occur with an un-negotiated ERISA plan not subject to collective bargaining is that there is "a drafting error by an ERISA plan drafter" such that the written terms do not reflect the sponsor's intent and "the employees were 'on notice' of the plan sponsor's actual intent."  *Young v. Verizon's Bell Atl. Cash Balance Plan*, 667 F. Supp. 2d 850, 897 (N.D. Ill. 2009), *aff'd*, 615 F.3d 808, 819 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 2924 (2011); *see also Int'l Union v. Murata Erie N. Am., Inc.,* 980 F.2d 889, 907 (3d Cir. 1992) (instructing the district court to apply equitable reformation under Section 502(a)(3) claim if it found scrivener's error because to do otherwise would produce "what is admittedly a 'windfall'" that the plaintiffs could not have reasonably expected); *Wilson v. Moog Auto., Inc. Pension Plan*, 193 F.3d 1004, 1008-10 (8th Cir. 1999) (holding that equitable reformation could remedy ERISA plan's failure to provide a minimum age for retirement benefits because extrinsic evidence showed that none of the plaintiffs actually believed that they would be eligible for early retirement).  In contrast, there can be no mutual mistake here since there is no allegation or evidence that CIGNA as plan sponsor intended to provide an A+B benefit, but made a drafting error in failing to write that in the Plan.  *See Cinelli*, 61 F.3d at 1444-45 (rejecting employee's claim that the absence of a plan provision entitling him to vested life insurance benefits was a mistake warranting reformation because the plan terms were clear).

Plaintiffs' counsel try to seize on *Young* to argue that they need not prove reliance (this is true only in the context of reformation based on *scrivener's error*, which is not at issue here) and

---

(D00622) ("You will be informed of your . . . Retirement Plan opening balance in your Total Compensation Report, scheduled to be mailed in May 1998"); Ex. 85 (Curlee Total Compensation Report from May 1998 explaining calculation of opening account balance on p. 15 (P1801)).  In addition, class members received annual account statements telling them precisely their account balance each year.  *See, e.g.,* Exs. 597, 616.

that a contract can be reformed solely based on a plan participants' reasonable expectations about their benefits. (Pls' Br. at 37, 39).[18]  That is nonsensical.  In *Young*, the plan was reformed to reflect *the plan sponsor's intent* because the actual plan document contained a drafting error (i.e., a particular phrase that was copied twice into the plan document instead of just once) that was proven by clear and convincing evidence.  Here, there is no evidence of a drafting error, or that the Part B plan document does not otherwise accurately reflect what the sponsor intended. Accordingly, contract reformation would not be appropriate here under a theory of mutual mistake.[19]

---

[18]  Plaintiffs also cite to Dobbs at § 11.6(1) p. 744.  Although Dobbs does mention the "reasonable expectation" doctrine in the insurance context when explaining the ways a discrepancy between the oral and written agreement can arise, this does not actually stand for the proposition that a contract can be reformed solely on the expectations of a single party without a prior agreement.  Rather, Dobbs cites to a law review article that discusses the "reasonable expectation" doctrine solely in the insurance context as a means of examining the special nature of insurance policies as contracts of adhesion, and collecting cases where the insurance company *created an agreement* with the insured by having the insured fill out the application and paying policy premiums, and then either denied coverage or created a policy document that did not reflect the agreement.  *See* Roger Henderson, *The Doctrine of Reasonable Expectation in Insurance Law After Two Decades*, 51 Ohio St. L. J. 823, 840-41, 848 n.123 (1990) (noting that a number of courts held that a temporary contract of insurance came into existence if the application was accompanied by an initial payment of premium, and also noting that where there were agreed upon but omitted terms, this would be covered by the doctrine of reformation as indicating either mutual mistake, or unilateral mistake and fraud).

[19]  Plaintiffs also claim that reformation is permitted to conform a contract to legal standards without any showing of mutual mistake or fraud.  (Pls' Br. at 37-38).  But the Plan itself already satisfies ERISA's legal standards, so no reformation is necessary to make it conform to those requirements.  In any event, none of the cases cited by Plaintiffs support this proposition.  *Shaver v. Siemens Corp.*, No. 02-1424, 2008 WL 859251, at *2 (W.D. Pa. Mar. 28, 2008) is an injunction case, not a reformation case, enjoining the illegal plan amendment that violated a provision of the subchapter by reducing the plaintiffs' already accrued pension benefits in violation of the Section 204(g)'s anti-cut back rule. The other cases cited by Plaintiffs are not cases involving equitable remedies at all, but rather cases granting benefits based on the SPD under ERISA Section 502(a)(1)(B).  *See Burstein v. Ret. Account Plan for Emps. of Allegheny Health Educ. & Res. Found.*, 334 F.3d 365, 379 (3d Cir. 2003); *Washington v. Murphy Oil Corp.*, 497 F.3d 453, 459 (5th Cir. 2007). It is unclear whether these cases remain good law after the Supreme Court's *Amara*

**D.      Plaintiffs Have Rejected Equitable Estoppel as a Remedy.**

Although equitable estoppel might have been an appropriate claim and remedy for Plaintiffs to seek in this case, they have repeatedly chosen not to do so. (Pls' Br. at 42).  This is consistent with Plaintiffs' approach throughout the litigation.[20]  As this Court recognized, no equitable estoppel claim was *ever* raised by Plaintiffs:

- Joseph Costello: "There are no general breach of fiduciary duty disclosure claims, which have different elements, your Honor.  Detrimental reliance has to be proven."  Trial Tr. 627-628, Sept. 13, 2006.  The Court: "I agree with you, there's no promissory estoppel claim here, misrepresentation, that would have all sorts of other problems."  *Id.* at 630.  "[B]ut it doesn't matter because there's no promissory estoppel claim here."  *Id.* at 632.

- The Court: "As Mr. Costello points out, we don't have a promissory estoppel or misrepresentation claim here; we just have an SPD claim, or a disclosure claim . . . ."  Trial Tr. 928.

Plaintiffs' decision not to seek equitable estoppel is not surprising:  such a remedy would not be available on a class-wide basis, but only would be available based on individualized showings of detrimental reliance and individualized circumstances.  *Lee*, 991 F.2d at 1009 (an ERISA equitable estoppel requires proof of the following elements:  (1) material misrepresentation; (2) reliance; and (3) damage, plus extraordinary circumstances).  While facts were introduced at trial relating to misrepresentations, no evidence was entered into the record showing reliance, damages and extraordinary circumstances for any – let alone every – Plaintiff and class member, as discussed further *infra*.

---

decision, but in any event they are irrelevant since the Supreme Court held no relief is available here under Section 502(a)(1)(B). *See also* Dobbs §4.3(7) (noting that  reforming a contract to meet minimum legal standards is a non-traditional form of reformation, controversial and not "fundamentally restitutionary" – i.e., not equitable).

[20]      "Plaintiffs also did not identify an estoppel remedy in their "Additional Submission on Relief."  They therefore waived that remedy as well.  *See supra* at 14-15.

Accordingly, even if Plaintiffs were to change their position and now seek equitable estoppel – which they should not be permitted to do – it is not possible to award equitable estoppel on a class-wide basis, nor to immediately award it to any Plaintiff based on the evidence currently before the Court.

## II.   Even If the Remedies Sought by Plaintiffs Were Appropriate Here, No Remedy Can Be Awarded on a Class-wide Basis, and Decertification Would Therefore Be Required.

As discussed above, none of the surcharge, reformation or injunctive relief remedies proposed by Plaintiffs is available under these circumstances, and Plaintiffs have disclaimed any equitable estoppel remedy.  Even if Plaintiffs were seeking some form of equitable relief to which they were possibly entitled, however, they would not be entitled to such relief on a class-wide basis based on the evidence in the record and this Court's previously entered findings of fact.  Rather, because the Supreme Court rejected the "likely harm" standard on which all class-wide relief was premised, the Court should decertify the class with respect to any issues of (1) actual harm and causation (for a surcharge remedy), (2) unilateral or mutual mistake (for a reformation remedy), and (3) detrimental reliance (for an equitable estoppel remedy).

Indeed, both this Court's own statement that it would "revisit class certification" should individual showings of harm be necessary, *Amara,* 2002 U.S. Dist. LEXIS 25947, at *9 n. 4, and the terms of Rule 23(c)(1) dictate that the Court determine whether there are remedies for the misrepresentations and omissions at issue available under ERISA Section 502(a)(3) that are properly subject to class treatment.  *See e.g., In re Unisys Corp. Retiree Med. Benefits Litig.,* No. 969, 2003 WL 252106, at *5 (E.D. Pa. Feb. 4, 2003) (decertifying ERISA Section 502(a)(3) class action seeking remedy for breach of fiduciary duty based on misrepresentations because, *inter alia*, detrimental reliance could not be proven on a class-wide basis and separate "'hearings will be necessary to determine the extent of the reliance by and resulting harm to the [individual]

retirees.'") (citation omitted); *Brown v. Kelly*, 609 F.3d 467, 486 (2d Cir. 2010) (noting that in order "to manage the individualized inquiries that [an] action may require" a district court can "decertify[] the class with respect to claims where individualized inquiries become too burdensome, and hold[] separate trials for plaintiffs subject to individual defenses."); *cf. also Amara*, 559 F. Supp. 2d at 196 (noting that the court first had to determine "which issues are appropriate for class treatment and which should be considered individual issues").[21]

Thus, for example, the Second Circuit, in *Dobson v. Hartford Fin. Servs. Group*, 342 F. App'x 706, 709 (2d Cir. 2009), affirmed the denial of certification of a proposed class of individuals who brought ERISA 502(a)(1)(B) and 502(a)(3) claims because certification would have forced a district court or special master "to conduct as many as 24,000 mini-trials," and "[s]uch an inquiry is ill-suited for disposition via a class action because there is insufficient commonality." 342 F. App'x at 709.

Here, for the reasons discussed below, if this class is not decertified, the Court similarly will have to commence individual discovery and hold hearings for every single class member regarding mistake, actual harm, causation and/or detrimental reliance.  *See Amara*, 131 S. Ct. at 1881-82 (discussing these elements as necessary to prove reformation, surcharge and equitable estoppel).  *See also Wal-Mart*, 131 S. Ct. at 2561 (noting that "'a district court must usually

---

[21]     *See also Abrams v. Interco Inc.*, 719 F.2d 23, 31 (2d Cir. 1983) (affirming denial of certification and explaining that "evidence establishing damages usually varies from class member to class member" and "individual trials on damages may be fatal [to a class action] if the class numbers in the thousands"); *Dodge v. County of Orange*, 226 F.R.D. 177, 181, 186 (S.D.N.Y. 2005) (limiting certification "to the issue of liability only" and explaining that the "issue of damages, if it cannot be settled, will be litigated . . . on a case-by-case basis."); *Maneely v. City of Newburgh*, 208 F.R.D. 69, 79 (S.D.N.Y. 2002) (holding that "[i]f the class prevails on these [liability] issue, then individual plaintiffs can come forward to litigate, in individual suits, the issue of whether . . . they suffered damages.").

conduct additional proceedings . . . to determine the scope of individual relief.'") (citation

omitted).[22]

A.   **The Individualized Determinations Required to Award Any Available Equitable Relief Under ERISA Section 502(a)(3) Mean That This Action No Longer Meets the Requirements of Rule 23(a) or (b)(2).**

This Court previously held that the class met Rule 23(a)'s requirements of commonality

and typicality because there were common questions about whether CIGNA's pension plan

violated ERISA and whether CIGNA's SPD was misleading.  *Amara*, 2002 U.S. Dist. LEXIS

25947, at *8.  Based on the Supreme Court's decision in this case, however, the elements of

commonality and typicality are no longer met, and class-wide relief under Rule 23(b)(2) is no

longer available.

---

[22]   In their brief, Plaintiffs correctly note that such individualized determinations are unworkable on a class-wide basis (Pls' Br. at 51, 55).  But instead of conceding that the class should be decertified, they ask this Court to excuse them from meeting the legal elements of their claim.  That is precisely the reasoning adopted by the Ninth Circuit which the Supreme Court rejected in *Wal-Mart.* 131 S. Ct. at 2552 (holding that a court cannot excuse plaintiffs from the requisite factual showing to support certification just because it overlaps with the merits).  Nor can Plaintiffs abandon evidence that would help certain class members in an effort to keep the class certified.  *Wal-Mart*, 131 S. Ct. at 2559 (holding that plaintiffs' decision to exclude claims for compensatory damages did not make the claims for injunctive relief predominate, and if the court were to find otherwise, it would create the possibility that "individual class members' compensatory-damages claims would be precluded by litigation they had no power to hold themselves apart from").  *See also Nafar v. Hollywood Tanning Sys., Inc.*, 339 F. App'x 216, 224 (3d Cir. 2009) (vacating district court's order to certify a class and remanding for a determination as to whether the proposed class representative's abandonment of her personal injury claims would prejudice putative class members who might want to pursue such claims); *Pearl v. Allied Corp.*, 102 F.R.D. 921, 923 (E.D. Pa. 1984) ("In addition, it appears that the plaintiffs' efforts to certify a class by abandoning some of the claims of their fellow class members have rendered them inadequate class representatives.").  Conversely, just as plaintiffs cannot abandon relief that would benefit certain class members in order to obtain certification, nor can they impose a remedy on the entire class that makes certain class members worse off, as is the case here for those class members who did not experience wear-away and would be better off remaining with Part B benefits, rather than A+B.  *See Amara*, 559 F. Supp. 2d at 213 (finding that "not all class members experienced wear away").

In *Wal-Mart*, the Supreme Court recognized that the ability to articulate a common question, such as whether class members are entitled to equitable estoppel, surcharge or reformation, is not sufficient for commonality under Rule 23(a), which is only present if the *answer* to that question is the same class-wide. *Wal-Mart*, 131 S. Ct. at 2551 (noting that any competently crafted class complaint literally raises common questions, but instead the answer must be capable of class-wide resolution); *see also Fotta v. Trustees of the UMWA*, 319 F.3d 612, 619 (3d Cir. 2003) (affirming denial of certification of claims under ERISA Section 502(a)(3) in part because the equitable remedy at issue was "dependent upon the individual facts of each claim" such that no common issues of law or fact existed). Because (1) this Court has already resolved what it identified as the common issues (i.e., whether the SPD was misleading and whether a violation of ERISA occurred), (2) the Supreme Court has held that class-wide benefits cannot be awarded under ERISA Section 502(a)(1)(B), *Amara*, 131 S. Ct. at 1877-78, and (3) no class-wide common proof is available as to all of the elements necessary to impose equitable estoppel, surcharge or reformation under ERISA Section 502(a)(3), the class no longer meets the requirements of Rule 23(a) or Rule 23(b)(2). *See, e.g., Dobson v. Hartford Life & Acc. Ins. Co.*, 99-2256, 2006 U.S. Dist. LEXIS 14922, at *29-30 (D. Conn. Mar. 31, 2006) (denying Rule 23(b)(2) certification in an ERISA 502(a)(1)(B) and 502(a)(3) case because although plaintiffs requested a declaration that the delay at issue was presumptively unreasonable as to the entire class, individualized determinations would still need to be made on whether defendant could rebut the presumption for each class member), *aff'd*, 342 F. App'x 706 (2d Cir. 2009).

Plaintiffs' counsel attempt to avoid this inevitable conclusion by suggesting that individualized proof of harm is *not* required for injunctive relief, reformation or surcharge (Pls' Br. at 26) (citing 131 S. Ct. at 1879, 1881). In fact, the Supreme Court did not suggest that any

of the equitable harms at issue could be decided on a class-wide basis, but instead said that the specific type of evidence required, whether mistake, detrimental reliance, actual harm and causation etc., depended on the particular remedy sought.[23]  *Amara*, 131 S. Ct. at 1881 (explaining that ERISA does not set for any standard for determining harm and therefore "any requirement of harm must come from the law of equity.").

### 1.  Surcharge Requires an Individualized Showing of Causation and Actual Harm, Precluding Certification.

Even if personal losses (as opposed to losses to a trust) could justify an award of surcharge, Plaintiffs still must prove actual harm and causation, i.e., economic harm that was caused by the fiduciary's misrepresentation(s) for each individual.  *See Amara*, 131 S. Ct. 1881 (surcharge requires that actual harm and causation be proven by preponderance of evidence); *cf. UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131-136 (2d Cir. 2010) (denying certification because causation and harm are not subject to class-wide proof), *cert. denied*, 131 S. Ct. 3062 (2011).

For example, in *Wilkins v. Mason Tenders District Council Pension Fund*, 445 F.3d 572, 585 (2d Cir. 2006), the Second Circuit recognized that a showing of harm (in that case, prejudice) required further development of the factual record.  There, the omission in the SPD at

---

[23]   The parties did not brief, and the Supreme Court did not address, whether Plaintiffs' claims could proceed on a class-wide basis, aside from the specific requirement that detrimental reliance for a estoppel claim was an individualized inquiry inappropriate for class certification.  *Amara*, 131 S. Ct. at 1881 ("[W]hen a court exercises authority under § 502(a)(3) to impose a remedy equivalent to estoppel, a showing of detrimental reliance must be made."); *id.* at 1885 (Scalia, J.) (concurring) (noting that under an equitable estoppel theory "questions of reliance would be individualized and potentially inappropriate for class-action treatment").  Indeed, the parties did not brief the availability of a "surcharge" or reformation remedy at all, because Plaintiffs never sought that remedy until now.  *Amara*, 131 S. Ct. at 1883-84 (Scalia, J.) (concurring) (noting "there is no discussion whatsoever of contract reformation or surcharge in the briefs of the parties or even *amici*").

issue involved the need to preserve pay records, which were lost over the years or destroyed in a fire. *Id.* at 585. The Second Circuit held that the plaintiff had to:

> proffer sufficient evidence that, had the SPD given him adequate notice of his burden of proof, he would have taken effective measures either to safeguard these records against such perils, or to obtain and safeguard other competent evidence of covered employment. He must also show that the records or evidence that would have been preserved would be adequate to prove his entitlement to additional benefits . . . . In other words, Wilkins must show, as a threshold matter, either (a) that he was in possession of his pay stubs until 1974 -- if the fire and loss of records occurred in 1970, for instance, their destruction would not qualify as harm caused by the defective SPD -- or (b) that in 1974, he would still have been able to obtain competent evidence of his prior covered employment that later became unavailable.

*Id.* (footnote omitted).[24] Similarly in *Frommert*, the Second Circuit rejected an actual harm requirement in favor of "likely prejudice," recognizing that an actual harm requirement would require plan participants to prove, for example, that they would have altered their retirement investment strategies or terminated their employment had they received sufficient disclosures about their benefits. *Frommert v. Conkright*, 433 F.3d 254, 266-67 (2d Cir. 2006).

Thus, to award surcharge a court must make a specific factual finding on the issue of both causation and actual harm from the misrepresentation for each individual. *Cf.* Brief of the Secretary of Labor, as Amicus Curiae in Support of Reversal in *Kenseth v. Dean Health Plans, Inc.*, No. 11-1560, EFC No. 18 at 16 & n.6 (7th Cir. June 13, 2011) (where district court granted summary judgment to defendant on ERISA breach of fiduciary duty claims based on lack of causation and damages – arguing that there was evidence supporting causation and if the Circuit Court believed there was also evidence that could suggest plaintiff would have undergone the

---

[24]   This Court previously recognized that *Wilkins* could be read as imposing an actual harm requirement, instead of the likely prejudice requirement that then existed in the Second Circuit. *Amara*, 534 F. Supp. 2d at 353, n. 44. Now that the Supreme Court has rejected the likely harm standard, *Wilkins* provides a clear example of the type of actual harm and causation that must be shown.

same surgery and incurred the same liability absent the misrepresentation, it should remand for trial to resolve that factual issue).

Here, for example, Plaintiffs cannot claim an A+B remedy in surcharge based solely on the fact that they were not provided with disclosures required by ERISA, because such a remedy would bear no relationship to the harm suffered, i.e., there is no causation.  If the harm is the failure to receive a required disclosure, then the remedy should be an order to provide that disclosure.  But if Plaintiffs want economic damages in surcharge, they must prove, by a preponderance of the evidence, (1) the economic harm suffered and (2) that that harm was caused by the inadequate disclosures.[25]  That is an individualized inquiry that cannot be decided on a class-wide basis.  *See Wal-Mart*, 131 S. Ct. at 2557 (explaining that claims for individualized relief do not satisfy the Rule 23(b)(2) requirement for class actions); *In re: Unisys,* 2003 WL 252106, at *5 (inquiries into harm on ERISA breach of fiduciary duty claim were individualized and so presented issues that precluded litigation as a class); *Wilkins*, 445 F.3d at 585; *Frommert*, 433 F.3d at 266-67.

> **(a)      Plaintiffs Are Not Entitled to a "Presumption" of Harm and Causation.**

Plaintiffs' counsel offer several arguments in their attempt to evade the need to prove actual harm and causation to obtain a surcharge remedy.  First, Plaintiffs argue that actual harm and causation can be proven based only on the existence of the misrepresentation or the failure to

---

[25]      For the reasons explained *supra* at 20-21, Plaintiffs are not entitled to A+B under the terms of the Plan, and the disclosure violations found by the district court did not cause Plaintiffs to lose any entitlement to A+B.  In other words, even had CIGNA's disclosures been sufficient, no Plaintiff would have received an A+B benefit.  Thus, there is no basis for surcharging CIGNA to pay A+B.

receive an adequate disclosure, without any need for individualized inquiry.  (Pls' Br. 49).[26]  A

misrepresentation itself is not a harm sufficient to warrant surcharge, because this would render

the separate harm and causation requirements meaningless, and allow fiduciaries to be

surcharged for "a nonexistent harm," in contravention of the Supreme Court's instruction.  *See*

*Amara*, 131 S. Ct. at 1881; *cf. also Small v. Lorillard Tobacco Co.*, 720 N.E. 2d 892 (N.Y. 1999)

(holding that plaintiffs' argument that they were injured because they did not make a free and

informed decision to not purchase cigarettes, was legally equivalent to claiming deception itself

as injury and this did not amount to an actual injury, as required under the applicable statute).

Plaintiffs' argument is further undermined when one considers the specific remedy they

request:  an award of A+B.  Without proof that the inadequate disclosures caused Plaintiffs harm

in the amount of A+B, there is no basis in equity for awarding this amount in surcharge, see

*supra* at 20-21, and such a remedy therefore is not available under ERISA Section 502(a)(3).

Plaintiffs also cite to securities law and Federal Trade Commission Act cases to justify a

presumption of harm.  (Pls' Br. at 52, 58).[27]  Securities fraud claims brought under 10b-5 involve

losses that occur when a person buys or sells stock at a price that, as a result of the defendant's

---

[26]     Plaintiffs' counsel base their conclusion that no individualized harm showing is necessary
for surcharge on the Supreme Court's example of employees who may be entitled to
surcharge despite not having seen the SPD because he or she "may have thought fellow
employees, or informal workplace discussions, would have let them know if . . . plan
changes would likely prove harmful."  *Amara*, 131 S. Ct. at 1881.  The Supreme Court
used this example to show that unlike detrimental reliance, where Plaintiffs must each
prove that they actually read the misrepresentations at issue and relied upon them, it was
possible for individual employees to prove actual harm without having read the
disclosures if they testify that they learned of the misleading information through other
sources, or would have learned the information through other sources had the disclosures
been accurate.  But any class member still must testify about these facts – such that they
were misled – and that the misleading communications caused them actual harm.

[27]     Plaintiffs' counsel rely on the same cases and make the same arguments that they should
be entitled to a presumption of detrimental reliance in the estoppel context rather than
having to prove it on an individualized basis (Pls' Br. at 42), and their arguments and
analogies are wrong for the same reasons.

misrepresentation, is higher or lower than the stock is worth.  A plaintiff must prove "the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury," but the courts accept the hypothesis that a well-developed market "transmits information to the investor in the processed form of a market price," and any changes in material information move the market price.  *Basic Inc. v. Levinson*, 485 U.S. 224, 243 (1988).  An investor therefore relies on public misstatements whenever he "buys or sells stock at the price set by the market" that incorporates the misrepresentation.  *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2185-86 (2011) (internal quotations omitted).  Similarly, in the Federal Trade Commission Act context, there is a presumption that a consumer intrinsically relies on a misleading advertisement, when he is willing to buy a product at a price that incorporates the misrepresentation.  *See FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 604 (9th Cir. 1993) (explaining that "it is dishonest to represent that rhinestone jewelry is actually diamond, *and to charge diamond prices for it*;" also noting that the "injury to consumers . . . is the amount consumers spent on the heat detectors *that would not have been spent absent Figgie's dishonest practices*") (emphasis added).

But Plaintiffs offer no evidence that similar presumptions were typically available in equity.  Moreover, the efficient market theory underpinning the securities law/FTC presumptions – regarding the prices of securities or retail goods in the marketplace – does not apply to the personal economic decisions individuals make about their jobs, pension benefits, etc. under ERISA.  Indeed, the Supreme Court rejected the likely prejudice/burden shifting analysis Plaintiffs previously advocated and specifically stated "a fiduciary can be surcharged under §

502(a)(3) only upon a showing of actual harm – proved (under the default rule for civil cases) by the preponderance of the evidence." *Amara*, 131 S. Ct. at 1881.[28]

Plaintiffs' counsel also try to borrow other concepts that have no application here to argue against the need for individualized proof of causation – such as noting that loss causation in the 10b-5 context can be proven "by expert, not individual testimony." Pls' Br. at 58. In a securities case, however, loss causation simply requires an analysis of the loss in value of a security (which can be measured using market prices) and an "event study"[29] to determine whether there is a statistically significant basis for believing that any particular day's stock price decline was caused by news about the company, as opposed to other market forces.

Here, there is no analogous "market-wide" quantifiable impact of these disclosures. None of the evidence Plaintiffs offered – including their experts – provides any basis for finding causation here, and there certainly are no findings of causation. Professor Stratman testified about the sufficiency of certain disclosures and (perhaps) materiality. And Mr. Poulin testified about how the Plan worked and the value of Plaintiffs' benefits under the Plan. But neither

---

[28]     Plaintiffs also cite *United States v. Wolfson*, 642 F.3d 293, 296 (2d Cir. 2011) and *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008) to justify their presumption argument. Plaintiffs cite *Wolfson* for the proposition that subjective individual testimony on harm is not required. (Pls' Br. at 52). In fact, the criminal jury instruction at issue in that case was not about harm or causation at all, but related to when the defendant would have a duty to disclose and what sorts of omissions were material. *Wolfson*, 642 F.3d at 296. Plaintiffs cite *Bridge* for the proposition that "everyone does not have to prove reliance for securities fraud, although 'someone' has to prove they were harmed." (Pls' Br. at 52). But the Supreme Court in *Bridge* merely recognized that detrimental reliance is not an element of the statutory RICO claim at issue in *Bridge*, 553 U.S. at 648. The *Bridge* court went onto say that harm must be proven, but that it was possible to prove harm without detrimental reliance. *Id.* at 659.

[29]     "An event study ... is a statistical regression analysis that examines the effect of an event [such as the release of information,] on a dependent variable, such as a corporation's stock price." *United States v. Schiff*, 602 F.3d 152, 173 n. 29 (3d Cir. 2010) (internal quotation marks and alteration omitted).

expert testified that inadequate disclosures *caused* a diminution in any class member's benefits, let alone one measured by A+B.

Plaintiffs then look to employment discrimination cases  – noting that whether the employer's act is harmful enough to constitute an actionable "adverse action" depends on an objective "reasonable employee" standard, and that the same type of objective standard should be applied here and foreclose the need for individualized inquiry on harm.  Pls' Brief at 53*, citing Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68-69 (2006).  Such cases, however, are looking to the reasonable person standard in assessing whether there was a violation of the statute, not the harm caused or the remedy ordered.

As the Supreme Court's recent opinion in *Wal-Mart* makes clear, the remedy in such a case – including the amount of back pay or front pay, and whether reinstatement should be ordered – is still individualized.  *Wal-Mart*, 131 S. Ct. at 2561 ("When the plaintiff seeks individual relief such as reinstatement or backpay after establishing a pattern or practice of discrimination, "a district court must usually conduct additional proceedings ... to determine the scope of individual relief").  *See also Sellers v. Mineta,* 358 F.3d 1058 (8th Cir. 2004) (holding that a Title VII plaintiff's post-termination conduct is relevant in determining whether front pay award is available as remedy for wrongful discharge, and if so, in determining extent of award and whether reinstatement is appropriate).

Likewise, here, whether an SPD (or other disclosure) violates ERISA's disclosure requirements is a class-wide issue that can be determined without reference to any individualized facts.  But whether an individual has suffered harm caused by a violation – and the amount of that harm – are individualized issues not appropriate for class-wide treatment.  *See supra* at 39.

45

**(b)      The Court Did Not Make Any Findings of Harm or Causation For Each Class Member, and the Evidence at Trial Was Insufficient to Demonstrate Such Harm and Causation.**

As in *Wilkins* and the other cases discussed above, in this case, there must be an individualized factual analysis of harm and causation to support imposition of a surcharge.  Each class member must prove that despite their knowledge of their Part B opening balance, and the growth of their Part B account, that they suffered some harm (i.e., economic loss) caused by inadequate disclosures that should be surcharged.[30]  This is *Plaintiffs'* evidentiary burden, and currently, there are no factual findings of economic harm for any of the Plaintiffs or class members.  This Court merely stated that Plaintiff Janice Amara demonstrated *likely* prejudice because she "*could* have negotiated for a higher salary, looked and talked to other employers, or stayed at her previous position" with a different employer had she known the information that this Court held should have been disclosed.  *Amara*, 534 F. Supp. 2d at 354 (internal quotations omitted, emphasis added) (citing Trial Tr. 45).   No factual finding has ever been made that Plaintiff Amara suffered actual harm, and that she *would* have done these things had she had the relevant information.[31]  And there is no finding that any other Plaintiff or class member would have done anything differently, such that the inadequate disclosures caused them any economic harm at all.

Indeed, there is substantial evidence that Plaintiffs were not harmed by any inadequate disclosures.  For example:

---

[30]    Even the Secretary of Labor concedes that only "economic injury" is recoverable in surcharge, and it is not available for a non-pecuniary harm.  *See* Secretary of Labor Amicus Brief at 22.

[31]    In any event, she already is receiving Part A benefits as a result of the Depenbrock case (Trial Tr. 44), which is more than the A+B remedy she seeks to have surcharged.

- Ms. Flannery continues to work for CIGNA today, despite admitting that she has known since 2001 that her pension was less than she expected.  Trial Tr. 916.

- Mr. Upton testified that he learned in 1999 that his pension benefit was going to be 29 percent lower under the new plan, Trial Tr. 657-58, but he made no effort to search for a job outside of CIGNA until six years later.  Trial Tr. 671.

- Mr. Law[32] testified that he read the cash balance plan pension statements and understood them and the calculations completely.  Law Dep. 29:19-31:6.  In fact, at one point he created an Excel spreadsheet that calculated the difference between the old plan and the new plan.  Law Dep. 70:19-75:2.  Despite this knowledge, he did not look for other employment. Law Dep. 52:1-10.  Nor did he ask for a raise or any other compensation, Law Dep. 45:8-46:7-8, or alter the amount he was contributing to his 401(k) account.  Law Dep. 46:12-13.

- Janice Amara admitted that she understood in 2000 the fact that her account balance in Part B was affected by wear-away, but she made no effort to find alternate employment until three years later, in 2003.  Trial Tr. 17, 34, 45.[33]

As for other allegations of harm arising from ignorance of the possibility of wear-away – such as failure to change an investment strategy or retirement planning, ask for a raise, and the like – factual determinations must be made for each individual that they would have done these things had they had the missing information, and some of the Plaintiffs' testimony precludes any such finding as to them:

- In 1999 Mr. Charette contacted the CIGNA benefits counselor because he thought his opening balance was too low, yet upon receiving a detailed explanation of Part B he did not in any way alter his retirement plans or seek other employment. Trial Tr. 856-59, 869-70.

- Ms. Hogan, although claiming that she would have increased her savings had she better understood her pension benefits, Trial Tr. 716, admitted that she made no

---

[32]   Mr. Law did not testify at trial.  He is a class member, and his testimony, however, demonstrates the individualized nature of the harm inquiry.  The Court can consider his testimony when considering whether this case should continue as a class action.

[33]   Since these Plaintiffs testified that they learned about wear-away within a few years of the Part B amendment, that also puts a durational limit on the harm they experienced, and may have affected the magnitude of the harm, which is another reason why harm must be assessed individually.

adjustments to her savings and even purchased a more expensive house after she learned that her benefits were less than she suspected. Trial Tr. 724. Similarly, although Ms. Hogan claimed that she would have asked for a raise, Trial Tr. 717, she acknowledged she never did so after she learned that her retirement benefits were lower under the cash balance plan. Trial Tr. 733-35.

- After creating an Excel spreadsheet that calculated the difference between the old plan and the new plan, Law Dep. 70:19-75:2, Mr. Law still did not ask for a raise or any other compensation, Law Dep. 45:8-46:7-8, or alter the amount he was contributing to his 401(k) account. Law Dep. 46:12-13.[34]

Nor can Plaintiffs succeed in their argument that their harm from inadequate disclosures was the failure to be able to organize and pressure CIGNA into changing the benefit plan back to Part A or something more favorable. (Pls' Br. at 51). There is no finding – or testimony – that CIGNA would have changed the plan design in response to employee complaints or organizing. *See, e.g. Pearson v. Voith Paper Rolls, Inc.*, -- F.3d --, 2011 WL 3773343, at *5 (7th Cir. Aug. 25, 2011) (affirming summary judgment on ERISA claim on the basis that harm from misrepresentation about pension benefits was entirely speculative because plaintiff's "claim that he lost an opportunity to bargain for [better benefits] is insufficient to demonstrate economic harm unless he can also show that he had any realistic chance of striking a better deal").

Accordingly, because only the issues of individualized harm and causation remain, and such findings must be made individually as to each class member, there are no common issues with respect to surcharge still to be resolved that would meet the commonality requirement of

---

[34]  In fact, at the time of the cash balance plan conversion, CIGNA Corporation's business included pension plan consulting and administration, and some CIGNA Corporation employees participated in the design of other cash balance plans or of Part B itself. Indeed, to the extent the Court found that CIGNA Corporation was "aware of the significant reduction in the rate of future benefit accrual" and "aware of the possibility of wear-away" prior to the Part B amendment, it could only have that awareness through its employees, many of whom are class members. Clearly, employees who participated in the design of Part B and had awareness of wear-away could not have experienced harm from failing to have the wear-away separately disclosed to them.

Rule 23(a), nor would such a surcharge remedy be incidental to any injunctive or declaratory relief under Rule 23(b)(2).[35]

### B.   Equitable Estoppel Requires an Individualized Showing of Detrimental Reliance, and Reformation Requires a Showing of Mistake, Neither of Which Can Be Resolved on a Class-Wide Basis.

As explained previously, an equitable estoppel remedy – had Plaintiffs not abandoned it years ago – would require an individualized showing of detrimental reliance.  *See, e.g., Amara*, 131 S. Ct. at 1881 ("[W]hen a court exercises authority under § 502(a)(3) to impose a remedy equivalent to estoppel, a showing of detrimental reliance must be made.").  *See also Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 112 (2d Cir. 2003) (explaining what a showing of detrimental reliance would require, and distinguishing the likely prejudice standard).[36]

---

[35]   Surcharge is not available under Rule (b)(2) as a supplement to other injunctive or declaratory relief because its individualized nature means that it is not incidental.  *Wal-Mart*, 131 S. Ct. at 2560 (noting that incidental damage available under Rule 23(b)(2) "'should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new substantial legal or factual issues, nor entail complex individualized determinations.'").

[36]   The cases cited by Plaintiffs do not allow them to avoid a showing of detrimental reliance.  For example, in *Eddy v. Colonial Life Ins. Co. of Am.*, the court considered an appeal following a full bench trial and determined that as a result of the defendant's failure to disclose material information, the plaintiff failed to take action necessary to continue his benefits coverage and postponed critical surgery. 919 F.2d 747, 748-49 (D.C. Cir. 1990).  Similarly, in *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, the actionable misrepresentations were made to the plaintiff (the wife), not to her deceased husband; the deceased husband's reliance was irrelevant to the facts of the case. 12 F.3d 1292, 1298 (3d Cir. 1993).  The other cases cited are similarly inapposite.  *See Morris v. Wachovia Secs., Inc.*, 448 F.3d 268 (4th Cir. 2006) (considering whether to impose Rule 11 sanctions on attorney who made inapplicable analogies to the presumption of reliance in Rule 10b-5 cases made possible by the fraud on the market theory); *Basile v. H&R Block, Inc.*, 729 A.2d 574, 584 (Pa. Super. Ct. 1999) (finding a showing of reliance unnecessary because the defendant was the plaintiffs' agent, a decision that the Pennsylvania Supreme Court overturned in 761 A.2d 1115 (Pa. 2000)); *Edmunds v. Valley Circle Estates*, 20 Cal. Rptr. 2d. 701 (Cal. App. Ct. 1993) (considering and rejecting constructive fraud based on statements made by the defendant to his partner where they were in a confidential relationship); *Thigpen v. Locke*, 363 S.W.2d 247, 252

This inquiry is necessarily individualized.  As Justice Scalia noted in his concurrence, "[q]uestions of reliance [are] individualized and potentially inappropriate for class-action treatment."  *Amara*, 131 S. Ct. at 1885 (2011) (Scalia, J.) (concurrence); *see also In re: Unisys*, 2003 WL 252106, at *5 ("proving detrimental reliance will involve factual disparities among the [class members] and thus present issues that preclude litigation as a class.")*; UFCW Local 1176*, 620 F.3d at 131-136 (reversing order granting certification because harm from reliance on misrepresentation was not subject to common class-wide proof); *In re: Initial Public Offerings Sec. Litig*., 471 F.3d 24, 42-43 (2d Cir. 2006) (holding that securities action was improperly certified because each individual would be required to prove reliance on the alleged misstatements, and individual questions would clearly predominate over common questions).[37]

Likewise, contract reformation requires proof of mistake, which, as the Secretary of Labor acknowledges, depends on a finding that each Plaintiff or class member had "an erroneous mental condition, conception, or conviction, induced by ignorance, misapprehension, or misunderstanding of the truth."  *See supra* at 30.  This not a reasonable person standard, and there is no presumption of mistake.  Rather, a class member cannot obtain reformation absent proof by clear and convincing evidence that he or she was mistaken about the terms of the Plan and erroneously believed that the Plan provided them an A+B benefit.  Moreover, each class member must prove that he or she had this mistaken belief before the actual Plan document was

---

(Tex. 1962) (involving a suit to set aside two deeds and impose a constructive trust that does not discuss reliance or a presumption of reliance).

[37]   For equitable estoppel, each participant must also make an individualized showing not only of detrimental reliance but also that the harm caused by their reliance was irrevocable.  The Second Circuit requires such a showing as part of the proof of extraordinary circumstances necessary to apply estoppel.  *See Giordano v. Coca-Cola Enters., Inc.*, No. 08-0391, 2011 WL 839507, at *7 (E.D.N.Y. Mar. 7, 2011); *Fershtadt v. Verizon Commc'ns, Inc*., No. 07-6963, 2010 WL 571818, at *14 (S.D.N.Y. Feb. 9, 2010); *Lee*, 991 F.2d at 1009.

adopted, such that the written Plan document did not reflect their pension "agreement." *See, e.g.,*

*Global Intellicom, Inc.*, 1999 U.S. Dist. LEXIS 11378, at *58-59 (denying contract reformation

because there was no evidence of unilateral mistake by the moving party, i.e., that the terms of

the subsequent writing were not in accord with the original agreement as the moving party

understood it).  Thus, Plaintiffs cannot maintain their Rule 23(b)(2) certification based on a claim

of equitable estoppel or reformation premised on fraud and unilateral mistake.

## C.    Individualized Issues Also Prevent Class Certification Under Rule 23(b)(1) or (b)(3).

Plaintiffs also suggest that even if certification under Rule 23(b)(2) is no longer proper,

the class could still be certified under Rule 23(b)(1) or (b)(3).  (Pls' Br. at 92).  Plaintiffs offer no

evidence or argument to justify such a class motion, and simply make the request in two

sentences at the end of a 92 page brief.

Plaintiffs' assertion is wrong.  A class can be certified under Rule 23(b)(3) only if "the

court finds that the questions of law or fact common to class members *predominate* over any

questions affecting only individuals members, and that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.

23(b)(3) (emphasis added).  Here, questions of detrimental reliance, unilateral mistake, and

actual harm and causation cannot be resolved by common proof; rather, they require

individualized determinations.  Nor have Plaintiffs offered any basis for concluding that a class

action is a superior method for adjudicating Plaintiffs' entitlement to any requested remedies.

Thus, certification is unavailable under Rule 23(b)(3).  *See UFCW Local 1176*, 620 F.3d at 131-

136 (holding that class certification was an abuse of discretion because while the existence of a

violation (through misrepresentation) is a question common to all class members, the elements

required to recover damages – i.e., injury and causation, were not capable of resolution through

common proof); *In re Initial Public Offering Sec. Litig.*, 471 F.3d at 42 (vacating class certification order for lack of predominance under (b)(3) because establishing reliance on misrepresentation individually by members of the class would defeat the requirement that common questions of law or fact predominate over questions affecting only individual members); *In re Unisys Corp*, 2003 WL 252106, at *7 n. 16 (stating that plaintiffs would not satisfy the Rule 23(b)(3)'s predominance requirement on the ERISA breach of fiduciary duty claims for the same reasons that decertification was proper under Rule 23(b)(2)).

Likewise, this action cannot proceed under Rule 23(b)(1), which allows a class to be maintained only where prosecuting separate actions by or against individual class members would create a risk of either "(A) inconsistent or varying adjudications . . . that would establish incompatible standards of conduct for the party opposing the class," or "(B) adjudications . . . that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impeded their ability to protect their interests."  Here, there is no risk of inconsistent or varying adjudications for individual class members that would establish incompatible standards of conduct for CIGNA.  Whether any particular Plaintiff or class member is entitled to relief depends on that individual's circumstances, i.e., mistake, actual harm and causation, detrimental reliance.  Thus, Rule 23(b)(1) certification is not appropriate.  *See, e.g., Hartford Life & Acc. Ins. Co.*, 2006 U.S. Dist. LEXIS 14922, at *23 (denying Rule 23(b)(1) certification because declaratory relief on the issue of whether the defendant's actions were presumptively unreasonable would not dispose of class

claims since defendant still would have the opportunity to justify its actions in each individual case).[38]

## **CONCLUSION**

For all the reasons discussed herein, Defendants CIGNA Corporation and CIGNA Pension Plan respectfully request that this Court deny Plaintiffs' motion for relief against them and enter judgment in favor of the Plan and in favor of CIGNA.  Should this Court nevertheless determine that some form of equitable relief is available, Defendants request that this Court decertify this action and proceed with individualized hearings on the claims of the named Plaintiffs only.

Respectfully submitted,

s/ Christopher A. Parlo

**MORGAN, LEWIS & BOCKIUS LLP**
Joseph J. Costello
Christopher A. Parlo
Jeremy P. Blumenfeld
1701 Market Street
Philadelphia, Pennsylvania  19103-2921
(215) 963-5295/5258
(215) 963-5001 (fax)

*Attorneys for Defendants CIGNA Corporation and CIGNA Pension Plan*

---

[38]    Moreover, Rule 23(b)(1) certification is not appropriate when class members seek payment of money.  *See, e.g., Casa Orlando Apts., Ltd. v. Fed. Nat'l Mortg. Assoc.*, 624 F.3d 185, 197 (5th Cir. 2010) ("certification under (b)(1)(A) is seldom appropriate when dealing with monetary compensation because no inconsistency is created when courts award varying levels of money damages to different plaintiffs") .

## CERTIFICATE OF SERVICE

I certify that copies of the foregoing (1) Defendants' Memorandum Of Law In Opposition To Plaintiffs' Brief On Appropriate Equitable Relief And In Support Of Defendants' Motion To Decertify The Class Action, (2) Defendants' Supplemental Proposed Findings Of Fact, (3) Motion by Defendants to Decertify the Class, and (4) this Certificate of Service were filed electronically through the CM/ECF system on October 21, 2011.  Notice of this filing will be sent by e-mail to all counsel listed below by operation of that system:

Stephen R. Bruce
Allison C. Pienta
805 15th St., NW, Suite 210
Washington, DC 20005
(202) 289-1117

Thomas G. Moukawsher
Moukawsher & Walsh, LLC
21 Oak St.
Hartford, CT 06106
(860) 278-7000

Attorneys for Named Plaintiffs and
Plaintiff Class

s/ Christopher A. Parlo
Christopher A. Parlo