# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JANICE C. AMARA,            :
GISELA R. BRODERICK,     :
ANNETTE S. GLANZ,        :
individually and on behalf     :
of all others similarly situated,  :
                                 :
            Plaintiffs,   :
                                 :
    vs.                       :    Civil No. 3:01-CV-2361 (MRK)
                                 :
CIGNA Corp. and           :
CIGNA Pension Plan,      :
                                 :
           Defendants.  :

## PLAINTIFFS' REPLY BRIEF ON
## APPROPRIATE EQUITABLE RELIEF AND
## OPPOSITION TO MOTION FOR DECERTIFICATION

Stephen R. Bruce Ct23534
Allison C. Pienta phv01316
805 15th St., NW, Suite 210
Washington, DC 20005
(202) 289-1117

Thomas G. Moukawsher Ct08940
Moukawsher & Walsh, LLC
21 Oak St.
Hartford, CT 06106
(860) 278-7000

Attorneys for Named Plaintiffs and
Plaintiff Class

# TABLE OF CONTENTS

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      *Amara* Calls for This Court to Apply "General Principles" of Equity
        "as Modified by the Obligations and Injuries Defined by ERISA Itself," Not to
        Allow CIGNA to Contrive New Requirements for Equitable Relief. . . . . . . . .  10

III.    Plaintiffs Have Not "Waived" Their Right to Request Equitable Relief for the
        204(h) Violation or for Surcharge or Estoppel.. . . . . . . . . . . . . . . . . . . . . .   12

II.     The Court Has Discretion to Reform "the Plan" and Enjoin Its Fiduciaries to
        Act in Accordance with the Representations that CIGNA Made as
        Plan Administrator and Plan Sponsor; ERISA §502(d) Does Not Alter
        that Discretion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IV.     Injunctive Relief Is Not Limited to "Corrected" Notices, But Is Available to
        Remedy CIGNA's 204(h) Violation and Its Misleading Representations that
        "Each Dollar's Worth of Credit" Was for the Employees' Retirement . . . . . . . . 25

        A.      Injunctive Relief to Redress CIGNA's 204(h) Violation.. . . . . . . . . . . . . 28
        B.      The Injunctive "A + B" Remedy for CIGNA's Misleading
                Representations About Wear-Away.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

V.      Surcharge Is Not Limited to "a Loss to a Trust," But Is Available to Remedy
        Misleading Representations of Comparable Benefits with No Cost Savings, as
        Well as that "Each Dollar's Worth of Credit" Was for the Employees . . . . . . . . 36

VI.     Reformation Is Available to Remedy the "False or Misleading" Representations
        of Comparable Benefits with No Cost Savings and that "Each Dollar's Worth
        of Credit" Was for the Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

VII.    If Necessary, Estoppel Is Available to Remedy the Promises that CIGNA
        Would Not Take Benefits Accrued from the Employees But Would Add
        "Each Dollar's Worth of Credit" to Them.. . . . . . . . . . . . . . . . . . . . . . . . . . . 54

VIII.   The Class Should Not Be Decertified Based on Contrived
        "Individualized" Elements for Each Category of Equitable Relief.. . . . . . . . . .   55

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128 (1972). ............................... 43

*Alabama Great Southern R.R. Co. v. Louisville & Nashville R.R. Co.*,
224 F.2d 1 (5th Cir. 1955). ............................................................... 48

*Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975). ......................................... 28

*Arnold v. Arrow Transport Co.*, 926 F.2d 782 (9th Cir. 1991). ............................ 52

*Becher v. Long Island Lighting Co.*, 164 F.R.D. 144 (E.D.N.Y. 1996). ............... 65

*Estate of Becker v. Eastman Kodak*, 120 F.3d 5 (2d Cir. 1997)............................ 42

*Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292
(3d Cir. 1993)....................................................................... 37, 41-42

*Board of Trustees v. California Cooperative Creamery*, 877 F.2d 1415
(9th Cir. 1989)........................................................................... 24

*Bowerman v. Wal-Mart Stores Inc.*, 226 F.3d 574 (7th Cir. 2000). ...................... 29

*Bridge v. Phoenix Bond & Indemnity*, 553 U.S. 639 (2008). ................................ 42

*Burke v. Kodak Retirement Income Plan*, 336 F.3d 103 (2d Cir. 2003). .............. 53

*Burlington Industrial, Inc. v. Ellerth*, 524 U.S. 742 (1998). ................................. 15

*Buus v. WaMu Pension Plan*, 2007 WL 4510311 (W.D.Wa. 2007). .................... 30

*CIGNA Corp. v. Amara*, 131 S.Ct. 1866 (2011)............................................. *passim*

*In re Citigroup Pension Plan ERISA Litigation*, 241 F.R.D. 172
(S.D.N.Y. 2006). ........................................................................... 65

*Clark v. Feder Semo*, --- F. Supp. 2d --- , 2011 WL 3912941 (D.D.C. 9/7/2011). 38

*Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006). ..................................................... 1

*Cross v. Bragg*, 329 Fed.Appx. 443 (4th Cir. 2009). ........................................... 50

*Crown v. Parker*, 462 U.S. 345 (1983)................................................................... 60

*Curtis Publishing Co. v. Butts*, 388 U.S. 130 (1967). ........................................... 15

*DePace v. Matsushita Electric Corp. of America*, 257 F. Supp. 2d 543
    (E.D.N.Y. 2003)....................................................................................... 12, 45

*Devlin v. Scardelletti*, 536 U.S. 1 (2002). ............................................................. 60

*Eddy v. Colonial Life Insurance Co.*, 919 F.2d 747 (D.C. Cir. 1990).................. 41

*Flanigan v. GE*, 1998 U.S. Dist. LEXIS 22873 (D. Conn. 9/28/1998)................ 65

*Franks v. Bowman Transport Co.*, 424 U.S. 747 (1976)....................................... 28

*Frommert v. Conkright*, 433 F.3d 254 (2d Cir. 2006)........................... 5, 26, 29-30

*Gray v. Citigroup Inc.*, --- F.3d ---, 2011 WL 4950368, 2011 U.S.App.
    LEXIS 21463 (2d Cir. 10/19/2011). ............................................................... 55

*Gray v. Great American Recreation Association, Inc.*, 970 F.2d 1081
    (2d Cir. 1992)............................................................................................ 47, 49

*Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002). 15, 25

*Hall v. Kodak Ret. Income Plan*, 363 Fed.Appx. 103 (2d Cir. 2010). ................. 16

*Hanover Insurance Co. v. American Engineering Co.*, 105 F.3d 306
    (6th Cir. 1997). .............................................................................................. 49

*Harris Trust & Sav. Bank v. Salomon Brothers*, 530 U.S. 238 (2000). ............... 22

*Havens Realty Corp v. Coleman*, 455 U.S. 363 (1982)......................................... 40

*Heidgerd v. Olin Corp.*, 906 F.2d 903 (2d Cir. 1990)........................................... 53

*Herman v. Provident Mutual Life. Insurance Co.*, 886 F.2d 529 (2d Cir. 1989).. 57

*Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710 (6th Cir. 2005)............. 26

*Holzsager v. Valley Hospital*, 646 F.2d 792 (2d Cir. 1981)................................. 15

*Hunt v. Hawthorne Associates*, 119 F.3d 888 (11th Cir. 1997). .......................... 22

*In re Ikon Office Solutions, Inc. Sec. Litigation*, 191 F.R.D. 457 (E.D. Pa. 2000). 64

*Katsaros v. Cody*, 744 F.2d 270 (2d Cir.), *cert. denied*, 469 U.S. 1072 (1984)...... 1

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004)........................................ 61

*Koenig v. International Life Corp.*, 880 F. Supp. 372 (E.D.Pa. 1995)................. 30

*Kral v. Southwestern Life Insurance Co.*, 999 F.2d 101 (5th Cir. 1993). ............. 53

*LaAsmar v. Phelps Dodge Corp. Life*, 605 F.3d 789 (10th Cir. 2010)................. 51

*Leyda v. AlliedSignal, Inc.*, 322 F.3d 199 (2d Cir. 2003)..................................... 16

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). .......................................... 40

*Mathews v. Chevron Corp.*, 362 F.3d 1172 (9th Cir. 2004)................................. 29

*Mathews v. Sears Pension Plan*, 144 F.3d 461 (7th Cir. 1998). .......................... 50

*McDowell v. Krawchison*, 125 F.3d 954 (6th Cir. 1997). .................................... 27

*Meacham v. Atomic Knolls Power Lab*, 358 Fed. Appx. 233 (2d Cir.
      12/21/2009). ................................................................................................. 16

*Meacham v. Atomic Knolls Power Lab*, 305 Fed.Appx 748 (2d Cir. 1/7/2009). .. 16

*Meacham v. Atomic Knolls Power Lab*, 627 F. Supp. 2d 72 (N.D.N.Y 2009). .... 16

*Mertens v. Hewitt Associates*, 508 U.S. 248 (1993)...................................... *passim*

*Monson v. Century Manufacturing Co.*, 739 F.2d 1293 (8th Cir. 1984).............. 54

*Mosser v. Darrow*, 341 U.S. 267 (1951). ........................................................... 38

*Patrick v. Le Fevre*, 745 F.2d 153 (2d Cir. 1984). ................................................. 57

*Pearson v. Voith Paper Rolls, Inc.*, 656 F.3d 504 (7th Cir. 2011). ...................... 41

*Pell v. E.I. Dupont de Nemours & Co.*, 539 F.3d 292 (3d Cir. 2008).  23, 27, 37, 53

*Penrose v. Hartford Life & Accident Insurance Co*, 2003 WL 21801214,
    2003 U.S. Dist. LEXIS 13497 (N.D. Ill. 8/4/2003). ........................................ 19

*Production and Maintenance Employees' Local 504 v. Roadmaster Corp.*,
    954 F.2d 1397 (7th Cir. 1992). ........................................................................ 30

*Rea v. Hershey Co. 2005 Enhanced Separation Plan*, 2008 WL 2782663
    (M.D. Pa. 7/15/2008). ...................................................................................... 50

*Richards v. FleetBoston Finance Corp.*, 238 F.R.D. 345 (D.Conn. 2006). .......... 65

*Romero v. Allstate Corp.*, 404 F.3d 212 (3d Cir. 2005)........................................... 5

*In re Salomon*, 544 F.3d 474 (2d Cir. 2008). ........................................................ 15

*Smith v. Rogers Galvanizing Co.*, 128 F.3d 1380 (10th Cir. 1997)...................... 27

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004). ................................................... 42

*Strom v. Goldman, Sachs & Co.*, 202 F.3d 138 (2d Cir. 1999)............................... 1

*Teamsters v. United States*, 431 U.S. 324 (1977).................................................. 56

*Tokio Marine & Fire Insurance Co. v. National Union Fire Insurance Co.*,
    91 F.2d 964 (2d Cir. 1937)............................................................................... 49

*UFCW Local 1776 v. Eli Lilly & Co.* , 620 F.3d 121 (2d Cir. 2010), *cert.
    denied*, 131 S.Ct. 3062 (2011). ................................................................... 58-59

*Unisys Corp. Retiree Medical Benefits ERISA Litigation*, 579 F.3d 220
    (3d Cir. 2009)......................................................................................... 27, 37

*Varity Corp. v. Howe*, 516 U.S. 489 (1996)............................................... 2, 29, 39

*Wal-Mart Stores Inc. v. Dukes*, 131 S. Ct. 2541 (2011)........................................ 56

v

*Warth v. Seldin*, 422 U.S. 490 (1975)...................................................... 40

*Wasley Products v. Bulakites*, 2006 WL 3834240, 2006 U.S. Dist. LEXIS
    94632 (D.Conn. 5/31/2006). ................................................................. 52

*Young v. Verizon's Bell Atlantic Cash Balance Plan*, 615 F.3d 808
    (7th Cir. 2010), *cert. denied*, 131 S.Ct. 2924 (2011). ............................ 7, 49-51

### STATE CASES

*Branch v. White*, 230 A.2d 665 (N.J. Super. 1968)............................................. 38

*McNeil vs. McNeil*, 798 A.2d 503 (Del. Sup. Ct. 2002)....................................... 38

*Meinhard v. Salmon*, 164 N.E. 545 (N.Y. 1928)............................................ 38, 44

*Volker v. Connecticut Fire Insurance Co.*, 91 A.2d 883 (N.J. Super. 1952). ....... 49

### FEDERAL STATUTES, REGULATIONS, LEGISLATIVE
### HISTORY AND RULES

ERISA §2, 29 U.S.C. §1001................................................................... 51

ERISA §3(21), 29 U.S.C. §1002(21) . ................................................... 21

ERISA §204(h), 29 U.S.C. §1054(h). ................................................. *passim*

ERISA §403, 29 U.S.C. §1103................................................................ 38

ERISA §404, 29 U.S.C. §1104................................................................ 22-23, 27

ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B)................................................. 55

ERISA §502(a)(2), 29 U.S.C. §1132(a)(2).......................................................... 39

ERISA §502(a)(3), 29 U.S.C. §1132(a)(3).................................................... *passim*

ERISA §502(d), 29 U.S.C. §1132(d). ................................................... 18-20

Title VII of the Civil Rights Act of 1964, §706(g)(1), 42 U.S.C. §2000e-5(g)(1). 28

29 C.F.R. 2520.102-3(l). ................................................................................. 51

H.R.Rep. 93-533, reprinted in 1974 U.S.C.C.A.N. 4639. ........................ 19, 26, 40

S.Rep. 93-127, reprinted in 1974 U.S.C.C.A.N. 4838. ........................... 19, 26, 40

F.R.C.P. 23(b)(1). .................................................................................. 56, 64-65

F.R.C.P. 23(b)(2). .............................................................................. 55-56, 64, 66

F.R.C.P. 53   .................................................................................................... 56

F.R.E. 301 ...................................................................................................... 54

## MISCELLANEOUS

*Black's Law Dictionary* (8th ed. 2001)............................................................ 12, 31

George Bogert, *Law of Trusts & Trustees*. ........................................................ 37

76 *C.J.S.* "Reformation of Instruments". .................................................... 46, 48-49

Dan Dobbs, *Law of Remedies* (2d ed.). .......................................................... 3, 51

*Handbook of Equity Jurisprudence*. ..................................................................... 20

*Manual for Complex Litigation* (4th ed.)............................................................. 56

*Pomeroy's Equity Jurisprudence* (5th ed.). ......................................................... 45

*Res. (3d) of Agency*. ........................................................................................ 53

*Res. (2d) of Contracts*. ............................................................................... 43, 48-49

*Res. (2d) of Trusts*. ..................................................................................... 3, 21, 41

*Res. (3d) of Trusts* .......................................................................................... 37

Stris & O'Connell, "Enforcing ERISA," 56 *S.D. L. Rev.* 515 (2011).................... 2

**Introduction**

CIGNA's opposition does as we predicted. On pages 3-4 of our brief, we pointed

out that "The hallmark of equity is its flexibility and its ability to reach just results and not

to be hamstrung by rigid technical rules." But virtually everything in CIGNA's opposition

is an effort to impose inflexible or "individualized" barriers to equitable relief, rather than

recognize the four categories of available equitable relief and offer equitable reasons, if

any, why Plaintiffs' proposed relief is unjust or why it should be crafted in a different

way.

CIGNA's opposition also reveals that the Supreme Court's guidance has not sunk

in. *Amara* has affirmed what the Second Circuit already held in *Katsaros v. Cody*, 744

F.2d 270 (2d Cir.), *cert. denied*, 469 U.S. 1072 (1984), and *Strom v. Goldman, Sachs &

Co.*, 202 F.3d 138 (2d Cir. 1999), but retreated from because of then-prevalent concerns

with whether this was inconsistent with *Mertens v. Hewitt Assocs.,* 508 U.S. 248 (1993).

*See, e.g.*, *Coan v. Kaufman*, 457 F.3d 250, 262-64 (2d Cir. 2006). Now the Supreme

Court has effectively affirmed the Second Circuit's earlier decisions that ERISA provides

district courts with "wide discretion in fashioning equitable relief to protect the rights of

pension fund beneficiaries," *Katsaros*, 744 F.2d at 281, and afford meaningful "make-

whole" relief to remedy violations. *Strom*, 202 F.3d at 150.

Even though the Secretary of Labor and others recognize *Amara* as a "sea change

1

... in the field of ERISA remedies,"[1] CIGNA contends that the Court's decision on providing equitable relief with injunctions, reformation, surcharge and estoppel offers nothing new to participants and beneficiaries. CIGNA claims that all avenues to equitable relief for CIGNA's misleading representations remain closed. And although the Supreme Court rejected CIGNA's repeated pleas for it to impose "individualized" reliance as a condition for equitable relief, CIGNA goes so far as to argue that the class should be decertified on the ground that all avenues to relief remain "individualized."

The Supreme Court has ruled "the standard of prejudice must be borrowed from equitable principles, as modified by the obligations and injuries identified by ERISA itself," 131 S.Ct. 1882, suggesting that violations of ERISA's information-related rules are too various to trigger a "detrimental harm" standard "when equity imposed no such strict requirement." *Id*. As in *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996), where the majority stated it was "not aware of any ERISA-related purpose that denial of a remedy would serve," the *Amara* majority states that "equity suffers not a right to be without a remedy," 131 S.Ct. at 1879, and observes that equity courts "ordered a trust or beneficiary made whole following a trustee's breach of trust." *Id*. at 1881. Arguing before the Supreme Court, even CIGNA conceded that this Court has "broad remedial discretion

---

[1] DOL Amicus at 25; *accord*, Stris & O'Connell, "Enforcing ERISA," 56 *S.D. L. Rev.* 515, 523 (2011) ("extraordinarily important"). In the August 9, 2011 Status Conference, this Court invited CIGNA to ask an employer group to file an amicus brief in support of CIGNA's position, Tr. at 7-8, but no such brief was filed.

2

under ERISA." Ex. 253 at 5-6.

However, CIGNA now contends that despite having engaged in misrepresentations about benefit reductions that it had a fiduciary duty to disclose, CIGNA should still be able to walk away from this litigation without providing any class-wide remedies and that it should, furthermore, be able to get this Court to adopt standards of proof that would have its current and former employees chasing after remedies as hopelessly as dogs chase after the mechanical rabbits at the track. Not only does CIGNA make no effort to "fit" suitable equitable remedies to "the nature of the primary right" using the "flexible approach" of equity, 131 S.Ct. at 1879, 1881, it contrives inflexible rules, found nowhere in the standard works on equity and trusts, that would keep this Court from exercising any discretion.

Plaintiffs submit that *Amara* requires the parties to rely on equitable principles from Dobbs' *Law of Remedies*, the *Restatement of Trusts* and other standard works, and offer this Court sound equitable positions about how those principles can be adapted under ERISA to fit the situation and provide suitable remedies. This is the sort of argument the *Amara* majority anticipated the parties would engage in on remand. If the standard current works or the case law conflict with points Plaintiffs are making, Defendants should, of course, demonstrate that. But contriving inflexible barriers to equitable relief that Dobbs, the *Restatement*, and other authorities on trusts and equity have never recognized is an unproductive exercise that even *Mertens* warns against.

3

Consistent with *Amara* and CIGNA's admission of this Court's "broad remedial discretion" in the Supreme Court briefing, this reply focuses on this Court's equitable discretion and the factors or findings that favor an exercise of that discretion, while also addressing CIGNA's technical attacks on that discretion. Given that the Supreme Court has recognized four categories of equitable relief this Court might use, we believe it is, to say the least, improbable that each category of equitable relief described in *Amara* is totally unavailable.

For instance, CIGNA now advances a theory suggested nowhere in the majority opinion or concurrence, that injunctive relief under §502(a)(3) must be limited "only" or "solely" to "prohibiting improper 204(h) notices and perhaps ordering the issuance of a corrected 204(h) notice." Opp. at 2, 11. However, the Supreme Court explicitly recognized that the "affirmative and negative injunctions [issued "[i]n the present case"] obviously fall within this category" of remedies "traditionally considered equitable"–even though those injunctions were clearly not limited to a "corrected" notice. 131 S.Ct. at 1879. The Court also recognized that "the District Court injunctions require the plan administrator to pay to already retired beneficiaries money owed them under the plan as reformed." *Id*. at 1880. The Court pointed out that "the fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief." *Id*.

If the injunctive relief authorized by §502(a)(3) was confined to "prohibiting

improper 204(h) notices and perhaps ordering ... a corrected 204(h) notice," as CIGNA

urges, it would be impossible to reconcile that ruling with the Supreme Court's guidance,

and it would leave the Federal courts lacking the authority to enjoin compliance with

ERISA §204(h). That section makes an amendment reducing future benefits "ineffective"

unless advance notice is given. *Frommert v. Conkright*, 433 F.3d 254, 268 (2d Cir. 2006).

Even the concurrence, which blasts the second half of the majority opinion as "dictum,"

recognizes that 204(h) "permit[s] the invalidation of plan amendments not preceded by

proper notice." 131 S.Ct. at 1884. As amended in 2001, ERISA §204(h)(6)(A) contains a

still more specific prescription than §204(h) as originally enacted. It now requires "the

provisions of the applicable plan [to] be applied as if such plan amendment entitled all

applicable individuals to the greater of–

> (i)    the benefits to which they would have been entitled without regard to
>        such amendment, or
>
> (ii)   the benefits under the plan with regard to such amendment."[2]

If CIGNA's logic were to be followed, the Federal courts would lack the authority to

enjoin compliance with §204(h) either as amended or as originally enacted. All a Federal

court would be able to do would be "prohibit[] improper 204(h) notices and perhaps

order[] the issuance of a corrected 204(h) notice." This is unpersuasive given the plain

text of §502(a)(3) and §204(h), the statutory objectives, and the *Amara* decision.

---

[2] *Romero v. Allstate Corp.*, 404 F.3d 212, 218 n.4 (3d Cir. 2005), recognizes the
2001 amendments "did not alter the basic notice requirement."

With respect to surcharge, CIGNA contends that courts can "only" order a fiduciary to remedy a breach of fiduciary duty if it "causes a loss to a trust," and not breaches of fiduciary duty that cause losses to participants and beneficiaries. Opp. at 3, 17. Again, no support for this limitation is found in *Amara*, the standard authorities on trusts or equitable remedies, or the case law. To the contrary, *Amara* states that equity courts possess the power to provide surcharge "for a loss resulting from a trustee's breach of fiduciary duty, or to prevent the trustee's unjust enrichment." On the same page, the Court states that surcharge "extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary." 131 S.Ct. at 1880; *see also id*. at 1881 (equity courts "ordered a trust *or beneficiary* made whole following a trustee's breach of trust," emph. added).

CIGNA similarly asserts that the "only" way this Court can order reformation is if it conforms with "the settlor's intent," which CIGNA proclaims is already reflected in the Part B plan document. Opp. at 4, 25. However, given the conflicts between the Plan document and the 204(h) notice, SMM and SPD, it is clear that CIGNA either made mistakes in preparing the Plan document, or if those stark differences were not mistaken, that CIGNA was engaged in fraud or inequitable conduct.

CIGNA next asserts that the only way to establish "mistake" on the employees' part is with testimony from each class member about their state of mind concerning the changes in the Plan document. *Id*. at 31 n.16, 50. There are, however, no trust law or

equitable principles requiring each beneficiary to prove through individual subjective testimony that he or she made a "mistake" drafting plan documents that he or she took no part in preparing. "Mistake" in the sense of a mistake in drafting relates to the parties to a negotiated contract, *e.g.*, the employer and the union, or the drafter of a unilateral contract. *See Amara*, 131 S.Ct. at 1881 (reformation to reflect the understanding of the "contracting parties"). In the context of a trust or contract that a settlor drafts unilaterally, and that employees accept by providing their labor, "mistake" from the employees' side relates to "reasonable expectations" from the information provided by the other party. *See, e.g.*, *Young v. Verizon's Bell Atlantic Cash Balance Plan*, 615 F.3d 808, 819 (7th Cir. 2010), *cert. denied*, 131 S.Ct. 2924 (2011). In this case, the majority found that this Court had reformed the Plan to "to remedy the false or misleading information CIGNA provided." 131 S.Ct. at 1879. This Court has already found that the information that CIGNA provided to the employees was false or misleading because of the conflicts between the representations in the 204(h) notice, SMM and SPD and the provisions of the Plan document. 534 F.Supp. at 338-44, 346-51.

Besides seeking to develop multiple "only if" limitations for each category of equitable relief, CIGNA recycles a number of old arguments without regard to subsequent developments, *e.g.*:

> (1) Raising notice to the "rehires" as a barrier to relief for the §204(h) violation (Opp. at 12 n.6), without regard to this Court's ruling that its "determination that there was no violation of ERISA in CIGNA's failure to provide notice of the rehire rule specifically does not affect its

determination that the notices provided to all CIGNA employees, whether rehires or not, were deficient," 534 F.Supp.2d at 356,

(2) Touting as a cure-all the statements of "opening account balances" and "annual account statements" (Opp. at 21, 31-32) whose efficacy in disclosing the "impact of the change" CIGNA's counsel already expressly disavowed in the oral argument before the Second Circuit, Ex. 251 at 17-19, and

(3) Suggesting that relief could "undermine" the "actuarial soundness" of CIGNA's Plan (Opp. at 24), even though CIGNA previously told this Court that it could easily handle the liability and has publicly stated the same in all of its 10Q and 10K filings since August 2008. *See* Ex. 259.

By any measure there is also a tremendous amount of material in Plaintiffs' brief that CIGNA's opposition simply fails to address. On §204(h), one would imagine that CIGNA would address why it told the Supreme Court in opposing the Amara class' petition that the District Court possessed "broad remedial discretion under ERISA" to order "a return to Part A" (Ex. 253 at 5-6) and explain how it can argue anything different now. One would also suppose that CIGNA would want to identify and support any equitable factors that weigh *against* this Court exercising that broad remedial discretion, or that weigh in favor of a limited exercise of that discretion. When this Court denied relief for the 204(h) violation in 2008, the main equitable consideration the Court discussed was the potential cost to CIGNA of a return to Part A. 559 F.Supp.2d at 209. At the same time, the Court expressed its concern with whether this was the proper outcome, even recognizing that it "eviscerate[d] the notice requirements of §204(h)." *Id*. at 210. Now that the Court's equitable discretion has been affirmed, and indeed CIGNA has

8

expressly acknowledged it before the Supreme Court, CIGNA has presented no evidence

to sustain the Court's concern that the §204(h) relief might be too costly for CIGNA to

bear. CIGNA's opposition contains no evidence on which any such finding could be

based. CIGNA refers once to the Plan's "actuarial soundness," but CIGNA offers no

evidence that it would be "undermine[d]" if the Part A formula is reinstated. *See* Opp. at

24. If CIGNA makes sufficient contributions, there is absolutely no reason why the

"actuarial soundness" of the Plan would be undermined.

Also missing from CIGNA's opposition is any response to Plaintiffs' discussion of

the equitable factors that this Court should consider in favor of awarding equitable relief.

Most notably, CIGNA never presents any evidence to counter the "hardship" *to*

*employees* like Barbara Hogan and Steve Curlee if the Court were to deny the requested

204(h) relief.

CIGNA also fails to address the equitable considerations that alternatively favor

providing a remedy for the representations in the SMM of "comparable" or "larger"

benefits with no "cost savings" to CIGNA, and the "A + B" relief that the Court ordered

based on the repeated representations that "[e]ach dollar's worth of credit is a dollar of

retirement benefits payable to you" and the "[u]nder the plan, your benefit will grow

steadily throughout your career." 559 F.Supp.2d at 211.

Finally, CIGNA's opposition never discusses whether it opposes the belated

§204(h) notice that this Court ordered before, or the relief the Court ordered for CIGNA's

9

failure to disclose the "relative values" of the benefit options to participants like Lillian

Jones who unknowingly elected lump sum options with much less value than the

annuities.[3]

I.    *Amara* **Calls for This Court to Apply "General Principles" of Equity "as Modified by the Obligations and Injuries Defined by ERISA Itself," Not to Allow CIGNA to Contrive New Requirements for Equitable Relief.**

A recurrent theme in CIGNA's opposition is the quote from *Mertens* about

remedies "typically available in equity." CIGNA repeats this phrase twelve times. Opp. at

2-4, 15 n.9, 17, 23, 25-26, 43. To put this phrase in context, the full passage from *Mertens*

is that "'equitable relief' ...refer[s] to those categories of relief that were typically

available in equity (such as injunction, mandamus, and restitution, but not compensatory

damages)." 508 U.S. at 256. CIGNA seeks to transform the reference to "those categories

of relief" into a judicial admonition that such categories of relief can only be applied in

the same factual situations in which they were "typically" applied in equity. Opp. at 17.

CIGNA goes so far as to suggest that *Amara* "confirmed" this. *Id*. This is not exactly

forthcoming since *Amara* clarified that *Mertens* had been misapplied in cases involving

fiduciaries and that the courts are to use "general principles" from equity in such cases

"as modified by the obligations and injuries defined by ERISA itself." 131 S.Ct. at 1882.

The Supreme Court also directed this Court and others to provide "make-whole" relief

_____

[3] The only mention of "relative value" in CIGNA's opposition is in a description
of the "[r]elevant [p]rocedural [h]istory." Opp. at 7.

10

and "mold the relief to protect the rights" and to "fit[]" the relief "to the nature of the primary right." *Id*. at 1879-81. In essence, CIGNA would ignore that *Amara* holds that the remedies available in suits for breach of fiduciary duty are *not* limited by *Mertens*, and would give no weight to the Court's directions to use "general principles" "as modified by the obligations and injuries defined by ERISA itself" in order to provide "make-whole" relief.

CIGNA instead appears to suggest that Plaintiffs must offer multiple examples of cases decided by equity courts to establish the "typical" application of each category of equitable relief that are on all fours with this case. But when Plaintiffs cite such cases, such as the decisions under ERISA on breach of the duty to disclose and on reinstatement and other forms of injunctive relief, including the Supreme Court's decision in *Varity*, *see* Pls. Br. at 19-20 and 32-34, CIGNA simply ignores the citations (*Varity* is not cited at all in CIGNA's opposition).

For reformation, CIGNA also appears to suggest that Plaintiffs and the Secretary of Labor cannot find cases where a court specifically used circumstantial evidence rather than requiring individualized subjective testimony from each member of a class. Opp. at 28 n.14, 32-33. In fact, the opposite is true. *Amara* and other cases recognize reformation based on circumstantial evidence. *See* Pls. Br. at 37-39. But there are no cases in which each member of a class or each beneficiary of a trust has been required to prove a "mistake" by individual subjective testimony. Again, CIGNA's position would establish a

11

barrier to relief that is not a reasonable or suitable construction of what the Supreme

Court intends. The standard authorities on reformation and the case law on reformation,

under ERISA and otherwise, have never required the proof that CIGNA demands.

## II.    Plaintiffs Have Not "Waived" Their Right to Request Equitable Relief for the 204(h) Violation or for Surcharge or Estoppel.

The Prayer for Relief in the Complaint asks the Court to "[o]rder appropriate

equitable and remedial relief" or "such other equitable and remedial relief as the Court

deems appropriate." Although the language is broad, it certainly encompasses the relief

that Plaintiffs are requesting. In *DePace v. Matsushita Elec. Corp. of Am.*, 257 F.Supp.2d

543 (E.D.N.Y. 2003), the district court found that plaintiff's request for "other relief" in

the complaint "is broad enough to encompass another traditional form of equitable

remedy: reformation." *Id.* at 565.

 CIGNA nevertheless asserts that Plaintiffs have "waived" their right to equitable

relief in three contexts – contending that Plaintiffs waived relief for the 204(h) violation

and for the equitable remedies of surcharge and estoppel by not raising them in the

Additional Submission on Relief which Plaintiffs submitted at this Court's request on the

second day of trial (dkt. #205).[4] *Black's Law Dictionary* defines waiver as "the intentional

---

[4] CIGNA asserts that Plaintiffs have "waived":

- The ability to challenge the "interim" freeze in asking for 204(h) relief, Opp. at 13,
- Any claim of surcharge, *id*. at 14-16, and
- Any estoppel remedy, *id*. at 34 n.20, 49.

or voluntary relinquishment of a known right," a "renunciation, repudiation, abandonment, or surrender of some claim, right, privilege, or of the opportunity to take advantage of some defect, irregularity, or wrong." The Additional Submission to which CIGNA refers was not an exhaustive brief on the remedies available to Plaintiffs, but was an informal description of the relief Plaintiffs were seeking if they prevailed. As the trial was commencing, this Court asked that Plaintiffs provide "some indication of what remedy you were requesting for each of the alleged violations that you are pursuing...It doesn't have to be briefing on why it works or why it doesn't work." 9/11/06 Tr. at 4; *id*. at 5 ("I would like it to be relatively specific but it doesn't have to have all the formal words on it that a judgment would have or anything like that").

In the Additional Submission, Plaintiffs asked for the same relief for the disclosure violations as they request now, namely, additional benefits to make participants whole for the §204(h) violation, redress for the representations of comparable benefits with no cost savings in the SMM, and redress for the representations in conflict with the wear-away phenomena in the December 1997 SMM and September 1998 SPD. Dkt. #205 at 2-4. The only thing that changed between the Complaint, the Additional Submission, and today is the identification of specific categories of relief, besides injunction and unjust enrichment.

With respect to §204(h), Plaintiffs maintain, as they did in 2008, that because this Court found a violation of 204(h) despite CIGNA's argument that the "interim" freeze

13

meant there was no reduction, the interim freeze should also not block relief for the

violation. Plaintiffs thus take the same position now as they took in the Additional

Submission in 2006 and the 2008 remedies briefing. The only difference is that this

Court's concerns with its authority and its concern that a return to Part A is an

"impossibility" have been dispelled both by the Supreme Court and by CIGNA's

admission in opposing Plaintiffs' petition to the Supreme Court. *See* Ex. 253 at 5-6; *cf.*

131 S.Ct. at 1875, 1881 (majority opinion) and 1884 (concurrence).

Defendants' argument that Plaintiffs have waived relief in the form of "surcharge"

(Opp. at 14-16) is also clearly a reach. Plaintiffs could have been more specific in their

Prayer for Relief and the Additional Submission. But Plaintiffs never said anything that

can reasonably be construed as waiving surcharge and they specifically asked for relief

from the losses in benefits resulting from CIGNA's breach of the duty to disclose and

unjust enrichment in the 2008 briefing on remedies and their appeal to the Second Circuit.

Dkt.#275 at 20-21; Dkt.#277 at 7; Dkt.#279 at 28; App. Br. (C.A. 08-3388) at 21. The

Supreme Court has now recognized that surcharge is available "for a loss resulting from a

trustee's breach of duty, or to prevent the trustee's *unjust enrichment*." 131 S.Ct. at 1880.

Lastly, Defendants' argument that Plaintiffs waived relief for estoppel (Opp. at 34

n.20, 49) is misplaced. Plaintiffs never waived that form of relief but merely placed it

after the other categories of relief that the Court might use. *See* Pls. Br. at 40-42.

Moreover, in light of the sea change in the field of ERISA remedies that the

Supreme Court's decision caused, the case law shows that both parties should be able to

raise issues about the specific categories of relief that seemed not to matter as much

before (as this Court knows, before *Amara*, most discussions of relief under §502(a)(3)

ended with *Mertens* and *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204

(2002)). There is a recognized exception to waiver arguments when a sea change in the

law occurs after a trial court enters an order, but before an appellate court rules. *See, e.g.*,

*Holzsager v. Valley Hosp.*, 646 F.2d 792, 796 (2d Cir. 1981) (rejecting argument that

defendant waived its affirmative defense that the court lacked jurisdiction where the

Supreme Court handed down an intervening new decision indicating that the defense

existed and the defendant thereafter promptly raised it. "The clairvoyance demanded by

plaintiff here of the Hospital is inconsistent with the doctrine of waiver"); *Curtis

Publishing Co. v. Butts*, 388 U.S. 130, 143 (1967) ("mere failure to interpose such a

defense prior to the announcement of a decision which might support it cannot prevent a

litigant from later invoking such a ground. An effective waiver must…be one of a known

right or privilege"); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 766 (1998) ("in light

of our decision" announcing changes in the law, the employer "should have an

opportunity to assert and prove the affirmative defense to liability"); *In re Salomon*, 544

F.3d 474, 485 (2d Cir. 2008) (defendants failed to submit evidence to rebut plaintiffs'

claims of misrepresentation and instead argued that the plaintiffs failed to meet their own

evidentiary burden. The Second Circuit excused this error, finding that "defendants' error

15

may have been the result of conflicting statements in our case law, for which they should not be penalized").

In *Meacham v. Atomic Knolls Power Lab*, 305 Fed.Appx 748, 749 (2d Cir. 1/7/2009), the Second Circuit remanded to the district court following a Supreme Court decision to determine whether the employer had waived the reasonable factor other than age ("RFOA") defense. On remand, the district court found that "Generally, waiver requires demonstration that a party intentionally relinquished a known right. The party asserting waiver bears the burden of demonstrating the facts supporting such a claim." 627 F.Supp.2d 72, 76. The district court found defendants had waived the RFOA defense because defendants knew about the availability of the RFOA defense, and although they asserted RFOA in their answer, "defendants never again asserted that defense throughout the trial, in their appeal, in their petition for certiorari, or at any time before *Meacham II*." 627 F.Supp.2d at 76-78. On appeal, the Second Circuit reversed, 358 Fed. Appx. 233, 235 (12/21/2009), holding that "Waiver principles are analytically antecedent to an analysis on the merits; we therefore read the Supreme Court's opinion as impliedly but necessarily rejecting plaintiffs' waiver argument."[5]

In this case, the Supreme Court has "vacated" the District Court's decision on

---

[5] This is clearly not like the cases that find different theories of relief unavailable on appeal when there has been no intervening Supreme Court or appellate decision. *See Leyda v. AlliedSignal, Inc.*, 322 F.3d 199, 207 (2d Cir. 2003); *Hall v. Kodak Ret. Income Plan*, 363 Fed.Appx. 103, 107 (2d Cir. 2010).

relief so both parties are starting afresh in their briefing. The Supreme Court has specifically directed this Court to "revisit its determination of an appropriate remedy for the violations of ERISA it identified" without any suggestion of waiver of any of the categories of relief the Court discussed. 131 S.Ct. at 1882. The Court also separately granted Plaintiffs' petition for review of the denial of relief for the 204(h) and SMM violations and remanded for further proceedings in light of the majority opinion, again without any suggestion of waiver. 131 S.Ct. 2900. The Second Circuit's mandate states that the case is remanded to this Court "for further proceedings consistent with the opinion of the Supreme Court." C.A. 08-3388, 7/5/2011 Order. In these circumstances, it would be highly irregular to conclude that this Court is barred from revisiting a category of equitable remedies based on an informal September 2006 Additional Submission.

III.    **The Court Has Discretion to Reform "the Plan" and Enjoin Its Fiduciaries to Act in Accordance with the Representations that CIGNA Made as Plan Administrator and Plan Sponsor; ERISA §502(d) Does Not Alter that Discretion.**

The last time the parties appeared before this Court, CIGNA was engaged in a vigorous denial that it was the Plan administrator, pointing to a retired, mid-level CIGNA manager, Stewart Beltz, to whom CIGNA claimed it had legally delegated all of its responsibilities as the Plan administrator. *See* Dkt.#264 at 1. To quote the recent outline of one of CIGNA's co-counsel for an American Conference Institute presentation on *Amara,* CIGNA was seeking to "[m]inimiz[e] sponsor liability by clearly separating the sponsor and administrator role so sponsors can effectively remain[] an 'innocent third-

17

party' in misrepresentation cases." New Ex. 265. However, this Court found that CIGNA had exclusive responsibility for the disclosures and that Mr. Beltz had not even been involved. 534 F.Supp.2d at 331-333.

Now, CIGNA finally admits that it was the Plan administrator for purposes of disclosure and admits that the "misrepresentations" were its own. Opp. at 19, 24. CIGNA nevertheless contends that its misrepresentations should not bind "the Plan" because the Plan may be sued as a separate legal entity under ERISA. Opp. at 24. This is, of course, exactly what Plaintiffs have done–in addition to suing CIGNA Corp., Plaintiffs sued the CIGNA Pension Plan so that both would be before the Court. Nevertheless CIGNA repeatedly contends that CIGNA is distinct from the Plan, the Plan is not a fiduciary, and the Plan has been "vindicated," "has done nothing wrong" and "has not engaged in any misconduct." Opp. at 3, 19, 24. CIGNA makes this argument in the context of both surcharge and reformation. *Id*. at 19, 24. Anticipating that Plaintiffs might say the misleading representations reflect not only the intent of CIGNA as Plan administrator but also the intent of CIGNA as the Plan sponsor with the authority to amend the Plan, CIGNA further asserts that "fiduciary communications ... are no evidence of the Plan sponsor's intent–even where the same entity serves both roles." *Id*. at 28.

The thin reed on which CIGNA rests is ERISA §502(d), 29 U.S.C. §1132(d), which has two subparts. ERISA §502(d)(1) provides that an employee benefit plan "may sue or be sued ... as an entity" and that "[s]ervice of summons, subpoena or other legal

process of a court upon a trustee or administrator ... shall constitute service upon the employee benefit plan." ERISA §502(d)(2) then provides that "[a]ny money judgment under this title against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this title." Nowhere does §502(d) state that a Court should not provide appropriate equitable relief that requires benefits to be provided from the Plan. Indeed, that would seem to be antithetical to an ERISA scheme which is designed to ensure that "anticipated retirement benefits" are provided from Plans. Nor is any such intent expressed in the legislative history, which is focused on providing broad relief and eliminating technical barriers to relief. H.R.Rep. 93-533, at 16, 1974 U.S.C.C.A.N. 4639, 4655; S.Rep. 93-127, at 34, 1974 U.S.C.C.A.N. 4838, 4871. Congress did not devise the legal entity construct in ERISA §502(d) to insulate the Plan from relief for breaches of duty by a Plan administrator acting on behalf of the Plan. ERISA §502(d) "merely provides that a plan can be sued." *Penrose v. Hartford Life & Accident Ins. Co*, 2003 WL 21801214 *3, 2003 U.S. Dist. LEXIS 13497 *14 (N.D. Ill. 8/4/2003).

However farfetched CIGNA's assertions in a case in which CIGNA has played the role of both Plan sponsor and Plan administrator, we want to thoroughly address how this Court should, as a court sitting in equity, view CIGNA and its Plan. First, CIGNA's assertion that there is an unbridgeable fissure between "the Plan" and the representations

19

about the Plan that the Plan administrator makes cannot be accepted in equity because equity will "enforce the rights and duties of parties to a transaction in accordance with the real intent of such parties and the true purposes, objects, and consequences of such transaction." *Handbook of Equity Jurisprudence*, §22; Bogert, §861 ("The court is not confined to a limited list of remedies but rather will mold the relief to protect the rights of the beneficiary according to the situation involved. If equity cannot give the beneficiary the exact benefit to which the trust would entitle him, it will provide him the best possible substitute"). Obviously no wall, moat, or other divide surrounded CIGNA's Plan in 1997-1998 to insulate it from CIGNA as the Plan sponsor or CIGNA as Plan administrator. As the Plan administrator and Plan sponsor, CIGNA controlled everything about this Plan. *See, e.g.,* Trial Ex. 1 at D00263-264. This is, moreover, not a multiemployer plan under ERISA §3(37) where more than one employer makes contributions to the Plan and might complain about having the Plan bound by the representations of a profligate Plan administrator selected by a union and other employers. Given these facts, namely that there is no real distinction between CIGNA and CIGNA's Plan, a court of equity would not get hung up on CIGNA's distinctions based on ERISA §502(d). Suggesting that the Plan has an intent separate from CIGNA's intent as the settlor and plan administrator anthropomorphizes a legal entity recognized only for purposes of suit in a way that is unsupported by the text of §502(d) or any ERISA policy.

The concurrence in *Amara* suggests that the Plan administrator might not be

20

*CIGNA*'s agent because of its statutory disclosure duties. 131 S.Ct. at 1885. But as stated in our opening brief, Pls. Br. at 39-40, there is no support for that in the law. CIGNA selected itself to be the Plan administrator that exercises discretionary authority over the disclosures about this Plan required by ERISA. Under ERISA §3(21)(A), 29 U.S.C. §1002(21)(A), a fiduciary is defined as a person who "exercises any discretionary authority or discretionary control respecting management or such plan or exercises any authority or control respecting management or disposition of its assets" or who has "any discretionary authority or responsibility in the administration of such plan." If exercises of that authority or responsibility were *not* binding upon "the Plan" it would *not* be discretionary authority in the administration of the Plan or disposition of its assets. Moreover, even if the concurrence's distinction were viable, the Plan administrator would simply be the agent of the Plan, rather than CIGNA's agent (or the agent of both). Whether the Plan administrator is considered CIGNA's agent or the agent of CIGNA's Plan, it is clear the principal must be bound. The requested relief can therefore be provided from the Plan at CIGNA's direction or from the Plan directly.

CIGNA's effort to create a space between the Plan and the Plan administrator in which misrepresentations can exist without remedy would thus conflict with basic principles of agency and also negate the equitable remedies in §199 of the *Restatement of Trusts*. According to CIGNA, this Court should not be able to order a Plan administrator to take or not take certain actions with respect to the Plan so long as the Plan, from an

21

anthropomorphized perspective, "has done nothing wrong" and "has not engaged in any misconduct." Opp. at 19, 24. However, §199 of the *Restatement* explicitly provides that a beneficiary can maintain a suit "to compel the trustee to redress a breach of trust." This Court may have authority to determine that there are circumstances when it is not appropriate to exercise that equitable authority, but CIGNA's theory would simply negate that right.

CIGNA's theory also does not address the Supreme Court's ruling in *Harris Trust & Sav. Bank v. Salomon Bros.*, 530 U.S. 238, 246 (2000), that §502(a)(3) imposes "no limits on the universe of possible defendants" but extends to all the persons or entities needed to provide appropriate relief. *Accord*, *Hunt v. Hawthorne Associates*, 119 F.3d 888, 909 (11th Cir. 1997) ("order enjoining the payment of benefits from an ERISA plan must issue against a party capable of providing the relief requested").

Alternatively, of course, the relief can simply be provided directly from CIGNA. This Court has previously discussed CIGNA's liability under §502(a)(3), ruling that "Plaintiffs may pursue their disclosure claims against CIGNA...to the extent Plaintiffs seek injunctive or equitable relief under § 502(a)(3)." 534 F.Supp.2d at 333. The Court held that "CIGNA is in the best position to respond to any injunctive and equitable relief requested." *Id*. at 334. CIGNA's theory that the Plan administrator may not be compelled to take action with respect to the Plan to right the wrong also fails to take into account the ERISA §404(a)(1)(D) fiduciary duty to act in accordance with the documents ...

22

governing the plan insofar as ... consistent with the provisions of this title [I]" of ERISA. If the Court orders CIGNA not to enforce the wear-away provisions to redress the title I SMM and SPD violations, ERISA §404(a)(1)(D) requires all fiduciaries, including CIGNA, to act in accordance with that Order. CIGNA cannot refuse to comply with title I or the Court's Order on the ground that the Plan as opposed to the Plan administrator "has done nothing wrong."

Plaintiffs' opening brief already spoke to the Court's discretion to order the participants and beneficiaries to be paid directly or to pay them through the Plan, with the Plan administrator or Plan sponsor replenishing the trust assets. Pls. Br. at 20, citing *Pell v. E.I. Dupont de Nemours & Co.*, 539 F.3d 292, 311 (3d Cir. 2008). If the Plan administrator breached its duties to beneficiaries, relief can be ordered to be provided directly to the beneficiaries or by ordering contributions to be made to the Plan to replenish the Plan's assets for the relief provided through the Plan.

CIGNA has previously stated, furthermore, that if it is held to be liable, it wants to provide the benefits through the Plan. CIGNA represented to this Court in July 2008 that "the Plan's total additional liability as a result of the Court's judgment is approximately $68 million." Dkt.#293 at 2; *id.* at 3 ("The rest of the $68 million represents benefits to which Plaintiffs and the class are not yet entitled, but which would be payable by the Plan in the future, as additional class members retire and additional annuity payments are payable"). CIGNA represented that it is a highly profitable company with $1.115 billion

23

in annual net income which gives it the ability to fund these benefits. *Id*. at 3. CIGNA's 10Ks and 10Qs have made essentially the same representation that "the Company continues to carry a liability of $82 million pre-tax" since 2008 which "reflects the Company's best estimate of the exposure." Ex. 259. In the class certification briefing in 2002, CIGNA also represented to Judge Squatrito that if a breach of fiduciary duty to disclose was found, CIGNA would implement the Court's relief for everyone. Dkt.#30 at 8 ("If the Court orders that a provision of the Plan must be changed or removed, the Plan acting through its trustees and fiduciaries, must then implement that relief as to all of the Plan's participants"). CIGNA has thus effectively waived its theory that the Plan cannot be required to provide benefits because the Plan itself has "not engaged in any misconduct" with its representations to this Court in 2002 and 2008 and with its representations to the public in the 10K and 10Q reports.

As suggested, perhaps there may be a future case where an order compelling fiduciaries and a plan to act in accordance with ERISA-required disclosures will not be appropriate equitable relief, for example, if a third-party plan administrator made inaccurate or misleading disclosures and a contributing employer who did not choose the plan administrator would wind up footing the bill. *But see Board of Trustees v. California Coop. Creamery*, 877 F.2d 1415, 1422 (9th Cir. 1989) (even if breaches of fiduciary duty require additional contributions to multiemployer plan, contributing employers may not use that as defense to obligation to pay). However, this is certainly not such a case. Here,

24

if CIGNA's Plan is ordered to provide benefits to redress CIGNA's disclosure violations,

CIGNA, and not any innocent third-party, will be required to make additional

contributions to replenish the Plan's assets.

**IV.    Injunctive Relief Is Not Limited to "Corrected" Notices, But Is Available to
        Remedy CIGNA's 204(h) Violation and Its Misleading Representations that
        "Each Dollar's Worth of Credit" Was for the Employees' Retirement.**

Injunctive relief provides a straightforward way to make participants whole for

CIGNA's disclosure violations. Injunctive relief is indisputably equitable and not even

CIGNA argues that "individualized" proof is generally needed to support an injunction.

Injunctive relief falls under ERISA §502(a)(3) twice: Through the authority "to enjoin

any act or practice which violates any provision of this title" and through the authority "to

obtain other appropriate equitable relief ... to redress such violations or ... to enforce any

provisions of this title."

CIGNA declares that an injunction to enjoin disclosure violations should only

result in "corrected" notices. Opp. at 11; *see also id*. at 41 ("If the harm is the failure to

receive a required disclosure, then the remedy should be an order to provide that

disclosure"). But *Mertens* already identifies "injunction" as a category of relief "typically

available in equity" without restricting injunctive relief in this manner. 508 U.S. at 256.

Following up on that, *Great-West* also specifically interpreted "other appropriate

equitable relief" to include injunctions. 534 U.S. at 211, 216.

Furthermore, as shown by *Frommert*, the Second Circuit has already ruled that the

25

relief for inadequate disclosures can be an order that the inadequately disclosed changes to a plan cannot take effect until there is adequate notice. 433 F.3d at 268. In *Amara*, the Supreme Court likewise described this Court's "A + B relief" as "affirmative and negative injunctions" and stated that "requir[ing] the plan administrator to pay to already retired beneficiaries the money owed them" is injunctive. 131 S.Ct. at 1879-80. Neither the majority nor the concurrence states, or suggests, that affirmative and negative injunctions are limited to issuing "corrected" notices. In enacting ERISA, Congress said it was "grossly unfair" to enforce terms that had been misleadingly described and chastised the courts for allowing employers to evade responsibility based on a "reluctan[ce] to apply concepts of equitable relief or to disregard technical document wording." H.R.Rep. 93-533, at 7, 1974 U.S.C.C.A.N. at 4643, 4646; S.Rep. 93-127, at 10, 1974 U.S.C.C.A.N. at 4842, 4847; *see also* 1974 U.S.C.C.A.N. at 4655, 4871 (enforcement provisions are intended "to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities").

Plaintiffs already cited numerous injunction cases under ERISA that are consistent with their position and inconsistent with CIGNA's. *See* Pls. Br. at 32-34; *accord, Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 718 (6th Cir. 2005) (injunctive relief may "alter[], on a plan-wide basis, the methodology used to process claims for all beneficiaries"). CIGNA does not address those cases except to suggest that the Third Circuit's *Unisys* decision is actually about equitable estoppel and not an injunction. Opp.

26

at 12 n.5. However, the equitable estoppel claims in *Unisys* had already been dismissed in earlier decisions. In evaluating the injunctive relief that was awarded for the breach of fiduciary duty claims, the Third Circuit analogized that "In the context of a successful equitable estoppel claim under ERISA, we have previously stated that the main question in assessing injunctions such as the one before us is whether the injunction constitutes a permissible equitable remedy or an impermissible legal one." *Unisys Corp. Retiree Medical Benefits ERISA Litig.*, 579 F.3d 220, 236 (3d Cir. 2009) (citing *Pell v. E.I. Dupont*). The Third Circuit concluded that *Pell*'s rationale that the forward-looking injunction in that case was equitable relief "applied equally for a breach of fiduciary duty claim as for an equitable estoppel claim." *Id*. at 237.

CIGNA's challenge to the Supreme Court and circuit court decisions on injunctive relief also again fails to address ERISA §404(a)(1)(D), which essentially effects a statutory injunction against any fiduciary discharging the terms of the Plan in a manner that is not consistent with title I of ERISA. Pls. Br. at 31. The remedies for violations of COBRA notification rules are also instructive because that relief, too, is provided under ERISA §502(a)(3) and is not limited to "corrected" notices. *See, e.g.*, *McDowell v. Krawchison*, 125 F.3d 954, 963 (6th Cir. 1997) (affirming order to pay medical costs for failure to provide COBRA notice); *Smith v. Rogers Galvanizing Co.*, 128 F.3d 1380, 1383-85 (10th Cir. 1997) (affirming award of retroactive insurance coverage when COBRA "notice was inadequate").

ERISA §502(a)(3)'s authorization to "enjoin" violations and provide other "appropriate equitable relief" is also almost identical to Section 706(g)(1) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5(g)(1), which provides:

> [T]he court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, ... or any other equitable relief as the court deems appropriate.

*Albemarle Paper Co. v. Moody*, 422 U.S. 405, 419, 421 (1975), holds that Section 706(g) not only authorizes, but gives courts the duty to provide "make whole" relief. Title VII cases on "make whole" relief demonstrate that injunctive relief is not limited to ending the discrimination without providing redress for past discrimination. For example, *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 779 n.41 (1976), holds that retroactive seniority for victims of discrimination in hiring is an available equitable remedy. Other "make-whole remedies commonly seen in the cases after *Franks* include hiring, transfer, promotion, reinstatement, retroactive seniority, tenure, and expunction of adverse material from personnel files." Lindemann and Grossman, *Employment Discrimination Law* (BNA 3d ed.), at 1751-52.

## A.     Injunctive Relief to Redress CIGNA's 204(h) Violation.

As our opening brief showed, Congress built an injunctive/reinstatement form of relief directly into ERISA §204(h) for violations of the advance notice requirement. If advance notice of significant reductions in future benefits is not given, the benefit

28

reductions are ineffective and the unreduced benefit provisions must be reinstated. 131

S.Ct. at 1884 (§204(h) "permit[s] the invalidation of plan amendments not preceded by

proper notice"). CIGNA conceded in opposing our petition for certiorari that this Court

has "broad remedial discretion under ERISA," including to order a "return to the Part A

formula." Ex. 253 at 5-6.

        CIGNA nevertheless now reverses course and contends that returning to Part A is

"untenable" for "three independent reasons": (1) ERISA §502(a)(3) does not authorize

injunctions that do more than mandate "corrected" notices, (2) the "interim" freeze was

valid, and (3) returning to Part A would provide an "inappropriate windfall" in retirement

benefits for participants. Opp. at 11-14. Plaintiffs already addressed CIGNA's argument

that this Court does not have the authority to do more than mandate "corrected" notices.

CIGNA's opposition does not mention the terms of §204(h), the holding in *Frommert*,

433 F.3d at 268, or the numerous authorities on injunctive reinstatement like *Varity,* 516

U.S. at 492, and *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1185 (9th Cir. 2004). *Accord,*

*Bowerman v. Wal-Mart Stores Inc.*, 226 F.3d 574, 592 (7th Cir. 2000) (proper relief for a

fiduciary breach was putting the participant back into the position she would have been

but for the breach by reinstating her to former plan). Remarkably, CIGNA's opposition

also fails to address its concession in opposing Amara's petition for certiorari that this

Court possesses that "broad remedial discretion," including to order "a return to Part A."

Ex. 253 at 5-6.

CIGNA's argument that non-compliance with the disclosure requirements should only yield a "corrected" notice, *see, e.g.*, Opp. at 11, 41, is clearly at odds not only with §502(a)(3) but also §204(h). Section 204(h) offers a remedy for non-compliance that is obviously different than simply ordering belated compliance. Whereas with advance notice, an amendment reducing future rate of benefit accrual may become effective, without advance notice, the amendment is invalid. In essence, the statute mandates that non-compliance will not just lead to a "corrected" notice, but will require reinstatement of the past benefit accrual rate during the period that the notice was not provided. *See Frommert (I)*, 433 F.3d at 268 ("without such proper notice to Plan participants, the amendment was ineffective as to them"); *Production and Maintenance Employees' Local 504 v. Roadmaster Corp.*, 954 F.2d 1397, 1404 (7th Cir. 1992) (because amendment that violated Section 204(h) is "ineffective," "the plan continued in force as if it had not been amended").[6]

CIGNA next contends that Plaintiffs are seeking to invalidate a lawful "interim" freeze. Opp. at 13. Everyone, including CIGNA, however, now agrees that this Court has "broad remedial discretion under ERISA," including to order "a return to Part A," and that the interim freeze did not make this an "impossibility." The "interim" freeze was not

---

[6] *Accord*, *Buus v. WaMu Pension Plan*, 2007 WL 4510311, *4 (W.D.Wa. 2007) ("appropriate remedy under 29 U.S.C. §1054(h)" is that the amendment "that reduced Plaintiffs' rate of benefit accrual should be disregarded"); *Koenig v. Int'l Life Corp.*, 880 F.Supp. 372, 376 (E.D.Pa. 1995) (plan "shall calculate plaintiffs' retirement benefits under the IIP Plan that was in effect before the attempted 1990 amendment").

the past benefit accrual rate but, as this Court has found, was merely a "placeholder" for the reduced rate of benefit accrual that was to go into effect on January 1, 1998. "Interim" means "[i]n the meantime" or "meanwhile." *Black's Law Dictionary* (8th ed. 2001). Here, the interim freeze held a place for the reduced rate of future benefit accrual under Part B until CIGNA finalized those provisions and made them retroactive. Once the cash balance formula was finalized, it was retroactive to January 1, 1998, and the "interim" freeze disappeared. The rate of benefit accrual in effect before January 1, 1998, was the higher rates of accrual provided by the Part A formula (as the Court will remember, there were actually two rates of accrual in Part A, both of which were better than the rate of accrual under the cash balance formula, 534 F.Supp.2d at 299, 337-38).

This Court has already rejected CIGNA's "windfall" argument with its determination that the "leverage" for §204(h) compliance is the "realistic possibility" of returning to Part A unless the required notice is given. 559 F.Supp.2d at 210. This Court recognized that "[s]uch an outcome is particularly troublesome because ... CIGNA never intended the freeze to be permanent," but held that this is the consequence that Congress has determined should be attached to a violation. *Id.*

CIGNA nonetheless argues that a return to the prior plan will overcompensate employees. Opp. at 12. However, a return to Part A will only remove employees from the undisclosed cash balance reductions and return them to the retirement benefit formulas they enjoyed before January 1, 1998. This is no more than the grandfathered employees,

31

who included CIGNA's CEO, its CFO and its Human Resources Vice-President, enjoyed

and it is no more than Congress intended as the appropriate equitable relief for a §204(h)

violation. As this Court found, the "realistic possibility" of returning to Part A is the

"leverage" that makes §204(h) effective. 559 F.Supp.2d at 210. Whereas CIGNA asserts

that employees would receive a "windfall," Plaintiffs already made the point that the

limited "A + B" relief for misleading employees about wear-aways would not provide any

remedy to thousands of participants like Barbara Hogan. Pls. Br. at 70. Ms. Hogan would

receive $0.00 from the A + B relief, and she will receive only approximately $170 per

month in additional retirement income from the return to Part A (increasing her monthly

retirement benefit from $321 to $491 per month). Trial Ex. 4 at ¶28 and Trial Ex. 7

(individual calculations). This hardly constitutes a "windfall." Indeed, denying a remedy

for the 204(h) violation would result in the thing the Supreme Court said to avoid–a

wrong to Ms. Hogan with no remedy.

Plaintiffs recognize that the total cost to CIGNA of a return to Part A is what

concerned this Court. We remind the Court that CIGNA has never asserted, much less

supported, any inability to pay that liability. Indeed, CIGNA affirmatively represented

that it has sufficient earnings to fund the annual contributions, and it has not indicated any

threat to its finances as a result of this potential liability. *See* Dkt.#293 at 3. Offered yet

another opportunity in this rebriefing, CIGNA's opposition again does not represent or

support any inability to pay but only makes one unsupported assertion about a threat to

32

the "actuarial soundness" of its Plan. Opp. at 24. CIGNA has no response to the

statements in its own 10K and 10Q reports that it already booked a reserve of $82 million

for this liability, and it has no response to spending more on a $110 million compensation

package for a single former CEO than the entire estimated cost of the "A + B" relief for

27,000 current and former employees. This works to rebut CIGNA's unsupported

assertion that this Court would "undermine" the Plan's "actuarial soundness" by

providing make whole relief. To be sure, CIGNA will have to fund the Plan's benefits to

which it would have been obligated if it had not made the undisclosed changes, but those

funding requirements will be in the form of *annual* contributions that will be due under

ERISA's funding requirements over seven years and the required annual contributions

will be manageable in relation to CIGNA's $1.115 annual net earnings.[7]

As stated, CIGNA has presented no evidence of any inability to pay or any

hardship from paying and it does not make any other arguments. CIGNA does not

contend that there is any "reading" requirement in §204(h), or any requirement that *each*

participant testify that if he or she did not read notices, others would have let them know

about any reductions. In a footnote, CIGNA argues that the "rehires" may preclude class-

wide relief because they were not due a §204(h) notice. Opp. at 12 n.6. But CIGNA's

footnote is wrong. This Court held that:

_____

[7] Amortizing $200 million over 7 years produces annual contributions of $32-34
million per year. This represents approximately 3% of CIGNA's $1.115 billion annual net
earnings.

33

> CIGNA had no duty to provide notice of the amended rehire rule to all
> separated vested employees .... Of course, the Court's determination that
> there was no violation of ERISA in CIGNA's failure to provide notice of
> the rehire rule specifically does not affect its determination that the notices
> provided to all CIGNA employees, whether rehires or not, were deficient
> due to their material misrepresentations regarding the mechanics of Part B.

534 F.Supp.2d at 356.[8]

## B.     The Injunctive "A + B" Remedy for CIGNA's Misleading Representations About Wear-Away.

The Supreme Court has recognized that the "A + B" remedy this Court ordered for CIGNA's misleading representations that, *inter alia*, "each dollar's worth of credit is a dollar of retirement benefits payable to you" was achieved by "affirmative and negative" injunctions which "obviously fall with this category" of remedies "traditionally considered equitable." 131 S.Ct. 1879. The Supreme Court also described how the "two steps" this Court's relief order follows can alternatively be viewed as reforming the terms of the plan and ordering the recovery of benefits "*as reformed*." *Id*. at 1876 (emph. in orig.).

If CIGNA believed the Supreme Court was wrong in describing the "A + B" relief as affirmative and negative injunctive relief, or a combination of reformation and injunction, one would imagine CIGNA would acknowledge what the Supreme Court said

---

[8] In the relief decision, this Court also held that the "rehires remain eligible for relief regarding the misrepresentations in the Summary of Material Modifications and Summary Plan Descriptions they received." 559 F.Supp.2d at 207; *see also id*. at 210 ("All members of the Class, including rehires, should be provided a §204(h) notice regarding the transition to Part B within a reasonable time after judgment has entered").

and show why the Court is wrong. But CIGNA's opposition is devoid of any such discussion. CIGNA never even acknowledges that the Supreme Court ruled that "A + B" is an available form of relief for the misleading disclosures under §502(a)(3) through affirmative and negative injunctions or through reformation.

CIGNA now contends that no employee has testified that "they believed the Plan entitled them to A+B, *i.e.*, that Part A benefits would be provided as an annuity under Part A and separate cash balance benefits provided under Part B." Opp. at 31; *see also id*. at 29. This only shows that if a question is framed in a technical way for a lay audience, it will elicit the wrong answer. Consistent with the representation that "each dollar's worth of credit is a dollar" for your retirement, the employees who testified at trial expected they were still earning additional retirement benefits under CIGNA's new cash balance plan. See Pl. Post-Trial Findings (dkt.#248) at ¶¶340, 342, 347, 349, 351, 359, 363, 367, 373. That testimony is consistent with a 1999 survey on cash balance conversions by the renowned pollster Frank Luntz which found that the "overwhelming" percentage of employees expect to earn additional benefits for each year that they work under a pension plan. Even when advised this is not legally required, employees expected to earn additional retirement benefits. Ex. 262 at *139, 141.

CIGNA nowhere revives its argument that this Court should order a more limited form of injunctive relief for the wear-aways by recalculating the opening balances under more favorable terms, perhaps because this gives away too much of what CIGNA

otherwise contests about this Court's equitable authority.[9] But CIGNA cannot deny that it previously argued that the disclosure violations concerning the periods of wear-away were subject to this Court's equitable discretion, but should be remedied by a more modest Order.

As this Court previously found in the relief decision, the Pension Protection Act also requires the "A + B" relief because CIGNA's wear-away provisions were ineffective because of lack of disclosure until after June 2005. 559 F.Supp.2d at 212 n.6; Pls. Br. at 75. CIGNA does not respond to this alternative basis for the injunctive relief.

**V.  Surcharge Is Not Limited to "a Loss to a Trust," But Is Available to Remedy Misleading Representations of Comparable Benefits with No Cost Savings and that "Each Dollar's Worth of Credit" Was for the Employees.**

As discussed, CIGNA contends that the remedy of surcharge is available "only" for "a loss to a trust." Opp. at 3, 17. CIGNA quotes several cases that refer to losses to a trust, *id*. at 17-18, but CIGNA fails to cite a single case or other authority that surcharge is "only" available for such losses. Building on the false premise that surcharge only covers a "loss to the trust," CIGNA asserts: "A misrepresentation about the benefits available to Plan participants cannot *cause* a loss to the Plan." Opp. at 20 (emph. in orig.). CIGNA's syllogism is that *if* surcharge is limited to a loss to the trust/Plan and *if* a misrepresentation

---

[9] CIGNA has made this argument three times: before this Court, on appeal to the Second Circuit and in CIGNA's petition to the Supreme Court, each time contending that this Court should exercise its equitable discretion to recalculate participants' opening account balances in conformity with CIGNA's proposal. *See* Dkt.#276 at 27; Ex. 256 at 20; Ex. 255 at 25; Pet. Reply (New Ex. 266) at 9.

about benefits can never "cause a loss to the Plan," then it must be true that surcharge can never provide relief for a breach of fiduciary duty in disclosures.

CIGNA's premise is, however, contradicted by the *Amara* decision itself, see p. 6 *supra* citing 131 S.Ct. at 1880-81, and by the standard authorities which say that a trustee may be surcharged to deter "the commission of breaches of trust even though the trust itself has suffered no loss." Bogert, *Law of Trusts & Trustees*, §861. The Secretary of Labor quotes the *Restatement,* which speaks of surcharging the breaching trustee "for the amount necessary to compensate fully for the consequences of the breach" including "restor[ing] the values of ... trust distributions to what they would have been if the trust had been properly administered." Amicus at 21 (quoting *Res. (3d) of Trusts,* §205 cmt. a). CIGNA's premise is also contradicted by the authorities ordering trustees to pay beneficiaries for breaches of trust directly "out of the trustee's own funds." Bogert, §862.

In *Varity*, the Supreme Court also held that relief for breaches of fiduciary duty can be provided under §502(a)(3)'s "catchall" provision. 516 U.S. at 512. There was no suggestion in *Varity*, as there is no suggestion in *Amara*, of any loss to the trust/Plan limitation in §502(a)(3). The *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292 (3d Cir. 1993), line of cases is to the same effect; there were no losses to the Plan in those cases. *See* Pls. Br. at 19-20. *Pell v. E.I. DuPont de Nemours & Co.*, 539 F.3d at 311, and *Unisys Corp. Retiree Medical Benefits ERISA Litig.*, 579 F.3d at 236-37, further show that remedies for breach of fiduciary duty are not only for losses to the Plan.

*See also Clark v. Feder Semo*, --- F.Supp.2d ---, 2011 WL 3912941, *9 (D.D.C. 9/7/2011) (surcharge may be provided for fiduciary's failure to disclose losses on plan termination in SPD). Indeed, CIGNA's proposed limitation of surcharge to "losses to a trust" is flawed at an even more fundamental level because, except for pension plans, the assets of most employee benefit plans are not even "held in trust." ERISA §403, 29 U.S.C. §1103.

Going back further, the Supreme Court in *Mosser v. Darrow*, 341 U.S. 267 (1951), did not dispute the respondent's position was that "the trust has incurred no loss." *Id*. at 272. But the Supreme Court held that "equity has sought to limit difficult and delicate fact-finding tasks concerning its own trustee by precluding such transactions for the reason that their effect is often difficult to trace, and the prohibition is not merely against injuring the estate – it is against profiting out of the position of trust. That this has occurred, so far as the employees are concerned, is undenied." The Court held that "a trusteeship is serious business and is not to be undertaken lightly or so discharged. The most effective sanction for good administration is personal liability for the consequences of forbidden acts."[10]

CIGNA also argues that a remedy of surcharge for any harm "caused by a

_____

[10] *Meinhard v. Salmon*, 164 N.E. 545, 546-47 (N.Y. 1928), also did not involve losses to a trust and did not even involve a trust. *McNeil vs. McNeil*, 798 A.2d 503, 507 (Del. Sup. Ct. 2002), concerned a failure to inform a decedent's son of his status as a beneficiary. *See also Branch v. White*, 230 A.2d 665, 671 (N.J. Super. 1968) (remanding where trustees breached their duties to fully inform beneficiaries of terms and conditions of pension fund, including requirement for monthly payments).

fiduciary" is "superfluous" given ERISA §502(a)(2), 29 U.S.C. §1132(a)(2). Opp. 16-17.

But the opposite is actually true. If the surcharge remedy under §502(a)(3) were limited to

"a loss to the trust," as CIGNA proposes, this would make §502(a)(3) superfluous of the

relief already available under §502(a)(2). If no more relief is available under §502(a)(3)

than under §502(a)(2), the former could not possibly serve its function as a "catchall" for

"injuries caused by violations that §502 does not elsewhere adequately remedy." *Varity*,

516 U.S. at 512.

      CIGNA further contends that the "actual harm" required for surcharge must be

"economic harm that was caused by the fiduciary's misrepresentation(s)" and asserts that

the Secretary of Labor "concedes" this. Opp. at 39, 46. Here, CIGNA confuses "actual

harm" with losses proximately caused by that harm. The Secretary of Labor's amicus

acknowledges that a surcharge remedy provides "compensation only for economic injury,

... not for non-pecuniary harm." Amicus at 22. Plaintiffs acknowledged this limit, too. Pls.

Br. at 44 ("Surcharge can provide a remedy for financial losses but not for other

consequential damages"). But no one besides CIGNA contends that "actual harm" is

confined to "economic harm." Indeed, both the majority opinion and the concurrence

recognize that actual harm may "come from the loss of a right protected by ERISA or its

trust law antecedents," such as "the failure to provide proper summary information," 131

S.Ct. at 1881, which harms participants because of "the lost opportunity to contest or

react to the switch." *Id*. at 1885.[11]

CIGNA's retort to the *Amara* majority's description of "actual harm" as the "loss

of a right protected by ERISA or its trust-law antecedents" (131 S.Ct. at 1881) is that

"this would render the separate harm and causation requirements meaningless" and allow

surcharge for "nonexistent" harm. Opp. at 42. Neither point is logical and this would

clearly disregard what the Supreme Court said. Even the concurrence recognizes that "the

lost opportunity to contest or react to the switch" constitutes "harm." 131 S.Ct. at 1885.

As shown by the statutory policies and legislative history, the "injuries defined by ERISA

itself" include the injuries from "misleading or incomprehensible" disclosures about

retirement and other employee benefits. H.R. Rep. 93-533, at 7, 1974 U.S.C.C.A.N. at

4646; S.Rep. 93-127, at 10, 1974 U.S.C.C.A.N. at 4847.

CIGNA's opposition also fails to respond to Plaintiffs' point that "circumstantial

evidence" is commonly used to establish harm. Instead, CIGNA says that Plaintiffs are

requesting a "presumption on harm and causation." Opp. at 41-44. But Plaintiffs have

discussed a "presumption" only in connection with estoppel. Pls. Br. at 41-42. CIGNA

acts, moreover, as though the only types of evidence relevant to harm are subjective "state

of mind" testimony and evidentiary presumptions. But circumstantial evidence plainly is

---

[11] In the case of statutory violations, actual harm or injury is commonly established by showing "the invasion" or loss of the "legal rights." *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 500 (1975); *Havens Realty Corp v. Coleman*, 455 U.S. 363, 372-74 (1982); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992).

the most common way that harm or injury is proven. Further bolstering Plaintiffs' position, CIGNA itself attempts to establish that harm was "nonexistent" with circumstantial evidence related to employees' knowledge of their "accounts," rather than relying on any direct evidence of each individual's knowledge or state of mind. Opp. at 4, 21, 29, 31.

Essentially CIGNA is trying to rewrite the Supreme Court's opinion on "actual harm" to make it the same as the reliance required for equitable estoppel or misrepresentation. CIGNA tellingly contends that *Pearson v. Voith Paper Rolls, Inc.*, 656 F.3d 504 (7th Cir. 2011), holds that harm from misrepresentation is speculative unless the employee "can also show that he had any realistic chance of striking a better deal." Opp. at 48. *Pearson* is actually a detrimental reliance case. The Seventh Circuit held that "detrimental reliance in the ERISA estoppel context requires a showing of economic harm" and in that context, Pearson failed to produce "sufficient evidence on the issue of detrimental reliance." 656 F.3d at 510-511.

As our opening brief states, the elements for equitable estoppel where there is no fiduciary duty are different than the elements for breach of a fiduciary duty to disclose. Pls. Br. at 41. The line of "duty to disclose" cases that began with *Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747, 750 (D.C. Cir. 1990), and *Bixler*, 12 F.3d at 1300, is based on §173 of the *Restatement of Trusts*. When there is a duty to disclose, the fiduciary cannot defend by requiring each beneficiary to prove reliance before any relief will be

41

provided.[12] CIGNA's opposition does not even mention the Second Circuit's endorsement of the *Bixler* and *Eddy* line of cases in *Estate of Becker v. Eastman Kodak*, 120 F.3d 5, 8 (2d Cir. 1997).

With respect to "causation," CIGNA ignores the Supreme Court decisions, consistent with equity, that causation is a "flexible concept that does not lend itself to a black-letter rule," *Bridge v. Phoenix Bond & Indemnity*, 553 U.S. 639, 654 (2008), but is determined by whether the relation to the loss is "substantial enough and close enough to the harm to be recognized by law." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 704 (2004). Here, the only causation issue is whether the loss of the right to contest or react to the benefit reductions is proximately related to the reductions. Plaintiffs' actuary, Mr. Poulin, prepared spreadsheets that calculate the differences between the plan's benefits with and without the benefit reductions and the wear-aways. Trial Exs. 3-4, 7. Defendants' actuarial expert, Mr. Sher, concedes that those differences were foreseeable and should have been calculated as part of CIGNA's due diligence before preparing the disclosures. 534 F.Supp.2d at 305. This Court already identified the different actions participants could have taken to "contest or react" to the changes with full disclosure. *See id*. at 354.

---

[12] CIGNA observes that the employer failed to disclose the way to continue health coverage to Mr. Bixler's widow, whereas we incorrectly said the failure to disclose involved Mr. Bixler. Opp. at 49 n.36. Regardless, there was no discussion of a need for Mrs. Bixler to establish "reliance." The Third Circuit held that "the failure to advise her of the available benefits might be found to be a breach of fiduciary duty despite the fact that her inquiry was limited to the availability of a death benefit."12 F.3d at 1302.

CIGNA concedes that Plaintiffs' communications expert established that the misleading and incomplete disclosures were "material," Opp. at 44, which means that a reasonable plan participant "might have considered them important in the making of...decision[s]." *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 153-54 (1972); *Res. (2d) of Contracts*, §162(2) ("A misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so"). CIGNA's internal communications, including the communications with Don Levinson, CIGNA's Senior Vice President for Human Resources, indicate awareness at the highest levels of the potential for an employee "backlash" against the changes and the steps other companies like Deloitte had to take when disclosures of reductions got out. 534 F.Supp.2d at 344. In these circumstances, this Court found that "[t]he risk of an adverse employee reaction should the true magnitude of the reductions" be disclosed was "real." *Id*. at 343. Plaintiffs have supported their position with social science evidence in the form of the 1999 survey by renowned pollster Frank Luntz, findings from behavioral economics on "loss aversion," and a standard labor economics text on the trade-off between wages and employee benefits. Pls. Br. at 57-58. In these circumstances CIGNA's misleading disclosures about the reductions were a proximate cause of the benefit losses.

The Secretary of Labor's amicus brief makes the important point that "once a beneficiary shows that a trustee's breach of duty caused some loss, uncertainties over the

extent of the loss are resolved against the trustee." Amicus at 23-24 (citing Bogert, the *Restatement* and cases); *accord, Meinhard v. Salmon*, 164 N.E. 545, 547 (N.Y. 1928) (dismissing argument that warning "would have been of little value even if seasonably offered, as "[s]uch a calculus of probabilities is beyond the science of the chancery").

CIGNA's inflexible approach would, by contrast, demand no countervailing evidence from CIGNA and allow CIGNA to deny causation, and place further burdens on each class member to appear in court, and essentially speculate about what he or she would have done with disclosure. CIGNA's opposition would also rule out quantifying the injury based on the amount of the benefits that were lost. Opp. at 42, 44-45. According to CIGNA, each class member would need to quantify his or her loss on some basis other than the amount of benefits that CIGNA misleadingly described. *Id*. Although CIGNA admits that the evidentiary standard is a "preponderance of the evidence," Opp. at 4, 8 and 131 S.Ct. at 1881, CIGNA simultaneously asks that each employee jump through these evidentiary hoops while presenting no evidence of its own. CIGNA would ignore the principle cited by the Secretary of Labor that "once a beneficiary shows that a trustee's breach of duty caused some loss, uncertainties over the extent of the loss are resolved against the trustee," and attempt to shift all uncertainties to the participants.

Noticeably, CIGNA no longer argues a lack of "tracing" as a defense to unjust enrichment. *Compare* Dkt.#276 at 18 n.18. This is consistent with Plaintiffs' position that "tracing" was never required for surcharge, but is used in cases where the person who

made the representation did not have a fiduciary duty. Pls. Br. at 46. CIGNA's current

defense against unjust enrichment is that CIGNA's enrichment was not caused by the

disclosures, but was caused by the changes to the Plan. Opp. at 3 n.3, 22-23. In reality, the

two are not separable. CIGNA protected itself from any "backlash" from its reductions by

failing to disclose them and affirmatively misleading participants that there were no

reductions or cost savings to CIGNA. The participants are not required to establish "but

for" causation to obtain relief, or to quantitatively distinguish the losses from the

disclosures and the losses from the changes.

## VI.    Reformation Is Available to Remedy the "False or Misleading" Representations of Comparable Benefits with No Cost Savings, and that "Each Dollar's Worth of Credit" Was for the Employees.

The Supreme Court has ruled that "what the District Court did here may be

regarded as the reformation of the terms of the plan, in order to remedy the false or

misleading information CIGNA provided." 131 S.Ct. at 1879. Reformation is "a type of

equitable relief typically available prior to the fusion of law and equity" which "has been

recognized as an appropriate equitable remedy for certain ERISA violations." *DePace*,

257 F.Supp.2d at 566-67 (citing cases). Reformation is generally based on "mistake," but

mistake is an equitable concept which includes mistake of law and is particularly flexible

when the mistake involves "inequitable conduct" or parties in "relations of trust." *See*

*generally Pomeroy's Equity Jurisprudence* (5th ed.) §§847-48 (trustee has duty "not to

mislead [the beneficiary], and not even to suffer him to be misled when such a result can

45

be prevented by reasonable diligence and prudence"). When a plan/trust/contract is reformed, the general rule is that the reformation "relates back to, and takes effect from the time of, its original execution" except for bona fide purchasers. 76 *C.J.S.* "Reformation of Instruments," §101. Thus, an injunction to redo the Plan's records in accordance with the reformation, as this Court previously ordered, 559 F.Supp. at 222, is entirely consistent with equity.

Plaintiffs submit that reformation is warranted here because employees continued working for CIGNA with the reasonable expectation that they were continuing to earn "comparable" or "larger" retirement benefits with no "cost savings" to CIGNA. 534 F.Supp.2d at 340-41. With its representations that "[each] dollar's worth of credits is a dollar for your retirement," *id*. at 349, CIGNA promised employees an "A + B" transition with comparable or larger benefits going forward. Plaintiffs contend, and the evidence supports, that if the employees had understood what CIGNA was doing during the time-frame when the amendments were being formulated and placed into effect, their timely objections might have scuttled CIGNA's switch to a much less favorable cash balance formula with a wear-away design, or at least caused the changes to be revisited and re-examined. Those arguments struck this Court as compelling, because this happened in other cash balance conversions involving Deloitte and IBM and because CIGNA executives up to the highest levels voiced their concern among themselves with an employee "backlash" against the reductions. CIGNA's argument that everything would

46

have been the same is, by contrast, implausible given this record, particularly the executive-level communications and the absence of any evidence from CIGNA to that effect. CIGNA may not shift the responsibility for the fact that we will never know with certainty what the losses to the employees ultimately would have been with disclosure. *See* Amicus at 23-24 (citing cases). An inference may also be drawn from CIGNA's failure to testify in the bench trial or at the remedies stage (and CIGNA's failure, even now, to identify the CIGNA executives who purportedly knew about the wear-away provisions all along). *See Gray v. Great American Recreation Ass'n, Inc.*, 970 F.2d 1081, 1082 (2d Cir. 1992) ("The law creates a presumption, where the burden is on a party to prove a material fact peculiarly within his knowledge and he fails without excuse to testify, that his testimony, if introduced, would be adverse to his interests").

With no basis, CIGNA suggests that reformation requires "reliance." Opp. at 32. However, the Supreme Court has clearly rejected that proposition, 131 S.Ct. at 1880-81, and it finds no support in any standard authority on equity or trust law. The remainder of CIGNA's arguments against reformation rest on two points: (1) that the "settlor's intent" is whatever is in the Plan document as opposed to an SPD, SMM or 204(h) notice, and (2) that reformation can only be established through testimony from each individual participant about their subjective "mental condition." Opp. at 25-33, 50-51.

Thus, according to CIGNA, reformation cannot result even when a Plan sponsor engages in fraud or misrepresentation because the "settlor's intent" is whatever is in the

Plan document, and not the fraudulent or misleading promises in the SPD/SMM/204(h) notice. Opp. at 25-26. In other words, when CIGNA tells its employees from a position of trust as fiduciary and Plan administrator that "each dollar's worth of credit is a dollar of retirement benefits payable to you," CIGNA as the "settlor" never intended for that to be true. CIGNA's not-so-veiled suggestion is that when a company sets out to deceive the beneficiaries, it ought to get away with it, despite the violations of the statute, precisely because the "settlor's intent" was to deceive the employees. This is not equitable or even sensical.

CIGNA also attempts to reframe "mistake" as a "mistake about the terms of the Plan." Opp. at 50. But "[a] mistake is a belief that is not in accord with the facts," *Res. (2d) of Contracts*, §151, *i.e.*, the representations in the SPD/SMM that were not in the plan document. The typical problem for a plaintiff seeking reformation is proving that the defendant was "mistaken," or if not mistaken, was engaged in fraud or other unjust conduct. *See* 76 *C.J.S.* "Reformation of Instruments," §92. The case law establishes that "mistake" can be proven by "state of mind" or "subjective facts." *See, e.g.*, *Alabama Great Southern R.R. Co. v. Louisville & Nashville R.R. Co.*, 224 F.2d 1, 5 (5th Cir. 1955). Defendants may also admit to a mistake, not only through testimony at trial, but by otherwise admitting to having misrepresented the terms of the plan/trust–as CIGNA's brief does here. Opp. at 8, 20, 35, 39-40, 42-43. Mistake can also be proven by circumstantial evidence of misrepresentation provided that the "natural and reasonable

48

inferences" "clearly and decidedly prove the alleged mistake." 76 *C.J.S.* "Reformation of Instruments," §94; *see also Hanover Ins. Co. v. American Engineering Co.*, 105 F.3d 306, 310 (6th Cir. 1997) ("circumstantial evidence" was sufficient for jury to infer that "American agreed that the policy would exclude all professional liability").

Here, it is a "mistake" when a plan administrator with a duty to accurately and understandably disclose reductions prepares "summary documents" that describe the Plan's future benefit in a manner that conflicts with the reductions in the plan document. If that is not a mistake, it is certainly fraud or inequitable conduct. *See Res. (2d) of Contracts* §166; *Tokio Marine & Fire Ins. Co. v. National Union Fire Ins. Co.*, 91 F.2d 964, 966-67 (2d Cir. 1937) (finding "inequitable conduct" where insurance company made changes to coverage and did not communicate those changes); *Volker v. Connecticut Fire Ins. Co.*, 91 A.2d 883, 888 (N.J. Super. 1952) (reformation appropriate where insurance company failed to disclose change in clause and "Plaintiff was thus lulled into the mistaken belief that he was covered"). An inference of mistake can also be drawn from CIGNA's failure to have anyone testify at trial. *Gray*, 970 F.2d at 1082.

CIGNA cites no cases, and Plaintiffs have located none, in which the beneficiaries of a trust have each been required to provide individual testimony on their state of mind in order to obtain reformation. In the reformation cases where there are groups of plaintiffs who were not represented in the negotiation of a plan/contract, objective "reasonable expectations" are used instead of subjective individual testimony. *Young v.*

49

*Verizon's*, *supra*, 615 F.3d at 819; *Mathews v. Sears Pension Plan*, 144 F.3d 461, 466-67 (7th Cir. 1998); *Cross v. Bragg*, 329 Fed.Appx. 443, 455 (4th Cir. 2009); *Rea v. Hershey Co. 2005 Enhanced Separation Plan*, 2008 WL 2782663, at *8 (M.D. Pa. 7/15/2008). Indeed, *Young*, a $1 billion reformation case far larger than this one, was resolved against the employees based on the employer's error and the employees' "reasonable expectations."

In the context of a non-negotiated plan, whether the reformation of the plan's terms favors the employer or the employees, reasonable expectations based on the "summary documents is virtually all there is to go by. The only plan documents employees typically see are the "summary documents." *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 584 (2d Cir. 2006); *Layaou v. Xerox Corp*., 238 F.3d 205, 209 (2d Cir. 2001). In this instance, the plan document was not even available until the end of 1998, over a year after the 204(h) notice and SMM, and there is no indication that any employees saw it. Even CIGNA's CEO, Wilson Taylor, and its Senior Vice President for Human Resources, Don Levinson, testified at depositions in the *Depenbrock* litigation that they never read the Plan document. New Ex. 267 (Taylor Dep. at 12-13; Levinson Dep. at 20-21). Accordingly, if individual testimony were required, employees would not be able to testify to a "mistake" in CIGNA's preparation of the Plan document, but only to their expectations concerning CIGNA's retirement benefits. In these circumstances, courts have used objective "reasonable expectations" rather than

50

rigidly requiring subjective testimony from each individual.

CIGNA's opposition to "reasonable expectations" as the basis for reformation seeks to distinguish Dobbs §11.6(1) as limited to insurance policies. Opp. at 32-33. But *Young v. Verizon* and the other cases cited above show that the use of reasonable expectations in reformation cases is not limited to the reform of insurance policies. CIGNA also offers no response to Plaintiffs' point that the policy of ERISA §2, 29 U.S.C. §1001, is to protect "anticipated retirement benefits" and that the SPD regulations are designed to require the "circumstances" that can cause a loss or reduction of "reasonably expected" benefits to be disclosed in accurate and understandable terms. 29 C.F.R. 2520.102-3(l). The SPD regulations do not depend on subjective expectations for a violation, but on the objective reasonable expectations of the "average plan participant." CIGNA's proposed distinction between using reasonable expectations for reformation of insurance policies but not for reformation of ERISA plans is, moreover, untenable since most group insurance plans are ERISA plans. *See, e.g.*, *LaAsmar v. Phelps Dodge Corp. Life*, 605 F.3d 789, 808-9 (10th Cir. 2010) (affirming decision that plan administrator wrongfully denied benefits; "[T]o interpret the term 'accident' as used in the AD&D policy at issue here to preclude coverage under these circumstances would not be faithful to the reasonable expectations of the parties"). CIGNA also contends that reforming the Plan so it does not violate legal standards like the SPD disclosure rules is a non-traditional form of reformation, citing Dobbs §4.3(7), rather than a "typical" one. Again,

51

it is the "category" of relief, *e.g.*, reformation, that *Mertens* says must be "typically available in equity," not all of the circumstances in which it is applied. Moreover, rather than strait-jacketing the courts, the categories of relief typically available in equity are to be "modified by the obligations and injuries identified by ERISA itself." 131 S.Ct. at 1882.

CIGNA further argues that an ERISA "plan" should enjoy an exemption from reformation as a result of the actions of the plan administrator. *See* Opp. at 24. Obviously, a corporation, a partnership or an ERISA plan is ordinarily bound by acts of its agents that are within their apparent authority. *See, e.g.*, 131 S.Ct. at 1885 (concurrence) ("Admittedly, reformation might be available if the third party was an agent of a contracting party and its misrepresentations could thus be attributed to it under agency law"); *Wasley Prods. v. Bulakites*, 2006 WL 3834240 *6, 2006 U.S. Dist. LEXIS 94632 *21 (D.Conn. 5/31/2006) ("majority of courts to have considered this issue context have held that an employer/principal may be held vicariously liable under ERISA for the acts of its employee when the employee breaches fiduciary duties while acting within the scope of his employment") (collecting cases). Typically if there is any limitation in liability, it does not limit the principal's liability, but runs to other parties, for example, limiting the shareowners' liability or in an ERISA context limiting a *plan sponsor's* liability to retirement plan assets when a plan is terminated. *Arnold v. Arrow Transp. Co.*, 926 F.2d 782, 785-86 (9th Cir. 1991). Following agency law, when a plan administrator

makes representations, the only legitimate question should be whether the administrator's actions are so outside of their apparent authority that the Plan should not be bound. *See Res. (3d) of Agency* §3.09; *Kral v. Southwestern Life Ins. Co.*, 999 F.2d 101, 103-4 (5th Cir. 1993) (insurance company not vicariously liable where agent was "acting outside the scope and authority of his agency relationship with SWL" when breach occurred)

Here, CIGNA's Plan document provides that the Plan administrator will have certain disclosure duties. Trial Ex. 1 at Section 13.2 (D00329). To the extent the authority described in the Plan document is ambiguous, CIGNA conceded its effect in its previous briefing on liability, stating that "Where as here, a plan administrator has been designated by the sponsor, that plan administrator alone – and not the sponsor – is responsible for any disclosure violations." Dkt.#251 at 106. Having bestowed that discretionary authority over disclosures on itself as the Plan administrator, it was foreseeable that the exercises of that authority would bind the Plan. Indeed, practically every circuit has held that representations in an SPD may bind the Plan. *See, e.g.*, *Heidgerd v. Olin Corp.*, 906 F.2d 903, 907 (2d Cir. 1990); *Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 110 (2d Cir. 2003). Similarly, the cases on equitable estoppel recognize that a Plan can be bound with reliance on an agent's representations– even though, in CIGNA's view, the Plan "has not done anything wrong." *See Pell*, 539 F.3d at 308.

**VII.   If Necessary, Estoppel Is Available to Remedy the Promises that CIGNA Would Not Take Benefits Accrued from the Employees But Would Add "Each Dollar's Worth of Credit" to Them.**

The Supreme Court found that this Court's A + B remedy "essentially held CIGNA to what it had promised, namely, that the amended plan would not take from its employees benefits they had already accrued" and that "this aspect of the remedy resembles estoppel." 131 S.Ct. 1880. The majority also ruled, however, that "when a court exercises its authority under §502(a)(3) to impose a remedy equivalent to estoppel, a showing of detrimental reliance must be made." *Id*. at 1881.

Contrary to CIGNA's opposition (*id*. at 49), Plaintiffs have not "abandoned" estoppel. Plaintiffs merely stated that this Court probably does not need to reach it, given the other categories of equitable relief that are available: injunction, reformation and surcharge. Pls. Br. at 42. If this Court does reach estoppel, Plaintiffs submit that the "reliance" element can be satisfied by continuing to work without contesting or reacting to the changes, or, alternatively, that Plaintiffs can satisfy that element with a rebuttable evidentiary presumption of reliance. *Id*. at 41-42.

CIGNA's opposition never addresses reliance from continuing to work for CIGNA under the terms and conditions represented in CIGNA's disclosures (as in *Monson v. Century Manufacturing Co.*, 739 F.2d 1293, 1302 (8th Cir. 1984)) or from "the lost opportunity to contest or react to the switch," *i.e.*, forbearance.

CIGNA's opposition only cursorily argues against a presumption of reliance, Opp.

at 8 n. 4, 42 n.7, and does not address the use of rebuttable evidentiary presumptions,

including under ERISA. *See* F.R.E. 301 ("In all civil actions and proceedings...a

presumption imposes on the party against whom it is directed the burden of going forward

with evidence to rebut or meet the presumption"). Most recently, in *Gray v. Citigroup*

*Inc.*, --- F.3d ---, 2011 WL 4950368 *7, 2011 U.S. App. LEXIS 21463 *21-23 (2d Cir.

10/19/2011), the Second Circuit ruled that a rebuttable presumption should be adopted

when "it provides the best accommodation between the competing ERISA values."

Should this Court need to address estoppel to provide a remedy, the same consideration of

the best accommodation between the competing ERISA values applies here.

## VIII.  The Class Should Not Be Decertified Based on Contrived "Individualized" Elements for Each Category of Equitable Relief.

Plaintiffs have focused almost entirely on CIGNA's arguments about appropriate

relief under ERISA because we found CIGNA's decertification arguments to be circular.

This Court has already determined that "certification under Rule 23(b)(2) was appropriate

and does not serve as a bar to relief, whether under ERISA §502(a)(1)(B) or § 502(a)(3)."

559 F.Supp.2d at 201. The Court found that certification was appropriate because "any

injunctive or declaratory relief ordered by the Court could be implemented as to all class

members without regard to the members' individual circumstances, and any monetary

relief awarded to Plaintiffs would be as a direct result of the equitable relief ordered. The

calculation of benefits would be a mechanical process that would not depend in any way

on 'the subjective considerations of each class member['s] claims." *Id*.

55

While *Wal-Mart Stores Inc. v. Dukes*, 131 S.Ct. 2541, 2558-59 (2011), suggests that Rule 23(b)(2) certification is insufficient if there are back pay claims, *Wal-Mart* does not change this Court's analysis. CIGNA's Opposition/Memorandum does not dispute the point in our opening brief that Plaintiffs are not seeking back pay as such and that the injunctive relief in (b)(2) "carr[ies] with it the full range of equitable remedies." Pls. Br. at 92 (quoting *F.T.C. v. Bronson Partners*, 654 F.3d 359, 365 (2d Cir. 2011)). In the alternative, even if some part of the relief was outside of Rule 23(b)(2) or if individual proofs were required to secure some part of the equitable relief, this action could be certified under Rule 23(b)(1) as an action for "breach of trust" with "a risk of ... inconsistent or varying adjudications." Pls. Br. at 92.

CIGNA's argument against class-action treatment is premised on its assertion that "no class-wide common proof is available as to all of the elements necessary to impose equitable estoppel, surcharge or reformation," Opp. at 38, and that an "individualized" showing is required before any remedy is awarded. CIGNA is correct to the limited extent that if this Court were to require an "individualized" proof as an essential element for any of the four equitable remedies discussed in *Amara*, that aspect of the case could not be handled on a class-wide basis, unless *Teamsters* hearings[13] or special masters[14] were used. CIGNA has not even argued that class treatment would be unwarranted if CIGNA was

---

[13] *Teamsters v. United States*, 431 U.S. 324, 371 (1977).

[14] F.R.C.P. 53; *Manual for Complex Litigation*, §11.52.

56

incorrect about whether an individualized showing of mistake, harm or reliance is required for reformation, surcharge or estoppel, respectively. Accordingly, CIGNA's argument on decertification boils down to who is correct about whether an individualized showing of mistake, harm or reliance is required, and whether any of those elements is required for injunctive relief.

A general indication that CIGNA is incorrect can be drawn from its demand for subjective individual testimony. While subjective individual testimony from each plaintiff may make a large class actions "unrealistic," it also would generally preclude the resolution of individual actions in either side's favor on a motion for summary judgment. *See, e.g., Patrick v. Le Fevre*, 745 F.2d 153, 159 (2d Cir. 1984) ("[W]here subjective issues regarding a litigant's state of mind, motive, sincerity or conscience are squarely implicated, summary judgment would appear to be inappropriate"); *Herman v. Provident Mut. Life. Ins. Co.,* 886 F.2d 529, 536 (2d Cir. 1989). CIGNA cites no individual ERISA cases or class actions in which summary judgment on equitable relief has been denied for wont of subjective individual testimony.

As we have already demonstrated, there is no support for an individualized showing of any element required to obtain relief for the 204(h) violation. CIGNA does not argue, moreover, that individualized proof is required for any other kind of affirmative or negative injunction, for example, to effect the "A + B" relief for CIGNA's SPD/SMM violations. There is also no support for an individualized showing of

57

"mistake" by trust beneficiaries to obtain reformation. Nor is there support for an

individualized showing from each class member of the "actual harm" the Court required

for surcharge. Indeed, the majority opinion in *Amara* affirmatively suggests that it is not

necessary "[i]n the present case" because "it is not difficult to imagine how the failure to

provide proper summary information, in violation of the statute, injured employees even

if they did not themselves act in reliance on summary documents ... for they may have

thought fellow employees, or informal workplace discussion, would have let them know

if, say, plan changes would likely prove harmful." 131 S.Ct. at 1881. Even the concurring

opinion acknowledges that harm is shown by "the lost opportunity to contest or react to

the switch." *Id*. at 1885. The only category of equitable relief for which a decent

argument can be made for "individualized" proof is estoppel. *See id*. at 1881. As we have

stated, this Court need not reach estoppel, and if it is reached, reliance can be shown by

continuing to work without contesting or reacting to the changes, or by a rebuttable

evidentiary presumption of reliance.

CIGNA asserts that *UFCW Local 1776 v. Eli Lilly & Co.* , 620 F.3d 121, 131-36

(2d Cir. 2010), *cert. denied*, 131 S.Ct. 3062 (2011), establishes that this Court should

"deny [] certification because causation and harm are not subject to class-wide proof."

Opp. at 39. *UFCW Local 1776* contains no such holding. *UFCW Local 1776* is a RICO

case where plaintiffs alleged they paid for prescriptions that would not have been issued

but for misrepresentations about the efficacy of a drug and that they also paid a higher

price for the drug due to the misrepresentations. The Second Circuit ruled that plaintiffs'

excess price theory was "not susceptible to generalized proof with respect to either

but-for or proximate causation." "Any reliance by doctors on misrepresentations as to the

efficacy and side effects of a drug, therefore, was not a but-for cause of the price that

TPPs ultimately paid for each prescription." 620 F.3d at 133-134. The Second Circuit

ruled that there could be no generalized proof of proximate cause because "plaintiffs'

theory of liability rests on the independent actions of third and even fourth parties." *Id*. at

134.

Although CIGNA refers to "individualized" elements thirty-seven (37) times in its

opposition, CIGNA never actually identifies what an individual would need to show

under its theories to secure relief if this case were decertified after the disclosure

violations have already been established. The first and only mention of "individualized

hearings on the claims of the named Plaintiffs only" occurs in the last sentence of the

Conclusion to CIGNA's Opposition. Opp. at 53. CIGNA never describes what the named

Plaintiffs would testify about to secure relief or what CIGNA would need to show to

successfully defend against relief. Even more than before the Supreme Court, CIGNA

skirts what the "individualized" testimony that it repeatedly demands would show.

Given the time and the legal, financial and logistical resources to present so much

individual testimony, Plaintiffs' counsel would like to have every class member testify to

how they trusted CIGNA to provide the honest information about retirement benefits they

needed, how CIGNA never disclosed to them the periods of wear-away or benefit

reductions, and how they continued working for CIGNA without contesting or reacting to

how much their retirement benefits were being reduced. In practice, with a class of

27,000 persons, this would be very repetitive testimony that would consume most of the

next decade from which the Court or special masters would gain little or no new

information.

Class actions and evidentiary inferences or presumptions are designed to eliminate

unnecessary, repetitive proceedings like this. *See Devlin v. Scardelletti*, 536 U.S. 1, 11

(2002) ("one of the goals of class action litigation [is] preventing multiple suits"); *Crown

v. Parker*, 462 U.S. 345, 349 (1983) ("principal purposes of the class-action procedure"

include "promotion of efficiency and economy of litigation"). Obviously, putting on so

much testimony is unrealistic in a case of this size. And at bottom, any testimony about

what an individual would have done if CIGNA had honestly disclosed the reductions, and

what CIGNA would have done in response to such contests or reactions, is speculative

because such disclosures did *not* occur. Managing the presentation of such testimony

would impose an unreasonable burden on the plaintiffs and the Court merely for the

purpose of permitting CIGNA to lessen its liability for proven misrepresentations to all of

its employees. In essence, CIGNA is acting as though it has a legal right to demand that

the plaintiffs present their evidence on an "individualized" basis–even in circumstances

where common proof obviously is available. Equitable proceedings are not, however,

criminal cases in which an accused can demand that the State prove its case beyond a

reasonable doubt without the accused doing anything. Allowing a defendant particularly

one who was in a position of trust to demand in a court of equity that the plaintiffs must

proceed individually, instead of through common proofs in a case of this size, would

produce "ridiculous" results, *Klay v. Humana, Inc.*, 382 F.3d 1241, 1260 (11th Cir. 2004),

and defeat equity's maxim of not suffering a right "without a remedy." 131 S.Ct. at 1879.

A much more suitable way to achieve equity's goals is to adopt the position that the

"actual harm" to the employees is, in Justice Breyer's and Justice Scalia's words, "the

loss of a right protected by ERISA" and the ensuing "lost opportunity to contest or react

to the switch." 131 S.Ct. at 1885. This is clearly more suitable than CIGNA's inflexible

and unworkable alternative of requiring 27,000 class members to come to court and at

bottom speculate about what each would have done differently nearly 15 years ago if

CIGNA had properly disclosed the reductions in future benefits that it was planning.

As indicated, the outlines of what CIGNA believes employees should have to say

to prevail are sparse, but very unreasonable to the extent known. CIGNA assured the

Supreme Court that although it wants each of 27,000 employees to testify about his or her

state of mind, this "is hardly an exacting burden," just a matter of "testify[ing] about the

state of their *own* minds." Ex. 255 at 38-39 (emph. orig.). At the same time, CIGNA told

the Supreme Court that each individual would need to testify to reading the SPD. Ex. 255

at 38. While the Court clearly rebuffed that position, 131 S.Ct. at 1881, CIGNA's

61

Opposition adjusts only slightly, asserting that each employee must now either testify that they read the SPD, or that they believed that others would let them know if the SPD disclosed reductions. Opp. at 42 n.26.

Based on the arguments in CIGNA's opposition and its Proposed Findings, we may further infer that CIGNA wants individual subjective testimony about:

- Whether each employee believed the Plan document entitled them to "A + B," Opp. at 4, 31;

- What changes in "investment strategy or retirement planning" or "ask[ing] for a raise" they would have done "had they had the missing information," *id*. at 47; and

- Why each individual believes "CIGNA would have changed the plan design in response to employee complaints or organizing." *Id*. at 48.

In the oral argument before the Supreme Court, CIGNA's counsel stated, as a kind of coup de grace, that each employee should ultimately have to show they would have left CIGNA with sufficient disclosures. Ex. 252 at 23 ("The only way they could have been harmed, Justice Breyer, is if they had otherwise decided to leave the employ of the company and go someplace else. They could demonstrate that"). This idea now resurfaces in CIGNA's opposition in the remarks about four of the individual employees who testified (Flannery, Upton, Law, and Amara). CIGNA asserts that "there is substantial evidence [they] were not harmed" because they did not leave CIGNA immediately upon

learning that anything was reduced. Opp. at 47.[15]

As mentioned, CIGNA's opposition also asserts that there might also be some executives and actuaries or other benefit specialists who knew about the true nature of the plan, including the wear-aways, all along. Opp. at 48 n.34. A similar colloquy took place between CIGNA's lead counsel, Joseph Costello, and the Court in the April 2008 oral argument on relief:

> **Mr. Costello**: Our point, and we make it in our brief, is there were obviously some people at CIGNA who knew the benefits were subject to a wearaway. In fact, your Honor found that one of the reasons CIGNA was at fault here is that CIGNA knew that the benefits were subject to a wearaway and CIGNA could only know that through employees who know that. . . .

> **Judge Kravitz:** I just want to be clear, that that is --so the executive group that designed the plan and knew what its terms were and [that there] would be wearaway, that executive group would be denied all benefits?

> **Mr. Costello:** Any individual that knew that the plan was subject to wearaway, whether it be an executive, whether it be people from CIGNA's pension business --

> **Judge Kravitz:** We could start, I think you should start, with your depositions with the executives who designed this plan and start taking their depositions and inform them that the reason you are taking it is because you want to know if they were aware of wearaway because if they are, then whatever relief the Court orders, you are going to be denied that relief. You can start with the executives. . . I would like you, in your subsequent filing, to indicate whether the executive group which you are going to talk to would like to opt out of the class because they were in full possession of knowledge of wearaway, okay?

---

[15] As this Court already recognized, the issue is "timely" notice to all employees about the reductions, not what employees do with belated individual notice that benefits were being reduced to some extent. 534 F.Supp.2d at 352.

> **Mr. Costello:** The individuals who were involved, who have been attributed with knowledge regarding the existence of wearaway, we will do that, your Honor.

4/30/08 Tr. at 84-85, 87. In their post-argument submission, CIGNA stated "The executives responsible are no longer employed by CIGNA, and Defendants believe that any class member---executive or otherwise—who had or obtained knowledge of the information that the Court found was not properly disclosed should be denied a remedy." Dkt.#280 at 11. CIGNA never identified a single one of those executives. Here again, CIGNA suggests that some executives knew about the changes and should not recover. But here again, CIGNA does that without identifying a single such individual or asking for any evidentiary hearings or individualized proceedings to do so. Opp. at 48 n.34.

CIGNA's argument against proceeding under Rule 23(b)(1) if Rule 23(b)(2) presents any difficulty is also without merit. After demanding that each class member testify on his or her state of mind and these subjects, CIGNA maintains that there should be no risk of inconsistency under Rule 23(b)(1) because each class member's entitlement to relief "depends on that individual's circumstances." Opp. at 52. It is, however, totally implausible that the circumstances of harm or mistake could be so unique that no ruling involves the same circumstances. The case law recognizes the risk of inconsistency in individual determinations and rejects arguments that there is no risk of inconsistency for purposes of Rule 23(b)(1) because one party says so. *See, e.g.*, *In re Ikon Office Solutions, Inc. Sec. Litig.*, 191 F.R.D. 457, 466 (E.D. Pa. 2000) (court rejected Defendants'

arguments that "a 23(b)(1) class is inappropriate in the presence of any individualized

issues" and "that the elements of reliance and causation are too individualized to allow a

class action to proceed for those who held their stock." "[T]he potentially individualized

questions do not affect any of the essential aspects of the class action, which are the

common course of conduct by the defendants towards the putative class and the

significance of the misrepresentations, if any. The court agrees that, given the nature of an

ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the

class would leave future plaintiffs without relief"); *accord*, *In re Citigroup Pension Plan

ERISA Litig.*, 241 F.R.D. 172, 179-180 (S.D.N.Y. 2006) ("language of subdivision

(b)(1)(A), addressing the risk of 'inconsistent adjudications, speaks directly to ERISA

suits, because the defendants have a statutory obligation, as well as a fiduciary

responsibility, to 'treat the members of the class alike.' The proposed class members

number in the thousands; they all suffered the same statutory violations and are therefore

entitled to similar forms of relief, including reformation of the Plan to comport with

ERISA"); *Richards v. FleetBoston Fin. Corp.*, 238 F.R.D. 345, 353 (D.Conn. 2006);

*Flanigan v. GE*, 1998 U.S. Dist. LEXIS 22873, *21-22  (D. Conn. 9/28/1998); *Becher v.

Long Island Lighting Co.*, 164 F.R.D. 144, 151 (E.D.N.Y. 1996).

**Conclusion**

      CIGNA's opposition and its request for decertification are remarkable in that for

the first time CIGNA is admitting that it engaged in misrepresentations about the cash

balance plan's benefits in its capacity as Plan administrator. Opp. at 19, 24. CIGNA

further admits that it knows the individualized proof it is demanding is "unworkable"

with 27,000 class members. *Id*. at 37 n.22. CIGNA contends nevertheless that equitable

relief is unavailable under ERISA §502(a)(3) and FRCP 23(b)(2) or (b)(1). CIGNA offers

no response to how that outcome would fulfill the Supreme Court's direction to make

participants whole for violations of ERISA identified by this Court or how it comports

with the maxim that "equity suffers not a right to be without a remedy."131 S.Ct. at 1879.

Nor does CIGNA ever address its concession in opposing Plaintiffs' petition for certiorari

to the Supreme Court that this Court has "broad remedial discretion under ERISA,"

including to order "a return to Part A."

     For the foregoing reasons, Plaintiffs request that this Court deny CIGNA's motion

for decertification and issue an Order providing appropriate make-whole relief to the

members of this class for the violations of ERISA this Court identified in the February 15,

2008 Memorandum Decision.

Dated: November 14, 2011

                                   Respectfully submitted,

                                  s/ Stephen R. Bruce
                                 Stephen R. Bruce Ct23534
                                 Allison C. Pienta phv01316
                                 805 15th St., NW, Suite 210
                                 Washington, DC 20005
                                 (202) 289-1117

                                  s/ Thomas G. Moukawsher
                                 Thomas G. Moukawsher Ct08940

Moukawsher & Walsh, LLC
21 Oak St.
Hartford, CT 06106
(860) 278-7000

Attorneys for Named Plaintiffs and
Plaintiff Class

<u>New Exhibits</u>

265. Conference Brochure for American Conference Institute's Oct. 20-21, 2011 Forum on Defending and Managing ERISA Litigation.

266. CIGNA's 2/16/2010 Reply Brief for Petitioners.

267. Extracts from 6/21/2002 deposition of Wilson Taylor and 6/19/2002 deposition of Don Levinson in *Depenbrock v. CIGNA*.

67

## CERTIFICATE OF SERVICE

I certify that copies of the foregoing (1) Plaintiffs' Reply Brief on Appropriate Equitable Relief and Opposition to Motion for Decertification, (2) Exhibits 265 to 267, and (3) this Certificate of Service were filed electronically through the CM/ECF system on November 14, 2011. Notice of this filing will be sent by e-mail to all counsel listed below by operation of that system:

Joseph J. Costello
Jeremy P. Blumenfeld
Morgan, Lewis & Bockius
1701 Market St.
Philadelphia, PA 19103-2921

Christopher A. Parlo
Morgan Lewis & Bockius
101 Park Avenue
New York, NY 10178-0600

James A. Wade
Brett J. Boskiewicz
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103-3597

 s/ Stephen R.Bruce 
Stephen R. Bruce