UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Janice C. AMARA, individually and on behalf of all others similarly situated,<br>　　*Plaintiff*,<br>　　　*v.*<br>CIGNA CORPORATION and CIGNA PENSION PLAN,<br>　　*Defendants.* | Civil No. 3:01-cv-2361 (JBA)<br><br>January 10, 2017 |

**RULING ON PLAINTIFF CLASS'S OBJECTIONS TO CIGNA'S REVISED 204(h) NOTICES**

On January 14, 2016, this Court issued a Ruling on Proposed Methodology and Request for Order of Compliance Plan [Doc. # 459] (the "Ruling on Methodology"). That Ruling resolved, *inter alia*, certain disputes between the Parties concerning the proper calculation of relief for each member of the plaintiff class. By means of what Plaintiffs styled "Objections to CIGNA's Revised 204(h) Notices," Plaintiffs brought to the Court's attention their views of several problems implicit in the Court's methodology and at least one objection to the methodology dictated by the Court's Ruling. Cigna Corporation and Cigna Pension Plan (collectively "Cigna" or "Defendant") initially objected on procedural grounds, pointing out that Plaintiffs' objection was really an untimely motion for reconsideration that raised the same arguments it had advanced in prior briefing. Defendant argued that "for Plaintiffs to seek reconsideration of this A + B remedy issue in the guise of the revised 204(h) notice objections is unreasonable, untimely, and a waste of the parties' and the Court's resources." Def.'s Response to Objections [Doc. # 465] at 7-8.

While Defendant is technically correct on the timing and purpose of Plaintiffs' objection, the Court recognized possible error in its utilization of the 2009 Plan's Section 7.1(a)(1)'s interest rate floor annuitizing lump sums received after July 1, 2009 and sought supplemental briefing on

this narrow issue by email to counsel dated July13, 2016. Having considered the arguments raised in that briefing, the Court orders (i) that no interest rate floors shall be used to calculate offsets, and (ii) that prejudgment interest and interest credits on lump sums already paid shall be calculated annually using the 30-year Treasury rate for each successive year and revises its Ruling on Methodology accordingly.

### I. Background

The parties' familiarity with the background of this case is presumed. In brief, this case began in 2001 when Plaintiff Janet C. Amara, for herself and on behalf of those similarly situated, brought suit against Defendants Cigna Corporation and the Cigna Pension Plan alleging that they had violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1022(a), 1024(b), and 1054(h) when switching from a defined benefit pension plan ("Part A") to a cash balance plan ("Part B").

In 2008, after a bench trial, the late Judge Mark R. Kravitz found in Plaintiffs' favor, *see Amara v. Cigna Corp.* ("*Amara I*"), 534 F. Supp. 2d 288 (D. Conn. 2008), and ordered damages in the amount of the sum of benefits each employee accrued under Part A and under Part B ("A + B relief"), *see Amara v. Cigna Corp.* ("*Amara II*"), 559 F. Supp. 2d 192 (D. Conn. 2008). Judge Kravitz ruled that appropriate relief entailed providing each eligible employee the benefits he or she had earned under Part A in the form available under Part A (usually, an annuity that commenced at the age of retirement) as well as all the benefits he or she had accrued under Part B, available however Part B made them available.

In crafting this form of relief, Judge Kravitz carefully devised a resolution equitable to both parties. He noted that it is appropriate for Cigna to receive "full credit for the lump sums already paid and for a reasonable amount of interest on those sums since the date of payment." *Amara II*

2

at 216. While the goal of this was to "minimize any overpayment on the Cigna plan's part," *id.* at 217, where there was a risk of overpayment, that risk was to be borne by Cigna as the liable party. In its Ruling on Methodology, this Court applied that principle, resolving several difficulties in the calculation of A + B against Cigna. The Ruling countenanced the possibility that the method could result in double-counting Part A in certain instances and required that result in order to avoid frustrating the reasonable expectations of plan beneficiaries who intended to take their benefits as a lump sum.[1]

## II. Discussion

### A. Interest Rate Floor and Offset Calculation

Of the issues raised by the Parties after the Court issued its Ruling on Methodology and the time for reconsideration had passed, the Court requested briefing on the use of so-called "floor rates" to annuitize lump sums for purposes of calculating the offset to be subtracted from the annuity due under Part A in the remedy.

---

[1] This Court followed Judge Kravitz in finding that "to the extent there remains some risk of overpayment, it is equitable that CIGNA, having provided statutorily inadequate benefit elections forms, bear that risk." *Amara II* at 217; Ruling on Methodology at 10. Adhering to this principle, this Court ordered that Cigna is prohibited from deducting the Initial Retirement Account from Part B when calculating A + B relief for persons who have not yet taken their benefit, even if this leads to overpayment on Cigna's part. The purpose of this order was to avoid frustration of the reasonable expectations of plan participants. As the Court noted, permitting Cigna to deduct the Initial Retirement Account from the lump sum made available to the plan beneficiary would place a beneficiary who anticipated taking his or her benefits as a lump sum in an awkward position: "That individual, who may have been relying on her ability to take the whole $100,000 as a lump sum will be in for a rude surprise when she learns that in fact, she can only take $50,000 upon retirement and will have to wait years to receive the other $50,000." Ruling on Methodology at 10. For that reason, this Court prohibited Cigna from deducting the initial retirement account from the lump sum, even if this resulted in double-counting Part A.

This question arose because this Court held in the Ruling on Methodology that "the plan provisions in place at the time the lump sum was received should control," which in turn led to use of the Plan-defined Applicable Interest Rate. Ruling on Methodology at 17. Using this defined term led to a distinction between beneficiaries who commenced receiving benefits prior to July 1, 2009 and those who commenced receipt after July 1, 2009 because a 2009 amendment introduced these floor rates into the Plan, dictating that "in no event" should benefits commencing after July 1, 2009 for plan participants who elected to receive their benefits as an annuity, "be less than the amount using the Applicable Interest Rate in effect as of July 1, 2009." 2009 Plan, Section 7.1(a). The Court incorporated this provision by establishing an interest rate floor to determine how much credit Cigna should receive for benefits it had already paid to plan participants:

> For each retiree who received a lump sum prior to July 1, 2009, Cigna will receive credit for yearly interest in the amount of the annual rate of interest on 30-year Treasury securities for November of the year before the Plan year. For each retiree who received a lump sum after July 1, 2009, Cigna will receive credit for the same yearly interest, but the interest rate floor will be the amount produced using the Applicable Interest Rate in effect as of July 1, 2009.

Ruling on Methodology at 15-16.[2]

Plaintiffs argue that the Court erred in ordering the use of floor rates for beneficiaries who received benefits after July 1, 2009 to determine the amount of credit Cigna should receive because Cigna has not used the floor rates ("[i]n operation, Cigna has not based any lump sums paid between July 1, 2009 and 2014 on the present value of the qualified annuity [whose calculation

---

[2] In addition to the question on which additional briefing was requested, Plaintiffs raise one further issue about this passage. Plaintiffs interpret this passage to require that interest be calculated each year using the 30-year Treasury rate from the preceding November instead of fixing the interest rate at the 30-year rate available in the year prior to commencement of benefits. The Court agrees with Plaintiffs' interpretation of its Ruling.

would require use of the floor rates]. Because the qualified annuity has not been used in lump sums paid to class members, it cannot be used 'for purposes of offsetting A + B' based on those lump sums." (Plaintiff Class' Objections to Cigna's Revised 204(h) Notices [Doc. # 464] at 25.)) Plaintiffs argue that use of the floor rates for purposes of calculating the offset allows Cigna to subtract more from the remedy due under Part A than the annuitized value of the lump sum it paid out. (*See* Plaintiffs' Reply to Cigna's Brief [Doc. # 473] at 10-11.)

Cigna replies that it should be entitled to offset the remedy due under Part A by the amount it offered to plan beneficiaries as an annuity, even if the beneficiary took his or her benefits as a lump sum. Under the Plan, beneficiaries have the option of receiving their benefits either as a Qualified Annuity or, if a beneficiary so elects, in one of the optional forms specified by the Plan, including, *inter alia*, "a lump-sum distribution equal to his Accrued Lump-Sum Benefit." Section 7.2(a)(1) of 2009 Plan. Cigna argues that since it uses the floor rates to calculate the annuity it offers to beneficiaries, "disregarding these floor rates to calculate offset amounts . . . is inequitable and inconsistent with this Court's previous orders because Cigna will not receive full credit for the amounts it already paid." (Def.'s Opp'n. to Pl.'s Request [Doc. # 472] at 6.) Cigna boils down its argument to this assertion: "this Court should annuitize the lump sum value of benefits received in the exact manner the Plan does." (Def.'s Reply in Opp'n. [Doc. # 475-1] at 2.)

Cigna notes that "the point of this calculation . . . is to credit Cigna as closely as possible for the amount already paid to participants" and to permit Cigna to deduct this amount from the annuities it will pay under Part A as remedy. Cigna represents that the actual rates it has used pursuant to the terms of Part B has been relatively consistent since 1998, hovering around 5.25%, which is fairly close to the floor rates dictated by the 2009 Plan. However, Cigna's insistence that it receive credit for annuities it merely *offered* is misplaced since the benefits were taken as lump

5

sums and since Cigna admits that those lump sums simply were the amounts indicated in the cash balance accounts and not amounts calculated from the Qualified Annuity through use of the floor rates. Further, regardless of the rates the Plan uses internally, the value of the lump sum from a beneficiary's point of view is better measured by rates available to the beneficiary. Annuitizing lump sums received "in the exact manner the Plan does" disregards the fact that the Plan's internal rates may not be available to Plan beneficiaries who took their benefits as lump sums.

Additionally, giving Cigna credit for the annuities it offered can be misleading because those annuities are not directly comparable to the offsets being calculated, since under the terms of Part B the annuities offered were immediately available regardless of age of the beneficiary, whereas Part A benefits only become available when a beneficiary reaches retirement eligibility, which may still be several years in the future. (*See* Pls.' Reply to Cigna Brief at 10.)

In order to account for the time-value of money and to avoid the artificiality of floor rates, the Court corrects and clarifies the methodology it intends to be used. Because this remedy seeks an equitable determination of 'reasonable' interest rates, and the mechanism of Defendant's Plan Amendment distorts what interest rates might have been by fixing an artificial floor, the Court finds that use of floor rates is inappropriate for calculation of the offset. The touchstone for calculation of the offset is the "reasonable rate of interest." That reasonable rate of interest is the one that the Plan uses to translate back and forth from annuities to their present value conceived as a lump sum. This reasonable rate varies from year to year as market conditions change. Since the floor rates would place an artificial floor on that reasonable rate, the floor rates should be disregarded for purposes of calculating the offset.

### B. Other Methodological Issues Raised in Parties' Briefing

1. **Social Security Offsets**

Plaintiffs raise three issues with respect to the Social Security offsets.[3]

### a. Age 62 Offsets Based on Earnings through Age 64

Plaintiffs contend that Defendant improperly based the age 62 offsets on earnings through age 64, rather than through age 61, contrary to the provisions of the Social Security Act. (Pls.' Obj. § 204(h) Notice [Doc. # 464] at 9 n.3.) Defendant does not respond to this claim, and it appears meritorious. For this reason, the Court finds that age 62 offsets should be based on earnings through age 61.

### b. Early Retirement Offsets Based on Earnings through Age 54

Plaintiffs assert that for early retirement eligible participants, Defendant improperly assumed that earnings stopped at age 54, rather than age 61 or 64, in spite of the fact that the plan language "refers to the 'annual primary old age insurance benefit' under the Social Security Act available at age 65 or age 62" and "[t]he 'Chapter' files do not contain data indicating that Cigna did a second set of age-55 social security estimates for early retirees." (*Id.*) (quoting Part A [Doc. # 437-1] §§ 4.2, 4.3).

Defendant responds that Plaintiffs' complaints regarding the early retirement offsets relate to certain issues that existed before certain changes in the Tax Reform Act of 1986 ('TRA 86') took effect in 1989, but which no longer existed after that Act was passed. Additionally, Defendant contends, contrary to Plaintiffs' claim, their methodology is not at odds with the plan provisions. (Def's. Resp. [Doc. # 465] at 13 n.15.) According to Defendant, since 1989, "under Part A, if a

---

[3] Plaintiffs assert that they could not have raised these issues earlier because they were not aware of them until they received Defendant's backup calculations showing how they arrived at their numbers until February 9, 2016, following this Court's order that Defendant's produce those backup calculations.

participant is eligible to immediately commence an early retirement benefit at employment termination, the offset is based on earnings until age 55, but if the participant left Cigna before he or she was early retirement eligible, then the Plan calculated the offset by projecting earnings to age 65." (*Id.*)

A careful reading of Part A, however, suggests that no such distinction exists. Under Part A's early retirement provisions for Tier 1 participants, "[w]hen the Participant attains age sixty-five (65), his early retirement benefit . . . shall be reduced by one-half (1/2) of the annual primary old age insurance benefit determined as of his Retirement Date based upon the provisions of the Social Security Act in effect on his Retirement Date." (Part A § 4.3(a)(3).) The early retirement provisions for Tier 2 participants state that

> [w]hen the Participant attains age sixty-two (62), or, if later, his Retirement Date, his benefit . . . shall be reduced by one-half (1/2) of the Participant's annual primary old age insurance benefit under the Social Security Act *available to him at age sixty-two (62), or, if later, at his Retirement Date*, regardless of the age at which he begins receiving such old age insurance benefits, and such available benefit shall be determined as of his Retirement Date based upon the provisions of the Social Security Act in effect on his Retirement Date.

(*Id.* § 4.3(a)(6)(emphasis added).)

Thus, for Tier 1 participants, earnings up until age 64 should be considered for purposes of calculating the Social Security offset. For Tier 2 participants, earnings up until age 61, or until the participant's retirement date (if after age 62), should be considered.

### c. Assumption of Three Percent Salary Growth

Finally, Plaintiffs claim that "Cigna's back up calculations revealed that a 3% salary increase assumption was used going back from 1998 to the date of hire," although Cigna "used a 6% salary increase assumption[] for all earnings prior to the later of 1985 or the date of hire" in its Social

8

Security calculation worksheets from 1997-1998, and "[f]or the years for which Cigna has earnings records [post-1985], Cigna's Actuarial Valuation Reports show that the company's experience was that salary increases ranged from 4.5% to 7% . . . (with the higher percentages applicable at younger ages)." (*Id.*) Because "[u]sing a 3% salary increase assumption to date of hire (and in some examples before) produces social security offsets higher than those used at the conversion," Plaintiffs contend that Cigna should assume higher yearly salary increases in calculating the Social Security offsets. (*Id.*)

Defendant replies that "all of the earnings assumptions throughout the Court Approved Notices [expressly] incorporate this 3% growth assumption," and Plaintiffs have not objected to those assumptions. (Defs.' Resp. at 12; *see id.* at 13.) Moreover, Defendant notes, the import of this issue is limited because "when Cigna calculates A + B benefits for actual participants, it will not have to calculate social security offsets because it will use the actual Social Security offsets that were used to calculate each participants Initial Retirement Account as reflected in Cigna's records." (*Id.* at 13.)

Although the parties' goal should generally be to provide participants with a notice that gives them a realistic understanding of the effects of the transition from Part A to Part B, finality too is a virtue. Because, as Defendant notes, the 3% assumption is consistent with the 3% salary growth assumptions employed throughout the notices, to which Plaintiffs have not objected, and because the resolution of this issue will not affect the amount of benefits participants actually receive, the Court overrules Plaintiffs' objection to the 3% salary growth assumptions.

### III. Conclusion

9

For the foregoing reasons, the Court sustains in part and denies in part Plaintiffs' Objections and amends it Ruling on Proposed Methodology accordingly. (Amended Ruling to follow.)

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 10th day of January 2017.