UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANICE C. AMARA *et al*, individually, and on behalf of others similarly situated,<br>  *Plaintiffs*,<br>v.<br>CIGNA CORP. AND CIGNA PENSION PLAN,<br>  *Defendants*. | Civil No. 3:01-CV-2361 (JBA)<br><br>November 7, 2017 |

# RULING ON PLAINTIFFS' MOTION FOR RECONSIDERATION OF RULING ON INTEREST RATES

Plaintiffs move for reconsideration (Pls.' Mot. Reconsideration [Doc. # 508]) of the Court's July 14, 2017 Ruling on Defendants' Motion for Clarification and Correction of Judgment (hereinafter "July 14, 2017 Ruling" [Doc. # 507].) Plaintiffs ask the Court to "reinstate its [previous] ruling that interest between lump sum distribution dates and retirement dates . . . be based on the 'yearly' rates, i.e., 'using the 30-year Treasury rate from the preceding November' for 'each year.'" (Pls.' Mot. Reconsideration at 14.) For the reasons described below, Plaintiffs' Motion is DENIED.

## I. Background

The Court assumes the parties' familiarity with this case's background and history. In the Court's most recent substantive Order in this case, the Court considered a request from Defendants that, *inter alia*, "the Court reconsider the portion of its [previous] ruling that instruct[ed] Cigna to use a floating rate to calculate prejudgment interest and interest on lump sums already paid and rule instead that the rate should be fixed at the rate available in the year the benefits commenced." (July 14, 2017 Ruling at 13.) The Court noted that the dispute between the parties amounted to a question of "whether the interest rate will be fixed at the rate available to a plan participant on the day he or she commenced receiving benefits or floated until the present,

and then fixed at today's rate for the purposes of projecting the rate into the future." (*Id.* at 14.) The Court reasoned that "[i]nsofar as the parties agree that it is impractical to float the rate into the future, they are actually asking the Court to determine which fixed rate to apply." (*Id.*)

The Court found that "[f]ixing the interest rate at the rate available to a plan participant at the time he or she received the Part B lump sum captures the fact that plan participants had control to invest their money at that point in time." (*Id.*) The Court noted that "[s]hifting interest rate risk from the Plan to plan participants was one of the permissible justifications for Cigna's transition from Part A to Part B." (*Id.*) Accordingly, and "[i]n light of the parties' positions that the interest rate will be fixed either at today's rate or at the rate available on the day a participant commenced receiving benefits, the Court reconsider[ed] its ruling on methodology and conclude[d] that it is more appropriate to fix the rate as of the date the benefits commence." (*Id.*) Plaintiffs timely filed the instant Motion challenging that decision. (Pls.' Mot. Reconsideration at 1, 13.)

## II. Discussion

Motions for reconsideration "shall be filed and served within seven (7) days of the filing of the decision or order from which such relief is sought, and shall be accompanied by a memorandum setting forth concisely the controlling decisions or data the movant believes the Court overlooked." D. Conn. L. Civ. R. 7(c) 1. The Second Circuit has explained that "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18B C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 4478). This standard is "strict" and reconsideration should be granted only if "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter

2

the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). If "the moving party seeks solely to relitigate an issue already decided," the court should deny the motion for reconsideration and adhere to its prior decision. *Id.*

Plaintiffs ask the Court to "reinstate its [previous] ruling that interest between lump sum distribution dates and retirement dates . . . be based on the 'yearly' rates, i.e., 'using the 30-year Treasury rate from the preceding November' for 'each year.'" (Pls.' Mot. Reconsideration at 14.) Plaintiffs contend that the Court, in granting Defendants' Motion for Clarification and Correction, failed to apply the requisite standard for motions for reconsideration. (*See id.* at 3) ("While this Court's decision describes the change in one place as a 'correction,' [July 14, 2017 Ruling at 2], the decision does not find any oversight or error but concludes it is 'more appropriate' to look back to the rate in the year of the lump sum distribution." (citation omitted).) But in the instant Motion, Plaintiffs fail to identify any "controlling decisions or data that the [C]ourt overlooked[,]" *Shrader*, 70 F.3d at 257 (2d Cir. 1995), in deciding this issue in the July 14, 2017 Ruling.

Plaintiffs argue throughout their Motion that the Court's decision to fix interest rates as of the date the benefit commenced is an unrealistic approximation of what a hypothetical risk-averse investor would have been likely to invest in at the time. (*See, e.g.*, Pls.' Mot. Reconsideration at 6) ("No plan participant did what Cigna's counsel now says all of them should have done, and no Cigna plan administrator or other fiduciary advised them to do that"; "Except in hindsight, no one, including Cigna, knew in 1998-2001 that buying a 30-year bond in that period was the best course as opposed to a more conventional, conservative, and diversified investment strategy[]"; "Cigna itself did not go out in the bond market in 1998-2001 and buy up 30-year Treasury bonds to insulate either its retirement portfolio or its corporate portfolio as its counsel would now have this Court assume all participants should have done.") But Plaintiffs' argument proves too much:

3

Plaintiffs do not explain why, if this is the case, Plaintiffs' proposal of using a variable interest rate for each year up through the present, then switching to a fixed interest rate, is any less artificial or more accurate an approximation of how a risk-averse investor would have acted.

Plaintiffs argue that it would be unfair to "permit the misleading or similarly inequitable conduct that led to the reformation to edge its way back in through the interest rates used for an offset." (Pls.' Mot. Reconsideration at 11.) But Plaintiffs do not explain how their proposal better reflects Plan Participants' reasonable expectations such that Plaintiffs should be entitled to reformation along those lines. *See Amara v. CIGNA Corp.*, 775 F.3d 510, 526 (2d Cir. 2014) ("The facts required to satisfy the elements of reformation must be proven by clear and convincing evidence." (citations omitted)). As Plaintiffs acknowledge, "equity does not demand the lowest possible set off[.]" (Pls.' Mot. Reconsideration at 11.)

Plaintiffs argue, to this effect, that the *Frommert v. Conkright* line of decisions bars the use of "'phantom' interest rates to enhance offsets from ERISA relief." (*Id.* (*citing* 433 F.3d 254, 268 (2d Cir. 2006); 153 F.Supp.3d 599, 605 (W.D.N.Y. 2016).) But *Frommert* is inapposite, as it involved an ERISA violation by an employer who impermissibly used phantom interest rate offsets, and did not address the scope of a federal district court's discretion in crafting an equitable remedy. *See* 433 F.3d at 262 (ERISA's objective of "protecting employees' justified expectations of receiving the benefits their employers promise them . . . was thwarted . . . [where] defendants attempted to implement the phantom account offset without properly amending the terms of the Plan or providing adequate notice to rehired employees that their benefits would be reduced because of the hypothetical growth attributed to their prior lump sum distributions." (internal quotation marks and citation omitted)). This argument, therefore, is unavailing.

The parties also offer dueling interpretations of Judge Kravitz's previous rulings on this issue. In 2008, Judge Kravitz held that "[t]he second fundamental premise of the Court's remedy is that the CIGNA Plan should receive full credit both for the lump sums already paid and for a reasonable amount of interest on those sums since the date of payment." *Amara v. CIGNA Corp.*, 559 F. Supp. 2d 192, 216 (D. Conn. 2008), *aff'd*, 348 F. App'x 627 (2d Cir. 2009), *vacated and remanded*, 563 U.S. 421 (2011), *and cert. granted, cause remanded*, 563 U.S. 1004 (2011). In the same decision, Judge Kravitz awarded prejudgment interest on past-due benefits owed to class members who have already retired, noting that "[p]rejudgment interest is especially appropriate here in light of the fact that the CIGNA Plan will be credited with a reasonable rate of return on its lump sum payments to retirees in the calculation of the equitable setoffs." *Id.* at 219-20. Elaborating on these principles, Judge Kravitz held the following:

> The Court does not consider the federal post-judgment interest rate, which is measured by interest on short-term, risk-free obligations, to be appropriate in this case. Rather, in the interest of fairness, the Court believes that the [pre-judgment interest] rate should be the same as that used with respect to the CIGNA Plan's lump sum payments, namely, a reasonable rate of return. Both the CIGNA Plan and the plan participants invested on a moderate—to long-range time horizon, given the former's interest in funding the Plan and the latter's interest in saving enough money to last throughout retirement. Thus, in light of these considerations, the Court believes that a reasonable and appropriate rate of interest for payments past due would be the rate used in the same time period by the CIGNA Plan to calculate the lump-sum present value of retiring participants' annuities (i.e., the equivalent actuarial value).

*Id.* at 220-21. Judge Kravitz explicitly held that these two rates should travel together, so in interpreting this decision, his analysis of the proper rate for prejudgment interest is wholly relevant in determining the methodology used to calculate the rate used for both purposes—prejudgment interest and the offset rate. With this in mind, Judge Kravitz held that the rate should reflect "a

5

reasonable rate of return[,]" which Judge Kravitz further defined as the rate used "to calculate the lump-sum present value of retiring participants' annuities (i.e., the equivalent actuarial value)." *Id.* The Court's July 14, 2017 Order "conclude[d] that it is more appropriate to fix the rate as of the date the benefits commence[,]" and Plaintiffs have not shown why this is an inappropriate way to calculate the "present value of retiring participants' annuities[,]" or more broadly why this rate does not reflect a "reasonable rate of return[.]" Plaintiffs' remaining arguments similarly fail to raise any "controlling decisions or data that the [C]ourt overlooked[,]" and accordingly, Plaintiffs' Motion must be denied. *See Shrader*, 70 F.3d at 257 (2d Cir. 1995).

### III. Conclusion

For the reasons set forth above, the Court DENIES Plaintiffs' Motion.

IT IS SO ORDERED.

/s/
_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 7th day of November 2017.