UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANICE C. AMARA *et al*, individually, and on behalf of others similarly situated,<br>    *Plaintiffs*,<br>    *v.*<br>CIGNA CORP. and CIGNA PENSION PLAN,<br>    *Defendants*. | Civil No. 3:01-CV-2361 (JBA)<br><br>October 17, 2018 |

**RULING ON METHODOLOGY FOR CALCULATING ATTORNEYS' FEES**

Pending before the Court are two disputes between the parties relating to the proper methodology for the calculation of attorneys' fees to be awarded to class counsel. For the reasons set forth below, the Court adopts Plaintiffs' proposed methodology on both questions.

**I.    Background**

The Court assumes the parties' familiarity with this case's background and long history. The parties dispute the proper calculation of the present value of the common fund recovery, which must be determined in order for the Court to rule on Plaintiffs' pending motion for attorneys' fees, which in turn must be ruled on in order for remedy payments to begin issuing to class members.

The parties agree that the differences in their respective calculations of the value of the common fund are attributable to four methodological disputes. At the July 25, 2018 telephonic status conference, Plaintiffs expressed their view that Defendant's approach to all four methodological disputes shows that Defendant intends to violate the Court's previous orders, a contention that Defendant rejected. The Court noted that "the plan administrator has its directives, has the legal principles to be used in administering [the plan], has the whole history of trial and appeal and rulings and decisions in this case; and if [going forward] they breach[] the fiduciary

duty to act solely in the benefit of the beneficiaries that maximize their benefit, then there's . . . either another ERISA case that's brought or the Court retains continuing jurisdiction for remedy and possible contempt." ([Doc. # 538] at 10.) The Court further stated that it did not "see that at this point we can or should be relitigating any of the methodology[,]" but that Defendant implements its interpretation of the reformed plan at its own "risk[,]" if it is later found to have done so in violation of its fiduciary duties or previous court orders.

As subsequently clarified by emails to the Court, both parties agree that at least two of the methodological disputes at issue affect not only the present value of the common fund recovery but also the actual remedy amounts paid to class members.[1] The Court made clear that with respect to these methodological issues, once the Court rules on the attorneys' fee petition, "if there is [a] further amount of money thereafter that [Defendant] will owe as a result of erroneously calculated benefits, then the Court will order a supplement and may not be limited to 17.5 percent, and may not take it out of the beneficiaries' portion but may require [Defendant] to shoulder it." (*Id.* at 23-24.) As the Court explained, "the incentive for [Defendant] to get it right the first time is there, because the additional fees owed to the Plaintiffs" in this scenario will "come out of [Defendant]'s pot" and will not be taken out of class member remedy payments. (*Id.* at 25.)

Defendant contends, however, that at least two remaining methodological disputes affect only the calculation of attorneys' fees, and not the remedy amounts received by class members: the

---

[1] Specifically, in their emails to the Court, the parties appear to agree that the remedy amounts are affected by the year used to determine the interest rate for calculating the annuity value of the lump sum distribution for purposes of determining the offset, by the year used to determine the mortality table for calculating the annuity value of the lump sum distribution for purposes of determining the offset, and by the assumed age of payment for benefits to those who were eligible for early retirement. (See Email Exhibit attached to this Ruling.)

2

use of adjusted 25-year stabilization rates instead of IRC Section 417(e) rates for the calculation of the relief payments' present value, and Defendant's assumed payment dates for participants who have not yet commenced Part B benefits.

In light of the possibility that the dispute between the parties on these two methodological questions would not be captured going forward by any future cause of action by plan members for breach of fiduciary duty or contempt motion, the Court requested that the parties provide briefing on the two outstanding methodological disputes that, in the view of at least one party, affect only the calculation of attorneys' fees and not remedy amounts. It is this briefing that the Court now addresses.

## II. Discussion

### A. Interest Rates

Plaintiffs contend that the "Court should use the IRC § 417(e) interest rates for the 'determination of present value' of annuities to value the class' recovery[,]" (Pls.' Br. on Methodology [Doc. # 544] at 1), while Defendant contends that the present value of the recovery should be calculated using "the rates . . . prescribed by ERISA Section 303(h)," (Def.'s Br. on Methodology [Doc. # 546] at 6-7.)

Defendant's proposed rates come from 29 U.S.C. § 1083, which sets "[m]inimum funding standards for single-employer defined benefit pension plans[.]" *Id.* Subsection (h) therein establishes the "[a]cturial assumptions and methods" to be used in "the determination of any present value or other computation under this section[.]" *Id.* § 1083(h)(1). Plaintiffs argue that "the only interest rates this Court has used for A+B relief calculations have been the IRC § 417(e) interest rates[,]" and that "the same interest rates used to make the annuity calculations must also be used to determine the present value of those benefits." (Pls.' Br. at 4-5.) While Defendant's reply

3

brief addresses and challenges other arguments advanced by Plaintiffs, Defendant fails to address this argument. (*See generally* Def.'s Reply Br. at 2-4.) Defendant explains why it should not be bound by the rates that it uses in its SEC filings, (*id.* at 2-3), argues why it would be appropriate, on the merits, to adopt the Section 303(h) rates, (*id.* at 3-4), and advances policy arguments in favor of using the Section 303(h) 25-year stabilization rate, (*id.* at 4), but nowhere addresses Plaintiffs' contention that the rates used for calculating present value should match the rates used for A+B relief calculations.

In sum, the Court must decide whether the net present value should be calculated using the interest rates used in the Court's previous remedy rulings, or using the rates established by a portion of ERISA that sets funding standards for certain categories of pension plans—in the context of which the statute delineates a methodology for calculating the present value of future plan obligations. Neither party has identified any procedurally-apposite authority providing guidance on the proper method for calculating the net present value of an ERISA remedy for the purpose of determining attorneys' fees. Notwishstanding the absence of any such binding or persuasive authority presented by either party, the Court finds Plaintiffs' proposal to be more persuasive. Defendant fails to rebut Plaintiffs' common-sense argument that the interest rates used in the remedy rulings should similarly be used to calculate the net present value of the remedy. Moreover, Defendant fails to present any statutory or other authority indicating that ERISA's methodology for calculating net present value in the context of minimum funding standards for single-employer defined benefit pension plans should be applied outside of that context, or in the attorneys' fees context specifically. Accordingly, the Court adopts Plaintiffs' proposed interest rates.

**B. Assumed Payment Dates**

The parties also contest Defendant's assumed payment dates for participants who have not yet commenced Part B benefits. Defendant proposes assuming an age 65 payment date for these class members, arguing that this assumption is both more administratively feasible[2] in light of the Court's remedy rulings and not unwarranted, providing various reasons why class members might choose to retire at 65 rather than earlier,[3] and stressing that its proposed "assumption will have no effect on the eventual remedy benefit to be paid to [class members], . . . because the remedy payments will be based on the actual age the participant elects to commence benefits." (Def.'s Br. at 5.)

Plaintiffs, by contrast, argue that an assumed payment date of age 65 means assuming that *no* class members in the group at issue will take advantage of early retirement benefits, and that attorneys' fees should be calculated on the basis of the more actuarially-valuable option that class members are entitled to choose. (Pls.' Br. at 8-10.)

---

[2] "[F]or those participants who have not yet commenced Part B benefits, neither party knows the date on which the remedy actually will be calculated (i.e., whether the earliest retirement date under Part A will be earlier or later than actual Part B benefit commencement." (Def.'s Br. at 4.) "Moreover, for participants who are still active employees, neither party knows what the earliest retirement date under Part A will be, as participants are not eligible to receive Part A benefits while working, and some not currently eligible for early retirement may become eligible with additional service." (*Id.*)

[3] For example, Defendant suggests that because "the Plan does not permit commencement of benefits while actively employed[,]" "a class member who is actively employed may decide to work until (or after) age 65," and because given the fact that "for most early retirement eligible participants, commencing benefits before age 65 means a lower monthly benefit, . . . an individual who is in good health and expects to live longer than his or her actuarial life expectancy may conclude that it is better to delay receipt of benefits." (Def.'s Br. at 5.)

Defendant responds that "the age 65 assumption" is "more reasonable" than Plaintiffs' proposed assumptions,[4] because "the actual commencement age is unknowable, and age 65 is the normal retirement age under the Plan." (Def.'s Reply at 5.) The Court finds this argument unconvincing in the context of evaluating the present value of remedy awards that may be greater or lesser depending on how class members choose to exercise their rights under the reformed Plan. Plaintiffs' proposed age assumptions are no more administratively difficult to adopt than Defendant's, and unlike Defendant's age 65 assumption, have the benefit of reflecting the maximum actuarial value of the relief that class members in this category are entitled to if they choose it. While Defendant may be correct that some class members may choose not to take advantage of early retirement benefits for their own individual reasons, such as those suggested by Defendant in note 3 above, the Court cannot artificially diminish the value of the remedy for the purpose of determining attorneys' fees by assuming that *all* class members in this category will choose to forego early retirement. Accordingly, the Court adopts Plaintiffs' proposed age assumptions for this group, for the limited purpose of calculating attorneys' fees.

**C. Plaintiffs' Declaration Filing**

As part of their filing in response to the Court's requested briefing on the two disputes addressed here, Plaintiffs moved [Doc. # 545] for leave to file a supporting declaration of James E. Holland, Jr. Plaintiffs explain that

> Given the technical nature of Defendants' proposal to use IRC §430's adjusted 25-year stabilization rates to value the class' relief, Plaintiffs believe the Court will benefit from an explanation of the background of the 25-year stabilized rates from

---

[4] Plaintiffs suggest that "[t]he 'assumed payment dates for participants who have not yet commenced Part B benefits' should be the dates on which they are eligible for the valuable Part A early retirement benefits this Court ordered." (Pls.' Br. at 1.)

6

an expert such as Mr. Holland, who was the Internal Revenue Service's chief pension actuary before his retirement.

(Pls.' Mot. Permission to File Decl. at 1.) Defendant objects that Plaintiffs' "request to submit a declaration . . . would improperly expand their arguments beyond ten pages and/or improperly provide expert testimony from a new declarant (James Holland)." (Def.'s Reply at 5.) The Court agrees with Defendant that consideration of the Holland Declaration would be improper, insofar as the Court specifically requested that the parties abide by specified page limits for legal briefs and did not request or invite any supporting declarations. Consideration of the Declaration would prejudice Defendant, who complied with the Court's request, and so Plaintiffs' motion for leave to file the declaration is denied.

### III. Conclusion

For the reasons set forth above, the Court adopts Plaintiffs' proposed interest rate and age assumption methodologies for the purpose of calculating the net present value of the remedy award and calculating the attorneys' fees to which Plaintiffs may potentially be entitled. Defendant shall provide the Court with an updated net present value calculation in accordance with this Order by Wednesday, November 7, 2018.

                      IT IS SO ORDERED.

                      /s/
                      Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 17th day of October 2018.