UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANICE C. AMARA *et al*, individually, and on behalf of others similarly situated,<br>    *Plaintiffs*,<br>v.<br>CIGNA CORP. and CIGNA PENSION PLAN,<br>    *Defendants*. | Civil No. 3:01-CV-2361 (JBA)<br><br>November 29, 2018 |

**RULING ON MOTION FOR ATTORNEYS' FEES, INCENTIVE AWARDS, AND EXPENSES**

Plaintiffs have moved ([Doc. # 410]) for approval of their attorneys' fees, proposed incentive awards, and expenses in this class action brought under the Employee Retirement Income Security Act ("ERISA"). Having previously ruled on the methodology for calculating attorneys' fees, ([Doc. # 550]), and having considered Defendants' response to the Motion, ([Doc. # 421]), Plaintiffs' Reply, ([Doc. # 424]), and Defendants' Updated Present Value Calculation, ([Doc. # 551]), the Court now rules on Plaintiffs' Motion for Attorneys' Fees.

Plaintiffs seek attorneys' fees based on the "percentage of the fund" or the lodestar method in class actions that produce common fund recoveries. *See Goldberger v. Integrated Resources*, 209 F.3d 43, 47 (2d Cir. 2000). In this case, an award of attorneys' fees based on the percentage of the fund method "directly aligns the interests of the class and its counsel." *Wal-Mart v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005).

In applying the percentage of the fund method, it is appropriate to award attorneys' fees as a percentage of "the total funds made available," not "on the basis of claims made against the fund." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007). In *Masters*, the Second Circuit recognized that "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class." *Id.*

The parties' calculations of actual individual relief reflecting a value of the "A+B" recovery is significantly disputed. Plaintiffs calculate the recovery at $280.6 million; Defendants' updated present value calculation reflects a total value of $184, 456,124 in relief to the class. ([Doc. # 551].)

In addition to the monetary common fund recovery under the "qualified" portion of Cigna's Pension Fund, class members received additional non-monetary relief in the form of the August 2017 ERISA Section 204(h) notice disclosing the "true effect on their retirement benefits" resulting from the cash balance conversion. Moreover, Plaintiffs represent that almost 400 class members will be entitled to additional benefits from Cigna's Supplemental Pension Plan.

Under *Goldberger v. Integrated Resources*, 209 F.3d 43, 47 (2d Cir. 2000), "the traditional criteria in determining a reasonable common fund fee, includ[e]: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* at 50.

All of the relevant *Goldberger* factors weigh in favor of the requested 17.5% fee award. With respect to the first and fourth factors, Plaintiffs' counsel have vigorously litigated this case for seventeen years before the district court, the Second Circuit, and the Supreme Court, expending over 12,000 hours. With respect to the second factor, the case raised novel questions of law and directly affected tens of thousands of class members. Significantly, the Supreme Court held that that the remedies ordered by the district court—including (1) "reformation of the terms of the plan in order to remedy the false or misleading information CIGNA provided[,]" (2) equitable estoppel, and (3) surcharge all "f[e]ll within the scope of the term 'appropriate equitable relief' in [ERISA] § 502(a)(3)." *CIGNA Corp. v. Amara*, 563 U.S. 421, 440-42 (2011). As two observers noted, while the "the U.S. Department of Labor (DOL)" had long "taken the position that a much broader

interpretation of section 502(a)(3) is warranted . . . . [l]ower courts . . . were unwilling to adopt the DOL's position, believing that the Supreme Court's jurisprudence had conclusively narrowed the scope of section 502(a)(3)." Peter K. Stris & Victor O'Connell, *ERISA & Equity*, 29 ABA J. LAB. & EMP. L. 125, 128 (2013). But "[i]n a surprise to many, the Supreme Court did what no lower court had been willing to do: it made clear in *CIGNA Corp. v. Amara* that the DOL's position [wa]s correct." *Id.* As a result, they concluded, "in many areas, *Amara* now permits plaintiffs to seek meaningful relief." *Id.*

The third *Goldberger* factor here is inapplicable as it relates to settled claims. With respect to the fifth factor, the requested fee here is reasonable in relation to the value of the total monetary recovery and in line with or below earlier fee awards.

Class counsel's requested fee award of 17.5% of the increased benefits is lower than percentage awards in other ERISA class actions in this Circuit. In *Haddock v. Nationwide Financial Services, Inc.*, No. 01-cv-1552 (SRU) (D. Conn. Apr. 10, 2015), Judge Underhill approved a 35% award of $49 million from a $140 million recovery, a lower financial recovery than here. *See also In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (25% award from a $45.9 million common fund); *Board of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank*, 2012 WL 2064907, *3 (S.D.N.Y. June 7, 2012) (25% of $150 million common fund); *Tedesco v. Bank of America*, No. 3:07 CV 1640 (JCH) (D. Conn. June 2, 2011) (19% of a $21 million settlement); *Richards v. Fleet Boston*, No. 3:04CV1638 (JCH) (D. Conn. Oct. 15, 2008) (21% of a $83.5 million settlement); *In re AOL Time Warner, Inc. ERISA Litig.*, 2007 WL 3145111, at *1 (S.D.N.Y. Oct. 26, 2007) (17.9% of $100 million recovery).

It is also consistent with percentage-of-fund fee awards in other jurisdictions. *See, e.g., Cooper v. IBM Personal Pension Plan*, 2005 WL 1981501, at *2 (S.D. Ill. Aug. 16, 2005) (awarding

29% of first $250 million recovery; plus 25% of next $64 million); *Berger v. Xerox Corp. Ret. Income Guar. Plan*, 2004 U.S. Dist. LEXIS 1819, at *5-7 (S.D. Ill. Jan. 22, 2004) (29% of $240 million recovery).

When a percentage-of-the-fund method is used, a lodestar "cross-check" based on a summary of hours tests the reasonableness of the percentage. *Wal-Mart*, 396 F.3d at 123. While not required, using the lodestar method as a discretionary cross-check further demonstrates that the fee that Class counsel seeks is reasonable. A 17.5% award from a $184,456,124 common fund—the lower of the two numbers put forth by the parties in valuing the remedy payments to class members for the purposes of calculating attorneys' fees—would be $32,279,821.70. Based on the number of Class counsel's hours in the original fee motion, which results in a $6.794 million lodestar, the 17.5% requested award equates to a multiplier of 4.75. With a 14% increment for additional hours over the past two and one-half years and a 10% increment for higher hourly rates over the same period, the adjusted lodestar is $8.513 million, (Bruce Suppl. Decl. ¶ 2 [Doc. # 518-2]), which equates to an implied multiplier of 3.79 on the adjusted lodestar.

These implied multipliers are in line with other comparable complex ERISA cases. *See, e.g.*, *In re Colgate-Palmolive*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (multiplier of "five ... is on the high end" but "not unreasonable," observing that in fifty-three ERISA cases cited by the plaintiffs, "the implied multiplier ranged from less than one to eight times the lodestar, and nine cases had multipliers greater than four"); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011) (29% award implied multiplier of 5.85); *Kifafi v. Hilton Hotels Retirement Plan*, 999 F. Supp. 2d 88, 104 (D.D.C. 2013) (15% award implied multiplier of eight).

4

Finally, with respect to the sixth *Goldberger* factor, public policy weighs in favor of recognizing the risk and heretofore uncompensated labor expended by Plaintiffs' counsel over the course of this long-winding case.

Required by Fed. R. Civ. P. 23(h), notice of the fee request was provided to the members of the class on August 10, 2015. ([Doc. # 453].) Objections received were filed on October 23, 2015. Four objections to the requested 17.5% fee award were received from the 27,549 class members to whom the notice was mailed, i.e. less than .0001% of the class. The Court declines to adopt these objectors' view that CIGNA should be required to pay the fee award on top of the common fund recovery, except if additional benefits are ordered, as discussed below.

This small number of objections compared to 80% affirmative class responses without objections also weights in favor of this fee award. *See, e.g., Nolte v. Cigna Corp.*, 2013 U.S. Dist. LEXIS 184622, at *3 (C.D. Ill. Oct. 15, 2013) ("This Court finds the lack of any meaningful number of objections to be an unmistakable sign of the Class's overwhelming support for the Class Counsel's Application"); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) ("absence of substantial objections by class members to the fee requests weighed in favor of approving the fee request").

In order to avoid further delay in remedy payments to class members, the Court **GRANTS** Plaintiffs' Motion for Attorneys' Fees and awards attorneys' fees to Class counsel in the amount of 17.5% of the $184,456,124 common fund as valued by Defendants. The Court recognizes that the parties dispute each other's common fund valuation, ([Doc. ## 551, 552, 553, 554]), pursuant to the Court's remedy rulings and the Court's Ruling on Methodology for Calculating Attorney's Fees, ([Doc. ## 378, 459, 486, 507, 517, 550]). In the event that Plaintiffs file and prevail on a motion to enforce their interpretation of the requirements on Cigna and the Court's previous rulings,

resulting in additional benefits to be paid to class members, Cigna will be required to pay appropriate attorney's fees on any such additional remedy amounts found to be due. If by contrast Plaintiffs file and prevail on a motion to enforce the Court's Ruling on Methodology for Calculating Attorney's Fees—which the Court understands would *not* result in any additional remedy amounts—Plaintiffs would not be able to recover "fees on fees" for their work securing those additional attorney's fees.

After payment of the fee award to Class counsel, CIGNA is authorized to deduct 17.5% from the increased individual benefits to which class members are entitled under the "A+B" relief awarded by the Court.

The Court further finds that the requested incentive awards for the named Plaintiffs and witnesses are reasonable, and CIGNA has not objected, ([Doc. # 421). Incentive awards or service awards are awarded to compensate named plaintiffs "for bearing the[] risks of [bringing an action], as well as for as any time he spent sitting for depositions and otherwise participating in the litigation as any plaintiff must do." *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012). The named Plaintiffs and other class members are represented to have been very active in this litigation, including participating in mediation sessions, attending non-trial court hearings, and taking on heavy perceived risk while still employed by CIGNA, e.g. Janice Amara. The requested awards are in line with those awarded in other complex class actions. *See, e.g., In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *11 (E.D.N.Y. Oct. 23, 2012) (approving $50,000 incentive award for each of two class representatives); *Board of Trustees of AFTRA Retirement Fund*, 2012 WL 2064907 at *3 ($50,000 incentive awards to three class representatives); *Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *7 (S.D.N.Y. Aug. 6, 2010) ($75,000 awards to

five named plaintiffs and $25,000 to $60,000 awards to four class member witnesses); *Kifafi*, 999 F. Supp. 2d at 105 ($50,000 incentive award to lead plaintiff).

With respect to the one objection related to the incentive awards, courts have rejected isolated objections to awards that compensate the named Plaintiffs and witnesses for their active participation and assistance in the case and the personal risks they bore. *See, e.g., Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011) (rejecting "sole objection" to incentive award based on "the role played by the several class representatives and the risks taken by these parties in prosecuting this matter"); *In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. 263, 293 (D.Kan. 2010) ("incentive awards to class representatives are justified . . . to induce individuals to become named representatives, or to compensate them for personal risk incurred or additional effort and expertise provided for the benefit of the class").

It is therefore **ORDERED** that named Plaintiffs Janice Amara, Gisela Broderick and Annette Glanz shall each be awarded a class representative incentive award of $50,000; the five other trial witnesses, Bruce Charette, Robert Upton, Patricia Flannery, Barbara Hogan, and Lillian Jones, shall each be awarded incentive awards of $15,000; and the three other witnesses deposed by CIGNA, Steven Law, Mitchell Haber, and Steve Curlee, shall each be awarded $5,000. Class counsel shall pay the $240,000 in incentive awards from the 17.5% fee award.

It is **ORDERED** that within 30 days, CIGNA shall pay the 17.5% award to lead counsel for the Class, Stephen R. Bruce Law Offices, who shall distribute the $240,000 in incentive awards from that amount and allocate the attorneys' fees among the current and former counsel for the Plaintiffs in accordance with their fee agreements.

Class counsel have further requested direct payment by CIGNA of $480,680 in out-of-pocket expenses incurred to April 10, 2015 (which was the date of the original motion, *see* [Doc. #

410]), plus $403,551 in out-of-pocket expenses incurred from that date to November 30, 2017, (Bruce Suppl. Decl. ¶ 3), plus $510,000 for anticipated future expenses in providing notice to the class about their individual benefits and monitoring implementation of the judgment for all class members.

It is well-established that counsel are entitled to the reimbursement of "reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients," provided they are "incidental and necessary to the representation." *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987). Here, out of pocket expenses may also be awarded under this Court's equitable authority to surcharge to redress "a loss resulting from a trustee's breach of duty," *Amara*, 563 U.S. 421, 441; *accord*, Bogert, *Trusts and Trustees* (3d ed.), § 970, at 304-5; as well as this Court's inherent authority to manage the implementation of equitable relief, *see Riggs v. Johnson Cnty.*, 73 U.S. 166, 187 (1867). There were no objections from class members to this request, and even the persons who objected on other grounds affirmatively supported requiring CIGNA to pay for such expenses. ([Doc. # 453] at 4-5.)

CIGNA objects that Plaintiffs seek unrecoverable costs. ([Doc. # 421] at 13-16.) Specifically, CIGNA contends that (1) expert witness fees are not recoverable under ERISA beyond the per diem for witness attendance; and (2) Plaintiffs are not entitled to costs associated with monitoring of the Plan on an ongoing basis, because post-judgment monitoring was a remedy that Plaintiffs sought, but that was not awarded prior to final judgment. (*Id.*) CIGNA argues that although such monitoring "might be appropriate in a civil rights case . . . in order to ensure compliance with a consent decree . . . similar 'monitoring' isn't appropriate as to the payment of benefits in an ERISA case." (*Id.* at 16.) While the Court has inherent authority to order post-judgment remedies to ensure compliance with the Court's grant of injunctive and other forms of equitable relief, the

Court agrees that Plaintiffs have not shown their entitlement to post-judgment monitoring here, and so will not award those forward-looking costs sought by Plaintiffs.

With respect to the question of whether expert witness fees are recoverable, ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Under 28 U.S.C. § 1821(a)(1), "a witness in attendance at any court of the United States . . . or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by this section." 28 U.S.C. § 1821 sets this per diem fee at $40. *Id.* § 1821(b).

The Supreme Court has held that "when a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of § 1821(b), absent contract or explicit statutory authority to the contrary." *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 439 (1987). District courts within the Second Circuit have split on the question of whether expert fees are recoverable under ERISA beyond § 1821's per diem, and the Second Circuit has not spoken on this question in any case decided after *Crawford*.

Plaintiffs cite the Eleventh Circuit's decision in *Evans v. Books-A-Million* for the proposition that "reasonable litigation expenses . . . may be recovered under § 1132(g)(1) if it is the prevailing practice in the legal community to bill fee-paying clients separately for those expenses." 762 F.3d 1288, 1299 (11th Cir. 2014). While that proposition is no doubt true in general, *Crawford* would appear to require a different rule for the "reasonable litigation expense" of expert witness fees. Indeed, *Evans* did not involve a claim for expert witness fees, and the examples provided of what "reasonable litigation expenses" might fall into § 1132(g)(1)'s coverage include "mediation, legal research, postage, and travel." *Id.*

Perplexingly, Plaintiffs also cite *Evans*' holding that § 1132(g)(1) should be interpreted in a manner analogous to 42 U.S.C. § 1988. But § 1988's own provision for attorney's fees has not been interpreted to include expert witness costs, except in one specific circumstance where Congress expressly amended the statute to make it so. In *West Virginia University Hospitals, Inc. v Casey*, the Supreme Court held—following *Crawford*—that § 1988 did not permit a grant of expert witness fees, noting that "at the time [42 U.S.C. § 1988] was enacted neither statutory nor judicial usage regarded the phrase 'attorney's fees' as embracing fees for experts' services." 499 U.S. 83, 97 (1991). Because Congress disagreed with that outcome in the context of anti-discrimination legislation, the legislative branch amended § 1988 to expressly provide for the award of expert witness fees, but only in actions "to enforce a provision of section 1981 or 1981a of this title[,]" leaving 42 U.S.C. § 1983 and other covered statutes untouched. 42 U.S.C. § 1988(c). *See also Landgraf v. USI Film Prod.*, 511 U.S. 244, 251 (1994) (observing that Congress made this amendment in apparent direct response to *Casey*). Accordingly, Plaintiffs' argument is unavailing.

Putting aside expert witness fees and projected future expenses, Class counsel had incurred expenses of $110,375.51 as of the date of their original fee motion, ([Doc. # 410-2] at 15), and expenses of $403,551.57 from April 10, 2015 through November 30, 2017. Class counsel's total $513,927.08 expenses incurred to November 30, 2017—excluding future expenses and expert witness expenses—are reasonable, incidental, and necessary to the representation of the class and will be awarded.

Accordingly, this Court **ORDERS** that Class Counsel shall be awarded a total of $513,927.08 in litigation expenses incurred through November 30, 2017. Those expenses shall be paid by CIGNA to lead counsel for the Class within 30 days of this Order and shall not be deducted from the common fund recovery or the common fund fee award.

Defendants noted in the joint status report of July 23, 2018 that they "remain ready to implement the Court's A+B remedy once the Court fixes the percentage of each class member's remedy amount to be awarded to class counsel and deducted from each class member's A+B remedy payments." ([Doc. # 535] at 10.) Now that the Court has fixed this percentage, Defendants should begin implementing the remedy as quickly as possible.

Within 30 days of this ruling, the parties must exchange their individual results for each class member for inclusion in Plaintiffs' website benefit statement and in Cigna's mailed notices. Cigna must mail these notices within 60 days of this ruling, and then pay any past due lump sums and back benefits no later than 30 days thereafter.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 29th day of November 2018.