UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANICE C. AMARA, individually and on behalf of all others similarly situated,<br>    *Plaintiffs*,<br>v.<br><br>CIGNA CORP. and CIGNA PENSION PLAN,<br>    *Defendants*. | Civil No. 3:01cv2361 (JBA) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION
TO ENFORCE COURT RULINGS AND FOR SANCTIONS**

Stephen R. Bruce Ct23534
Allison C. Pienta phv01316
STEPHEN BRUCE LAW OFFICES
1667 K Street, NW, Suite 410
Washington, DC 20006
(202) 289-1117
stephen.bruce@prodigy.net
acaalim@verizon.net

Christopher J. Wright phv07752
HARRIS WILTSHIRE GRANNIS LLP
1919 M St., NW, 8th floor
Washington, DC 20036
(202) 730-1325
cwright@hwglaw.com

Michael J. Walsh Ct09111
WALSH WOODARD LLC
527 Prospect Ave
Hartford, CT 06105
(860) 549-8440
mwalsh@walshwoodard.com

Attorneys for Plaintiffs and
Plaintiff Class

## Table of Contents

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Standard of Review and Pertinent Equitable Principles. . . . . . . . . . . . . . . . . . . . . . . . . 5

Summary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

I.      Under the Guise of "Interpretation," Cigna Has Modified This Court's
        Methodology Orders and the Part A Provisions In Order to Use "Lookback"
        Interest Rates to Inflate the Offsets From the Part A Relief . . . . . . . . . . . . . . . . 15

II.     In Violation of This Court's Orders and the Plan Provisions, Cigna Has Used
        "Outdated" Mortality Tables, In Combination With the "Lookback" Interest
        Rates, to Further Inflate the Offsets From the Part A Relief. . . . . . . . . . . . . . . . 25

III.    In Violation of this Court's Orders, the Plan Provisions, and the "Anti-Cutback"
        Rule in ERISA §204(g), Cigna Is Refusing to Pay Early Retirement Benefits
        Until the "Later of" the Part A Early Retirement Date or the Date the
        Part B Cash Account Is Distributed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

IV.     Despite Two Court Orders, Cigna Has Refused to Pay "Small Benefit Cashouts"
        to Over 1,400 Not Previously Paid Class Members. . . . . . . . . . . . . . . . . . . . . . . 36

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

## Table of Authorities

### Cases

*Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975). ............................................. 9

*Alcantara v. Bakery & Confectionary Union & Industrial International Pension Fund Pension Plan*, 751 F.3d 71 (2d Cir. 2014)................................. 11

*Amara v. Cigna Corp.*, 534 F.Supp.2d 288 (D.Conn. 2008).......................... *passim*

*Amara v. Cigna Corp.*, 559 F.Supp.2d 192 (D.Conn. 2008)............... 21-22, 30, 32

*Amara v. Cigna Corp.*, 563 U.S. 421 (2011)................................................ 1, 22, 28

*Amara v. Cigna Corp.*, 925 F.Supp.2d 242 (D.Conn. 2012)................. 2, 11, 19, 28

*Amara v. Cigna Corp.*, 775 F.3d 510 (2d Cir. 2014). ............................ 2, 19, 22, 29

*Aramony v. United Way Replacement Plan*, 191 F.3d 140 (2d Cir. 1999).............. 6

*CBS Broadcasting v. FilmOn.com*, 814 F.3d 91 (2d Cir. 2016)....................... 3, 6-8

*Carroll v. Blinken*, 42 F.3d 122 (2d Cir. 1994). ........................................................ 9

*Castillo Grand, LLC v. Sheraton Operating Corp.*, 719 F.3d 120 (2d Cir. 2013)................................................................................................. 12

*Central Laborers v. Heinz*, 541 U.S. 739 (2004). ........................................... 11, 29

*Cigna v. Executive Risk Indemnity, Inc.*, 2013 Phila. Ct. Com. Pl. LEXIS 357, *aff'd*, 111 A.3d 204, 207 (Pa. Super. Ct. 2/3/2015). ......................................... 2

*Crawford v. La Boucherie Bernard, Ltd.*, 815 F.2d 117 (D.C. Cir.), *cert. denied*, 484 U.S. 943 (1987)...................................................................... 5

*Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151 (2d Cir. 1999)................................................................................................. 14

*Dameron v. Sinai Hospital of Baltimore*, 815 F.2d 975 (4th Cir. 1987).............. 10

*Depenbrock v. Cigna Corp.*, 389 F.3d 78 (3d Cir. 2004)...................................... 29

*Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir.), *cert. denied*,
    459 U.S. 1069 (1982)...................................................................... 5

*Dunnigan v. Metropolitan Life Insurance Co.*, 277 F.3d 223 (2d Cir. 2002). ........ 9

*Esden v. Bank of Boston*, 229 F.3d 154 (2d Cir. 2000). ...................................... 23

*FTC v. BlueHippo Funding, LLC*, 762 F.3d 238 (2d Cir. 2014). .......................... 12

*FTC v. Rensin*, 687 Fed. Appx. 3 (2d Cir. 2017). ................................................ 12

*Ford Motor Co. v. EEOC*, 458 U.S. 219 (1982). ................................................. 9

*Frommert v. Conkright*, 433 F.3d 254 (2d Cir. 2006)..................................... 10-11

*Frommert v. Conkright*, 738 F.3d 522 (2d Cir. 2013)........................................... 10

*Frommert v. Conkright*, 913 F.3d 101 (2d Cir. 2019). .......................................... 7

*Huber v. Marine Midland Bank*, 51 F.3d 5 (2d Cir. 1995).................................... 35

*John Blair Communications Profit Sharing Plan v. Telemundo Group*,
    26 F.3d 360 (2d Cir. 1994)................................................................. 9

*Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869 (7th Cir. 2013). ...................... 10

*Kunsman v. Conkright*, 977 F.Supp.2d 250 (W.D.N.Y. 2013). ............................ 5

*Layaou v. Xerox Corp.*, 238 F.3d 205 (2d Cir. 2001)..................................... 10-11

*McComb v. Jacksonville Paper Co.*, 336 U.S. 187 (1949)................................. 7-8

*Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)................................. 5, 9

*Miller v. Xerox Corp. Retirement Plan*, 464 F.3d 871 (9th Cir. 2006),
    *cert. denied*, 464 F.3d 871 (2007).................................................... 10

*Morrisey v. Curran*, 650 F.2d 1267 (2d Cir. 1981)............................................. 11

*New York State NOW v. Terry*, 886 F.2d 1339 (2d Cir. 1989),
    *cert. denied*, 495 U.S. 947 (1990). ................................................................ 12

*Perfect Fit Industrial, Inc. v. Acme Quilting*, 646 F.2d 800 (2d Cir. 1981)
    *cert. denied*, 459 U.S. 832 (1982). ................................................................... 8

*Puricelli v. Republic of Arg.*, 797 F.3d 213 (2d Cir. 2015). .................................... 9

*Shillitani v. United States*, 384 U.S. 364 (1966). ................................................. 11

*United States v. Cutler*, 58 F.3d 825 (2d Cir. 1995)............................................... 8

*United States v. I.T.T. Continental Baking Co.*, 420 U.S. 223 (1975). ............. 6, 17

## Statutes and Regulations

ERISA §3(21)(A), 29 U.S.C. §1002(21)(A). ........................................................ 1

ERISA §204(c)(3), 29 U.S.C. §1054(c)(3)........................................................... 16

ERISA §204(g), 29 U.S.C. §1054(g). ............................................................ 11, 29

ERISA §205(d)(1), 29 U.S.C. §1055(d)(1). ......................................................... 16

ERISA §205(g), 29 U.S.C. §1055(g). ................................................................. 16

ERISA §404(a)(1), 29 U.S.C. §1104(a)(1)............................................................ 2

IRC §401(a)(25), 26 U.S.C. §401(a)(25). ........................................................... 16

IRC §411(a)(3), 26 U.S.C. §411(a)(3). ............................................................... 16

IRC §417(b)(2), 26 U.S.C. §417(b)(2). ............................................................... 16

IRC §417(e), 26 U.S.C. §417(e)................................................................... 22, 25

Treas. Reg. 1.411(d)-4. ..................................................................................... 11

Treas. Reg. 1.417(e)-1(d)(4)............................................................................. 21

Treas. Reg. 54.4980F-1. .............................................................................. 10, 21

29 C.F.R. 2520.102-2(b)...................................................................... 10

29 C.F.R. 2520.102-3(l). ...................................................................... 10

82 Fed. Reg. 46388 (Oct. 5, 2017). .................................................... 26

IRS Notice 96-8................................................................................... 23

IRS Notice 2017-60............................................................................. 26

## Miscellaneous

George Bogert, *Law of Trusts and Trustees* (3d ed.). .......................... 12

Dan B. Dobbs, *Law of Remedies* (2d ed.)............................................. 7

D. Gordon Smith, "The Critical Resource Theory of Fiduciary Duty,"
    55 *Vanderbilt L. Rev.* 1399 (2002)..................................................... 5

Henry E. Smith, "Why Fiduciary Law Is Equitable," in Andrew S. Gold,
    Paul B. Miller, eds., *Philosophical Foundations of Fiduciary Law* (2014)....... 5

*Res. (2d) of Contracts*........................................................................... 7

*Res. (2d) of Trusts*................................................................................ 9

**Introduction**

Judge Kravitz determined at the bench trial that Cigna violated ERISA's requirements for full and complete disclosures about the effects of Cigna's conversion to a "cash balance pension" formula by providing its employees with "totally inadequate" and "misleading" disclosures about what would happen to their benefits in annuity form if interest rates fell and about the protection of early retirement benefits. Dkt.#317-2 at 12; 563 U.S. 421, 422 (2011). To redress Cigna's violations of ERISA's rules, this Court ordered an "A+B" reformation and after the Second Circuit affirmed, it issued related methodology rulings in order to provide "appropriate equitable relief."

The relief this Court ordered the Cigna Plan to provide is long overdue, and Cigna needs to provide it in full. However, as described below, Cigna has decided to continue to violate this Court's reformation and methodology orders in four major areas. Cigna's "interpretations" in those areas are not the result of difficult choices between two or more "fair readings," any of which would serve the interests of the beneficiaries and be consistent with the reformation and this Court's orders. Instead, Cigna is unilaterally and literally trying to rewrite this Court's reformation and methodology rulings in ways that would take away, in Cigna's own words, "hundreds of millions of dollars" in the relief provided to remedy Cigna's disclosure violations. Dkt. #567 at 1.

Because Cigna has the administrative responsibilities to manage the Plan in accordance with its terms and the law, including the responsibility to carry out this Court's orders, Cigna is a "fiduciary" under ERISA §3(21)(A), 29 U.S.C. §1002(21)(A). This

1

Court's 2012 decision ruled that "CIGNA was the de facto plan administrator and breached its fiduciary duty by materially misleading its employees." 925 F.Supp.2d 242, 260. And Judge Kravitz determined that the decisions about Cigna's notices and disclosures "were directed from the highest levels of the company." 534 F.Supp.2d 288, 334. On appeal, the Second Circuit affirmed on the basis that "CIGNA performed both roles [of sponsor and plan administrator] and used that dual position intentionally to mislead employees about plan terms." 775 F.3d 510, 527-28 (2014).[1]

As a fiduciary, Cigna has the "duty of loyalty" to act "solely in the interest of the participants and beneficiaries" and for the "exclusive purpose ... of providing benefits" to them. ERISA §404(a)(1), 29 U.S.C. 1104(a)(1). This Court's 10/17/18 decision recognizes that Cigna has a "fiduciary duty to act solely in the benefit of the beneficiaries [to] maximize their benefit." Dkt.#550 at 1. Cigna's actions continue, however, to show that Cigna does *not* accept its fiduciary duty to carry out this Court's orders for the "exclusive purpose ... of providing benefits." Beginning in 2016, Cigna made a series of public securities disclosures, certified to be true by its highest officers, which admit that Cigna has been identifying what it deems to be "open" "aspects of the calculation of additional plan benefits" in this Court's orders and is relying on "the Company's interpretations" for those issues. Dkt. #479-2. When Plaintiffs brought this up, Cigna said its interpretations do not

---

[1] In September 2012, CIGNA filed a claim under a fiduciary liability insurance policy for the obligations from this case. The Pennsylvania state courts rejected Cigna's claim, not because of any issue about whether Cigna is a fiduciary, but because of a policy "exclusion for deliberately fraudulent ... acts." *CIGNA v. Executive Risk Indemnity*, 2013 Phila. Ct. Com. Pl. LEXIS 357, *5-6 (10/13/2013); *aff'd,* 111 A.3d 204, 207 (Pa. Super. Ct. 2/3/2015).

have to be one of two or more positions each of which would serve the purposes of the reformation, but only have to be "reasonable," and not "better" than Plaintiffs' positions. Dkt. #428 at 3-4, 24; Dkt. #444 at 2; and Dkt. #520 at 10. In other filings, Cigna asserted a "duty" to interpret this Court's relief orders to "preserve Plan assets." Dkt.#548 at 2.

The Court and Plaintiffs have tried many times to get Cigna to reconsider its methodology "interpretations." Plaintiffs first cited the February 2016 decision in *CBS Broadcasting v. FilmOn* on an enjoined party's duty to seek clarification in November 2016. Plaintiffs said that Cigna's 10-Q statements "show[] a disregard for Cigna's duty as a party in a civil action and its duty as a fiduciary under ERISA in determining what a decree means." Dkt. #482 at 3-4. For a year and one-half, Cigna did not respond until in a 9/6/18 filing, Cigna tried to distinguish *CBS Broadcasting* as a case where "the court held defendants in contempt after they violated a specific injunction." Dkt.#548 at 2-3. Because this Court's orders are quite "specific," this is no distinction at all.

At the 7/25/18 status hearing, this Court stated that "if [Cigna] breache[s] the fiduciary duty to act solely in the benefit of the beneficiaries that maximize their benefit ... the Court retains continuing jurisdiction for remedy and possible contempt." Tr. at 10. The Court said we're "putting CIGNA to the test of doing it right, and then, upon the actual not doing of it right – if that is, in fact, what happens – then there are remedies," including attorneys' fees "which may not be limited to 17.5 percent." Tr. at 12, 23-24. This Court further stated, "we're not going to relitigate methodology; and to the extent there are issues that could have been brought up in the motions related to methodology and weren't, it's

really too late." Tr. at 4.[2] The Court's 10/17/18 Order repeated that Cigna "implements its interpretation of the reformed plan at its own "risk," if it is later found to have done so in violation of its fiduciary duties or previous court orders." Dkt.#550 at 2. Quoting from the July 2018 transcript, the Court stated that "the incentive for Defendant to get it right the first time is there, because the additional fees owed to the Plaintiffs in this scenario will come out of Defendant's pot and will not be taken out of class member remedy payments." *Id*.

But even after this Court's statements about sanctions, Cigna has not reconsidered its "interpretations" but, as described below, has moved in the other direction by adding another violation. Rather than reconsider, Cigna has also sought to turn the tables by lashing out at the Class and their counsel, moving to strike Plaintiffs' 2/12/18 filing about "the Company's interpretations" based on its "length and content" and to strike counsel's declarations made on personal knowledge as "purported expert opinions" and "legal argument," Dkt.#526-1 at 1-2, and accusing counsel of "misconduct." Dkt.#480 at 5; Dkt.#569 at 5. In a 2/20/19 filing, Cigna shamelessly said it "looks forward to responding to Plaintiffs' false allegations and baseless arguments." Dkt.#568 at 1.

In accordance with this Court's directions at the 7/25/18 hearing and in the 10/17/18 Order, Plaintiffs have prepared this motion and memorandum to enforce the Court's methodology rulings and request that this Court sanction Cigna for failing to comply with the Court's Orders in the individual remedy calculations and payments. To date, this Court

---

[2] *See also id.* at 10 ("the plan administrator has its directives ... and if they breached the fiduciary duty to act solely in the benefit of the beneficiaries t[o] maximize their benefit, then ... the Court retains continuing jurisdiction for remedy and possible contempt").

4

has not wanted Plaintiffs to delve into Cigna's internal decision-making process or its

motives through subpoenas or compliance reports. 6/2/17 Tr. at 57. But the "conflicting"

"financial interest[s]" that Justice Breyer describes in *MetLife v. Glenn*, 554 U.S. 105, 112-

13 (2008), continue to be clearly on display.

**Standard of Review and Pertinent Equitable Principles**

"[T]he Company's interpretations" of "open" aspects of this Court's equitable orders

are subject to review under the fiduciary "duty of loyalty," which is "the highest known to

the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982). The duty of loyalty

protects beneficiaries against "opportunism," defined as "self-interest seeking with guile" in

exercising fiduciary authority. Henry E. Smith, "Why Fiduciary Law Is Equitable," in

Andrew S. Gold, et al., eds., *Philosophical Foundations of Fiduciary Law* (2014), at 266.

Following the duty of loyalty, fiduciaries must account for their actions and explain how

exercises of discretion that deny a "critical resource" to a beneficiary are consistent with the

duty of loyalty, in contrast to the fiduciary's self-interest or the interests of a non-

beneficiary. D. Gordon Smith, "The Critical Resource Theory of Fiduciary Duty," 55

*Vanderbilt L. Rev.* 1399, 1406-11 (2002).

Interpretations of equitable orders are not like the decisions that a company can

make in a "settlor" role which are not subject to fiduciary duties. *See, e.g., Crawford v. La

Boucherie Bernard, Ltd.*, 815 F.2d 117, 119 (D.C. Cir.), *cert. denied*, 484 U.S. 943 (1987)

(ordering further equitable relief when trustees failed to comply with judgment); *Kunsman

v. Conkright*, 977 F. Supp. 2d 250, 263 (W.D.N.Y. 2013) (defendants' "refusal to follow the

5

Second Circuit's directives" was breach of "administrator's fiduciary duty to act in the interest of plan participants"). Unless the enjoined fiduciary shows that its actions are based on the "plain meaning" of the order, the initial question is where is the ambiguity? Everything is not "left open" to interpretation simply because a financially self-interested party says it is. In *Aramony v. United Way Replacement Plan*, 191 F.3d 140 (2d Cir. 1999), a draft amendment that forfeited a participant's retirement benefits on the commission of an act of fraud was attached to the agenda of a Committee meeting. The Committee was given "enough detail to understand what was being proposed," but the "real details of the particulars of the plan" were "to be worked out" later. *Id.* at 148-49. The *Aramony* court stated, "Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Id*. at 149. The Court ruled that "we agree with the district court's conclusion that the language is unambiguous. The signed plan simply does not include a felony forfeiture exception to its otherwise sweeping non-forfeiture clause." *Id*. at 149-50; *accord*, *CBS Broadcasting*, 814 F.3d at 99 (when defendant's actions were not consistent with its proposed interpretation, defendant's ambiguity was "unpersuasive")*; United States v. I.T.T. Continental Baking Co.*, 420 U.S. 223, 235 (1975) (first question is whether "the language, fairly read" supports the construction).

If a reformation/injunction is truly ambiguous in some aspect, the next step is for the enjoined party to ask the Court to clarify the ambiguity. *CBS Broadcasting v. FilmOn.com*, 814 F.3d 91, 99-100 (2d Cir. 2016). On such a motion, the principal question is, how is the

enjoined party's interpretation of the order preferable to one that serves the beneficiaries' interest? *See Frommert v. Conkright*, 913 F.3d 101, 108-9 (2d Cir. 2019) (evaluating "[e]ach of the considered equitable approaches for calculating the Plaintiffs' benefits" and affirming district court's selection of "new hire" remedy because it "falls within the range of permissible decisions" and has "significant advantages over other potential remedies").

A fiduciary like Cigna is not permitted to unilaterally fill in what it considers "open" aspects of terms essential to a reformation, but must "diligently attempt to comply with the injunction in a reasonable manner" by seeking clarification from the court. *CBS Broadcasting*, 814 F.3d at 99; *accord*, *Res. (2d) of Contracts*, §204 (when term is omitted that is "essential" to determination of "rights and duties," "term which is reasonable in the circumstances *is supplied by the court,*" emph. added). Identifying an ambiguity never authorizes an enjoined party to unilaterally modify the order, but merely means that a party may not be held in contempt for having interpreted the ambiguity in a reasonable way, even if the court rejects that interpretation. *See* Dobbs, *Law of Remedies*, §2.8(7).

Here, Plaintiffs maintain that Cigna's public strategy of unilaterally identifying "open" aspects in this Court's orders and attaching "the Company's interpretations" to them is contemptuous under the standards set out in *CBS Broadcasting v. FilmOn.com*, which was based on *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949). In *McComb*, the Supreme Court ruled that parties "act[] at their peril" when they "undert[ake] to make their own determination of what the decree meant." In *CBS Broadcasting*, the defendant "undertook to make its own determination of what the Plaintiffs' rights were" "[r]ather than

7

petitioning the district court for clarification." 814 F.3d at 99. The Second Circuit followed

*McComb* in holding that when a party "t[akes] it upon itself to interpret ... an injunction,"

that party may be "held in contempt," even if the interpretation was not in bad faith, when

the party did not seek "modification, clarification, or construction of the order." 814 F.3d at

99. *McComb* also rejected an approach that would allow a defendant to engage in

"persistent contumacy" of the equitable relief:

> A rule that would give immunity from civil contempt because the plan or
> scheme which they adopted was *not specifically enjoined* ... would give
> tremendous impetus to the program of experimentation with disobedience
> of the law ... The instant case is an excellent illustration of how it could
> operate to prevent accountability for persistent contumacy. Civil contempt
> is avoided today by showing that the specific plan adopted by respondents
> was not enjoined. Hence a new decree is entered enjoining that particular
> plan. Thereafter the defendants work out a plan that was not specifically
> enjoined. Immunity is once more obtained because the new plan was not
> specifically enjoined. And so a whole series of wrongs is perpetrated and a
> decree of enforcement goes for naught.

*Id*. at 192-93 (emph. added).

The principles that *CBS Broadcasting* and *McComb* lay out are consistent with the

longstanding "collateral bar doctrine," which provides that "a party may not challenge a

district court's order by violating it." *United States v. Cutler*, 58 F.3d 825, 832 (2d Cir.

1995). "Instead [of violating the injunction and then challenging it, the enjoined party] must

move to vacate or modify the order, or seek relief in this Court. If he fails to do either,

ignores the order, and is held in contempt, he may not challenge the order unless it was

transparently invalid or exceeded the district court's jurisdiction." *Id*.; *accord*, *Perfect Fit*

*Indus., Inc. v. Acme Quilting*, 646 F.2d 800, 808 (2d Cir. 1981) (enjoined party has a "duty

to ... ascertain the terms of any order"; "studied ignorance" is not allowed).

The Supreme Court has ruled that "sound legal principles" must guide any discretion in providing relief, including "the purposes which inform" the statute and the equitable objective of "secur[ing] complete justice." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416-18 (1975). *Accord*, *Ford Motor Co. v. EEOC*, 458 U.S. 219, 226-27 (1982) ("court must exercise [discretionary] power in light of the large objectives of the Act"). The Second Circuit has also held that "decisions that improperly disregard the valid interests of beneficiaries in favor of third parties remain subject to the strict prudent person standard articulated in §404 of ERISA." *John Blair Communications Profit Sharing Plan v. Telemundo Group*, 26 F.3d 360, 369 (1994). "Any other rule would allow plan administrators to grant themselves broad discretion over all matters concerning plan administration, thereby eviscerating ERISA's statutory command that fiduciary decisions be held to a strict standard." *Id*. According to the majority and dissenting opinions in *MetLife v. Glenn*, 554 U.S. at 113, 131, even under an arbitrary and capricious standard, courts are required to consider both "the purposes of the trust" and any "conflicting interest" with the interest of the beneficiaries. *Accord, Res. (2d) of Trusts*, §187, cmt. g.

Another ironclad principle is that if there is any ambiguity, the mandate must be "scrupulously and fully carried out." *Carroll v. Blinken*, 42 F.3d 122, 126 (2d Cir. 1994); *Puricelli v. Republic of Arg*., 797 F.3d 213, 218 (2d Cir. 2015). The relief methodology also must not compromise the "full value of what was promised." *Dunnigan v. Metropolitan Life Ins*. Co., 277 F.3d 223, 229-30 (2d Cir. 2002). Defendants are thus not allowed to refashion

"relief" in a manner that will "unilaterally diminish those benefits" or that is "inconsistent with the Plan's plain terms." *Frommert v. Conkright*, 738 F.3d 522, 530-31 (2d Cir. 2013) (defendant's relief proposal was "an unreasonable interpretation of the Plan" because it "made rehired employees worse off under the Plan in terms of actual benefits received"). In *Frommert v. Conkright (I)*, 433 F.3d 254, 256 (2d Cir. 2006), the Second Circuit determined that a "phantom account offset, through which the hypothetical growth of an employee's previous lump sum retirement benefits distribution is factored into his current benefits calculation, violates ERISA." It was "unreasonable" for the fiduciaries to develop the phantom offset "[s]ince the terms of the phantom account were neither included in the 1989 Restatement nor included in the Plan's SPDs." *Id*. at 265; *accord*, *Miller v. Xerox Corp. Ret. Plan*, 464 F.3d 871, 874 (9th Cir. 2006) (ERISA is violated by "overestimating the value of distributions" for purposes of an offset); *Dameron v. Sinai Hosp. of Baltimore*, 815 F.2d 975, 980 (4th Cir. 1987) ("systematically overestimat[ing] an employee's Social Security benefit" for an offset violated ERISA because it was "unreasonable" and was "not stated in the plan").

  If there is any ambiguity, legally-required disclosures can be used for construction. *See, e.g.*, *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 882-83 (7th Cir. 2013). A Section 204(h) notice, like the one that Cigna distributed under Court order in August 2017, "may not include materially false or misleading information (or omit information so as to cause the information provided to be misleading)." Treas. Reg. 54.4980F-1, Q&A-11(a)(5); *accord*, 29 C.F.R. 2520.102-2(b) and 2520.102-3(l); *Layaou v. Xerox Corp.*, 238 F.3d 205,

210 (2d Cir. 2001) (Sotomayor) (SPD provided no notice that plan administrator was "offsetting, not the amount of the prior distributions but instead an appreciated value of the prior lump-sum distributions").

"[P]lacing materially greater restrictions on the receipt of" early retirement benefits also violates the anti-cutback rule in ERISA §204(g), 29 U.S.C. 1054(g), and the regulations at Treas. Reg. 1.411(d)-4, Q&A-1. *Central Laborers v. Heinz*, 541 U.S. 739, 740 (2004) ("materially greater restrictions on the receipt of the benefit reduce[] the benefit just as surely as a decrease in the size of the monthly payment"); *Alcantara v. Bakery & Confectionary Union & Indus. Int'l Pension Fund Pension Plan*, 751 F.3d 71, 77 (2d Cir. 2014) (rejecting defendant's "search of limiting principles that Congress did not include in the text"); *Frommert,* 433 F.3d at 256 and 268 ("phantom account offset" was "retroactive cut-back in violation of §204(g)").

The sanctions this Court said it will impose if it finds violations of its orders by Cigna are supported by the Court's "inherent power" to enforce compliance, the equitable power to "surcharge" for breach of fiduciary duty, and the authority to impose sanctions for contempt. *Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt"); *Morrisey v. Curran*, 650 F.2d 1267, 1282 (2d Cir. 1981) ("at common law, an accounting surcharging a trustee for breach of his fiduciary duty was a readily available remedy," including for "disgorgement of ill-gotten profits")*; Amara*, 925 F.Supp.2d at 255 ("fiduciary that breaches its statutory duties may be surcharged for the amount of the benefit

11

to the trustee personally as a result of the breach"); *Bogert, Law of Trusts and Trustees*, §861 (surcharges may deter "the commission of breaches of trust even though the trust itself has suffered no loss"); *FTC v. BlueHippo Funding, LLC*, 762 F.3d 238, 243 (2d Cir. 2014) ("civil contempt sanctions" serve "to remedy any harm caused by noncompliance"); *accord*, *FTC v. Rensin*, 687 Fed. Appx. 3, 6-7 (2d Cir. 2017); *New York State NOW v. Terry*, 886 F.2d 1339, 1352-53 (2d Cir. 1989).[3]

**Summary**

Cigna has provided no new calculations of the difference in value between its "interpretations" of this Court's orders and Class counsel's, but the individual relief amounts that Cigna provided on 12/29/18 were lower than Class counsel's results for 97% of the class, Pienta Decl. ¶4, and Cigna's Status Report states that this motion will be "seeking hundreds of millions of dollars in additional relief." Dkt. #567 at 1.[4] In a February 12, 2018 Reply, Plaintiffs identified four sets of "assumptions" that Cigna said it was using in its December 22, 2017 Response that were contrary to this Court's Orders, and determined that those assumptions accounted for over 95% of the difference between the parties in the total value of the common fund. *See* Dkt.#524 at 9-10; Dkt.#520 (Cigna's 12/22/17 Resp.) at 5, 11, 14. The four sets of assumptions involved Cigna's use of:

> (1)    Funding rates to lower the value of the common fund rather than the lower IRC §417(e) rates used in the relief calculations,

---

[3] Attorneys' fees for "willful disobedience of a court order" are also an exception to the "American rule." *Castillo Grand v. Sheraton Operating Corp.*, 719 F.3d 120, 124 (2d Cir. 2013).

[4] Plaintiffs estimate the total value of the individual differences is $110 million. Pienta Decl. ¶4.

(2)     "Lookback" annuitization interest rates from the dates of lump sum distributions rather than from the dates of annuitization,

(3)     "Outdated" mortality tables whose use the Treasury Department now prohibits, and

(4)     Assumptions about early retirement commencement that eliminate valuable Part A early retirement benefits.

Dkt. #524 at 9-30. This Court's 10/17/18 Order resolved the first of these assumptions in the Class' favor. Dkt.#550 at 4. But because Cigna had not "implement[ed] its interpretation," and might reconsider in light of the risk of sanctions, this Court tabled Plaintiffs' challenges to the other three assumptions. *Id.* at 2.

Rather than reconsider, Cigna added another violation. Even after this Court issued its November 29, 2018 and December 12, 2018 orders to "pay any past due lump sums," Cigna decided not to pay "small benefit cash outs" to over 1,400 class members. Class counsel estimate that this new violation deducts another $500,000 in value from the class' relief, in addition to unlawfully delaying payments to these individuals. Pienta Decl. ¶21.

These four violations in Cigna's implementation of this Court's orders (the first three of which were identified by Plaintiffs over a year ago) are discussed one-by-one below. As indicated, the first three account for 95% of the difference between Class counsel's $293.1 million calculation (*see* Dkt.#552 at 3 n.3), and Cigna's $184.45 million. Pienta Decl. ¶19. If "the Company's interpretations" were followed, the $293.1 million full value is successively pared down to $190.9 million by the following discounts: $293.1 million x 84.9% (15.1% off from Cigna's use of "lookback" annuitization interest rates) x 89% (11% off from "outdated" mortality tables) x 86.2% (13.8% off from eliminating early retirement

benefit benefits) = $190.9 million. *Id*.

As described below, "the Company's interpretations" that Cigna has advanced as the basis for these discounts only reflect Cigna's financial interests and are not supported by any explanation of how they "fairly read" this Court's orders or "better" serve the interests of the reformation. Much like the 2006-07 trial in which Cigna produced no witnesses other than one actuarial expert who lacked any personal knowledge, Cigna has backed its "interpretations" only with uncertified assertions from its counsel.[5] No declaration from any Cigna officer with authority to make decisions has been submitted to this Court. Declarations from Prudential's actuary show that Cigna has directed Prudential on how to apply key parts of this Court's orders. Dkt.#520-1 at ¶¶6, 7, 10-12, 19. Those instructions have never been submitted to this Court, and, as stated in Plaintiffs' 2/12/18 Reply, there is no evidence that Prudential's actuaries ever exercised their actuarial judgment on any of the "interpretations" discussed herein. Dkt.#524 at 3, 9.

As indicated, instead of seeking clarification or complying with this Court's rulings, Cigna has looked to place "the Company's interpretations" on "open" aspects of this Court's rulings in ways that reduce Cigna's obligations. Cigna has done this without regard to the reformation and mandate, basic principles of contract interpretation, the principles governing judicial exercises of discretion under equitable court orders, or even an "arbitrary and capricious" standard of review. As detailed below, on each of these four issues, rather

---

[5] *Compare Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154-55 (2d Cir. 1999) (affidavit of counsel who lacked "personal knowledge of the facts ... was insufficient").

than rely on what can fairly be considered interpretations of this Court's orders, Cigna relies

on modifications. It is also remarkable that on each issue, Cigna's "interpretations" are: (1)

*worse* than what Cigna itself proposed to the Court, and (2) at odds with the descriptions of

the Part A plan provisions in the Section 204(h) notices that this Court approved in July

2017. But what is most striking is that Cigna's "interpretations" of this Court's orders revisit

and would leave unremedied large parts of the deceptions about the annuities that the cash

balance accounts could buy if annuitization interest rates dropped and about the protection

of the "subsidized" Part A early retirement benefits. As illustrated by the individual

examples below, Cigna's failure to calculate and pay the relief in accordance with this

Court's orders has caused harm and injury to the class members whose relief has been both

understated and unpaid.

I.    **Under the Guise of "Interpretation," Cigna Has Modified This Court's Methodology Orders and the Part A Provisions In Order to Use "Lookback" Interest Rates to Inflate the Offsets From the Part A Relief.**

This Court's 10/17/18 Ruling recognized that the parties' dispute on annuitization

interest rates for purposes of the offset that this Court is permitting Cigna to take is based on

"the year used to determine" the annuitization interest rate. Dkt.#550 at 2 n.1. On remand,

this Court's 1/14/16 Ruling addressed a disagreement between the parties about whether

Cigna could apply "floor" "segment interest rates of 5.24%/5.69%/5.37%" in effect for all

"benefit commencement dates on or after July 1, 2009" based on a 2009 plan amendment

that Cigna adopted. Dkt.#459 at 16. Under the heading "Interest used in Converting Lump

Sum into Annuity," this Court determined "that the plan provisions in place at *the time the*

15

*lump sum was received* should control, and not, as Cigna argues, the plan in place at the later of the date the participant reaches earliest retirement age under Part A or the actual benefit commencement date." Dkt.#459 at 16-17.

The "plan provisions" to which this Court referred include the definition of "Applicable Interest Rate" and the plan provision for calculating a "Qualified Annuity" from a cash balance account. In *every* version of Cigna's "plan provisions," the "Applicable Interest Rate" is the rate in effect in the "year which includes the Benefit Commencement Date." Dkt.#524-4 at 5 (Part A Plan (2010)); Dkt.#524-5 at 5 (Part B Plan (2010)); Ex. 1. In turn, the "Benefit Commencement Date" for an annuity is the early or normal retirement age at which the benefits begin. *Id*. The provision in the Part B Plan on annuitization for the "Qualified Annuity" provides that any account balances are annuitized using the "Applicable Interest Rate" in effect "as of [the] Benefit Commencement Date." Dkt.#437-3 at 56; Ex. 1 (Section 7.1(a)).

These "plan provisions" are all designed to satisfy ERISA and the Internal Revenue Code requirements related to the calculation of "actuarial equivalents" and "present values," so that they should *not* be "open" to any alteration under the guise of a different "interpretation."[6] The only thing that has changed over time about these "plan provisions" is that pursuant to the 2006 Pension Protection Act, Cigna amended the interest rate index

---

[6] *See* ERISA §§204(c)(3) and 205(d)(1) and (g), 29 U.S.C. 1054(c)(3) and 1055(d)(1) and (g); paralleled in IRC §§411(a)(3) and 417(b)(2) and (e), 26 U.S.C. 411(a)(3) and 417(b)(2) and (e)). *Accord*, IRC §401(a)(25) ("whenever the amount of any benefit is to be determined on the basis of actuarial assumptions, such assumptions [must be] specified in the plan in a way which precludes employer discretion").

16

used in the definition of the Applicable Interest Rate from one that uses 30-year Treasury rates to one that uses "segment" interest rates, and Cigna added an interest rate "floor" to the Qualified Annuity provision when the Part B Plan was frozen in 2009. This Court resolved the issues related to those amendments by providing for the use of the interest rate index specified by *the plan provisions in place* when any lump sum was earlier received (and by rejecting use of the "floor" interest rate for all class members). Instead of carrying out the Court's order, however, Cigna is substituting *"the interest rate in effect"* when the lump sum was received, which is a material modification of this Court's orders since interest rates fell dramatically after Part B lump sums were distributed in the late 1990's and early 2000's. Pienta Decl. ¶9; Ex. 5.

Class member Marlene Wolsieffer illustrates how Cigna's "lookback" interest rates for annuitization can drive a class member's A+B relief all the way down to "zero." Ms. Wolsieffer, a former Cigna employee who ended her career in 2005 after 31 years of service, is due an early retirement benefit under Part A of $208.55 beginning on 11/1/2013 at age 60. After terminating with Cigna, Ms. Wolsieffer took a cash balance lump sum distribution in April 2006 (as this Court will recall, this was one of the most touted features of the cash balance plan). Using the interest crediting rates provided in this Court's July 2017 Order, her Part B distribution accumulates to $75,764 at her retirement age in 2013. "[T]he plan provisions in place" before July 2009 prescribe an Applicable Interest Rate based on the 30-year Treasury rate of 2.80% for benefit commencement dates in 2013. Using that interest rate, the annuitized offset from this accumulated balance is $174.24 per

month, and Ms. Wolsieffer is entitled to a monthly A+B remedy of $34.31 beginning on 11/1/13 at age 60. But Cigna has instead looked back to the 2006 interest rate of 4.73% based on the 2006 lump sum distribution in order to annuitize her offset even though those rates were not available in 2013 when she reached retirement age. That modification would produce a $229.18 annuity offset compared with the $174.24 offset Class counsel calculate. As a result of the inflated offset, Cigna calculates Ms. Wolsieffer should receive zero ($0.00) relief. Pienta Decl. ¶11; Ex. 9.

Annette Glanz, who is one of the named Plaintiffs, further illustrates the reduction in the A+B relief that Cigna is trying to secure with this "interpretation." Cigna agrees with Plaintiffs that Ms. Glanz's Part A retirement benefit is $566.60 per month payable when she turns 65. After her employment with Cigna ended at age 39, she took a lump sum distribution of her cash balance account in November 2006. Using the interest credit rates in this Court's July 2017 Order, that amount accumulates to $133,808 at her retirement age in 2029. Using "the plan provisions in place" before July 2009, which prescribe an Applicable Interest Rate based on the 30-year Treasury rate, the annuitized offset from that accumulated balance is $238.13 per month with the 2.80% rate that was available as of the 2018 date of the determination. Under Cigna's "interpretation," however, Cigna is using a "lookback" to the annuitization interest rate of 4.73% that was in effect in 2006 to produce an inflated offset of $308.72 per month, which is $70 per month higher than the offset calculated with current rates. If Cigna is allowed to do that, even though there is no court order or plan provision providing for it, Ms. Glanz's relief would be reduced from $328.50

18

per month to $257.88 based on an annuitization interest rate from 2006 that is nearly 2% higher than the Applicable Interest Rate as of the relief determination date. Pienta Decl. ¶12; Ex. 10.

This Court's 2012 A+B reformation provides that class members must receive "*the full value* of their accrued benefits under Part A" plus "their accrued benefits under Part B" and that "retirees and former employees will be entitled to receive the difference in value between the full-value of the Part A annuity (to which they are entitled under the "A+B" approach) and the lump sum." 925 F.Supp.2d at 265 (emph. added). The Second Circuit affirmed on the basis that this "A+B remedy reforms the contract according to [class members'] understanding" that "all of their benefits accrued under Part A would be protected." 775 F.3d at 532.

On remand, this Court decided, as indicated, that using "the plan provisions in place at the time the lump sum was received" to determine the annuitization interest rate at retirement age would avoid the "5.24%/5.69%/5.37%" rates that Cigna was trying to use and that it "resolves Plaintiffs' objection" to Cigna's proposal to use "the plan in place" "*when the participant reaches retirement eligibility under Part A*" such that the offset calculation could "not be performed until many years in the future." *Id*. at 17 n.19. In the 1/10/17 Ruling, this Court further explained that it:

> held in the [January 2016] Ruling on Methodology that "the plan provisions in place at the time the lump sum was received should control," which in turn led to use of the Plan-defined Applicable Interest Rate. Using this defined term led to a distinction between beneficiaries who commenced receiving benefits prior to July 1, 2009 and those who commenced receipt after July l, 2009 because a 2009 amendment introduced these floor rates into the Plan,

19

dictating that "in no event" should benefits commencing after July l, 2009 for plan participants who elected to receive their benefits as an annuity, "be less than the amount using the Applicable Interest Rate in effect as of July 1, 2009.

Dkt. #485 at 4-6 (internal citation omitted).

This Court went on to clarify the 1/14/16 methodology by rejecting Cigna's argument that for lump sum distributions after July 1, 2009, Cigna "should be entitled to offset the remedy due under Part A by the amount it *offered* to plan beneficiaries as an annuity" under the amended Qualified Annuity provision. Dkt. #485 at 6. This Court decided that "giving Cigna credit for the annuities it offered can be misleading because those annuities are not directly comparable to the offsets being calculated, since under the terms of Part B the annuities offered were immediately available regardless of age of the beneficiary, whereas Part A benefits only become available when a beneficiary reaches retirement eligibility, which may still be several years in the future." *Id.*  In doing this, the Court also clarified that *"the offsets being calculated"* should be "*directly comparable to*" the "*Part A benefits ... available when a beneficiary reaches retirement eligibility.*"[7]

The Section 204(h) notices that the Court approved in the July 2017 decision (Dkt.#507 at 16) and which Cigna distributed to 27,000 class members in August 2017 also describe how "Annuity values of the cash balance accounts [in the notices] were determined

---

[7] This Court's July 2017 Ruling again makes clear that the issue the Court addressed with the "plan provisions in place" directive was Cigna's amendment to the plan provisions on the "Applicable Interest Rate" to allow Cigna to use "segment rates," rather than the 30-year Treasury interest rates that previously applied. Dkt. #507 at 15 (noting that Judge Kravitz "did not appear to be aware of the transition to segment rates").

using ... interest assumptions for the year of benefit commencement as defined in the Plan. For commencement dates after 2017, the assumptions in place for the 2017 plan year were used." Dkt.#524-6 at 6, 16. This language and the Court's approval of these 204(h) notices is important because Judge Kravitz determined that "plan participants at least deserve to know ... the true effect on their retirement benefits of the transition to Part B," 559 F.Supp.2d at 211, and because "[a] section 204(h) notice may not include materially false or misleading information (or omit information so as to cause the information provided to be misleading)." Treas. Reg. 54.4980F-1, Q&A-11(a)(5).

Not only does Cigna's "interpretation" modify this Court's orders on the applicable interest rate for annuitization, but it is also in tension with statutory rules prohibiting the use of "lookback" interest rates for present value calculations. Treas. Reg. 1.417(e)-1(d)(4) provides that the present value of an annuity may not be calculated with interest rates higher than those in effect five months before the determination date (this is the so-called "lookback" period). While this Treasury regulation does not directly apply to the calculation of an annuity from an accumulated account balance, Cigna's "interpretation" of this Court's orders to "lookback" to many years, and even decades, before retirement age for annuitization interest rates runs afoul of Judge Kravitz's direction to make the present value calculations "as mathematically equivalent as possible" to the annuity calculations. In 2008, Judge Kravitz discussed this Court's "intent" that "the lump sum plus interest and the annuity payments otherwise-due to date will be made as mathematically equivalent as possible." 559 F.Supp.2d at 217. Consistent with this, this Court stated in 2017 that a

21

"reasonable rate of interest is the one that the Plan uses to translate back and forth from annuities to their present value conceived as a lump sum." Dkt.#485 at 6. Both Judge Kravitz and Your Honor have ruled, moreover, that "[t]o the extent there remains some risk of overpayment [after making the calculations "as mathematically equivalent as possible"], it is equitable that Cigna, having provided statutorily inadequate benefit election forms, bear that risk." Dkt. #486 at 4; #459 at 4; 559 F.Supp.2d at 216.[8]

This Court's 10/17/18 decision has reinforced Judge Kravitz's intent that the annuity-to-lump-sum and lump-sum-to-annuity calculations should be "as mathematically equivalent as possible." In that decision, this Court "adopt[ed] Plaintiffs' proposed interest rates," the IRC §417(e) segment rates for 2018, based on Plaintiffs' "common-sense" argument that "the same interest rates *used to make the annuity calculations* must also be used to determine the present value of those benefits." Dkt.#550 at 3-4 (emph. added).

The offset that Cigna would impose by "interpretation" also cannot pass the reasonableness standard for actuarial assumptions because it uses interest rates that are materially higher than the applicable interest rates *available* at retirement, *see* Pienta Decl. ¶9, and because there is no provision anywhere in the Cigna Plan under which an annuity is provided using interest rates from 20 years before. Using a "phantom offset" like this to

---

[8] Judge Kravitz and the Second Circuit also recognized that "[w]hen interest rates later fell, the account balances were unable to grow quickly enough to 'repurchase' the value of the plan participants' Part A annuities." 534 F.Supp.2d at 347; *see also* 775 F.3d at 516 ("if an employee were to elect to receive an annuity at retirement under Part B, the price of the annuity would be affected by the *then-current* interest rate (so that an employee would receive a lower annual benefit for the same lump sum price *if interest rates were low when he or she retired*)") (emph. added). The Supreme Court's opinion also recognizes that the price of an annuity at retirement age "depends upon interest rates ... *at that time*." 563 U.S. at 427 (emph. added).

diminish the "full value" of relief is in violation of the authorities cited above. *See infra* at

9-11. *Accord*, *Esden v. Bank of Boston*, 229 F.3d 154, 165 (2d Cir. 2000) (IRS Notice 96-8

("employee must be paid at least *the present value*" of the "hypothetical account ...

*projected to" retirement age*; quoting IRS Notice 96-8).

In winding its way around to this "interpretation," the biggest sleight of hand was for

Cigna to read the Court's Order on following "the plan provisions in place" as allowing it to

calculate annuitized offsets "using the interest rate ... in effect at the time the lump sum was

received." Cigna first floated this "interpretation" in a response to Plaintiffs' objections to

the Section 204(h) notices in February 2016. Dkt#465 at 6-7. Cigna did not secure the

language it wanted in the Section 204(h) notices, but almost two years later, Cigna's

December 22, 2017 Response stated nevertheless that this Court's January 2016 Order, as

revised in January 2017, had ordered Cigna to use "the interest rate ... in effect at the time

the lump sum was received." Dkt.#520 at 4, 10. Cigna asserted in that filing that this Court's

opinion on this "point" was "clear." *Id*. at 10-11. In a motion to strike filed three months

later, Cigna took another giant step down this road by asserting falsely that its position

reflected a "long settled issue." Dkt.#526-1 at 2. In a recent notice to class members, Cigna

misleadingly represented that is using "the interest rates and mortality tables *as prescribed

by this court*." Ex. 6 at 2 (emph. added).[9]

Not only is this unconscionable, but it contradicts two principles on which Cigna

---

[9] At the 7/25/18 Status Hearing, the Court made clear that neither party's communications
with class members are to "say the District Court has ordered that." Tr. at 32.

agreed. In its 1/24/17 motion to clarify, Cigna agreed that the Court's methodology orders may not "alter" the Second Circuit's mandate affirming that reformation.  Dkt.#487-1 at 11-12. As indicated, the central direction in the reformation is that participants will receive "the full value of their accrued benefits under Part A," not just part of that value. In a July 2015 filing on methodology, Cigna further recognized that "[w]here the Court's opinions do not specify the assumption or methodology to use, ... the Court's direction [is] to use the actual terms of Parts A and B." Dkt.#428 at 3.

The unconscionability of Cigna's "interpretation" is further illustrated by its failure to conform with the annuitization methodology that Cigna proposed to this Court in July 2015. The methodology that Cigna proposed then was to find the "applicable interest rate" "as of the later of the date the participant reaches earliest retirement age under the terms of Part A or the participant's actual benefit commencement date." Dkt.#428 at 25 and n.16 ("[t]he actual interest rate used will be determined at the time the person receives benefits under Part A"). In a September 2015 reply, Cigna again said that "[t]he interest rates and mortality factors applicable to calculate the Part B annuity will be those in effect at the time the participant commences the "A" portion of the A+B benefit." Dkt.#444 at 12. It is common sense and, as shown here, recognized by Cigna otherwise, that if an offset is to be taken from the Part A early or normal retirement benefit, it has to be calculated using the same Benefit Commencement Date. *See, e.g.*, Dkt.#428 at 22.

Using "lookback" interest rates from decades ago to calculate annuitized offsets because those rates are more favorable to Cigna would permit Cigna to avoid use of the

lower interest rates for annuitization that have prevailed for the past 15 years. With the assistance of the Cheiron actuarial firm, Class counsel calculate that the overall reduction in the relief from Cigna's modified interest assumption for annuitization would be 15.1%. That decrease is not evenly distributed but most heavily falls on the class members who took cash balance distributions the farthest back in time. Pienta Decl. ¶10. The result of Cigna's "interpretation" would be that these class members do not receive "the full value" of the A+B reformation because their A+B relief will be subject to inflated offsets to improve Cigna's bottom line so that they, rather than Cigna, are the ones bearing the risk of the declines in annuitization interest rates.

## II.    In Violation of This Court's Orders and the Plan Provisions, Cigna Has Used "Outdated" Mortality Tables, In Combination With the "Lookback" Interest Rates, to Further Inflate the Offsets From the Part A Relief.

As with the dispute on the annuitization interest rates, this Court's 10/17/18 Ruling recognizes that the difference in the parties' positions on the "applicable mortality table" for annuitization is based on "the year used to determine" the mortality table. Dkt.#550 at 2 n.1. As Plaintiffs read this Court's order, Plaintiffs are to follow the plan provisions on the "Applicable Mortality Table" before and after 2009. Under that definition, the plan provisions call for use of "any successor table prescribed by the Commission of Internal Revenue" at the time the calculations are made. Ex. 1.[10] IRC §417(e)(3)(B) requires the Treasury Department to revise its mortality tables "at least every 10 years to reflect actual

_____

[10] After January 2008, the Plan's definition continued to effectively provide for use of "successor" mortality tables but reworded it as "the applicable mortality table as prescribed under Code Section 417(e)(3)." Dkt.#524-4 at 4; Ex. 1. Code Section 417(e)(3) provides that this means the "mortality table modified as appropriate by the Secretary [of Treasury]."

mortality experience of pension plan participants and projected trends in that experience."
82 Fed. Reg. 46389 (Oct. 5, 2017). Following that statutory schedule, the Secretary of
Treasury modified its mortality table as of January 1, 2018 to the one specified in 82 Fed.
Reg. 46388 ("Mortality Tables for Determining Present Value under Defined Benefit
Pension Plans") and in IRS Notice 2017-60. The Treasury Department has recognized that
the use of "outdated" mortality tables will cause a "permanent loss of retirement assets." 82
Fed. Reg. 46393.

Under the guise of "interpretation," Cigna wants this Court to allow it to engage in a
form of time travel to return to the old mortality tables, "outdated" by as much as two
decades, that were in effect when Part B lump sum distributions were made. Cigna wants to
use those mortality tables to calculate annuitized offsets at much later retirement ages, *see*
Dkt.#520 at 4, 10, even though no Court order and no plan provision provides for that. To
be certain that Cigna was actually doing this, Plaintiffs asked, and in a 2/7/18 email, "Cigna
confirm[ed] that to produce annuitized offsets, Cigna has used the mortality tables in effect
in the year the cash balance account was distributed"). Ex. 7. The result of Cigna's
"interpretation" is an 11% decrease in the relief, which in combination with the 15.1% from
the lookback interest rates, would cut into "the full value" of the A+B relief by 26%. Pienta
Decl. ¶14.

To illustrate, Stephen Curlee, who was deposed in Nashville, TN by Cigna, was
eligible for a Part A early retirement benefit of $956.23 per month commencing on April 1,
2009 at age 60. After Mr. Curlee left Cigna's employ in 2004, he took a Part B lump sum

distribution. With the interest crediting rates this Court prescribed, that Part B account balance accumulates to $138,254 by April 2009. But Cigna is then applying the mortality table applicable in 2004 to annuitize the accumulated balance, inflating the offset from $738.39 to $787.30 and thereby decreasing his A+B relief from $217.83 to $168.93. In combination with the "lookback" annuitization interest rate that Cigna is also using from 2004, Mr. Curlee's A+B relief has been reduced by Cigna from $217.83 down to $76.74. Pienta Decl.¶15.

This Court has issued no order, and there is no plan provision related to mortality that conforms with using "outdated" mortality tables in accordance with Cigna's "interpretation." In contrast to its current interpretation, Cigna's proposed methodology in July 2015 said the "mortality tables in effect when the participant commences benefits will apply." Dkt. #428 at 11; *see also* Dkt.#444 at 12 ("mortality factors applicable to calculate the Part B annuity will be those in effect at the time the participant commences the "A" portion of the A+B benefit"). In line with this Court's Orders, the Section 204(h) notice that this Court approved in July 2017 states that "Annuity values of the cash balance accounts were determined using actual life expectancy ... for the year of benefit commencement as defined in the Plan." Dkt.#524-6 at 6, 16.

It is actuarial "heresy" to reach back to an outdated mortality table to calculate an annuitized offset at retirement age because the old 417(e) mortality tables are not representative of the annuities that can be provided at retirement age with the accumulated lump sums. Cigna's assumption is also inconsistent with the Supreme Court's decision in

27

this case, which offered an example of an employee who "retire[s] in 2031 at age 65. The

2031 price of an annuity ... until death depends upon ... *mortality assumptions at that time*."

563 U.S. at 427.

With the annuitization interest rates, this is the second of Cigna's "interpretations" of

the Court's January 2016 Order on using "the plan provisions in place." Cigna's

"interpretation" would not "fairly read" this part of the Court's Order and the related Part A

plan provisions on the "Applicable Mortality Table," but would modify them by "using the

... mortality rates in place at the time the lump sum was received." Dkt.#520 at 4, 10.

Cigna's use of "outdated" mortality tables is a violation of this Court's Orders and the Plan

provisions, as well the Treasury regulations requiring use of the current mortality tables.

**III.    In Violation of This Court's Orders, the Plan Provisions, and the "Anti-Cutback" Rule in ERISA §204(g), Cigna Is Refusing to Pay Early Retirement Benefits Until the "Later of" the Part A Early Retirement Date or the Date the Part B Cash Account Is Distributed.**

This Court's 2012 reformation mandated that "class members will receive ...  the full

value of 'their accrued benefits under Part A,' *including early retirement benefits*, in annuity

form...." 925 F.Supp.2d at 265. As Judge Kravitz recognized, the Part A early retirement

provisions provide a "*subsidized*" benefit which has "an overall value that is greater than

the present value of the benefit payable at normal retirement age (usually age 65)." 534

F.Supp.2d at 297. Based on Judge Kravitz's determinations, the Supreme Court recognized

that the Part A "right to retire early (beginning at age 55) with only somewhat reduced

benefits [is] valuable." 563 U.S. at 429. In affirming this Court's 2012 reformation after the

Supreme Court's remand, the Second Circuit also recognized that "Plan participants had a

reasonable expectation that Part B would protect *all* Part A benefits, including early retirement." 775 F.3d at 532.

Under the Part A plan provisions on early retirement, if participants meet the age and service to be eligible for early retirement, "subsidized" early retirement benefits can commence as early as age 55. Dkt.#437-1 at 36; Ex. 2. The class members who are eligible are those "who [are] at least age fifty-five (55) and ha[ve] completed at least ten (10) years (at least fifteen (15) years for New Formula [Tier 2] Participants) of Eligible Service." *Id*. There are no additional conditions to commencing those benefits other than age and service and not being actively employed by Cigna.

Adding any additional conditions to the commencement of early retirement benefits under the Part A provisions, through "interpretation" or otherwise, violates the "anti-cutback" rule in ERISA §204(g), which the Supreme Court has ruled protects participants against the imposition of additional conditions "just as surely as" as it protects them against "a decrease in the size of the monthly payment." *Central Laborers v. Heinz*, 541 U.S. at 740; *accord, Depenbrock v. Cigna Corp.*, 389 F.3d 78, 85-86 (3d Cir. 2004) (retroactive application of "rehire rule" in Part B Plan "directly or indirectly affects the calculation of benefits" in violation of "anti-cutback rule"; rejecting Cigna's "unsubstantiated interpretation" of that rule). Here, Judge Kravitz recognized that "[i]f [an] employee does not retire at the earliest opportunity to obtain the subsidized early retirement benefit – say, 55 – the value of that benefit diminishes with each passing year until it is completely lost as of the date of normal retirement." 534 F.Supp.2d at 297.

29

Adding additional conditions would also undercut Judge Kravitz's intention that the A+B reformation will address Cigna's violations of the "relative value" notice rule by its failure "to notify employees that early retirement benefits were only available through the Part A annuity" and "to inform employees when their Part A benefits exceeded their Part B benefits (the so-called Minimum Benefits Rule)." 559 F.Supp. 2d at 214. In the 2008 relief decision, Judge Kravitz thus ruled that

> A reformation of the benefit election notices to take account of the Court's A+B remedy would ... address these ... defects, as all Part A benefits (including early retirement benefits) would be protected and automatically provided in annuity form, and all Part B benefits would be available as a lump sum or an annuity, making the Minimum Benefits Rule irrelevant.

*Id*.; *see also id.* at 219 (annuity relief will be provided "without an affirmative opt-in").

This Court's reformation and methodology rulings make clear that the relief shall "include the whole value of [class members'] Part A benefits-including early retirement benefits." Dkt.#486 at 18. This Court has also made clear that a class member does not have to give up any of his or her Part B rights to obtain this relief, stating that "participants who have been counting on receiving a lump sum under Part B should not be stripped of that right by the Court's remedy." Dkt.#486 at 10. This Court's 7/14/17 Ruling further confirmed the Court's intent that the relief will be "calculated uniformly across the entire class" and will not treat the class members who have not commenced a Part B benefit "materially differently from the portion of the class that has already received a lump sum." Dkt.#507 at 12-13.[11] The 10/17/18 Ruling also rejected Cigna's restrictions on relief "for

---

[11] The Section 204(h) notices that this Court's 7/14/17 Ruling approved contain no additional conditions to commencement of Part A early retirement benefits. Instead, they identify

30

participants who have not yet commenced Part B benefits," ruling that "Plaintiffs' proposed age assumptions are no more administratively difficult to adopt than Defendant's" and "have the benefit of reflecting the maximum actuarial value of the relief that class members in this category are entitled to if they choose it." Dkt.#550 at 5-6.

Cigna nevertheless proceeded to alter the Court's reformation, the Part A provisions on early retirement benefits, and the methodology orders (as well as violating ERISA's anti-cutback rule) in order to limit the commencement of these benefits until "*the later of*" (i) the Part A early retirement age or (ii) the distribution of the Part B cash account. *See* Dkt.#520 (12/22/17 Resp.) at 10; Dkt.#546 (8/31/18 Resp.) at 4; Dkt. #551 (11/7/18 Notice) at 2. This "later of" restriction is *not* found in this Court's orders or the Part A plan provisions on early retirement. If Cigna's modification were allowed, it would affect the "affirmative opt-in" that Judge Kravitz said would *not* be allowed, and it would reduce "the full value" of the relief provided in the reformation by close to 14%. Dkt.#524-14 (Pienta Suppl. Decl.) ¶14. Cigna's individual results show that over 6% of the group who received Part B lump sums were eligible to commence early retirement benefits before the dates of those Part B distributions and that 30% of the 2,267 individuals in the not previously paid group who are no longer working for Cigna are eligible for early retirement benefits. Pienta Decl. ¶16.

Trial witness Lillian Jones provides an example of a class member with a cash balance distribution date that was "later" than her Part A Plan's most valuable early

---

"early retirement benefits" as one of the "Key Differences" between Part A and Part B and explain that "the Part A Plan offered [early] retirement benefits that were more valuable than the benefits payable at age 65." *See* Dkt.#524-6 at 3, 13.

retirement age. Ms. Jones was eligible for valuable early retirement benefits based on 37 years of service with Cigna, far in excess of the 10 years needed for someone hired before 1985 to be early retirement eligible. Class counsel calculate that Ms. Jones is due $631.96 per month in relief retroactively to when she reached age 56 in January 2001 (after she terminated her employment with Cigna). However, Cigna's results show a *three years later* "relief date" based on the "later" date of her Part B cash balance distribution.  Cigna's age 59 "relief date" would eliminate Ms. Jones' early retirement benefits between ages January 2001 and October 2003 and thereby reduce her back benefits with interest by $45,136. Dkt.#524-14 (Pienta 2/12/18 Suppl. Decl.) ¶16. Cigna's age 59 "relief date" would also fail to address the "Minimum Benefits Rule" violation that Judge Kravitz intended to remedy through the A+B reformation. *See* 559 F.Supp.2d at 214.

Robert Brethen, a Part A Plan participant in "Tier 2" who left Cigna at age 51 and turns age 65 this year, offers an example of a class member who was eligible for early retirement and has not been paid his Part B cash account to date.[12]  Class counsel calculate a monthly remedy benefit for Mr. Brethen beginning in August 2014 when he turned age 60 of $112.47 per month. Mr. Brethen should receive that amount going forward, plus $6,567 in back benefits. Pienta Decl. ¶18. However, according to Cigna, Mr. Brethen must forfeit all of his monthly benefits until he takes his Part B cash distribution, even though Cigna never gave him any option to preserve the full value of his right to A+B relief. Ex. 8. As a

---

[12] Employees who were hired after 1988 were placed in a "Tier 2" benefit formula. *See* 534 F.Supp.2d at 299. As described in the Section 204(h) notice, for Tier 2 class members, the early retirement benefit at age 60 is the most valuable benefit. Dkt.#524-6 at 13.

result, Cigna's calculations do not include *any* of the value of Mr. Brethen's Part A early retirement benefits.

Cigna's position that it can eliminate all or part of the Part A early retirement benefits based on the date of the Part B distribution reflects another turnaround from Cigna's 7/13/15 briefing on its proposed methodology. That brief proposed that the calculation of relief for non-paid participants "is straightforward":

> class members will receive their accrued benefits under the terms of Part A as an annuity in accordance with the terms of Part A (for most class members based on their service and salary history as of December 31, 1997); and ... class members will receive the benefit credits and interest credits earned on those benefit credits under the terms of Part B.

Dkt.#428 at 6-7. Cigna clearly stated that "These A+B benefits will be paid in the same manner and according to the same terms that apply to those Plan participants and class members that already receive A+B benefits." *Id*. at 7; *see also id.* at 10 ("Cigna will pay ... the same benefits, in the same form, and at the same time that these class members would have been paid based on their years of service immediately before the conversion to Part B"). The "already" existing A+B plan "terms" to which Cigna referred are in Section 2.4(b)(4)(c) of Cigna's Part B Plan (as amended and restated eff. 1/1/2001). Ex. 3. Those plan terms provide for paying the Part B cash accounts "*separately*" from any Part A early retirement benefits, *i.e.*, "Such Participant's Part A Accrued-Benefit shall be maintained (in accordance with the applicable provisions of Part A) *separately* from the benefit he accrues under this Part B." *Id.* (emph. added).

The one and only example of early retirement benefits in Cigna's July 2015 filing

33

also said that early retirement benefits for class member Dulcie Davis would be provided "if she elects to take her Part A annuity benefits before age 65" and that "different Early Retirement Reduction Factor[s]" apply at ages between 55 and 64. Dkt. #428 at 16-18. There was no condition related to Ms. Davis taking her Part B distribution. *Id*. Cigna 9/29/15 Reply further said that "the amount of their [early retirement] benefits will depend on when (age 55-64) they choose to commence their benefits," with no suggestion of any "later of" restriction. Dkt. #444 at 12 n.17.

Sometime after this Court's ruling that "participants who have been counting on receiving a lump sum under Part B should not be stripped of that right," Dkt.#486 at 10, Cigna changed its position that the A+B relief would be provided "according to the same terms that apply to those Plan participants and class members that already receive A+B benefits." Instead, Cigna tried to condition the A+B relief on *first* taking a distribution of the Part B benefits. Dkt.#520 (12/22/17) at 10. But Cigna *never* asked for clarification or moved to modify the Court's order. Simply put, Cigna's revised "interpretation" is contrary to the reformation and the Court's Rulings. Plaintiffs' 2/12/18, 8/31/18, and 9/6/18 filings all complained about Cigna's revised position on "using the unrelated Part B distribution date as a means to forfeit early retirement benefits." Dkt.#524 at 28; Dkt.#544 at 10 n.4 ("Cigna wants to assume ... that early retirement benefits will not be provided unless the "Part B" distribution takes place on or before that date, which would undercut the reformation and conform with no rule in the Part A Plan"); Dkt.#547 at 5 n.3 ("Cigna argues that Part A early retirement benefits cannot commence until Part B benefits are distributed").

34

Cigna has offered no interpretation of the Court's methodology rulings or its reformation to justify why the elimination of several years early retirement benefits for class members like Ms. Jones' and Mr. Brethen is "required" to take place, or should take place. For the not previously paid group, like Mr. Brethen, Cigna's briefing leading to the Court's July 2017 Ruling vaguely asserted that "the amount of th[e] benefits for each person will vary depending on if she retires" and "it does not make sense to provide estimates at every age." Dkt.#494 at 8. But this Court's July 2017 order rejected Cigna's arguments about "estimates" and said that it "intended the A + B remedy to be calculated uniformly across the entire class" and that the non-paid class members should not be treated "materially differently from the portion of the class that has already received a lump sum." Dkt. #507 at 11-13. The Court also twice described how these calculations can be done without the final Part B distribution amount by "offset[ting] the value of the Initial Retirement Account," *id*., which is determinable with no additional assumptions.

More recently, Cigna has gone back to its contention from before the July 2017 Ruling that it is "impossible" for Cigna to calculate the relief for class members like Mr. Brethen until they take their Part B distribution. Dkt.#546 (8/31/18) at 6; *accord*, Dkt.#553 at 5. Any contention that it is "impossible" to comply with an injunctive order carries a heavy burden. *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995). Cigna never carries that burden, and it simply ignores this Court's intent that the relief will be "calculated uniformly across the entire class." Dkt.#507 at 11-12. Cigna further ignores that this Court already explained how the calculations can be performed by "offset[ting] the

value of the Initial Retirement Account." *Id*. at 13.

In sum, it is unreasonable and contemptuous for Cigna to modify the reformation and this Court's methodology rulings under the guise of an "interpretation" so that class members like Lillian Jones and Robert Brethen do not receive the early retirement benefits they were eligible for under Part A. Cigna's "interpretation" is all the more insidious because class members like Ms. Jones and Mr. Brethen have done nothing to deserve this. The only rationale for refusing to immediately and fully pay their Part A early retirement benefits is to improve Cigna's financial bottom line.

## IV.    Despite Two Court Orders, Cigna Has Refused to Pay "Small Benefit Cashouts" to Over 1,400 Not Previously Paid Class Members.

The Part A provisions provide that a small benefit cashout, i.e., a lump sum distribution if the value of a participant's annuity is less than $5,000, shall be made if "a Participant terminates employment with Cigna Corporation ... before qualifying for normal or early retirement benefits ... and if, as of the date of distribution, the present Equivalent Actuarial Value of his entire vested accrued benefit does not exceed" $5,000. Dkt.#437-1 at 62; Ex. 4. This provision contains no reservations related to taking a Part B distribution. This Court's November 29, 2018 Order directs Cigna to "pay any past due lump sums" within 90 days. Dkt.#555 at 11. On Cigna's own motion, this Court's 12/12/18 Order specifically clarified that the small benefit cashouts must be paid "where the value of the future remedial annuity to which the class member is entitled is equal to or less than $5,000 (after deducting attorneys' fees), *regardless of any ... Part B cash balance benefits to which the class member also is entitled (or has received).*" Dkt.#560 at 1.

36

Cigna's 2/20/19 Status Report admits that Cigna has not paid at least 1,400 class members who are otherwise due small benefit cashouts because the Part B cash balance benefits to which they are entitled have not yet been received. Dkt.#567 at 11. This modification only benefits Cigna because these participants will not be paid now, and if they are paid later in 2019, Cigna intends to calculate the cashouts with the *higher* segment interest rates applicable for cashouts in 2019, which will lessen the distribution amounts. Cigna knew that if it postponed the calculation and payments of the small benefit cashouts for this group until 2019 or later years, the Applicable Interest Rates would increase. In fact, the Applicable Interest Rates for 2019, as published by the IRS on January 14, 2019, increased by over 70 basis points. Pienta Decl. ¶21.

The background to this dispute further confirms that Cigna has knowingly disobeyed this Court's Orders. Before filing its 12/6/18 motion for clarification, Cigna filed a 14-page proposed order with this Court on 8/3/18 with no accompanying motion. That proposed order was to "memorialize" the Court's directions in the 7/25/18 Status Conference. Tr. at 46. But Cigna's proposed order instead staked out different positions, including one on small benefit cashouts that differed from the Part A provision, but is similar to what Cigna is doing now. Cigna's proposed order stated:

> The Plan may pay out the entire remedy to a class member as a lump sum where the net present value of a class member's remedy payment as of the earliest date that Part A is payable to that class member, which depends on early or normal retirement eligibility, *that is on or after the date on which the class member commenced Part B benefits* ("Payment Date") is equal to or less than $5,000, exclusive of any Part A annuity back payments (with interest) or Part B cash balance account amounts already paid or to which the class member is entitled.

Dkt.#541 at 6 (emph. added). On 11/29/18, this Court rejected this approach and ordered Cigna to pay "any past due lump sums" by the end of February 2019.

Less than a week after, Cigna filed a motion for clarification stating that it was "acceding" to "the methodology proposed by Plaintiffs in their filings and individual calculations for handling small benefit cashouts," even though Cigna acknowledged it "had proposed a slightly different methodology in their proposed [August 3, 2018] order." Dkt. # 556-1 at 2. Cigna said in its motion that it "understands that Plaintiffs determine whether a class member is entitled to a small benefit cashout by valuing only the future remedy payments to which the class member is entitled and disregarding retroactive payments [and] Part B benefits." Dkt.#556-1 at 5-6. Cigna's Proposed Order then dropped the language in the 8/3/18 proposed order about "the date on which the class member commenced Part B benefits' and provided, without qualification. that:

> Cigna shall cause the Plan to pay and the Plan shall pay a lump sum to a class member ... where the value of the future remedial annuity to which the class member is entitled is equal to or less than $5,000 (after deducting attorneys' fees), regardless of any back benefits or Part B cash balance benefits to which the class member also is entitled (or has received). This is true even if that class member also is entitled to (or has received) back benefits or Part B cash balance benefits that, in the aggregate (together with the future remedial annuity payments), would exceed $5,000. Such lump sum payments, hereinafter referred to as "Small Benefit Cashouts," shall be made without any action or separate election by the class member.

Dkt.#559-2 at 1. Cigna's memorandum further assured the Court that "To be clear, all of these benefits would be paid. The issue is simply which benefits should be included in the determination of eligibility for small benefit cashouts." Dkt.#556-1 at 3 n.3. Cigna never indicated any intent not to pay small benefit cashouts to the not previously paid group.

Plaintiffs' counsel responded to Cigna's motion by accepting it with some edits to Cigna's proposed order, and this Court issued the order on December 12, 2018. Dkt.#560.

Rather than comply with the clarifying order, Cigna's counsel reversed course in a 12/29/18 email that accompanied the Court-ordered individual results and said, "We have not included [small benefit cashout] amounts in the "Not Previously Paid Part B" tab, but Cigna will calculate and pay small benefit cashouts using the same methodology *described in its August 3, 2018 Proposed Order* and applied to previously paid class members when they commence benefits." Ex. 7. When Class counsel objected, Cigna said in a 1/8/19 email that "we disagree that the Court has ordered that Cigna pay these class members their A+ B retirement benefits before they commence their Part B benefits...." *Id*.

Cigna's 2/20/19 Status Report devotes considerable space to trying to explain why Cigna has not made the small benefit cashout payments to participants who have not received their Part B distributions in the face of this Court's Order (which, as described above, Cigna moved for and drafted) which states that these cashouts will be paid *"regardless of any ... Part B cash balance benefits to which the class member also is entitled*." Dkt.#567 at 11-13 (emph. added). In the Status Report, Cigna claims it is not paying these class members because it "would require a variety of assumptions that have never been approved or ordered by the Court and that are not part of the Plan terms." *Id*. at 12-13. But this is plainly pretextual: The small benefit cashouts for the not previously paid class members can be calculated, as Plaintiffs have done, with no assumptions beyond those

used for the previously paid group and those provided in the clarifying order.[13]

In sum, Cigna has, with no sound reason, modified the Orders that the Court entered, including the clarifying order that the Court adopted at Cigna's behest, as well as the small benefit cashout provisions in the Part A Plan to avoid paying a group of 1,400 class members within the deadline this Court set, once again without asking for clarification from the Court.

**Conclusion**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion to enforce the Court's methodology rulings and sanction Cigna for calculating and paying individual remedy amounts under "Company interpretations" of "open" aspects of this Court's orders that fail to comply with the reformation and methodology rulings. The Proposed Order is attached.

Dated: April 5, 2019

<div style="margin-left: 50%;">

Respectfully submitted,

s/ Stephen R. Bruce
Stephen R. Bruce Ct23534
Allison C. Pienta phv01316
STEPHEN BRUCE LAW OFFICES
1667 K Street, NW, Suite 410
Washington, DC 20006
(202) 289-1117
stephen.bruce@prodigy.net
acaalim@verizon.net

Christopher J. Wright phv07752
HARRIS WILTSHIRE GRANNIS LLP

</div>

---

[13] Cigna's Status Report also illogically argues that a footnote that Cigna voluntarily removed from its proposed order still modifies the order that the Court entered. Dkt.#567 at 11.

1919 M St., NW, 8th floor
Washington, DC 20036
(202) 730-1325
cwright@hwglaw.com

Michael J. Walsh Ct09111
WALSH WOODARD LLC
527 Prospect Ave
Hartford, CT 06105
(860) 549-8440
mwalsh@walshwoodard.com

Attorneys for Plaintiffs and
Plaintiff Class