UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANICE C. AMARA *et al*, individually, and on behalf of others similarly situated,<br>    *Plaintiffs*,<br>v.<br>CIGNA CORP. AND CIGNA PENSION PLAN,<br>    *Defendants*. | Civil No. 3:01-CV-2361 (JBA)<br><br>August 16, 2019 |

**RULING ON PLAINTIFFS' MOTION TO ENFORCE COURT RULINGS AND FOR SANCTIONS**

Plaintiffs move "that this Court grant their motion to enforce the Court's reformation and methodology rulings and sanction Cigna for calculating and paying individual remedy amounts under . . . interpretations . . . of this Court's orders that fail to comply with the Court's rulings." (Pls.' Mot. to Enforce Court Rulings and for Sanctions [Doc. # 571] at 1.) For the reasons set forth below, Plaintiffs' Motion is granted in part and denied in part.

**I.   Background**

The Court assumes the parties' familiarity with this case's background and history. A summary of the case's history through January 10, 2017 can be found in the Court's Revised Ruling on Proposed Methodology and Request for Order of Compliance Plan, issued on that date. ([Doc. # 486] at 2-5.) On July 14, 2017, the Court granted Cigna's motion for clarification of the January 2017 order. ([Doc. # 507].) On November 7, 2017, the Court denied Plaintiffs' subsequent motion for reconsideration. ([Doc. # 517].)

On October 17, 2018, after briefing by the parties, the Court adopted Plaintiffs' proposed interest rate and age assumption methodologies for the purpose of calculating the net present value of the remedy award and calculating the attorneys' fees to which Plaintiffs might be entitled. The

Court also directed Defendants to provide the Court with an updated net present value calculation. ([Doc. # 550].) After further briefing by the parties, the Court on November 29, 2018 granted Plaintiffs' Motion for Attorneys' Fees in substantial part and directed Defendants to begin implementing the A+B remedy as quickly as possible, setting a schedule for the payment of past-due lump sums and back benefits. ([Doc. # 555] at 11.) After Defendants' subsequent motion for clarification, the Court ordered Defendants to pay small benefit cashouts on the same schedule. ([Doc. # 560] at 1-2.)

On April 5, 2019, Plaintiffs filed the instant Motion, asserting that "Cigna has violated the Court's rulings by:

> (1) Using "lookback" interest rates from the date of the Part B lump sum distributions rather than from the Part A "Benefit Commencement Dates" to annuitize the offsets that this Court has allowed Cigna to take;
>
> (2) Using "outdated" mortality tables from the date of the Part B lump sum distributions rather than the "successor" mortality tables applicable under the plan provisions on the "Applicable Mortality Table" to annuitize the offsets that this Court has allowed Cigna to take;
>
> (3) Eliminating early retirement benefits until the "later of" the Part A early retirement age or the date the Part B cash balance account is distributed; and
>
> (4) Refusing to pay "small benefit cashouts" to class members who have not received their Part B cash balance accounts.

(Pls.' Mot. to Enforce Court Rulings and for Sanctions at 1-2.) The Court addresses each of these issues in turn.

## II. Interest Rates and Mortality Tables

This Court previously addressed Plaintiffs' objection to "Defendants' [proposed] methodology for converting the already-paid lump sums into annuities for purposes of offsetting

2

A + B." (Revised Ruling on Proposed Methodology and Request for Order of Compliance Plan at 16.) Cigna had stated that when "'annuitizing the Part B benefits, . . . [it] will use the mortality tables and interest rates actually in effect under the terms of Part B as of the later of the date the participant reaches earliest retirement age under the terms of Part A or the participant's actual benefit commencement date.'" (*Id.* (alterations in original).) The Court ruled "that the plan provisions in place at *the time the lump sum was received* should control . . . and not, as Cigna argues, the plan in place at the later of the date the participant reaches earliest retirement age under Part A or the actual benefit commencement date." (*Id.* at 17 (emphasis in original).)

The parties now dispute, in essence, the year(s) to be used to determine the interest rate and mortality table for calculating the annuity value of the lump sum distribution for purposes of determining the offset. (*See* Ruling on Methodology for Calculating Attorneys' Fees at 2 n.1 (noting but not reaching this legal disagreement).)

Plaintiffs argue that under the "plan provisions" referred to in the Court's previous ruling, the "Applicable Interest Rate" is "the rate in effect in the 'year which includes the Benefit Commencement Date.'" (Pls.' Mem. Supp. Mot. to Enforce Court Rulings and for Sanctions [Doc. # 571-1 at 16.) The Benefit Commencement Date is "the early or normal retirement age at which the benefits begin." (*Id.*) This date, in other words, is the year of Part A eligibility. Similarly, Plaintiffs argue the "plan provisions" should be read to refer to plan provisions on the Applicable Mortality Table, which calls for the use of successor tables prescribed by the Commissioner of Internal Revenue. (*Id.* at 25.) By contrast, Defendants contend that "[m]ore logically, the statement 'Plan provisions in effect when Part B was paid' refers to both the 'mortality tables and interest rates' in that year, given that the Court referred to both provisions in the prior paragraph of its opinion." (Defs.' Opp'n to Mot. to Enforce Court Rulings and for Sanctions [Doc. # 572] at 20.)

3

The Court finds Defendants' application of the Court's previous ruling more persuasive. In context, given the Court's rejection of Cigna's proposal to tether the interest rate/mortality table year to the year of Part A eligibility, "plan provisions" refers to "the mortality tables and interest rates" in effect at the time the lump sum was received. (*See also* Revised Ruling on Proposed Methodology and Request for Order of Compliance Plan at 17 ("This methodology has the added benefit of permitting Cigna to calculate the amount owed to all class members that have already received benefits as a lump sum, without waiting until those participants reach retirement age under Part A . . . .").) (*Cf.* Ruling on Defs.' Mot. for Clarification and Correction of Judgment [Doc. # 507] at 14 (in context of determining interest rate on lump sums already paid, "[f]ixing the interest rate at the rate available to a plan participant at the time he or she received the Part B lump sum captures the fact that plan participants had control to invest their money at that point in time.").) Accordingly, Plaintiffs' arguments on interest rates and mortality tables are unavailing.

### III. Early Retirement Benefits

Next, Plaintiffs challenge what they characterize as Defendants' refusal to pay early retirement benefits until the "later of" the Part A early retirement date or the date the Part B cash account is distributed. (Pls.' Mem. Supp. Mot. to Enforce Court Rulings and for Sanctions at 28.) Cigna contends that it complied with the Court's orders to calculate remedy benefits as of the later of the Part A remedy date or the date of Part B benefit commencement. (Defs.' Opp'n to Mot. to Enforce Court Rulings and for Sanctions at 28.)

As the Court noted in the July 25, 2018 telephonic status conference, "we're not going to relitigate methodology; and to the extent there are issues that could have been brought up in the motions related to methodology and weren't, it's really too late." ([Doc. # 538] at 4.) (*See also id.* at 10 ("So I don't see that at this point we can or should be relitigating any of the methodology.").)

4

Defendants, in opposition to Plaintiffs' Motion, argue that "[e]very time Cigna produced remedy calculations to Class Counsel in 2016, 2017, and 2018, it advised that 'Part A benefit will commence as of the earliest age allowed under Part A that is on or after the date that each participant received her original Part B benefit' and showed individual 'remedy annuity commencement dates.'" (Defs.' Opp'n to Mot. to Enforce Court Rulings and for Sanctions at 30 n. 24 (citing Ex. 4 to *id.*).) In their reply, Plaintiffs offer no explanation for their apparent failure during the methodology litigation to fully pursue the issue of whether the Court's previous orders authorize Defendants' challenged action on retirement benefits.

In light of the Court's previous admonition that the time has passed to address "issues that could have been brought up in the motions related to methodology and weren't," the Court declines to entertain this methodological dispute now.

### IV. Small Benefit Cashouts

Finally, Plaintiffs assert that Cigna is improperly refusing to pay small benefit cashouts to approximately "1,400 class members who are otherwise due small benefit cashouts because the Part B cash balance benefits to which they are entitled have not yet been received." (Pls.' Mem. Supp. Mot. to Enforce Court Rulings and for Sanctions at 36-37.) Defendants respond that

> these individuals are not yet entitled to commence their remedy benefits because (a) approximately 800 are still employed by Cigna and therefore cannot commence any benefits under the terms of the Plan or ERISA; and (b) all of them have not yet commenced Part B and so the offset to their A+B remedy (Dkt. 507 at 12-13) – and therefore their net remedy amount – cannot be calculated until their actual amount of their Part B benefit is calculated and, at that time, their remedy benefit may (or may not) exceed the $5,000 small benefit cashout limit.

(Defs.' Opp'n to Mot. to Enforce Court Rulings and for Sanctions at 35-36.) In reply, Plaintiffs assert in a footnote that Defendants' argument related to active employees is a "red herring"

5

because it is in fact not Plaintiffs' position that small benefit cashouts should be paid to active employees.[1] In light of the clarification, the Court construes Plaintiffs' objection as only pertaining to the 600 remaining class members who may be entitled to small benefit cashouts, who are no longer active employees, and who have not yet commenced Part B.

On December 6, 2018, Defendants moved for clarification regarding the treatment of small benefit cashouts and rollovers. As relevant here, Defendants "request[ed] that the Court order that a class member is entitled to a small benefit cashout if the value of the future annuity payments to which the class member is entitled is less than $5,000 after deducting attorneys' fees, even if that class member also is entitled to (or received) retroactive payments or Part B cash balance benefits that, in the aggregate (together with the future annuity payments), would exceed $5,000." (Defs.' Mem. Supp. Mot. for Clarification [Doc. # 556-1] at 3.) Defendants requested this relief because while "[t]he IRS generally requires that a defined benefit plan pay benefits as an annuity absent an affirmative election by the participant[,]" and the "IRS provides an exception for 'small benefits' valued at $5,000 or less to allow them to be paid as a lump sum, without participant consent[,]" the relevant statutory provisions according to Defendants do not provide "clear guidance as to how

---

[1] Defendants move for leave to file a four-page sur-reply in opposition to Plaintiffs' Motion, contending that there is good cause to do so in light of Plaintiffs having "raised two new issues in their Reply that were not addressed in their Sanctions Motion or in Defendants' Opposition[,]" one of which is the revelation that Plaintiffs do not in fact seek the payment of small benefit cashouts to active employees. (Doc. # 575 at 1.) While the Court does not understand why Plaintiffs originally described the issue as affecting 1,400 class members if they do not challenge Defendants' determination that active employees are not currently entitled to small benefit cashouts, Plaintiffs' clarification *narrows* the scope of dispute and so does not provide good cause for the filing of a sur-reply. Moreover, to the extent that Plaintiffs raise a new issue with respect to Cigna's February 26, 2019 Plan Amendment, the Court declines to consider those arguments by Plaintiffs. Accordingly, Defendants' Motion for Leave to File Sur-Reply is denied as moot.

6

the small benefit cashout rules should apply to the remedy payments ordered by this Court, where class members' total payments from the Plan may be comprised of three components: (1) a retroactive remedy payment with interest, (2) a future annuity remedy payment, and (3) a Part B cash balance benefit." (*Id.*)

Thus, Defendants requested by way of clarification that the Court order the Plan to pay small benefit cashouts "regardless of any retroactive payments or Part B cash balance benefits to which the class member also is entitled (or received)" and "even if that class member also is entitled to (or received) retroactive payments or Part B cash balance benefits that, in the aggregate (together with the future annuity payments), would exceed $5,000[,]" (Proposed Order to Cash Out Small Future Remedy Benefits and to Handle Rollover Elections of Remedy Benefits [Doc. # 556-4] at 1-2), which the Court subsequently ordered, (Order to Cash Out Small Future Remedy Benefits and to Handle Rollover Elections of Remedy Benefits at 1-2.) Defendants made clear that the parties nonetheless disagreed "about whether A+B remedy payments can be paid before Part B amounts are paid to participants." (Proposed Order to Cash Out Small Future Remedy Benefits and to Handle Rollover Elections of Remedy Benefits at 2 n.2.)

Defendants put forward no specific explanation as to why, if Part B amounts are to be disregarded in the calculation of small benefit cashout eligibility, those participants' small benefit cashout amounts cannot be calculated and paid at this time. Accordingly, and in light of the Court's previous Order to Cash Out Small Future Remedy Benefits and to Handle Rollover Elections of Remedy Benefits, the Court now directs Defendants to pay those small benefit cashouts as promptly as possible and grants Plaintiffs' Motion in this limited respect.

While the Court adopts Plaintiffs' view that class members in this category should receive their small benefit cashouts without waiting for their Part B amounts to be paid, the Court declines

7

to sanction Defendants. Sanctions against Defendants are not warranted given the opacity of the issue, the lack of evidence of bad faith, and the lack of evidence that Defendants failed to act in a reasonably diligent manner in attempting to comply with the Court's previous orders. *See EEOC v. Local 638*, 81 F.3d 1162, 1171 (2d Cir. 1996) ("A party may not be held in contempt unless the order violated by the contemnor is clear and unambiguous, the proof of non-compliance is clear and convincing, and the contemnor was not reasonably diligent in attempting to comply." (internal quotation marks and citation omitted)).

### V. Conclusion

For the reasons set forth above, the Court GRANTS in part and DENIES in part Plaintiffs' Motion to Enforce Judgment and DENIES Defendants' Motion for Leave to File Sur-Reply. The Court directs Defendants to pay small benefit cashouts to participants who have not received their Part B cash balance accounts as promptly as possible.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 16th day of August 2019.