UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANICE C. AMARA *et al.*, individually, and on behalf of others similarly situated,<br>     *Plaintiffs*,<br>          *v.*<br>CIGNA CORP. and CIGNA PENSION PLAN,<br>     *Defendants*. | Civil No. 3:01-CV-2361 (JBA)<br><br>August 6, 2020 |

### RULING DENYING PLAINTIFFS' MOTION FOR ACCOUNTING

Plaintiffs move "for an accounting that the Cigna Defendants have fully satisfied the judgment against them." ([Doc. # 591].) Defendants oppose. For the reasons described below, Plaintiffs' Motion is denied.

**I.     Background**

The Court assumes the parties' familiarity with this case's background and long history but will summarize the facts of this case insofar as they are relevant to the instant motion.

This case began in 2001 when Plaintiff Janet C. Amara, on behalf of herself and those similarly situated, brought suit against Defendants Cigna Corporation and the Cigna Pension Plan (collectively, "Cigna"), alleging that they had violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1022(a), 1024(b), and 1054(h) when switching from a defined benefit pension plan ("Part A") to a cash balance plan ("Part B"). Among the remedies requested was the appointment of a class action administrator or special master "to oversee implementation of remedies, with authority to make an accounting and take necessary steps to bring the Plan into compliance" and the ordering of an accounting of "over 9,700 participant records." (Pls.' Trial Memo [Doc. # 205] at 2, 4.)

In 2008, after a bench trial, the late Judge Mark R. Kravitz found in Plaintiffs' favor, *see Amara v. Cigna Corp.* (*"Amara I"*), 534 F. Supp. 2d 288 (D. Conn. 2008), and ordered damages in the amount of the sum of benefits each employee accrued under Part A and under Part B ("A + B relief*"), see Amara v. Cigna Corp.* (*"Amara II"*), 559 F. Supp. 2d 192 (D. Conn. 2008). Judge Kravitz ruled each eligible employee should be provided the benefits he or she had earned under Part A in the form available under Part A (usually, an annuity that commenced at the age of retirement), as well as the benefits he or she had accrued under Part B. Judge Kravitz did not order the appointment of a class action administrator or special master to oversee the payment process.

In 2011, the case was heard by the Supreme Court and remanded for the purposes of determining in the first instance whether remedies this Court awarded under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), were appropriate under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). *See CIGNA Corp. v. Amara* (*"Amara III"*), 563 U.S. 421 (2011). The case was subsequently transferred to the undersigned following Judge Kravitz's death. After remand, the parties submitted briefing on whether Plaintiffs were entitled to certain equitable remedies, ([Docs. ## 317, 321, 324]), and Plaintiffs again requested the appointment of "an independent fiduciary, a joint administrative committee with an independent member, or a special master," (Pls.' Supp. Br. Following Evid. Hearing [Doc. # 364] at 16-17). In its Ruling on Remedies, the Court again ordered A + B relief, but did not order the appointment of a monitor to oversee the implementation of remedies. ([Doc. # 378].) The both parties appealed aspects this ruling, but Plaintiffs did not raise the issue of monitoring. The Second Circuit affirmed on the Ruling on Remedies on December 23, 2014. *See Amara v. CIGNA Corp.* (*"Amara IV"*), 775 F.3d 510 (2d Cir. 2014).

In 2015, Plaintiffs moved for an order requiring Cigna to submit a compliance plan, containing "provisions for internal compliance audits and the supervision of implementation by a

CIGNA executive officer," "[p]rocedures for quarterly reporting to Class counsel with full supporting data related to calculations of class members' increased benefits," and a "[p]rovision for the submission of a certified and audited final report on implementation by CIGNA's CEO to this Court demonstrating that CIGNA has fully and completely complied with the Court's Orders," among other things. (Pls.' Mem. Supp. Mot. Compliance Plan [Doc. # 412-1] at 9.)  This Court denied this request on January 14, 2016. (Ruling on Proposed Methodology and Request for Order of Compliance Plan [Doc. # 459].) Although the Court recognized its "inherent authority" to issue an order "in aid of enforcement of its judgment," it also noted that its enforcement authority was "not limitless" and "'extend[ed] only as far as required to effectuate a judgment.'" (*Id.* at 20 (quoting *Fafel v. Dipaola*, 399 F.3d 403, 411 (1st Cir. 2005).) The Court determined that Plaintiffs' request was "premature," as "Defendants ha[d] not shown themselves to be noncompliant and indeed ha[d] not as yet had an opportunity to comply due to the issues around the methodology." (*Id.* at 21.)[1]

In 2019, Plaintiffs moved "that this Court grant their motion to enforce the Court's reformation and methodology rulings and sanction Cigna for calculating and paying individual remedy amounts under . . . interpretations . . . of this Court's orders that fail to comply with the Court's rulings." (Pls.' Mot. to Enforce J. and for Sanctions [Doc. # 571] at 1.) In their proposed order—but unmentioned in their supporting memorandum of law—Plaintiffs requested "an accounting" of the amounts "for each class member (and an accounting for the additional

---

[1] In this ruling, the Court also addressed certain of the parties' methodological disputes regarding the implementation of A + B relief. Aspects of this ruling were subsequently clarified and revised. ([Doc. # 486].) However, the Court did not revise its ruling as to Plaintiffs' request for a compliance plan. (*See id.* at 19-21.)

attorneys' fees to be separately paid . . . )" as a remedy. (Proposed Order on Mot. to Enforce J. and for Sanctions [Doc. # 571-2] at 2-3.) Without addressing this request for an accounting, the Court denied certain aspects of Plaintiffs' motion, concluding that Cigna was in compliance with the Revised Ruling on Proposed Methodology and Request for Order of Compliance Plan. ([Doc. # 579].) The Court stood by this conclusion when Plaintiffs subsequently moved for reconsideration. ([Doc. # 588].) Plaintiffs submitted notice of their appeal of the Court's enforcement and sanctions rulings, as well as other rulings, in January 2020. ([Doc. # 592].) That appeal remains pending before the Second Circuit.

On January 14, 2020, Cigna filed an "expedited motion" to discharge their supersedeas bond, which was slated for renewal on January 16, 2020. ([Doc. # 589] at 1.) Plaintiffs offered only conditional consent for this release, cross-moving "for an accounting that the Cigna Defendants have fully satisfied the judgment against them" to obviate any objection. ([Doc. # 591] at 1.) On January 16, 2020, the Court granted Cigna's motion to release its bond obligation, on the basis that "Cigna's appeal ha[d] been decided and Cigna ha[d] represented in its supporting brief . . . that the current amounts owed to Class Members ha[d] been remitted and the judgment satisfied." ([Doc. # 594] at 2.) The Court declined to rule on Plaintiff's cross-motion for accounting at that time, instead allowing the parties to brief the issue further and permitting Cigna to file a sur-reply. (*See id.* at 1 (deferring ruling on Plaintiff's cross motion); *see also* [Doc. # 604] (permitting sur-reply in response to Defendant's Motion to Strike [Doc. # 599]).)

## II.   Discussion

Plaintiffs seek an "accounting by the Cigna Defendants" to both the class and the Court "showing that the Cigna Defendants have fully satisfied the judgment entered against them." (Pls.'

Proposed Order on Mot. to Discharge Supersedeas Bond and Cross-Mot. for Accounting [Doc. # 590-1] at 1.)

Plaintiffs assert that an "accounting is required in equity for the discharge of fiduciary duties." (Pls.' Mem. Supp. Mot. for Accounting [Doc. # 590] at 1.) In their reply brief, Plaintiffs elaborate that they need not show that Defendant breached some duty, as the "fiduciary has an independent duty to account." (Pls.' Reply Mot. for Accounting [Doc. # 598] at 2 (quoting Samuel Bray, "Fiduciary Remedies," in THE OXFORD HANDBOOK OF FIDUCIARY LAW 452 (E. Criddle, P. Miller, & R. Sitkoff eds. 2019)).) Plaintiffs also assert that an accounting is appropriate here, because "even though there are at least $112 million in unpaid retirement benefits, the fiduciaries are only providing information related to implementation to entities and persons to whom no fiduciary duties are owed while refusing to supply the same information to the trust beneficiaries." (*Id.* at 5.) Plaintiffs contend that Cigna's representations as to the satisfaction of the judgment "are not only unverifiable, but inconsistent with the remedy calculations Cigna provided on January 18, 2019." (*Id.* at 7.) In support of this contention, Plaintiffs assert that "79% of the reformation's value is unaccounted for," as Cigna's "first through third quarter 2019 financial statements each give the value of the reformation" as $142 million, but "[b]ased on Cigna's representations, . . . the only benefit payments Cigna has made are 'almost $30 million' in back payments and small benefit cashouts," leaving $112 million unpaid. (*Id.*) Plaintiffs also assert that Cigna has not accounted for back benefits and past-due lump sums, including small-benefit cashouts, due to 1,000 participants. (*Id.* at 8.)[2] Additionally, Plaintiffs contend that Cigna has "presented only incomplete and

---

[2] Plaintiffs derive this figure by comparing the number stated in Cigna's November 1, 2019 Opposition to Plaintiffs' Motion for Reconsideration, which stated that "almost 10,000 participants" were due such benefits, ([Doc. # 585] at 25), to the number provided in the January

inconsistent information related to the implementation of relief" for 1,738 class members "whose annuities were increased by the reformation." (*Id.* at 8-9.) They further contend that "Cigna's presentation does not account at all for the status of implementation of the remedy" as to 2,600 class members who are now immediately eligible to collect benefits. (*Id.* at 9-10.) Finally, Plaintiffs assert that an accounting is warranted because Cigna "has admitted that it is excluding 'almost 10,000' people from *any* 'A+B' relief" and has not yet provided "meaningful explanation for the determination" or recognized "any right to contest them." (*Id.* at 10.)

Defendants respond that an accounting should not be required because "Class Counsel have not shown any systemic failures by Cigna to implement the A+B reformation remedy ordered by the Court." (Defs.' Opp. to Pls.' Mot. for Accounting at 1.) Defendants assert that it "already has demonstrated to the Court its diligent compliance with the Court's orders, through multiple declarations and status reports showing the steps it has taken to comply, both in notifying class members about the amount of their A+B remedy benefits and in paying such benefits," and that it has "issued checks to class members for payment of back benefits owed, ongoing annuity payments, and small benefit cashouts, and has now issued additional small benefit cashout checks to those class members entitled to them" pursuant to the Revised Ruling on Proposed Methodology and Request for Order of Compliance Plan. (*Id.*) In support of its opposition, Defendants have provided declarations by Jason Gay, a Vice President & Consulting Actuary with Prudential Retirement Insurance and Annuity Company ("Prudential") who has "been involved in Prudential's actuarial consulting services for the [Cigna Pension] Plan since approximately

29, 2020 Opposition to Plaintiff's Motion for Accounting, in which Cigna represented that 8,900 participants had been paid, ([Doc. # 597] at 4).

2010" and who details Cigna's efforts to satisfy the judgment. (Ex. 1 (Gay Decl.) to Defs.' Opp. to Pls.' Mot. for Accounting [Doc. # 597-1] ¶ 1; *see also* Ex. 1 (Gay Supp. Decl.) to Defs.' Sur-Reply to Pls.' Mot. for Accounting [Doc. # 605-1].)

In their sur-reply, Defendants also rebut Plaintiffs' claims as to their representations regarding the satisfaction of the judgment. Defendants assert that "Class Counsel intentionally mislead the Court by claiming that Cigna had not accounted for 79% of the remedy, even though they (and the Court) know that the majority of the Court-ordered retirement benefits will be paid out over the course of each participant's lifetime for decades into the future." (Defs.' Sur-Reply to Pls.' Mot. for Accounting [Doc. # 605] at 2.) Defendants note that the represented total value of the judgment in the amount of $142 million "includes the value of future monthly annuity payments to be paid to class members for their lifetimes and benefits for class members who have not yet reached retirement eligibility under the terms of the Plan," explaining why Cigna's declarations state that only "$30 million had been paid out in lump sums and back benefits" to date. (*Id.*) Defendant also asserts that "Class Counsel distort the record by suggesting that Cigna has failed to pay or address approximately 1,000 class members entitled to receive lump sum back benefits." (*Id.* at 3.) Defendants observe that Plaintiffs derived this number by using outdated figures that did not account for the Court's August 16, 2019 Order, ([Doc. # 579]), directing Defendants "to pay small benefit cashouts to participants who have not received their Part B cash balance accounts as promptly as possible," (*id.*), "as opposed to when they commence their Part B benefit in the future," (Defs.' Sur-Reply at 3). Defendants further explain that "the approximately 400 deceased class members and 600 small benefit cashout class members who have not taken Part B make up the approximately 1,000 individuals Class Counsel claimed were missing." (*Id.* at 4.) Defendants also contend that "Class Counsel wrongly claim that Cigna has never stated that it

actually paid annuities to the 1,738 class members whose annuities were due to immediately begin or increase," noting that Mr. Gay's "declaration specifically stated that Prudential "commenced the process of initiating annuity payments for approximately 1,650 annuitants." (*Id.* at 5 (citing Gay Decl. ¶ 3).) Defendants also object to Plaintiffs' claim that "Cigna should be paying annuities to approximately 2,600 additional participants who are now 55 years old," as the "Plan provides that the normal retirement age is 65, not 55." (*Id.*) Defendants add that "for those age 55 class members entitled to early retirement benefits under Part A who have not yet taken Part B benefits, Cigna has notified them that they can commence the benefit if they so desired by taking Part B." (*Id.* at 6.) Finally, Defendants state that "Class Counsel misleadingly suggest that those" 10,000 individuals "not entitled to a remedy benefit were not given any right to contest that determination," as the "very letter they attach (Dkt 598-7, Exhibit F) includes information about why the participant was not entitled to a benefit and states that if they believe the information is inaccurate or if they have questions about their status, they should contact Prudential for assistance," (*id.* at 7), and that "to the extent anything in Class Counsel's reply could be read to question the failure to pay benefits to certain class members whose benefits had not vested, Class Counsel do not have standing to challenge these issues on behalf of class members and they were not among issues certified for class treatment," (*id.* at 7 n.9).

Having considered the parties' arguments, the Court agrees with Defendants that a post-judgment accounting should not be ordered. As no one disputes, this Court indeed has the authority to order a post-judgment accounting. (*See* Pls.' Mem. at 2 (citing *Finley v. Lynn*, 10 U.S.

238 (1810)); Defs.' Opp. at 2 (same).) However, the question here is whether Plaintiffs have *justified* such a remedy.[3] They have not.

Although there is scant case law on the propriety of a post-judgment accounting in the absence of a contempt finding,[4] the Court finds *Kifafi v. Hilton Hotels Ret. Plan*, 79 F. Supp. 3d 93 (D.D.C. 2015), to be instructive. In that case, the *Kifafi* class, who were represented by the same counsel as here, responded to defendants' motion to release a $75.8 million supersedeas bond by moving for post-judgment discovery for the purposes of obtaining "the algorithms, calculation results, and mailing or payment records for the approximately 20,000 class members in this case" from defendants. *Id.* at 109. The *Kifafi* class argued that "Defendants' failure to provide" such information was "both evidence of non-compliance with the Court's judgment, and evidence of

---

[3] The Court observes that if a post-judgment accounting were a matter of right, Plaintiffs' various efforts to obtain a post-judgment compliance plan or the appointment of a class action administrator "with authority to make an accounting and take necessary steps to bring the Plan into compliance," (Pls.' Trial Memo at 2, 4), as detailed *supra*, would have been without purpose.

[4] Although Plaintiffs attempt to marshal case law from across the centuries, none of the authorities they cite directly support the outcome they desire here. Most discuss a court's authority in ordering an accounting or other post-judgment discovery where it would be useful in further adjudicating a case, *see, e.g.*, *Knowlton v. Anheuser-Busch Companies Pension Plan*, 849 F.3d 422, 432 (8th Cir. 2017) (remanding case after final judgment and noting that "the district court *may* reconsider whether certain records will assist in its calculation of the requested benefits." (emphasis added)); where it was statutorily required, *see, e.g.*, *Cobell v. Norton*, 428 F.3d 1070, 1074 (D.C. Cir. 2005) (explaining that the American Indian Trust Fund Management Reform Act of 1994 imposes a "duty to provide a historical accounting" upon the Secretary of Interior); or where the defendant was asserted to be in contempt, *see, e.g.*, *Chevron Corp. v. Donziger*, No. 11 CIV. 0691 (LAK), 2018 WL 2247202, at *7 (S.D.N.Y. May 16, 2018) (granting post-judgment contempt application "insofar as [the motion sought] leave to conduct discovery with respect to [defendant's] compliance with the Judgment" where plaintiff had provided "clear and convincing" "evidence of noncompliance" and where defendant's noncompliance was determined to be "brazen and deliberate"). None of those considerations are relevant here.

the need for post-judgment discovery to determine Defendants' compliance" with the judgment.

*Id.* The court rejected those arguments, stating that the *Kifafi* class had "not met [its] burden of showing that [it] is entitled to post-judgment discovery" and that "Defendants' refusal to provide [the *Kifafi* class's] counsel with this information is not evidence" of defendants' noncompliance. *Id.* at 109-10. Relying on declarations by individuals involved with administration of the retirement plan at issue, the court went on to explain that defendants had "provided an acceptable explanation for the issue[s]" raised by the *Kifafi* class or that the issues had been "resolved" at the time of ruling. *Id.* at 110. The court further characterized the *Kifafi* class's effort to obtain post-judgment discovery as "effectively [a] request[] to be made a special monitor of the administration of the Plan," and noted that the *Kifafi* class's counsel had previously and unsuccessfully made three similar attempts "to obtain a monitoring position over the administration of the Plan through the appointment of a third party monitor or the appointment of Plaintiff's counsel himself as monitor." *Id.* "Taking into account the constantly evolving nature of providing retirement benefits," the court concluded that there were "no systemic problems or failures in Defendants implementation of the judgment" and that Defendants were "in compliance such that they satisfied the [judgment's] terms." *Id.*

Significantly, the *Kifafi* class appealed this ruling, raising as their "central argument" that "the district court should have ordered an equitable accounting." *Kifafi v. Hilton Hotels Ret. Plan,* 752 F. App'x 8, 9 (D.C. Cir. 2019).[5] The D.C. Circuit assumed *arguendo* that the *Kifafi* class's

---

[5] Plaintiffs stress that the D.C. Circuit's unpublished per curiam opinion affirming the district court in *Kifafi* lacks precedential value. (*See* Pls.' Reply at 3 (citing D.C. Cur. Rule 36(e) regarding unpublished dispositions).) While of course recognizing that an unpublished opinion from another circuit has no binding effect, this Court may nonetheless consider that disposition as useful guidance.

"requests for post-judgment discovery and compliance reporting" "constituted a request for an [equitable] accounting," and found "no abuse of discretion in the court's denial of the requests in light of its finding that [defendant] was in compliance." *Id.* at 9-10.

Here, the Court has previously accepted Cigna's representations "that the current amounts owed to Class Members have been remitted and the judgment satisfied." (*See* January 16, 2020 Ruling at 2.) Cigna has since supported these representations through the sworn declarations of Mr. Gay, who has averred that Prudential has "mailed checks to 8,962 people," as 7,307 of those individuals were eligible to "receive[] a one-time lump sum payment and the remaining 1,655 people were eligible to commence or increase an existing annuity." (Gay Suppl. Decl. ¶ 4.) Mr. Gay has also averred that "the process of initiating annuity payments" is "ongoing as new class members reach normal or early retirement age under the Plan and become entitled to commence their annuity payments." (Gay Decl. ¶ 3.) As to "those former employees who were entitled to a small benefit cashout before taking their Part B benefit," Mr. Gay has averred that "Prudential issued checks to all but 12" of them, as those "individuals had died." (*Id.* ¶ 4.)

As with *Kifafi*, Defendants have "provided . . . acceptable explanation[s]" for the "potential problems with Defendants' compliance" that Plaintiffs have raised. Accordingly, the Court determines that a post-judgment equitable accounting is unwarranted.[6]

---

[6] The Court notes that nothing in this opinion precludes Defendants from voluntarily sharing documents regarding its compliance, such as the Actuarial Valuation Report identified by Plaintiffs, as they have done in the past. (*See* Pls.' Reply at 7-8.)

## III.   Conclusion

For the above reasons, Plaintiffs' Motion for an Accounting [Doc. # 591] is DENIED.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 6th day of August 2020.