UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANICE C. AMARA, *individually, and on behalf of others similarly situated*, <br>    *Plaintiffs*, <br> <br> v. <br> CIGNA CORPORATION and CIGNA PENSION PLAN, <br>    *Defendants*. | ) ) ) ) ) ) ) ) ) ) | 3:01-CV-02361 (SVN) <br> <br> <br> <br> <br> <br> <br> October 4, 2024 |

## RULING ON PLAINTIFFS' MOTION FOR RECONSIDERATION

Sarala V. Nagala, United States District Judge.

In this long-pending class action brought pursuant to the Employee Retirement Income Security Act ("ERISA"), Plaintiffs have moved for a reconsideration of the Court's order denying their motion for an accounting or post-judgment discovery and motion to strike.

For the reasons that follow, Plaintiffs' motion is DENIED.

### I.  BACKGROUND

This case has a lengthy and complex history, which has been set forth in numerous prior rulings in this case and with which the parties' familiarity is presumed.  The Court also presumes familiarity with its May 6, 2024, ruling denying Plaintiffs' motion for accounting or post-judgment discovery and motion to strike.  Ruling, ECF No. 636 ("May 6 Ruling").[1]

### II.  LEGAL STANDARD

Local Rule 7(c) 1 provides that a party may file a motion for reconsideration within seven days of the filing of a decision or order by the Court "setting forth concisely the controlling decisions or data the movant believes the Court overlooked."  D. Conn. L. Civ. R. 7(c) 1.  "The

---

[1] This opinion is published at *Amara v. Cigna Corp.*, No. 3:01-CV-02361 (SVN), 2024 WL 1985904 (D. Conn. May 6, 2024).

standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019). Reconsideration is warranted "only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error to prevent manifest injustice." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021). A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012).

### III.    DISCUSSION

Plaintiffs ask this Court to reconsider and reverse virtually every aspect of its May 6 Ruling. For the reasons discussed below, Plaintiffs' motion is DENIED.

#### A.    Legal Standard

As an initial matter, the Court notes that Plaintiffs appear to take some issue with the Court's application of the legal standard in the May 6 Ruling. *See* Mot. for Reconsideration, ECF No. 638 at 21–22. Plaintiffs argue the Court failed to "recognize that the standard for post-judgment discovery is not the same as the standard for proving contempt," and emphasize that Plaintiffs' "burden . . . is to show, by a preponderance, that there are significant questions about Cigna's compliance with [Court] orders." *Id.* While the May 6 Ruling did not use the word "preponderance," the Court noted throughout that its task was to assess whether Plaintiffs had raised significant questions regarding compliance with court orders. *See* ECF No. 636 at 5, 11,

16. Accordingly, the Court rejects Plaintiffs' suggestion that the Court did not apply the appropriate standard.

### B. Floor Rates

Like Plaintiffs' original motions, the central argument of their motion for reconsideration relates to Defendants' use of floor rates in their calculations of A+B relief for class members who select annuities under Part B. *See* ECF No. 638 at 7 (agreeing this was the central argument of Plaintiffs' motion for accounting or post-judgment discovery). Plaintiffs contend that the May 6 Ruling incorrectly determined that Defendants' use of floor rates did not raise significant questions regarding their compliance with previous orders, for a number of reasons. Notably, Plaintiffs do not point to any new authority. They continue to point to the six orders they claim have been violated (ECF Nos. 485, 486, 507, 555, 560, and 579), and argue that the Court's interpretation of those orders either "overlooked" various aspects of those orders or amounted to clear error.

The Court stands by its previous interpretations of Judge Arterton's orders, and rejects Plaintiffs' contention that any were overlooked. Plaintiffs make much of the fact that the May 6 Ruling described Judge Arterton's order on floor rates, ECF No. 485, as being "cabined" to the context of lump sums. ECF No. 638 at 8–9. They seem to argue that, because the Court thought this order was "cabined" to the lump sum context, it found this order to simply not apply to annuitants. In other words, Plaintiffs suggest that the Court found that Defendants could use the floor rates to calculate the offset for Part B annuitants, even though they could not do so for participants who were paid a lump sum. On the contrary, this was not the holding of the May 6 Ruling, though the Court recognizes its language regarding "cabin[ing]" may have been strong. To the extent any clarification is necessary, the Court clarifies as follows now: the Court found that Judge Arterton's order did not specifically mention how offsets would be calculated with

respect to participants who selected annuities, as it focused instead on participants who received their benefits in a lump sum, and held that Defendants were nonetheless not using the floor rates to calculate the offset in the manner prohibited by Judge Arterton—even for annuitants—because they only use floor rates to calculate the annuity itself, and not to re-annuitize that amount into an offset. *See* ECF No. 636 at 8 ("To be sure, Cigna should not (and indeed, does not) use the floor rates to re-annuitize Part B annuities received by class members. Cigna's present use of the floor rates in calculating the Part B annuity itself does not create the same issues previously identified, and resolved, by Judge Arterton."). As the May 6 Ruling recognized, this does mean that floor rates are "incorporated" into the offset calculations for annuitants and not for participants who select a lump sum, *see id.* at 6, but it does not mean that the floor rates are used to calculate the offset.[2] Indeed, Cigna uses the "reasonable rate of interest" to "translate back and forth from annuities to their present value conceived as a lump sum," as ordered by Judge Arterton. *See* ECF No. 485 at 6. Thus, while Judge Arterton's ruling may not have specifically mentioned annuitants or how to calculate the Part B annuity itself (and was, in that sense, "cabined"), the Court nonetheless found that Defendants' method of calculating A+B relief for annuitants has been in

---

[2] In other words, floor rates are not used to re-annuitize the lump sum for use as an offset, even if they are used to calculate the initial annuity. Defendants again explain this distinction in their opposition, *see* ECF No. 640 at 12, which Plaintiffs seized on as a new and "plainer answer" *see* ECF No. 642 at 7, despite that this is the same process Defendants demonstrated in connection with the underlying motion for accounting. As noted in the May 6 Ruling, the Court does not find that the fact that this process leads to higher offsets sufficient to raise significant questions with Defendants' compliance.

compliance with the letter and spirit of Judge Arterton's order regarding the use of floor rates.[3] Plaintiffs have not demonstrated a basis for reconsideration related to the manner in which Defendants use the floor rates.[4]

### C. Offset Calculation Starting Point

As before, Plaintiffs also argue that Defendants' calculations for class members who select annuities are inappropriate because they begin with the annuity paid out (which incorporates floor rates) rather than with the lump sum balance (Initial Retirement Account ("IRA") plus accrued interest) of the Part B accounts. This is related to, but distinct from, their argument against the use of floor rates because, presumably, Plaintiffs would have no objection to floor rates being used to calculate the annuities (as these lead to higher annuity payments for class members generally) if these annuities did not then form the basis of A+B relief offset calculations. *See, e.g.*, ECF No. 614-11 at 3–4 (demonstrating that Dr. Kleinegger's monthly annuity is higher using floor rates, but also leads to a converted lump sum that is more than $114,000 greater than the cash balance in his account). Plaintiffs push for reconsideration on the basis that this Court overlooked, in particular, Judge Arterton's July 2017 Order clarifying the relief calculations for class members

---

[3] Plaintiffs again cite *CBS Broadcasting v. FilmOn.com*, 814 F.3d 91 (2d Cir. 2016), to argue that Defendants were under a duty to seek clarification of Judge Arterton's orders regarding how they applied to annuitants rather than interpret them for themselves. *See* ECF No. 438 at 7–8. In *CBS*, the Second Circuit found that an enjoined party's failure to seek clarification from the district court regarding its interpretation of copyright law was a demonstration that it had not diligently attempted to comply in a reasonable manner with the injunction against it, which supported the district court's finding of contempt. *See CBS*, 814 F.3d at 99–100. While this case is of course controlling, the Court does not find that it necessitates reconsideration of the May 6 Ruling. First, as Plaintiffs themselves point out, the standard for evaluating a motion for accounting is not the same as the standard for proving contempt or finding a party in contempt, as addressed in *CBS*. *See* ECF No. 638 at 21. In addition, unlike the enjoined party in *CBS*, here the Court has found that Defendants have acted in compliance with the Court's orders. Accordingly, *CBS* does not provide a basis for reconsideration.

[4] The Court does not find that the May 6 Ruling "unfairly faulted Plaintiffs for not objecting to Cigna's use of floor interest rates earlier," *see* ECF No. 638 at 11. The Court noted that Plaintiffs' objections to fundamental aspects of the methodology appeared untimely given the consistency in Defendants' calculations over the years, *see* ECF No. 636 at 9–10, and declined to reassess these aspects of the methodology on the grounds that they represented a "change." *Id.* In any event, the timeliness or lack thereof of Plaintiffs' motion was not the Court's primary basis for denial, so the Court does not find cause to reconsider its decision on that basis.

who had not yet commenced receiving benefits, *see* ECF No. 507, which, in Plaintiffs' view, provides that the starting point of offset calculations must be the IRA plus interest (in other words, the employee's cash balance).

The Court's original rejection of this argument for purposes of the motion for accounting was based on its holding that Defendants' practice of using Part B benefits actually paid out as the starting point for offset calculations was not a *change* in Defendants' methodology, as Plaintiffs suggested.  *See* ECF No. 636 at 10; *see also* Reply in Supp. of Mot. for Accounting, ECF No. 623 at 6 (pointing to "sample calculations" provided in March 2018 that did not use floor interest rates to suggest that the use of floor interest rates represented a change).  Indeed, one of Plaintiffs' own exhibits submitted with their reply brief reflects sample calculations provided by Defendants in March 2018 for an annuitant, showing the annual annuity paid as starting point for offset calculations in section V.  *See* Reply Ex. 11, ECF No. 623-3 at 8.  The Court stands by its holding; based on the sample calculations Plaintiffs submitted in connection with their motion for accounting, the Court cannot discern how Defendants' overall methodology with respect to annuitants has changed since 2018.  Indeed, regardless of whether floor rates are being used, multiple calculations for annuitants show that, when starting offset calculations with an annuity paid, converting that annuity to a lump sum value leads to a higher amount than the cash balance in a class member's account, and therefore a higher offset.  *See, e.g.*, ECF No. 623-3 at 8 (compare line 1A(c) to line V(c)), 9 (same), 11 (same).  In addition to finding that floor rates are not being used improperly, then, the Court declines to order an accounting on the basis that Defendants have somehow effected a consequential change in methodology without Court approval.

In addition, the Court notes that Plaintiffs' broader argument (that the starting point for offset calculations should be the Part B cash balance, as it would be for participants who take their

6

benefits as a lump sum) was raised for the first time (and obliquely) in its reply in support of its motion for accounting.  *See* ECF No. 623 at 14 (suggesting Cigna could calculate relief without using floor rates, and still incorporate floor rates into Part B annuities); Pls.' Reply App. A., ECF No. 623-1, Holland Supp. Decl. ¶ 21 (suggesting a "simple[r] approach" for calculating the offset would be to "take the opening account balance with interest").  At oral argument, this point was elaborated, and it become more apparent that this was one of Plaintiffs' central issues with Defendants' calculations.  While the Court did not explicitly find this argument waived in its May 6 Ruling because it was first raised in reply, it noted that the argument represented a "shift" in Plaintiffs' argument.  *See* ECF No. 636 at 9.  The Court now emphasizes that it finds Plaintiffs did not properly present this important argument in connection with their motion for accounting, despite being on notice of Defendants' two-step offset calculation process since at least 2018.  *See Tardif v. City of New York*, 991 F.3d 394, 404 n.7 (2d Cir. 2021) (noting arguments raised for the first time in reply are generally deemed waived).

Even considering the merits of Plaintiffs' argument, the Court finds Defendants' position with respect to the offset calculation starting point does not contravene the Court's prior orders. For instance, while the July 2017 order Plaintiffs emphasize discusses the offset in terms of the IRA itself, it also frames it in terms of the "value" of the IRA.  *See* ECF No. 507 at 11 ("question of whether Cigna is permitted to offset the Initial Retirement Account"), 13 (Cigna "is permitted to offset *the value of* the Initial Retirement Account from the annuity due under Part A") (emphasis added).  In ordering that Defendants could take an offset even for those class members who had not yet commenced benefits, the Court (Arterton, J.) emphasized that its intention was for the remedy to be "calculated uniformly across the entire class." *Id.* at 12.  It also noted, quoting Judge Kravitz, that a fundamental premise of the remedy is that Defendants should receive "full credit"

7

for amounts already paid plus interest, *id.* at 6. Further, Judge Kravitz had intended for Defendants to receive credit in the amount as "mathematically equivalent as possible" for amounts it had already paid. *Amara v. CIGNA Corp.*, 559 F. Supp. 2d 192, 217 (D. Conn. 2008). While the "full credit" discussion was in the context of lump sums already paid, its logic applies equally here.

The Court did not overlook this order in the May 6 Ruling, and continues to find that the practice of starting offset calculations from the amounts actually paid to class members (whether in lump sum or annuity form) does not raise significant questions regarding Defendants' compliance, as this practice credits Defendants for the "value of the Initial Retirement Account" that is paid out to class members through Part B, *id.* at 13, and it maintains a uniform methodology throughout the class that starts with the amount actually paid. Further, it hews to the underlying premise of crediting Defendants for amounts they have already paid. Thus, reconsideration will not be granted on this basis.

### D. Small Benefit Cashouts

The Court also declines to reconsider the May 6 Ruling with respect to class members entitled to small benefit cashouts. Contrary to Plaintiffs' assertion that the May 6 Ruling "revise[d]" Judge Arterton's orders at ECF No. 560 and 579, the Court adheres to its interpretation of these orders as requiring Defendants to disregard Part B in the sense that any money a class member is entitled to under Part B will not be considered in determining whether a class member's entitlement is over the $5,000 small benefit threshold (in other words, disregard Part B to determine eligibility), but that offsets are nevertheless permitted in the small benefit cashout context. While Plaintiffs' take extreme issue with the Court's use of the term "windfall," *see* ECF No. 638 at 15–17, the Court maintains that, without allowing offsets, there would be a windfall in

the sense that this subset of the class would not have their remedy payment offset while all other class members would.[5]

Plaintiffs make much of the fact that Defendants "admitted" at the hearing to not having complied with the Court's August 2019 order before the Court's August 2019 order. *See* ECF No. 642 at 12; *see also* Hearing Tr., ECF No. 637 at 37 (noting certain small benefit cashout members who had not elected benefits "got paid later pursuant to the court's subsequent order on the motion to enforce"). Understandably, Defendants may not have complied with an order that was not yet issued. That Defendants may have delayed in paying out benefits to small benefit cashout class members who had not yet selected their Part B benefits until August of 2019 due to a misunderstanding of prior court orders, or that after August of 2019 they used projected lump sum payments and offsets, is of no moment to the issue of whether they have significantly complied with court orders such that an accounting would be justified at this juncture. Defendants have always taken an offset with respect to small benefit cashout members (as they must in order to calculate their eligibility for a small benefit cashout), even when that offset was based on a projected lump sum rather than a paid-out benefit. Thus, the Court does not find any reason to reconsider its decision to deny an accounting on the basis of Defendants' practices with respect to small benefit cashout class members.

E. Notices to Class Members

With respect to Defendants' notices to class members, the Court likewise finds no basis for reconsideration. Plaintiffs first rehash their arguments that the notices sent to class members in

---

[5] The Court reiterates that it did not rely on Defendants' Exhibit 1, as it clearly stated in the May 6 Ruling. *See* ECF No. 638 at 15. Likewise, the suggestion that the Court credited counsel's arguments as testimony is not well-taken. *See* ECF No. 642 at 10. The Court of course considered what it heard at oral argument and used the oral argument to help crystallize its understanding of the issues presented to it—but it was not swayed by counsel's argument or exhibits in a way that is improper or warrants reconsideration. The Court agrees with Defendants that many of the problems with Plaintiffs' argument can be "divined as a matter of logic." ECF No. 640 at 17.

9

January of 2019 were intended to represent the final calculation of their remedy payments, in contrast to the Court's finding that these notices represented estimates of the relief class members could ultimately expect if they had not yet chosen their benefits. ECF No. 638 at 17–18.  In support of this rehashing, Plaintiffs again point to the same general language in previous court orders, *see id.* (citing ECF No. 555 at 11), which the Court has already rejected as a basis for importing a whole host of requirements onto Defendants and raising questions regarding their compliance.  In disputing the Court's characterization that Judge Arterton did not "explicitly approve" the January 2019 notice itself, Plaintiffs point the Court to the transcript of a July 25, 2018, status conference, *see* ECF No. 538, in which the parties discussed proposed notices with Judge Arterton.  While the Court had not reviewed this document in connection with the motion for accounting, it does not change the Court's view that there is no "order" regarding notices with respect to which Plaintiffs have raised significant questions regarding Defendants' compliance.  Defendants' notices appear to have complied with the Court's directives regarding notice in this case and, to the extent those directives do not reach the level of specificity Plaintiffs now suggest, the January 2019 notice presented to the Court appeared to provide an estimate of relief, as the May 6 Ruling determined.  In light of this, that the relief amounts changed based on benefit selections does not in itself raise questions regarding Cigna's compliance.

In addition, the Court declines to reconsider its decision not to reach Plaintiffs' argument regarding compliance with Treasury regulations as improperly raised, *see* ECF No. 636 at 16–17.  Contrary to Plaintiffs' assertion, the Court did not find these regulations "irrelevant."  ECF No. 638 at 21.  Rather, it declined to opine on the issue of what specific relative value disclosures are required where that issue was not properly presented, while recognizing Defendants' obligation to comply with applicable regulations. ECF No. 636 at 17.  Plaintiffs' motion for reconsideration,

10

which again (and without citation) claims that there is "no question" the specific disclosures they describe are required by regulation, is once again an improper vehicle for raising this issue and an insufficient basis upon which this Court could conclude questions have been raised regarding Defendants' compliance.  ECF No. 638 at 21.  In other words, even accepting Plaintiffs' position that disclosures which comply with regulation are required (as the May 6 Ruling acknowledged), *see* ECF No. 642 at 11, the Court does not have enough information to find that questions have been raised regarding Defendants' regulatory compliance.

In sum, none of Plaintiffs' arguments related to notice justify reconsideration of the May 6 Ruling.

F. Motion to Strike

Plaintiffs last take issue with the Court's statements in the May 6 Ruling that it was not clear which statements Plaintiffs sought to strike.  *See* ECF No. 638 at 22 n.3; ECF No. 636 at 12, 18.  Even accepting *arguendo* Plaintiffs' point (and admittedly, Plaintiffs did identify certain statements they sought to strike, though their motion at times seemed to reach broader than those statements), the Court sees no clear error in its denial of Plaintiffs' motion to strike.  As the Court noted, Plaintiffs' motion was improper procedurally in that it argued alternatively that statements (such as that Defendants used floor rates to calculate small benefit cashouts, *see* ECF No. 629 at 5) were (1) false or misleading, and thus needed to be stricken; or (2) true, and therefore raised questions of noncompliance.  *See* ECF No. 636 at 12 (noting same).  In any event, the Court found that Plaintiffs had not demonstrated any statements were false and misleading (whether identified or not), and denied the motion on that basis.  *See id.* at 12, 17, 18.  No reconsideration is warranted.

11

## IV. CONCLUSION

For the reasons described herein, Plaintiffs' motion for reconsideration is DENIED.

**SO ORDERED** at Hartford, Connecticut, this 4th day of October, 2024.

                                              _/s/ Sarala V. Nagala_
                                              SARALA V. NAGALA
                                              UNITED STATES DISTRICT JUDGE